## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEBORAH CHIN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10294 (DPW) |
| SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL, | ) ) ) ) | |
| Defendants. | ) | |
| MICHELLE TREBITSCH, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10307 (DPW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) ) | |
| Defendants. | ) | |

[Captions continued on next page]

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
THE FARHAT PLAINTIFF GROUP TO CONSOLIDATE ACTIONS,
TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD
PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL,
<u>AND IN OPPOSITION TO COMPETING MOTIONS</u>**

| | | |
|---|---|---|
| INFORMATION DYNAMICS LLC, on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-10308 (DPW) |
| SONUS NETWORKS, INC., PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA, HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| PETER KALTMAN, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-10309 (DPW) |
| SONUS NETWORKS, INC., RUBIN GRUBER, HASSAN AHMED, and STEPHEN NILL, | ) ) ) ) | |
| Defendants. | ) | |
| SAMANTHA DEN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-10310 (DPW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |

[Captions continued on next page]

|  |  |  |
|---|---|---|
| RICHARD CURTIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10314 (MLW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |
| RONALD KASSOVER, on behalf of the Ronald Kassover IRA and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10329 (DPW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |
| STEVE L. BAKER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10333 (DPW) |
| SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL, | ) ) ) | |
| Defendants. | ) | |

[Captions continued on next page]

| | |
|---|---|
| MICHAEL KAFFEE, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL, )<br><br>Defendants. ) | Civil Action No. 1:04-CV-10345 (DPW) |

MICHAEL KAFFEE, individually and on
behalf of all others similarly situated,                    )
                                                            )
                        Plaintiff,                          )
                                                            )
            v.                                              )        Civil Action No.  1:04-CV-10345 (DPW)
                                                            )
SONUS NETWORKS, INC., HASSAN                                )
AHMED, and STEPHEN NILL,                                    )
                                                            )
                        Defendants.                         )

HAIMING HU, individually and on behalf
of all others similarly situated,                           )
                                                            )
                        Plaintiff,                          )
                                                            )
            v.                                              )        Civil Action No.  1:04-CV-10346 (DPW)
                                                            )
SONUS NETWORKS, INC., HASSAN                                )
AHMED, and STEPHEN NILL,                                    )
                                                            )
                        Defendants.                         )

CHARLES STARBUCK, individually and
on behalf of all others similarly situated,                 )
                                                            )
                        Plaintiff,                          )
                                                            )
            v.                                              )        Civil Action No.  1:04-CV-10362 (DPW)
                                                            )
SONUS NETWORKS, INC., HASSAN                                )
AHMED, and STEPHEN NILL,                                    )
                                                            )
                        Defendants.                         )

[Captions continued on next page]

| | | |
|---|---|---|
| SANUEL HO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10363 (DPW) |
| SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL, | ) ) ) ) | |
| Defendants. | ) | |
| JEFFREY C. RODRIGUES, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.  1:04-CV-10364 (DPW) |
| v. | ) ) | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |
| ROBERT CONTE and MARK RESPLER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.  1:04-CV-10382 (DPW) |
| v. | ) ) | |
| SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL, | ) ) ) | |
| Defendants. | ) | |

[Captions continued on next page]

| | |
|---|---|
| WHEATON ELECTRICAL SERVICES<br>RETIREMENT 401K PROFIT SHARING<br>PLAN, on behalf of itself and all others<br>similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>SONUS NETWORKS, INC., HASSAN<br>AHMED, and STEPHEN NILL,<br><br>                        Defendants. | Civil Action No.  1:04-CV-10383 (DPW) |
| BRIAN CLARK, individually and on<br>behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>SONUS NETWORKS, INC., PAUL R.<br>JONES, EDWARD N. HARRIS, J.<br>MICHAEL O'HARA, HASSAN M.<br>AHMED, and STEPHEN J. NILL,<br><br>                        Defendants. | Civil Action No.  1:04-CV-10454 (DPW) |
| SHEILA BROWNWELL, individually and<br>on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>           v.<br><br>SONUS NETWORKS, INC., HASSAN<br>AHMED, and STEPHEN NILL,<br><br>                        Defendants. | Civil Action No.  1:04-CV-10597 (DPW) |

