UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>          Defendants. | Civil Action No. 04-CV-10294-DPW<br><br><u>CLASS ACTION</u> |
| MICHELLE TREBITSCH, On Behalf of Herself and All Others Similarly Situated,<br><br>          Plaintiff,<br>  vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>          Defendants. | Civil Action No. 04-CV-10307-DPW<br><br><u>CLASS ACTION</u> |

[Caption continued on following page.]

GLOBAL UNDERVALUED SECURITIES MASTER FUND'S CONSOLIDATED
OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

INFORMATION DYNAMICS, LLC, On
Behalf of Itself and All Others Similarly
Situated,

                    Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10308-DPW

<u>CLASS ACTION</u>

---

PETER KALTMAN, On Behalf of Himself
and All Others Similarly Situated,

                    Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10309-DPW

<u>CLASS ACTION</u>

---

SAMANTHA DEN, Individually and On
Behalf of All Others Similarly Situated,

                    Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10310-DPW

<u>CLASS ACTION</u>

[Caption continued on following page.]

| | | |
|---|---|---|
| RICHARD CURTIS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 04-CV-10314-MLW |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SONUS NETWORKS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| RONALD KASSOVER, On Behalf of the Ronald Kassover IRA and All Others Similarly Situated, | ) ) ) ) | Civil Action No. 04-CV-10329-DPW |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SONUS NETWORKS, INC., et al., | ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| STEVE L. BAKER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 04-CV-10333-DPW |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SONUS NETWORKS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

MICHAEL KAFFEE, Individually and On Behalf of All Others Similarly Situated,

              Plaintiff,

    vs.

SONUS NETWORKS, INC., et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10345-DPW

<u>CLASS ACTION</u>

---

HAIMING HU, Individually and On Behalf of All Others Similarly Situated,

              Plaintiff,

    vs.

SONUS NETWORKS, INC., et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10346-DPW

<u>CLASS ACTION</u>

---

CHARLES STARBUCK, Individually and On Behalf of All Others Similarly Situated,

              Plaintiff,

    vs.

SONUS NETWORKS, INC., et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10362-DPW

<u>CLASS ACTION</u>

[Caption continued on following page.]

| | |
|---|---|
| SAMUEL HO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>Defendants. | Civil Action No. 04-CV-10363-DPW<br><br>CLASS ACTION |
| JEFFREY C. RODRIGUES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>Defendants. | Civil Action No. 04-CV-10364-DPW<br><br>CLASS ACTION |
| ROBERT CONTE and MARK RESPLER, Themselves and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>Defendants. | Civil Action No. 04-CV-10382-DPW<br><br>CLASS ACTION |

[Caption continued on following page.]

WHEATON ELECTRICAL SERVICES
RETIREMENT 401K PROFIT SHARING
PLAN, On Behalf of Itself and All Others
Similarly Situated,

                         Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                         Defendants.

Civil Action No. 04-CV-10383-DPW

<u>CLASS ACTION</u>

---

BRIAN CLARK, Individually and On Behalf
of All Others Similarly Situated,

                         Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                         Defendants.

Civil Action No. 04-CV-10454-DPW

<u>CLASS ACTION</u>

---

SHEILA BROWNELL, Individually and On
Behalf of All Others Similarly Situated,

                         Plaintiff,

      vs.

SONUS NETWORKS, INC., et al.,

                         Defendants.

Civil Action No. 04-CV-10597-DPW

<u>CLASS ACTION</u>

[Caption continued on following page.]

| | |
|---|---|
| SAVERIO PUGLIESE, On Behalf of Himself and All Others Similarly Situated, ) | Civil Action No. 04-CV-10612-DPW |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| vs. ) | |
| SONUS NETWORKS, INC., et al., ) | |
| Defendants. ) | |

| | |
|---|---|
| DAVID V. NOCITO, On Behalf of Himself and All Others Similarly Situated, ) | Civil Action No. 04-CV-10623-DPW |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| vs. ) | |
| SONUS NETWORKS, INC., et al., ) | |
| Defendants. ) | |

| | |
|---|---|
| JONATHAN A. ZULAUF, On Behalf of Himself and All Others Similarly Situated, ) | Civil Action No. 04-CV-10714-DPW |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| vs. ) | |
| SONUS NETWORKS, INC., et al., ) | |
| Defendants. ) | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................3

