**EXHIBIT F**

F I L E D

AUG 1 9 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLINE WEISZ, on behalf of herself
and all others similarly situated,

           Plaintiffs,

      v.

CALPINE CORPORATION, PETER C.
CARTRIGHT, ANN B. CURTIS AND
CHARLES B. CLARK,

           Defendants.

No. C 02-1200 SBA

**ORDER RE MOTIONS FOR
APPOINTMENT OF LEAD PLAINTIFF
AND FOR CONSOLIDATION**

[Docket Nos. 15, 22, 23, 26, and 28]

Plaintiff's Counsel ... ... ... ...
Order upon all cases parties for this ...

## INTRODUCTION

    This is a securities fraud class action brought against defendant Calpine Corporation ("Calpine") and certain of its officers and/or directors ("the Individual Defendants") for violations of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder. Presently, there are a total of fourteen separate class action lawsuits pending in this Court filed against Calpine and the Individual Defendants which allege that they made false and misleading statements to artificially inflate the price of Calpine stock. The lawsuits were filed on behalf of a putative class composed of purchasers of Calpine publically-traded securities during the Class Period from January 5, 2001, through December 13, 2001.

    In addition to the above-discussed actions, there is a separate action brought by Julius Ser on behalf of a putative class of bondholders; namely, purchasers of 8.5% Senior Notes issued by Calpine during the period encompassing October 15, 2001 through December 13, 2001. That action, now styled as <u>Ser v. Calpine Corp.</u>, Case No. C 02-2316 SBA, was filed on May 13, 2002. Like the

1  other fourteen related actions, the Ser complaint alleges that Calpine made materially misleading

2  statements concerning its 2001 financial results. The defendants in Ser are the same as in the other

3  actions, except that the underwriters for the initial public offering are also included as party-

4  defendants. Unlike the other class actions, the claims in Ser arise under Sections 11 and 15 of the

5  Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77K, 15 U.S.C. § 77o, respectively.

6       The parties are presently before the Court on a variety of motions filed by four groups of

7  plaintiffs: (1) Northern Oak Capital Management, Inc. ("Northern Oak") and Vincent H. Tomei

8  ("Tomei"), collectively referred to as "Northern Oak-Tomei"; (2) Andre W.L. Hickam ("Hickam")

9  and Mansukh B. Makadia ("Makadia"), collectively referred to as "Hickam-Makadia"; (3) Laborers

10  Local 1298 Pension Fund ("Local 1298"); and the (4) Policemen and Firemen Retirement System of

11  the City of Detroit ("Detroit"). Each of the four groups seeks appointment as lead plaintiff in

12  accordance with the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

13  and the opportunity to select counsel of its choosing.

14       In addition, Northern Oak-Tomei and Hickam-Makadia seek the consolidation of the

15  fourteen class action lawsuits pending against Calpine and the Individual defendants. All parties

16  agree to the consolidation; however, Calpine, the Individual Defendants, and Local 1298 request that

17  the Court include the Ser action in the consolidation order. Ser opposes that request. In accordance

18  with the PSLRA, the Court first resolves the matter of consolidation, and then addresses the various

19  requests for appointment as lead plaintiff.[1]

20  //

21  //

22  //

23

24  [1]The motions specifically presented for adjudication are: (1) Motion of the Policemen and
Firemen Retirement System of the City of Detroit to Appoint It as Lead Plaintiff and for Approval of

25  Its Selection of Lead Counsel; (2) Andre W.L. Hickam and Mansukh B. Makadia's Motion to
Consolidate Related Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel; (3) Northern

26  Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint Northern Oak Capital
Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve Lead Plaintiff's Choice of

27  Lead Counsel; (4) Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to
Consolidate Related Actions and Preserve Documents; and (5) Laborers Local 1298 Pension Fund's

28  Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel.

