UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL,<br><br>Defendants. | Case No.: C-04-10294-DPW<br><br>Class Action |
| This Document Relates To:<br><br>ALL RELATED ACTIONS. | |

**MEMORANDUM OF BPI GLOBAL ASSET MANAGEMENT LLP IN OPPOSITION TO OTHER MOVANTS' MOTIONS TO BE APPOINTED LEAD PLAINTIFF**

#105963

I.  **INTRODUCTION**

The criteria for appointing a lead plaintiff under the Private Securities Litigation Reform Act (the "PSLRA") are clear and unequivocal. The PSLRA provides that the Court "**shall** adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added). The presumption may only be rebutted by proof that the plaintiff with the largest financial loss will not fairly protect the interests of the class or is subject to unique defenses that will render that plaintiff incapable of adequately representing the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this case, BPI Global Asset Management LLP ("BPI Global") clearly is the most adequate plaintiff. **BPI Global's losses exceed $5.3 million**, more than five times that of any other movant. BPI Global also satisfies all of the requirements of Rule 23. Accordingly, BPI Global should be appointed Lead Plaintiff.

II.  **BPI GLOBAL IS THE MOST ADEQUATE PLAINTIFF**

A.  **BPI Global Has Sustained The Largest Loss And Satisfies Rule 23**

It cannot be disputed that BPI Global's losses dwarf those of all other movants, as illustrated by the following chart:

| MOVANT | LOSS |
|---|---|
| BPI Global | $5,300,000 |
| Global Undervalued Securities Master Fund | $920,000 |

| | |
|---|---|
| Farhat Plaintiff Group | $731,006 |
| Brower | $400,875 |
| Wexler Group | $365,864 |
| Rollow | $209,270 |
| Belland Group | $123,874 |
| Jiang Group | $102,635 |
| Akhtar | $45,440 |
| Paterick | $30,400 |
| Foss | $28,057 |

Based on this analysis of the respective losses of lead plaintiff movants, BPI Global is clearly the appropriate lead plaintiff.

That BPI Global is the most appropriate lead plaintiff candidate is confirmed by the fact that certain of the mutual funds for which BPI Global serves as the investment advisor and which purchased Sonus shares themselves have losses far in excess of any other movant. Specifically, BPI Global Equity Fund lost $2,370,551 and BPI American Equity Fund lost $1,202,752. Moreover, these entities purchased their shares of Sonus on or about September 26, 2003 pursuant to a secondary offering of Sonus common shares. Declaration of Charles Sweeney ("Sweeney Decl."), ¶3. As such, these entities have standing to bring a claim under Section 11 of the Securities Act of 1933, 15 U.S.C. §77k, in addition to claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b). The Section 11 claims are favorable ones for Class members as they involve a negligence-based standard of proof, rather than *scienter*. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). For this additional reason, BPI Global should be appointed as lead plaintiff.

Moreover, as detailed in BPI Global's moving papers, its claims are typical of those of the Class and it will fairly and adequately represent the interests of the Class. *See* Memorandum In Support Of Motion Of BPI Global Asset Management LLP To Be Appointed As Lead Plaintiff And For Its Counsel To Be Appointed As Lead Counsel, filed April 12, 2004, at 7-10. Accordingly, BPI Global is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff in this case.

### B. Appointment Of An Institutional Investor Is A Goal Of The PSLRA

"The Reform Act affords large, sophisticated institutional investors a preferred position in securities class actions." *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997); *see also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors.") As an institutional investor, BPI Global is well situated to serve as the lead plaintiff. It is an investment advisor with $5 billion under management. BPI Global interacts with attorneys in its day-to-day business and understands sophisticated financial matters. Sweeney Decl., ¶5. It fully appreciates the responsibilities of serving as a lead plaintiff and agrees to take those responsibilities seriously. *Id.*

Other movants may challenge BPI Global's standing to serve as lead plaintiff claiming that an investment advisor is not a "real party in interest." Any such argument is without merit. A major claim in this case is the one brought under §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Standing to bring such claims arise if one is a "purchaser" or "seller" of securities. *Blue Chip*

#105963                                                                                                    3

*Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975). As one Court explained:

> Section 10(b) of the Exchange Act and Rule 10b-5 concern fraud "in connection with the purchase or sale of any security." The Supreme Court has found that private civil remedies under the Exchange Act are limited to those individuals who have actually purchased or sold such securities, rather than individuals who may have acquired the securities in some other fashion. *Blue Chip Stamps, et al. v Manor Drug Stores*, 421 U.S. 723, 736, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975). **Investment advisors who make the decisions to purchase the securities qualify as purchasers within the meaning of 10b-5, regardless of whether they purchased securities for their own accounts or for the accounts of their customers.** *Lemanik*, 125 F.R.D. at 607; *see also Monetary Management Group of St Louis, Inc v Kidder Peabody & Co.*, 604 F. Supp. 764, 766-67 (ED Mo 1985) (finding that § 12(2) of the Exchange Act required that plaintiff be a purchaser rather than owner, and thus holding that an advisor who purchased on behalf on its clients was a real party in interest); *Odette v Shearson, Hammill & Co.*, 394 F. Supp. 946, 959 (SDNY 1975) (noting that a "broker who purchases or sells as agent for his customer satisfies the purchaser-seller requirement"). **Indeed, such advisors' status as the parties who make investment decisions is an important qualification for being a real party in interest.** *Medline Industries, Inc. v. Blunt, Ellis & Loewi, Inc.*, 1993 U.S. Dist LEXIS 581, at *6 (ND Ill 1993) (*citing Congregation of the Passion, Holy Cross Province v Kidder Peabody & Co, et al.*, 800 F.2d 177 (8th Cir 1986)).
>
> [Asset manager] Fuller & Thaler meets these qualifications to be a real party in interest for this action. **As an investment advisor, it actually consummated the purchases of the HPL securities for its clients, thus bringing it within the definition of "purchaser."** Additionally, according to the declaration of Mr. Stanske, **it had complete discretion over its clients' accounts and thus made the actual decision to purchase the HPL shares.** Therefore, Fuller & Thaler is a real party in interest within the meaning of both Rule 10b-5 and FRCP 17(a) and thus has standing to serve as lead plaintiff in this action.

*Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) at *29-31 (emphasis added); *see also In re Rent-Way Secs. Litig.*, 136 F. Supp. 2d 435, 442 (W.D.

#105963                                                                                                                              4

Pa. 2001) (investment advisor appointed as lead plaintiff).[1]

BPI Global was a "purchaser" because it had full investment discretion and was solely responsible for making and exercising the decision to purchase Sonus stock. Sweeney Decl., ¶4. Thus, under the federal securities laws, BPI Global can properly assert securities law claims because it was the "purchaser" of the shares. Indeed, as shown, numerous other courts have found that investment advisors have standing to serve as lead plaintiffs in securities actions such as this.

### C. Aggregation Of Losses By Unrelated Investors Is Not Permitted

Several movants are mere assemblages of unrelated persons with no pre-existing connection with one another. Such groups include the movants calling themselves "the Belland Group" (consisting of Grace Belland, Leopoldo Mestre, Jacob Sherman, Scott Dunkley, Abdul Budhinani, and Sean McCarthy), "the Wexler Group" (consisting of Marc Wexler, Scott Baugh, Sajid Patel, Carlos Rios, and Thomas Munson), "the Jiang Group" (consisting of Tian Jiang, Joseph Rodulavic, and Gary Brost), and the "the Farhat Plaintiff Group" (consisting of Nakid Farhat, Kenneth McGaha, John Haggins, and Patrick Fung). These individuals have joined forces solely to aggregate their claimed losses in an attempt to obtain the lead plaintiff

---

[1] In *In re Turkcell Iletisim Himetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002), a Court denied a motion by BPI Global to serve as a lead plaintiff where it was an investment advisor for two outside, Northern Trust, mutual funds. *Id.* at 357-58. The Court concluded in that case that, "[t]he fact that BPI was not the legal purchaser of Turkcell stock prevents them from suing on behalf of its investors." *Id.* at 358. Here, as shown, there can be no dispute that BPI Global **was the purchaser** of the Sonus stock for **its proprietary mutual funds**, including BPI Global Equity Fund and BPI American Equity Fund. Thus, *Turkcell* is inapposite. In addition, the *Turkcell* decision has been criticized. *See In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 109 n.8 (W.D. Pa. 2003) (analyzing in detail the standing of investment advisors/purchasers to represent a class of defrauded securities purchasers).

appointment. This is clearly improper. As one court has explained:

> The PSLRA does allow more than one person to serve as the lead plaintiff; it would be inconsistent with the PSLRA's facial disapproval of multiple plaintiffs, and its persistent use of the singular terms person and plaintiff, however, to allow a melange of **unrelated** persons to serve as the lead plaintiff . . . **Such a "group" would be a "lead plaintiff" in name only; in substance, those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole.** In such circumstances, the Court would be left with little assurance that the "group" speaks with a collective voice.

*In re Telxon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (emphasis omitted and added); *see also Crawford v. Onyx Software Corp.*, 2002 U.S. Dist. LEXIS 1101 at *4-5 (W.D. Wash. Jan. 10, 2002) ("A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult."). Appointing an unrelated group of investors as Lead Plaintiff also defeats the PSLRA's goal of putting control of shareholder lawsuits in the hands of shareholders. *In re Donnkenny, Inc. Secs. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."); *In re Enron Corp. Secs. Litig*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) (refusing to appoint otherwise unrelated group of state retirement systems on grounds that the group was "artificially created").

The Belland Group, Wexler Group, Jiang Group, and Farhat Plaintiff Group are precisely the type of manufactured "groups" which should be denied appointment as a Lead Plaintiff. Because these group members have no pre-existing relationship, they have no allegiance to one

#105963

6

another and are unlikely to speak with a unified voice. This stands in stark contrast to the entities for which BPI Global serves as an investment advisor. They are all under common management and have a common investment advisor, *i.e.*, BPI Global. Accordingly, the motions to be appointed lead plaintiff by the Belland Group, Wexler Group, Jiang Group, and the Farhat Plaintiff Group should be denied.

### III.   CONCLUSION

For all of the foregoing reasons, BPI Global should be appointed as Lead Plaintiff and its choice of counsel, Gold Bennett Cera & Sidener LLP, should be appointed as Lead Counsel. All competing motions should be denied.

Date: April 23, 2004

Respectfully submitted,

GRAHAM & ALBANO, P.C.

By: *Patricia Szumowski*/srg

Patricia Szumowski, BBO #653839
100 Russell Street
P.O. Box 377
Hadley, Massachusetts 01035
Telephone: (413) 586-5055
Facsimile: (413) 532-3387

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230
Fax: (415) 777-5189

Attorneys for Proposed Lead Plaintiff BPI Global Asset Management LLP