UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL,<br><br>Defendants. | Case No. C-04-10294-DPW<br><br>**CLASS ACTION** |
| This Document Relates To:<br><br>ALL RELATED ACTIONS. | |

**BPI GLOBAL ASSET MANAGEMENT LLP'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO BE APPOINTED LEAD PLAINTIFF
AND FOR ITS COUNSEL TO BE APPOINTED LEAD COUNSEL**

#106167

## I.    **INTRODUCTION**

The losses of proposed lead plaintiff BPI Global Asset Management LLP ("BPI Global") are almost double those of all other movants combined, and more than five times those of the second largest movant. It cannot be disputed that BPI Global has sustained the largest loss from the purchase of Sonus shares of any movant before the Court and should accordingly be appointed lead plaintiff.

BPI Global was the purchaser of Sonus stock in its capacity as the investment advisor to a family of mutual funds. Two of these mutual funds themselves sustained larger losses than any other movant.[1] The controlling entity of these mutual funds fully supports BPI Global's effort to be appointed lead plaintiff and has affirmatively indicated its agreement to be bound by the result of this litigation. *See* Declaration of Solomon B. Cera In Support Of BPI Global Asset Management LLP's Motion To Be Appointed Lead Plaintiff ("Cera Decl."), Exhibit A, filed herewith.[2] These additional facts clearly militate in favor of appointment of BPI Global as the lead plaintiff.

The arguments made by competing movants in opposition to BPI Global's motion to be appointed lead plaintiff are without merit. First, certain movants assert that BPI Global does not have standing to pursue this litigation, arguing that it was not the "purchaser" of the Sonus stock and has suffered no loss. This is simply wrong as a matter of law. Whether an investment advisor is the "purchaser" turns on whether it possessed **delegated authority to make investment decisions** on behalf of its clients. BPI Global plainly had such authority. Investment advisors who make the discretionary investment decisions for their clients are the "purchasers" of

---

[1]    These mutual funds are BPI Global Equity Fund and BPI American Equity Fund.

[2]    This letter also confirms that BPI Global "has discretion in making purchase decisions and in voting the shares purchased." *Id.*

the stock for purposes of the federal securities laws. Here, it cannot be disputed that BPI Global had full investment discretion to purchase the Sonus shares at issue. Thus, BPI Global was the legal "purchaser," it is entitled to vote the shares it purchased, and it has standing to prosecute the claims at issue in this lawsuit. Obviously, to the extent BPI Global obtains a recovery it will, pursuant to the same agreement with its mutual fund clients that vests it with investment discretion, return and allocate any such recovery to those clients. If anything, given its role as investment advisor and the fact it alone made the decision to purchase Sonus shares, which have substantially diminished in value, BPI Global has every incentive to maximize the recovery in this case. Further, it is precisely the type of institutional investor favored for the lead plaintiff position.[3]

To remove any doubt whatsoever that BPI Global is authorized to pursue this litigation, it submits herewith a letter from the controlling entity of its mutual fund client expressing its unqualified approval of BPI Global's efforts to pursue this litigation and obtain the lead plaintiff position. The letter indicates that the client "fully supports BPI Global's efforts to

---

[3]   Certain movants have challenged BPI Global to produce evidence of its authority to pursue this litigation. It has done so. With its opposition brief, BPI Global submitted the Declaration of Charles E. Sweeney, the Controller of BPI Global. He declared as follows:

> BPI Global had full investment discretion to purchase the shares reflected in its Certificate Of Plaintiff and has sole voting authority over those shares. BPI Global alone made the investment decisions to purchase the Sonus shares. Such decisions were based upon, among other things, BPI Global's review of the publicly-available financial statements issued by Sonus and other public representations made by the company.

Declaration Of Charles E. Sweeney In Support Of BPI Global Asset Management LLP's Opposition To Other Movants' Motions To Be Appointed Lead Plaintiff ("Sweeney Decl."), filed April 26, 2004, ¶4. The case law makes it abundantly clear that such authority puts the claim in the hands of the investment advisor, and **not** the investment advisor's client, as some movants wrongly suggest.

be appointed lead plaintiff and agrees to be bound by whatever result is ultimately reached in the litigation." Cera Decl., Exhibit A. While obtaining a letter such as this is not necessary, it should silence even the most ardent objectors to BPI Global's appointment as lead counsel.

