UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>                Defendants. | Civil Action No. 04-CV-10294-DPW<br><br><u>CLASS ACTION</u> |
| MICHELLE TREBITSCH, On Behalf of Herself and All Others Similarly Situated,<br><br>                Plaintiff,<br>vs.<br><br>SONUS NETWORKS, INC., et al.,<br><br>                Defendants. | Civil Action No. 04-CV-10307-DPW<br><br><u>CLASS ACTION</u> |

[Caption continued on following page.]

REPLY MEMORANDUM IN SUPPORT OF THE GLOBAL UNDERVALUED SECURITIES
MASTER FUND'S MOTION TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO
§21D(A)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND FOR
APPOINTMENT OF LEAD COUNSEL

RICHARD CURTIS, Individually and On
Behalf of All Others Similarly Situated,

      Plaintiff,

  vs.

SONUS NETWORKS, INC., et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10314-MLW

<u>CLASS ACTION</u>

RONALD KASSOVER, On Behalf of the
Ronald Kassover IRA and All Others Similarly
Situated,

      Plaintiff,

  vs.

SONUS NETWORKS, INC., et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10329-DPW

<u>CLASS ACTION</u>

STEVE L. BAKER, Individually and On
Behalf of All Others Similarly Situated,

      Plaintiff,

  vs.

SONUS NETWORKS, INC., et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10333-DPW

<u>CLASS ACTION</u>

[Caption continued on following page.]

MICHAEL KAFFEE, Individually and On Behalf of All Others Similarly Situated,

                      Plaintiff,

        vs.

SONUS NETWORKS, INC., et al.,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10345-DPW

<u>CLASS ACTION</u>

HAIMING HU, Individually and On Behalf of All Others Similarly Situated,

                      Plaintiff,

        vs.

SONUS NETWORKS, INC., et al.,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10346-DPW

<u>CLASS ACTION</u>

CHARLES STARBUCK, Individually and On Behalf of All Others Similarly Situated,

                      Plaintiff,

        vs.

SONUS NETWORKS, INC., et al.,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-CV-10362-DPW

<u>CLASS ACTION</u>

[Caption continued on following page.]

SAMUEL HO, Individually and On Behalf of
All Others Similarly Situated,                    )
                                                  )     Civil Action No. 04-CV-10363-DPW
                                                  )
                                                  )     CLASS ACTION
                                Plaintiff,         )
                                                  )
                                                  )
                          vs.                     )
                                                  )
                                                  )
SONUS NETWORKS, INC., et al.,                     )
                                                  )
                                                  )
                                Defendants.        )
                                                  )
JEFFREY C. RODRIGUES, Individually and            )
On Behalf of All Others Similarly Situated,       )     Civil Action No. 04-CV-10364-DPW
                                                  )
                                                  )     CLASS ACTION
                                Plaintiff,         )
                                                  )
                                                  )
                          vs.                     )
                                                  )
                                                  )
SONUS NETWORKS, INC., et al.,                     )
                                                  )
                                                  )
                                Defendants.        )
                                                  )
ROBERT CONTE and MARK RESPLER,                    )
Themselves and On Behalf of All Others            )     Civil Action No. 04-CV-10382-DPW
Similarly Situated,                               )
                                                  )     CLASS ACTION
                                                  )
                                Plaintiffs,        )
                                                  )
                                                  )
                          vs.                     )
                                                  )
                                                  )
SONUS NETWORKS, INC., et al.,                     )
                                                  )
                                                  )
                                Defendants.        )
                                                  )

[Caption continued on following page.]

