# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



FILED
NORTHERN DISTRICT OF TEXAS
DEC 11 2000
CLERK, U.S. DISTRICT COURT
By _____ Deputy

ENTERED ON DOCKET
DEC 12 2000
U.S. DISTRICT CLERK'S OFFICE

| | |
|---|---|
| HECTOR ALFARO, On Behalf of Himself and Others Similarly Situated, <br> *Plaintiff*, <br><br> v. <br><br> CAPROCK COMMUNICATIONS CORPORATION, et al., <br> *Defendant*. | § § § § § § § § § § § |

CIVIL ACTION NO. 3:00-CV-1613-R

## MEMORANDUM OPINION

Before the Court are two Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed on September 25, 2000 by Saint Denis J. Villere ("Villere") and Herbert Becker and Thomas Villa ("Becker and Villa") (collectively the "Movants"). For the reasons stated below, this Court finds that Villere is the most capable representative of the class. Thus, this Court **APPOINTS** Villere as lead plaintiff and, further, Villere's choice of Goodkind Labaton Rudoff & Sucharow LLP as counsel is **APPROVED**.

### I. BACKGROUND FACTS

The Movants in this case allege that the Defendant issued a series of false and misleading statements between April 28, 2000 and July 6, 2000, which violated Section 10(b) of the Securities Exchange Act of 1934. The Movants further allege that they suffered losses as a result of purchasing the Defendant's stock during this period of time.

Specifically, Villere, a money manager with almost $1 billion in assets under management for over 300 individual and institutional investors, asserts that it purchased 16,900 shares of CapRock stock on behalf of six of its clients who suffered losses of $236,923.

Alternatively, Becker and Villa, two individual investors, assert that they collectively purchased 8,760 shares of CapRock stock and suffered losses of $130,630.

## II. ANALYSIS

A. **Private Securities Litigation Reform Act ("PSLRA") Guidelines for Selection of Lead Plaintiff**

In 1995, Congress had become concerned that the U.S. securities markets were being harmed by securities class action "strike" suits, which were being driven by lawyers mainly interested in their own profits. Gluck v. Cellstar Corp., 976 F. Supp. 542, 543-44 (1997). Securities class action suits were increasingly brought by "professional plaintiffs" who exercised very little control over their lawyers and the management of the suit. Id. Further, the end goal of many of these suits was to pressure the defendant to settle quickly, merely to avoid the expense of litigation. In an effort to stem the tide of frivolous suits and to ensure that investors, not their lawyers, exercised primary control over meritorious suits, Congress passed the PSLRA. Id. The PLSRA achieved Congress' goal of giving more control to investors by creating a rebuttable presumption that the lead plaintiff in a securities class action should be the member with the largest financial interest in the suit, which naturally increased the role of institutional investors in such suits. Id.

The test that the Court must apply in determining the lead plaintiff in a securities class action is set out in 15 U.S.C. § 78u-4(a)(3)(B)(iii). Specifically, the court is directed to adopt a presumption in favor of the plaintiff that (aa) has filed the complaint or made a timely response to notice of the suit, (bb) in the court's determination, has the largest financial interest in the relief sought, and (cc) satisfies Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). 15 U.S.C. § 78u-4 (1997). This presumption may be rebutted only by presentation of evidence that "the presumptively most capable plaintiff 'will not fairly and adequately protect the interests of the class' or is 'subject to unique defenses.'" Greebel v. FTP Software, 939 F. Supp. 57, 59 (1996)(citing 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(II)).

B. The Presumptively Most Capable Plaintiff

1. Timely Motion for Appointment as Lead Plaintiff

Both of the Movants in this case timely filed their Motions for Appointment as Lead Plaintiff by the deadline of September 25, 2000. Thus, both have satisfied sub-section (aa) of Section 78u-4.

2. Largest Financial Interest

To determine the size of a potential plaintiff's interest in a suit, the Court in Gluck considered the amount of shares the party purchased during the class period, the total amount of money invested during such time, and the estimated losses of the party. 976 F. Supp. at 546.

In the present suit, Villere has alleged that it purchased 16,900 shares of CapRock at a total cost of $361,419.25. Further, its estimated losses are $236,923. Alternatively, Becker and Villa have alleged that they purchased a total of 8,760 shares of CapRock at a total cost of $178,248.80. Their estimated losses are $130,630. Based on the numbers alone, it is clear that Villere is the presumptively most capable plaintiff. However, Becker and Villa challenge whether Villere has standing to sue under Section 10(b), and thus whether Villere may be considered a proper plaintiff in this suit.

