UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE SONUS NETWORKS, INC. LITIGATION | ) ) ) ) | Civil Action No. 04-10294-DPW (Lead Case) |
| | ) ) ) ) | **SUPPLEMENTAL MEMORANDUM OF BPI GLOBAL ASSET MANAGEMENT LLP IN SUPPORT OF MOTION TO BE APPOINTED LEAD PLAINTIFF** |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) ) | |

## I.    INTRODUCTION

Pursuant to the Court's June 28, 2004 Order for Consolidation, Scheduling Order, and

Notice of Further Conference, BPI Global Asset Management LLP ("BPI Global") hereby

submits this supplemental memorandum and supporting affidavits of Michael J. Killeen and

Charles R. Sweeney in further support of its motion to be appointed Lead Plaintiff.[1]  Both

affidavits confirm the full investment discretion possessed by BPI Global to purchase the shares of

Sonus Networks, Inc. ("Sonus").  The affidavits also confirm the knowledge and approval of the

---

[1]    Mr. Killeen is Senior Vice-President, General Counsel and Corporate Secretary of CI Mutual Funds Inc., which is the ultimate controlling entity of the underlying mutual funds for which BPI Global acts as investment advisor.  Killeen Affidavit ¶1.  Mr. Sweeney is BPI Global's Controller. Sweeney Affidavit ¶1.

#106786

underlying mutual funds as to BPI Global's motion to be appointed Lead Plaintiff. Killeen

Affidavit ¶2; Sweeney Affidavit ¶4.

The operative Amended and Restated Investment Advisory Agreement, dated May 31,

1999 ("Agreement"), attached as Exhibit A to the Sweeney Affidavit, governs the relationship

between BPI Global and the underlying mutual funds for which BPI Global purchased the shares

of Sonus. It reflects the complete investment discretion held by BPI Global, thereby confirming

BPI Global's purchaser status. Simply put, BPI Global indisputably had full decision-making

authority with respect to the purchase and voting of the Sonus shares it acquired. The

Agreement's provisions are in material respects the same as those of the investment advisory

agreement at issue in *EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 442

(W.D. Pa. 2001), wherein the Court held that the investment advisor had standing to bring claims

under the federal securities laws and was a proper lead plaintiff.[2]

In sum, the affidavits confirm that BPI Global is by far the largest claimant seeking to be

appointed Lead Plaintiff, and that it has legal standing to bring the claims on behalf of the Class.

BPI Global should accordingly be appointed by the Court.

## II.    FACTUAL BACKGROUND

The Agreement was entered into on May 31, 1999 by and between BPI Global and BPI

Capital Management Corporation ("BPI Capital"). BPI Capital subsequently merged into C.I.

Mutual Funds Inc., which later changed its name to CI Mutual Funds Inc. Killeen Affidavit ¶3.

Thus, the Agreement applies to the relationship between BPI Global and CI Mutual Funds Inc.

*Id.*

---

[2]    Further, as previously noted, no movant other than BPI Global can bring a claim under §11
of the Securities Act of 1933, 15 U.S.C. §77k.

#106786

CI Mutual Funds Inc. is the ultimate controlling entity of both BPI Global Equity Fund and BPI American Equity Fund. *Id.* ¶2. BPI Global Equity Fund and BPI American Equity Fund are funds subject to the Agreement. *See* Ex. A to the Sweeney Affidavit at 2. A significant portion of the aggregate loss claimed by BPI Global was incurred by these two funds. Specifically, BPI Global Equity Fund lost $2,370,550 and BPI American Equity Fund lost $1,202,752 as a result of BPI Global's transactions in Sonus stock during the Class Period. *Id.* ¶5. While BPI Global's aggregate losses from purchases of Sonus stock during the Class Period exceed $5.3 million, the losses of BPI Global Equity Fund and BPI American Equity Fund are each larger than the losses of any other applicant for the Lead Plaintiff position. BPI Global should therefore be approved as the Lead Plaintiff.

## III.    BPI GLOBAL SHOULD BE CONFIRMED AS LEAD PLAINTIFF

In *Rent-Way*, 136 F. Supp. 2d 435, the Court addressed in detail the precise issue raised here, specifically, whether an investment advisor has standing to bring claims under the federal securities laws and can be appointed a lead plaintiff. *Id.* at 441-442. The Court recognized that the terms "purchaser" and "owner" are **not** used interchangeably under the federal securities laws, and that only "purchasers" have standing to bring claims. *Id.* at 442. Noting that the investment advisor had been granted "unrestricted decision-making authority" and "independently determined which securities to purchase for its clients' accounts," the *Rent-Way* court concluded that the investment advisor was a "purchaser" of securities under the federal securities laws and, thus, had standing to sue. *Id.* at 442. In further proceedings in *Rent-Way*, the Court affirmed its prior decision appointing the investment advisor, noting that the key inquiry was the scope of the investment discretion, and **not** whether a specific power of attorney had been granted, or whether

3

there was an attorney-in-fact relationship. *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 108 (W.D. Pa. 2003).[3]

Here, as demonstrated by the submitted affidavits and the Agreement, BPI Global is akin to the investment advisor appointed as Lead Plaintiff and certified as a class representative in *Rent-Way*. The purpose of the Agreement was to authorize BPI Global to invest the assets of the underlying mutual funds, similar to the investment advisory agreements at issue in *Rent-Way*. *See* Agreement at ¶5.a. ("The Manager hereby appoints the Investment Manager to advise the Manager in respect of the Investment Assets . . ."). As was the case in *Rent-Way*, the Agreement gives BPI Global broad decision-making authority regarding the day-to-day purchase of securities. Because the underlying mutual funds delegated investment discretion to BPI Global, these mutual funds are not themselves "purchasers" under the federal securities laws. *See Rent-Way*, 136 F. Supp. 2d at 442. BPI Global is the only entity which can bring claims to recover the losses suffered by BPI Global Equity Fund, BPI American Equity Fund, and the other related mutual funds controlled by CI Mutual Funds Inc.

