UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re SONUS NETWORK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | ) Lead Case No. 04-CV-10294-DPW<br>)<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>) |

THE GLOBAL UNDERVALUED SECURITIES MASTER FUND'S SUPPLEMENTAL
OPPOSITION TO BPI GLOBAL ASSET MANAGEMENT LLP'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF

The Global Undervalued Securities Master Fund ("Global Securities") respectfully submits this Supplemental Opposition to BPI Global Asset Management LLP's Motion for Appointment as Lead Plaintiff.

**I.      INTRODUCTION**

At the June 28, 2004 hearing on lead plaintiff motions, the Court provisionally appointed BPI Global Asset Management LLP ("BPI") as lead plaintiff, subject to BPI providing admissible evidence and documentation of its authority to sue on behalf of its clients. *See* Transcript of Hearing at 35:2-3. On July 6, 2004, BPI submitted the additional information requested by the Court. Unfortunately for BPI, however, that evidence conclusively shows that BPI does not have complete investment discretion with respect to its clients' investments in Sonus Networks, Inc. ("Sonus Networks"), and therefore, does not have the requisite authority to bring suit on behalf of its clients in this case.

On the contrary, the Amended and Restated Investment Advisory Agreement ("Agreement") submitted by BPI expressly *limits* BPI's rights and duties to providing "investment management services" and only authorizes BPI to provide those services on the "***instructions or approval of the Manager***" of the BPI Global Equity Fund and the BPI American Equity Value Fund (together, the "BPI Funds").[1] The specific provisions limiting BPI's authority are set forth below:

RECITALS:

\*      \*      \*

> D.      [T]he Manager desires to appoint the Investment Advisor [BPI] to provide to the Manager ***investment management services*** in respect of the Funds and their Investment Assets.

---

[1] *See* Affidavit of Charles E. Sweeney in Support of BPI Global Asset Management LLP's Motion to be Appointed Lead Plaintiff ("Sweeny Aff."), Ex. A. The Agreement applies only to the BPI Funds. *Id.* at 1-2. It does not apply to the 9 other clients included in BPI's lead plaintiff motion. Thus, one must assume that BPI lacks authority to sue on behalf of these clients/class members.

\*   \*   \*

*Duties of the Investment Advisor [BPI]*

6.  The Investment Advisor [BPI] shall provide the Advice in respect of each of the Funds during the term of this Agreement in accordance with the Investment Policy of each of the Funds and, without limiting the generality of the foregoing, **shall, on the instructions or approval of the Manager** in respect of each of the Funds:

    a.  invest and reinvest the Investment Assets ...;

    b.  implement portfolio purchases and sales respecting the Investment Assets ...;

    c.  provide or cause to be provided to the Manager such daily, weekly and monthly reports with respect to the cost and current value of the Investment Assets as the Manager may reasonably request ...;

    d.  participate to the extent reasonably required by the Manager in its marketing and promotional efforts or activities in respect of the Fund ...;

    e.  unless otherwise directed by the Manager, determine or cause to be determined under its supervision whether and in what manner to vote, or execute or cause to be executed proxies respecting the voting of, securities held in the Investment Assets ...:

    f.  determine whether to exercise any rights to acquire, convert or exchange into other securities, securities held in the Investment Assets; and

    g.  provide or cause to be provided such information as the Manager may reasonably require for reports to clients of the Manager ....

Sweeney Aff., Ex. A at 2, 6 (emphasis added).

