# EXHIBIT A

(For purposes of Electronic Filing only,
Exhibit A is printed on three 8 ½ x 11 pages)

- "Sonus's improper accounting practices were ongoing, pervasive and occurred with the knowledge, acquiescence and direct participation of . . . Nill." (Compl. ¶ 5)

- "Sonus's senior finance and accounting personnel, with the knowledge, acquiescence and approval of . . . [Mr.] Nill . . . engaged in a wrongful pattern of conduct . . ." (Compl. ¶ 6)

- Mr. Nill was "aware of, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company . . ." (Compl. ¶ 20)

- Mr. Nill was "aware of, or recklessly disregarded, the misstatements contained [in public disclosures] and omissions therefrom, and were aware of their materially false and misleading nature." (Compl. ¶ 22)

- Mr. Nill "knew or was reckless in disregarding the fact that the misleading statements and omissions described herein would adversely affect the integrity of the market for Sonus securities and would artificially inflate or maintain the price of Sonus securities."  (Compl. ¶ 23)

- "Sonus's finance and accounting staff, with the knoweldge, approval and acquiescence of . . . [Mr.] Nill, engaged in a series of financial and accounting irregularities designed to make it appear as though the Company's revenue model was capable of delivering steady, reliable growth." (Compl. ¶ 36)

- "These assertions were known to be materially false when made." (Compl. ¶ 38)

- "Sonus's senior accounting and finance staff, with the knowledge and approval of . . . [Mr.] Nill, employed accounting trickery in order to manipulate contracts to "smooth out" Sonus's otherwise serrated revenue pattern." (Compl. ¶ 40)

- "The unbundling of the contracts for the purpose of manipulating software deliverables and, ultimately, to "smooth" out reported revenues was known, and/or recklessly condoned, by [Mr. Nill]." (Compl. ¶ 40)

- "This improper revenue recognition practice was known, approved and condoned by [Mr.] Nill . . ." (Compl. ¶ 43)

- "All defendants knew or recklessly disregarded . . . that Sonus was experiencing [] pervasive deficiencies in its internal controls and accounting practices . . ." (Compl. ¶ 84)

- Mr. Nill "knew of material problems in the Company's accounting systems." (Compl. ¶ 88)

- "Defendants knew or recklessly disregarded numerous red flags evidencing the fact that the Company's internal controls were grossly deficient . . ." (Compl. ¶ 89)

- Mr. Nill "knowingly or with recklessness caused Sonus to materially misstate the Company's revenues . . ." (Compl. ¶ 92)

- "The magnitude, duration and pervasiveness of the accounting manipulations . . . compels the conclusion that these methods were implemented by defendants intentionally, or that, at a minimum, defendants recklessly disregarded the overwhelming prevalence of these improper procedures and the resulting material falsifications of Sonus's financial statements."  (Compl. ¶ 94)

- "Despite their knowledge, or recklessness in not knowing, of the existence of the foregoing improper practices and accounting manipulations . . ." (Compl. ¶ 99)

- "These statements were false when made because of Sonus's fraudulent accounting practices..." (Compl. ¶ 99)

- ". . . as defendants knew or recklessly disregarded, Sonus's financial statements were not prepared in accordance with GAAP . . ." (Compl. ¶ 174)

1

| **Devised and Participated in a "Scheme" or "Plan" to Defraud Investors** |
|---|

- "[T]he financial irregularities which resulted in the material misstatements of Sonus's publicly-reported financial results . . . were due to an internal decision by Sonus's senior management to publicly portray Sonus's business as generating linear growth, when in truth the Company's business was characterized by highly irregular, non-linear revenues." (Compl. ¶ 5)

- Mr. Nill "sought to create and maintain an illusion of linear revenue growth . . ." (Compl. ¶ 5)

- "As the fraud was revealed and assimilated by the marketplace, the price of Sonus's stock declined to a low of $3.92 on March 29, 2004." (Compl. ¶ 9)

