the year ended December 31, 2002, Form 10-Q for the quarterly period ended March 31, 2002,

Form 10-Q for the quarterly period ended June 30, 2002, and Form 10-Q for the quarterly period

ended September 30, 2002. Because the foregoing identified SEC filings were materially false

and misleading for the reasons alleged hereinabove, the April 21, 2003 Prospectus Supplement

was also materially false and misleading. There was no disclosure in the April 21, 2003

Prospectus Supplement of any of the material adverse facts as alleged herein which were in

existence as of that date.

### G.    <u>2003 First Quarter Results</u>

141.    On April 9, 2003, Sonus issued a press release announcing its financial results for

the first quarter of 2003, which ended on March 31, 2003. Sonus falsely represented that:

> Sonus Networks, Inc. (Nasdaq: SONS) . . . today reported its
> financial results for the first quarter ended March 31, 2003, in
> accordance with U.S. generally accepted accounting principles
> (GAAP).
>
> <u>Revenues for the first quarter of fiscal 2003 were $16.0 million</u>
> compared with $12.7 million the fourth quarter of fiscal 2002. <u>Net</u>
> <u>loss for the first quarter of fiscal 2003 was $4.4 million or $0.02</u>
> <u>per share</u> compared with a net loss for the fourth quarter of fiscal
> 2002 <u>of $12.8 million or $0.07 per share. Revenues for the first</u>
> <u>quarter of fiscal 2002</u> were $21.2 million and the net loss for the
> first quarter of fiscal 2002 was $16.2 million or $0.09 per share.
>
> "Our financial results for the first quarter reflected good progress
> toward our business objectives," said Hassan Ahmed, president
> and CEO, Sonus Networks. "<u>We grew our revenues 27 percent</u>
> <u>over last quarter</u>, and by continuing to manage our business with
> precision, we further narrowed our net loss. . . ." (Emphasis
> added.)

142.    Sonus has admitted that its reported financial results for the first quarter of fiscal

2003 were false and restated its first quarter 2003 financial results in its first quarter 2004 Form

10-Q (hereinafter, "1Q 2004 Form 10-Q"). Sonus's revenues were overstated by $6.810 million, its net loss was misstated by $5.326 million, and its net loss per share was misstated by $0.03. Absent the accounting improprieties, the Company would have reported revenues of $9.209 million, net income (losses) of ($9.707 million), and basic and diluted net loss per share of ($0.05). Furthermore, Sonus misstated its first quarter 2003 product revenues by $7.61 million. Restated, Sonus's product revenues were $3.517 million. Sonus misstated its first quarter 2003 service revenues by $0.800 million. Restated, Sonus's service revenues were $5.692 million. Sonus misstated its first quarter 2003 cost of revenues for products by $1.692 million. Restated, Sonus's cost of revenues for products is $1.538 million. Sonus misstated its first quarter 2003 cost of revenues for services by $0.380 million. Restated, Sonus's cost of revenues for services was $2.555 million. Sonus misstated its first quarter 2003 write-off (benefit) of inventory and purchase commitments by $0.735 million. Sonus included no write-off (benefit) of inventory and purchase commitments in its restatement in its 1Q 2004 Form 10-Q. Sonus misstated its first quarter 2003 total cost of revenues by $1.337 million. Restated, Sonus's total cost of revenues was $4.093 million. Sonus misstated its first quarter 2003 gross profit by $5.473 million. Restated, Sonus's gross profit was $5.116 million. Sonus misstated its first quarter 2003 research and development operating expenses by $0.003 million. Restated, Sonus's research and development operating expenses were $7.705 million. Sonus misstated its first quarter 2003 sales and marketing expenses by $1.303 million. Restated, Sonus's sales and marketing expenses were $3.971 million. Sonus misstated its general and administrative expenses by $0.759 million. Restated, Sonus's general and administrative expenses were $1.839 million. Sonus misstated its first quarter 2003 stock-based compensation expenses by $0.030 million.

Restated, Sonus's stock-based compensation expenses were $0.924 million.  Sonus misstated it first quarter 2003 amortization of goodwill and purchased intangible assets by $0.331 million. Restated, Sonus's amortization of purchased intangible assets was $0.602 million.  Sonus misstated its first quarter 2003 total operating expenses by $0.18 million.  Restated, Sonus's total operating expenses were $15.041 million.  Sonus misstated its first quarter 2003 loss from operations by $5.293 million.  Restated, Sonus's income (loss) from operations was ($9.925 million).  Sonus made several material misstatements of its financial results for the first quarter of 2003 financial reporting period.

143.    In Sonus's original first quarter 2003 Consolidated Statements of Cash Flows in its Form 10-Q for the quarterly period ended March 31, 2003 (hereinafter, "1Q 2003 Form 10-Q"), Sonus listed deferred revenue as $2.596 million.  However, the 1Q 2004 Form 10-Q restated deferred revenue as $3.616 million – an adjustment of $1.020 million.  With respect to inventories as stated on Sonus's first quarter 2003 Consolidated Statement of Cash Flows, Sonus listed "inventories" as ($0.511 million) while Sonus's 1Q 2004 Form 10-Q listed "inventory" as ($2.521 million) – an adjustment of $2.01 million.  With respect to Sonus's accrued expenses as stated in its first quarter 2003 Consolidated Statements of Cash Flows, Sonus's 1Q 2003 Form 10-Q listed ($4.379 million) in accrued expenses while its 1Q 2004 Form 10-Q restated its accrued expenses as ($3.694 million) – an adjustment of $0.685 million.

144.    In addition, defendant Ahmed's statement – "[w]e grew our revenues 27 percent over last quarter. . . ." – made in Sonus's April 9, 2003 press release was materially false.  Based on restated revenues set forth in Sonus's 2003 Form 10-K/A, revenues decreased from $12.476 million to $9.209 million during this period.

145.    On May 9, 2003, the Company filed with the SEC its 1Q 2003 Form 10-Q. It was

signed by defendant Nill. In addition, defendants Ahmed and Nill signed both the "Certification"

and the "Certification Pursuant to 18 U.S.C. Section 1350, as adopted Pursuant to Section 906 of

the Sarbanes-Oxley Act of 2002." Defendants Ahmed and Nill reviewed, approved of, and

caused the 1Q 2003 Form 10-Q report to be filed with the SEC. The 1Q 2003 Form 10-Q stated

that:

> The accompanying unaudited condensed consolidated financial
> statements have been prepared by Sonus and reflect all
> adjustments, consisting only of normal recurring adjustments that
> in the opinion of management are necessary for a fair statement of
> the results for the interim periods. The unaudited condensed
> consolidated financial statements have been prepared in accordance
> with the regulations of the Securities and Exchange Commission
> (SEC), and omit or condense certain information and footnote
> disclosures pursuant to existing SEC rules and regulations.

The 1Q 2003 Form 10-Q report included Sonus's false financial results for the first quarter of

fiscal 2003, which were materially misstated.

