UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE SONUS NETWORKS, INC. LITIGATION

Civil Action No. 04-10294-DPW

## HASSAN AHMED'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CONSOLIDATED COMPLAINT

At the June 1, 2005 hearing in this matter, the Court offered plaintiff the opportunity to file an amended complaint, representing its "last and best" complaint, upon which it would either stand or fall. The Court said that there would be no further opportunity to amend if the Amended Complaint were dismissed because any such dismissal would be with prejudice. Plaintiff opted to file a new amended complaint. Plaintiff's "new" amended complaint, however, suffers from the very same deficiencies as its original amended complaint. This is particularly true with respect to claims against Mr. Ahmed and more generally true with respect to all claims under §§ 11 and 12(a)(2) of the Securities Act of 1933, as to which plaintiff has left its original allegations largely undisturbed.

Defendant Hassan Ahmed joins in the arguments made in defendant Sonus Networks, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the First Amended Consolidated Class Action Complaint filed this day. In this separate Memorandum, Mr. Ahmed: (1) elaborates on plaintiff's failure to allege facts which, if proven, would generate the strong inference of scienter that is necessary to pursue a claim against him under § 10(b) of the Securities and Exchange Act of 1934; (2) explains that plaintiff's claim that Mr. Ahmed violated

§§ 11 and 12(a)(2) of the Securities Act of 1993 should be dismissed because the Amended Complaint does not satisfy the particularity requirement of Fed. R. Civ. P. 9(b); and (3) explains why plaintiff has failed to state a claim under § 12(a)(2) against any defendant.

## I. PLAINTIFF'S COMPLAINT IS PARTICULARLY DEFICIENT IN ALLEGING FACTS GIVING RISE TO A STRONG INFERENCE OF MR. AHMED'S SCIENTER.

Sonus's memorandum demonstrates that plaintiff's claims under § 10(b) of the Securities and Exchange Act of 1934 should be dismissed. Mr. Ahmed adds the following observations which are specific to the claims against him.

This is an accounting fraud case. Plaintiff alleges a deliberate scheme to manipulate the accounting treatment of sales contracts so as to deceive analysts and investors into believing Sonus's revenue growth was steady over a substantial period of time. First Amended Consolidated Class Action Complaint ("Complaint") ¶¶ 5-6, 36-49. According to plaintiff, defendants accomplished their scheme by timing recognition of revenue under sales contracts, under complex accounting rules, so as to create the impression of linear revenue growth. *Id.* However, the Complaint is devoid of any particularized allegation that Mr. Ahmed knew of the alleged manipulation or knew that Sonus was in violation of any applicable accounting rule.

To the contrary, the Complaint alleges that Mr. Ahmed's background and experience was that of an engineer, not that of an accountant or financial executive. Plaintiff alleges that Mr. Ahmed had served as Sonus's President and currently serves as the Company's Chief Executive Officer and Chairman. Complaint ¶ 16. He previously was an Executive Vice President and General Manager of the "Core Switching Division" of Ascend Communications, Chief Technology Officer and Vice President of Engineering for Cascade Communications Corp., and a founder and President of WaveAccess, Inc. *Id.* ¶ 99. There is no suggestion that Mr. Ahmed directed or participated in the alleged misapplication of accounting rules to

individual transactions or groups of transactions, and no factual allegation that, by reason of his training or experience, he was likely to detect accounting misconduct of the type alleged in the Complaint.

The Complaint is replete with allegations concerning Sonus's "senior accounting and finance staff," Complaint ¶¶ 37, 40, 48, and sales staff. *Id.* ¶¶ 47. While these allegations do not suffice to state a claim against any defendant, they are especially deficient as to Mr. Ahmed. Mr. Ahmed is not alleged to be (and he was not) a member of either of those staffs. The Complaint does not explain how or why an executive with an engineering background and no accounting experience knew, or was reckless in not knowing, of an alleged sophisticated manipulation of sales contracts and technical accounting rules. The Complaint does not allege any specific facts giving rise to a strong inference that Mr. Ahmed knew of, or was reckless in disregarding, the alleged fraud. And, the Complaint does not allege Mr. Ahmed sold any Sonus stock during the putative Class Period.

