# EXHIBIT A

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10294-DPW, 04-10359-DPW
************************************************
DEBORAH CHIN, ET AL.

VS.

SONUS NETWORKS, INC., ET AL.
*********************************************


HEARING
BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
Date:  June 1, 2005


APPEARANCES:

Jeff Rudman, Esq., and Daniel Halston, Esq., Daniel H.
Gold, Esq., (WILMER, CUTLER, PICKERING, HALE and DORR LLP);
on behalf of Sonus Networks, Inc., Edward Anderson, Paul
Ferri, Albert Notini, Paul Severino.

Solomon B. Cera, Esq., (GOLD, BENNETT, CERA & SIDENER), 595
Market Street, Suite 2300, San Francisco, CA 94105; on
behalf of the Lead Plaintiff in 04-10294, B/I Global Asset
Management.

John R. Baraniak, Jr., Esq., (CHOATE HALL & STEWART),
53 State Street, Boston, MA 02109; on behalf of Hassan
Ahmed.


TERI CELESTE GIBSON, COURT REPORTER
P.O. BOX 47
DORCHESTER, MASSACHUSETTS 02121
(617)650-6288

Mechanical Stenography; computer aided transcription.

APPEARANCES CONT'D:

Willem F. Jonckheer, Esq., (SCHUBERT & REED LLP), Two
Embarcadero Center, Suite 1660, San Francisco, CA 94111; on
behalf of Daniel Williams, plaintiff in derivative action.


John C. Martland, Esq., (GILMAN AND PASTOR,LLP), 60 State
Street, 37th Floor, Boston, MA 02109; on behalf of the
plaintiff, derivative action.


John D. Hughes, Esq., (EDWARDS & ANGELL LLP), 101 Federal
Street, Boston, MA 02110; on behalf of defendants, Rubin
Gruber, Michael O'Hara, Paul Jones, and Edward Harris.


Matthew J. Matule, Esq., and Michael S. Hines, Esq.,
(SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP) One Beacon
Street, Boston, MA 02108-3194; on behalf of defendant,
Stephen J. Nill.


                          *****

1          P-R-O-C-E-E-D-I-N-G-S

2          THE CLERK:  Calling In Re:  Sonus Network

3    Shareholder derivative litigation and In re:  Sonus

4    securities litigation, Civil Action Number 04-10359 and

5    04-10294.

6          THE COURT:  I did want to take up the derivative

7    action first.  I shouldn't ask the broadest question first

8    but I will.  Why wouldn't a demand be made?

9          MR. JONCKHEER:  Your Honor, William Jonckheer for

10   the plaintiff.

11         Your Honor, demand was not made because based on

12   assessment of the facts in the case, the determination was

13   made that demand would be futile, and that's based on the

14   allegations that are in the complaint which --

15         THE COURT:  That's not the answer I want to

16   discuss with you.  If it's futile, what's wrong with making

17   demand, except that you get the opportunity to hear the

18   motion to dismiss.  I just don't understand why someone

19   wouldn't make a demand under these circumstances.

20         MR. JONCKHEER:  I believe, Your Honor, if a demand

21   is made, and typically, a demand would be rejected.

22         THE COURT:  Right.

23         MR. JONCKHEER:  Then the standard in order to

24   enforce the company's claims by a shareholder, the standard

25   becomes much more difficult to overcome the demand to reject

 1    it.

 2              THE COURT:  I guess I need some education

 3    regarding this.

 4              MR. JONCKHEER:  I believe the standard that

 5    applies to a demand refused case, is much higher than the

 6    standard that applies to a demand execution case.

 7              THE COURT:  Ask the question for purposes of

 8    education.

 9              MR. JONCKHEER:  I believe under the -- if a demand

10    is made --

11              THE COURT:  Two different answers.

12              MR. JONCKHEER:  If a demand is made and rejected,

13    I believe that under the operative standards, the rejection

14    is protected, the business judgment rule to a higher extent

15    which is a higher standard to meet or defeat for derivative

16    plaintiff, that believes that the company claims should be

17    enforced.  Whereas in a demand, if you are alleging demand

18    of futility, then other standards apply where the plaintiff

19    needs to allege a claim of bad faith in effect.  In order to

20    invalidate the application of the business judgment rule by

21    the board to the claims at issue.

