# EXHIBIT B

**ACC Section 10,700**

*Statement of Position 97-2 Software Revenue Recognition*

October 27, 1997

### NOTE

Statements of Position (SOPs) on accounting issues present the conclusions of at least two-thirds of the Accounting Standards Executive Committee, which is the senior technical body of the Institute authorized to speak for the Institute in the areas of financial accounting and reporting. *Statement on Auditing Standards No. 69, The Meaning of* Present Fairly in Conformity With Generally Accepted Accounting Principles, identifies AICPA SOPs that have been cleared by the Financial Accounting Standards Board as sources of established accounting principles in category *b* of the hierarchy of generally accepted accounting principles that it establishes. AICPA members should consider the accounting principles in this SOP if a different accounting treatment of a transaction or event is not specified by a pronouncement covered by *Rule 203* of the AICPA Code of Professional Conduct. In such circumstances, the accounting treatment specified by the SOP should be used, or the member should be prepared to justify a conclusion that another treatment better presents the substance of the transaction in the circumstances.

An effective date provision of this SOP has been deferred by *SOP 98-4, Deferral of the Effective Date of a Provision of SOP 97-2*, Software Revenue Recognition. This SOP is effective March 31, 1998. If an enterprise had applied *SOP 97-2* in an earlier period for financial statements or information already issued prior to the promulgation of this SOP, amounts reported in those financial statements or as part of that information may be restated to reflect the deferral of the effective date of the second sentence of *paragraphs 10, 37, 41,* and *57* of SOP 97-2 and the related examples noted in *paragraph .03* of this SOP.

SOP 97-2 is amended by *SOP 98-9, Modification of SOP 97-2,* Software Revenue Recognition, With Respect to Certain Transactions. The provisions of this SOP that extend the deferral of the application of certain passages of *SOP 97-2* are effective December 15, 1998. All other provisions of this SOP are effective for transactions entered into in fiscal years beginning after March 15, 1999. Earlier adoption is permitted as of the beginning of fiscal years or interior periods for which financial statements or information has not been issued. Retroactive application of the provisions of this SOP is prohibited.

### Introduction

.01    Statement of Position (SOP) 91-1, *Software Revenue Recognition*, was issued in 1991 to provide guidance on applying generally accepted accounting principles to software transactions and to narrow the range of revenue recognition practices that were in use before its issuance. Since the issuance of SOP 91-1, practice issues have been identified that the AICPA's Accounting Standards Executive Committee (AcSEC) believes are not addressed adequately in

SOP 91-1. In addition, AcSEC believes some of the guidance in SOP 91-1 should be reconsidered. This SOP supersedes SOP 91-1.

**Scope**

.02  This SOP provides guidance on when revenue should be recognized and in what amounts for **licensing**, selling, leasing, or otherwise marketing computer software. [fn 1] It should be applied to those activities by all entities that earn such revenue. It does not apply, however, to revenue earned on products or services containing software that is incidental [fn 2] to the products or services as a whole.

.03  In connection with the licensing of an existing product, a vendor might offer a small discount (for example, a coupon or other form of offer for five percent off) on additional licenses of the licensed product or other products that exist at the time of the offer but are not part of the arrangement. Such marketing and promotional activities are not unique to software and are not included in the scope of this SOP. [fn 3]

**Relationship to Other Pronouncements**

.04  If a lease of software includes property, plant, or equipment, the revenue attributable to the property, plant, or equipment should be accounted for in accordance with Financial Accounting Standards Board (FASB) Statement of Financial Accounting Standards No. 13, *Accounting for Leases*, and any revenue attributable to the software, including **postcontract customer support (PCS)**, should be accounted for separately in conformity with the guidance set forth in this SOP. However, in conformity with paragraph .02, if the property, plant, or equipment contains software that is incidental to the property, plant, or equipment as a whole, the software should not be accounted for separately.

.05  A number of the requirements of this SOP are similar to or overlap those in certain pronouncements of the Accounting Principles Board (APB) or the FASB, such as FASB Statement No. 48, *Revenue Recognition When Right of Return Exists*. This SOP does not alter the requirements of any APB Opinion or FASB pronouncement.

**Conclusions**

.06  The following conclusions should be read in conjunction with the *Basis for Conclusions* section, beginning with paragraph .93 of this SOP, and the examples in appendix A, *Examples of the Application of Certain Provisions of this SOP* [paragraph .146].

**Basic Principles**

.07  Software arrangements range from those that provide a license for a single software product to those that, in addition to the **delivery** of software or a software system, require significant production, modification, or customization of software. If an arrangement to deliver software or a software system, either alone or together with other products or services, requires significant production, modification, or customization of software, the entire arrangement should be accounted for in conformity with Accounting Research Bulletin (ARB) No. 45, *Long-Term Construction-Type Contracts*, using the relevant guidance herein, and in SOP 81-1, *Accounting for Performance of Construction-Type and Certain Production-Type Contracts* [section 10,330]. [fn 4]

.08  If the arrangement does not require significant production, modification, or customization of software, revenue should be recognized when all of the following criteria are met.

- Persuasive evidence of an arrangement exists.

- Delivery has occurred.

- The vendor's fee is fixed or determinable.

- Collectibility is probable. [fn.5]

**.09**   Software arrangements may provide licenses for multiple software deliverables (for example, software products, **upgrades/enhancements**, PCS, or services), which are termed multiple *elements*. A number of the elements may be described in the arrangement as being deliverable only on a **when-and-if-available** basis. When-and-if-available deliverables should be considered in determining whether an arrangement includes multiple elements. Accordingly, the requirements of this SOP with respect to arrangements that consist of multiple elements should be applied to all additional products and services specified in the arrangement, including those described as being deliverable only on a when-and-if-available basis.

**.10**   If an arrangement includes multiple elements, the fee should be allocated to the various elements based on vendor-specific objective evidence of fair value, regardless of any separate prices stated within the contract for each element. Vendor-specific objective evidence of fair value is limited to the following:

- The price charged when the same element is sold separately

- For an element not yet being sold separately, the price established by management having the relevant authority; it must be probable that the price, once established, will not change before the separate introduction of the element into the marketplace

The amount allocated to undelivered elements is not subject to later adjustment. [fn.6] However, if it becomes probable that the amount allocated to an undelivered element will result in a loss on that element of the arrangement, the loss should be recognized pursuant to FASB Statement No. 5, *Accounting for Contingencies*. When a vendor's pricing is based on multiple factors such as the number of products and the number of users, the amount allocated to the same element when sold separately must consider all the factors of the vendor's pricing structure.

**.11**   If a discount is offered in a multiple-element arrangement, a proportionate amount of that discount should be applied to each element included in the arrangement based on each element's fair value without regard to the discount. However, as discussed in paragraph .37, no portion of the discount should be allocated to any upgrade rights. Moreover, to the extent that a discount exists, the residual method described in paragraph .12 attributes that discount entirely to the delivered elements. [As amended, effective for transactions entered into in fiscal years beginning after March 15, 1999, by Statement of Position 98-9.]

**.12**   If sufficient vendor-specific objective evidence does not exist for the allocation of revenue to the various elements of the arrangement, all revenue from the arrangement should be deferred until the earlier of the point at which (*a*) such sufficient vendor-specific objective evidence does exist or (*b*) all elements of the arrangement have been delivered. The following exceptions to this guidance are provided.

- If the only undelivered element is PCS, the entire fee should be recognized ratably (see paragraphs .56 through .62).

- If the only undelivered element is services that do not involve significant production, modification, or customization of software (for example, training or installation), the entire fee should be recognized over the period during which the services are expected to be performed (see paragraphs .63 through .71).

- If the arrangement is in substance a subscription, the entire fee should be recognized ratably (see paragraphs .48 and .49).

- If the fee is based on the number of copies, the arrangement should be accounted for in conformity with paragraphs .43 through .47.

- There may be instances in which there is vendor-specific objective evidence of the fair values of *all* undelivered elements in an arrangement but vendor-specific objective evidence of fair value does not exist for one or more of the delivered elements in the arrangement. In such instances, the fee should be recognized using the residual method, provided that (a) all other applicable revenue recognition criteria in this SOP are met and (b) the fair value of all of the undelivered elements is less than the arrangement fee. Under the residual method, the arrangement fee is recognized as follows: (a) the total fair value of the undelivered elements, as indicated by vendor-specific objective evidence, is deferred and (b) the difference between the total arrangement fee and the amount deferred for the undelivered elements is recognized as revenue related to the delivered elements.

