**EXHIBIT B-1**

the issue of whether such future development costs related to deliverable software, for which no further revenue will be received, should be capitalized pursuant to <u>FASB Statement No. 86</u> because it was believed that such costs would not be significant. Accordingly, AcSEC concluded that in the event of significant development costs, the vendor would not be likely to be able to demonstrate persuasively that the future software would have similar pricing, features, and functionality, and would be marketed as the same product (that is, qualify as an exchange for accounting purposes). In that event, the vendor has granted a return right that must be accounted for pursuant to <u>FASB Statement No. 48</u>.

### *Postcontract Customer Support*

**.124** An obligation to perform PCS is incurred at the inception of a PCS arrangement and is discharged by delivering unspecified upgrades/enhancements, performing services, or both over the period of the PCS arrangement. The obligation also may be discharged by the passage of time. AcSEC concluded that because estimating the timing of expenditures under a PCS arrangement usually is not practicable, revenue from PCS generally should be recognized on a straight-line basis over the period of the PCS arrangement. However, AcSEC also concluded that if there is sufficient vendor-specific historical evidence that costs to provide the support are incurred on other than a straight-line basis, the vendor should recognize revenue in proportion to the amounts expected to be charged to the PCS services rendered during the period.

**.125** SOP 91-1 required that revenue from both the PCS and the initial licensing fee be recognized ratably over the period of the PCS arrangement if no basis existed to derive separate prices for the PCS and the initial licensing fee. Diversity in practice arose as to what constituted a sufficient basis in arrangements involving vendors that did not have a basis to derive a separate price for the PCS. In this SOP, AcSEC has concluded that arrangement fees must be allocated to elements of the arrangement based on vendor-specific objective evidence of fair value. Because AcSEC determined that the evidence should be limited to that which is specific to the vendor, AcSEC believes that vendors that do not sell PCS separately have no basis on which to allocate fair values. AcSEC concluded that the total arrangement fee should be recognized in accordance with the provisions on recognition of PCS revenues. AcSEC also believes that, because a substantial portion of the arrangement fee typically is represented by the delivered software (rather than the performance of support), requiring the deferral of all revenues until the PCS obligation is fully satisfied would be too onerous. Accordingly, AcSEC concluded that, as discussed in the previous paragraph, the total arrangement fee generally should be recognized ratably over the period of the PCS arrangement.

### *Services*

**.126** Certain software arrangements include both a software element and an obligation to perform non-PCS services. SOP 91-1 provided guidance on the conditions that must be met in order to account for the obligation to provide services separately from the software component. AcSEC is aware that this guidance has been interpreted in varying ways, leading to a diversity in practice. During its deliberations on this SOP, AcSEC reached conclusions intended to clarify this issue, but did not redeliberate the other conclusions related to services that were included in SOP 91-1.

**.127** AcSEC believes the service element should be accounted for separately if the following occur.

a. All other revenue allocation provisions of this SOP are met.

b. The services are not essential to the functionality of any other element in the arrangement.

c. The service and product elements are stated separately such that the total price of the arrangement would vary as a result of inclusion or exclusion of the services.

Accordingly, AcSEC concluded that a service element need not be *priced* separately in an agreement in order to account for the services separately. AcSEC believes that this conclusion represents the original intent of SOP 91-1, and wishes to clarify the language at this time.

.128 Paragraphs .129 through .132 of this SOP are carried forward from SOP 91-1 with certain editorial changes.

.129 *Service Elements.*   Footnote 1 to paragraph 11 of SOP 81-1 [section 10,330.11, footnote 1] excludes service transactions from the scope of the SOP, as follows.

This statement is not intended to apply to "service transactions" as defined in the FASB's October 23, 1978 Invitation to Comment, *Accounting for Certain Service Transactions*. However, it applies to separate contracts to provide services essential to the construction or production of tangible property, such as design . . . [and] engineering . . . .

.130   The previously mentioned Invitation to Comment, which was based on an AICPA-proposed SOP, was issued in 1978. The FASB later included service transactions as part of its project to develop general concepts for revenue recognition and measurement. The resulting FASB Concepts Statement No. 5, however, does not address service transactions in detail. Nevertheless, some of the concepts on service transactions developed in the Invitation to Comment are useful in accounting for certain software transactions.