[Captions continued on next page]

| | | |
|---|---|---|
| SAVERIO PUGLIESE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10612 (DPW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |
| DAVID V. NOCITO, individually and on behalf of all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10623 (DPW) |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | ) ) ) | |
| Defendants. | ) | |
| JONATHAN A. ZALAUF, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:04-CV-10714 (DPW) |
| SONUS NETWORKS, INC., HASSAN AHMED, Ph.D., and STEPHEN NILL, | ) ) ) | |
| Defendants. | ) | |

Sonus Networks, Inc. ("Sonus") investors Nakid M. Farhat, Kenneth W. McGaha, John Haggins and Patrick Fung (collectively, the "Farhat Plaintiff Group") respectfully submit this memorandum of law in further support of their motion to consolidate the related actions ("*Sonus II*"), appoint lead plaintiff and approve lead plaintiff's selection of lead counsel and liaison counsel, and in opposition to all competing motions for lead plaintiff submitted by (i) BPI Global Asset Management, LLP ("BPI"); (ii) the Global Undervalued Securities Master Fund (the "Global Fund"); (iii) James Brower; (iv) Scott Baugh, Thomas Munson, Sajid Patel, Carlos Rios, and Marc Wexler (collectively, the "Baugh Group"); (v) Brad Rollow; (vi) Grace Belland, Leopold Mastre, Jacob Sherman, Scott Dunkley, Abdul Budhinani, and Sean McCarthy (collectively, the "Belland Group"); (vii) Tian Jiang, Joseph Radulovic, and Gary Brost (collectively, the "Jiang Group"); (viii) Saverio Pugliese; and (ix) Chris Paterick.

## I.    PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") dictates that this Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  To that end, the Court adopts a presumption that the lead plaintiff movant with the largest financial interest in the litigation and who otherwise satisfies the requirements of Federal Rule Civ. P. 23 ("Rule 23 ") can adequately represent the Class.  *In re Lernout & Hauspie Securities Litigation*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).  This presumption can be rebutted if that movant cannot fairly and adequately protect the interests of the class or is subject to unique defenses.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Lernout,* 138 F. Supp. 2d at 42.

At first glance it appears that movants BPI and the Global Fund have a greater financial interest than that of the Farhat Plaintiff Group. However, neither BPI nor the Global Fund satisfies the requirements of Rule 23 – a prerequisite for appointment as lead plaintiff. First, BPI has not demonstrated that it has proper standing to serve as a lead plaintiff because it has not offered any evidence – through declaration or otherwise – that it has complete investment authority over its clients' accounts. Moreover, its purported class period transactions in Sonus, as submitted with its certification, are riddled with errors and inaccuracies. As a result, BPI's trades in Sonus are totally unreliable and should not be considered for purposes of determining which movant truly has the largest financial interest. For these reasons, BPI is not the most adequate plaintiff and should not be appointed as such. *See also* § II(A)(1)(a-b) *infra*.

Similarly, the Global Fund has provided no information or description of what type of institutional investor it is, for whom it invests, and what authority, if any, it has to bring suit on behalf of those investments. Thus, the Global Fund has failed to make even a *prima facie* showing of adequacy under Rule 23. Furthermore, as demonstrated herein, the Global Fund's purported class period transactions in Sonus, as submitted with its certification, are littered with errors.