    A.    The PSLRA's Procedures for the Appointment of Lead Plaintiff ..........................3

    B.    Global Securities is the PSLRA's Most Adequate Plaintiff ...................................4

        1.    Global Securities Has the Largest Financial Interest...................................4

        2.    Global Securities Satisfies the Requirements of Rule 23 ...........................6

    C.    BPI Should Not Be Appointed Lead Plaintiff Because It Cannot Satisfy
        Any of the PSLRA's Most Adequate Plaintiff Requirements ................................7

        1.    BPI Does Not Have a Financial Interest in the Outcome of This
            Litigation.................................................................................................7

        2.    BPI Submitted a Defective Certification Pursuant to the PSLRA ..............9

    D.    The Remaining Movants Are Not Eligible for Appointment as Lead
        Plaintiff ...............................................................................................................10

        1.    None of the Groups Meet the Requirements to Be Appointed Lead
            Plaintiff ..................................................................................................10

        2.    The Belland Group Has Not Complied with the Requirements of
            the PSLRA Because It Has Submitted Defective Certifications ...............11

        3.    James M. Brower, Brad Rollow, Chris E. Paterick and Jeffrey Foss
            Should Not Be Appointed Lead Plaintiff Because They Do Not
            Possess the Largest Financial Interest and Because They Are Not
            Favored Investors by PSLRA Legislative History....................................13

III.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page**

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)..................................................................6

*Bobrow v. Mobilmedia, Inc.*,
    No. 96-4715, 1997 U.S. Dist. LEXIS 23806
    (D.N.J. Mar. 31, 1997).......................................................................13

*Chill v. Green Tree Fin. Corp.*,
    181 F.R.D. 398 (D. Minn. 1998)....................................................9, 10, 11

*Davidson v. Belcor, Inc.*,
    933 F.2d 603 (7th Cir. 1991) ..............................................................5, 7

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996) .....................................................*Passim*

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999)...........................................................13

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .............................................................4

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) ................................................3, 10, 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97 F. Supp. 2d 993 (N.D. Cal. 1999) ....................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) .........................................................8

*In re Rite Aid Corp. Sec. Litig.*,
    269 F. Supp. 2d 603 (E.D. Pa. 2003) ....................................................6

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002) ..................................................2, 5, 7, 8

*Janovici v. DVI, Inc.*,
    No. 2:03-CV-04795-LDD, 2003 U.S. Dist. LEXIS 22315
    (E.D. Pa. Nov. 25, 2003)....................................................................14

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988)..........................................................6

Page

*Sakhrani, v. Brightpoint, Inc.*,
  78 F. Supp. 2d 845 (S.D. Ind. 1999) ........................................................14

*Schulman v. Lumenis, Ltd.*,
  No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348
  (S.D.N.Y. June 17, 2003)........................................................................3, 14

*Smith v. Suprema Specialties, Inc.*,
  206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................*Passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4 .......................................................................................................3
  §78u-4(a)(2) .......................................................................................*Passim*
  §78u-4(a)(2)(A)..............................................................................9, 11, 12
  §78u-4(a)(2)(A)(v)....................................................................................2
  §78u-4(a)(3) ..........................................................................................1, 4
  §78u-4(a)(3)(A)(i)......................................................................................9
  §78u-4(a)(3)(A)(ii).....................................................................................9
  §78u-4(a)(3)(B)......................................................................................7, 13
  §78u-4(a)(3)(B)(i).......................................................................................3
  §78u-4(a)(3)(B)(iii).....................................................................................1
  §78u-4(a)(3)(B)(iii)(I)........................................................................4, 5, 11
  §78u-4(a)(3)(B)(iii)(I)(cc)...........................................................................6
  §78u-4(a)(3)(B)(iii)(II) ...............................................................................4

Federal Rules of Civil Procedure
  Rule 23 .............................................................................................*Passim*
  Rule 23(a)...................................................................................................6
  Rule 23(a)(4)..............................................................................................6

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.A.A.N. 679, 689-90 ...........................................13

The Global Undervalued Securities Master Fund ("Global Securities") respectfully submits this memorandum of law in opposition to the competing motions for appointment as lead plaintiff filed by: (1) the Farhat Plaintiff Group; (2) James M. Brower; (3) the Wexler Group; (4) Brad Rollow; (5) the Belland Group; (6) the Jiang Group;[1] (7) Mohammed Akhtar; (8) Saverio Pugliese[2]; (9) Chris E. Paterick; (10) Jeffrey Foss; and (11) BPI Global Asset Management LLP ("BPI").