2

1                                            <u>DISCUSSION</u>

2    A.    <u>CONSOLIDATION</u>

3          1.    <u>Legal Standard</u>

4          Federal Rule of Civil Procedure 42(a) provides that "when actions involving common

5    questions of law or fact are pending before the court, it . . . may order all the actions

6    consolidated . . . ." The district court has "broad discretion under this rule to consolidate cases

7    pending in the same district." <u>Investors Research Co. v. United States Dist. Ct.</u>, 877 F.2d 777 (9th

8    Cir. 1989). The purpose of consolidation is to avoid the unnecessary costs or delays that would

9    ensue from proceeding separately with claims or issues sharing common aspects of law or fact.

10   <u>EEOC v. HBE Corp.</u>, 135 F.3d 543, 550 (8th Cir. 1998).

11         The PSLRA "directs that cases should be consolidated where . . . there is 'more than one

12   action on behalf of a class asserting substantially the same claim or claims.'" <u>In re Cendant</u>

13   <u>Corp.Litig.</u>, 182 F.R.D. 476, 478 (D. N.J.1998) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Where, as

14   here, there is more than one action on behalf of the proposed class asserting substantially the same

15   claim, Section § 78u-4(a)(3)(B)(ii) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(ii), requires that any

16   motions for consolidation be decided first, and that "as soon as practicable" thereafter, the Court

17   "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." <u>Id.</u>

18         2.    <u>Scope of the Consolidation</u>

19         Northern Oak-Tomei and Hickam-Makadia move for consolidation of the fourteen securities

20   class actions filed against Calpine and others in this Court. There is no dispute by any of the parties

21   that all of the securities class actions present substantially similar factual and legal claims against the

22   same defendants, and as such, consolidation is appropriate. However, Calpine and the Individual

23   Defendants request that the Court also include <u>Ser</u> in the consolidation order on the ground that

24   allegations forming Ser's claims are virtually identical to those presented in the other securities

25   actions.[2]

26         Ser contends that consolidation of his complaint with the remaining actions is inappropriate

27   _____

28      [2] At the hearing, the underwriter defendants in <u>Ser</u> also concurred in the request to
     consolidate the <u>Ser</u> action with the other Calpine actions.

                                                 3

1 in light of the different claims alleged. Specifically, whereas bondholder claims are based on

2 violations of Sections 11 and 15 of the 1933 Act, the stockholder claims are predicated on Rule 10b-

3 5 and Section 10b of the 1934 Act. Since different pleading requirements and standards of proof

4 apply to these claims, Ser asserts that the better course of action is to keep these claims separate.

5 This Court recently considered and rejected virtually identical arguments in another large securities

6 fraud class action in Miller v. Ventro Corp., Case No. C 01-1287 SBA. As explained in Miller, the

7 differences inherent in bondholder versus shareholder claims are outweighed by the fact that the

8 claims alleged in Ser and the remaining actions are based on the same alleged course of conduct.

9 See Miller v. Ventro Corp., Case No. C 01-1287 SBA, slip. op. at 8-9 (N.D. Cal. Nov. 28, 2001). As

10 such, the Court is not convinced by Ser's contention that differences in the pleading and evidentiary

11 burdens associated with the 1933 Act and 1934 Act claims are sufficient to avoid consolidation.

12     Next, Ser contends that a stockholder alleging Section 10(b) and Rule 10b-5 claims has no

13 standing to bring claims on behalf of a bondholder bringing Section 11 and 15 1993 Act claims.

14 However, whether a stockholder has standing to assert Section 11 and 15 claims is inapposite to the

15 question of whether bondholder and stockholder actions premised on the same factual events should

16 be consolidated. See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 445-46 (S.D. Tex. 2002)

17 (finding that conflict between claims of preferred shareholders and common shareholder did not

18 preclude consolidation, as such issues could be addressed later in the litigation).[3]

19     The Court is also unconvinced by Ser's remaining contentions. First, Ser asserts that the

20 Class Period in the Ser action (October 15, 2001 through December 13, 2001) is different than the

21 Class Period defined for the related shareholder actions (January 5, 2001, through December 13,

22 2001). This distinction is inconsequential, as the Class Period in the Ser action is subsumed by the

23 Class Period alleged in the related stockholder actions. See Miller, Case No. C 01-1287 SBA, slip

24 op. at 9 (finding differences in class periods inapposite where the "class periods [in the bondholder

26    [3]During oral argument, Ser requested that in the event his action is consolidated with the
27 others, he be appointed as co-lead plaintiff, or alternatively, that a subclass be established for the
bondholders. Since Ser's losses are negligible in comparison to most of the proposed lead plaintiffs,
28 the Court finds no need to appoint Ser as a co-lead plaintiff. The matter of a subclass may be dealt
at the time of class certification.