The attack on BPI Global is also premised on allegations that its Certificate of Plaintiff is defective. These contentions are wrong. The competing movants assert that BPI Global somehow tried to deliberately hide its involvement in *In re Turkcell Iletisim Himetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) by not identifying this case on the certificate. However, BPI Global openly discussed this very decision in its opposition brief on this motion, filed April 26, 2004. That is wholly inconsistent with the allegation of a "lack of candor." The fact is that the failure to note *Turkcell* in the certificate was an inadvertent oversight.[4] Moreover, the Farhat Group's claim that BPI Global's certificate is "riddled with errors and inaccuracies" is demonstrably false. As it turns out, it is the Farhat Group that made mathematical or other mistakes in "discovering" -- or more correctly stated fabricating -- almost every single purported "error" in BPI Global's certificate.

Lastly, it also appears that BPI Global is the only movant before the Court with standing to bring a claim on behalf of the Class under Section 11 of the Securities Act of 1933, 15 U.S.C. §77k. If BPI Global is not appointed lead plaintiff, and the Section 11 claim goes unrepresented, certain members of the Class may lose a significant portion, or even all, of the recovery to which they should be entitled.

//

---

[4]    In any event, the portion of the certificate at issue is designed to weed out recidivist movants for lead plaintiffs. BPI Global clearly does not fall within that category, as this is only the second lead plaintiff position it has sought. Further, the statement in BPI Global's certificate that "During the three years prior to the date of this Certificate, BPI has not sought to serve and has not served as a representative party in five or more class action cases filed under the federal securities laws" is indisputably accurate.

## II.      ARGUMENT

### A.      BPI Global Has Standing To Bring The Class Claims

BPI Global has standing to pursue the claims in this case. The claims arise under, *inter alia*, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, which make it unlawful to use any manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. 15 U.S.C. §78j(b); 17 C.F.R. §240.10b-5. Because the wrongdoing must relate to a purchase or sale of securities, the Supreme Court has consistently held that **only purchasers or sellers** have standing to sue under Section 10(b) and Rule 10b-5. *Blue Chip Stamps v. Manor Drug Store*, 421 U.S. 723, 736 (1975); *United States v. O'Hagan*, 521 U.S. 642, 660 (1997). Thus, in the instant matter, the issue is properly framed as: who was the "purchaser" of the Sonus shares, BPI Global or its mutual fund clients? The answer is clear: BPI Global.

Whether an investment advisor is the "purchaser" depends on whether it was **delegated authority to make investment decisions** on behalf of its clients. *See Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F.Supp.2d 435, 442 (W.D. Pa. 2001) (noting that other courts "have held that investment advisors with the delegated authority to make investment decisions for clients are purchasers under the securities laws"); *In re DaimlerChrysler Sec. Litig.*, 216 F.R.D. 291, 298-99 (D. Del. 2003); *Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 at *30 (N.D. Cal. Sept. 29, 2003) ("Investment advisors who make the decisions to purchase the securities qualify as purchasers within the meaning of 10b-5, regardless of whether they purchased securities for their own accounts or for the accounts of their customers."); *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 607 (S.D.N.Y. 1989) ("Lemanik is a 'purchaser' within the meaning of §12(2) and Rule 10b-5 and as such is entitled, as a matter of law, to bring this action in its own name, whether it was acting for its own account or that of its clients.");

*Monetary Mgmt. Group of St. Louis, Inc. v. Kidder, Peabody, & Co., Inc.*, 604 F.Supp. 764, 767 (E.D. Mo. 1985); *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 959 (S.D.N.Y. 1975) ("a broker who purchases or sells as agent for his customer satisfies the purchaser-seller requirement").[5]

The fundamental purpose of Section 10(b) and Rule 10b-5 is to require full and fair disclosure of information that investors need when deciding to buy or sell securities. *O'Brien v. Continental Illinois Nat'l Bank & Trust Co.*, 593 F.2d 54, 59-60 (7th Cir. 1979). Those who delegate their decision making authority, and only passively participate in the investing process, have made no decisions affected by any failure to fully disclose all material information. *Id.* at 60. Applying this reasoning, numerous courts have held that if a beneficial owner has given an investment advisor complete discretion to engage in securities transactions, the beneficial owner **cannot** bring claims under Section 10(b) or Rule 10b-5. *See, e.g., Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800 F.2d 177 (7th Cir. 1986); *see also O'Brien*, 593 F.2d at 60 (trustees had no cause of action under §10(b) because they had made no investment decisions); *Medline Industries, Inc. Employee Profit Sharing and Retirement Trust v. Blunt, Ellis & Loewi, Inc.*, 1993 U.S. Dist. LEXIS 581 at *6 (N.D. Ill. Jan. 21, 1993) ("Investors who only passively participate in an investment by transferring full authority to make purchase decisions to an agent are not purchasers" for purposes of 10b-5 standing); *Morlock v. Shepherd*,