WHEATON ELECTRICAL SERVICES )   Civil Action No. 04-CV-10383-DPW
RETIREMENT 401K PROFIT SHARING )
PLAN, On Behalf of Itself and All Others )   <u>CLASS ACTION</u>
Similarly Situated, )
)
Plaintiff, )
)
vs. )
)
SONUS NETWORKS, INC., et al., )
)
Defendants. )
_____ )
BRIAN CLARK, Individually and On Behalf )   Civil Action No. 04-CV-10454-DPW
of All Others Similarly Situated, )
)   <u>CLASS ACTION</u>
Plaintiff, )
)
vs. )
)
SONUS NETWORKS, INC., et al., )
)
Defendants. )
_____ )
SHEILA BROWNELL, Individually and On )   Civil Action No. 04-CV-10597-DPW
Behalf of All Others Similarly Situated, )
)   <u>CLASS ACTION</u>
Plaintiff, )
)
vs. )
)
SONUS NETWORKS, INC., et al., )
)
Defendants. )
_____ )

[Caption continued on following page.]

| | |
|---|---|
| SAVERIO PUGLIESE, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SONUS NETWORKS, INC., et al., <br><br> Defendants. | Civil Action No. 04-CV-10612-DPW <br><br> CLASS ACTION |
| DAVID V. NOCITO, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br> SONUS NETWORKS, INC., et al., <br><br> Defendants. | Civil Action No. 04-CV-10623-DPW <br><br> CLASS ACTION |
| JONATHAN A. ZULAUF, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br> SONUS NETWORKS, INC., et al., <br><br> Defendants. | Civil Action No. 04-CV-10714-DPW <br><br> CLASS ACTION |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ................................................................................................................2

        A.    Global Securities is the Most Adequate Plaintiff.......................................2

                1.    Global Securities Has the Largest Financial Interest in the Relief Sought ...............................................................................................2

                2.    Global Securities Satisfies the Requirements of Rule 23 ...........4

        B.    None of the Competing Movants Satisfy the Requirements of the PSLRA ............7

                1.    BPI Does Not Have a Financial Interest in the Outcome of This Litigation ...........................................................................................7

                2.    The Other Competing Movants Fail to Meet the Requirements of the PSLRA ...............................................................................11

III.    CONCLUSION.........................................................................................................11

# TABLE OF AUTHORITIES

**Page**

*Blue Chip Stamps v. Manor Drug Store*,
 421 U.S. 723 (1975)................................................................................................2

*Casden v. HPL Techs., Inc.*,
 No. C-02-3510 VRW, 2003 U.S. Dist. LEXIS 19606
 (N.D. Cal. Sept. 19, 2003) .......................................................................................8

*Icon Group, Inc. v. Mahogany Run Dev. Corp.*,
 829 F.2d 473 (3d Cir. 1987).................................................................................10

*In re Bank One  Shareholders Class Actions*,
 96 F. Supp. 2d 780 (N.D. Ill. 2000) ..................................................................5, 6

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ........................................................................2, 7, 11

*In re Critical Path, Inc.*,
 156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................5

*In re Enron Corp., Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002)......................................................................6, 10

*In re McKesson HBOC, Inc. Sec. Litig.*,
 97 F. Supp. 2d 993 (N.D. Cal. 1999) ................................................................7, 8

*In re MicroStrategy Inc. Sec. Litig.*,
 110 F. Supp. 2d 427 (E.D. Va. 2000) ....................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................6

*In re Network Assocs. Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................9

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
 209 F.R.D. 353 (S.D.N.Y. 2002) ................................................................. *passim*

*Mutuelles Unies v. Kroll & Linstrom*,
 957 F.2d 707 (9th Cir. 1992) ...............................................................................10

*Smith v. Suprema Specialties, Inc.*,
 206 F. Supp. 2d 627 (D.N.J. 2002) .................................................................1, 3, 8

**Page**

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
216 F.R.D. 248 (S.D.N.Y. 2003) ..................................................................3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k.....................................................................................................10
§78u-4(a)(3)(B)(iii).........................................................................2, 7
§78u-4(a)(3)(B)(iii)(I)..........................................................................1
§78u-4(a)(3)(B)(iii)(II)........................................................................4
§78u-4(a)(3)(B)(v)...............................................................................6

Federal Rules of Civil Procedure
Rule 17(a)...........................................................................................10
Rule 23.............................................................................................1, 4

Global Undervalued Securities Master Fund ("Movant" or "Global Securities") respectfully submits this reply memorandum in further support of its motion to be appointed lead plaintiff and in response to the oppositions filed by: (1) BPI Global Asset Management ("BPI"); (2) the Farhat Group; (3) Brad Rollow ("Rollow"); and (4) James M. Brower ("Brower").[1]