Becker and Villa assert that Villere has neither standing to sue nor an actual financial interest in the present litigation because it has not shown that it purchased or owned the stock in question. Under Blue Chip Stamps v. Manor Drug Stores, only purchasers or sellers of stock may sue for alleged violations of Section 10(b). 421 U.S. 723 (1975)(affirming the rule set out twenty years earlier in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (1952)). Becker and Villa charge that Villere has offered no evidence that it purchased or took title to the shares of stock, and thus cannot be considered purchasers under Blue Chip Stamps.

However, Villere has presented a sworn affidavit of George Young, a partner at Villere, that

Villere has "full and complete discretion and authority to manage the securities of its clients, including the authority to purchase and sell... Villere purchased the CapRock Communications securities that are the subject of this lawsuit..." Thus, Villere has presented sufficient evidence that it actually purchased the securities in question, and had full authority to do so.

Further, the rule in Blue Chip Stamps is not meant to exclude institutional investors and money managers, but rather should be interpreted broadly to include them as they are often the parties who make investment decisions. The very purpose of the Section 10(b) cause of action is to encourage full and fair disclosure by issuers in order to protect *decision-makers* in securities transactions O'Brien v. Continental Illinois National Bank & Trust, 593 F.2d 54, 60 (7th Cir. 1979). In fact, several Section 10(b) cases regarding standing to sue turn precisely on whether the plaintiff was involved in the decision to purchase or sell securities.

For instance, in Davidson v. Belcor, Inc., the court held that a woman who received the right to the proceeds of the sale of Aargus Polybag Company stock as part of her divorce decree was never in a position to make an investment decision about the stock. 933 F.2d 603, 606 (7th Cir. 1991). Ms. Davidson received shares of stock in Belcor Inc. in exchange for her Aurgus stock when Aargus merged with Belcor. Ms. Davidson challenged the fairness of the transaction, and alleged Section 10(b) claims against Aurgus and Belcor. The court affirmed the dismissal of her claim because she was not entitled to decide whether and when the stock would be purchased or sold, and as such she was never in a position to rely on the information available to the market. Id. at 607. Thus, she did not have standing to sue because Section 10(b) was not designed to protect people like her. Id.

In O'Brien, the court held that the plaintiffs, who had granted complete decision-making authority regarding the purchase and sale of securities to the defendant, could not bring a Section

10(b) action.[1] 593 F.2d 54, 60. O'Brien is most useful in the present case for what it does not explicitly state, but rather what is seems to assume. That is, if Continental were to sue on behalf of the plaintiffs for violations of Section 10(b), it would have standing as the purchaser of the securities.[2] The court explains that Section 10(b) was designed to ensure that decision-makers had adequate information with which to make investment decisions, and Continental clearly falls into this category. Id.

In the present case, Villere is the entity that exercised decision-making authority in purchasing the CapRock stock at issue. In addition, Villere actually purchased the stock. Thus, Villere has standing to sue because it had the decision-making authority and it actually made the purchase of CapRock stock on behalf of its six clients.

### 3. Rule 23 of the FRCP

A member of a class may sue on behalf of the class when: (1) the class is so large that joinder of all members is not practical; (2) among the class, there are common questions of law or fact; (3)

---

[1] The plaintiffs were upset that the defendant did not disclose certain conflicts of interests that they had before purchasing the stock at issue. The court held that Section 10(b) was not designed to deal with nondisclosure related to the defendant's interests in their transactions on behalf of the plaintiffs, but rather nondisclosure in connection with the purchase or sale of stock. 593 F.2d at 60. Thus, the plaintiffs could not rely on federal securities claims to remedy any injury they suffered due to Continental's failure to disclose information to them. Id.

[2] The court states:

"Continental argues, however, that it and not plaintiffs purchased the stock, and, therefore, the *Blue Chip* rule applies [to preclude plaintiffs from having standing]. Although some judges and commentators have interpreted *Blue Chip* as Continental does, we are unable to say categorically that plaintiffs, on whose behalf Continental bought, were not in any sense purchasers..." Id. at 59.