BPI Global's broad grant of authority and discretion is described at paragraph 6 of the Agreement, which provides that it:

- "invest and reinvest the Investment Assets" (¶6.a.)

---

[3] For this reason, no weight should be given to the decision in *In re Turkcell Illetisim Himetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2003), where as among multiple proposed class representatives, BPI Global was not certified on a Rule 23 motion. The Court in *Rent-Way*, 218 F.R.D. at 109 n. 8, found that the *Turkcell* court had misapplied its earlier decision appointing an investment advisor as lead plaintiff by giving undue importance to the "attorney-in-fact" question, when the determinative point was the scope of the investment discretion. Further, the *Turkcell* court erroneously concluded (209 F.R.D. at 358) that the investment advisor was not the legal purchaser of the securities at issue. As demonstrated in the Killeen and Sweeney Affidavits, there can be no question that in this case, BPI Global was the legal purchaser of the Sonus shares.

#106786

- "implement portfolio purchases and sales" (¶6.b.)

- "determine . . . whether and in what manner to vote . . . securities held in the Investment Assets" (¶6.e.)

- "determine whether to exercise any rights to acquire, convert or exchange into other securities, securities held in the Investment Assets" (¶6.f.)

BPI Global's decision making authority is further evidenced by the fact that it is responsible for maintaining the books and records for the securities transactions made on behalf of the mutual funds. *See* Agreement ¶11. While BPI Global is required to exercise reasonable care in fulfilling its duties, the mutual funds have no control over BPI Global's decision-making process insofar as stock purchases are concerned. *See* Agreement ¶13.[4]

Other competing lead plaintiff movants may claim that the investment guidelines set forth in the Agreement preclude a finding that BPI Global had unfettered decision-making authority and thereby somehow undermine its "purchaser" status. Any such argument is misplaced. The investment restrictions appearing at pages 17-19 of the Agreement provide that BPI Global cannot make certain types of unusual investments. None of these restrictions are relevant to the Sonus purchases. For instance, BPI Global is not permitted to invest in real estate or gold, or to invest more than ten percent of a fund's assets in a single company's securities. *See* Agreement at Schedule 1. There is nothing inconsistent as between these types of standard restrictions and BPI Global's purchaser status. The underlying mutual funds are designed to trade in securities such as Sonus. In *Rent-Way*, 218 F.R.D. 101, the Court found that these types of restrictions were not relevant to the standing issue:

---

[4]    The Agreement also provides that BPI Global is a fiduciary of the mutual funds and assumes "the duties, responsibilities and obligations of such a fiduciary." *See* Agreement ¶5.d. BPI Global is pursuing the Lead Plaintiff position in furtherance of its fiduciary obligation. Sweeney Affidavit ¶4.

#106786

To be sure, **the relevant agreements all require that Cramer's investment decisions comport with any written instructions and/or investment objectives issued by the client**. . . . [W]e have examined the sample "restrictions" . . . and we find them to be typical of the broad parameters normally established by institutional clients operating within the bounds of their respective charters and bylaws . . . **These sort of general investment goals, guidelines and limitations do not undermine Cramer's "purchaser" status because, once again, the key to our inquiry is the level of discretion exercised by Cramer in the day-to-day purchase of securities for its clients, particularly (for present purposes) insofar as it relates to Cramer's purchase of Rent-Way stock.** Notwithstanding the general limitations imposed by these agreements, we see nothing which detracts from our original view that Cramer "independently determined which securities to purchase for its clients' accounts." *EZRA*, 136 F. Supp. 2d at 442.

*Id.* at 109 (emphasis added). The Agreement is very similar to the agreements involved in

*Rent-Way* and confirms BPI Global's standing to litigate this case.

## IV.    CONCLUSION

BPI Global was the "purchaser" of the Sonus shares at issue and should accordingly be

appointed Lead Plaintiff because it has materially greater losses than any other movant. Its choice

of counsel, Gold Bennett Cera & Sidener LLP, is well qualified to litigate this case on behalf of

the Class and should be approved as Lead Plaintiff's counsel.

DATED: July 6, 2004

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera (scera@gbcslaw.com)
Gwendolyn R. Giblin (ggiblin@gbcslaw.com)
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230
Fax: (415) 777-5189


By: _____
        Solomon B. Cera

                            - and -

6

#106786

GRAHAM & ALBANO, P.C.
Patricia A. Szumowski (pszumowski@krypto.net)
BBO#653839
100 Russell Street
P.O. Box 377
Hadley, Massachusetts 01035
Tel: (413) 586-5055
Fax: (413) 532-3387

Attorneys for Proposed Lead Plaintiff
BPI Global Asset Management LLP

#106786