Nothing in the Agreement grants BPI absolute, complete or full authority to independently determine which securities to purchase for its clients. But rather, the Agreement expressly limits BPI to providing investment management services on the instructions or approval of the BPI Funds' managers. *Id.*[2] There is no delegation of authority under the Agreement for BPI to act as attorney in

---

[2] *See also* Schedule 1 at pages 17-19 of the Agreement (Sweeney Aff., Ex. A), further restricting BPI's rights and duties as investment advisor to the BPI Funds.

fact for its clients.  Likewise, nothing in the Agreement authorizes BPI to bring suit and prosecute claims for damages in the name of its clients.  Accordingly, BPI has failed to demonstrate that it possesses the requisite authority to sue for its clients in connection with their losses in Sonus Network and, therefore, is not an appropriate lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Ironically, the very decisions upon which BPI relies–*Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435 (W.D. Pa. 2001) ("*Rent-Way I*"), and *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101 (W.D. Pa. 2003) ("*Rent-Way II*")–actually support denial of its lead plaintiff application in this case.  This is because in *Rent-Way I* and *II*, unlike here, the investment advisor seeking appointment as lead plaintiff (Cramer Rosenthal ("Cramer")) was able to demonstrate its authority to sue on behalf of its clients by submitting competent evidence of that authority.  In *Rent-Way I*, Cramer, through its counsel Gold Bennett Cera & Sidener LLP ("Gold Bennett"), submitted a sworn declaration expressly stating that "Cramer 'acts as attorney-in-fact for its clients and is authorized to bring suit to recover for, among other things, investment losses." *Rent-Way I*, 136 F. Supp. 2d at 441.[3]  And in *Rent-Way II*, Cramer salvaged its representative plaintiff status by submitting evidence in the form of client investment advisory agreements which "generally conferred upon Cramer full [investment] authority" and authorized Cramer to "independently determine[] which securities to purchase for its clients' accounts." 218 F.R.D. 101, 107-08.

Here, by contrast, BPI has not provided the Court with a sworn attorney in fact declaration nor an investment advisory agreement showing that it has full investment authority with respect to its clients' investments in Sonus Networks.  Instead, BPI relies upon the Agreement to show that it has

---

[3]     Emphasis is added and citations are omitted throughout unless otherwise noted.

the requisite authority to sue; but the Agreement itself expressly limits BPI's authority to only providing investment management services on the instruction or approval of the BPI Funds' managers. (The Investment Advisor ... shall, on the instructions or approval of the Manager in respect of each of the Funds: ....").

Thus, as to BPI's authority/standing to sue, the facts here are almost identical to those in *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002), where the court refused to appoint BPI as a representative plaintiff. *Id*. at 358. Again, BPI has failed to demonstrate its authority to sue in the name of its clients to recover investment losses.[4] Accordingly, BPI lacks standing to sue and its lead plaintiff application must be denied.

However, even if the Court were to conclude that BPI has standing to sue for the BPI Funds, BPI still could not salvage its lead plaintiff application by dissolving its group down to just those two members. Congress enacted the lead plaintiff provisions of the PSLRA to eliminate lawyer-driven litigation and the unseemly practice of plaintiffs' lawyers assembling and dissolving groups in order to seize control of class action litigations. Any attempt by BPI to reformulate its lead plaintiff application to include just the BPI Funds violates the PSLRA's bar against after-the-fact groups and must be rejected. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (refusing to appoint "an artifice cobbled together by cooperating counsel"); *In re Donnkenny Inc. Sec.*

---

[4] While BPI apparently got the Farhat Plaintiff Group to file a supplemental response in support of its standing to serve as lead plaintiff, such endorsements do not count. *See In re Enron Sec. Litig.*, 206 F.R.D. 427, 452-53 (S.D. Tex. 2002) (rejecting endorsement from state Attorneys General and major institutional investors of group of state retirement system); *Bobrow v. Mobilmedia, Inc.*, No. 96-4715, 1997 U.S. Dist. LEXIS 23806, at *6 (D.N.J. March 31, 1997) ("[S]ecuring of support from shareholders who are not named plaintiffs' is irrelevant to the lead plaintiff determination.).

*Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (rejecting effort to join a group after 60-day filing deadline).

Accordingly, for all the reasons stated above, and in its previous papers, Global Securities is the most adequate class member to represent the class with $920,000 in losses, and should be appointed lead plaintiff. BPI's lead plaintiff application must be denied, as BPI does not have the largest financial interest in the outcome of the litigation and/or is not an adequate representative plaintiff under Fed. R. Civ. P. 23.

**II.     ARGUMENT**

    **A.     BPI Lacks Authority/Standing to Sue and Therefore Cannot Serve as Lead Plaintiff**

The applicable standards for the appointment of an investment advisor as lead plaintiff in a private securities class action arising under the PSLRA are not in dispute. The lead plaintiff applicants agree that an investment advisor seeking appointment as lead plaintiff must first demonstrate its authority to sue on behalf of its clients. Otherwise, the investment advisor suffers no losses and lacks standing to sue for violations of the federal securities laws. *See, e.g., Sinai Roth v. Knight Trading Group, Inc.*, 228 F. Supp. 2d 524, 530 (D.N.J. 2002) (finding that an investment advisor with "unrestricted decision-making authority" could serve as lead plaintiff); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) (finding that an investment manager who submitted evidence that it acts as attorney-in-fact for its clients and is authorized to bring suit to recover for investment losses could serve as lead plaintiff); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (finding that an investment advisor who submitted a sworn declaration stating that it is the attorney in fact for its clients with full power to bring suit for their investment losses could serve as lead plaintiff); *In re Turkcell*, 209 F.R.D. at 358

(finding that an investment advisor who failed to present evidence that it is the attorney in fact for its clients could not serve as lead plaintiff).

Thus, the narrow question before this Court is whether BPI has carried its burden of proof and demonstrated that its has authority to sue on behalf of its 11 clients whom allegedly suffered $5.3 million in losses. As to at least 9 of them, the short answer is "no." For these 9 clients, BPI has simply abandoned the playing field without even trying to establish its authority to sue on behalf of them. Thus, BPI's alleged financial interest in this case must be reduced by at least $1.8 million, and its lead plaintiff application must be carefully scrutinized for evidence of lawyer-driven litigation tactics.

As to the remaining two clients on whose behalf BPI seeks lead plaintiff status, the BPI Global Equity Fund and the BPI American Equity Fund, BPI has utterly failed to present this Court with any competent evidence that they have authorized BPI to bring suit for them against the Sonus Networks defendants named in this action. The Agreement conclusively shows that the BPI Funds only granted BPI conditional and limited authority to manage their investments, but not to sue:

> ***Duties of the Investment Advisor [BPI]***
>
> 6. The Investment Advisor [BPI] shall provide the Advice in respect of each of the Funds during the term of this Agreement in accordance with the Investment Policy of each of the Funds and, without limiting the generality of the foregoing, ***shall, on the instructions or approval of the Manager*** with respect of each the Funds:
>
>> a. invest and reinvest the Investment Assets ...;
>>
>> b. implement portfolio purchases and sales respecting the Investment Assets ...;
>>
>> c. provide or cause to be provided to the Manager such daily, weekly and monthly reports with respect to the cost and current value of the Investment Assets as the Manager may reasonably request ...;
>>
>> d. participate to the extent reasonably required by the Manager in its marketing and promotional efforts or activities with respect to the Funds, ...;

  e. unless otherwise directed by the Manager, determine or cause to be determined under its supervision whether and in what manner to vote, or execute or cause to be executed proxies respecting the voting of, securities held in the Investment Assets ...:

  f. determine whether to exercise any rights to acquire, convert or exchange into other securities, securities held in the Investment Assets; and

  g. provide or cause to be provided such information as the Manager may reasonably require for reports to clients of the Manager may reasonably require for reports to clients of the Manager ....

Sweeney Aff., Ex. A at 2, 6, 17-19.[5]  Nothing in this language, or any other language in the Agreement, can be construed to confer upon BPI complete or full authority upon BPI to sue for investment losses suffered by the BPI Funds. Unlike the investment advisory agreements at issue in *Rent-Way II*, 218 F.R.D. 101, there is no general "catch-all" rights provision contained in the Agreement through which additional rights not expressly conferred upon BPI may be read into the contract. *See Id.* at 107-08.

The Affidavits of Michael J. Killeen and Charles R. Sweeny simply confirm this fact. Nowhere to be found in either affidavit is any statement, under penalty of perjury or otherwise, that BPI is the attorney in fact for the BPI Funds. In *Rent-Way I*, the Gold Bennett law firm submitted such a declaration on behalf of their investment advisor client, Cramer, to satisfy the *Rent-Way* court that Cramer had authority to sue, and thus, standing to serve as lead plaintiff. Here, however, the Killeen and Sweeney Affidavits submitted by the Gold Bennett law firm are devoid of any statement indicating that the BPI Funds expressly delegated authority to BPI to sue on their behalf in connection with their purchases of Sonus Network securities. BPI's (and Gold Bennett & Cera)

---

[5] The cases are nearly unanimous in holding that a client's grant of authority for an investment advisor to provide investment advice does not give the investment manager the authority to sue on it behalf. *See Smith*, 206 F. Supp. 2d at 634-35; *Weinberg*, 216 F.R.D. at 255.

failure to come forward with such evidence, despite at least four opportunities to do so, is strong evidence that no such authority exists and raises serious concerns about BPI's standing to sue under the federal securities laws.  Thus, to protect the Class, BPI should not be appointed lead plaintiff, or at least not sole lead plaintiff, in this important litigation.

**B.    Global Securities Is the Most Adequate Plaintiff Under the PSLRA and Should Be Appointed Lead Plaintiff to Represent the Class**

With $920,000 in losses, Global Securities has the largest financial interest in the outcome of this litigation and should be appointment lead plaintiff.  Global Securities' appointment as lead plaintiff will also further Congress' goal of encouraging institutional investors like Global Securities to take the lead in private securities class actions.

James M. Brower cannot be heard to complain that Global Securities should be disqualified as lead plaintiff because his counsel filed lead plaintiff motions on behalf of two lead plaintiff applicants.  As a threshold matter, Mr. Brower's counsel (Berman DeValerio Pease Tobacco Burt & Pucillo) also filed lead plaintiff motions on behalf of two different lead plaintiff applicants, *i.e.*, Brower and Saverio Pugliese.

In any event, Global Securities and the Jiang Group were never adverse and the Jiang Group withdrew its lead plaintiff application before opposition briefs to competing lead plaintiff motions were filed.  Under similar circumstances, Judge Sweet of the United States District Court for the Southern District of New York declined to disqualify CalPers as lead plaintiff simply because its counsel had filed two lead plaintiff applications.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *59-*60 (S.D.N.Y. May 27, 2004).  In *Pirelli*, the court concluded that any potential conflict of interest had been cured by the early withdrawal of the second lead plaintiff motion filed by CalPers' counsel.  *Id*. Global Securities respectfully submits that the same result should attain here.

### III. CONCLUSION

For all the reasons stated above and in its previously filed papers, Global Securities is the most adequate plaintiff to represent the Class and should be appointed lead plaintiff. BPI, by contrast, lacks standing to sue and therefore does not have the largest financial interest in the outcome of this litigation. BPI is also an inadequate representative plaintiff under Fed. R. Civ. P. 23. Therefore, its lead plaintiff application should be denied.

DATED: July 13, 2004

Respectfully submitted,

MELICK, PORTER & SHEA, LLP
RICHARD J. SHEA, BBO #456310
JOHN E. DeWICK, BBO #654723
28 State Street
Boston, MA  02109
Telephone:  617/523-6200
617/523-8130 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA
  & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III
RAMZI ABADOU
THOMAS E. GLYNN

_____
TRAVIS E. DOWNS III

401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on July 13, 2004.

_____

S:\CasesSD\Sonus Networks CA\BRF00011484-Opp.doc

- 9 -