- Mr. Nill "is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Sonus common stock by disseminating materially false and misleading statements and/or concealing material adverse facts" (Compl. ¶ 24)

- "Sonus's Fraudulent Accounting" (Compl. Heading between ¶¶ 32-33)

- "Creating An Illusion Of Linear Revenues" (Compl. Heading between ¶¶ 35-36)

- "Sonus's senior managers sought to create and maintain the illusion of revenue linearity . . ." (Compl. ¶ 37)

- "The illusion of linearity was also important because Sonus's senior managers had intended to raise capital by issuing shares of Sonus's common stock in follow-on offerings pursuant to a prior shelf registration, and they knew that such offerings would not be successful if the Company's revenues were deemed to be irregular and unpredictable." (Compl. ¶ 39)

- "To accomplish their illegal plan . . ." (Compl. ¶ 40)

- "As part of this plan, these individuals improperly recorded revenues . . ." (Compl. ¶ 42)

- "The accounting misconduct occurred at the behest and under the direction of Sonus's senior management." (Compl. ¶ 45)

- Defendants' engaged in an "illegal revenue reporting scheme . . ." (Compl. ¶ 47)

- "Sonus engaged in a variety of improper practices which were designed to make its financial results look attractive . . ." (Compl. ¶ 49)

- "The Fraud Begins To Unravel" (Compl. Heading between ¶¶ 73-74)

| **Made "False and Misleading Statements" in public Disclosures** |
|---|

- "[D]efendants mislead Sonus's public investors by disseminating a series of materially false and misleading statements concerning Sonus's revenues, earnings, profitability, and financial condition." (Compl. ¶ 2)

- "Sonus made materially false and misleading statements in ten (10) Securities and Exchange Commission ("SEC") filings . . ." (Compl. ¶ 3)

- "By virtue of the accounting restatements it has issued, Sonus has admitted that it published materially false financial results . . ." (Compl. ¶ 4)

- "By restating its financial results, Sonus has admitted that . . . [it] materially misrepresented its financial condition and results of operations." (Compl. ¶ 8)

- Sonus disseminated "materially false and misleading financial information . . ." (Compl. ¶ 9)

- "Nill signed various publicly-available SEC documents containing materially false and misleading statements . . ." (Compl. ¶ 17)

- "Sonus's False And Misleading April 2003 Public Offering" (Compl. Heading between ¶¶ 67-68)

- "Sonus issued materially false and misleading statements concerning its financial results by incorporating in its April 21, 2003 Prospectus Supplement previously filed SEC reports . . ." (Compl. ¶ 68)

- "The April 21, 2003 Prospectus Supplement was materially false and misleading . . ." (Compl. ¶ 69)

- "Sonus's False And Misleading September 2003 Public Offering" (Compl. Heading between ¶¶ 69-70)

- "Sonus issued materially false and misleading statements concerning its financial results by incorporating in its September 23, 2003 Prospectus Supplement previously filed SEC reports . . ." (Compl. ¶ 70)

- "The September 23, 2003 Prospectus Supplement was materially false and misleading . . ." (Compl. ¶ 71)

- "[Mr.] Nill Directly Participated In And Furthered The Fraudulent Accounting Practices" (Compl. Heading between ¶¶ 72-73)

- "Materially False And Misleading Statements Made During The Class Period" (Compl. Heading between ¶¶ 98-99)

- Sonus made "materially false" statements in various public filings (Compl. ¶¶ 104-108; 110-112; 114-118; 124-126; 130-131; 138-139; 143-144; 149-150; 152; 156; 163-164; 169)

- Mr. Nill made "materially false claims" in various public filings or public statements (Compl. ¶¶ 113-120; 122; 142; 148; 154; 158; 160; 167; 171; 173)

- The "April 21, 2003 Prospectus Supplement was also materially false and misleading." (Compl. ¶ 137)

- The "September 24, 2003 Prospectus Supplement was also materially false and misleading." (Compl. ¶ 161)

- "The above representations and defendant certifications were materially false and misleading when made . . ." (Compl. ¶ 174)