146.    Sonus also made material misstatements concerning revenue

recognition in the first quarter of 2003:

> Sonus recognizes revenue from product sales to end users, resellers
> and distributors upon shipment, provided there are no uncertainties
> regarding acceptance, persuasive evidence of an arrangement
> exists, the sales price is fixed or determinable and collection of the
> related receivable is probable. If uncertainties exist, Sonus
> recognizes revenue when those uncertainties are resolved. In
> multiple element arrangements, in accordance with Statement of
> Position 97-2 and 98-9, Sonus uses the residual method when
> vendor-specific objective evidence does not exist for one of the
> delivered elements in the arrangement. Service revenue is
> recognized as the services are provided. Revenue from
> maintenance and support arrangements is recognized ratably over
> the term of the contract. Amounts collected prior to satisfying the
> revenue recognition criteria are reflected as deferred revenue.

> Warranty costs are estimated and recorded by Sonus at the time of
> product revenue recognition.

Despite the preceding, materially false representation, Sonus did not follow the SEC, the AICPA,

or its own policies for appropriately recognizing revenue.

147.    Sonus also made the following materially false statements concerning its internal

controls and procedures in its 1Q 2003 Form 10-Q:

> (a) *Evaluation of disclosure controls and procedures.* Our chief
> executive officer and chief financial officer have reviewed and
> evaluated the effectiveness of the design and operation of our
> disclosure controls and procedures (as defined in Exchange Act
> Rules 240.13a-14(c) and 15d-14(c)) as of a date within ninety days
> before the filing of this quarterly report. Based on that evaluation,
> our chief executive officer and chief financial officer have
> concluded that our current disclosure controls and procedures are
> designed to ensure that information required to be disclosed by us
> in reports that we file or submit under the Exchange Act is
> recorded, processed, summarized and reported within the time
> periods specified in Securities and Exchange Commission rules
> and forms and are operating in an effective manner.

> (b) *Changes in internal controls.* There have not been any
> significant changes in our internal controls or in other factors that
> could significantly affect these disclosure controls subsequent to
> the date of their evaluation. There were no significant deficiencies
> or material weakness in the internal controls as of such date, and
> therefore no corrective actions were taken.

As specifically discussed in Sonus's 2003 Form 10-K/A, Sonus made material misstatements

concerning internal control and disclosure issues.

148.    In his May 9, 2003 "Certification," defendant Ahmed made additional material

misstatements by signing and certifying the following:

> I, Hassan M. Ahmed, President and Chief Executive Officer of
> Sonus Networks, Inc., certify that:

1.  I have reviewed this quarterly report on Form 10-Q for the period ended March 31, 2003 ("Quarterly Report") of Sonus Networks, Inc. (the "Registrant");

2.  Based on my knowledge, this Quarterly Report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report;

3.  Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report;

4.  The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the Registrant and we have:

(a) designed such disclosure controls and procedures to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this Quarterly Report is being prepared;

(b) evaluated the effectiveness of the Registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this Quarterly Report (the "Evaluation Date"); and

(c) presented in this Quarterly Report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5.  The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation, to the Registrant's auditors and the audit committee of Registrant's board of directors:

(a) all significant deficiencies in the design or operation of internal controls which could adversely affect the Registrant's ability to record, process, summarize and report financial data and have

identified for the Registrant's auditors any material weaknesses in internal controls; and

(b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal controls; and

6. The Registrant's other certifying officer and I have indicated in this Quarterly Report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

149.    In his May 9, 2003 "Certification," defendant Nill made additional material

misstatements by signing and certifying the following:

I, Stephen J. Nill, Chief Financial Officer, Vice President of Finance and Administration and Treasurer of Sonus Networks, Inc., certify that:

1. I have reviewed this quarterly report on Form 10-Q for the period ended March 31, 2003 ("Quarterly Report") of Sonus Networks, Inc. (the "Registrant");

2. Based on my knowledge, this Quarterly Report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report;

3. Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report;

4. The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the Registrant and we have:

(a) designed such disclosure controls and procedures to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this Quarterly Report is being prepared;

(b) evaluated the effectiveness of the Registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this Quarterly Report (the "Evaluation Date"); and

(c) presented in this Quarterly Report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5.  The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation, to the Registrant's auditors and the audit committee of Registrant's board of directors:

(a) all significant deficiencies in the design or operation of internal controls which could adversely affect the Registrant's ability to record, process, summarize and report financial data and have identified for the Registrant's auditors any material weaknesses in internal controls; and

(b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal controls; and

6.  The Registrant's other certifying officer and I have indicated in this Quarterly Report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

150.    In his Certification Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to

Section 906 of the Sarbanes-Oxley Act of 2002, defendant Ahmed made additional material

misstatements by certifying on May 9, 2003 that:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

> (2) the information contained in the Report fairly presents, in all
> material respects, the financial condition and results of operations
> of the Company.

As Sonus's 1Q 2003 Form 10-Q contains several material misstatements, defendant Ahmed's

certification was materially false when made.

151.    In his Certification Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to

Section 906 of the Sarbanes-Oxley Act of 2002, defendant Nill made additional material

misstatements by certifying on May 9, 2003 that:

> (1) the Report fully complies with the requirements of Section
> 13(a) or 15(d) of the Securities Exchange Act of 1934; and

> (2) the information contained in the Report fairly presents, in all
> material respects, the financial condition and results of operations
> of the Company.

As Sonus's 1Q 2003 Form 10-Q contains several material misstatements, defendant Nill's

certification was materially false when made.

### H.    2003 Second Quarter Results

152.    On July 10, 2003, Sonus issued a press release announcing its financial results for

the second quarter of 2003, which ended June 30, 2003.  Sonus falsely represented that:

> Sonus Networks, Inc. (Nasdaq: SONS). . . today reported its
> financial results for the second quarter ended June 30, 2003.

> Revenues for the second quarter of fiscal 2003 were $21.4 million
> compared with $16.0 million for the first quarter of fiscal 2003 and
> $21.3 million for the second quarter of fiscal 2002.  Net loss for the
> second quarter of fiscal 2003 was $3.2 million or $0.01 per share
> compared with a net loss for the first quarter of fiscal 2003 of $4.4
> million or $0.02 per share and a net loss of $17.8 million or $0.09
> per share for the second quarter of fiscal 2002.

> . . .

"We are pleased with the progress that we made in the second quarter, <u>particularly with our 33% sequential revenue growth</u>," said Hassan Ahmed, president and CEO, Sonus Networks.  (Emphasis added.)

153.   The July 10, 2003 press release falsely represented that Sonus's second quarter 2003 revenues were $21.4 million, that Sonus's second quarter 2003 net loss was $3.2 million, and that its second quarter 2003 net loss per share was $0.01.

154.   Furthermore, defendant Ahmed's statement – "[w]e are pleased with the progress that we made in the second quarter, particularly with our 33% sequential revenue growth" – contained in Sonus's July 10, 2003 press release was materially false.  Based on Sonus's 2003 restated revenues, Sonus's revenues grew from $9.209 million to $15.366 million – growth of approximately 67%, not the stated 33%.

155.   Sonus has admitted that its reported financial results for the second quarter of fiscal 2003 were materially false.  Sonus's revenues were overstated by $5.990 million, its net income (loss) was misstated by $4.091 million, and its net income (loss) per share was misstated by $0.02.  Absent the accounting improprieties, the Company would have reported revenues of $15.366 million, net income (loss) of ($7.301 million), and net income (loss) per share of ($0.03).  Furthermore, Sonus originally reported its second quarter 2003 product revenues as $14.929, overstating these revenues by $6.674 million.  Restated, Sonus's product revenues were $8.255 million.  Sonus originally reported its second quarter 2003 service revenues as $6.427 million, understating these revenues by $0.684 million.  Restated, Sonus's service revenues were $7.111 million.  Sonus originally reported its second quarter 2003 cost of revenues for products as $5.662 million, misstating the cost of revenues for products by $1.766 million.  Restated, Sonus's cost of revenues for products was $3.896 million.  Sonus originally reported its second

quarter 2003 cost of revenues for services as $3.131 million, misstating the cost of revenues for services by $0.238 million. Restated, Sonus's cost of revenues for services was $3.369 million. Sonus originally reported its second quarter 2003 total cost of revenues as $8.793 million, misstating the total cost of revenues by $1.528 million. Restated, Sonus's total cost of revenues was $7.265 million. Sonus originally reported its second quarter 2003 gross profit as $12.563 million, misstating Sonus's gross profit by $4.462 million. Restated, Sonus's gross profit was $8.101 million. Sonus originally reported its second quarter 2003 research and development operating expenses as $8.245 million, misstating research and development expenses by $0.259 million. Restated, Sonus's research and development expenses were $8.504 million. Sonus originally reported its sales and marketing expenses as $5.643 million, misstating its sales and marketing expenses by $1.167 million. Restated, Sonus's sales and marketing expenses were $4.476 million. Sonus originally reported its second quarter 2003 general and administrative expenses as $1.188 million, misstating its general and administrative expenses by $0.268 million. Restated, Sonus's general and administrative expenses were $1.456 million. Sonus originally reported its second quarter 2003 stock-based compensation expenses as $0.739 million, misstating its stock-based compensation expenses by $0.094 million. Restated, Sonus's stock-based compensation expenses were $0.645 million. Sonus originally reported its second quarter 2003 amortization of goodwill and purchased intangible assets as $0.271 million, misstating the amortization of goodwill and purchased intangible assets by $0.331 million. Restated, Sonus's amortization of goodwill and purchased intangibles was $0.602 million. Sonus originally reported its second quarter 2003 total operating expenses as $16.086 million, misstating total operating expenses by $0.403 million. Restated, Sonus's total operating expenses were $15.683

million. Sonus originally reported its second quarter 2003 loss from operations as ($3.523 million), misstating loss from operations by $4.059 million. Restated, Sonus's income (loss) from operations was ($7.582 million). Sonus made several material misstatements in its Form 10-Q for the quarterly period ended June 30, 2003 (hereinafter, "2Q 2003 Form 10-Q") as indicated by the restatements found in Sonus's 2Q 2004 Form 10-Q and 2003 Form 10-K/A.

156.    In Sonus's original second quarter 2003 Consolidated Statements of Cash Flows in its 2Q 2003 Form 10-Q, Sonus misstated deferred revenue as $4.947 million. However, the 2Q 2004 Form 10-Q restated deferred revenue as $15.412 million – an adjustment of $10.465 million. With respect to inventories as stated on Sonus's second quarter 2003 Consolidated Statement of Cash Flows, Sonus misstated "inventories" as ($0.776 million) while Sonus's 2Q 2004 Form 10-Q restated "inventory" as ($4.957 million) – an adjustment of $4.181 million. With respect to Sonus's accrued expenses as stated in its second quarter 2003 Consolidated Statements of Cash Flows, Sonus misstated accrued expenses as ($3.910 million) while its 2Q 2004 Form 10-Q restated accrued expenses as ($2.764 million) – an adjustment of $1.146 million.

157.    On August 14, 2003, the Company filed with the SEC a report on Form 10-Q for the second quarter of 2003. It was signed by defendant Nill. It was also signed and certified pursuant to sections 302 and 906 of the Sarbanes-Oxley Act of 2002 by both defendant Ahmed and defendant Nill. Defendants Ahmed and Nill reviewed, approved of, and caused the 2Q 2003 Form 10-Q report to be filed with the SEC. The 2Q 2003 Form 10-Q stated that:

> The accompanying unaudited condensed consolidated financial statements have been prepared by Sonus and reflect all adjustments, consisting only of normal recurring adjustments that in the opinion of management are necessary for a fair statement of

the results for the interim periods.  The unaudited condensed
consolidated financial statements have been prepared in accordance
with the regulations of the Securities and Exchange Commission
(SEC), and omit or condense certain information and footnote
disclosures pursuant to existing SEC rules and regulations.

The 2Q 2003 Form 10-Q report included Sonus's false financial results for the second quarter of

fiscal 2003, which were materially misstated.

158.    Sonus also made material misstatements concerning revenue recognition in its 2Q

2003 Form 10-Q:

Sonus recognizes revenue from product sales to end users, resellers
and distributors upon shipment, provided there are no uncertainties
regarding acceptance, persuasive evidence of an arrangement
exists, the sales price is fixed or determinable and collection of the
related receivable is probable.  If uncertainties exist, Sonus
recognizes revenue when those uncertainties are resolved.  In
multiple element arrangements, in accordance with Statement of
Position 97-2 and 98-9, Sonus uses the residual method when
vendor-specific objective evidence does not exist for one of the
delivered elements in the arrangement.  Service revenue is
recognized as the services are provided.  Revenue from
maintenance and support arrangements is recognized ratably over
the term of the contract.  Amounts collected prior to satisfying the
revenue recognition criteria are reflected as deferred revenue.
Warranty costs are estimated and recorded by Sonus at the time of
product revenue recognition.

Sonus's restatement indicates that Sonus did not follow the SEC, the AICPA, or its own policies

for appropriately recognizing revenue.

159.    Sonus also made the following materially false statements concerning its internal

controls and procedures in its 2Q 2003 Form 10-Q:

(a) *Evaluation of disclosure controls and procedures.*  Our chief
executive officer and chief financial officer have reviewed and
evaluated the effectiveness of the design and operation of our
disclosure controls and procedures (as defined in Exchange Act
Rules 240.13a-15(e) and 15d-15(e)) as of the end of the period

covered by this quarterly report. Based on that evaluation, our chief
executive officer and chief financial officer have concluded that
our current disclosure controls and procedures are designed to
ensure that information required to be disclosed by us in reports
that we file or submit under the Exchange Act is recorded,
processed, summarized and reported within the time periods
specified in Securities and Exchange Commission rules and forms
and are operating in an effective manner.

(b) *Changes in internal control over financial reporting.* There
was no change in our internal controls over financial reporting
during the period covered by this quarterly report that has
materially affected, or is reasonably likely to materially affect, our
internal control over financial reporting.

Sonus later admitted the existence during the Class Period of material weaknesses concerning

internal control matters, thereby confirming this representation was materially false when made.

160.    In his August 13, 2003 Certification Pursuant to Section 302 of the

Sarbanes-Oxley Act of 2002, defendant Ahmed made additional material misstatements by

signing and certifying the following:

I, Hassan M. Ahmed, President and Chief Executive Officer of
Sonus Networks, Inc., certify that:

1. I have reviewed this quarterly report on Form 10-Q for the
period ended June 30, 2003 ("Quarterly Report") of Sonus
Networks, Inc. (the "Registrant");

2. Based on my knowledge, this Quarterly Report does not contain
any untrue statement of a material fact or omit to state a material
fact necessary to make the statements made, in light of the
circumstances under which such statements were made, not
misleading with respect to the period covered by this Quarterly
Report;

3. Based on my knowledge, the financial statements, and other
financial information included in this Quarterly Report, fairly
present in all material respects the financial condition, results of
operations and cash flows of the Registrant as of, and for, the
periods presented in this Quarterly Report;

4. The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the Registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this Quarterly Report is being prepared;

. . .

(c) Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this Quarterly Report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this Quarterly Report based on such evaluation; and

(d) Disclosed in this Quarterly Report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5. The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of Registrant's board of directors:

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

As Sonus has admitted the existence during the Class Period of "significant internal control matters that collectively constitute 'material weaknesses,'" defendant Ahmed's Section 302 Certification was materially false when made.

161.    In his August 13, 2003 Certification Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, defendant Nill made additional material misstatements by signing and certifying the following:

> I, Stephen J. Nill, Chief Financial Officer, Vice President of Finance and Administration and Treasurer of Sonus Networks, Inc., certify that:
>
> 1. I have reviewed this quarterly report on Form 10-Q for the period ended June 30, 2003 ("Quarterly Report") of Sonus Networks, Inc. (the "Registrant");
>
> 2. Based on my knowledge, this Quarterly Report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report;
>
> 4. The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the Registrant and have:
>
> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this Quarterly Report is being prepared;

#111436

96

. . .

(c) Evaluated the effectiveness of the Registrant's disclosure
controls and procedures and presented in this Quarterly Report our
conclusions about the effectiveness of the disclosure controls and
procedures, as of the end of the period covered by this Quarterly
Report based on such evaluation; and

(d) Disclosed in this Quarterly Report any change in the
Registrant's internal control over financial reporting that occurred
during the Registrant's most recent fiscal quarter (the Registrant's
fourth fiscal quarter in the case of an annual report) that has
materially affected, or is reasonably likely to materially affect, the
Registrant's internal control over financial reporting; and

5. The Registrant's other certifying officer and I have disclosed,
based on our most recent evaluation of internal control over
financial reporting, to the Registrant's auditors and the audit
committee of Registrant's board of directors:

(a) All significant deficiencies and material weaknesses in the
design or operation of internal control over financial reporting
which are reasonably likely to adversely affect the Registrant's
ability to record, process, summarize and report financial
information; and

(b) Any fraud, whether or not material, that involves management
or other employees who have a significant role in the Registrant's
internal control over financial reporting.

As Sonus admitted the existence of "significant internal control matters that collectively

constitute 'material weaknesses,'" during the Class Period, defendant Nill's Section 302

Certification was materially false when made.

162.    On August 13, 2003, defendant Ahmed made additional material misstatements

by signing the Certification Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section

906 of the Sarbanes-Oxley Act of 2002:

In connection with the quarterly report on Form 10-Q of Sonus
Networks, Inc. (the "Company") for the period ended June 30,

2003 as filed with the Securities and Exchange Commission on the
date hereof (the "Report"), the undersigned, Hassan M. Ahmed,
President and Chief Executive Officer of the Company, hereby
certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant
to Section 906 of the Sarbanes-Oxley Act of 2002, that:

(1) the Report fully complies with the requirements of Section
13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all
material respects, the financial condition and results of operations
of the Company.

As Sonus's 2Q 2003 Form 10-Q contains several material misstatements, defendant Ahmed's

Section 906 certification was materially false when made.

163.    On August 13, 2003, defendant Nill made additional material misstatements by

signing and certifying the following Certification Pursuant to 18 U.S.C. Section 1350, as

Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002:

In connection with the quarterly report on Form 10-Q of Sonus
Networks, Inc. (the "Company") for the period ended June 30,
2003 as filed with the Securities and Exchange Commission on the
date hereof (the "Report"), the undersigned, Stephen J. Nill, Chief
Financial Officer, Vice President of Finance and Administration
and Treasurer of the Company, hereby certifies, pursuant to
18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the
Sarbanes-Oxley Act of 2002, that:

(1) the Report fully complies with the requirements of Section
13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all
material respects, the financial condition and results of operations
of the Company.

As Sonus's 2Q 2003 Form 10-Q contains several material misstatements, defendant Nill's

Section 906 certification was materially false when made.

//

**I.        Prospectus Supplement Dated September 23, 2003**

164.      Sonus's Prospectus Supplement dated September 23, 2003 incorporates by

reference other SEC filings as follows: Form 10-K for the year ended December 31, 2001, Form

10-K for the year ended December 31, 2002, Form 10-Q for the quarterly period ended March

31, 2002, Form 10-Q for the quarterly period ended June 30, 2002, Form 10-Q for the quarterly

period ended September 30, 2002, Form 10-Q for the quarterly period ended March 31, 2003,

and Form 10-Q for the quarterly period ended June 30, 2003.  The foregoing identified SEC

filings were materially false and misleading for the reasons alleged hereinabove.  Therefore, the

September 23, 2003 Prospectus Supplement was also materially false and misleading.  There was

no disclosure in the September 23, 2003 Prospectus Supplement of any of the material adverse

facts as alleged herein which were in existence as of that date.

**J.        2003 Third Quarter Results**

165.      On October 8, 2003, Sonus issued a press release announcing its financial results

for the third quarter of fiscal 2003, which ended September 30, 2003.  Sonus represented that:

>    Sonus Networks, Inc. (Nasdaq: SONS) . . . today reported its
>    financial results for the third quarter ended September 30, 2003 in
>    accordance with U.S. generally accepted accounting principles
>    (GAAP).
>
>    Revenues for the third quarter of fiscal 2003 were $28.6 million
>    compared with $21.4 million for the second quarter of fiscal 2003
>    and $7.4 million for the third quarter of fiscal 2002.  Net income
>    for the third quarter of fiscal 2003 was $1.2 million or $0.01 per
>    diluted share compared with a net loss for the second quarter of
>    fiscal 2003 of $3.2 million or $0.01 per diluted share and a net loss
>    of $21.6 million or $0.11 per diluted share for the third quarter of
>    fiscal 2002.
>
>    . . .

> "This was a strong quarter for Sonus Networks, <u>our fourth</u>
> <u>consecutive quarter of revenue growth</u>," said Hassan Ahmed,
> president and CEO, Sonus Networks. "<u>Our revenues grew 34%</u>
> <u>sequentially to $28.6 million</u>, reflecting increased market demand
> for packet telephony and the expanding number of customers who
> have adopted Sonus' solutions." (Emphasis added.)

166.    The October 8, 2003 press release falsely represented that Sonus's revenues for

the third quarter of fiscal 2003 were $28.6 million, that Sonus's net income for the third quarter

of fiscal 2003 was $1.2 million, that Sonus's net income (loss) per share was $0.01 per share, and

that four consecutive quarters of revenue growth occurred by the third quarter of 2003. Each of

these statements was materially false when made.

167.    Sonus has admitted that its reported financial results for the third quarter of 2003

were materially false. In Sonus's Form 10-Q for the third quarter of fiscal 2003 (hereinafter "3Q

2003 Form 10-Q"), Sonus overstated revenues by $6.393 million, overstated its net income by

$6.238 million, and overstated its net income (loss) per share by $0.03. Absent the accounting

improprieties, the Company would have reported total revenues of $22.251 million, net income

(loss) of ($5.029 million), and net income (loss) per share of ($0.02). Furthermore, Sonus

originally reported its third quarter 2003 product revenues as $22.352 million, overstating these

product revenues by $7.824 million. Restated, Sonus's product revenues were $14.528 million.

Sonus originally reported its third quarter 2003 service revenues as $6.292 million, understating

these service revenues by $1.431 million. Restated, Sonus's service revenues were $7.723

million. Sonus originally reported its third quarter 2003 cost of revenues for products as $7.237

million, misstating the cost of revenues for products by $1.855 million. Restated, Sonus's cost of

revenues for products was $5.382 million. Sonus originally reported its third quarter 2003 cost

of revenues for services as $3.810 million, misstating the cost of revenues for services by $0.064

million. Restated, Sonus's cost of revenues for services was $3.874 million. Sonus originally reported its third quarter 2003 total cost of revenues as $11.047 million, misstating the total cost of revenues by $1.791 million. Restated, Sonus's total cost of revenues was $9.256 million. Sonus originally reported its third quarter 2003 gross profit as $17.597 million, misstating Sonus's gross profit by $4.602 million. Restated, Sonus's gross profit was $12.995 million. Sonus originally reported its third quarter 2003 research and development operating expenses as $7.984 million, misstating research and development expenses by $0.052 million. Restated, Sonus's research and development expenses were $8.036 million. Sonus originally reported its third quarter 2003 sales and marketing expenses as $6.536 million, misstating its sales and marketing expenses by $1.196 million. Restated, Sonus's sales and marketing expenses were $7.732 million. Sonus originally reported its third quarter 2003 general and administrative expenses as $0.999 million, misstating its general and administrative expenses by $0.157 million. Restated, Sonus's general and administrative expenses were $0.842 million. Sonus originally reported its third quarter 2003 stock-based compensation expenses as $0.866 million, misstating its stock-based compensation expenses by $0.181 million. Restated, Sonus's stock-based compensation expenses were $1.047 million. Sonus originally reported its third quarter 2003 amortization of goodwill and purchased intangible assets as $0.271 million, misstating the amortization of goodwill and purchased intangible assets by $0.331 million. Restated, Sonus's amortization of goodwill and purchased intangibles was $0.602 million. Sonus originally reported its third quarter 2003 total operating expenses as $16.656 million, misstating total operating expenses by $1.603 million. Restated, Sonus's total operating expenses were $18.259 million. Sonus originally reported its third quarter 2003 income (loss) from operations as $0.941

million, misstating loss from operations by $6.205 million. Restated, Sonus's income (loss) from operations was ($5.264 million). Sonus thereby made several material misstatements in its Form 10-Q for the quarterly period ended September 30, 2003 as confirmed by the restatements found in Sonus's 3Q 2004 Form 10-Q and 2003 Form 10-K/A.

168.    In Sonus's original third quarter 2003 Condensed Consolidated Statements of Cash Flows in its 3Q 2003 Form 10-Q, Sonus misstated deferred revenue as $4.801 million. However, the 3Q 2004 Form 10-Q restated deferred revenue as $25.411 million – an adjustment of $20.610 million. With respect to inventories as stated in Sonus's third quarter 2003 Condensed Consolidated Statement of Cash Flows, Sonus misstated "inventories" as ($1.557 million) while Sonus's 3Q 2004 Form 10-Q restated "inventory" as ($5.973 million) – an adjustment of $4.416 million. With respect to Sonus's accrued expenses as stated in its third quarter 2003 Condensed Consolidated Statements of Cash Flows, Sonus misstated accrued expenses as ($2.707 million) in accrued expenses while its 3Q 2004 Form 10-Q restated its accrued expenses as ($0.989 million) – an adjustment of $1.718 million.

169.    Defendant Ahmed made at least two materially misleading statements in Sonus's October 8, 2003 press release: "'This was a strong quarter for Sonus Networks, our fourth consecutive quarter of revenue growth,' said Hassan Ahmed, president and CEO, Sonus Networks. 'Our revenues grew 34% sequentially to $28.6 million. . . .'" First, defendant Ahmed falsely claimed that Sonus had achieved $28.6 million in revenues for the third quarter of 2003 when, in fact, Sonus had achieved only $22.251 million in revenue for this quarter. Second, Sonus's restated total revenues were $12.476 million in the fourth quarter of 2002, then $9.209 million in the first quarter of 2003, then $15.366 million in the second quarter of 2003, and

finally $22.251 million in the third quarter of 2003. This restated revenue profile shows that Sonus's revenues had only been increasing for three consecutive quarters at the time defendant Ahmed made his statement.

170.    On November 10, 2003, the Company filed with the SEC a report on Form 10-Q for the third quarter of 2003. Defendant Nill signed the 3Q 2003 Form 10-Q. In addition, both defendant Ahmed and defendant Nill certified and signed the accompanying Section 302 Sarbanes-Oxley Certification and the accompanying Section 906 Sarbanes-Oxley Certification. Defendants Ahmed and Nill reviewed, approved of, and caused the 3Q 2003 Form 10-Q to be filed with the SEC. The 3Q 2003 Form 10-Q report stated that:

> The accompanying unaudited condensed consolidated financial statements have been prepared by Sonus and reflect all adjustments, consisting only of normal recurring adjustments that in the opinion of management are necessary for a fair statement of the results for the interim periods. The unaudited condensed consolidated financial statements have been prepared in accordance with the regulations of the Securities and Exchange Commission (SEC), and omit or condense certain information and footnote disclosures pursuant to existing SEC rules and regulations.

The 3Q 2003 Form 10-Q report included Sonus's false financial results for the third quarter of fiscal 2003, which were materially misstated.

171.    Sonus also made material misstatements concerning revenue recognition in the third quarter of 2003:

> Sonus recognizes revenues from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenues when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual

> method when vendor-specific objective evidence does not exist for
> one of the delivered elements in the arrangement. Service revenues
> are recognized as the services are provided. Revenues from
> maintenance and support arrangements are recognized ratably over
> the term of the contract. Amounts collected prior to satisfying the
> revenue recognition criteria are reflected as deferred revenues.
> Warranty costs are estimated and recorded by Sonus at the time of
> product revenue recognition.

Sonus's restatement admits that Sonus did not follow the SEC, the AICPA, or its own policies

for appropriately recognizing revenue.

172.    Sonus also made the following materially false statements concerning its internal

controls and procedures in its 3Q 2003 Form 10-Q:

> (a) *Evaluation of disclosure controls and procedures.* Our
> management, with the participation of our chief executive officer
> and chief financial officer, has evaluated the effectiveness of our
> disclosure controls and procedures (as defined in Rules 240.13a-
> 15(e) and 15d-15(e) of the Exchange Act) as of the end of the
> period covered by this quarterly report. Based on that evaluation,
> our chief executive officer and chief financial officer have
> concluded that, as of the end of the period covered by this quarterly
> report, our disclosure controls and procedures were (1) designed to
> ensure that material information relating to us, including our
> consolidated subsidiaries, is made known to our chief executive
> officer and chief financial officer by others within those entities,
> particularly during the period in which this report was being
> prepared, and (2) effective, in that they provide reasonable
> assurance that information required to be disclosed by us in the
> reports that we file or submit under the Exchange Act is recorded,
> processed, summarized and reported within the time periods
> specified in the SEC's rules and forms.

> (b) *Changes in internal control over financial reporting.* There
> was no change in our internal control over financial reporting (as
> defined in Rules 240.13a-15(f) and 15d-15(f) of the Exchange Act)
> during the period covered by this quarterly report that has
> materially affected, or is reasonably likely to materially affect, our
> internal control over financial reporting.

Sonus has admitted the existence during the Class Period of material weaknesses concerning

Sonus's internal controls, rendering this representation materially false, when made.

173.    In his November 10, 2003 Certification Pursuant to Section 302 of the Sarbanes-

Oxley Act of 2002, defendant Ahmed made additional material misstatements by signing and

certifying the following:

> I, Hassan M. Ahmed, President and Chief Executive Officer of
> Sonus Networks, Inc., certify that:
>
> 1. I have reviewed this quarterly report on Form 10-Q for the
> period ended September 30, 2003 ("Quarterly Report") of Sonus
> Networks, Inc. (the "Registrant");
>
> 2. Based on my knowledge, this Quarterly Report does not contain
> any untrue statement of a material fact or omit to state a material
> fact necessary to make the statements made, in light of the
> circumstances under which such statements were made, not
> misleading with respect to the period covered by this Quarterly
> Report;
>
> 3. Based on my knowledge, the financial statements, and other
> financial information included in this Quarterly Report, fairly
> present in all material respects the financial condition, results of
> operations and cash flows of the Registrant as of, and for, the
> periods presented in this Quarterly Report;
>
> 4. The Registrant's other certifying officer and I are responsible
> for establishing and maintaining disclosure controls and procedures
> (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for
> the Registrant and have:
>
> (a) Designed such disclosure controls and procedures, or caused
> such disclosure controls and procedures to be designed under our
> supervision, to ensure that material information relating to the
> Registrant, including its consolidated subsidiaries, is made known
> to us by others within those entities, particularly during the period
> in which this Quarterly Report is being prepared;
>
> . . .

(c) Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this Quarterly Report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this Quarterly Report based on such evaluation; and

(d) Disclosed in this Quarterly Report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5. The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of Registrant's board of directors:

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

As Sonus admitted the existence during the Class Period of "significant internal control matters that collectively constitute 'material weaknesses,'" defendant Ahmed's Section 302 Certification was materially false when made.

174.    In his November 10, 2003 Certification Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, defendant Nill made additional material misstatements by signing and certifying the following:

I, Stephen J. Nill, Chief Financial Officer, Vice President of Finance and Administration and Treasurer of Sonus Networks, Inc., certify that:

1.  I have reviewed this quarterly report on Form 10-Q for the period ended September 30, 2003 ("Quarterly Report") of Sonus Networks, Inc. (the "Registrant");

2.  Based on my knowledge, this Quarterly Report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report;

3.  Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report;

4.  The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the Registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this Quarterly Report is being prepared;

. . .

(c) Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this Quarterly Report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this Quarterly Report based on such evaluation; and

(d) Disclosed in this Quarterly Report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

#111436

107

> 5. The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of Registrant's board of directors:
>
> (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and
>
> (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

As Sonus has admitted the existence during the Class Period of "significant internal control

matters that collectively constitute 'material weaknesses,'" defendant Nill's Section 302

Certification was materially false when made.

175.    On November 10, 2003, defendant Ahmed made additional material

misstatements by signing and certifying the following Certification Pursuant to 18 U.S.C. Section

1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002:

> In connection with the quarterly report on Form 10-Q of Sonus Networks, Inc. (the "Company") for the period ended September 30, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, Hassan M. Ahmed, President and Chief Executive Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:
>
> (1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and
>
> (2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Sonus's 3Q 2003 Form 10-Q contains several material misstatements as herein alleged, rendering defendant Ahmed's certification materially false when made.

176.    On November 10, 2003, defendant Nill made additional qualitative material misstatements by signing and certifying the following Certification Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002:

> In connection with the quarterly report on Form 10-Q of Sonus Networks, Inc. (the "Company") for the period ended September 30, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, Stephen J. Nill, Chief Financial Officer, Vice President of Finance and Administration and Treasurer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:
>
> (1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and
>
> (2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Sonus's 3Q 2003 Form 10-Q contains several material misstatements as herein alleged, rendering defendant Nill's certification materially false when made.

*    *    *

177.    The above representations and defendant certifications were materially false and misleading when made because, as defendants knew or recklessly disregarded, Sonus's financial statements were not prepared in accordance with GAAP and Sonus's internal controls were materially deficient and ineffective during the Class Period.

//

//

## NO SAFE HARBOR

178.    The statutory safe harbor period provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

179.    Alternatively, to the extent that the statutory safe harbor applies to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or forward-looking statement was authorized and/or approved by an executive officer of Sonus who knew or was in a position to know that those statements were false when made.

## FIRST CLAIM

### Violation Of Sections 10(b) And 20(a) Of The Exchange Act And Rule 10b-5 Against All Defendants

180.    Lead Plaintiff repeats and realleges each and every allegation made above as if fully set forth herein.

181.    During the Class Period, defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did (i) deceive the investing public, including Lead Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sonus's securities; and (iii) cause Lead Plaintiff and other members of the Class to purchase Sonus's securities at artificially inflated

prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

182.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sonus's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

183.    In addition to the duties of full disclosure imposed on defendants as a result of their making affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Section 210.01 *et seq.*) and Regulation S-K (17 C.F.R. Section 229.10 *et seq.*) and other SEC regulations including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

184.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a

#111436

continuous course of conduct to conceal adverse material information about the business, operations, finances and future prospects of Sonus as specified herein.

185. Each of the defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and each of them engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sonus's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material fact and omitting to state material facts necessary in order to make the statements made about Sonus and its business operations, finances and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Sonus's securities during the Class Period.

186. Each defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's

#111436

112

dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

187.    The defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein at the time they were made and/or omitted, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sonus's true operating condition, finances and future business prospects from the investing public and supporting the artificially inflated price of it securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, revenues, finances, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

188.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sonus's securities was artificially inflated during the Class Period. In ignorance of the fact that the market price of Sonus's publicly-traded securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants

during the Class Period, Lead Plaintiff and the other members of the Class acquired Sonus securities during the Class Period at artificially inflated prices and were damaged thereby.

189.    At the time of said misrepresentations and omissions, Lead Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Lead Plaintiff and the other members of the class and the marketplace known of the true financial condition and business prospects of Sonus, which were not disclosed by defendants, Lead Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sonus securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

190.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

191.    This Claim with regard to Section 20(a) of the Exchange Act is asserted by Lead Plaintiff and the Class against defendants Ahmed and Nill based on Ahmed's and Nill's control of Sonus. In addition, this control person claim is asserted against defendant Ahmed based on his control of defendant Nill.

192.    Defendants Ahmed and Nill were controlling persons of Sonus within the meaning of Section 20(a) of the Exchange Act. By virtue of their executive positions, Board membership (in the case of Ahmed), and stock ownership, these defendants had the power to influence and control (and did influence and control, directly or indirectly) the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends are materially false and misleading. These defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other

statements alleged to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the false statements or cause the false statements to be corrected.

193.    Sonus violated Section 10(b) and Rule 10b-5 by the issuance of materially false and misleading statements as alleged herein.  By virtue of their positions as controlling persons of Sonus, defendants Ahmed and Nill are liable to Lead Plaintiff and the Class pursuant to Section 20(a) of the Exchange Act.

194.    Defendant Ahmed was a controlling person of Nill within the meaning of Section 20(a) of the Exchange Act.  By virtue of Ahmed's longstanding, hierarchical business relationship with defendant Nill, defendant Ahmed's position as President and CEO, and defendant Nill's duty to report directly to defendant Ahmed, defendant Ahmed had the power and influence to control, and did influence and control, directly and indirectly, the conduct of defendant Nill in connection with his Sonus-related activities.

195.    As a direct and proximate result of defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of Sonus securities during the Class Period.  The price of Sonus's securities declined materially upon the public disclosure of facts which had been previously misrepresented or concealed as alleged herein.

## SECOND CLAIM

### Violation Of Sections 11 And 15 Of The Securities Act

196.    Lead Plaintiff incorporates by reference and realleges Paragraphs 1 through 179 above as though fully set forth herein.  However, for purposes of this claim, Lead Plaintiff

expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on a claim of strict liability (as to defendant Sonus) or negligence (as to defendants Ahmed and Nill) under the Securities Act.

197.    Lead Plaintiff asserts this Claim on behalf of itself and members of the Subclass who acquired Sonus common shares pursuant to the Prospectus Supplement dated September 23, 2003 which was issued pursuant to and as a part of the Registration Statement and Prospectus dated June 21, 2001, Registration No. 333-61940.  This claim is based on violation of Section 11 of the Securities Act, 15 U.S.C. § 77k, against Sonus, Ahmed, and Nill.  In addition, Lead Plaintiff asserts this Count for violation of Section 15 of the Securities Act, 15 U.S.C. §77o, against defendants Ahmed, and Nill.

198.    The defendants named in this Claim issued, caused to be issued or participated in the issuance of the September 24, 2003 Prospectus Supplement and related Registration Statement.

199.    At the time it became effective, the Prospectus Supplement contained untrue statements of material fact and/or omitted to state material facts required to be stated therein which were necessary to make the statements therein not misleading, as further alleged above, in violation of Section 11 of the Securities Act.

200.    Defendant Sonus is absolutely liable for any material misrepresentation or omission in the Prospectus Supplement.  Defendants Ahmed and Nill each had a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus Supplement, and to assure that such statements were true and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

201.    Defendants Ahmed and Nill each failed to make a reasonable investigation and did not possess a reasonable ground for the belief that the statements contained in the Prospectus Supplement were true or that there was no omission of material fact necessary to make the statements made therein not misleading at the time it became effective.

202.    Lead Plaintiff and members of the Subclass acquired Sonus shares pursuant to the Prospectus Supplement without knowledge of the untruths or omissions alleged herein. As a direct and proximate result of defendants' issuance of the Prospectus Supplement containing material misstatements and omissions, Lead Plaintiff and the Subclass members have suffered substantial damages.

203.    This Claim with regard to Section 15 of the Securities Act is asserted by Lead Plaintiff and the Subclass against defendants Ahmed and Nill based on Ahmed's and Nill's control of Sonus. In addition, this control person claim is asserted against defendant Ahmed based on his control of defendant Nill.

204.    Defendants Ahmed and Nill were controlling persons of Sonus within the meaning of Section 15 of the Securities Act. By virtue of their executive positions, Board membership (in the case of Ahmed), and stock ownership, these defendants had the power to influence and control (and did influence and control, directly or indirectly) the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends are materially false and misleading. These defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged to be misleading prior to and/or shortly after these statements were issued and

had the ability to prevent the issuance of the false statements or cause the false statements to be corrected.

205.    Sonus violated Section 11 of the Securities Act by the issuance of the materially false and misleading Prospectus Supplement and documents incorporated therein as herein alleged.  By virtue of their positions as controlling persons of Sonus, defendants Ahmed and Nill are liable to Lead Plaintiff and the Subclass pursuant to Section 15 of the Securities Act.

206.    Defendant Ahmed was a controlling person of Nill within the meaning of Section 15 of the Securities Act.  By virtue of Ahmed's longstanding, hierarchical business relationship with defendant Nill, defendant Ahmed's position as President and CEO, and defendant Nill's duty to report directly to defendant Ahmed, defendant Ahmed had the power and influence to control, and did influence and control, directly and indirectly, the conduct of defendant Nill in connection with his Sonus-related activities.

207.    This action was brought within one year after the discovery of the untrue statements and omissions (and within one year after such discovery should have been made in the exercise of reasonable diligence) and within three years after the issuance of the September 2003 Prospectus Supplement.

## THIRD CLAIM

### Violation Of Sections 12(a)(2) And 15 Of The Securities Act

208.    Lead Plaintiff incorporates by reference and realleges Paragraphs 1 through 179 above as though fully set forth herein.  However, for purposes of this claim, Lead Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct.

209.    Lead Plaintiff asserts this Claim on behalf of itself and members of the Subclass who acquired Sonus common shares pursuant to the Prospectus Supplement dated September 23, 2003. This claim is based on violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2) against defendants Sonus, Ahmed, and Nill. In addition, Lead Plaintiff asserts this Claim for violation of Section 15 of the Securities Act, 15 U.S.C. §77o, against defendants Ahmed, and Nill. Lead Plaintiff and members of the Subclass acquired Sonus shares pursuant to the Prospectus Supplement.

210.    Defendants Sonus, Ahmed, and Nill actively and jointly caused to be drafted, revised and approved the Prospectus Supplement, including the false and misleading documents incorporated therein, finalized them and caused them to become effective. But for these defendants having drafted, filed, and/or signed the Prospectus Supplement, the offering would not have closed and Lead Plaintiff and the Subclass members would not have been issued Sonus shares, as further alleged herein. These defendants also solicited institutional investors, fund managers and other investment professionals to acquire Sonus shares pursuant to the Prospectus Supplement.

211.    Absent the selling efforts by Sonus, Ahmed, and Nill, as set forth above, the sale of Sonus shares pursuant to the Prospectus Supplement would not have been consummated. At all relevant times, these defendants knew, or in the exercise of reasonable care should have known, of the misstatements and omissions contained in the Prospectus Supplement as set forth above.

212.    None of the material false and misleading statements and omissions contained in the Prospectus Supplement as alleged herein were known to Lead Plaintiff at the time it was issued Sonus shares pursuant to the Prospectus Supplement.

213.    This Claim with regard to Section 15 of the Securities Act is asserted by Lead Plaintiff and the Class against defendants Ahmed and Nill based on Ahmed's and Nill's control of Sonus. In addition, this control person claim is asserted against defendant Ahmed based on his control of defendant Nill.

214.    Defendants Ahmed and Nill were controlling persons of Sonus within the meaning of Section 15 of the Securities Act. By virtue of their executive positions, Board membership (in the case of Ahmed), and stock ownership, these defendants had the power to influence and control (and did influence and control, directly or indirectly) the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends are materially false and misleading. These defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the false statements or cause the false statements to be corrected.

215.    Sonus violated Section 12(a)(2) of the Securities Act by the issuance of the materially false and misleading Prospectus Supplement as alleged herein. By virtue of their positions as controlling persons of Sonus, defendants Ahmed and Nill are liable to Lead Plaintiff and the Subclass pursuant to Section 15 of the Securities Act.

216.    Defendant Ahmed was a controlling person of Nill within the meaning of Section 15 of the Securities Act. By virtue of Ahmed's longstanding, hierarchical business relationship with defendant Nill, defendant Ahmed's position as President and CEO, and defendant Nill's duty to report directly to defendant Ahmed, defendant Ahmed had the power and

influence to control, and did influence and control, directly and indirectly, the conduct of defendant Nill in connection with his Sonus-related activities.

217.    By reason of the conduct alleged herein, defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate cause of the defendants' violation of Section 12(a)(2), Lead Plaintiff and the members of the Subclass have sustained damages. Lead Plaintiff, on behalf of itself and the Subclass, seeks rescission to recover the consideration paid for its Sonus shares acquired pursuant to the September 2003 Prospectus Supplement, less any income derived thereon. Lead Plaintiff hereby tenders its Sonus shares or the proceeds from the sale thereof, to Sonus in exchange for the value of the consideration paid for such shares, plus interest. In the alternative, Lead Plaintiff seeks recovery of damages in an amount to be proven at trial.

## BASIS OF ALLEGATIONS

218.    Lead Plaintiff makes the foregoing allegations based upon personal knowledge as to Paragraph 14 and as to all other allegations based upon the investigation of Lead Plaintiff's Counsel, which included review of SEC filings by Sonus, as well as regulatory filings and reports, interviews of percipient witnesses and former employees of the Company, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, media reports about the Company, and expert analysis. Lead Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after reasonable opportunity for discovery.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiff, BPI Global Asset Management LLP, prays for relief and judgment, as follows:

A.      That the Court determine that this action is a proper class action and certifying

Lead Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.      That the Court award compensatory and rescissory damages in favor of Lead

Plaintiff and the other Class and Subclass members as appropriate against all defendants, jointly

and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to

be proven at trial, including interest thereon;

C.      That the Court award Lead Plaintiff and the Class and Subclass their reasonable

costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      That the Court award other and further relief as the Court may deem just and

proper.

## JURY TRIAL DEMANDED

Lead Plaintiff hereby demands a trial by jury.

Dated: August 5, 2005                        GOLD BENNETT CERA & SIDENER LLP

By    /s/ Solomon B. Cera

Solomon B. Cera
Steven O. Sidener
Gwendolyn R. Giblin
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone ( 415) 777-2230
Facsimile: (415) 777-5189
E-mail: scera@gbcslaw.com
E-mail: ssidener@gbcslaw.com
E-mail: ggiblin@gbcslaw.com
E-mail: kfrost@gbcslaw.com

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#111436                                                                                          122

## CERTIFICATE OF SERVICE

I, KimLane E. Gantan, hereby declare under penalty of perjury as follows:

I am employed by Gold Bennett Cera & Sidener LLP, 595 Market Street, Suite 2300, San Francisco, California, 94105-2835. I am over the age of eighteen years and am not a party to this action.

On August 5, 2005, a true and correct copy of the aforementioned **"FIRSTAMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS"** was delivered to all counsel of record by electronic service pursuant to the Court's Order Regarding Electronic Service and served to counsel not on the Court's electronic service by causing true and correct copies of same to be enclosed in sealed envelopes and deposited in the U.S. Mail, postage prepaid, or delivered as otherwise indicated on the attached Exhibit I.

Executed on August 5, 2005, at San Francisco, California.

KimLane E. Gantan

109222

## EXHIBIT I

**VIA FEDEX**
Thomas J. Dougherty
Matthew J. Matule
Michael S. Hines
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108
Telephone: (617) 573-4800

**VIA FEDEX**
Robert S. Frank, Jr.
John R. Baraniak, Jr.
Paul E. Bonanno
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000

**VIA FEDEX**
Jeffrey B. Rudman
James W. Prendergast
Daniel W. Halston
Daniel H. Gold
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000