Instead, plaintiff relies almost exclusively on generalized, conclusory allegations of Mr. Ahmed's knowledge and his mere status as the Company's chief executive officer. *See, e.g.*, Complaint ¶ 5 ("Sonus's improper accounting practices were ongoing, pervasive and occurred with the knowledge, acquiescence and direct participation of at least two of Sonus's senior officers, defendants Ahmed and Nill"); ¶ 6 ("Sonus's senior finance and accounting personnel, with the knowledge, acquiescence and approval of Sonus's senior management, including defendants Ahmed and Nill, engaged in a wrongful pattern of conduct"); ¶ 42 ("The unbundling of the contracts for the purpose of manipulating software deliverables and, ultimately, to 'smooth' out reported revenues was known, and/or recklessly condoned, by the Individual Defendants"); ¶ 49 (The accounting misconduct occurred at the behest and under the direction of

Sonus's senior management. Throughout the Class Period, defendant Ahmed, Sonus's CEO, knew or at a minimum was reckless in disregarding that Sonus had improperly manipulated its revenues . . .").

None of these allegations suffice to state a claim against Mr. Ahmed. Entirely missing from the Complaint are allegations of specific facts that would generate a strong inference that Mr. Ahmed knew of, or was reckless in not knowing of, the alleged wrongdoing. Generalized, conclusory allegations of this type simply are not enough. As the First Circuit recently held:

> Such conclusory allegations as to the existence of knowledge are insufficient to provide the factual basis, supporting a strong inference of scienter, required by the PSLRA. They are simply conclusory assertions of the facts for which a showing supporting a strong inference of scienter must be pleaded. Where the state of mind in question is the defendant's knowledge of the fraudulent nature of the Company's financial reports, and the PSLRA requires that facts be stated with particularity giving rise to a strong inference that the defendant acted with that state of mind, the requirement is not satisfied by a pleading which simply asserts that the defendant knew of the falsity.

*In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 205-06 (1st Cir. 2005). The First Circuit just as easily could have been writing about plaintiff's Complaint here.

Plaintiff does not disguise his attempt to allege Mr. Ahmed's liability merely because he is Sonus's CEO: "This improper revenue practice [with respect to the Qwest contract] was known, approved and condoned by defendant Nill, who, together with former Controller Hemme, tightly controlled the revenue reporting function at Sonus, under the supervision of defendant Ahmed." Complaint ¶ 45. Plaintiff does not allege that Mr. Ahmed even knew of this "improper revenue practice." Rather, it suggests that Mr. Ahmed is liable because he supervised others who knew. The law is crystal clear in this Circuit that pleading liability by reason of a person's supervisory status does not state claim. *See Maldonado v. Dominguez*, 137 F.3d 1, 10

(1st Cir. 1998); *Orton v. Parametric Technology Corp.*, 344 F. Supp. 2d 290, 306 (D. Mass. 2004); *Baron v. Smith*, 285 F. Supp. 2d 96, 108 (D. Mass. 2003).

Paragraph 46 of the Complaint is the only place where plaintiff attempts, albeit unsuccessfully, to get specific with respect to Mr. Ahmed. In that paragraph, plaintiff alleges that:

> According to [a former Sonus vice president who had responsibility for, *inter alia*, preparing and interacting with Hemme on financial statement preparation], defendant Ahmed was made aware of these improper practices in 2001, specifically with regard to the Qwest contract, but took no action to stop them.

The Complaint does not allege *how* Mr. Ahmed was "made aware" of these practices, or what "made aware" actually means. *What was Mr. Ahmed told about the Qwest contract?* Plaintiff's allegation raises more questions than it answers.

Even more significantly, the alleged source for this allegation is unnamed. The "former Sonus vice president who had responsibility for, *inter alia*, preparing and interacting with Hemme on financial statement preparation," is not "described in the Complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29 (1st Cir. 2002). Was this former vice president employed by Sonus when the alleged improper practice occurred or in 2001 when Mr. Ahmed allegedly was made aware of the practice? He or she was vice president of what? Who made Mr. Ahmed aware? What was Mr. Ahmed told? How does the unidentified former vice president know what was said to Mr. Ahmed?

To allege, as plaintiff does, that this former vice president "had responsibility for, *inter alia*, preparing and interacting with Hemme on financial statement preparation" does nothing to indicate whether this individual was in a position to know what, if anything, Mr. Ahmed was told about the Qwest contract or about any of the alleged "improper practices." The allegation that

the person "had responsibility for financial statement preparation" and "interacted with Mr. Hemme" on financial statement preparation does not lend plaintiff's alleged source any credibility or make it probable that the alleged source was in a position to know what Mr. Ahmed was told. Plaintiff does not allege that this former vice president interacted with Mr. Ahmed or even that he or she has personal knowledge of what Mr. Ahmed knew and when and how he learned it. Plaintiff's reliance on this incomplete allegation is misplaced. *See In re Vertex Pharmaceuticals, Inc. Sec. Litig.*, 357 F. Supp. 2d 343, 353-54 (D. Mass. 2005)(dismissing Section 10(b) claim because, among other reasons, the PSLRA's particularity requirement was not satisfied by confidential witnesses' general and incomplete allegations).

Plaintiff's § 10(b) claim against Mr. Ahmed should be dismissed.

## II. PLAINTIFF'S § 11 CLAIM AGAINST MR. AHMED MUST BE DISMISSED UNDER FED. R. CIV. P. 9(b).

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, provides a private cause of action based on untrue statements of material fact or material omissions in registration statements against, among others, those who signed the registration statement. The First Circuit, and the great majority of other circuits who have addressed the issue, have held that the pleading requirements of Fed. R. Civ. P. 9(b) apply to a § 11 claim because "fraud might be said to lie at the core of the action." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996).[1] These courts, and courts within this district, state that a Complaint should be examined to see whether it "sounds in fraud." If it does, then the plaintiff must allege that fraud, including claims under

[1] *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287-88 (3rd Cir. 1992). *But see In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 314 (8th Cir. 1997).

Section 11 must be alleged, with particularity. *See, e.g.*, *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994). As one court explained:

> A mere allegation, or "averment," of [fraud] could still serve to injure a defendant's reputation, regardless of whether such allegation is necessary to establish liability under a cause of action. As such, Rule 9(b)'s requirement that a claimant be able to factually support his claim should be imposed not only if fraud is an element of the cause of action in question, but also if the claim sounds in fraud and could thus operate to injure the defendant's reputation.

*Taam Assocs., Inc. v. Housecall Medical Resources, Inc.*, 1998 U.S. Dist. LEXIS 22372 at *40 (N.D. Ga. March 31, 1998). *See In re Stratosphere Corp. Sec. Litig.*, 1997 U.S. Dist. LEXIS 14621 at *20 (D. Nev. May 20, 1997) (recognizing that although § 11 permits recovery for negligent, non-fraudulent conduct, plaintiff did not allege negligent, non-fraudulent conduct, and therefore subjecting plaintiff's § 11 claim to the rigors of Rule 9(b)).

Here, plaintiff's Complaint sounds in fraud. It describes an alleged scheme by Sonus senior management to "create and maintain an illusion of linear revenue growth" to satisfy Wall Street analysts and investors (Complaint ¶ 5) by the use of "accounting trickery" that "manipulate[d] contracts." Complaint ¶ 40. A 26-page section of the Complaint is entitled "SONUS'S FRAUDULENT ACCOUNTING." Paragraph after paragraph of the Complaint alleges defendants' knowledge and/or recklessness (Complaint ¶¶ 5, 23, 40, 42, 49) and intentional misconduct in "managing" revenues. *Id.* ¶¶ 5, 40-50. It alleges that each defendant is liable "as a direct participant in a fraudulent scheme and course of business that operated as a fraud or deceit," Complaint ¶ 24, and that "Sonus's senior managers sought to create and maintain the illusion of" increasing profitability. Complaint ¶ 37. The Complaint's headings include: "Defendant Ahmed Directly Participated in and Furthered the Fraudulent Accounting Practices." Complaint, page 39, and "The Fraud Begins to Unravel." Complaint, page 42. The

Complaint is replete with (vague, conclusory, and wholly insufficient) references to defendants' alleged knowledge of the wrongdoing and/or recklessness – the language of fraud. *See, e.g.*, Complaint ¶¶ 2, 5, 6, 23, 24, 36, 37, 39, 40, 42, 45, 46, 49, 187.

Indeed, the inextricable link between plaintiff's fraud allegations and § 11 claim is made plain in paragraph 39 of the Complaint, where plaintiff alleges that defendants sought to create an illusion of lower revenue growth because they "intended to raise capital by issuing shares of Sonus's common stock in follow-on offerings pursuant to a prior shelf registration, and they knew that such offerings would not be successful if the Company's reserves were deemed to be irregular and unpredictable."

By contrast, in the Complaint's 122 pages and 218 paragraphs, there is only one obscure sentence fragment that speaks, in conclusory fashion, of defendants' lack of "reasonable ground for belief" and failure "to make a reasonable investigation." *See* Complaint ¶ 201. A plaintiff may not ignore the clear import of its own allegations and withstand dismissal of its Section 11 claim simply by adding a few words to a 122-page Complaint. This Court need not "sift through allegations of fraud in search of some lesser included claim of strict liability." *Lone Star Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). If the Court were to follow the directive of *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1028 (9th Cir. 2005), and "strip away" the allegations of fraud, then it would find absolutely nothing left. Plaintiff's Complaint alleges a unified course of fraudulent conduct. Indeed, it is impossible to read the Complaint any other way.

In a transparent effort to sidestep the application of Rule 9(b) to its § 11 claim, plaintiff alleges "for the purposes of this [§ 11] claim, Lead Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct, as

this claim is based solely on a claim of strict liability (as to defendant Sonus) or negligence (as to defendants Ahmed and Nill) under the Securities Act." Complaint ¶ 196. This stratagem repeatedly has been held to be ineffective. "[B]oilerplate language . . . stating that the Section 11 claim . . . is based in negligence and 'does not sound in fraud' is insufficient to limit the claim to negligence where 'the wording and imputations of the complaint are classically associated with fraud.'" *In re Suprema Specialties, Inc. Sec. Litig.*, 334 F. Supp. 2d 637, 651 (D.N.J. 2004). *Accord, In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996); *Brody v. Homestore, Inc.*, 2003 U.S. Dist. LEXIS 17267 at *13 (C.D. Cal. August 8, 2003) (holding that such disclaimers should not be taken "at face value"); *In re Stratosphere Corp. Sec. Litig.*, 1997 U.S. Dist. LEXIS 14621 at *20-21 (D. Nev. May 20, 1997) ("Plaintiffs cannot avoid the more stringent requirements of Rule 9(b) by merely inserting boilerplate language into their Complaint stating that the claims are based on negligence, not fraud, or try to plead both fraud and negligence by stating Defendants 'knew or should have known' of the alleged falsity."). *See also In re Metricom Sec. Litig.*, 2004 WL 966291 at *24 (N.D. Cal. 2004) (plaintiff cannot "scissor out a non-fraud claim from the center of that unified course of conduct in order to evade the Rule 9(b) requirement"); *In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 440 (S.D.N.Y. 2000) (rejecting "boilerplate disclaimer of fraud"); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (same).[2] Form should not be exalted over substance. The gravamen of the Complaint is fraud. The plaintiff's extensive allegations of fraud cannot be put aside by *ipsi dixit*.

[2] *In re Number Nine Visual Technology Corp. Sec. Litig.*, 51 F. Supp. 2d 1 (D. Mass. 1999) (Young, J.) is not to the contrary. To be sure, the court there credited the disclaimer, speculating that its failure to do so would lead plaintiffs to split their § 10 and § 11 claims in different actions. In any event, the court found that even without the disclaimer, the Complaint did not sound in fraud. *Id.* at 13. Thus, the court was not faced with the situation presented here where there is a disclaimer *and* a Complaint sounding in fraud.

Disregarding plaintiff's disclaimer and applying Rule 9(b), plaintiff's § 11 claim fails. As described above and more fully in Sonus's Memorandum, the Complaint lacks particularized allegations of the circumstances of the fraud and of Mr. Ahmed's knowledge. Therefore, plaintiff's § 11 claim should be dismissed. *See In re Suprema Specialties, Inc. Sec. Litig.*, 334 F. Supp. 2d 637, 652 (D.N.J. 2004) (dismissing § 11 claim under Rule 9(b) because, among other reasons, complaint did not include particularized allegations of knowledge of falsity).

The Complaint is also deficient because it fails to plead any facts -- let alone particularized facts -- relating to Mr. Ahmed's alleged negligence. Mere conclusory allegations that an individual was "negligent" without more, without any explanation as to how that individual was negligent, what duty he owed, the source of his duty, and how he breached that duty, should not suffice. The Complaint includes no such allegations. Stated differently, if, as plaintiff suggests, the allegations of fraud were to be ignored, there would be nothing left upon which to base a claim for negligence. For this separate reason, the Court should dismiss plaintiff's § 11 claim under Fed. R. Civ. P. 12(b)(6).

## III. PLAINTIFF'S CLAIM UNDER § 12(a)(2) MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 9(b).

Just like plaintiff's § 11 claim, plaintiff's claim under § 12(a)(2) of the Securities Act of 1933 sounds in fraud and is subject to the strictures of Fed. R. Civ. P. 9(b). *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996). And, for the reasons discussed in Sonus's memorandum and at pp. 2-6, *supra*, plaintiff's § 12(a)(2) claim fails to satisfy those requirements. For this reason alone, this claim must be dismissed.

But plaintiff's claim fails for an additional, and even more fundamental reason – plaintiff fails to allege basic, essential elements of a § 12 claim. Under § 12(a)(2), suit may be brought

only against the "seller" of securities to a plaintiff (the term "seller" is statutorily defined). 15 U.S.C. 21 77*l*(a) states, in relevant part,

> that "*[a]ny person who . . . offers or sells a security* . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . *shall be liable . . . to the person purchasing such security from him.*"

(emphasis added). The Supreme Court, interpreting this provision, has held that the only proper § 12 defendant is (1) "the owner who passed title, or other interest in the security, to the buyer for value;" or (2) "an individual who engages in solicitation" of the sale for the principal, "motivated at least in part by a desire to serve his own financial interests or those of the securities owner," such as a broker acting as a paid agent of the selling securities owner. *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).[3]

The offering at issue, Sonus's September 23, 2003 secondary offering, was a "firm commitment" underwriting. A "firm commitment" underwriting is one in which the underwriter agrees to purchase all of the shares in the offering from the issuer and then, in turn, sells some or all of those shares to investors. *See generally Shaw*, 82 F.3d at 1200 n.1 (describing a firm commitment underwriting as one in which the company issuing the securities "sold all of the offered shares to the underwriter at a discount, who then in turn sold the shares to the public"). Here, the underwriter, Goldman, Sachs & Co., first purchased all of the offered shares from Sonus, and thereafter, Goldman Sachs sold the shares to the public on its own behalf. *See* Prospectus Supplement Filed September 24, 2003 at S-1 ("In accordance with the terms of the

[3] Although *Pinter* arose under § 12(a)(1), the Court itself suggested, and the First Circuit has subsequently held, that *Pinter's* analysis of who is a § 12 seller is equally applicable to § 12(a)(2). *See Pinter*, 486 U.S. at 642 n.20; *Shaw v. Digital Equip Corp.*, 82 F.3d 1194, 1214 (1st Cir. 1996).

underwriting agreement, Goldman, Sachs & Co. has agreed to purchase all of the 17,000,000 shares."). A copy of the Prospectus Supplement is attached as *Exhibit A* to the Declaration of Paul E. Bonanno, filed herewith.[4] Sonus and its officers therefore did not pass title to plaintiff BPI Global or to any other member of the putative § 12 class. Goldman Sachs did. *See Shaw*, 82 F.3d at 1216. Accordingly, Sonus and its officers can only be liable as § 12 statutory sellers if they engaged in direct and active financially-motivated solicitation of plaintiff BPI Global's purchase. *See Shaw*, 82 F.3d at 1216. Plaintiff fails to allege that they did.

In the few paragraphs of the complaint plaintiff devotes to his § 12 claim, plaintiff alleges:

- "On September 23, 2003, Sonus filed a . . . Prospectus Supplement to its June 25, 2001 Registration Statement and Prospectus, relating to the offering of 17,000,000 shares of its common stock." Complaint. ¶ 72. "Lead Plaintiff and members of the [Section 12] Subclass acquired Sonus shares pursuant to the Prospectus Supplement." *Id.* ¶ 209.

- Sonus, Ahmed and Nill caused the false and misleading Prospectus Supplement to be drafted, and approved it. Complaint ¶ 210. "But for" these actions, the offering could not have closed and plaintiffs could not have purchased Sonus shares. *Id.*

- Sonus, Ahmed and Nill "solicited institutional investors, fund managers and other investment professionals to acquire Sonus shares pursuant to the Prospectus Supplement." Complaint ¶ 210. "Absent the selling efforts by Sonus, Ahmed and Nill, as set forth above, the sale of Sonus shares pursuant to the Prospectus Supplement would not have been consummated." *Id.* ¶ 211.

None of these allegations suffice to state a claim under § 12. *Shaw* states that under a § 12 claim, plaintiff must allege that the defendant directly solicited *its* purchase – not that it solicited investors generally. *See Shaw*, 82 F.3d at 1215 (holding, in firm commitment

[4] The Prospectus Supplement is referenced in the Complaint (*see* ¶ 164) and is alleged to contain false statements. Therefore, the Court may consider the Prospectus Supplement itself in the context of this motion to dismiss. *See Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).

underwriting, that the issuer and its CEO and CFO were not statutory sellers because the complaint lacked a non-conclusory factual allegation that the defendants "actively 'solicited' ***the plaintiffs'*** purchase of securities to further their own financial motives, in the manner of a broker or vendor's agent") (emphasis supplied). *See also In re WebSecure, Inc. Sec. Litig.*, 182 F.R.D. 364, 369 (D. Mass. 1998) (dismissing § 12 claim against underwriter because the "complaint does not allege that any plaintiff -- as distinct from any 'investor' -- purchased directly from [the underwriter]"); *see generally Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ("To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer. . . . The issuer may only be liable under § 12(a)(2) if the plaintiff alleges 'that an issuer's role was not the usual one; that it went farther and became a vendor's agent.'"); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998) (similar).

The Complaint contains no allegation that defendants solicited BPI Global's purchase. It alleges only that "[defendants] solicited institutional investors, fund managers and other investment professionals. . . ." *See* Complaint ¶ 210. This allegation is deficient as a matter of law. The Complaint is also deficient because it fails to make any allegation that defendants solicited BPI Global's purchase "to further their own financial motives, in the manner of a broker or vendor's agent." *Shaw*, 82 F.3d at 1215.

Allegations concerning defendants' involvement in drafting or approving offering materials do not save the Complaint. *See* Complaint ¶ 210. *See also Shaw*, 82 F.3d at 1216 ("neither involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status.") (emphasis in original). *Accord* T. Hazen, TREATISE ON THE LAWS OF SECURITIES REGULATION § 7.2 at 579

(4th ed. 2002) ("Even substantial involvement in the preparation of registration and offering materials will not create liability unless there is also active involvement in the negotiations leading to the sale in question."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 406 (D. Md. 2004) ("Mere participation in the preparation of the prospectus will not trigger § 12(a)(2) liability.").

Therefore, plaintiff fails to state a claim under § 12. Plaintiff's § 15 "controlling person" claims are derivative of its § 11 and § 12 claims, and fail for that reason. *See Shaw* 82 F.3d at 1201 n. 2.

## CONCLUSION

For the foregoing reasons and the reasons cited in Sonus's Memorandum in support of its motion to dismiss, plaintiff's First Amended Consolidated Complaint must be dismissed, in its entirety and with prejudice, as against Mr. Ahmed.

HASSAN M. AHMED,

By his attorneys,

/s/ Paul E. Bonanno
Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Paul E. Bonanno (BBO #646838)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: September 12, 2005

3974664_1 DOC