22              THE COURT:  Strikes me a kind of game of chicken

23    to be playing under these circumstances.  In particular,

24    after the state court judges effectively said that it wasn't

25    futile.

5

1          MR. JONCKHEER:  The point I would make with

2    respect to the State Court opinion, I think you are looking

3    at complaints that are really very different.  It's a night

4    and day difference in fact.

5          THE COURT:  What is the night and day difference?

6    Frankly, I assume the difference between 3:40 and 3:43 in

7    the afternoon.  What is the night and day difference?

8          MR. JONCKHEER:  The difference, Your Honor, is

9    that the state complaint was filed on February 20th, 2004.

10          THE COURT:  When was the first filed.

11          MR. JONCKHEER:  I believe around the same time,

12    later in February.

13          THE COURT:  That is the difference?

14          MR. JONCKHEER:  Well, the point is that under the

15    arrangement that we made before Your Honor in terms of

16    filing the amended complaint, we did that, we filed it in

17    October, and in the amended complaint are an enormous amount

18    of details regarding what actually went wrong at this

19    company.  So whereas the state complaint --

20          THE COURT:  You mean Judge van Gestel didn't know

21    something went wrong with the company.

22          MR. JONCKHEER:  He didn't know the extent of the

23    problems with the internal controls of the company.

24          THE COURT:  What has to -- to do with the futility

25    of the case.

1　　　　　　MR. JONCKHEER:  Because the camera case, Your

2　Honor, where a Board of Directors is responsible for

3　operating, instituting a system of internal controls, when

4　the Board utterly fails to do that, that is a showing, that

5　can demonstrate a showing of bad faith, which is sufficient

6　to demonstrate interested for demand of futility.

7　　　　　　THE COURT:  What the information -- wasn't that

8　information available at the time the Judge van Gestel

9　rendered his opinion?

10　　　　　　MR. JONCKHEER:  It was not, Your Honor.

11　　　　　　THE COURT:  It wasn't?

12　　　　　　MR. JONCKHEER:  No.  Because the restatement did

13　not occur.  It was not revealed until July.

14　　　　　　THE COURT:  And when did Judge van Gestel render

15　his decision?

16　　　　　　MR. JONCKHEER:  I believe he rendered in

17　September.

18　　　　　　THE COURT:  Isn't that the operative date?

19　　　　　　MR. JONCKHEER:  No because in his order, he

20　specifically says that he is ruling on the complaint as

21　written and as filed on February 20th.

22　　　　　　THE COURT:  But he is ruling as to the date.

23　Again, that is what I am looking to for purposes of

24　collateral estoppel evaluation.  The judgment that I am

25　observing and obligated to observe is the one -- is as of

1    the date the judgment enters.

2         Now, if people didn't take steps to protect

3    themselves, if they didn't bring matters to the attention of

4    Judge van Gestel, if they didn't choose to amend their

5    complaint, that is a different issue.

6         MR. JONCKHEER:  He didn't give leave to amend.

7         THE COURT:  It was sought?

8         MR. JONCKHEER:  I don't know that, Your Honor, but

9    I assume it was.

10        THE COURT:  What do you mean you assume it was?

11   Isn't that relevant to evaluation here?

12        MR. JONCKHEER:  I think the point is, that some

13   later information was submitted to Judge van Gestel

14   according to the defendant's papers.

15        THE COURT:  If you are going to oppose it, didn't

16   you inquire?

17        MR. JONCKHEER:  Did I inquire what, Your Honor?

18        THE COURT:  Inquire whether or not this

19   information was submitted, not submitted, whether or not

20   leave to amend was permitted, not permitted?

21        MR. JONCKHEER:  I know some was, that some

22   additional information was submitted but from the collateral

23   estoppel purposes, Your Honor, I believe that the Court

24   should look at what the order says and what the issues are

25   that the court ruled upon.  The Court rejected any amendment

1  to the complaint and also rejected --

2           THE COURT:  You said "rejected any amendment to

3  the complaint"?

4           MR. JONCKHEER:  Yes.  The Court denied leave to

5  amend; that is in the order.

6           THE COURT:  He denied leave to amend?

7           MR. JONCKHEER:  That's right.  The complaint was

8  never amended in this state case.

9           THE COURT:  That it was never amended is different

10  from denying leave to amend.

11           MR. JONCKHEER:  Well, the order says -- I can

12  infer, Your Honor, from what the judge said about leave to

13  amend, that it was requested.  The Court accepts Supreme

14  Court reasoning, such dismissal ought to be without leave.

15           THE COURT:  Hold on for a second.

16           Okay.  What page are you pointing to?

17           MR. JONCKHEER:  It's Page 9 of Judge van Gestel's

18  order.

19       (Pause.)

20           THE COURT:  Some policies supports the -- is that

21  what you are saying?

22           MR. JONCKHEER:  I am sorry, Your Honor.

23           THE COURT:  I got Page 9 in front of me.

24           MR. JONCKHEER:  Yes.

25           THE COURT:  And what is the specific thing that

1   you want me to look at?

2          MR. JONCKHEER:  Well, I am pointing to the -- I am

3   pointing to that sentence and --

4          THE COURT:  Wait.  Let me see.  Maybe the

5   defendants can answer it.  Was there a request for leave to

6   amend?

7          MR. HALSTON:  There was not, no motion was ever

8   filed what the plaintiffs in the state court case.  In

9   footnote 6 of their brief, was to say we've not sued

10  Thompson, the other Board member, outside the director was

11  not named as a defendant, either in the State Court action

12  or the Federal Court action, and they added a sentence,

13  footnote 6 to say to the extent you want us to add him, we

14  ask leave to add Thompson at some later date.  And that's

15  all, what was ever presented with respect to any request for

16  amendment, Your Honor.

17         THE COURT:  Do you have any basis to disagree with

18  that?

19         MR. JONCKHEER:  Well, from what I understand, Your

20  Honor, reading under --

21         THE COURT:  From which you understand.  You know,

22  do you have any facts to bring to my attention apart from

23  this argument from exercise of pure reason?

24         MR. MARTLAND:  I am sorry, Your Honor.

25         THE COURT:  Do you have anything to bring to my

1    attention that is specific, or you just going to wing it?

2              MR. JONCKHEER:  Your Honor, I believe that Judge

3    van Gestel concluded that he would not give leave to --

4              THE COURT:  Now --

5              MR. MARTLAND:  Under the Delaware Supreme Court.

6              THE COURT:  The plaintiffs in the state court, I

7    am told, maybe you know differently but apparently you don't

8    know at all the plaintiffs in the state case apparently did

9    not move to amend.

10             MR. JONCKHEER:  They did not move to amend, that's

11   right.

12             THE COURT:  How do we know what Judge van Gestel

13   is going to do or would have done had they?

14             MR. JONCKHEER:  We don't, Your Honor, except that

15   in typical -- maybe this is the problem that I am having

16   understanding, that the -- typically when the complaint is

17   dismissed on the first motion to dismiss, leave to amend

18   would follow.  That apparently is not what Judge van Gestel

19   concluded here.

20             THE COURT:  Typically?  People have, I think, a

21   rather unusual view, something that maybe I ought to

22   precurse for purposes of the securities action, the class

23   action.  The idea that this is some sort of interactive

24   process, that the Court gets to mark up the complaint, and

25   then the plaintiffs get to file another one.  First question

1    I am going to ask the class plaintiffs is:  Is this your

2    final complaint?  Because if it isn't, they better file

3    their final complaint before I act on their motion to

4    dismiss.  You apparently are laboring under a similar

5    apprehension.  That there is one free shot.  That you don't

6    have to amend your complaint, and that they didn't have to

7    amend their complaint in the state court.  That simply is

8    not the case.  And so I want to disabuse you of that.  You

9    told me that Judge van Gestel wouldn't let them amend their

10   complaint.  Apparently, they never asked to.

11            MR. JONCKHEER:  Well, it appears he did ask with

12   respect to that particular party.

13            THE COURT:  That's not dropping something in a

14   footnote, like say foot note 25.

15            MR. JONCKHEER:  Motion to amend, correct, that I

16   can see.  That -- that appears to be the case.

17            THE COURT:  There is no motion to amend, and isn't

18   the issue then for us whether or not there was adequate

19   representation of the shareholders for purposes of the

20   derivative action?

21            MR. JONCKHEER:  Well, I would submit, Your Honor,

22   that under the collateral estoppel analysis, okay, in the

23   First Circuit, has said following regarding collateral

24   estoppel.  -- issues transferred by significant changes, and

25   that is in the DeCosta case cited by the defendants.

1    THE COURT:  That is a class case.  Really, I guess

2    we have to deal with it in two parts.  First is what was the

3    state of the record, state of bidding actually, at the time

4    that the initial judgement was entered in the State Court.

5    And just a moment.  And that is because under State Court

6    23.1, just as under federal 23.1 analysis, there is not --

7    there is an obligation for the state to see representation.

8    It's implicit in its determination, and it's part of the

9    judgment.

10    Okay.  So now we say what was the state of the

11    bidding at the time that Judge van Gestel entered his order?

12    And the information that you are pointing me to was all

13    available, apparently not for some reason brought to his

14    attention, formally.

15    MR. JONCKHEER:  Well, Your Honor, I would submit

16    that that's the reason that the -- both the collateral

17    estoppel issue, the only thing Judge van Gestel held is that

18    the complaint that he read that was filed on February 20th,

19    did not have the facts.  That's the only thing he held.

20    There is no res judicata effect.

21    THE COURT:  No, he didn't.  He held there was in

22    futility in the failure to make that demand.

23    MR. JONCKHEER:  He held there was -- are no facts

24    pled to excuse demand.  That is the only thing he held.

25    Underlining substantive claims remain in effect.

1       THE COURT:  They may but you have to perfect them
2    in the proper fashion.
3       MR. JONCKHEER:  That's right, and that is what we
4    are doing by the complaint filed in this case.
5       THE COURT:  No.  Now, you are faced with res
6    judicata effect of a determination with respect to that.
7    There is a judgment.
8       MR. JONCKHEER:  But the only issue litigated is
9    the demand futility issue, which resulted in a judgment.
10      THE COURT:  So what that means is that every time
11   one shareholder group gets booted out, on failure of the --
12   of stating a claim, that another one can rise from the
13   action somewhere else and bring their own lawsuit.
14      MR. JONCKHEER:  No because there was no failure to
15   state a claim.  There was failure to allege demand for
16   futility.  That is different from the underlining claim,
17   which defendants concede remains in effect.  The underlining
18   claims are there to be enforced.  The question the Judge van
19   Gestel decided is whether the state plaintiff had showed the
20   facts to take those claims and prosecute them.  Judge van
21   Gestel read that complaint.  He didn't like it.  The most
22   recent fact in that complaint regarding the restatement came
23   from February 11th of 2004, which was simply an announcement
24   that the company was looking at 2003 and might have to
25   restate and was doing an investigation.

1          THE COURT:  There was no collateral estoppel

2    effect in general cases whenever the facts alleged.

3          MR. JONCKHEER:  Your Honor, I believe that is

4    correct.

5          THE COURT:  Is there case law that says that?

6          MR. JONCKHEER:  No.  But the collateral estoppel

7    concent, the issue is clear, and as I just read from the

8    First Circuit opinion -- is a change in the facts that are

9    central.

10          THE COURT:  Any change of fact -- any change in

11    the facts?

12          MR. JONCKHEER:  Material change here, Your Honor,

13    and they are material.

14          THE COURT:  All right.  And the materiality is

15    what?

16          MR. JONCKHEER:  Materiality is the admissions by

17    the defendants regarding the state of company internal

18    controls.  Now, that occurred in July.  So what Judge van

19    Gestel looked at was the -- looks like '03 might be restated

20    that is the only thing he knew.  What we know here is that

21    2001, 2002, and 2003 were restated.  We know by how much,

22    what accounts.

23          THE COURT:  It wouldn't make any difference in

24    terms of the factual predicate for which he -- on which he

25    was acting.

1          MR. JONCKHEER:  But it makes --

2          THE COURT:  It's two parts.  The first part is it

3     was available, and it wasn't pressed, and you are bound by

4     the determination of the state plaintiffs with respect to

5     this group of action.  So I have to say they chose not to

6     present it.  And if I were to say anything else, I would be

7     saying this was an inadequacy representation in the state

8     case.

9          MR. JONCKHEER:  Your Honor, they presented a

10    complaint.  The defendants moved to dismiss it.  The

11    plaintiffs submitted some additional information, and there

12    is no indication that the judge thought about that, that he

13    even cared if additional information was disclosed because

14    in footnote 5 on Page 7 of his order --

15         THE COURT:  What is the exception to the

16    collateral estoppel rule, the judge didn't care?

17         MR. JONCKHEER:  I am sorry, Your Honor.  I

18    misspoke.

19         THE COURT:  Go on.  Substantiate it.

20         MR. JONCKHEER:  The point is the judge was

21    presented with additional information, and I say that within

22    the context of his legal analysis, Your Honor, that he

23    didn't think it was relevant.  He concluded that the

24    complaint as written is what is -- whether it's going to be

25    determinative of what a demand is excused.  In footnote 5 on

1   Page 7 of his order, he says the complaints were live or die

2   as written when the arguments were presented to the Court.

3   Live or die is written.  So the point is that under the

4   Delaware cases that he is relying upon, that indeed is the

5   standard that demand futility is gaged at the time the

6   complain is filed.  No additional facts are relevant.  That

7   is why.

8        THE COURT:  We are back to this question of

9   whether or not there is the right to amend the complaint; is

10  that what you are saying?  That he effectively denied the

11  right to amend the complaint?

12       MR. MARTLAND:  What I am saying, that it's clear

13  from procedural history there, that the plaintiffs tried to

14  offer some additional information to the Court.

15       THE COURT:  What does that mean, tried to offer

16  additional information?

17       How do you do that?  You do that by a complaint.

18       MR. MARTLAND:  That's right.

19       THE COURT:  And they didn't move to amend the

20  complaint.

21       MR. JONCKHEER:  They didn't move to amend the

22  complaint, that's correct, Your Honor.  But I believe the

23  hearing on the motion to dismiss, and I wasn't a party to

24  that.  I don't know, but I believe it occurred right around

25  the same time that the restatement finally came out that the

1    restatement was issued.  So I believe that the timing is

2    such that the motion to amend, the motion to dismiss was

3    fully briefed, I believe as of the spring, and hearing

4    occurred I believe in July, but the defendants would have

5    to -- I don't know that, exactly when.  It was June

6    apparently.  So at that point, when the hearing was held,

7    the restatement hadn't even come out yet, so those facts

8    could not have obviously been disclosed to Judge van Gestel.

9              THE COURT:  I don't know why not.

10             MR. JONCKHEER:  You mean after the hearing?

11             THE COURT:  No one tried to, apparently.

12             MR. JONCKHEER:  Well, apparently the plaintiff

13   does not submit it after the hearing.

14             THE COURT:  That entitles you to come in and make

15   a lawsuit.

16             MR. JONCKHEER:  Not to bring another lawsuit, but

17   to allege facts that support our derivative complaint.

18             THE COURT:  Basic legal environment was alleged

19   before Judge van Gestel is nothing in the nature of the

20   legal theories that you've alluded to that wasn't before

21   him.  Now, there were factual problems with it, he

22   identified them, but there is nothing that in terms of

23   charges that were developed here that weren't before Judge

24   van Gestel.  Just got worse for the company.

25             MR. JONCKHEER:  That's right.  And those are facts

1    that are before Your Honor.

2          THE COURT:  See, it seems to me it's outright

3    refusal to pursue the idea of making a demand, that's

4    purely, and some perception telling me that business

5    judgment was harder to deal with than --

6          MR. JONCKHEER:  Your Honor, the policy of the law

7    is that demand is excused under certain circumstances.  How.

8    Now, we believe those circumstances exist, so that's why the

9    complaint was filed in the form it was filed.

10          THE COURT:  Okay.  Well, I guess I need to

11    understand with some particularity exactly what it is in

12    terms of theory, there was before Judge van Gestel.

13          MR. JONCKHEER:  The theory, Your Honor, is clear.

14    The Caremark case is an important Delaware case, which in

15    context of proving the settlement of the Court, described

16    the standards of liability for what is called failure of

17    oversight case where the Board does not operate an internal

18    control system in such a fashion that the corporation is

19    harmed as a result of the facts alleged in the complaint

20    that we filed in October, three months after the

21    restatement, alleges 9 separate categories of internal

22    controls that were deficient at this company.

23          THE COURT:  Let me understand this.  Your

24    position, I shouldn't have let you file this amended

25    complaint?

1    MR. JONCKHEER:  No.

2    THE COURT:  Something wrong in the Delaware law

3    about filing an amended complaint?

4    MR. JONCKHEER:  Well, under Delaware law, that

5    is -- there are cases that suggest that --

6    THE COURT:  Are you telling me that's why Judge

7    van Gestel didn't permit.

8    MR. JONCKHEER:  That is what the order says, Your

9    Honor.

10    THE COURT:  That is not what it says and you know

11    it.

12    MR. JONCKHEER:  I am sorry.  I understood that

13    Judge van Gestel said that there would be no leave to amend

14    based on the Delaware case.

15    THE COURT:  None was asked for.  What he is saying

16    at the end of the case, having rendered a judgment, there is

17    not going to be leave to amend.  You had a shot at it, or

18    more accurately, your client had a shot at it, more

19    accurately the representative of your client had a shot at

20    it, and they weren't successful.

21    MR. JONCKHEER:  I believe under federal procedure,

22    and I have a case by Judge Keeton also cited by the

23    defendants, which specifically says that in the context of a

24    derivative case under 23.1 --

25    THE COURT:  23.1.

 1          MR. JONCKHEER:  -- which this case is brought

 2    under, he is aware of no --

 3          THE COURT:  23.1, not 22.

 4          MR. JONCKHEER:  That's right, 23.1.

 5          I am aware of no case law in this circuit that

 6    supports on contrary First Circuit dismissal under 23.1 have

 7    been without prejudice.  So leave to amend is granted, 23.1

 8    derivative on the demand futility issue.

 9          THE COURT:  Let me put the same question to you.

10    Is this your best plan?

11          MR. JONCKHEER:  Yes, Your Honor.

12          THE COURT:  This is the one you are going to rise

13    and fall on.

14          MR. JONCKHEER:  Let me say one thing, since this

15    is an evolving set of disclosures, it took months before the

16    restatement finally came out.  Additional information has

17    come out, but I believe the current complaint alleges the

18    Caremark claim sufficiently.

19          THE COURT:  I am telling you right now, that I am

20    going to act on the complaint that you tell me that is your

21    best complaint.  Is this your best complaint?  This is not

22    going to be a game of -- or more accurately, a presentation

23    of shareholders in which a new story is told every evening

24    to foreclose unhappy consequences.  There is too much going

25    on in courts to spend time blue pen or highlighting or

```
 1    anything the complaints of those who aren't prepared to
 2    stand or fall by their complaint.
 3            Are you prepared to stand or fall by your
 4    complaint?
 5            Because there will be no leave to amend once a
 6    judgment is entered here.  Do you understand that?
 7            MR. JONCKHEER:  I understand.
 8            THE COURT:  Okay.  So is this your complaint?
 9            MR. JONCKHEER:  Your Honor --
10            THE COURT:  Is this your complaint?
11            MR. JONCKHEER:  Yes.  But I believe that there are
12    additional facts that developed since it was filed.
13            THE COURT:  You are being afforded the opportunity
14    to make whatever modifications you want in the complaint now
15    before I go through the final process of determining whether
16    or not this complaint is adequate.  That is what it means to
17    have freely offered, an opportunity to amend the complaint.
18    It doesn't mean that we spin through this over and over and
19    over again.
20            MR. JONCKHEER:  I understand, Your Honor.
21            THE COURT:  Is this your complaint?
22            MR. JONCKHEER:  If Your Honor's permitting leave
23    to amend, then I would accept that.
24            THE COURT:  If I am permitting what?
25            MR. JONCKHEER:  Leave to amend the complaint.
```

1             THE COURT:  I am before I act on it.  You know

2    what the objections are.  You've heard what I have had to

3    say about it.  Is this the complaint that you are prepared

4    to rise or fall on?

5             MR. JONCKHEER:  Your Honor, I would like leave to

6    amend the complaint.  No.

7             THE COURT:  When?

8             MR. JONCKHEER:  Within a time period that we

9    can -- that the court can establish.

10             THE COURT:  What does that mean?

11             MR. JONCKHEER:  30 days.

12             THE COURT:  And that will be your final complaint?

13             MR. JONCKHEER:  Your Honor, yes.

14             THE COURT:  Any objection on the part of the

15    defendants?

16             MR. HALSTON:  Certainly prefer to have it

17    dismissed with prejudice at this time, Your Honor.

18             THE COURT:  Do doubt.

19             MR. HALSTON:  The Coughlin case, on the issue of

20    permissible to dismiss this case with prejudice in the First

21    Circuit, actually at the end of that opinion, the Court in

22    rendering its decision said in noting what the District

23    Court had said about demand futility and whether it would be

24    dismissed with or without prejudice, said the dismissal

25    with -- with prejudice, with the issue, obligation to make

23

1  demand on the directors with respect to the substantive

2  complaint.  And I think in the context of where we are now,

3  Your Honor, they filed an already amended complaint.  Recall

4  they filed an original complaint back in February or March

5  last year.  Consolidated amended complaint on October 12.

6  It went in having the benefit of Judge van Gestel's decision

7  on December 27th, and in that context, I think the Court

8  should further legitimate policy from the Delaware courts,

9  have said time and time again that directors shouldn't have

10 to be put through the expense of having to continue --

11        THE COURT:  Those were procedure issues, aren't

12 they?

13        MR. HALSTON:  Actually, the Supreme Court has made

14 clear that in considering demand futile, the demand futile

15 is an issue of substantive law.

16        THE COURT:  But the question of whether or not to

17 amend the complaint or the pleading constraints that

18 Delaware may put on that, is a matter of Delaware law and

19 procedural law that I am not obligated to imply.

20        MR. HALSTON:  I think Your Honor has his own

21 discretion with granting leave to amend, Your Honor.  I

22 think that is right.

23        THE COURT:  So my view is that I will permit them

24 30 days for their final complaint, but it will come to a

25 conclusion at that point.

1    MR. HALSTON:  May I -- would Your Honor like to

2    hear anything on collateral estoppel and why that might

3    short-circuit any leave to amend here?

4    THE COURT:  This is their opportunity to have

5    their best shot.  They actually had -- this will be their

6    third.

7    MR. HALSTON:  This will be their third.

8    THE COURT:  So there won't be any question whether

9    or not there is any adequate opportunity.

10    MR. JONCKHEER:  Thank you, Your Honor.

11    THE COURT:  Okay.  So we will give you 30 days.  I

12    will deny the motion to dismiss as moot in light of that

13    there is going to be a further complaint filed.

14    MR. HALSTON:  Would Your Honor like to schedule a

15    briefing schedule on that?

16    THE COURT:  I think I want to hear about the view

17    of the plaintiff's securities case first.

18    MR. JONCKHEER:  Thank you, Your Honor.

19    THE COURT:  Are you ready to go forward on

20    plaintiff's claim.

21    MR. CERA:  Your Honor, Solomon Cera for the lead

22    plaintiff.

23    Your Honor, of course the complaint -- a complaint

24    can always be improved upon.  We are dealing with a very --

25    THE COURT:  I am telling you, I don't know how

1   clear I have to be about this.  The question is:

2           Is this the one that you want to rise or fall on?

3           You have seen the objections that have been raised

4   by the defendants here, and they are really questions of

5   specificity.

6           Now, are you prepared to go forward on this

7   complaint or not?

8           MR. CERA:  Your Honor, if the Court deems it

9   insufficient --

10          THE COURT:  This is not my -- the question is are

11  you prepared to go forward or not?

12          MR. CERA:  We have more to add, Your Honor.

13          THE COURT:  Well, no doubt you do.  Is that what

14  you want to do, because that will be the last time you got

15  to do it.

16          MR. CERA:  Well, how -- I'm interpreting the

17  Court's comments this way, Your Honor.  You are saying if I

18  chose to go forward today and make an argument and attempt

19  to convince the Court that this complaint is sufficient

20  under the applicable law and Your Honor disagreed, the case

21  would be terminated.

22          THE COURT:  Yes.

23          MR. CERA:  Well, then we want to file another

24  complaint, Your Honor.

25          THE COURT:  All right.  30 days?