[As amended, effective for transactions entered into in fiscal years beginning after March 15, 1999, by Statement of Position 98-9.]

**.13**  The portion of the fee allocated to an element should be recognized as revenue when the criteria in paragraph .08 of this SOP are met with respect to the element. In applying those criteria, the delivery of an element is considered not to have occurred if there are undelivered elements that are essential to the functionality of the delivered element, because the **customer** would not have the full use of the delivered element.

**.14**  No portion of the fee (including amounts otherwise allocated to delivered elements) meets the criterion of collectibility if the portion of the fee allocable to delivered elements is subject to forfeiture, refund, or other concession if any of the undelivered elements are not delivered. In order for the revenue related to an arrangement to be considered not subject to forfeiture, refund, or other concession, management must intend not to provide refunds or concessions that are not required under the provisions of the arrangement. All available evidence should be considered to determine whether the evidence persuasively indicates that the revenue is not subject to forfeiture, refund, or other concession. Although no single item of evidence may be persuasive, the following additional items should be considered:

- 
    Acknowledgment in the arrangement of products not currently available or not to be delivered currently

- Separate prices stipulated in the arrangement for each deliverable element

- Default and damage provisions as defined in the arrangement

- Enforceable payment obligations and due dates for the delivered elements that are not dependent on the delivery of the future deliverable elements, coupled with the intent of

the vendor to enforce rights of payment

- Installation and use of the delivered software

- Support services, such as telephone support, related to the delivered software being provided currently by the vendor

Regardless of the preceding, the vendor's historical pattern of making refunds or other concessions that were not required under the original provisions (contractual or other) of other arrangements should be considered more persuasive than terms included in the arrangement that indicate that no concessions are required.

**Evidence of an Arrangement**

**.15**  Practice varies with respect to the use of written contracts. Although a number of sectors of the industry rely upon signed contracts to document arrangements, other sectors of the industry that license software (notably the packaged software sector) do not.

**.16**  If the vendor operates in a manner that does not rely on signed contracts to document the elements and obligations of an arrangement, the vendor should have other forms of evidence to document the transaction (for example, a purchase order from a third party or on-line authorization). If the vendor has a customary business practice of utilizing written contracts, evidence of the arrangement is provided only by a contract signed by both parties.

**.17**  Even if all other requirements set forth in this SOP for the recognition of revenue are met (including delivery), revenue should not be recognized on any element of the arrangement unless persuasive evidence of an arrangement exists.

**Delivery**

**.18**  The second criterion in paragraph .08 for revenue recognition is delivery. The principle of not recognizing revenue before delivery applies whether the customer is a **user** or a **reseller.** Except for arrangements in which the fee is a function of the number of copies, delivery is considered to have occurred upon the transfer of the product master or, if the product master is not to be delivered, upon the transfer of the first copy. For software that is delivered electronically, the delivery criterion of paragraph .08 is considered to have been met when the customer either (a) takes possession of the software via a download (that is, when the customer takes possession of the electronic data on its hardware), or (b) has been provided with access codes that allow the customer to take immediate possession of the software on its hardware pursuant to an agreement or purchase order for the software. In such cases, revenue should be recognized if the other criteria of paragraph .08 have been satisfied.

**.19**  Paragraphs .20 through .25 provide guidance on determining whether delivery is considered to have occurred in certain kinds of software transactions.

**Customer Acceptance**

**.20**  After delivery, if uncertainty exists about customer acceptance of the software, license revenue should not be recognized until acceptance occurs.

**Determining Delivery-Multiple Copies of Software Products Versus Multiple Licenses**

**.21**  Arrangements to use multiple copies of a software product under **site licenses** with users

and to market multiple copies of a software product under similar arrangements with resellers should be distinguished from arrangements to use or market multiple single licenses of the same software.

- In the former kind of arrangement, duplication is incidental to the arrangement and the delivery criterion is met upon the delivery of the first copy or product master. The vendor may be obligated to furnish up to a specified number of copies of the software, but only if the copies are requested by the user. The licensing fee is payable even if no additional copies are requested by the user or reseller. If the other criteria in this SOP for revenue recognition are met, revenue should be recognized upon delivery of the first copy or product master. The estimated costs of duplication should be accrued at that time.

- In the latter kind of arrangement, the licensing fee is a function of the number of copies delivered to, made by, or deployed by the user or reseller. Delivery occurs and revenue should be recognized as the copies are made by the user or sold by the reseller if the other criteria in this SOP for revenue recognition are met.

**Delivery Other Than to the Customer**

**.22**  Delivery should not be considered complete unless the destination to which the software is shipped is the customer's place of business or another site specified by the customer. In addition, if a customer specifies an intermediate site but a substantial portion of the fee is not payable until the delivery by the vendor to another site specified by the customer, revenue should not be recognized until the delivery is made to that other site.

**Delivery Agents**

**.23**  Vendors may engage agents, often referred to as fulfillment houses, to either duplicate and deliver or only deliver software products to customers. Revenue from transactions involving delivery agents should be recognized when the software is delivered to the customer. Transferring the fulfillment obligation to an agent of the vendor does not relieve the vendor of the responsibility for delivery. This is the case even if the vendor has no direct involvement in the actual delivery of the software product to the customer.

**Authorization Codes**

**.24**  In a number of software arrangements, vendors use **authorization codes**, commonly referred to as *keys*, to permit customer access to software that otherwise would be restricted. Keys are used in a variety of ways and may serve different purposes. For example, permanent keys may be used to control access to the software, or additional permanent keys may be necessary for the duplication of the software. Temporary keys may be used for the same purposes and also may be used to enhance the vendor's ability to collect payment or to control the use of software for demonstration purposes.

**.25**  In software arrangements involving the use of keys, delivery of a key is not necessarily required to satisfy the vendor's delivery responsibility. The software vendor should recognize revenue on delivery of the software if all other requirements for revenue recognition under this SOP and all of the following conditions are met.

- The customer has licensed the software and the vendor has delivered a version of the software that is fully functional except for the permanent key or the additional keys (if additional keys are used to control the reproduction of the software).

- The customer's obligation to pay for the software and the terms of payment, including the timing of payment, are not contingent on delivery of the permanent key or additional keys (if additional keys are used to control the reproduction of the software).

- The vendor will enforce and does not have a history of failing to enforce its right to collect payment under the terms of the original arrangement.

In addition, if a temporary key is used to enhance the vendor's ability to collect payment, the delivery of additional keys, whether temporary or permanent, is not required to satisfy the vendor's delivery responsibility if (a) the above conditions are met and (b) the use of a temporary key in such circumstances is a customary practice of the vendor. Selective issuance of temporary keys might indicate that collectibility is not probable or that the software is being used only for demonstration purposes.

### Fixed or Determinable Fees and Collectibility

**.26**  The other prerequisites in underline paragraph .08 for revenue recognition are that (a) the vendor's fee is fixed or determinable and (b) collectibility is probable. A software licensing fee is not fixed or determinable if the amount is based on the number of units distributed or copied, or the expected number of users of the product. Revenue recognition for variable-pricing arrangements is discussed in paragraphs .43 through .47 of this SOP. Additionally, if an arrangement includes (a) rights of return or (b) rights to refunds without return of the software, FASB Statement No. 48 requires that conditions that must be met in order for the vendor to recognize revenue include that the amount of future returns or refunds can be reasonably estimated.

### Factors That Affect the Determination of Whether a Fee Is Fixed or Determinable and Collectible

**.27**  A number of arrangements that call for fixed or determinable payments, including minimum royalties or license fees from resellers, specify a payment period that is short in relation to the period during which the customer is expected to use or market the related products. Other arrangements have payment terms that extend over a substantial portion of the period during which the customer is expected to use or market the related products. Because a product's continuing value may be reduced due to the subsequent introduction of enhanced products by the vendor or its competitors, the possibility that the vendor still may provide a refund or concession to a creditworthy customer to liquidate outstanding amounts due under the original terms of the arrangement increases as payment terms become longer.

**.28**  For the reason cited in paragraph .27 *any* extended payment terms in a software licensing arrangement may indicate that the fee is not fixed or determinable. Further, if payment of a significant portion of the software licensing fee is not due until after expiration of the license or more than twelve months after delivery, the licensing fee should be *presumed* not to be fixed or determinable. However, this presumption may be overcome by evidence that the vendor has a standard business practice of using long-term or installment contracts and a history of successfully collecting under the original payment terms without making concessions. In such a situation, a vendor should consider such fees fixed or determinable and should recognize revenue upon delivery of the software, provided all other conditions for revenue recognition in this SOP have been satisfied.

**.29**  If it cannot be concluded that a fee is fixed or determinable at the outset of an arrangement, revenue should be recognized as payments from customers become due (assuming all other conditions for revenue recognition in this SOP have been satisfied).

**.30**  For reseller arrangements, the following factors also should be considered in evaluating

whether the fixed or determinable fee and collectibility criteria for revenue recognition are met.

- Business practices, the reseller's operating history, competitive pressures, informal communications, or other factors indicate that payment is substantially contingent on the reseller's success in distributing individual units of the product. [fn 7]

- Resellers are new, undercapitalized, or in financial difficulty and may not demonstrate an ability to honor a commitment to make fixed or determinable payments until they collect cash from their customers.

- Uncertainties about the potential number of copies to be sold by the reseller may indicate that the amount of future returns cannot be reasonably estimated on delivery; examples of such factors include the newness of the product or marketing channel, competitive products, or dependence on the market potential of another product offered (or anticipated to be offered) by the reseller.

- Distribution arrangements with resellers require the vendor to rebate or credit a portion of the original fee if the vendor subsequently reduces its price for a product and the reseller still has rights with respect to that product (sometimes referred to as price protection). If a vendor is unable to reasonably estimate future price changes in light of competitive conditions, or if significant uncertainties exist about the vendor's ability to maintain its price, the arrangement fee is not fixed or determinable. In such circumstances, revenue from the arrangement should be deferred until the vendor is able to reasonably estimate the effects of future price changes and the other conditions of this SOP have been satisfied.

.31 *Customer Cancellation Privileges.* Fees from licenses cancelable by customers are neither fixed nor determinable until the cancellation privileges lapse. Fees from licenses with cancellation privileges expiring ratably over the license period are considered to become determinable ratably over the license period as the cancellation privileges lapse. In applying the provisions of this paragraph, obligations related to warranties for defective software, including warranties that are routine, short-term, and relatively minor, should be accounted for in conformity with <u>FASB Statement No. 5</u>. Additionally, short-term rights of return, such as thirty-day money-back guarantees, should not be considered cancellation privileges; the related returns should be accounted for in conformity with <u>FASB Statement No. 48</u>.

.32 *Fiscal Funding Clauses.* Fiscal funding clauses sometimes are found in software license arrangements in which the licensees are governmental units. Such clauses generally provide that the license is cancelable if the legislature or funding authority does not appropriate the funds necessary for the governmental unit to fulfill its obligations under the licensing arrangement.

.33 Consistent with <u>FASB Technical Bulletin No. 79-10</u>, *Fiscal Funding Clauses in Lease Agreements*, a software licensing arrangement with a governmental unit containing a fiscal funding clause should be evaluated to determine whether the uncertainty of a possible license arrangement cancellation is a remote contingency. [fn 8] If the likelihood is assessed as remote, the software licensing arrangement should be considered noncancelable. Such an assessment should include the factors discussed in <u>paragraphs .27</u> and <u>.28</u> of this SOP. If the likelihood is assessed as other than remote, the license should be considered cancelable, thus precluding revenue recognition. A fiscal funding clause with a customer other than a governmental unit that is required to include such a clause creates a contingency that precludes revenue recognition until the requirements of the clause and all other provisions of this SOP have been satisfied.

**Multiple-Element Arrangements**

.34  As discussed in paragraph .09, multiple-element arrangements to which contract accounting does not apply may include customer rights to any combination of additional software deliverables, services, or PCS. If contract accounting does not apply, individual elements in such arrangements should be accounted for in accordance with paragraphs .08 through .14. Paragraphs .35 through .73 provide guidance on the application of those paragraphs to multiple-element arrangements.

### Additional Software Deliverables and Rights to Exchange or Return Software

.35  As part of a multiple-element arrangement, a vendor may agree to deliver software currently and to deliver additional software in the future. The additional deliverables may include upgrades/enhancements or additional software products. Additionally, a vendor may provide the customer with the right to exchange or return software, including the right to transfer software from one hardware **platform** or operating system to one or more other platforms or operating systems (a **platform-transfer right**).

.36 *Upgrades/enhancements.*   As part of a multiple-element arrangement, a vendor may agree to deliver software currently and provide the customer with an **upgrade right** for a specified upgrade/enhancement. The upgrade right may be evidenced by a specific agreement, commitment, or the vendor's established practice. (Rights to receive *unspecified* upgrades/enhancements on a when-and-if-available basis are PCS, as it has been redefined in this SOP.) The upgrade right should be accounted for as a separate element in accordance with paragraphs .08 through .14. Guidance on the application of those paragraphs to multiple-element software arrangements that include upgrade rights is given in paragraphs .37 and .38.

.37  If a multiple-element arrangement includes an upgrade right, the fee should be allocated between the elements based on vendor-specific objective evidence of fair value. The fee allocated to the upgrade right is the price for the upgrade/enhancement that would be charged to existing users of the software product being updated. If the upgrade right is included in a multiple-element arrangement on which a discount has been offered (see paragraph .11), no portion of the discount should be allocated to the upgrade right. If sufficient vendor-specific evidence exists to reasonably estimate the percentage of customers that are not expected to exercise the upgrade right, the fee allocated to the upgrade right should be reduced to reflect that percentage. This estimated percentage should be reviewed periodically. The effect of any change in that percentage should be accounted for as a change in accounting estimate.

.38  The amount of the fee allocated to the upgrade right should be recognized as revenue when the conditions in paragraphs .08 through .14 are met. If sufficient vendor-specific objective evidence does not exist for the allocation of the fee to the upgrade right, revenue from the arrangement should be deferred until the earlier of the point at which (*a*) such sufficient vendor-specific objective evidence does exist or (*b*) all elements of the arrangement have been delivered.

.39 *Additional Software Products.*   As part of a multiple-element arrangement, a vendor may agree to deliver software currently and deliver specified additional software products in the future. The rights to these additional products may be included either in the terms of a PCS arrangement or in a separate agreement. Even if the rights to the additional software products are included in a PCS arrangement, the revenue allocable to the additional software products should be accounted for separately from the PCS arrangement as an element of a multiple-element arrangement.

.40  Multiple-element arrangements that include rights to undelivered additional software products that are not subscriptions (see paragraphs .48 and .49) should be accounted for in accordance with paragraphs .08 through .14 of this SOP. Guidance on the application of those paragraphs to such arrangements is provided in paragraphs .41 through .47 below.

**.41**   The fee from the arrangement should be allocated among the products based on vendor-specific objective evidence of fair value. The allocation should be based on the relative sales prices (determined pursuant to <u>paragraphs .10</u> and <u>.11</u> of this SOP) of the products. If vendor-specific objective evidence of fair value does not exist, <u>paragraph .12</u> of this SOP requires that all revenue from the arrangement be deferred until the earlier of the point at which (a) such sufficient vendor-specific objective evidence does exist or (b) all elements of the arrangement have been delivered. The fee allocated to the additional software products should not be reduced by the percentage of any customers that are not expected to exercise the right to receive additional software products.

**.42**   If the arrangement is based on a price per product (not a price per copy), the portion of the fee allocated to a product should be recognized as revenue when the product is delivered, assuming all other provisions of <u>paragraphs .08 through .14</u> of this SOP are met.

**.43**   Some **fixed fee** license or reseller arrangements provide customers with the right to reproduce or obtain copies at a specified price per copy (rather than per product) of two or more software products up to the total amount of the fixed fee. A number of the products covered by the arrangement may not be deliverable or specified at the inception of the arrangement. Although the price per copy is fixed at the inception of the arrangement, an allocation of the arrangement fee to the individual products generally cannot be made, because the total revenue allocable to each software product is unknown and depends on the choices to be made by the customer and, sometimes, future development activity while the arrangement is in effect. Nevertheless, as discussed in <u>paragraph .46</u> of this SOP, in certain situations, revenue can be allocated to the products that are undeliverable or not specified at the inception of the arrangement.

**.44**   In arrangements in which no allocation can be made, until the first copy or product master of each product covered by the arrangement has been delivered to the customer assuming the provisions of <u>paragraphs .08 through .14</u> of this SOP are met, revenue should be recognized as copies of delivered products either (a) are reproduced by the customer or (b) are furnished to the customer if the vendor is duplicating the software. Once the vendor has delivered the product master or the first copy of all products covered by the arrangement, any licensing fees not previously recognized should be recognized. (At that point, only duplication of the software is required to satisfy the vendor's delivery requirement. As discussed in <u>paragraph .21</u> of this SOP, duplication of the software is incidental to the arrangement, and delivery is deemed to have occurred upon delivery of the product master or first copy.) When the arrangement terminates, the vendor should recognize any licensing fees not previously recognized.

**.45**   The revenue from the kind of arrangements discussed in <u>paragraph .44</u> should not be recognized fully until at least one of the following conditions is met.

- Delivery is complete for all products covered by the arrangement.

- The aggregate revenue attributable to all copies of the software products delivered is equal to the fixed fee, provided that the vendor is not obligated to deliver additional software products under the arrangement.

**.46**   Nevertheless, certain arrangements that include products that are not deliverable at the inception impose a maximum number of copies of the undeliverable product(s) to which the customer is entitled. In such arrangements, a portion of the arrangement fee should be allocated to the undeliverable product(s). This allocation should be made assuming that the customer will elect to receive the maximum number of copies of the undeliverable product(s).

**.47**   The revenue allocated to the delivered products should be recognized when the product

master or first copy is delivered. If, during the term of the arrangement, the customer reproduces or receives enough copies of these delivered products so that revenue allocable to the delivered products exceeds the revenue previously recognized, such additional revenue should be recognized as the copies are reproduced or delivered. The revenue allocated to the undeliverable product(s) should be reduced by a corresponding amount.

**.48**  As part of a multiple-element arrangement with a user, a vendor may agree to deliver software currently and to deliver *unspecified* additional software products in the future (including unspecified platform transfer rights that do not qualify for exchange accounting as described in paragraphs .50 through .55). For example, the vendor may agree to deliver all new products to be introduced in a family of products over the next two years. These arrangements are similar to arrangements that include PCS in that future deliverables are unspecified. Nevertheless, they are distinguished from arrangements that include PCS because the future deliverables are products, not unspecified upgrades/enhancements.

**.49**  The software elements of the kinds of arrangements discussed in paragraph .48 should be accounted for as subscriptions. No allocation of revenue should be made among any of the software products, and all software product-related revenue from the arrangement should be recognized ratably over the term of the arrangement beginning with delivery of the first product. If the term of the arrangement is not stated, the revenue should be recognized ratably over the estimated economic life of the products covered by the arrangement, beginning with delivery of the first product. An intent on the part of the vendor not to develop new products during the term of the arrangement does not relieve the vendor of the requirement to recognize revenue ratably over the term of the arrangement, beginning with the delivery of the first product.

**.50***Rights to Exchange or Return Software.*    As part of an arrangement, a software vendor may provide the customer with the right to return software or to exchange software for products with no more than minimal differences in price, functionality, or features. The accounting for returns is significantly different from the accounting for exchanges. Although it is sometimes difficult to determine whether a transaction is a return or exchange of software, the fact that the software is not returned physically does not preclude accounting for the transaction as either an exchange or as a return. If the software is not returned physically and the customer contractually is entitled to continue to use the previously delivered software, the arrangement should be accounted for in the manner prescribed in the section herein entitled "Additional Software Products" (see paragraphs .39 through .49). If the software is not returned physically and the customer contractually is not entitled to continue to use the previously delivered software, the transaction should be accounted for either as a return or as an exchange, as discussed in the following paragraphs.

**.51**  If the rights discussed in the previous paragraph are offered to users (but not resellers), the exchanges are analogous to "exchanges by ultimate customers of one item for another of the same kind, quality, and price . . . [that] are not considered returns" described in footnote 3 of FASB Statement No. 48. Conversely, exchanges by users of software products for dissimilar software products or for similar software products with more than minimal differences in price, functionality, or features are considered returns, and revenue related to arrangements that provide users with the rights to make such exchanges should be accounted for in conformity with FASB Statement No. 48. If the other product(s) is not available at the time the initial product is delivered, there should be persuasive evidence that demonstrates there will be no more than minimal differences in price, features, or functionality among the products in order for the right to qualify as a right to exchange. Additionally, if the vendor expects to incur a significant amount of development costs related to the other product, the other product should be considered to have more than a minimal difference in functionality.

**.52**  As part of a multiple-element arrangement, a vendor may grant a user a platform- transfer right. Depending on the circumstances, the exercise of a platform-transfer right may represent an exchange, a return, or additional software products for accounting purposes. If the customer

contractually is entitled to continue to use the software that was delivered originally (in addition to the software that is to be delivered for the new platform), the platform transfer right should be accounted for in the manner prescribed in the section herein entitled "Additional Software Products" (see paragraphs .39 through .49).

.53 If, as part of a multiple-element arrangement, a vendor offers a user (not a reseller) a platform-transfer right, and the provisions of paragraphs .08 through .14 of this SOP are met, the revenue from the software license should be recognized upon the initial delivery of the software, and the exercise of the platform-transfer right should be treated as an exchange, if the platform-transfer right –

- Is for the same product (see paragraph .54)

- Does not increase the number of copies or concurrent users of the software product available under the license arrangement.

.54 Products are considered to be the same product if there are no more than minimal differences among them in price, features, and functions, and if they are marketed as the same product, even though there may be differences arising from environmental variables such as operating systems, databases, user interfaces, and platform scales. Indicators of "marketed as the same product" include (a) the same product name (although version numbers may differ) and (b) a focus on the same features and functions.

.55 As part of their standard sales terms or as a matter of practice, vendors may grant resellers the rights to exchange unsold software for other software (including software that runs on a different hardware platform or operating system). Because the reseller is not the ultimate customer (see paragraph .51), such exchanges, including those referred to as stock balancing arrangements, should be accounted for as returns. Arrangements that grant rights to make such exchanges should be accounted for in conformity with FASB Statement No. 48, even if the vendors require the resellers to purchase additional software to exercise the exchange rights.

### Postcontract Customer Support

.56 Software arrangements may include the right to PCS. PCS includes the right to receive PCS services or *unspecified* upgrades/enhancements, or both, offered to users or resellers. A vendor may develop historical patterns of regularly providing all customers or certain kinds of customers with the services or unspecified upgrades/enhancements normally associated with PCS, or may anticipate doing so, even though there is no written contractual obligation or the stipulated PCS term commences at some date after delivery. In those situations, an implied PCS arrangement exists that commences upon product delivery. For purposes of applying the guidance in this SOP, PCS includes a vendor's expected performance based on such patterns, even if performance is entirely at the vendor's discretion and not pursuant to a formal agreement.

.57 If a multiple-element software arrangement includes explicit or implicit rights to PCS, the total fees from the arrangement should be allocated among the elements based on vendor-specific objective evidence of fair value, in conformity with paragraph .10. The fair value of the PCS should be determined by reference to the price the customer will be required to pay when it is sold separately (that is, the renewal rate). The portion of the fee allocated to PCS should be recognized as revenue ratably over the term of the PCS arrangement, because the PCS services are assumed to be provided ratably. However, revenue should be recognized over the period of the PCS arrangement in proportion to the amounts expected to be charged to expense for the PCS services rendered during the period if–

- Sufficient vendor-specific historical evidence exists demonstrating that costs to provide

PCS are incurred on other than a straight-line basis. In making this determination, the vendor should take into consideration allocated portions of cost accounted for as research and development (R&D) costs and the amortization of costs related to the upgrade-enhancement capitalized in conformity with <u>FASB Statement No. 86</u>, *Accounting for the Costs of Computer Software to Be Sold, Leased, or Otherwise Marketed.* Such costs should be considered as part of the costs to provide PCS.

- The vendor believes that it is probable that the costs incurred in performing under the current arrangement will follow a similar pattern.

Because the timing, frequency, and significance of unspecified upgrades/enhancements can vary considerably, the point at which unspecified upgrades/enhancements are expected to be delivered should not be used to support income recognition on other than a straight-line basis.

**.58** If sufficient vendor-specific objective evidence does not exist to allocate the fee to the separate elements and the only undelivered element is PCS, the entire arrangement fee should be recognized ratably over (a) the contractual PCS period (for those arrangements with explicit rights to PCS) or (b) the period during which PCS is expected to be provided (for those arrangements with implicit rights to PCS).

**.59** PCS revenue may be recognized together with the initial licensing fee on delivery of the software if all of the following conditions are met.

*a.* The PCS fee is included with the initial licensing fee.

*b.* The PCS included with the initial license is for one year or less.

*c.* The estimated cost of providing PCS during the arrangement is insignificant.

*d.* Unspecified upgrades/enhancements offered during PCS arrangements historically have been and are expected to continue to be minimal and infrequent.

If PCS revenue is recognized upon the delivery of the software, the vendor must accrue all estimated costs of providing the services, including upgrades/enhancements. Upgrades/enhancements are not developed solely for distribution to PCS customers; revenues are expected to be earned from providing the enhancements to other customers as well. Therefore, costs should be allocated between PCS arrangements and other licenses.

**.60** A determination that unspecified upgrades/enhancements offered during the PCS arrangement are expected to be minimal and infrequent should be evidenced by the patterns of minimal and infrequent unspecified upgrades/enhancements offered in previous PCS arrangements. A conclusion that unspecified upgrades/enhancements are expected to be minimal and infrequent should not be reached simply because unspecified upgrades/enhancements have been or are expected to be offered less frequently than on an annual basis. Regardless of the vendor's history of offering unspecified upgrades/enhancements to initial licensees, PCS should be accounted for separately from the initial licensing fee if the vendor expects to offer upgrades/enhancements that are greater than minimal or more than infrequent to the users or resellers of the licensed software during the PCS arrangement.

**.61** *Postdelivery Telephone Support at No Additional Charge.*    Postdelivery telephone support provided to users by the vendor at no additional charge should be accounted for as PCS, in conformity with this SOP, regardless of whether the support is provided explicitly under the licensing arrangement. Although such telephone support may be offered or available for periods exceeding one year, if the vendor has established a history of providing substantially all the

telephone support within one year of the licensing or sale of the software, the PCS may be considered to have a term of one year or less in applying <u>paragraph .59</u>, item (b) of this SOP. Accordingly, revenue allocable to telephone support may be recognized together with the initial licensing fee on delivery of the software if all the conditions in <u>paragraph .59</u> of this SOP are met. This provision applies only to telephone support provided at no additional charge. If revenue allocable to telephone support is recognized together with the licensing fee on delivery, the vendor should accrue the estimated cost of providing that support.

**.62** *PCS Granted by Resellers.*    An arrangement in which a vendor grants a reseller the right to provide unspecified upgrades/enhancements to the reseller's customers is an implied PCS arrangement between the vendor and the reseller, even if the vendor does not provide direct telephone support to the reseller's customers. If sufficient vendor-specific objective evidence does not exist to allocate the fee to the software and the PCS, revenue from both the licensing arrangement and the PCS should be recognized ratably over the period during which PCS is expected to be provided.

### Services

**.63**   Certain arrangements include both software and service elements (other than PCS- related services). The services may include training, installation, or consulting. Consulting services often include implementation support, software design or development, or the customization or modification of the licensed software.

**.64**   If an arrangement includes such services, a determination must be made as to whether the service element can be accounted for separately as the services are performed. <u>Paragraph .65</u> discusses the criteria that must be considered in making such a determination. If the nature of the services is such that the service element does not qualify for separate accounting as a service, contract accounting must be applied to both the software and service elements included in the arrangement. <u>Paragraphs .74 through .91</u> of this SOP address the application of contract accounting to software arrangements.

**.65**   In order to account separately for the service element of an arrangement that includes both software and services, sufficient vendor-specific objective evidence of fair value must exist to permit allocation of the revenue to the various elements of the arrangement (as discussed in <u>paragraphs .10</u> and <u>.12</u>). Additionally, the services (a) must not be essential to the functionality of any other element of the transaction and (b) must be described in the contract such that the total price of the arrangement would be expected to vary as the result of the inclusion or exclusion of the services.

**.66**   If an arrangement includes services that meet the criteria of <u>paragraph .65</u> for separate accounting, revenue should be allocated among the service and software elements of the contract. This allocation should be based on vendor-specific objective evidence of fair values. (Fair values are not necessarily the same as any separate prices stated for the separate elements of the arrangement.) Revenue allocated to the service element should be recognized as the services are performed or, if no pattern of performance is discernible, on a straight-line basis over the period during which the services are performed.

**.67**   If vendor-specific objective evidence of the fair value does not exist to allocate a portion of the fee to the service element, and the only undelivered element is services that do not involve significant production, modification, or customization of the software (for example, training or installation), the entire arrangement fee should be recognized as the services are performed. If no pattern of performance is discernible, the entire arrangement fee should be recognized on a straight-line basis over the period during which the services are performed.

**.68** An important factor to consider in determining whether the services are essential to the functionality of any other element is whether the software included in the arrangement is considered **core** or **off-the-shelf software**. Core software is software that a vendor uses in creating other software. It is not sold as is because customers cannot use it unless it is customized to meet system objectives or customer specifications. Off-the-shelf software is software that is marketed as a stock item that can be used by customers with little or no customization.

**.69** Software should be considered off-the-shelf software if it can be added to an arrangement with insignificant changes in the underlying code and it could be used by the customer for the customer's purposes upon installation. Actual use by the customer and performance of other elements of the arrangement is not required to demonstrate that the customer could use the software off-the-shelf. If significant modifications or additions to the off-the-shelf software are necessary to meet the customer's purpose (for example, changing or making additions to the software, or because it would not be usable in its off-the-shelf form in the customer's environment), the software should be considered core software for purposes of that arrangement. If the software that is included in the arrangement is not considered to be off-the-shelf software, or if significant modifications or additions to the off-the-shelf software are necessary to meet the customer's functionality, no element of the arrangement would qualify for accounting as a service, and contract accounting should be applied to both the software and service elements of the arrangement.

**.70** Factors indicating that the service element is essential to the functionality of the other elements of the arrangement, and consequently should not be accounted for separately, include the following.

- 
    The software is not off-the-shelf software.

- The services include significant alterations to the features and functionality of the off-the-shelf software.

- Building complex interfaces is necessary for the vendor's software to be functional in the customer's environment.

- The timing of payments for the software is coincident with performance of the services.

- **Milestones** or customer-specific acceptance criteria affect the realizability of the software-license fee.

**.71** Judgment is required in determining whether the obligation to provide services in addition to the delivery of software should be accounted for separately as a service element. Services that qualify for accounting as a service element of a software arrangement always are stated separately and have one or more of the following characteristics.

- 
    The services are available from other vendors.

- The services do not carry a significant degree of risk or unique acceptance criteria.

- The software vendor is an experienced provider of the services.

- The vendor is providing primarily implementation services, such as implementation planning, loading of software, training of customer personnel, data conversion, building simple interfaces, running test data, and assisting in the development and documentation

of procedures.

- Customer personnel are dedicated to participate in the services being performed.

**.72** *Funded Software-Development Arrangements.*    Software-development arrangements that are fully or partially funded by a party other than the vendor that is developing the software typically provide the funding party with some or all of the following benefits:

-
    Royalties payable to the funding party based solely on future sales of the product by the software vendor (that is, reverse royalties)

- Discounts on future purchases by the funding party of products produced under the arrangement

- A nonexclusive sublicense to the funding party, at no additional charge, for the use of any product developed (a prepaid or paid-up nonexclusive sublicense)

**.73**  A funded software-development arrangement within the scope of <u>FASB Statement No. 68</u>, *Research and Development Arrangements*, should be accounted for in conformity with that Statement. If the technological feasibility of the computer software product pursuant to the provisions of <u>FASB Statement No. 86</u> has been established before the arrangement has been entered into, <u>FASB Statement No. 68</u> does not apply because the arrangement is not a research and development arrangement. Accounting for costs related to funded software-development arrangements is beyond the scope of this SOP. However, if capitalization of the software-development costs commences pursuant to <u>FASB Statement No. 86</u>, any income from the funding party under a funded software-development arrangement should be credited first to the amount of the development costs capitalized. If the income from the funding party exceeds the amount of development costs capitalized, the excess should be deferred and credited against future amounts that subsequently qualify for capitalization. Any deferred amount remaining after the project is completed (that is, when the software is available for general release to customers and capitalization has ceased) should be credited to income.

## Contract Accounting

**.74**  If an arrangement to deliver software or a software system, either alone or together with other products or services, requires significant production, modification, or customization of software, the service element does not meet the criteria for separate accounting set forth in <u>paragraph .65</u>. The entire arrangement should be accounted for in conformity with <u>ARB No. 45</u>, using the relevant guidance in <u>SOP 81-1</u> [<u>section 10,330</u>]. Nevertheless, transactions that normally are accounted for as product sales should not be accounted for as long-term contracts merely to avoid the delivery requirements normally associated with product sales for revenue recognition.

**.75**  In applying contract accounting, the vendor must use either the percentage-of- completion method or the completed-contract method. The determination of the appropriate method should be made according to the recommendations in paragraphs 21 through 33 of <u>SOP 81-1</u> [<u>section 10,330.21 through .33</u>].

**.76** *Segmentation.*    Software contracts may have discrete elements that meet the criteria for segmenting in paragraphs 39 through 42 of <u>SOP 81-1</u> [<u>section 10,330.39 through .42</u>]. If a contract is segmented, each segment is treated as a separate profit center. Progress-to-completion for each segment should be measured in conformity with <u>paragraphs .78 through .80</u> of this SOP.

.77  Some vendors of arrangements that include software combined with services or hardware or both do not identify the elements separately and do not sell them separately because of agreements with their suppliers. Other vendors who are not restricted by such agreements nevertheless bid or negotiate software and other products and services together. Arrangements that do not meet the segmentation criteria in paragraph 40 of <u>SOP 81-1</u> [<u>section 10,330.40</u>] are prohibited from being segmented, unless the vendor has a history of providing the software and other products and services to customers under separate arrangements and the arrangement meets the criteria in paragraph 41 of <u>SOP 81-1</u> [<u>section 10,330.41</u>].

.78 *Measuring Progress-to-Completion Under the Percentage-of-Completion Method.*  Paragraph 46 of <u>SOP 81-1</u> [<u>section 10,330.46</u>] describes the approaches to measuring progress on contracts (or segments thereof) under the percentage-of-completion method. Those approaches are grouped into input and output measures, as follows.

Input measures are made in terms of efforts devoted to a contract. They include the methods based on costs and on efforts expended. Output measures are made in terms of results achieved. They include methods based on units produced, units delivered, contract milestones, and value added. For contracts under which separate units of output are produced, progress can be measured on the basis of units of work completed.

For software contracts, an example of an input measure is labor hours; an example of an output measure is arrangement milestones, such as the completion of specific program modules.

.79  If, as discussed in <u>paragraph .76</u> of this SOP, a software contract includes a discrete element that meets the segmentation criteria of <u>SOP 81-1</u> [<u>section 10,330</u>], the method chosen to measure progress-to-completion on the element should be the method that best approximates progress-to-completion. Progress-to-completion on separate elements of the same software arrangement may be measured by different methods. The software vendor should choose measurement methods consistently, however, so that it uses similar methods to measure progress-to-completion on similar elements.

.80  Output measures, such as value-added or arrangement milestones, may be used to measure progress-to-completion on software arrangements, but many companies use input measures because they are established more easily. As noted in paragraph 47 of <u>SOP 81-1</u> [<u>section 10,330.47</u>], "The use of either type of measure requires the exercise of judgment and the careful tailoring of the measure to the circumstances." Further, paragraph 51 of <u>SOP 81-1</u> [<u>section 10,330.51</u>] states that

The acceptability of the results of input or output measures deemed to be appropriate to the circumstances should be periodically reviewed and confirmed by alternative measures that involve observation and inspection. For example, the results provided by the measure used to determine the extent of progress may be compared to the results of calculations based on physical observations by engineers, architects, or similarly qualified personnel. That type of review provides assurance somewhat similar to that provided for perpetual inventory records by periodic physical inventory counts.

.81 *Input Measures.*  Input measures of progress-to-completion on arrangements are made in terms of efforts devoted to the arrangement and, for software arrangements, include methods based on costs, such as cost-to-cost measures, and on efforts expended, such as labor hours or labor dollars. Progress-to-completion is measured indirectly, based on an established or assumed relationship between units of input and productivity. A major advantage of input measures is that inputs expended are easily verifiable. A major disadvantage is that their relationship to progress-to-completion may not hold if inefficiencies exist or if the incurrence of the input at a particular

point does not indicate progress-to-completion.

.82  Costs incurred should be included in measuring progress-to-completion only to the extent that they relate to contract performance. Items not specifically produced for the arrangement, such as hardware purchased from third parties or off-the-shelf software, should not be included in the measurement of progress-to-completion.

.83  Labor hours often are chosen as the basis for measuring progress-to-completion, because they closely approximate the output of labor-intensive processes and often are established more easily than output measures. Core software requires labor-intensive customization. Therefore, labor hours provide a good measure of progress-to-completion on elements of software arrangements that involve the customization of core software.

.84  If the measurement of progress-to-completion is based primarily on costs, the contribution to that progress of hardware and software that were produced specifically for the arrangement may be measurable and recognizable before delivery to the user's site. For example, efforts to install, configure, and customize the software may occur at the vendor's site. The costs of such activities are measurable and recognizable at the time the activities are performed.

.85 *Output Measures.*   Progress on arrangements that call for the production of identifiable units of output can be measured in terms of the value added or milestones reached. Although progress-to-completion based on output measures is measured directly from results achieved, thus providing a better approximation of progress than is provided by input measures, output measures may be somewhat unreliable because of the difficulties associated with establishing them.

.86  In order for the value added to be verifiable, the vendor must identify elements or subcomponents of those elements. If output measures are neither known nor reasonably estimable, they should not be used to measure progress-to-completion.

.87  If value added by off-the-shelf software is to be included in the measurement of progress-to-completion, such software cannot require more than minor modifications and must be usable by the customer for the customer's purpose in the customer's environment. If more than minor modifications or additions to the off-the-shelf software are necessary to meet the functionality required under the arrangement terms, either by changing or making additions to the software, or because the software would not be usable by the customer in its off-the-shelf form for the customer's purpose in the customer's environment, it should be accounted for as core software.

.88  Value added by the customization of core software should be included in the measurement of progress-to-completion of the customization and installation at the user's site. However, if the installation and customization processes are divided into separate output modules, the value of core software associated with the customization of a module should be included in the measurement of progress-to-completion when that module is completed.

.89  Contract milestones may be based on contractual project plans. Contractual provisions generally require the performance of specific tasks with the approval or acceptance by the customer; project plans generally schedule inspections in which the project's status is reviewed and approved by management. The completion of tasks that trigger such inspections are natural milestones because they are subject to relatively independent review as an intrinsic part of the project management process.

.90  Considerations other than progress-to-completion affect the amounts that become billable at particular times under many arrangements. Accordingly, although the achievement of contract milestones may cause arrangement revenues to become billable under the arrangement, the

amounts billable should be used to measure progress-to-completion only if such amounts indeed indicate such progress.

.91  The milestones that are selected to measure progress-to-completion should be part of the management review process. The percentage-of-completion designated for each milestone should be determined considering the experience of the vendor on similar projects.

**Effective Date and Transition**

.92  This SOP is effective for transactions entered into in fiscal years beginning after December 15, 1997. Earlier application is encouraged as of the beginning of fiscal years or interim periods for which financial statements or information have not been issued. Retroactive application of the provisions of this SOP is prohibited. [*Note:* An effective date provision of this SOP has been deferred by SOP 98-4. See section 10.740.]

> **The provisions of this Statement need not be applied to immaterial items.**

**Basis for Conclusions**

**Background**

.93  SOP 91-1 was issued in December 1991. AcSEC understands that certain provisions of that Statement are being applied inconsistently in practice and that various practice issues have arisen that were not addressed in SOP 91-1. As a result, AcSEC added a project to its agenda in March 1993 to interpret those provisions and provide additional guidance. The key issues identified at the outset of the project related to accounting for arrangements that provided for multiple deliverables (including PCS). The project began as an amendment to SOP 91-1. However, as deliberations progressed, AcSEC determined that it would be more appropriate to supersede SOP 91-1 to (a) amend the provisions in question and (b) incorporate AcSEC's conclusions on practice issues that had not been addressed in SOP 91-1.

**Basic Principles**

.94  Transfers of rights to software by licenses rather than by outright sales protect vendors from the unauthorized duplication of their products. Nevertheless, the rights transferred under software licenses are substantially the same as those expected to be transferred in sales of other kinds of products. AcSEC believes the legal distinction between a license and a sale should not cause revenue recognition on software products to differ from revenue recognition on the sale of other kinds of products.

.95  Arrangements to deliver software or a software system, either alone or together with other products, may include services. AcSEC believes that if those services entail significant production, modification, or customization of the software, such software before those alterations (even if already delivered) is not the product that has been purchased by the customer. Instead, the product purchased by the customer is the software that will result from the alterations. Accordingly, AcSEC concluded that arrangements that include services that entail significant production, modification, or customization of software are construction-type or production-type contracts, and should be accounted for in conformity with ARB No. 45 and SOP 81-1 [10.330]. AcSEC concluded that if the services do not entail significant production, modification, or customization of software, the service element should be accounted for as a separate element.

**.96** AcSEC believes that revenue generally should not be recognized until the element has been delivered. The recognition of revenue from product sales on delivery is consistent with paragraphs 83(b) and 84 of FASB Concepts Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*. Paragraph 83(b) provides the following guidance for recognition of revenues.

Revenues are not recognized until earned. An entity's revenue-earning activities involve *delivering* or producing goods, rendering services, or other activities that constitute its ongoing major or central operations, and revenues are considered to have been earned when the entity has substantially accomplished what it must do to be entitled to the benefits represented by the revenues. [Footnote omitted][Emphasis added]

Paragraph 84 states that in recognizing revenues and gains

[t]he two conditions [for revenue recognition] (being realized or realizable and being earned) are usually met by the time the product or merchandise is delivered...to customers, and revenues...are commonly recognized at time of sale (usually meaning *delivery*). [Emphasis added]

**.97** SOP 91-1 did not address arrangements that included software that was deliverable only when-and-if-available. Implementation questions arose as to whether when-and-if-available terms created contingencies that could be disregarded in determining whether an arrangement consists of multiple elements. AcSEC believes that because the when-and-if-available deliverables are bargained for in arrangements, they are of value to the customer. Accordingly, AcSEC concluded that when-and-if-available deliverables should be considered in determining whether an arrangement consists of multiple elements. Thus, the requirements of this SOP with respect to arrangements that consist of multiple elements should be applied to all additional products and services specified in the arrangement, including those described as being deliverable only when-and-if-available.

**.98** In SOP 91-1, the accounting for vendor obligations remaining after delivery of the software was dependent upon whether the obligation was significant or insignificant. However, these determinations were not being made in a consistent manner, leading to a diversity in practice. AcSEC believes that all obligations should be accounted for and that revenue from an arrangement should be allocated to each element of the arrangement, based on vendor-specific objective evidence of the fair values of the elements. Further, AcSEC concluded that revenue related to a particular element should not be recognized until the revenue-recognition conditions in paragraphs .08 through .14 of this SOP are met, because the earnings process related to that particular element is not considered complete until that time.

**.99** In paragraph .10 of this SOP, AcSEC concluded that the revenue from an arrangement should be allocated to the separate elements based on vendor-specific objective evidence of fair value, regardless of any separate prices stated in the contract for each element. AcSEC believes that separate prices stated in a contract may not represent fair value and, accordingly, might result in an unreasonable allocation of revenue. AcSEC believes that basing the allocation on fair values is consistent with the accounting for commingled revenue. An example is the following discussion in paragraph 12 of FASB Statement No. 45, *Accounting for Franchise Fee Revenue*.

The franchise agreement ordinarily establishes a single initial franchise fee as consideration for the franchise rights and the initial services to be performed by the franchisor. Sometimes, however, the fee also may cover tangible property, such as signs, equipment, inventory, and land and building. In those circumstances, the portion of the fee applicable to the tangible assets shall be based on the fair value of the assets.

**.100**  AcSEC considered allowing the use of surrogate prices such as competitor prices for similar products or industry averages to determine fair value. However, AcSEC believes that inherent differences exist between elements offered by different vendors. These inherent differences led AcSEC to conclude that only vendor-specific evidence of fair value can be considered sufficiently objective to allow the allocation of the revenue to the various elements of the arrangement.

**.101**  AcSEC believes that the best evidence of the fair value of an element is the price charged if that element is sold separately. Still, an arrangement may include elements that are not yet being sold separately. As discussed in the previous paragraph, because of inherent differences between the elements offered by different vendors, AcSEC concluded that companies should not use surrogate prices, such as competitor prices for similar products or industry averages, as evidence of the fair value for an element. AcSEC believes, however, that if a price for the element has been established by management having the relevant authority, such a price represents evidence of the fair value for that element. To meet the criterion of objectivity, it must be probable that the established price will not change before the introduction of the element to the marketplace. Thus, the internally established prices should be factual and not estimates. For this reason, AcSEC concluded that the allocations may not be adjusted subsequently.

**.102**  AcSEC is aware that the pricing structure of certain arrangements is not limited to the prices charged for the separate elements. Pricing may be based on many different factors or combinations thereof. For example, certain arrangements are priced based on a combination of (a) the prices of products to be licensed and (b) the number of users that will be granted access to the licensed products. In some of these arrangements, the vendor requires a minimum number of users.

**.103**  The products contained in such arrangements are not available to the customer at the prices charged in the arrangement unless the customer also pays for the minimum number of users. Therefore, the prices contained in the arrangement do not represent the prices charged for the product when sold separately. AcSEC believes that it would be inappropriate to determine the fair values of the products (as discussed in paragraph .10) without giving consideration to the impact of the user-based portion of the fee. For this reason, AcSEC concluded in paragraph .10 that when a vendor's pricing is based on multiple factors such as the number of products and the number of users, the price charged for the same element when sold separately must consider all factors of the vendor's pricing structure.

**.104**  Often, multiple element arrangements are sold at a discount rather than at the sum of the list prices for each element. If the amounts deferred for undelivered elements were based on list prices, the amount of revenue recognized for delivered elements would be understated. Accordingly, AcSEC concluded that relative sales prices should be used in determining the amount of revenue to be allocated to the elements of an arrangement.

**.105**  AcSEC believes that if an undelivered element is essential to the functionality of a delivered element, the customer does not have full use of the delivered element. Consequently, AcSEC concluded that delivery is considered not to have occurred in such situations.

**.106**  AcSEC believes that the earnings process with respect to delivered products is not complete if fees allocated to those products are subject to forfeiture, refund, or other concession if the vendor does not fulfill its delivery responsibilities. AcSEC believes that the potential concessions indicate the customer would not have licensed the delivered products without also licensing the undelivered products. Accordingly, AcSEC concluded that in order to recognize revenue, persuasive evidence should exist that fees allocated to delivered products are *not* subject to forfeiture, refund, or other concession. In determining the persuasiveness of the evidence, AcSEC believes that a vendor's history of making concessions that were not required by the provisions of an arrangement is more persuasive than terms included in the arrangement

that indicate that no concessions are required.

**Delivery**

.**107**  In paragraph .18 of this SOP, AcSEC concluded that for software that is delivered electronically, the delivery criterion of paragraph .08 is deemed to have been met when the customer either (a) takes possession of the software via a download or (b) has been provided with access codes that allow the customer to take immediate possession of the software on its hardware pursuant to an agreement or purchase order for the software. AcSEC believes that the delivery criterion is met by use of access codes only when software is being delivered electronically.

.**108**  AcSEC believes that if the fee is not based on the number of copies to be delivered to or made or deployed by the customer, duplication of the software may be incidental to the arrangement. Paragraph .21 of this SOP describes circumstances (arrangements in which duplication is required only if additional copies are requested by the customer; arrangements in which the licensing fee is payable even if no additional copies are requested) that would lead to a conclusion that duplication is incidental to the arrangement. In other arrangements, vendors insist on duplicating the software to maintain quality control or to protect software transmitted by telecommunications. Others agree to duplicate the software as a matter of convenience to the customer.

.**109**  In arrangements in which duplication is considered incidental, AcSEC believes the vendor has fulfilled its delivery obligation as soon as the first copy or product master of the software has been delivered. Therefore, AcSEC concluded that in such instances, the vendor should not be precluded from recognizing revenue if the customer has not requested additional copies (particularly since the fee is payable regardless of whether such additional copies are requested by the customer). However, the estimated costs of duplicating the software should be accrued when the revenue is recognized.

**Fixed or Determinable Fees and Collectibility**

.**110**  In paragraphs .27 through .30, in the discussion of factors that affect the determination of whether a fee is fixed or determinable, AcSEC sought to clarify-but not change-similar provisions in SOP 91-1. In practice, some had interpreted those provisions to mean the following.

- Extended payment considerations could be overcome if customers were creditworthy.

- A fee could never be considered fixed or determinable if payment terms extended for more than twelve months after delivery.

.**111**  Others had interpreted these provisions to mean the following.

- If payment terms extended beyond customary terms but were twelve months or less, they were fixed or determinable.

- If payment terms exceeded twelve months, a vendor could recognize amounts due in the first twelve months as revenue at the time of the license. Additional revenue would be recognized based on the passage of time such that, at any point, any amounts due within one year would have been recognized as revenue (the *rolling twelve months* approach).

Paragraphs .112 through .114 of this SOP-
- Explain that the concern with extended payment terms is technological obsolescence and

similar factors, not customer creditworthiness.

- Describe circumstances in which the presumption that a fee is not fixed or determinable because of extended payment terms may be overcome.

- Confirm that any extended payment terms, even if for less than twelve months, must be assessed for their effects on the fixed or determinable aspects of the fee.

- Clarify that the rolling twelve months approach should not be used.

**.112**  AcSEC believes that, given the susceptibility of software to significant external factors (in particular, technological obsolescence), the likelihood of vendor refunds or concessions is greater in an arrangement with extended payment terms than in an arrangement without extended payment terms. This is true regardless of the creditworthiness of the customer. Because of this greater likelihood of refunds or concessions, AcSEC believes that *any* extended payment terms outside of a vendor's normal business practices may indicate that the fee is not fixed or determinable.

**.113**  In paragraph .28 of this SOP, AcSEC concluded that if payment of a significant portion of a licensing fee is not due until after the expiration of the license or more than twelve months after delivery, the fee should be *presumed* not to be fixed or determinable. This conclusion is based on AcSEC's belief that payment terms of such extended duration indicate that vendor refunds or concessions are more likely than not. AcSEC acknowledges that the one-year provision is arbitrary. However, AcSEC concluded that such a limitation is needed to provide greater comparability within the industry.

**.114**  In considering the "rolling twelve months" approach found in practice, AcSEC considered the guidance in Chapter 1A of ARB No. 43, *Restatement and Revision of Accounting Research Bulletins*, paragraph 1, which states that "Profit is deemed to be realized when a sale in the ordinary course of business is effected, unless the circumstances are such that the collection of the sale price is not reasonably assured." Accordingly, if a fee is considered fixed or determinable, it should be recognized as revenue when the sale is effected. If not, AcSEC believes that it should be recognized as revenue as payments from customers become due.

**.115**  In paragraph .08 of this SOP, AcSEC concluded that collectibility must be probable before revenue may be recognized. This conclusion is based on paragraph 84g of FASB Concepts Statement No. 5, which reads

If collectibility of assets received for product, services, or other assets is doubtful, revenues and gains may be recognized on the basis of cash received.

**.116**  AcSEC notes that requiring collectibility enhances the verifiability of the other revenue recognition criteria of paragraph .08, as discussed below.
-
  *Persuasive evidence of an arrangement*-AcSEC included this criterion in order to prevent revenue recognition on delivery of elements which, in fact, had not been ordered by a customer. AcSEC believes it is unlikely that a customer would pay for an element that had not been ordered. Therefore, AcSEC believes that requiring collectibility of a receivable related to the sale or license acts to verify that an arrangement does exist.

- *Delivery*-AcSEC believes that until delivery of an element has occurred (including delivery of all other items essential to the functionality of the element in question), the customer has not received full use of the element ordered. A customer that has not received full

use of the element ordered is likely to withhold payment or require a refund. Therefore, AcSEC believes that requiring collectibility of a receivable related to the sale or license acts to verify that the element has been delivered.

- *Fixed or determinable fee*—Much of AcSEC's concern related to fixed or determinable fees relates to arrangements with extended payment terms. In the software industry, requiring collectibility of a receivable prior to revenue recognition is important because of the frequency with which upgrades, enhancements, or new versions are released. As discussed elsewhere in this SOP, in certain instances it may be difficult to determine which version of an element induced a customer to enter into an arrangement. By requiring collectibility, AcSEC sought to prevent revenue recognition on sales or licenses of an element in situations in which circumstances may prompt the vendor to make subsequent adjustments to the price of a customer's purchase or license of a subsequent version of that element.

The likelihood that subsequent versions will be released is greater over the long term than over the short term. Therefore, concerns related to concessions increase in arrangements with extended payment terms. AcSEC notes that prohibiting revenue recognition in circumstances in which the price adjustments discussed above could occur serves to ensure that the portion of the fee allocated to each element is fixed or determinable. That is, if the price on a subsequent element cannot be adjusted for concessions, and the amount allocated to the initial element must be collected in full, neither amount is subject to adjustment. Therefore, AcSEC believes that requiring collectibility of a receivable related to the sale or license acts to verify that the fees are fixed or determinable.

## Multiple-Element Arrangements

### Additional Software Deliverables and Right to Exchange or Return Software

**.117** *Upgrades/enhancements.*    In paragraph .37 of this SOP, AcSEC concluded that the portion of the arrangement fee allocated to an upgrade right should be based on the price for the upgrade/enhancement that would be charged to existing users of the software product being updated. AcSEC believes that in arrangements that include upgrade rights, it may be difficult to determine which version of the software induced the customer to enter into the arrangement. For example, a customer licensing an existing version of the software may have done so to facilitate obtaining the updated version upon its introduction. To eliminate the possibility of allocating too much revenue to the delivered software (and thereby accelerating recognition), AcSEC concluded that the upgrade price (without the allocation of any discount on the arrangement) should be used to determine the amount to be deferred. The residual amount, if any, is considered to be the fair value of the original product.

**.118**  AcSEC believes that upgrades/enhancements do not necessarily contain improvements that all customers would desire. A customer may not exercise an upgrade right for various reasons, including any of the following.

*a.*  The benefits to be gained from the related upgrade/enhancement may not be important to that customer.

*b.*  The customer may not wish to learn new commands for what may be perceived by that customer as marginal improvements.

*c.*  The upgrade/enhancement would require more hardware functionality than the customer currently has.

Consequently, AcSEC concluded that amounts allocated to upgrade rights should be reduced to reflect the percentage of customers not expected to exercise the upgrade right, based on vendor-specific evidence.

.119 *Additional Software Products.*    As stated in paragraph .118, AcSEC believes that not all customers entitled to an upgrade/enhancement will exercise their upgrade rights. AcSEC believes, however, that it is probable that all customers will choose to receive additional software products. Consequently, AcSEC concluded that the fee allocated to additional software products should not be reduced by the percentage of any customers not expected to exercise the right to receive the additional products.

.120   Paragraphs .48 and .49 of this SOP discuss accounting for software arrangements in which vendors agree to deliver unspecified additional software products in the future. AcSEC concluded that such arrangements should be accounted for as subscriptions, and that the fee from the arrangement should be recognized ratably as revenue over the term of the arrangement. AcSEC notes that, because the vendor is obligated to deliver these items only if they become available during the term of the arrangement, in some situations, the delivery of additional products will not be required. AcSEC believes that because these items are unspecified, vendor-specific objective evidence of fair value of each unspecified additional product cannot exist. However, AcSEC believes that requiring the deferral of all revenue until the end of the arrangement is too onerous because of the following.

a.   All other revenue-recognition conditions in paragraphs .08 through .14 of this SOP have been met.

b.   The additional software products in fact may never be delivered.

However, AcSEC also was concerned that if revenue recognition were permitted to begin at the inception of the arrangement, revenue may be recognized too early, particularly in arrangements in which the first product was not delivered for some time after inception. Accordingly, AcSEC concluded that revenue from the arrangement should be recognized ratably over the term of the arrangement beginning with the delivery of the first product.

.121 *Rights to Exchange or Return Software.*    AcSEC believes that the rights to exchange or return software (including platform transfer rights) are subject to the provisions of FASB Statement No. 48, even if the software is not returned physically. Accordingly, AcSEC concluded that the accounting for exchanges of software for products with no more than minimal differences in price, functionality, and features by users qualify for exchange accounting because, as discussed in footnote 3 to FASB Statement No. 48, (*a*) users are "ultimate customers" and (*b*) exchanges of software with no more than minimal differences in price, functionality, and features represent "exchanges ... of one item for another of the same kind, quality, and price." AcSEC concluded that because resellers are not "ultimate customers," such exchanges by resellers should be considered returns.

.122   AcSEC reached similar conclusions related to certain platform-transfer rights. Additionally, AcSEC concluded that in situations in which customers are entitled to continue using the software that was originally delivered (in addition to the software that is to be delivered for the new platform), the customer has received additional software products, and the platform-transfer right should be accounted for as such. Other platform-transfer rights do not allow customers to continue to use the software on the original platform. Those platform-transfer rights should be accounted for as exchange rights or rights of return.

.123   It is possible that exchange rights may be granted for software that has not been developed for other platforms at the time revenue from the arrangement is recorded. AcSEC did not address