.131   A service transaction is defined in paragraphs 7 and 8 of the Invitation to Comment as follows.

A transaction between a seller and a purchaser in which, for a mutually agreed price, the seller performs . . . an act or acts . . . that do not alone produce a tangible commodity or product as the principal intended result . . . A service transaction may involve a tangible product that is sold or consumed as an incidental part of the transaction or is clearly identifiable as secondary or subordinate to the rendering of the service.

The term *service transaction* is used in the same sense in this SOP but, as used in this SOP, does not apply to PCS. Items classified as tangible products in software service transactions generally should be limited to off-the-shelf software or hardware.

.132   This SOP, like the Invitation to Comment, recommends the separation of such arrangements with discrete elements into their product and service elements. Paragraph 8(b) of the Invitation to Comment states the following.

If the seller of a product offers a related service to purchasers of the product but separately states the service and product elements in such a manner that the total transaction price would vary as a result of the inclusion or exclusion of the service, the transaction consists of two components: a product transaction that should be accounted for separately as such and a service transaction . . .

**Contract Accounting**

.133   SOP 91-1 included guidance on the application of contract accounting to software transactions. Questions arose as to whether output measures could be used to measure progress-to-completion if the amounts recorded would differ from those that would have been

reported had input measures been used. During its deliberations of this SOP, AcSEC reached conclusions intended to clarify this issue, but did not redeliberate the other conclusions related to services that were included in SOP 91-1.

**.134** AcSEC believes that the method chosen to measure progress-to-completion on an individual element of a contract should be the method that best approximates progress-to-completion on that element. Accordingly, AcSEC concluded that output measures may be used to measure progress-to-completion, provided that the use of output measures results in "the method that best approximates progress-to-completion."

**.135** Paragraphs .136 through .142 of this SOP are carried forward from SOP 91-1 with certain editorial changes.

**.136** ARB No. 45 established the basic principles for measuring performance on contracts for the construction of facilities or the production of goods or the provision of related services with specifications provided by the customer. Those principles are supplemented by the guidance in SOP 81-1 [section 10,330].

### Distinguishing Transactions Accounted for Using Contract Accounting From Product Sales

**.137** SOP 81-1 [section 10,330] suggests that transactions that normally are accounted for as product sales should not be accounted for using contract accounting merely to avoid the delivery requirements for revenue recognition normally associated with product sales. Paragraph 14 of SOP 81-1 [section 10,330.14] states the following:

Contracts not covered . . . include . . . [s]ales by a manufacturer of goods produced in a standard manufacturing operation, even if produced to buyers' specifications, and sold in the ordinary course of business through the manufacturer's regular marketing channels if such sales are normally recognized as revenue in accordance with the realization principle for sales of products and if their costs are accounted for in accordance with generally accepted principles of inventory costing.

### Application of ARB No. 45 and SOP 81-1

**.138** SOP 81-1 [section 10,330] provides guidance on the application of ARB No. 45 that applies to a broad range of contractual arrangements. Paragraph 1 of SOP 81-1 [section 10,330.01] describes contracts that are similar in nature to software arrangements, and paragraph 13 [section 10,330.13] includes the following kinds of contracts within the scope of that SOP:

- Contracts to design, develop, manufacture, or modify complex . . . electronic equipment to a buyer's specification or to provide services related to the performance of such contracts

- Contracts for services performed by . . . engineers . . . or engineering design firms

**.139** ARB No. 45 presumes that percentage-of-completion accounting should be used when the contractor is capable of making reasonable estimates. Paragraph 15 of ARB No. 45 states the following:

[I]n general when estimates of costs to complete and extent of progress toward completion of long-term contracts are reasonably dependable, the percentage-of-completion method is

preferable. When lack of dependable estimates or inherent hazards cause forecasts to be doubtful, the completed-contract method is preferable.

Evidence to consider in assessing the presumption that the percentage-of-completion method of accounting should be used includes the technological risks and the reliability of cost estimates, as described in paragraphs 25, 26, 27, 32, and 33 of SOP 81-1 [section 10,330.25, .26, .27, .32, and .33].

**.140** Paragraph 24 of SOP 81-1 [section 10,330.24] specifies a further presumption that a contractor is capable of making reasonable estimates and states the following:

[T]he presumption is that [entities] . . . have the ability to make estimates that are sufficiently dependable to justify the use of the percentage-of-completion method of accounting. Persuasive evidence to the contrary is necessary to overcome that presumption. [Footnote omitted]

**.141** Although cost-to-cost measures may be verified easily, they tend to attribute excessive profit to the hardware elements of arrangements with combined software and hardware elements for contracts under which segmentation is not permitted. Although the hardware elements of such arrangements have high cost bases, they generally yield relatively low profit margins to vendors. Furthermore, if excessive revenue is attributed to the hardware element, revenue recognition on the arrangement becomes overly dependent on when that element is included in the measurement of progress-to-completion.

**.142** For off-the-shelf software elements, the application of the cost-to-cost method produces the opposite effect. The book basis of the software tends to be low, because most of the costs associated with software development frequently are charged to expense when incurred in conformity with FASB Statement No. 86. Although the profit margins associated with software are generally higher than those for other elements of the arrangement, the application of cost-to-cost measures with a single profit margin for the entire arrangement would attribute little or no profit to the off-the-shelf software. Similarly, the application of the cost-to-cost method to arrangements that include core software, which also has a relatively low cost basis, would attribute a disproportionately small amount of profit to the software.

**Effective Date and Transition**

**.143** AcSEC concluded that the provisions of this SOP should be applied prospectively and that retroactive application should be prohibited. AcSEC recognizes the benefits of comparable financial statements but is concerned that the application of the provisions of this SOP to contracts existing in prior periods would require a significant amount of judgment. The application of that judgment likely would be impacted by the hindsight a company would have, resulting in judgments based on information that did not exist at the time of the initial judgment but that would be called for if the SOP were to be applied retroactively.

**.144** Additionally, AcSEC concluded that some entities would be required to incur large expenditures in determining restated amounts or the cumulative effect of adoption. AcSEC concluded that the cost of calculating such amounts likely would exceed the related benefit of that information. This SOP does not preclude an entity from disclosing in the notes to the financial statements the effect of initially applying this SOP if an entity believes it is practicable to do so.

**Items Not Retained From SOP 91-1**

**.145** AcSEC believes that the guidance included in SOP 91-1 related to discounting receivables and the collectibility of receivables (discussed in paragraphs 56 and 78, respectively, of SOP 91-1) is not specific to the software industry and thus does not need to be retained in this SOP.

---

**Notes to ACC Section 10,700 (SOP 97-2) Software Revenue Recognition**

---

Note 1

[1] Terms defined in the glossary are set in **boldface** type the first time they appear in this SOP.

---

Note 2

[2] Indicators of whether software is incidental to a product as a whole include (but are not limited to) (a) whether the software is a significant focus of the marketing effort or is sold separately, (b) whether the vendor is providing postcontract customer support, and (c) whether the vendor incurs significant costs that are within the scope of FASB Statement No. 86, Accounting for the Costs of Computer Software to Be Sold, Leased, or Otherwise Marketed. An example of the applicability of this SOP to revenue earned on products containing software is included in appendix A [paragraph .146].

---

Note 3

[3] As discussed in paragraph .09, arrangements may include multiple elements. If the discount or other concessions in an arrangement are more than insignificant, a presumption is created that an additional element(s) (as defined in paragraph .09) is being offered in the arrangement.

---

Note 4

[4] If a software arrangement includes services that meet the criteria discussed in paragraph .65 of this SOP, those services should be accounted for separately.

---

Note 5

5 The term *probable* is used in this SOP with the same definition as used in FASB Statement No. 5, *Accounting for Contingencies*.

---

Note 6

[6] This does not apply to changes in the estimated percentage of customers not expected to exercise an upgrade right. See paragraph .37.

Note 7

[7] Contractual arrangements under which the reseller is obligated to pay only as and if sales are made to users should be accounted for as consignments.

Note 8

[8] The evaluation of whether the level of uncertainty of possible cancellation is remote should be consistent with FASB Statement No. 5, which defines *remote* as relating to conditions in which "the chance of the future event or events occurring is slight."

Copyright © 2004 American Institute of Certified Public Accountants