Notwithstanding these shortcomings, of even greater concern is the fact that the Global Fund's counsel, Milberg Weiss Bershad Hynes & Lerach, LLP ("Milberg Weiss"), apparently represents two different clients (the Global Fund and the Jiang Group) each of whom is vying to be appointed as lead plaintiff in this action. There is no evidence that either competing movant is aware of, not to mention consented to, Milberg Weiss' dual representation. *See* ABA Model Rules of Professional Conduct 1.7(a); Mass. Rules of Professional Conduct 1.7(a). Ethical

concerns aside, the filing of two competing motions by the same law firm is the precise type of lawyer-driven activity which the PSLRA was enacted to guard against. *See Lernout*, 138 F. Supp. 2d at 43 ("One key aim [of the PSLRA] was to empower investors so that they - not their lawyers - exercise primary control over private securities litigation."). In addition to seeking lead counsel status here (*Sonus II*), Milberg Weiss currently represents as lead counsel a class of Sonus investors who have asserted securities law claims against three of the same defendants as a result of purchasing Sonus securities between December 11, 2000 and January 16, 2002 ("*Sonus I*"). Appointing counsel with such obviously divided loyalties across the board would frustrate one of the stated goals of the PSLRA as well as contravene governing ethical rules, which prohibit an attorney (without consent) from representing a client if representation of that client will be directly adverse to another client. *See Fiandaca v. Cunningham, Etc., et al.*, 827 F.2d 825, 831 (1st Cir. 1987) (circuit court reversed district court's denial of disqualification motion, where class counsel simultaneously represented two classes with competing interests); *In re S1 Corp. Sec. Litig.* No. 1:00-CV-1156-BBM, slip op. at 11-12 (N.D. Ga. Oct. 3, 2000) (court disqualified law firm which served as local counsel for one movant and proposed co-lead counsel for competing movant in violation of ethical rules).[1]

At a minimum, these issues raise serious questions regarding Milberg Weiss' fitness to serve as lead counsel in this action which, of course, speaks to the Global Fund's judgement in selecting counsel saddled with such conflicts. *In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir.

---

[1]    Attached as Ex. A to Declaration of Darren J. Check in support of Memorandum Of Law In Further Support of Motion of The Farhat Plaintiff Group to Consolidate Actions, To Be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel And in Opposition to Competing Motions ("Check Decl. II")

2002) (choosing counsel who has a conflict of interest indicates proposed lead plaintiff may be inadequate).  Absent evidence that Milberg Weiss' two competing client groups have expressly consented to their counsel's dual and competing representation, this Court should be critical of these movants' adequacy to represent the Class.  *See Id.*; *see also* § II(A)(2)(a-b) *infra*.[2]

By way of comparison, the Farhat Plaintiff Group (the movant with the next-largest financial interest) does not suffer from any of these infirmities and, in contrast to competing movants, has submitted a declaration emphasizing its members' understanding of the responsibilities of a lead plaintiff and their plan to work as a cohesive group.  *See* Joint Declaration In Support Of The Farhat Plaintiff Group's Motion To Consolidate Actions, To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Joint Declaration") at ¶¶ 2, 4 (attached as Exhibit E to Declaration of Darren J. Check in Support of Motion of the Farhat Plaintiff Group to Consolidate Actions, To Be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Check Decl. I")).  Thus, the Farhat Plaintiff Group is the movant with the largest financial interest that *can otherwise satisfy the requirements of Rule 23,* and therefore it should be appointed as lead plaintiff.

---

[2]    In light of these unanswered questions concerning the Global Fund's adequacy to serve as lead plaintiff, the Farhat Plaintiff Group respectfully request limited discovery regarding whether the Global Fund was aware of these conflicts prior to filing its motion and/or if its counsel informed them.  The PSLRA expressly provides for a class member to conduct discovery into the adequacy of a proposed lead plaintiff upon the showing of a reasonable basis for finding that the plaintiff is incapable of adequately representing the class.  15 U.S.C. §78u-4(a)(3)(B)(iv). *See also In re Cephalon Securities Litigation*, No. 96-CV-0633, 1996 U.S. Dist. LEXIS 10546 (E.D. Pa., 1996) (court granted plaintiff's motion to take discovery of another plaintiff that was claiming to be the most adequate plaintiff when significant issues were raised as to adequacy).

II.    **ARGUMENT**

    A.    **The PSLRA Provides Clear Path For Selecting Lead Plaintiff**

Section 21D of the Securities Exchange Act of 1934 provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –

        (aa) has either filed the complaint or made a motion in response to a notice . . .;

        (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; **and**

        (cc) **otherwise satisfies the requirements of Rule 23** of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa)-(cc) (emphasis added); *Lernout*, 138 F. Supp. 2d at 42; *see also Cavanaugh*, 306 F.3d at 729 (PSLRA provides a "clear path that district courts must follow in appointing a lead plaintiff.").

    Despite the fact that BPI and the Global Fund claim larger financial interests than that of the Farhat Plaintiff Group, these movants' financial losses are inaccurate and therefore unreliable.  As a result, the Court cannot quantify their respective financial interests in the outcome of this litigation.  In addition and equally as important, both of these movants have failed to establish that they satisfy Rule 23 for purposes of appointing a lead plaintiff.  Accordingly, and pursuant to the PSLRA, the Court must next consider the Farhat Plaintiff Group's lead plaintiff application as it is the movant with the largest financial interest **which also satisfies Rule 23**.  Thus, the Farhat Plaintiff Group should be appointed as lead plaintiff.

**B.**    **The Court Should Reject BPI As A Lead Plaintiff Candidate**

    **1.**    **BPI Has Not Demonstrated That It Has Complete Investment Authority And Therefore Lacks Proper Standing**

While courts routinely appoint asset managers as lead plaintiffs, a prerequisite for such an appointment is that asset managers have full and complete decision making authority with respect to making investments on behalf of its clients. *In re Rent-Way Securities Litigation,* 218 F.R.D. 101, 106 (W.D. Pa. September 10, 2003) (asset manager with complete investment discretion is adequate class representative with standing to sue); *In re Northwestern Corporation Sec. Litig.*, 299 F. Supp. 2d 997, 1007 (D.S.D. 2003) (court appointed investment advisor with "total and complete discretion in selecting investment securities for its clients" as lead plaintiff). Without this unfettered discretionary authority, an asset manager lacks proper standing to sue on behalf of its clients. *Id.* In stark contrast to the line of cases in which asset managers are appointed as lead plaintiffs, BPI has presented ***no evidence*** indicating that it had the requisite decision making authority for making the investment decisions in purchasing and selling Sonus securities. Without this evidence, BPI does not have proper standing and the Court cannot appoint BPI as lead plaintiff. *Id.*

    **2.**    **Numerous BPI Transactions Contradict Daily *Bloomberg* Trading Data**

Approximately 852,600 of the shares BPI purchased and 785,050 of the shares it sold (as reflected in BPI's own certification) are outside the daily trading range for Sonus common stock on corresponding trading dates.[3] Because BPI's trades, as reflected in its own certification,

---

    [3]    The following purchase transactions for BPI are outside the trading range of Sonus common stock:  58,500 shares on August 12, 2003; 5,500 shares on August 21, 2003; 5,000 shares on August 28, 2003; 3,000 shares on September 5, 2003; 761,400 shares on September 23,

appear to be wholly unreliable, the Court cannot conclude that it has the largest financial interest based on the evidentiary record.

The precedent in this District is clear and directly on point.  In *Nager v. Websecure,* No. 97-10662-GAO, 1997 U.S. Dist. LEXIS 19601, at *3, n.1 (D. Mass. 1997), Judge O'Toole was confronted with a plaintiff who submitted transactions where **one trade** was outside the range.  In refusing to appoint that plaintiff as lead, he commented:

> [Movant] states in his affidavit that on "2/7" he purchased 2,500 shares of common stock of Websecure, Inc. at a price of $17.50 per share. Information supplied by the plaintiffs about the stock's trading indicates, however, that on February 7, 1996, the stock closed, as it had the day before, at $9.50 per share.  The statement in the [Movant's] affidavit may thus be suspected of being inaccurate.  **The inaccuracy may be explainable, but its casts sufficient doubt on [movant's] adequacy as a representative plaintiff that [movant] should be excluded [as lead plaintiff].**

*Id.* (emphasis added) (internal citations omitted).

Unlike in *Nager* (where only one trade was inaccurate), BPI appears to have misrepresented a significant number of purchase and sale trades representing a substantial number of shares.  As a result, BPI's true financial interest as well as its adequacy to represent the Class are called into serious question.  Moreover, in light of BPI's problem with establishing that it has proper standing to serve as lead plaintiff, the Court cannot afford it with the presumption of being the most adequate plaintiff and should reject its application altogether.

---

2003; and 19,200 shares on September 30, 2003.  In addition, the following sale transactions for BPI are outside the trading range of Sonus common stock:  3,000 shares on September 19, 2003; 739,900 shares on September 23, 2003; 19,800 shares on September 29, 2003; 21,900 shares on September 30, 2003; and 450 shares on March 19, 2004.  *Compare* Ex. A to Declaration of Joseph M. Barton In Support of Motion Of BPI Global Asset Management *with* Ex. B to Check Decl. II..

C.    <u>**The Court Should Reject The Global Fund As A Lead Plaintiff Candidate**</u>

1.    **The Global Fund Suffers From An Incurable Conflict Based On Its Counsel's Representation of Competing Plaintiffs In This Case And *Sonus I* [4]**

The rules of professional ethics are clear and unambiguous.  According to ABA Model Rules of Professional Conduct 1.7(a):

> A lawyer shall not represent a client if representation of that client will be directly adverse to another client, unless
>
> (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2)    each client consents after consultation

*See also* Mass. Rules of Professional Conduct 1.7(a) (same).

Here, counsel for the Global Fund, Milberg Weiss, suffers from multiple conflicts that threaten to harm the members of the putative Class if they go unchecked.  First, Milberg Weiss is currently representing two competing movants in this case – the Global Fund and the Jiang Group.[5]  It strains credulity that both the Global Fund and the Jiang Group knew of the other's involvement in this action, not to mention consented to it, prior to filing competing lead plaintiff motions with the same counsel.

Moreover, it is impossible to see how Milberg Weiss can legitimately be in compliance

---

[4]    *In re Sonus Networks, Inc. Securities Litigation*, No. 02-CV-11315 (MLW) (D. Mass. 2002) ("*Sonus I*").

[5]    Moreover, the fact that the movants may be represented by different offices of Milberg Weiss is of little concern.  *See United States v. Nabisco, Inc.*, 117 F.R.D. 40, 46 (E.D.N.Y. 1987) (law firm precluded from representing clients with conflicting interest; fact that one client was represented by firm's Chicago office while competing client was represented by the same firm's New York office was "of little consequence").

with Rule 1.7(a) when it is simultaneously taking positions adverse to both of its clients.  Even if the parties were to somehow remedy this conflict, such as by joining forces or one of the movants withdrawing (undoubtedly at Milberg Weiss' behest), this scenario exemplifies the type of lawyer-driven conduct which the PSLRA was expressly intended to eliminate.[6]  *See Lernout*, 138 F. Supp. 2d at 43 ("One key aim [of the PSLRA] was to empower investors so that they - not their lawyers - exercise primary control over private securities litigation.") (*quoting* S. Rep. No. 104-98, at 4, reprinted in 1995 U.S.C.C.A.N. 679, 683).  Indeed, courts which have been confronted with similar situations have consistently been very critical of this practice.  *See S1 Corp.*, slip op. at 11-12 (disqualifying law firm for simultaneously serving as local for one lead plaintiff movant and proposed co-lead counsel for a competing movant finding the "independence of the prospective lead plaintiffs is dubious when their own choice for co-lead or local counsel has already argued against their position.").  This Court should likewise be very critical of this type of activity and reject each movant's lead plaintiff application.

Equally problematic is the fact that Milberg Weiss currently serves as lead counsel in *Sonus I*, a case in which defendants have moved to dismiss and the parties are presently awaiting a ruling.[7]  In *Sonus I*, Milberg Weiss represents a different class of Sonus shareholders against virtually the same defendants.  While the cases are different – involving different facts,

---

[6]    Indeed, it is difficult to imagine that Milberg Weiss informed each of its clients that they would be competing with each other for the opportunity to represent the putative Class as a lead plaintiff.  Yet, without such communication and consent, there is no way that either movant can demonstrate that it satisfies the adequacy requirement of Rule 23.

[7]    At a minimum, each of Milberg Weiss' moving clients should provide evidence that they were informed of their counsel's various representations in connection with actions involving Sonus.

allegations and class periods – any recovery in either action would likely come from the same source, namely, the Company, its insurers, and/or the individual defendants personally.  Milberg Weiss' potential representation of two classes of Sonus investors creates a real conflict of interest which ultimately could influence its litigation of one action in favor, or at the expense, of the other (and therefore run afoul of Rule 1.7).[8]  *Fiandaca,* 827 F.2d at 831 (circuit court reversed district court's denial of disqualification motion, where class counsel simultaneously represented two classes with competing interests).

In light of these fundamental conflicts, this Court must seriously question the Global Fund's adequacy to represent the putative Class.  Either the Global Fund was well-informed of these conflicts and consented nevertheless, or it never discussed these issues with counsel and therefore has not made informed and educated decisions in connection with seeking to be appointed as lead plaintiff.  Regardless of which description is most accurate, the Global Fund cannot demonstrate that it is an adequate representative plaintiff under Rule 23 and should not be appointed as lead plaintiff.  *Cavanaugh*, 306 F.3d at 733 (choosing counsel who has a conflict of interest indicates proposed lead plaintiff may be inadequate).

### 2.    The Global Fund's Transactions Are Inaccurate

Similar to BPI, the purchase and sale trades in Sonus by the Global Fund (as reflected in its certification) are inaccurate.  Both the Global Fund's purchase of 100,000 shares on January 20, 2004, and its sale of 75,000 shares on February 11, 2004, are outside the trading range for

---

[8]    *See also* Comments to ABA Model Rule Of Professional Conduct 1.7 ("Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests.  The conflict forecloses alternatives that would otherwise be available to the client.").

Sonus common stock on those days.  *Compare* Ex. A to Affidavit of John E Dewick In Support Of Global Undervalued Securities Master Fund's Motion *with* Ex. B to Check Decl. II.  As discussed herein, and consistent with *Nager*, such inaccuracies render one's financial losses unreliable and are a sufficient basis for finding a movant inadequate to serve as lead plaintiff.

### 3.    The Global Fund Has Failed To Make Even A *Prima Facie* Showing of Adequacy

The Global Fund has failed to provide the Court with one shred of information necessary to determine what type of institution it is, for whom it invests, and whether it has proper authorization to bring the claims asserted in this action.  Indeed, courts have rejected movants that fail to provide this most basic information. *See Piven v. Sykes*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (court rejected lead plaintiff motion that neglected to provide information regarding institution's location, type of business, resources and experience).  As discussed in more detail herein (*see* § II(B)(1) *supra*), if the Global Fund is an investment advisor then it must, like BPI, demonstrate that it has full investment discretion on behalf of its clients.  *Rent-Way* at 106.  For each of the reasons stated herein, there is little question that the Global Fund has failed to demonstrate that it has the largest financial interest and otherwise satisfies Rule 23's requirements.  As a result, the Global Fund should be rejected as lead plaintiff.

### D.    <u>Only The Farhat Plaintiff Group Qualifies As The Presumptive Most Adequate Plaintiff</u>

Having demonstrated that each of BPI and the Global Fund has failed to demonstrate that it has the largest financial interest and satisfies Rule 23, only the Farhat Plaintiff Group (as the movant with the next-largest financial interest which does satisfy Rule 23) qualifies as the

presumptive most adequate plaintiff.[2]  *In re Cavanaugh*, 306 F.3d at 731.

The Farhat Plaintiff Group, having suffered financial losses of approximately $731,006 as a result of its class period investments in Sonus, is the movant with the next-largest financial interest in the litigation.  In addition, in support of its timely application to be appointed as lead plaintiff, the Farhat Plaintiff Group's members each filed sworn certifications reflecting their class period transactions in Sonus as well as their desire to serve as representative plaintiffs. *See* Exhibit A to Check Decl. I.  Further, the Farhat Plaintiff Group's members each have submitted a sworn declaration attesting to their knowledge and understanding of the duties and responsibilities associated with serving as a lead plaintiff and their commitment to work as a cohesive group.  Joint Declaration at ¶¶ 2, 4. Moreover, the Farhat Plaintiff Group has selected the law firms of Schiffrin & Barroway, LLP and Goodkind Labaton Rudoff & Sucharow, LLP  to represent it and the putative Class.  As demonstrated by these firms' respective biographies submitted previously (*see* Exhibits F and G to Check Decl. I), these firms are both well-qualified to serve in the capacity as co-lead counsel.  Thus, the Farhat Plaintiff Group has sufficiently satisfied the typicality and adequacy requirements of Rule 23.

Accordingly, only the Farhat Plaintiff Group qualifies as the presumptive most adequate plaintiff and it should be appointed as lead plaintiff.

**E.    All Other Competing Motions Should Be Denied**

Each of the remaining competing movants has suffered financial losses which are less than those suffered by the Farhat Plaintiff Group and therefore should not be considered as lead

---

[2]    Whether the Court finds that BPI and the Global Fund each failed to qualify for the presumption of most adequate plaintiff or that the Farhat Plaintiff Group effectively rebutted the presumption is of no significance.

plaintiffs.  While competing movant James Brower may claim that he suffered the single largest

financial loss, this argument is a non-starter and is routinely rejected by courts around the

country.  *Reiger v. Altris Software, Inc.*, No. 98cv0528J (JFS), 1998 U.S. Dist. LEXIS 14705, at

*13-14 (S.D. Cal. Sept. 11, 1998) ("Court rejects the [] argument that because their group

includes the party with the single largest loss, they should be appointed lead plaintiff.  The

statutory presumption applies to "the person or group of persons" with the greatest financial

interest in the relief sought."); *Meyer v. Paradigm Medical Industries*, No. 2:03-CV-448 TC,

Order at 11 (D. Utah Feb. 27, 2004) (court rejected argument that group that included the

investor with the single largest loss had a larger financial interest than competing group with the

larger aggregate losses) (attached as Ex. C to Check Decl. II).

### III.    CONCLUSION

For the foregoing reasons, the Farhat Plaintiff Group respectfully requests that the Court:

(a) consolidate for all purposes the Related Actions; (b) appoint the Farhat Plaintiff Group as

lead plaintiff; (c) approve Schiffrin & Barroway, LLP and Goodkind Labaton Rudoff &

Sucharow, LLP as lead counsel for the Class; and (d) approve Shapiro Haber & Urmy, LLP as

liaison counsel for the Class.

Dated: April 26, 2004

Respectfully submitted,

**SHAPIRO HABER & URMY, LLP**


**/s/Theodore M. Hess-Mahan**
Theodore Hess-Mahan BBO #557109
75 State Street
Boston, MA 02109
Telephone:    (617) 439-3939
Facsimile:    (617) 439-0134

**Proposed Liaison Counsel**

**SCHIFFRIN & BARROWAY, LLP**
Andrew L. Barroway
Stuart L. Berman
Darren J. Check
Sean M. Handler
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Telephone:    (610) 667-7706
Facsimile:    (610) 667-7056

**GOODKIND LABATON RUDOFF
    & SUCHAROW, LLP**
Jonathan M. Plasse
Christopher J. Keller
100 Park Avenue
New York, NY 10017
Telephone:    (212) 907-0700
Facsimile:    (212) 818-0477

**Proposed Lead Counsel**

-14-