## I.    INTRODUCTION

Of the twelve proposed lead plaintiffs presently before the Court, Global Securities should be appointed lead plaintiff pursuant to the Private Securities Litigations Reform Act of 1995 ("PSLRA") because, with losses exceeding $920,000, it has the largest financial interest of any movant that otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Indeed, as evidence of its ability to satisfy all of the PSLRA's "most adequate plaintiff" provisions, in *Americredit*, Judge Means appointed Global Securities as a lead plaintiff on behalf of the class.  *See Pierce v. Americredit Corp., et al.*, No. 4:03-CV-026-Y, Order (N.D. Tex. May 19, 2003), (Rooney Opp. Aff., Ex. C).

Despite its seemingly significant financial interest in this litigation ($5.3 million), BPI cannot be appointed lead plaintiff for three reasons.  ***First***, BPI is an investment advisor that has failed to provide the court with ***any*** evidence that it possesses the necessary authority to bring suit on its clients' behalf.  *See Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002) (holding

---

[1]    On April 26, 2004, the Jiang Group withdrew its motion for appointment as lead plaintiff. *See* Affidavit of John F. Rooney, III in Support of Global Undervalued Securities Master Fund's Consolidated Opposition to Competing Motions for Appointment as Lead Plaintiff ("Rooney Opp. Aff."), Ex. A.

[2]    On April 22, 2004, Mr. Pugliese withdrew his motion for appointment as lead plaintiff.  *See* Rooney Opp. Aff., Ex. B.

that an investment advisor must provide evidence that it acts as attorney-in-fact for its clients and is authorized to bring suit to recover for, among other things, investment losses). ***Second***, as the Southern District of New York has already held, BPI does not have standing to claim its ***clients'*** financial interest under the federal securities laws. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002). There, Judge Buchwald "decline[d] to certify BPI as a lead plaintiff" because she found that "BPI was not the legal purchaser" of the stock in question. *Id.* at 358.

Third, and ***finally***, BPI is not the most adequate plaintiff because it submitted a certification that failed to comport with a basic requirement of the PSLRA – namely, that a movant "identif[y] any other [securities] action ... filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff ***has sought to serve*** as a representative party on behalf of a class."[3]  15 U.S.C. §78u-4(a)(2)(A)(v). Here, in clear contravention of the PSLRA's certification requirement, BPI omitted its involvement in *Turkcell*, and stated that it had "not served as a representative party in ***five or more*** class action cases filed under the federal securities laws." *See* Declaration of Joseph M. Barton in Support of Motion of BPI Global Asset Management LLP to Be Appointed as Lead Plaintiff and for Its Counsel to Be Appointed as Lead Counsel ("Barton Decl.), Ex. A., filed April 12, 2004; *see also Greebel v. FTP Software*, 939 F. Supp. 57, 62, 64 (D. Mass. 1996) (holding that a movant that fails to meet PSLRA's certification requirement may not be appointed lead plaintiff).

Unlike Global Securities, none of the remaining movants should be appointed lead plaintiff because each has a smaller financial interest than Global Securities and because they are either

---

[3]      Citations and footnotes are omitted, and emphasis is added, unless otherwise noted.

individuals that lack the necessary sophistication and expertise to oversee complex securities fraud class actions, or have not established that they possess the necessary cohesiveness to properly control either this litigation or their lawyers.[4]  *See Schulman v. Lumenis, Ltd*., No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348, at *10 (S.D.N.Y. June 17, 2003) (holding that institutional investors are in the best position to prosecute securities fraud claims and to negotiate with and supervise counsel); *see also Lernout*, 138 F. Supp. 2d at 44 (holding that a court should not "confer lead plaintiff status on a group without considering whether the grouping is sufficiently coherent to control the litigation").

Based on the foregoing, and the arguments below, Global Securities should be appointed lead plaintiff and all other competing motions should be denied.

## II.    ARGUMENT

### A.    The PSLRA's Procedures for the Appointment of Lead Plaintiff

Section 21D of the PSLRA provides that in securities class actions, courts "shall appoint as lead plaintiff the member ***or members*** of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  In determining who is the most adequate plaintiff the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [chapter] is the person or group of persons that –
>
> \*      \*      \*
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[4]    Indeed, none of the movant groups have explained why they moved as groups in the first instance.  *See In re Lernout & Hauspie Sec. Litig*., 138 F. Supp. 2d 39, 45 (D. Mass. 2001) (holding that a proposed lead plaintiff group must '"explain and justify its composition and structure to the court's satisfaction"' before being appointed lead plaintiff).

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The PSLRA's rebuttable presumption may be rebutted by proof

that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of
adequately representing the class.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

### B.    Global Securities is the PSLRA's Most Adequate Plaintiff

### 1.    Global Securities Has the Largest Financial Interest

In *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002), the Ninth Circuit held that a

"straightforward reading of the statutory language discloses a clear path that the district court must

follow" to appoint a lead plaintiff.  The district court "must compare the financial stakes of the

various plaintiffs" to identify "which one has the most to gain from the lawsuit." *Id*. at 730.  "The

'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial

stake in the outcome of the case, ***so long as*** he meets the requirements of Rule 23." *Id*. at 729; *see*

*Greebel*, 939 F. Supp. at 59.

Here, Global Securities expended over $2.4 million, purchased 300,000 shares of Sonus

Networks, Inc. ("Sonus") common stock between April 9, 2003 and February 12, 2004 (the "Class

Period") at prices artificially inflated by defendants' materially false and misleading statements and

sustained out-of-pocket losses of over $920,000 as a result thereof.[5]

---

[5]    Movant's losses are identified in the chart entitled "Chart of Movant's Purchases and
Losses," attached as Exhibit B to the Affidavit of John E. DeWick in Support of Global Undervalued
Securities Master Fund's Motion to Be Appointed Lead Plaintiff Pursuant to §21D(a)(3)(B) of the
Securities Exchange Act of 1934 and for Appointment of Lead Counsel ("DeWick Aff."), filed
April 12, 2004.

By contrast, the largest **bona fide** loss of the next largest movant – the Farhat Plaintiff Group – is approximately $731,000 (or only about 80% of Global Securities' losses). Not only are the losses of the various other movants – whether calculated individually or collectively – far less than Global Securities', but those movants seeking appointment as groups have failed to provide the requisite evidence that demonstrates that they are capable of being appointed lead plaintiff and directing this litigation. *See* §II.D *infra*.

Further, as discussed in more detail in §II.C.1 *infra*, the issue of "financial interest in the relief sought" is a fundamental principle underlying the lead plaintiff provisions of the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). In *In re McKesson HBOC*, for instance, the court reasoned that "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover." *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999). Here, as Judge Buchwald reasoned in *Turkcell*, BPI cannot credibly claim to have **any** financial interest in this litigation because "BPI ... is purely an investment advisor, not itself an investor" and hence would recover nothing in this case were plaintiffs able to obtain a recovery on behalf of the class.[6] *See Turkcell*, 209 F.R.D. 353; *Davidson v. Belcor, Inc.*, 933 F.2d 603, 606 (7th Cir. 1991) ("[O]nly **actual purchasers** and sellers of securities have standing to pursue private causes of action."). Indeed, nothing in BPI's submitted materials even **attempts** to evidence its standing to claim a pecuniary interest on behalf of those it purports to represent in this case. *See Smith*, 206 F. Supp. 2d at 634-35.

---

[6] Conversely, Global Securities is a "hedge fund" that purchases and sells securities for its own account. Further, for purposes of this litigation, Global Securities did not engage in any form of hedging investment strategies.

### 2.    Global Securities Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I) of the Securities Exchange Act of 1934 ("Exchange Act") provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representatives, Rule 23(a) requires that their claims be typical of the claims of the class and that the representatives fairly and adequately protect the interests of the class.

Global Securities readily satisfies the typicality and adequacy requirements of Rule 23(a) and is fully qualified to be appointed lead plaintiff. *See Americredit*, Order at 1 (appointing Global Securities as lead plaintiff). Here, Global Securities is a typical representative because its interest in aggressively pursuing the claims against defendants is clearly aligned with the interests of the members of the class, who similarly suffered losses because of defendants' false statements. Hence, there is no antagonism between Global Securities' interests and those of the other members of the class. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("'With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'").

Under Rule 23(a)(4) the representative party must also "'fairly and adequately protect the interests of the class.'" *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). The PSLRA directs this Court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See id*.

- 6 -

Global Securities also meets the requirements of Rule 23(a)(4) because its chosen counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. *See In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003) (finding that it "would be hard to equal the skill [Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss")] demonstrated" in representing the interests of the class). The firm employs well over 200 attorneys and has a litigation support staff consisting of dozens of paralegals, legal secretaries, forensic accountants, investigators, financial analysts and document clerks. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002) (finding that the submissions of Milberg Weiss "stand out in the breadth and depth of its research and insight"). Thus, Global Securities *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

Accordingly, Global Securities should be appointed lead plaintiff because it meets all of the PSLRA's most adequate plaintiff requirements. *See* 15 U.S.C. §78u-4(a)(3)(B).

**C.     BPI Should Not Be Appointed Lead Plaintiff Because It Cannot Satisfy Any of the PSLRA's Most Adequate Plaintiff Requirements**

**1.     BPI Does Not Have a Financial Interest in the Outcome of This Litigation**

Under the federal securities laws, "only ***actual purchasers*** and sellers of securities have standing to pursue private causes of action." *See Davidson*, 933 F.2d at 606; *Turkcell*, 209 F.R.D. at 357-58 (finding that BPI is not a purchaser for purposes of the federal securities laws). Here, because BPI is an investment advisor that receives fees in exchange for investing its clients' money. It is "not the legal purchaser" of Sonus stock. *See Turkcell*, 209 F.R.D. at 357-58 (finding that BPI's only financial interest in that litigation was the ".35% fee it earned on the total assets it invested" on behalf of its clients). Hence, it is BPI's ***clients***, and not BPI itself, that suffered losses due to the fraud alleged against defendants and BPI has failed to submit any evidence that it has ***any*** beneficial interest in Sonus stock, or in the alternative, that it had received authorization from its clients (the

actual stock owners) to participate in this lawsuit on their behalf *prior to the time that BPI filed its motion on April 12, 2004*. *See Smith*, 206 F. Supp. 2d 627.

Because BPI merely *manages* other people's money, BPI does not have standing to bring claims for violations of the Exchange Act, let alone act as lead plaintiff absent evidence that its clients have expressly provided this authority. *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) ("[A] plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law."); *Smith*, 206 F. Supp. 2d 627. In *Turkcell*, the court actually *declined to certify BPI as lead plaintiff* for this very reason. 209 F.R.D. at 358. There, the court found that "[t]he fact that BPI was not the legal purchaser of Turkcell stock prevents them from suing on behalf of its investors." *Id*. at 358. Here, as in *Turkcell*, BPI is not the legal purchaser of Sonus stock and has failed to demonstrate that it possesses the necessary standing to pursue claims under the Exchange Act by evidencing that it had "attorney-in-fact" authority at the time the action was commenced to bring suit on behalf of its clients. *Id.; see also* Barton Decl., Ex. 2.

To illustrate further, in *Smith,* the court addressed whether an investment advisor like BPI could be appointed lead plaintiff on behalf of entities for whom it claimed to make investment decisions. 206 F. Supp. 2d at 634. The court found that, "*[a]lthough on the surface* it appear[ed]" that the investment advisor had suffered the greatest financial loss, it was not entitled to lead plaintiff status because it did not, for instance, submit evidence that they received permission to move on their clients' behalf. *Id*. at 633-34. In denying the investment advisor's motion, the Smith court reduced its claimed losses from $2.1 million to $310,000 – representing the difference between its claimed financial interest and those the advisor actually had standing to claim. *Id*. at 636.

Ultimately, BPI has presented no evidence that it was granted authority to file suit against Sonus (as opposed to the authority to use its investment discretion) on behalf of the accounts it manages for those clients that actually own the Sonus stock.[7]  Because none of BPI's clients timely moved for appointment as lead plaintiff or submitted a certification in support of this litigation, this defect is irreparable.  15 U.S.C. §78u-4(a)(3)(A)(i)-(ii).  Therefore, the Court should deny BPI's motion for appointment of lead plaintiff.

      2.      **BPI Submitted a Defective Certification Pursuant to the PSLRA**

The PSLRA requires each lead plaintiff applicant to provide a sworn certification setting forth all of its transactions and identifying all actions in which it has sought to serve as lead plaintiff during the previous three years:

> Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that –
>
>       *        *        *
>
> (v)      identifies any other action under this title [15 U.S.C. §§78a, et seq.], filed during the 3-year period preceding the date on which the

---

[7]      These facts raise serious doubts regarding BPI and highlight the problem with proceeding without more information from a proposed lead plaintiff.  In *Pre-Paid*, proposed lead counsel submitted a lead plaintiff motion on behalf of an investment advisor, like BPI.  *See Gradwell v. Pre-Paid, Legal Services, Inc., et al.*, No. CIV-01-182-C, Order (W.D. Okla. May 15, 2001) (Rooney Opp. Aff., Ex. D).  There, the employee that signed the investment advisor's certification simply thought he was mailing a claim form, not committing the investment firm to act as a fiduciary directing a complex, multimillion dollar securities fraud class action.  Later, Robert Poole, Chairman of Bricoluer Capital Management ("Bricoluer") withdrew Bricoluer as lead plaintiff from the appellate proceeding pending in the Tenth Circuit.  The withdrawal occurred immediately upon learning that an action purportedly on behalf of Bricoluer had been filed almost a year before.  According to a statement given by Mr. Poole following his withdrawal, "'[i]t was never our firm's informed decision to participate in the first place.'"  *See* Brian Brus, *Plaintiff Drops Out of Pre-Paid Lawsuit Biggest Investor Sees No Merit in Continuing with Appeals*, Daily Oklahoman, Aug. 16, 2002.  (Rooney Opp. Aff., Ex. E).

certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class.

15 U.S.C. §78u-4(a)(2)(A). The PSLRA's lead plaintiff certification requirements must be met, and any party may point out the failure of another party to meet those requirements. *See Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 409-10 (D. Minn. 1998); *Greebel*, 939 F. Supp. at 61. Any party not meeting these requirements may not serve as lead plaintiff. *Id*. Here, at the very least, BPI's certification failed to apprise the Court of its involvement in *Turkcell*. *See* Barton Decl., Ex. A. Accordingly, BPI's application for lead plaintiff should be denied for the additional reason that its certification is either false or fatally defective. *See Chill*, 181 F.R.D. at 409-10; *Greebel*, 939 F. Supp. at 61.

**D.    The Remaining Movants Are Not Eligible for Appointment as Lead Plaintiff**

**1.    None of the Groups Meet the Requirements to Be Appointed Lead Plaintiff**

While some courts have declined to appoint groups as lead plaintiff, others have concluded that the appointment of a relatively small group as lead plaintiff is permissible under the PSLRA. In this District, groups have generally been considered acceptable lead plaintiffs. *See, e.g., Greebel*, 939 F. Supp. 57. However, this District has nevertheless held that a court should not "confer lead plaintiff status on a group without considering whether the grouping is sufficiently coherent to control the litigation." *Lernout*, 138 F. Supp. 2d at 44. In evaluating the cohesiveness of a group, this Court should consider the group's structure to ensure that its members are capable of cohesively directing the litigation. *See id*. at 45. This analysis requires a group to "'explain and justify its composition and structure to the court's satisfaction .... ' [A] court may consider all relevant factors, such as 'descriptions of [the group's] members, including any pre-existing relationships among them; an explanation of how its members would function collectively; and a description of

- 10 -

the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'" *Id*.

Here, in addition to possessing smaller financial interests than Global Securities, none of the groups seeking to be appointed lead plaintiff have made the necessary showing to be appointed as a lead plaintiff group. *See Lernout*, 138 F. Supp 2d 39. Furthermore, with losses of $731,006, $365,864, $123,874 and $102,635 respectively, the Farhat Plaintiff Group, the Wexler Group, the Belland Group and Jiang Group's financial interest in this litigation is significantly smaller than Global Securities' ($920,000). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

## 2. The Belland Group Has Not Complied with the Requirements of the PSLRA Because It Has Submitted Defective Certifications

In addition to the fact that the Belland Group's claimed losses ($123,874) are smaller than Global Securities' ($920,000) and the Belland Group's members have failed to show that they have the necessary relationships and ability to lead this important litigation, the Belland Group's certifications are defective.[8] The PSLRA mandates that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class ***shall*** provide a sworn certification" within 60 days of the published notice. 15 U.S.C. §78u-4(a)(2)(A). Additionally, each certificate "shall be ***personally signed*** by such plaintiff[s]." *Id*. Any party that does not timely meet this mandatory requirement may not serve as lead plaintiff. The PSLRA's certification requirement must be met, and any party may point out the failure of another party to meet these requirements. *See Chill*, 181 F.R.D. at 409-

---

[8] For purposes of this motion, Global Securities uses the purported losses claimed by the Belland Group in its motion for appointment as lead plaintiff. In fact, however, the group's actual losses are much smaller, amounting to approximately $75,000. *See* §II.D *infra*. The Belland Group's smaller actual financial interest is of no consequence to the Court's lead plaintiff determination because under either calculation Global Securities possesses a much larger financial interest than the Belland Group.

410; *Greebel*, 939 F. Supp. at 61.  Any party not meeting these requirements may not serve as lead plaintiff.  *Id*.

Here, the Belland Group's certifications are statutorily infirm.   For instance, Grace I. Belland, who moved for appointment in her individual capacity, is apparently also attempting to claim the Grace I. Belland Living Trust's financial interest whose certification she purportedly also signed in her capacity as trustee.[9]  While a trustee has standing to bring a securities fraud action, she must do so as a "trustee" and not in her individual capacity, as Grace Belland attempts to do here. *See Weisz v. Calpine Corp., et al.*, No. C 02-1200 SBA, Order (N. D. Cal. Aug. 19, 2002) (movant could not incorporate financial interest of certain family trusts when he sought appointment in his individual capacity, not as "trustee" of his family trust.) (Rooney Opp. Aff., Ex. F).

Jacob Sherman suffers from the same problem - he is attempting to claim the financial interests of ***four*** separate trusts, two in his capacity as Trustee, while the other two are signed by each trust's trustee, who are not moving for appointment as lead plaintiff in any capacity.[10]  Jacob Sherman's only connection to those trusts is that, judging by a stamp present on both, he is apparently the trusts' accountant.  *See* Declaration of Theodore M. Hess-Mahan in Support of the Belland Group's Motion to Consolidate, to Be Appointed Lead Plaintiff, and for Approval of Its Selection of Co-Lead Counsel ("Hess-Mahan Decl."), Ex. 2, filed April 12, 2004.  In addition to a trustee's inability to incorporate the trust's interest when moving for appointment in their individual

---

[9]    In its motion, the Belland Group states that the plaintiffs moving for appointment are "Plaintiffs Grace I. Belland, Leopoldo L. Mestre, Jacob I. Sherman, Scott L. Dunkley, Abdul S. Budhinani, and Sean P. McCarthy."  *See* Belland Group's Memorandum of Law in Support of Its Motion to Consolidate, to Be Appointed Lead Plaintiff, and for Approval of Its Selection of Co-Lead Counsel ("Belland Group's Mem.") at 1, filed April 12, 2004.

[10]    *See* footnote 8 *supra*.

capacity, there is absolutely no authority allowing the accountant of a trust to assert standing on behalf of the trusts, let alone claim the trusts' financial interest in moving for lead plaintiff.  15 U.S.C. §78u-4(a)(2)(A) ("***Each plaintiff seeking to serve*** as a representative party on behalf of a class shall provide a sworn certification, which shall be ***personally signed by such plaintiff*** .... ")  Ultimately, the financial interest Jacob Sherman purports to claim is not entirely his own − rather, the overwhelming majority belongs to the various trusts listed on the certifications.  *See* Hess-Mahan Decl., Ex. 2.  Contrary to what the Belland Group may argue, the financial interests of other class members whom it purports to represent are immaterial.  *See Bobrow v. Mobilmedia, Inc*., No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. Mar. 31, 1997).

Similarly, the certifications of the Loitman Children's Irrevocable Trust and the Loitman Grandchildren's Irrevocable Trust are defective because Jacob Sherman, the trustee for both of the Loitman trusts has moved for appointment in his individual capacity rather than in his capacity as trustee.  Two other certifications incorporated into the Belland Group's application, the Bernard Loitman Revocable Living Trust and the Charlotte Loitman Irrevocable Trust, are defective for the same reasons.  Hess-Mahan Decl., Ex. 2.

### 3.    James M. Brower, Brad Rollow, Chris E. Paterick and Jeffrey Foss Should Not Be Appointed Lead Plaintiff Because They Do Not Possess the Largest Financial Interest and Because They Are Not Favored Investors by PSLRA Legislative History

In enacting the PSLRA, Congress was reacting to perceived abuses in private securities class action lawsuits.  *See* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 689-90; *In re Baan Co. Sec. Litig*., 186 F.R.D. 214, 218 (D.D.C. 1999) (appendix).  One response by Congress to these perceived abuses was to encourage courts to appoint as lead plaintiffs shareholders, preferably institutional investors, with (1) large financial stakes in the outcome of the litigation, and which (2) possessed the requisite resources and sophistication to manage and

- 13 -

supervise class counsel. *See* 15 U.S.C. §78u-4(a)(3)(B); H.R. Conf. Report No. 104-369, at 733 ("The Conference Committee believes that increasing the role of ***institutional investors*** ... will ultimately ***benefit shareholders and assist courts*** by improving the quality of representation in securities class actions.").

Here, with losses of $400,875, $209,270, $30,440 and $28,057 respectively, James M. Brower, Brad Rollow, Chris E. Paterick and Jeffrey Foss should not be appointed lead plaintiff because, in addition to their smaller losses, they have not provided ***any*** evidence that they possess the necessary Rule 23 qualifications to serve as fiduciaries on behalf of the class. *See Smith*, 206 F. Supp. 2d at 635 (rejecting lead plaintiff motion for, *inter alia*, failing to provide any evidence of movant's willingness to "accept the substantial obligations associated with being named lead plaintiff"); *Sakhrani, v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 847-48 (S.D. Ind. 1999) (same).

By contrast, Global Securities should be appointed lead plaintiff because it has the largest financial interest in the outcome of the litigation and, as the sole qualified institutional investor before the Court, possesses the necessary investment experience to best prosecute this litigation and, accordingly, best meet the requirements of Rule 23. *See Janovici v. DVI, Inc.*, No. 2:03-CV-04795-LDD, 2003 U.S. Dist. LEXIS 22315, at *13 (E.D. Pa. Nov. 25, 2003) (Legrome, J.) (confirming Congress' belief that effective ""''control over the selection and actions of plaintiffs' counsel" … could ***best be achieved*** by encouraging institutional investors to serve as lead plaintiffs'''); *Schulman*, 2003 U.S. Dist. LEXIS 10348, at *10 (holding that institutional investors are in the best position to prosecute securities fraud claims and to negotiate with and supervise counsel).

## III.    CONCLUSION

For all of the above reasons, Global Securities respectfully requests that the Court deny the competing motions for appointment as lead plaintiff and selection of lead counsel, appoint Global Securities as Lead Plaintiff, and approve its choice of Lead Counsel.

DATED:  April 26, 2004

Respectfully Submitted,

MELICK, PORTER & SHEA, LLP
RICHARD J. SHEA, BBO #456310
JOHN F. ROONEY, III, BBO #426895
JOHN E. DeWICK, BBO #654723

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on 4/26/04  /s/John R. Rooney, III

_____

_____ /s/ John F. Rooney, III _____
JOHN F. ROONEY, III

28 State Street
Boston, MA  02109
Telephone:  617/523-6200
617/523-8130 (fax)

[Proposed] Liaison Counsel

MILBERG WEISS BERSHAD
   HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III
RAMZI ABADOU
THOMAS E. GLYNN
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sonus Networks CA\LP00008956.doc