4

1   action] are equal to or less than that in the [stockholder] action.").

2          Second, Ser complains that "the notices published for the 10(b) Actions do not effectively

3   notify purchasers of the Calpine 2011 Bonds of their claims or rights under the PSLRA." (Ser's

4   Opp'n at 5.) Again, it is unclear how the adequacy of such notices has any bearing on whether the

5   Ser and related actions share "common questions of law or fact" sufficient to warrant consolidation

6   under Rule 42(a).

7          Finally, Ser contends that his action includes the bond underwriters as defendants, who are

8   not joined in the other actions. As above, this fact is not a persuasive basis for preventing

9   consolidation. See id. at 8 ("the fact that other parties are included does not preclude

10  consolidation.") (citing cases).

11         At bottom, the Court concludes that the fourteen related stockholder class actions, along with

12  the Ser action, should be consolidated.[4] The factual allegations underlying these lawsuits are

13  essentially identical with respect to the underlying alleged misconduct. Despite some differences

14  and unique issues presented in the Ser action, the Court finds that such distinctions are far

15  outweighed by the benefits of consolidation. The Court further finds that given the common

16  questions of law or fact, and in light of the interests of avoiding unnecessary costs or delays,

17  consolidation is proper. Therefore, the Court GRANTS the motions for consolidation, and all

18  related stockholder class action lawsuits and the Ser action shall be consolidated, pursuant to Federal

19  Rule of Civil Procedure 42(a).

20         3.   Form of the Consolidation Order

21         The Northern District of California has adopted a Model Stipulation and Proposed

22  Consolidation Order ("Model Order") for use in securities class actions. While the parties do not

23  dispute the propriety of using this Model Order, they disagree on two key issues: (1) whether the

24  consolidation should be for "all purposes" or "for pretrial proceedings" only; and (2) whether the

25  Order should contain language affirmatively directing the defendants to comply with their legal

26  obligation to preserve documents. The Court discusses these issues in turn.

27  —————————————————

28  [4] Ser's alternative suggestion to create a subclass for the bondholders may be addressed at the
    time of class certification.

First, Calpine contends that the consolidation should be limited to "pretrial proceedings" consistent with the Model Order, as "[a] better assessment of the need to consolidate these actions for trial can be made at the pre-trial conference." (Calpine's Corrected Resp. at 3.) Unfortunately, Calpine neglects to explain why this is so or to cite any authority in support of its position. Moreover, given the underlying purpose of consolidation, namely, to promote efficiency and avoid delay, the Court finds that consolidating the related actions for all purposes best serves these goals.

Second, Calpine and the Individual Defendants oppose the inclusion of language proposed by Northern Oak-Tomei concerning the preservation of documents. As pointed out by defendants, Northern Oak-Tomei's four-page proposed order for consolidation contains a ten-page attachment which spells out the specific documents which defendants should be ordered to preserve. Defendants contend that such level of particularity is excessive and unnecessary in light of the fact that the PSLRA already affords plaintiffs with statutory protection concerning the preservation of documents. The Court agrees.

The PSLRA requires parties to treat evidence in their custody or control as if it were the subject of a continuing discovery request during the pendency of any stay imposed by the PSLRA. 15 U.S.C. § 78u-4(b)(3)(C)(i). This obligation is automatic and self-executing. See In re Grand Casinos, Inc. Secs. Lit., 988 F. Supp. 1270, 1273 (D. Minn. 1997) ("the preservation of evidence in the possession of the parties is statutorily automatic"). In light of this protection, it would appear to be somewhat superfluous for this Court to order the defendants to comply with that to which they are already obligated to follow. Nevertheless, the Court is cognizant that, despite the existence of statutes designed to prevent the destruction of evidence, there are instances where such obligations are disregarded, resulting in the irreparable loss of key evidence. Therefore, the Court will employ the language of the Model Order, supplemented by the highlighted text:

> Counsel for the parties shall notify their clients of their document preservation obligations pursuant to the federal securities laws and local rules, and the possible legal consequences of their failure to comply as such. Upon completion of such notification, counsel shall certify to the Court, in writing, the date of such notification.

(Model Order ¶ 18, as modified.)

**B.**   **APPOINTMENT OF LEAD PLAINTIFF**

   **1.**   **Legal Standard**

   The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Act creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff which: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).[5]

   The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. Id. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. Id. § 78u-4(a)(3)(B)(v).

   **2.**   **Largest Financial Interest**

   The PSLRA provides that the financial interest in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors, not lawyers. See Armour v. Network Assocs., Inc., 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) ("The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions.") (citing Statement of Managers– The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104-369, 104th Cong. 1st Ses. (1995), reprinted in U.S.C.C.A.N. 730). As such,

---

[5]Federal Rule 23 generally requires that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and (4) the representatives of the parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

1  institutional lead plaintiffs are preferred, though not required. Id.

2      The PSLRA does not provide any guidance concerning the method of calculating which

3  plaintiff has the "largest financial interest." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

4  Nonetheless, district courts, including two judges from this District, have equated "largest financial

5  interest" with the amount of potential recovery. See In re Critical Path, Inc. Sec. Litig., 156 F. Supp.

6  2d 1102, 1107-08 (N.D. Cal. 2001) (Orrick, J.); see also In re Network Assocs., Inc., Sec. Litig., 76

7  F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (Alsup, J.).  Under this approach, the Court considers the

8  "number of net shares purchased during the class period" coupled with the "losses suffered by

9  selling shares during the class period." Critical Path, 156 F. Supp. at 1108.[6]  Applying this

10 framework to the record presented, the Court now assesses each of the four groups of putative lead

11 plaintiffs.

12      a.    Northern Oak-Tomei

13      Northern Oak-Tomei allege that they collectively purchased 598,570 shares of Calpine stock

14 during the Class Period and suffered losses in excess of $11 million. These figures far exceed the

15 amounts proffered by any of the other proposed lead plaintiffs.  At first blush, it would appear that

16 Northern Oak-Tomei are the logical choice for the appointment of lead counsel.  Upon closer

17 examination, however, the Court is not convinced that either Northern Oak or Tomei, collectively or

18 individually, is the most adequate plaintiff.

19      The Supreme Court has held that Rule 10b-5 plaintiffs must be actual purchasers or sellers of

20 securities. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-31 (1975); Hannsen v.

21 Smith, 693 F.2d 932, 941 (9th Cir. 1982).  Northern Oak is an "investment manager" which merely

22 makes investments on its individual clients' behalf.  "While some courts have permitted 'investment

23 managers' to serve as lead plaintiffs, those courts generally have required showings that such money

24 managers qualify as a 'single person' under the Reform Act."  Smith v. Suprema Specialties, Inc., --

25

26 _____

   [6]Other courts have employed a similar approach which advocates the consideration of four
27 factors: (1) the number of shares purchased during the class period, (2) the number of net shares
   purchased during the class period, (3) the total net funds expended during the class period, and (4)
28 the approximate loss suffered during the class period. In re Oxford Corp. Sec. Litig., 3 F. Supp.2d
   286, 296 (E.D.N.Y. 1998).

1  206 F. Supp. 2d 627, 634 (D. N.J. 2002) (citing cases). In Smith, the court declined to appoint an

2  investment manager as lead plaintiff, notwithstanding the fact that it ostensibly suffered the greatest

3  loss. Id. The court reasoned that the investment manager merely provided separate account

4  services for diverse, unaffiliated investors. Id. Given the absence of evidence establishing that its

5  investors otherwise acted as a "single person", the court concluded that the investment manager was

6  not a suitable lead plaintiff. Id.; see also In re Bank One Shareholders Class Actions, 96 F. Supp. 2d

7  780, 784 (N.D. Ill. 2000) (finding that an institutional investment manager was not the "most

8  adequate" plaintiff in part because it was "not a buyer for its own account, standing instead in the

9  place of whatever number of investors are participants in the managed fund.").

10     Like the investment manager in Smith, Northern Oak similarly fails to present any evidence

11  or information concerning whether its investment in Calpine was for its own account or the account

12  of its clients. (See Northern Oak-Tomei Reply at 4-5.) In addition, Northern Oak provides no

13  information concerning the nature and circumstances under which Northern Oak purchased Calpine

14  stock during the Class Period. Nor is there any evidence demonstrating that Northern Oak

15  coordinated and selected the investments of its clients, as opposed to merely executing its clients'

16  requests. Although Hickam-Makadia clearly discusses the evidentiary infirmity of Northern Oak-

17  Tomei's motion for appointment as lead plaintiff, the latter makes no attempt to present any

18  evidence on these points.

19     At the hearing on the instant motions, the Court queried Northern Oak whether there was any

20  evidence in the record to support the proposition that Northern Oak has complete discretion and

21  control over its clients' account and that it has the authority to litigate this action. In response,

22  Northern Oak directed the Court's attention to a document styled as the "Uniform Application for

23  Investment Advisor Registration" which is attached as Exhibit B to the Declaration of J. Thomas

24  Bowen.[7] Specifically, Northern Oak points out that Item 8 of the Application specifies that it "or

25  any related person" has "discretionary authority" to select securities for purchase or sale on behalf of

26  

27  [7]This declaration was submitted by Local 1298, not Northern Oak-Tomei. Counsel for Local 1298 obtained this document from the United States Securities and Exchange Commission's Investment Advisor Public Disclosure website located at http://www.advisorinfo.sec.gov. (Bowen Decl. ¶ 2.)

28  

9

1  its clients' accounts. (Bowen Decl. Ex. B at 31/54.) The Court is not convinced. While the

2  document states the conclusion that Northern Oak has "discretionary authority" with respect to its

3  clients' accounts, no information is provided regarding the nature and extent of such discretion.

4       The Court also has serious concerns regarding Northern Oak's authority to bring this action

5  on behalf of its clients. An asset manager seeking appointment as lead plaintiff is generally required

6  to provide evidence that it acts as an attorney-in-fact for its clients and is authorized to seek recovery

7  for investment losses. Smith, 206 F. Supp. 2d at 634. In this respect, Northern Oak contends that

8  its authority to bring this action is implicit in the Certification of Named Plaintiff Pursuant to

9  Federal Securities Laws. (Weaver Decl. Ex. A.) This contention lacks merit. Nothing in that

10  document suggests that Northern Oak has been authorized by its clients to bring securities law

11  claims on their behalf. In the absence of such evidentiary support, the Court finds that Northern Oak

12  has not demonstrated itself to be an adequate plaintiff within the meaning of the PSLRA. Id. ("The

13  clients' mere grant of authority to an investment manager to invest on its behalf does not confer

14  authority to initiate suit on its behalf.").

15       Finally, Northern Oak contends that case law supports the notion that an investment manager

16  may be appointed as a lead plaintiff, notwithstanding the lack of evidence to support such a

17  showing. (Northern Oak-Tomei Reply at 4-5.) However, in the majority of cases cited by Northern

18  Oak, the courts specifically relied on evidence proffered by the investment advisor. See The Ezra

19  Charitable Trust v. Rent-Way, Inc., 136 F. Supp. 2d 435, 440-442 (W.D. Penn. 2001) (noting that

20  the investment advisor plaintiff had submitted undisputed declarations that it had "complete

21  investment discretion" to purchase and sell securities for its clients and to institute a legal action to

22  seek recovery for investment losses); Alfaro v. Caprock Communications Corp., No. 00-CV-1613-R,

23  2000 U.S. Dist. LEXIS 21743 at *7 (N.D. Tex. Dec. 8, 2000) (noting that the money manager

24  plaintiff "has presented a sworn affidavit . . . [that it] has 'full and complete discretion and authority

25  to manage the securities of its clients . . . .'"); Local 144 Nursing Home Pension Fund v. v.

26  Honeywell Int'l Inc., No. 00-3605 DRD, 2000 U.S. Dist. LEXIS 16712 at *13-14 (D.N.J. Nov. 16,

27  2000) (citing declarations submitted by plaintiff which establish that it is a "group" within the

28  meaning of the PSLRA). In sum, the Court concludes that Northern Oak is not an adequate

1   plaintiff.[1]

2        With Northern Oak now excluded from consideration, the next question is whether Tomei is

3   an adequate plaintiff. (Weaver Decl. Ex. B.)  There is no dispute that Tomei, with $8 million in

4   claimed losses, has a larger financial stake than compared to any of the remaining plaintiffs.

5   However, the vast majority of these losses were not incurred by Tomei personally, but rather, by

6   "certain family trusts" of which he is the trustee.  (Tomei Decl. ¶ 1; Northern Oak-Tomei Reply at

7   6.)  While there is no dispute that a trustee has standing to bring a securities fraud action, the

8   problem here is that Tomei is seeking appointment as lead counsel in his individual capacity, not as

9   a "trustee" of his family trusts.  (Hickam-Makadia Opp'n at 6.) )  This fact is readily apparent from

10  both the Notice of Motion and the Proposed Order submitted by Northern Oak-Tomei, which make

11  no mention of appointing Tomei in the capacity of the trustee of his family trusts.  Notably, Tomei

12  was unable to sufficiently explain this omission at the hearing on the instant motion.  Therefore, for

13  purposes of the instant motions, the Court finds that Tomei's losses are limited to $88,629.80 for the

14  purpose of assessing his financial interest in the litigation.  In addition, for reasons discussed below,

15  the Court does not consider Tomei to be an adequate plaintiff.

16        b.    Detroit

17        Aside from Northern Oak and Tomei, the plaintiff claiming the next largest financial stake is

18  Detroit, an institutional investor, with an alleged loss of $1,447,435.00.  (Sheils Decl. ¶ 2.)  As an

19  initial matter, the Court has serious concerns regarding the accuracy of this figure.  In their

20  opposition papers, Hickam-Makadia expressly argues that Detroit's claimed loss of $1,447,435.00

21  and the method of calculating this figure are "patently wrong."  (Hickam-Makadia Opp'n at 2.)

22  Tellingly, Detroit makes no attempt to address this issue in its Reply brief.  When questioned by the

23  Court at the hearing regarding this matter, Detroit summarily affirmed the accuracy of its stated loss

24

25        [1]In Takeda v. Turbodyne Techs., Inc., 67 F. Supp. 1129 (C.D. Cal. 1999), another case cited
    by Northern Oak-Tomei, a competing proposed lead plaintiff argued that some of the losses incurred
26  by the investment advisor were on behalf of his clients, as opposed to his company.  Id. at 1136 n.18.
    The court rejected this contention, stating that it "fails to see how this detracts from [the investment
27  advisor's] suitability as a lead plaintiff."  Id.  However, the Takeda court provides no legal analysis
    nor cites any case law to support these observations.  As such, the court's observations are of
28  dubious value to the Court in analyzing the instant action.

1  and explained that it used the first-in first-out ("FIFO") method of accounting in which specific sales

2  are matched to specific purchases.  However, because such an approach encompasses purchases

3  made outside the class period, courts have generally rejected FIFO as an appropriate means of

4  calculating losses in securities fraud cases.  See  See In re Comdisco Secs. Litig., 150 F. Supp. 943,

5  945-46 (N.D. Ill. 2001) (citing cases); see also In re Clearly Canadian Secs. Litig., No. C 93-1037

6  VRW, 1999 WL 707737 at *4 (N.D. Cal. Sept. 3, 1999) ("use of the 'first in, first out' method of

7  pairing purchases and sales of shares will identify damages where in reality there may be none; the

8  'FIFO' assumption is in no way based on actual trading practices in general, let alone the trades of

9  actual claimants.").

10      Aside from the infirmity of Detroit's loss calculation, the Court notes that Detroit purchased

11  64,100 shares of Calpine stock, but sold almost twice that amount–152,000 shares–during the Class

12  Period. (Id. Ex. 1.) This fact undermines Detroit's contention that it has the largest financial

13  interest in this case aside from Northern Oak-Tomei. See Critical Path, 156 F. Supp. at 1108 ("the

14  number of net shares purchased during the class period is determinative" of which party has the

15  "largest financial interest").  Indeed, it is apparent that Detroit may have actually profited, not

16  suffered losses, as a result of the allegedly artificially inflated stock price. See Comdisco, 150 F.

17  Supp. at 945-46 (finding that plaintiff which sold more shares than it purchased during the class

18  period was "totally out of the running for designation as lead plaintiff").  Therefore, the Court

19  removes Detroit from consideration for appointment as lead plaintiff.

20      c.    Hickam-Makadia

21      Hickam-Makadia collectively purchased 71,000 shares during the Class Period and suffered

22  losses of $435,216.60 (Seidman Decl. Ex. B), which suggests that they are the plaintiffs with the

23  next largest financial interest in this case.  However, Hickam is disqualified from serving as a lead

24  plaintiff by virtue of the fact that he admittedly sold Calpine stock "short" during the Class Period.

25  See Critical Path, 156 F. Supp. 2d at 1111 (finding that history of short selling stock in issue

26  disqualified investor from appointment as lead plaintiff in securities fraud class action because

27  "[s]hort sales raise the question of whether the seller was actually relying on the market price, and

28  the class is not served by its representative coming under such scrutiny.").  Since Hickam is not a

12

1 suitable lead plaintiff, the Court must consider which of the remaining plaintiffs should be appointed

2 in this action.

3          d.     **The Remaining Plaintiffs**

4      The plaintiffs remaining for consideration are Makadia and Local 1298.[9] As an institutional

5 entity, Local 1298 is preferable to an individual plaintiff such as Makadia. See In re Conseco, Inc.

6 Sec. Litig., 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) ("Congress has expressed a preference for

7 institutional investors to be appointed lead plaintiff"). However, there is no evidence establishing

8 that Local 1298 is a large institutional investor nor that it has any greater incentive to litigate this

9 case than Makadia. In addition, Local 1298's financial interest is significantly less than compared to

10 Makadia. Local 1298 purchased 1,100 shares during the Class Period, for a loss of $43,827.00

11 compared to Makadia, who purchased 16,000 shares and suffered losses of $163,108.00.

12      Neither party, standing alone, is a particularly ideal lead plaintiff. As such, subject to the

13 Rule 23 analysis set forth below, the Court exercises its discretion and appoints Local 1298 and

14 Makadia as co-lead plaintiffs. The Court finds that appointing both an institutional and an

15 individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately

16 be represented in the prosecution of this action. See In re Oxford Health Plans, Inc. Secs. Litig., 182

17 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing individual investors with an institutional investor as co-

18 lead plaintiffs).

19        2.     **Rule 23 Qualifications**

20      Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), the lead plaintiff must "otherwise satisf[y] the

21 requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)(3) requires that the

22 claims or defenses of the representative parties be "typical" of those of the class. "[A] named

23 plaintiff's claim is typical if it stems from the same event, practice, or course of conduct that forms

24 the basis of the class claims and is based on the same legal or remedial theory." Jordan v. County of

25 Los Angeles, 669 F.2d 1311, 1321 (9th Cir. 1982). "The purpose of the typicality requirement is to

26

27     [9]Tomei, in his individual capacity, is also available for appointment as lead plaintiff.

28 Between the individual plaintiffs, Makadia and Tomei, Makadia is preferable since he purchased the greater number of Calpine shares and sustained a much larger monetary loss.

assure that the interest of the named representative aligns with the interests of the class." Hanon, 976 F.2d at 508. The test for assessing typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (emphasis added).

The claims of Makadia and Local 1298 are typical of the unnamed plaintiff class. Both acquired securities during the Class Period, at prices allegedly inflated by the defendants' misconduct, and sustained damages as a result. Finally, as with all of the actions filed, Makadia and Local 1298 allege that the defendants violated federal securities law by publicly disseminating materially false and misleading statements about Calpine during the Class Period. Their claims can be said to be co-extensive with those of the class in that they arise from the alleged misconduct and seek relief under the same legal theories. Therefore, their claims are typical of the class.

Rule 23(a) also requires that the person representing the class be able "fairly and adequately to protect the interests" of all members of the class. See Fed. R. Civ. P. 23(a)(4). "The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." Takeda, 67 F. Supp. 2d at 1137 (citing In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982)). "In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." Id.

Makadia and Local 1298 collectively have a significant financial stake in the action, and therefore, they may be assumed to have a strong interest in fully prosecuting this action. See Cendant Corp., 182 F.R.D. at 148 (public pension fund had "significant holdings in each type of security held by the putative plaintiff class and have suffered enormous losses. It is unrealistic to assume that they would not travel every avenue that could potentially enhance their potential recovery."). They have also submitted sworn declarations confirming it is willing to serve as class representative and to assume the responsibilities which adhere. The Court is satisfied that Makadia and Local 1298 will fairly and adequately represent the best interests of the class.

14

1    For all of the foregoing reasons, the Court finds that it is appropriate to appoint Makadia and

2    Local 1298 as co-lead plaintiffs.

3        3.    <u>Appointment of Counsel</u>

4        The PSLRA grants the lead plaintiff the discretion to select lead counsel of its choosing.  15

5    U.S.C. § § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the

6    court, select and retain counsel to represent the class.").  Makadia and Local 1298 have chosen

7    Bernstein Liebhard & Lifshitz, LLP and Schoengold & Sporn, P.C., respectively, as their lead

8    counsel.  Based on the record presented, the Court is satisfied that both firms, serving in a co-lead

9    counsel capacity, are sufficiently competent and experienced to warrant their appointment in this

10   case.  "This is done with the understanding that <u>there shall be no duplication of attorney's services</u>

11   <u>and that the use of co-lead counsel will not in any way increase attorney's fees and expenses</u>."  In re

12   <u>Oxford Health Plans</u>, 182 F.R.D. at 50 (emphasis added).  In addition, all expenses shall be financed

13   equally by both firms.  <u>Id.</u>

14   <u>CONCLUSION</u>

15       For the reasons stated above,

16       IT IS HEREBY ORDERED THAT:

17       1.    Laborers Local 1298 Pension Fund's Motion for Consolidation, Appointment of Lead

18   Plaintiff and Approval of Lead Counsel [Docket No. 28] is GRANTED;

19       2.    The Motion of the Policemen and Firemen Retirement System of the City of Detroit

20   to Appoint It as Lead Plaintiff and for Approval of Its Selection of Lead Counsel [Docket No. 15] is

21   DENIED;

22       3.    Andre W.L. Hickam and Mansukh B. Makadia's Motion to Consolidate Related

23   Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel [Docket No. 23] is GRANTED

24   IN PART AND DENIED IN PART;

25       4.    Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint

26   Northern Oak Capital Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve

27   Lead Plaintiff's Choice of Lead Counsel [Docket No. 22] is DENIED;

28

15

5.       Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Consolidate Related Actions and Preserve Documents [Docket No. 26] is GRANTED IN PART AND DENIED IN PART;

6.       Laborers Local 1298 Pension Fund and Mansukh B. Makadia are appointed as co-lead plaintiffs in this action, and Bernstein Liebhard & Lifshitz, LLP, and Schoengold & Sporn, P.C. are appointed as co-lead counsel; and

7.       The Court will separately issue an Order Consolidating Related Actions concurrent with the instant Order.

IT IS SO ORDERED.

Dated: August 15, 2002

SAUNDRA BROWN ARMSTRONG
United States District Judge