---

[5]  Movant Rollow incorrectly suggests that the court in *In re Bank One Shareholders Class Actions*, 96 F.Supp.2d 780 (N.D. Ill. 2000) "refused" to appoint a lead plaintiff because it was not a buyer for its own account. However, the movant referred to by Rollow did not have the largest loss. In dicta, the court merely commented that it had a number of concerns about that movant, including the fact that it operated a hedge fund, engaged in extensive daytrading in Bank One stock ("presumably because it was regarded as overvalued at market price), and stood "in the place of whatever number of investors are participants in its managed fund." *Id.* at 784. There is no analysis whatsoever of who is a "purchaser" under the federal securities laws.

1999 U.S. Dist. LEXIS 19402 at *9 (N.D. Ill. Dec. 15, 1999) (§10(b) and Rule 10b-5 do not

provide a remedy to an investor who has delegated complete investment authority to an agent).

Here, it cannot be disputed that based on its full discretion, BPI Global was the

"purchaser." Thus, it has standing to pursue claims as the purchaser of Sonus stock. As BPI

Global's Controller has explained, "BPI Global had full investment discretion to purchase the

shares reflected in its Certificate Of Plaintiff and has sole voting authority over those shares. BPI

Global alone made the investment decisions to purchase the Sonus shares." *See* Sweeney Decl.,

¶4. Moreover, BPI Global's client has affirmed that BPI Global "has full discretion in making

purchase decisions and in voting the shares purchased." *See* Cera Decl., Exhibit A. BPI Global's

full investment authority could not be more clear; therefore, its standing to pursue the claims at

issue is also clear.

Certain movants rely on the fact that BPI Global was denied the lead plaintiff position

in *Turkcell*, 209 F.R.D. 353. However, the circumstances in *Turkcell* were very different from

those in the instant matter. Moreover, the *Turkcell* court made an error of law in its analysis.

The *Turkcell* court denied BPI Global's motion to serve as a lead plaintiff in a case where BPI

Global was an investment advisor for two outside, non-proprietary mutual funds. *Id.* at 357-58.

Here, BPI Global purchased Sonus stock for mutual funds within its own fund family, including

BPI Global Equity Fund and BPI American Equity Fund. In addition, the *Turkcell* decision has

been criticized. In the context of a careful analysis as to the proprietary of certifying, pursuant to

Rule 23, Fed.R.Civ.P., an investment advisor as a class representative, the Court in *In re Rent-

Way Sec. Litig.*, 218 F.R.D. 101, 109-10 n.8 (W.D. Pa. 2003) noted an error in the legal analysis

of the *Turkcell* Court. It proceeded to certify the investment advisor to represent a class of

defrauded securities purchasers. *Id.* That investment advisor went on to obtain a substantial

recovery on behalf of the class in that case. *See In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 509 (W.D. Pa. 2003).[6]

Global Undervalued Securities Master Fund ("Global Undervalued") also incorrectly claims that BPI Global must produce evidence that it is authorized to act as "attorney in fact" for its clients. As noted, this is wrong. Evidence has already been produced that the agreements between BPI Global and its clients grant BPI Global "full investment discretion to purchase the shares reflected in its Certificate Of Plaintiff and has sole voting authority over those shares." *See* Sweeney Decl., ¶4. In other words, BPI Global's clients authorized BPI Global to take whatever action it deemed appropriate with respect to their investments. The level of discretion is the key inquiry. BPI Global had full discretion. Nothing more can or should be required. However, as noted, beyond the full discretion accorded BPI Global, its mutual fund clients have affirmatively approved of its pursuit of the lead plaintiff position. *See Rent-Way*, 218 F.R.D. at 107-108; *see also id.* at 109-10 n.8 (noting that the decisions in *Smith v. Suprema Specialties, Inc.*, 206 F.Supp.2d 627 (D.N.J. 2002) and *Turkcell* **incorrectly** interpreted the prior ruling in *Rent-Way*, 136 F. Supp. 2d 493, to require that an investment advisor be an attorney in fact).

Global Undervalued fails to cite any case holding that an investment advisory agreement must include express "attorney in fact" language for the investment advisor to have standing where, as here, it has been granted full decision-making authority. Indeed, the case law is to the contrary.

---

[6]    Ironically, the *Turkcell* court relied -- erroneously it turns out -- on *Rent-Way*, 136 F. Supp. 2d at 442. The *Rent-Way* court appointed an investment advisor as the lead plaintiff and the case proceeded to the class certification stage. In the class certification opinion, the *Rent-Way* court criticized the *Turkcell* court's application of its prior opinion, noting that it incorrectly cited its prior ruling for the proposition that an investment advisor may serve as lead plaintiff only if it acts as attorney-in-fact for its clients. *Rent-Way*, 218 F.R.D. at 109-10 n.8. No such ruling was made. As the *Rent-Way* court noted, the key inquiry is the scope of the investment advisor's discretionary investment authority. *Id.*

**B.**     **BPI Global's Mutual Fund Client Supports Its Actions**

While it is abundantly clear that BPI Global is the most adequate lead plaintiff, any remaining doubt is resolved by the controlling entity of BPI Global's mutual fund clients. CI Mutual Funds, Inc. is the manager and trustee of BPI Global Equity Fund and BPI American Equity Fund, the two largest funds in terms of losses reflected on BPI Global's certificate. Cera Decl., Exhibit A. The losses incurred by either of these funds on Sonus share purchases is larger than the loss of any other movant. *Id.* BPI Global Equity Fund lost more than $2.1 million and BPI American Equity Fund lost more than $1.2 million. *Id.*

Michael Killeen, the Senior Vice President, General Counsel and Corporate Secretary of CI Mutual Funds confirms that the controlling entity of these mutual funds fully approves of BPI Global's actions on their behalf:

> This letter concerns the pending motion of BPI Global for appointment as the lead plaintiff in the United States District Court of the District of Massachusetts, in the case arising out of the February 2004 disclosure of accounting irregularities at Sonus Networks, Inc. ("Sonus") and the resulting significant decline in the price of Sonus shares. BPI Global acts as the investment advisor for [BPI Global Equity Fund and BPI American Equity Fund], and has full discretion in making purchase decisions and in voting the shares purchased.
>
> I wish to confirm that, on behalf of the mutual funds, CI Funds fully supports BPI Global's effort to be appointed lead plaintiff and agrees to be bound by whatever result is ultimately reached in the litigation.

Cera Decl., Exhibit A.

Thus, even if BPI Global were deemed not to have standing in its own right to bring claims based on the purchase of Sonus stock for the mutual funds, which it does, this language ratifies BPI Global's conduct in so doing, and actually comports with the conduct of an "attorney in fact." *National Paragon Corp. v. Aberman*, 1987 U.S. Dist. LEXIS 11270 at *6 (E.D. Pa.

Nov. 30, 1987). There can be no question that BPI Global has been authorized to act for its mutual fund clients. For this additional reason, BPI Global has standing to bring this action. *See, e.g., Rent-Way*, 218 F.R.D. at 110-11 (holding that a similar ratification letter was the functional equivalent of a power of attorney).[7]

## C.    BPI Global's Certificate Is Not Defective

Global Undervalued makes much of the fact that BPI Global moved to be, but was not selected as, lead plaintiff in the *Turkcell* case, and that its certificate in this case did not so state. However, these events in *Turkcell* are **fully disclosed** in BPI Global's opposition brief, filed April 26, 2004. There BPI Global explained how the circumstances in *Turkcell* differed from those in the instant matter. *See* Memorandum Of BPI Global Asset Management LLP In Opposition To Other Movants' Motions To Be Appointed Lead Plaintiff, at 5 n.1. Plainly, BPI Global has not tried to hide its involvement in *Turkcell*. Not identifying *Turkcell* was an inadvertent omission. The extensive discussion of the *Turkcell* decision in BPI Global's opposition brief completely undermines any suggestion it was attempting to hide its involvement in that case.[8] The Court now has before it all pertinent information. Global Undervalued claims that "[t]he PSLRA's lead plaintiff certification requirements must be met" and "[a]ny party not meeting these requirements may not serve as lead plaintiff." *See* Global Undervalued Master

---

[7]    Moreover, Global Undervalued's argument that any client authorization must have occurred prior to April 12, 2004 (the date the lead plaintiff motions were filed) makes no sense. Despite Global Undervalued's generous use of emphasis in its brief, *Suprema Specialties* does **not** state that authorization must occur "prior to the time" an investment advisor makes a lead plaintiff motion. More directly on point is the analysis in *Rent-Way*, 218 F.R.D. 101. There, an investment advisor's client submitted a letter to the Court at the class certification stage -- two and a half years after the case commenced -- stating that it fully supported the investment advisor's efforts. The Court had no issue with the timeliness of the letter. *Id.* at 110-11. The Court here has been provided with such evidence at a much earlier stage of the case.

[8]    This discussion of *Turkcell* was made voluntarily before any other lead plaintiff movant had brought to BPI Global's attention that *Turkcell* was not cited in its certificate.

Fund's Consolidated Opposition To Competing Motions For Appointment As Lead Plaintiff, at
10. This is simply not true. In fact, in *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn.
1998) -- a case on which Global Undervalued relies – the certifications of the lead plaintiffs
appointed by the Court contained several technical deficiencies. *Id.* at 411. The Court
overlooked those problems because it was satisfied it had adequate information to select the
appropriate lead plaintiff. *Id.*

The Farhat Group also makes the spurious claim, in a footnote, that BPI Global's
representation of its transactions in Sonus stock are unreliable. The Farhat Group's contentions
in this regard are wrong. In fact, it is the Farhat Group which has made a variety of errors in
analyzing the data. All of BPI Global's information on its trading is correct. The Farhat Group
identifies ten trades that it believes BPI Global has misrepresented on its certification. *See* Farhat
Group Opposition at 6 n.3. However, the Farhat Group has either failed to do the math correctly,
or confused the "purchase" and "settlement" dates, or confused a "sale" with a "purchase," or
used the wrong number of shares when carelessly performing its calculations.[9] In short, BPI

---

[9]  For instance, the Farhat Group claims that the purchase of "5,500 shares on August 21, 2003"
falls outside the trading range for Sonus stock on that day. However, **there was no purchase
made by BPI Global on that date**. BPI Global **did** buy 5,500 shares at $6.54 per share on
August 18, 2003 with a **settlement** date of August 21, 2003. Thus, it appears that the Farhat
Group mistakenly compared a trade made on one day with the trading range for a different day.
In addition, the Farhat Group also mistakenly challenges the purported "purchase" of "19,200
shares on September 30, 2003." However, BPI Global did not buy, but **sold**, 19,200 shares on
that date. Contrary to the Farhat Group's assertion, there is no single purchase or combination of
purchases on 8/12/03 in the amount of 58,500 shares. There is a single purchase of 55,600 for
$367,844.04, which is $6.62 per share. That day the stock opened at $6.11 and closed at $6.75.
As to 3,000 shares on 9/5/03, there is such a purchase in the amount of $24,160.80, $8.05 per
share. The open was $7.91, the close was $8.05. As to 3,000 shares on 9/19/03, there is such a
sale with proceeds of 25,438.80, at $8.48 per share. The open was $8.42, close was $8.54. There
is no single sale on 9/23/03 in the amount of 739,900. There were two **purchases** on 9/23
totaling 739,900. As to the sale of 19,800 shares on 9/29/03, there is no sale or combination of
sales on 9/29 in the amount of 19,800.

Global's certification correctly represents its transactions in Sonus securities and the Farhat Group's claim to the contrary is in error.

### D.   BPI Global Is The Only Movant With A Section 11 Claim

An additional compelling reason to appoint BPI Global as lead plaintiff is that it appears to be the only movant that can represent the Class in connection with a Section 11 claim.[10] BPI Global purchased shares of Sonus on or about September 26, 2003 pursuant to a secondary offering of Sonus shares (Sweeney Decl., ¶3), which provides the basis for a Section 11 claim. If BPI Global is not appointed lead plaintiff, and the Section 11 claim is unrepresented, certain Class members may lose a significant portion, or even all, of the recovery to which they should be entitled. This fact further supports appointment of BPI Global as lead plaintiff.

### III.   CONCLUSION

For all of the foregoing reasons, BPI Global should be appointed the lead plaintiff and all competing motions should be denied.[11]

DATED: May 10, 2004

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230
Fax: (415) 777-5189

By: _____
Solomon B. Cera

---

[10]   No other movant has alleged entitlement to pursue a Section 11 claim.

[11]   BPI Global's choice of counsel, Gold Bennett Cera & Sidener LLP, is well qualified and should be appointed lead plaintiff's counsel. *Rent-Way*, 305 F.Supp.2d at 515.

GRAHAM & ALBANO, P.C.
Patricia Szumowski, BBO #653839
100 Russell Street
P.O. Box 377
Hadley, Massachusetts 01035
Telephone: (413) 586-5055
Facsimile: (413) 532-3387

Attorneys for Proposed Lead Plaintiff
BPI Global Asset Management LLP
And All Others Similarly Situated

CERTIFICATE OF SERVICE

I, KimLane E. Gantan, hereby declare under penalty of perjury as follows:

I am employed by Gold Bennett Cera & Sidener LLP, 595 Market Street, Suite 2300, San Francisco, California, 94105-2835. I am over the age of eighteen years and am not a party to this action.

On May 10, 2004, I served a copy of the aforementioned **"BPI GLOBAL ASSET MANAGEMENT LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO BE APPOINTED LEAD PLAINTIFF AND FOR ITS COUNSEL TO BE APPOINTED LEAD COUNSEL"** on all parties listed on the attached Exhibit I, by causing true and correct copies of same to be enclosed in sealed envelopes and deposited in the U.S. Mail, postage prepaid, or delivered as otherwise indicated via courier or facsimile, as indicated on the attached Exhibit I.

Executed on May 10, 2004, at San Francisco, California.

KimLane E. Gantan

## EXHIBIT I

Theodore M. Hess-Mahan
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Nancy F. Gans
Moulton & Gans, PC
33 Broad Street, Suite 1100
Boston, MA 02109
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

Daniel W. Halston
Hale & Dorr, LLP
60 State Street
Boston, MA 02109
Telephone: (617) 256-6912
Facsimile: (617) 526-5000

Matthew J. Matule
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108
Telephone: (617) 248-5207
Facsimile: (617) 248-4000

John E. DeWick
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109
Telephone: (617) 523-6200
Facsimile: (617) 523-8130

Michael T. Matraia
Berman DeValerio Pease Tabacco Burt
  & Pucillo
One Liberty Square, 8th Floor
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

Justin S. Kudler
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

John R. Baraniak, Jr.
Choate, Hall & Stewart
Exchange Place
53 State Street, 33rd Floor
Boston, MA 02109-2804
Telephone: (617) 248-2114
Facsimile: (617) 248-4000

John D. Hughes
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
Telephone: (617) 439-4444
Facsimile: (617) 439-4170

Travis Downs, Esq.
Milberg Weiss Bershad Hynes & Lerach LLP
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

Eduard Korsinsky
Zimmerman Levi & Korsinsky, LLP
39 Broadway, Suite 1440
New York, NY 10006
Telephone: (212) 363-7500
Facsimile:

Jonathan M. Plasse
Goodkind Labaton Rudoff & Sucharow, LLP
100 Park Avenue
New York, NY 10017
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

M. Clay Ragsdale
Ragsdale & Frese LLC
Concord Center, Suite 820
2100 Third Avenue North
Birmingham, AL 35203
Telephone: (205) 251-4775
Facsimile: (205) 251-4777

Steven G. Schulman
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212)

Jack Zwick
Weiss & Yourman
551 Fifth Avenue, Suite 1600
New York, NY 10176
Telephone: (212) 682-3025
Facsimile: (212) 682-3010

Richard L. Vita
Law Offices of Richard J. Vita, P.C.
77 Franklin Street, Suite 300
Boston, MA 02110
Telephone: (617) 426-6566
Facsimile: (617)

Andrew L. Barroway
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Marion P. Rosner
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

Samuel H. Rudman
Cauley Geller Bowman & Rudman, LLP
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

Bruce G. Murphy
Law Offices of Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
Telephone: (772) 231-4202
Facsimile: (772)

Stanley M. Grossman
Pomerantz Haudek Block Grossman
  & Gross LLP
100 Park Avenue
New York, NY 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

Patricia A. Szumowski
100 Russell Street
Hadley, MA 01035
Telephone: (413) 586-5055
Facsimile: (413) 532-3387

Michael F. Germano
63 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 367-5911
Facsimile: (617)