## I.    INTRODUCTION

Among the five movants presently seeking appointment as lead plaintiff, only Global Securities "has the largest financial interest in the relief sought by the class" and "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Indeed, as evidence of its ability to meet all of the Private Securities Litigation Reform Act of 1995's ("PSLRA") lead plaintiff requirements, in *Americredit*, Judge Terry R. Means from the Northern District of Texas previously found that Global Securities can be the "most adequate plaintiff" to prosecute securities fraud cases such as this. *See Pierce v. Americredit Corp., et al.*, No. 4:03-CV-026-Y, Order (N.D. Tex. May 19, 2003); Reply Aff., Ex. E.

By contrast, BPI is not the "most adequate plaintiff" to prosecute this case. In another securities class action, *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357 (S.D.N.Y. 2002), Judge Buchwald from the Southern District of New York assiduously refused to certify BPI as a lead plaintiff, finding that BPI could not sue "on behalf of its investors." *Id*. at 357; *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-36 (D.N.J. 2002) (court reduced an investment advisor's claimed loss from $2.1 million to $310,000, representing the difference

---

[1]     As of the filing of this memorandum, four movants – the Jiang Group, the Belland Group, Saverio Pugliese and Chris E. Paterick – have withdrawn their motions for appointment as lead plaintiff. *See* Affidavit of John E. DeWick in Support of Reply Memorandum in Support of the Global Undervalued Securities Master Fund's Motion to Be Appointed Lead Plaintiff Pursuant to §21(a)(3)(B) of the Securities Exchange Act of 1934 and for Appointment of Lead Counsel ("Reply Aff.") Exs. A-D.

between its claimed interest on behalf of others and those losses the advisor *actually* had authority to sue for). The same holds true here. Indeed, it is axiomatic that only a victim which has actually suffered a loss can claim damages in connection with a securities fraud claim. *See Turkcell*, 209 F.R.D. at 357-58; *Blue Chip Stamps v. Manor Drug Store*, 421 U.S. 723, 755 (1975) (holding that only actual purchasers and sellers of securities have standing to sue under securities laws). Thus, although BPI *claims* it has the largest financial stake in the litigation, its claim is unfounded. *See* §II.B.1 *infra*. Further, just like in *Turkcell*, BPI has improperly attempted to claim the financial interest of a "Northern Trust" mutual fund in this case. *See Turkcell* at 357-58. ("BPI ... is purely an investment advisor, not itself an investor. It invested funds on behalf of two *Northern Trust* mutual funds. BPI's actual loss was limited to the 0.35% fee it earned ... ") (emphasis added).

Like BPI, none of the remaining movants should be appointed lead plaintiff because their financial interest in the relief sought in this litigation is significantly smaller than Global Securities'. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (holding that "the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy") (emphasis in original); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii).

## II. ARGUMENT

### A. Global Securities Is the Most Adequate Plaintiff

#### 1. Global Securities Has the Largest Financial Interest in the Relief Sought

During the period from April 9, 2003 to February 12, 2004 (the "Class Period"), Global Securities purchased 300,000 shares of Sonus Networks, Inc. ("Sonus") at a cost of over $2.4 million and lost over $920,000 as a result thereof. *See Global Undervalued Securities Master Fund's Memorandum of Points and Authorities in Support of Motion to be Appointed Lead Plaintiff Pursuant to the Securities Exchange Act of 1934 and for Appointment of Lead Counsel*

("Memorandum") at §III.B.2, filed April 12, 2004.  Because Global Securities trades for its own

account, its financial interest ($920,000) is entirely its own and hence represents the largest financial

interest of any movant in this case.[2]

By contrast, as set forth in Global Undervalued Securities Master Fund's Consolidated

Opposition to Competing Motions for Appointment as Lead Plaintiff ("Opposition"), BPI neither

suffered a loss from its *clients'* investment in Sonus securities or received the grant of attorney-in-

fact authority to bring a lawsuit or prosecute this case in connection with its clients' losses.  *See*

*Smith*, 206 F. Supp. 2d at 634 ("where a court appoints an asset manager as lead plaintiff, the

plaintiff should provide evidence that it 'acts as attorney-in-fact for its clients and is authorized to

bring suit to recover for, among other things, investment losses'"); *Turkcell,* 209 F.R.D. at 358

(same); *Weinberg v. Atlas Air Worldwide Holdings, Inc*., 216 F.R.D. 248, 255 (S.D.N.Y. 2003)

(appointing investment adviser as lead plaintiff based on undisputed evidence that the investment

adviser had been granted attorney-in-fact authority to bring suit).[3]  Further, it is telling that although

BPI had an opportunity to provide such evidence in its Declaration of Charles E. Sweeney in Support

of BPI Global Asset Management LLP's Opposition to Other Movants' Motions to Be Appointed

Lead Plaintiff ("Sweeney Decl."), filed April 26, 2004, *it did not*.  *See Smith*, 206 F. Supp. 2d 627.

---

[2]    The Farhat Group argued that two of Global Securities' trades were outside the trading range for those days.  *See* Memorandum of Law in Further Support of Motion of the Farhat Plaintiff Group to Consolidate Actions, to Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, and in Opposition to Competing Motions, filed April 26, 2004.  Their argument displays a serious misunderstanding of how and when trades occur in our capital markets — Global Securities' January 20, 2004 and February 11, 2004 trades occurred in after-hours trading and is a routine method of trading securities.  *See* Reply Aff., Ex. F.

[3]    Citations and footnotes are omitted, and emphasis is added, unless otherwise provided.

Brower's opposition suggests that Global Securities does not have the largest financial interest because an employee of Klein Heinz signed Global Securities' Certification. *See* Memorandum of Law of James M. Brower in Further Support of His Motion for Appointment as Lead Plaintiff, for Selection of Lead Counsel, and in Opposition to All Other Lead Plaintiff Motions ("Brower Opp.") at 2, filed April 26, 2004. Brower's argument is mystifying. Klein Heinz's financial interest in this case – or purported lack thereof – is irrelevant to Global Securities' appointment as lead plaintiff for the simple reason that ***Global Securities*** moved for appointment as lead plaintiff, ***not Klein Heinz***. Additionally, because Cherish Plemons (Global Securities' Vice President) signed Global Securities' Certification as its Vice President; any additional titles or positions she may hold as an analyst with Klein Heinz, or anyone else for that matter, in no way dilutes her authority to act on behalf of Global Securities.

### 2.    Global Securities Satisfies the Requirements of Rule 23

Reaching, the competing movants imply that Global Securities cannot satisfy Fed. R. Civ. P. 23 ("Rule 23") because it is a "hedge-fund" that engaged in short selling. *See, e.g.*, Brower Opp. at 12-13. This is nonsense and certainly does not represent the ***proof*** required by the PSLRA to rebut most adequate plaintiff presumption which lies in favor of Global Securities. *Compare* Brower Opp. at 13 ("***if*** Global engaged in short sales of Sonus stock, it could subject itself to [unique defenses]"), *with* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (one must present ***proof*** that the "most adequate plaintiff" is subject to unique defenses).

***First***, Global Securities did not short-sell Sonus stock. *See* Affidavit of John E. DeWick in Support of Global Undervalued Securities Master Fund's Motion to Be Appointed Lead Plaintiff Pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 and for Appointment of Lead Counsel ("DeWick Aff."), Ex. B, filed April 12, 2004. ***Second***, Global Securities' status as a "hedge

fund" does not *ipso facto* render it atypical or inadequate.[4]  As a consequence, all of the authority that Rollow and Brower relied upon to disqualify Global Securities is distinguishable.

For instance, in *MicroStrategy*, the court found an investor atypical and subject to unique defenses as a result of trading activity that the court found went "far beyond the scope of what a typical investor contemplates."  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000).  Likewise, in *Critical Path*, Judge Orrick found that movants who had engaged in short selling were atypical.  *See In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001).  Here, as evidenced by Global Securities' Certification, Global Securities did not engage in "short selling" and its trades in Sonus were anything but "far beyond the scope of what a typical investor contemplates" – indeed, Global Securities made eight purchases and four sales of varying amounts during the Class Period.  *See MicroStrategy*, 110 F. Supp. 2d at 437; *see also* DeWick Aff., Exs. A-B.  As such, *Microstrategy* and *Critical Path* are inapposite.

*Bank One* is equally inapplicable because, there, the court found that "an institutional investment manager (a hedge fund) that engaged in extensive ***daytrading, first shorting*** Bank One stock (presumably because it was regarded as overvalued at market price) and then buying to cover the short position," did not qualify as the "most adequate plaintiff[]."  *See In re Bank One*

---

[4]    "The term 'hedge fund' is undefined, including in the federal securities laws.  Indeed, there is no commonly accepted universal meaning.  As hedge funds have gained stature and prominence, though, 'hedge fund' has developed into a catch-all classification for many unregistered privately managed pools of capital.  These pools of capital may or may not utilize the sophisticated hedging and arbitrage strategies that traditional hedge funds employ, and many appear to engage in relatively simple equity strategies.  Basically, many 'hedge funds' are not actually hedged, and the term has become a misnomer in many cases.  *See* William H. Donaldson, Chairman, Securities and Exchange Commission, "Testimony Concerning Investor Protection Implications of Hedge Funds" (Apr. 10, 2003), at http://www.sec.gov/news/testimony/041003tswhd.htm.

*Shareholders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000). Here, again, Global Securities did not engage in daytrading or short-selling. *See id*.

In a last ditch effort to challenge Global Securities, some movants have called into question the adequacy of its chosen counsel.

Global Securities, as the presumptively most adequate plaintiff, has selected Lerach Coughlin Stoia & Robbins LLP ("LCSR") to serve as Lead Counsel subject to this Court's approval.[5]  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  LCSR is a 125-lawyer law firm that is actively engaged in complex litigation, emphasizing securities, consumer and antitrust class actions.  LCSR and its lawyers possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  The firm's lawyers have been appointed as lead or co-lead counsel in such landmark class actions as *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). Indeed, in approving the lead plaintiff's choice of LCSR lawyers as lead counsel in *Enron*, the Honorable Melinda Harmon found that their submissions stood out in the "breadth and depth of its research and insight."  206 F.R.D. at 458.  LCSR's securities department includes numerous trial attorneys, including many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities cases such as the one now pending against Sonus.

---

[5]      On Saturday May 1, 2004, Milberg Weiss Bershad Hynes & Lerach LLP changed its name to Milberg Weiss Bershad & Schulman LLP, in connection with the withdrawal of approximately 125 lawyers associated with the firm's West Coast operations which became LCSR as of that date. *See* Reply Aff., Ex. G.

Further, shortly after the Jiang Group's and Global Securities' motions were filed on April 12, 2004, Global Securities' counsel's pending withdrawal from the Milberg Weiss partnership became final. Hence, although the Jiang Group and Global Securities initially moved with counsel, some of whom were remaining with Milberg Weiss (Jiang Group's counsel) and others whose departure was pending (Global Securities' counsel) they are represented by different law firms-- namely Milberg Weiss and LCSR, respectively. Nevertheless, on April 26, 2004, the Jiang Group – represented by Milberg Weiss – withdrew its motion for appointment as lead plaintiff/counsel. Further, the withdrawal of Global Securities' counsel from Milberg Weiss to join LCSR was no secret and had been the subject of media coverage and was carried in the Business Section of *The New York Times* and on *PR Newswire*. *See* Reply Aff., Exs. H- I.

**B.    None of the Competing Movants Satisfy the Requirements of the PSLRA**

**1.    BPI Does Not Have a Financial Interest in the Outcome of This Litigation**

The issue of "financial interest in the relief sought" is a fundamental principle underlying the lead plaintiff provisions of the PSLRA. In *In re McKesson HBOC*, the court reasoned that "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover." *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999). Indeed, the Ninth Circuit's *Cavanaugh* decision confirms that "the ***only*** basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." 306 F.3d at 732 (emphasis in original); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii). Here, BPI – an investment advisor – neither has a financial stake of its own or possesses the requisite attorney-in-fact authority to either claim its clients' investment losses or to initiate suit on their behalf. *See Turkcell*, 209 F.R.D. at 357- 58.

Indeed, *even if this case yielded a 100% recovery for plaintiffs, while BPI's clients would recover their entire $5.2 million loss, BPI itself would recover nothing*. *See McKesson*, 97 F. Supp. 2d at 997 (finding that financial interest is "directly tied" to potential recovery); *Smith*, 206 F. Supp. 2d at 634-36 (court reduced an investment advisor's claimed loss to represent the difference between its claimed interest and that which the advisor actually had evidenced standing to claim). Thus, the size of BPI's financial stake (as opposed to its clients' stake) in the relief sought is limited to the fee it earned on the assets it invested for its clients. *See Turkcell*, 209 F.R.D. at 357-58 ("***BPI's actual loss was limited to the .35% fee it earned on the total assets it invested***.").

Similarly, in *Smith*, Judge Walls held that an investment advisor, like BPI, could not be appointed lead plaintiff because it did not provide evidence that it acted as an attorney-in-fact or had authority to bring suit. 209 F.R.D. at 634-35. ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf."). Likewise, in *Turkcell*, the court found that BPI could not be certified as lead plaintiff because it was not the legal purchaser of the stock at issue and, therefore, was prevented from suing on behalf of its investors. *See Turkcell*, 209 F.R.D. at 358. Here, BPI was not granted attorney-in-fact authority by its clients to initiate or litigate this case. There can be little doubt that this will be exploited by defendants and the interests of all the absent class members will be jeopardized, when the Court is compelled to deny certifying (as the circuit court did in *Turkcell*) BPI as a class representative. *Id.*

BPI goes to great lengths to show that *Casden v. HPL Techs., Inc.*, No. C-02-3510 VRW, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003), supports its argument that it is a "purchaser" of Sonus stock. BPI's reliance on *Casden* is belied by BPI's own opposition brief. In *Casden* the movant that the court found had standing ***was*** the actual purchaser of the stock, whereas here BPI's and other mutual funds – ***and not BPI*** – actually purchased Sonus shares. *See*

- 8 -

Memorandum of BPI Global Asset Management LLP in Opposition to Other Movants' Motion to Be

Appointed Lead Plaintiff ("BPI Opp.") at 2, filed April 26, 2004.

Indeed, BPI's opposition concedes that "certain of the mutual funds for which BPI Global

serves as the investment advisor and which purchased Sonus shares *themselves* have losses."  BPI

Opp. at 2; s*ee In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).  In

*Network*, Judge Alsup refused to appoint an investment adviser like BPI as lead plaintiff, despite its

argument that it possessed the largest financial interest.  In denying the investment advisors' motion,

Judge Alsup reasoned:

> There is, really, no such entity [as the investment advisor]....  ING Investment
> Management is merely an unincorporated business unit.  It manages a number of
> separate funds, each fund being the actual owner of the shares.  These funds are
> separate legal entities with their own directors.  ***The funds were the entities that
> actually bought and sold the Network securities***.

*Network*, 76 F. Supp. 2d at 1027.

Here then, like in *Network*, BPI *itself* did not "actually" buy and sell Sonus securities.[6]  *See*

*id.*

Apparently recognizing that it lacks the requisite attorney-in-fact authority to file, prosecute

and resolve securities fraud class action litigation by its clients, BPI now casually argues that it has

"full investment discretion" and "sole voting authority over those shares."  *See* Sweeney Decl. at 1.

That BPI has full investment discretion is not surprising – BPI is an *investment advisor*.  *See id*.  The

issue is not whether BPI has authority to invest its clients' money, but whether they have given BPI

---

[6]      BPI has not provided *any* explanation concerning its relationship with this mix of *foreign*
and domestic funds: Dougherty Strategic Equity Fund LLC, *Northern Trust* Multi-Manager Fund,
Fondation Generale de British American [illegible], Foundation de Prevoyance de British American
[illegible], Mediolanum Top Managers Country Fund, Mediolanum Top Managers Balanced Fund,
Mediolanum Top Managers Opportunities Fund and OPTIMA Strategy US Diversified Pool.

the authority to file suit on their behalf and whether BPI has standing to claim losses in connection with *their* losses in Sonus stock.  BPI has not provided any evidence that it has been given such authority.[7]

Ultimately, not only would the appointment of BPI under these facts and circumstances undermine the core principle of the PSLRA, that the appointed lead plaintiff have the "largest financial interest in the relief sought" it would create serious issues to whether the outcome of the case will have *res judicata* effect.  BPI has its array of legally distinct mutual funds.  *See* Fed. R. Civ. P. 17(a); *Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987) ("the essential purposes of Rule 17 and of Rule 19 are to ensure that a judgment will have *res judicata* effect"); *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992) ("The function of Rule 17(a) 'is simply to ***protect the defendant against a subsequent action by the party actually entitled to recover***, and to insure generally that the judgment will have its proper effect as *res judicata*.'''").

---

[7]    In an effort to remedy its inability to be appointed lead plaintiff, BPI now argues that two of the entities for which it serves as an investment advisor have standing to assert claims for violation of the Securities Act of 1933 pursuant to a secondary offering of Sonus common shares.  BPI Opp. at 2.  Even assuming that BPI's funds did purchase their shares in the secondary offering, "this fact is irrelevant to the motions currently before the Court because no plaintiff in this case has filed a complaint that alleges Section 11 claims.  Thus, whether those claims might be added in the future is not a factor that this Court [should] consider until such time as these claims are actually brought by a plaintiff.  Thus, to be considered part of the class in this particular action, [the lead plaintiff movant] does not need to show that it is entitled to bring strict liability claims under the Securities Act." *Alfaro v. CapRock Comm. Corp.*, Civ. Action No. 3:00-CV-1613-R, Order, at 7-8 (N.D. Tex. Dec. 11, 2000); Reply Aff., Ex. J.  Moreover, even if a §11 claim was currently a part of this action, BPI's Certification shows that the purported §11 purchases were made at $7.80 per share when the secondary offering was actually priced at $7.75 per share.  Therefore, either BPI's Certification is false or its clients did not in fact participate in the secondary offering.  Finally, "there is no requirement that the claims of all plaintiffs and class members must be identical" and to allow "a different class or subclass and separate Lead Plaintiff would fracture this litigation ... and obstruct any efficient and controlled progress." *Enron*, 206 F.R.D. at 445, 451.

**2.    The Other Competing Movants Fail to Meet the Requirements of the PSLRA**

None of the other competing movants meet the requirements set forth in PSLRA for appointment as lead plaintiff as all of them have significantly smaller financial interests than Global Securities. *See Cavanaugh*, 306 F.3d at 729 ("The 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23."). Accordingly, all of these motions should be denied.

**III.    CONCLUSION**

For all of the foregoing reasons and those set forth in Global Securities' Motion and Opposition, Global Securities respectfully requests that its Motion for Appointment as Lead Plaintiff be granted and its selection of Darren J. Robbins, Esq. and Travis E. Downs, III, Esq. of the law firm Lerach Coughlin Stoia & Robbins LLP as Lead Counsel be approved.

DATED:  May 10, 2004

Respectfully Submitted,

MELICK, PORTER & SHEA, LLP
RICHARD J. SHEA, BBO #456310
JOHN E. DeWICK, BBO #654723

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document
was served upon the attorney of record for each party by
mail on 5/10/04

_____/s/_John E. DeWick_____

_____/s/ John E. DeWick_____
JOHN E. DeWICK

28 State Street
Boston, MA  02109
Telephone:  617/523-6200
617/523-8130 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA
  & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III
RAMZI ABADOU
THOMAS E. GLYNN
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sonus Networks CA\BRF00009485.doc

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 401 B Street, Suite 1700, San Diego, California 92101.

2.      That on May 10, 2004, declarant served the REPLY MEMORANDUM IN SUPPORT OF THE GLOBAL UNDERVALUED SECURITIES MASTER FUND'S MOTION TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO §21D(A)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND FOR APPOINTMENT OF LEAD COUNSEL by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of May, 2004, at San Diego, California.

_____
                        SHARON E. FORD