The court here seems to be saying that it is not sure whether the plaintiffs would have standing to sue on a Section 10(b) claim. However, it goes without saying that Continental would clearly have standing, as the actual purchaser of the stock, to sue under Section 10(b).

the claims and defenses of the representative are typical of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Court will only consider the last two prongs of Rule 23, since they deal with the adequacy of the class representative.

### a. Typicality

The typicality requirement is satisfied when a plaintiff's claim "arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." Longden v. Sunderman, 123 F.R.D. 547, 556 (1988)(citation omitted). This Court's inquiry must focus on "whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id.

Becker and Villa allege that Villere's claim is not typical of the class because Villere did not purchase any stock in the secondary offering, but rather, all of Villere's purchases were made on the open market. Thus, Villere would not be permitted to claim a strict liability, or Section 11, cause of action under the Securities Act of 1933 on behalf of the class. Becker and Villa further allege that they would be able to make such a claim because Mr. Becker purchased stock in the secondary offering. However, no plaintiff has made a Section 11 claim in any complaint filed in this case. The only claims alleged in the complaints filed with this Court are Section 10(b) and 20(a) claims under the Securities Exchange Act.

Becker and Villa point to LAX v. First Merchants Acceptance Corp., 1997 WL 461036 (N.D. Ill. 1997), as support for their position that a Section 11 claim *could* be filed at some point in this action, and that would not render the notice defective, despite the fact that Section 11 claims are not mentioned in the notice. This is true. However, this fact is irrelevant to the motions currently before the Court because no plaintiff in this case has filed a complaint that alleges Section 11 claims. Thus,

whether these claims *might* be added in the future is not a factor that this Court will consider until such time as these claims are actually brought by a plaintiff. Thus, to be considered typical of the class in this particular action, Villere does not need to show that it is entitled to bring strict liability claims under the Securities Act.

Further, the Court finds that Villere is typical of the class in this suit. Villere has sufficiently alleged that it has suffered an injury similar to other members of the class because it purchased CapRock stock in reliance upon the allegedly misleading statements and suffered losses as a result. Further, the action that Villere wishes to pursue on behalf of the class is based on the same conduct that caused injury to the other class members. Finally, Villere has suffered loss in the value of its CapRock stock due to the alleged violation of Section 10(b), which is the same injury that other members of the class have suffered.

### b. Adequacy

To be considered an adequate plaintiff, "the interests of the class representative must not be antagonistic to those of the remaining class members, and the representative ... must be prepared to prosecute the action vigorously." Longden, 123 F.R.D. at 557. In the present case, Villere has shown that its interests are aligned with those of the remaining class members and that it, through its choice of counsel, will prosecute the action vigorously.

Becker and Villa repeat their arguments that Villere is not adequate because it cannot raise a strict liability claim under the Securities Act and, thus, is subject to unique defenses thereby making Villere inadequate. However, because of the reasons stated above, the Court will not consider Villere's inability to go forward with a claim that has not been pleaded in any complaint. Thus, Villere has proven that it is an adequate lead plaintiff.

### C. Becker and Villa Fail to Rebut the Presumption in Favor of Villere

Villere has established that it is the presumptively most capable plaintiff. Becker and Villa can rebut this presumption only by presenting evidence that "the presumptively most capable plaintiff 'will not fairly and adequately protect the interests of the class' or is 'subject to unique defenses.'" Greebel, 939 F. Supp. at 59. For the reasons set out in the sections dealing with adequacy and typicality, Becker and Villa have failed to rebut the presumption that Villere is the most adequate plaintiff.

### D. Villere's Selection of Counsel is Appropriate

The court has reviewed the resume of Goodkind Labaton Rudoff & Sucharow LLP, which Villere has indicated they will retain as Lead Counsel in the event they are appointed Lead Plaintiff. The firm is experienced in complex litigation and has ample experience with securities class actions. The court is satisfied that this firm is capable of serving competently as lead counsel in the case.

## III. CONCLUSION

For the reasons explained above, this Court finds that Villere is the most capable representative of the class. Therefore, Villere is **APPOINTED** as lead plaintiff. Further, Villere's choice of Goodkind Labaton as counsel is **APPROVED**.

It is so **ORDERED**.

ENTERED: December __8__, 2000.

CHIEF JUDGE JERRY BUCHMEYER
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS