UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :

IN RE SONUS NETWORKS, INC. LITIGATION   :        Civil Action
                                     :        No. 04-10294-DPW

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT STEPHEN J. NILL'S MOTION TO DISMISS

Thomas J. Dougherty
Matthew J. Matule
Michael S. Hines
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Dated: September 12, 2005             Counsel for Defendant Stephen J. Nill

## <u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      BPI GLOBAL'S SECTION 10(b) CLAIM FAILS TO PLEAD
        ANY FACTS RAISING A STRONG INFERENCE OF SCIENTER AND,
        CONSEQUENTLY, OUGHT TO BE DISMISSED AS A MATTER OF LAW  . . . . . . . 4

II.     BPI GLOBAL'S SECTION 11 AND SECTION 12(a)(2) CLAIMS
        "SOUND IN FRAUD," YET FAIL TO PLEAD FRAUD WITH THE
        PARTICULARITY MANDATED IN THIS CIRCUIT (AND OTHERS) . . . . . . . . . . . 4

        A.      Where -- As Here -- Securities Act Claims Sound In Fraud, They
                Must Meet The Heightened Pleading Requirements Of Fed. R. Civ. P. 9(b)  . . . . 4

                1.      One-Sentence Disclaimers Cannot Negate The
                        Purported Fraud That Ripples Throughout The Amended Complaint  . . . 7

        B.      BPI Global's Securities Act Claims Do Not Overcome
                The Heightened Pleading Requirements Of Rule 9(b)  . . . . . . . . . . . . . . . . . . . . 9

                1.      As Applied To Claims Alleging Violations
                        Of The Securities Laws, Rule 9(b) Mandates That Facts
                        Showing *Knowledge* Of A Statement's Material Falsity Be Pled  . . . . . . . 9

                        a.      This Court Has Dismissed Section 11 And
                                Section 12 Claims That Similarly "Sound In
                                Fraud" Where -- As Here -- No Facts Are Pled
                                Showing *Knowledge* Of A Statement's Material Falsity . . . . . . . 10

                        b.      Courts In Other Jurisdictions Also Routinely
                                Apply Rule 9(b) To Dismiss Section 11 And
                                Section 12 Claims That "Sound In Fraud" . . . . . . . . . . . . . . . . . . 11

i

2. BPI Global Does Not -- Because It Cannot --
Plead Facts That Show Statements Concerning The
September 2003 Offering Were *Knowingly False* When Made . . . . . . . 12

a. BPI Global's Conclusory
And Unsupported Allegations
Continue To Fail To Plead The Facts Necessary
To Overcome Its Burden On This Motion To Dismiss . . . . . . . . 13

III. BPI GLOBAL'S SECTION 12(a)(2) CLAIM OUGHT TO
BE DISMISSED FOR THE INDEPENDENT REASON THAT
MR. NILL WAS NOT A STATUTORY SELLER OF SONUS SECURITIES . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Public Employees' Ret. Sys. v. Chubb Corp.,
    394 F.3d 126 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 11, 12

Colby v. Hologic, Inc., 817 F. Supp. 204 (D. Mass. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Greebel v. FTP Software, Inc., 194 F.3d 185 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gross v. Summa Four, 93 F.3d 987 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

In re Computervision Corp. Sec. Litig., 869 F. Supp. 56 (D. Mass. 1994),
    aff'd sub nom., Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) . . . . 6, 10

In re Number Nine Visual Tech. Corp. Sec. Litig., 51 F. Supp. 2d 1 (D. Mass. 1999) . . . . . . . . 8

In re SeaChange Int'l, Inc., Civ. A. No. 02-12116-DPW,
    2004 WL 240317 (D. Mass. Feb. 6, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161 (D. Mass. 2000) . . . . . . . . . . . . . . . 2

In re Stac Elecs. Sec. Litig., 89 F.3d 1399 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Suprema Specialties, Inc. Sec. Litig.,
    334 F. Supp. 2d 637 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 12

In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . 8

Lucia v. Prospect St. High Income Portfolio, Inc., 769 F. Supp. 410
    (D. Mass. 1991), aff'd, 36 F.3d 170 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 4, 6, 10, 13

Maldonado v. Dominguez, 137 F.3d 1 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Melder v. Morris, 27 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Orton v. Parametric Tech. Corp., 344 F. Supp. 2d 290 (D. Mass. 2004) . . . . . . . . . . . . . . . . 7, 9

Pinter v. Dahl, 486 U.S. 622 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 17, 18

Suna v. Bailey Corp., 107 F.3d 64 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220
    (1st Cir. 2004), cert. denied, 125 S. Ct. 59 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES**                                                                   **PAGE(S)**

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 77(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 77(l)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. §§ 77a et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. §§ 78a et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Preliminary Statement**

Lead Plaintiff BPI Global Asset Management LLP ("BPI Global") was given a 60-day period to submit an amended complaint comprising its "best shot."[1]  Despite clear and repeated warnings that any such amended complaint must be "one that you have to rise and fall on," BPI Global's second bite at the apple lacks any of the "greater detail" promised at the June 1, 2005 Motion to Dismiss Hearing.  (See Trans. at 25:1-7; 29:25; 30:3-4).  Indeed, the First Amended Consolidated Class Action Complaint fails under the weight of those many deficiencies identified with its predecessor (yet which remain uncorrected); it is nothing more than "fraud-by-hindsight" and unsupported by the requisite specific averments from sufficiently identified and reliable sources.  Perhaps as a challenge to the Court, BPI Global did not make even a single change to its Section 11 allegations (and only added the verbatim inadequate disclaimer to its Section 12(a)(2) claim).  As the Court aptly noted the last time around, "at some point, it has to come to an end."  (Id. at 31:16-19).  BPI Global's "amendments" make plain that we are now there, and dismissal with prejudice and without leave to further amend is warranted.

Because certain of Sonus Networks, Inc.'s ("Sonus") prior financial statements issued between 2001 and the third quarter 2003 were restated in mid-2004, BPI Global purports that Sonus and its management, including Mr. Nill (a former Chief Financial Officer of Sonus), fraudulently and intentionally "manag[ed]" reported revenues to create the "illusion of linear revenue growth" during the March 2002 to March 2004 purported class period (First Amended Consolidated Class Action Complaint ¶ 6 (the "Amended Complaint") (Docket No. 126)).

---

[1]     Hearing Transcript dated June 1, 2005 at 31:8-13 (cited as "Trans. at __") (attached hereto as Ex. A).

Premised upon that conclusory, overarching theme, the Amended Complaint purports to assert claims against Mr. Nill pursuant to Sections 10 and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a et seq.) (the "Exchange Act") as well as Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, (15 U.S.C. §§ 77a et seq.) (the "Securities Act").[2]

Where, as here, Section 11 or Section 12(a)(2) claims are not based on alleged negligent conduct, but rather are inextricably interwoven with Exchange Act allegations of fraud, those claims "sound in fraud" and must satisfy both the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the First Circuit's long-standing application of the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  BPI Global's one-sentence attempt to disavow its express assertions of fraud inadequately mitigates the Amended Complaint's repeated allegations of "intentional" or "reckless[]" conduct and "scheme[s]" and "plan[s]" of deliberate wrongdoing by Sonus and its management.  (See, e.g., Amend. Compl. ¶¶ 22, 24, 44, 95).  Further, Rule 9(b), as rigorously applied in this Circuit, requires plaintiffs alleging securities fraud to plead, among other things, specific facts that make it reasonable to believe that defendants knew a statement was materially false or misleading at the time it was purportedly made.

Beyond mere conclusory allegations, BPI Global's Amended Complaint fails to cite a single fact sufficient to raise even a hint that Mr. Nill "knew" of the generic conduct that

---

[2]     For purposes of this motion, Mr. Nill assumes, but does not admit, that BPI Global's well pleaded allegations are true.  However, bald assertions, unsubstantiated conclusions and characterizations are not so credited.  See, e.g., U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004), cert. denied, 125 S.Ct. 59 (2004) (affirming dismissal); Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002) (affirming dismissal); In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (dismissing complaint).

BPI Global claims rendered Sonus' financial statements false or misleading.[3]  Even where BPI Global attempts to provide the missing support for its claims through averments attributed to "confidential" sources, those claims lack any of the requisite detail upon which weight and reliability can be placed.  Indeed, the "new" allegations are nothing more than the language of the prior complaint upon which "there is simply hung out some description of a job and unnamed holder of that job. . . ."  (Trans. at 37:7-10) (See, e.g., Amend. Compl. at ¶¶ 40, 42, 47).

       Independent of BPI Global's failure to plead fraud with particularity, the Section 12(a)(2) claim should be dismissed because Mr. Nill was not a statutory "seller" of Sonus securities.  To the contrary, the Amended Complaint makes plain that Mr. Nill -- as a matter of law -- cannot be deemed a "seller" in this case because he neither (i) transferred title of Sonus securities nor (ii) actively solicited BPI Global's purchase of Sonus securities.  The September 2003 secondary offering of Sonus shares at issue in the Amended Complaint was a so-called "firm commitment" underwriting whereby Goldman, Sachs & Co. first purchased all of the then-offered shares of Sonus securities and, thereafter, sold those shares to the public.  Simply put, neither Mr. Nill nor Sonus transferred title of Sonus securities to BPI Global or anyone else.  Further, BPI Global does not -- because it cannot -- allege that Mr. Nill actively solicited BPI Global's purchase of Sonus securities, another requirement for Section 12(a)(2) liability to attach.

---

[3]    The Exchange Act claims do not raise the requisite strong inference of scienter and, consequently, fail as a matter of law against Mr. Nill for the reasons stated in the Memorandum Of Law In Support Of Defendant Sonus' Motion To Dismiss The First Amended Consolidated Class Action Complaint.  Mr. Nill adopts and incorporates by this reference the arguments and authorities cited therein.

**Argument**

**I.    BPI GLOBAL'S SECTION 10(b) CLAIM FAILS TO PLEAD
       ANY FACTS RAISING A STRONG INFERENCE OF SCIENTER AND,
       CONSEQUENTLY, OUGHT TO BE DISMISSED AS A MATTER OF LAW**

         To avoid repetition, Mr. Nill hereby joins in and incorporates as if set forth herein

the arguments and authorities in the Memorandum Of Law In Support Of Defendant Sonus'

Motion To Dismiss The First Amended Consolidated Class Action Complaint concerning

dismissal of the claims pursuant to Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5

promulgated thereunder (i.e., Claim I).

**II.   BPI GLOBAL'S SECTION 11 AND SECTION 12(a)(2) CLAIMS
       "SOUND IN FRAUD," YET FAIL TO PLEAD FRAUD WITH THE
       PARTICULARITY MANDATED IN THIS CIRCUIT (AND OTHERS)**

         **A.    Where -- As Here -- Securities Act Claims Sound In Fraud, They
                 Must Meet The Heightened Pleading Requirements Of Fed. R. Civ. P. 9(b)**

         Claims II and III of the Amended Complaint purport to assert claims against Mr.

Nill pursuant to Section 11 (15 U.S.C. § 77(k)) and Section 12(a)(2) (15 U.S.C. § 77(l)(2)) of the

Securities Act.  (See Amend. Compl. ¶¶ 196-207 (Claim II) and ¶¶ 208-217 (Claim III)).  Those

claims, however, are not founded upon any express allegations of negligence, but rather are based

on the Amended Complaint's numerous prior allegations of "knowing[ ]," "intentional" and/or

"reckless" conduct and, consequently, sound in fraud because "fraud, not negligence, lies at the

core of the complaint."  Lucia v. Prospect St. High Income Portfolio, Inc., 769 F. Supp. 410, 416

(D. Mass. 1991), aff'd, 36 F.3d 170 (1st Cir. 1994).  See also Rombach v. Chang, 355 F.3d 164,

172 (2d Cir. 2004) (rejecting plaintiff's assertions that complaint did not "sound in fraud" because

"the wording and imputations of the complaint [were] classically associated with fraud . . . .").

4

Among the Circuit Courts of Appeal to address the "sounds in fraud" analysis is the Third Circuit, which in 2004 dismissed Securities Act claims on Rule 9(b) grounds.  Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 160-61 (3d Cir. 2004) (finding complaint sounds in fraud where allegations of fraud are the "linchpin of [p]laintiffs' action" and where the complaint "is completely devoid of any allegations that Defendants acted negligently").  The complaint in Chubb sounded in fraud because it relied exclusively on allegations that defendants: (1) filed a registration statement that was "false and misleading;" (2) manipulated accounting and "artificial[ly] inflat[ed]" the stock price; (3) "conceal[ed] key facts from its public disclosures" and "conceal[ed] the continued serious deterioration" in Chubb's standard commercial insurance business; and (4) offered forecasts that were "false when made."  Id.  The Third Circuit concluded that plaintiffs' incorporation of their fraud allegations into their Section 11 claim was fatal, "bel[ying] [plaintiffs'] contention that their 1933 Act claims are strict liability claims."  Id. at 161.

The Amended Complaint in this case similarly relies exclusively on allegations of fraudulent conduct.  Underscoring how pervasively the claim of intentional fraud runs through the Amended Complaint, Exhibit B attached hereto compiles BPI Global's numerous allegations of fraud that Mr. Nill (and the other Defendants) acted "intentionally" or "recklessly" and knowingly engaged in "schemes" or "plans" to defraud investors:

- Acted with Knowledge, Intent and/or Recklessness

    » "Sonus's improper accounting practices were ongoing, pervasive and occurred with the knowledge, acquiescence and direct participation of . . . Nill."  (Amend. Compl. ¶ 5)

» Mr. Nill "knowingly or with recklessness caused Sonus to materially misstate the Company's revenues . . . ." (<u>Id.</u> ¶ 95)

- <u>Devised and Participated in a "Scheme" or "Plan" to Defraud Investors</u>

» "For the purpose of creating the illusion of linear revenue growth, Sonus's senior finance and accounting personnel . . . engaged in a wrongful pattern of conduct whereby they sought to 'manage' the Company's reported revenues . . . ." (<u>Id.</u> ¶ 6).

» "The illusion of linearity was also important because Sonus's senior managers had intended to raise capital by issuing shares of Sonus's common stock in follow-on offerings pursuant to a prior shelf registration, and they knew that such offerings would not be successful if the Company's revenues were deemed to be irregular and unpredictable." (<u>Id.</u> ¶ 39).

» "[D]efendants improperly unbundled certain software delivery elements in order to manipulate the timing of the revenue recognition, for the purpose of smoothing out Sonus' quarterly revenue curve. (<u>Id.</u> ¶ 41).

As the foregoing unambiguous and repeated allegations make clear, BPI Global's entire case is based upon the assertion that Mr. Nill (and the other Defendants) engaged in a "scheme and course of business that operated as a fraud or deceit on purchasers of Sonus common stock . . . ." (Amend. Compl. ¶ 24). Where, as here, Section 11 and Section 12(a)(2) claims are predicated upon allegations of fraudulent conduct -- that is, "sound in fraud" -- plaintiffs must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), setting forth the circumstances of the alleged fraud with particularity.  <u>See, e.g.</u>, <u>In re Computervision Corp. Sec. Litig.</u>, 869 F. Supp. 56, 63 (D. Mass. 1994) (dismissing claims asserted pursuant to Sections 11 and 12(2) predicated on allegations of fraud for failure to satisfy "the strict pleading standards of Rule 9(b)"), <u>aff'd</u> <u>sub</u> <u>nom</u>, <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 636 (1st Cir. 1996); <u>Prospect St.</u>, 769 F. Supp. at 416-17 (dismissing Sections 11 and 12(2) claims on 9(b)

6

grounds for failure "to plead any facts or any reason for a reasonable belief that 'adverse circumstances existed at the time of the offering'") (emphasis added).[4] In particular, BPI Global must set forth "specific facts" supporting its assertion that Mr. Nill "knew a statement was materially false or misleading." Orton v. Parametric Tech. Corp., 344 F. Supp. 2d 290, 299 (D. Mass. 2004) (granting motion to dismiss securities claims and reaffirming that the "First Circuit is especially strict in demanding adherence to Rule 9(b) in the securities context . . . .") (quotation omitted).

### 1.    One-Sentence Disclaimers Cannot Negate The Purported Fraud That Ripples Throughout The Amended Complaint

BPI Global implicitly acknowledges the Amended Complaint's reliance on allegations of fraud -- and indeed, expressly incorporates every one of those allegations -- but nevertheless tries to sidestep Rule 9(b) by purporting to disclaim fraud as to its Section 11 and Section 12 claims:

- "Lead Plaintiff incorporates by reference and realleges <u>Paragraphs 1 through 179 above</u> as though fully set forth herein. However, for purposes of this claim, <u>Lead Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct</u>, as this claim is based solely on a claim of . . . negligence [as to Nill]." (Amend. Compl. ¶ 196) (emphasis added).

---

[4]    Courts in other jurisdictions routinely apply Rule 9(b)'s heightened pleading requirements to claims asserted pursuant to Sections 11 and 12(a)(2) where -- as here -- those claims sound in fraud. See Chubb, 394 F.3d at 160-63 (affirming dismissal of Section 11 claim for failure to plead elements of fraud with particularity); Chang, 355 F.3d at 170-71 (affirming dismissal of Section 11 and Section 12(a)(2) claims asserted against individual officers and holding that the heightened pleading requirements of Rule 9(b) apply to those claims when they are based on allegations of fraudulent conduct); In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404-05 (9th Cir. 1996) (applying Rule 9(b) pleading requirements to Section 11 claim sounding in fraud); Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994) (affirming dismissal of Sections 11 and 12 claims grounded in fraud for failure to sufficiently plead intent).

- "Lead Plaintiff incorporates by reference and realleges <u>Paragraphs 1 through 179</u> above as though fully set forth herein. However, for purposes of this claim, <u>Lead Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct</u>." (Amend. Compl. ¶ 208) (emphasis added).

These single sentence disclaimers are insufficient to overcome the fundamental theme of purported fraudulent conduct asserted in the Amended Complaint (whose 179 paragraphs are specifically <u>reasserted</u> wholesale in Counts II and III).[5] Indeed, courts uniformly reject such one-sentence, boilerplate efforts to disavow claims of fraud where, as here, the Amended Complaint is based entirely on fraudulent, not negligent, conduct:

- A "one-sentence disavowment of fraud" such as: "[p]laintiffs expressly disclaim any allegations of fraud, knowledge, intent, or scienter," is "insufficient to divorce the [Section 11] claims from their fraudulent underpinnings." <u>Chubb</u>, 394 F.3d at 160.

- Cursory effort to disclaim fraud (<u>e.g.</u>, "[t]his claim is not based on and does not sound in fraud") insufficient where "the wording and imputations of the complaint are classically associated with fraud." <u>In re Suprema Specialties, Inc. Sec. Litig.</u>, 334 F. Supp. 2d 637, 649-50 (D.N.J. 2004) (citation omitted).

- Plaintiffs who repeated and realleged all of the complaint's prior paragraphs "except to the extent that any allegations contained above which may be interpreted to sound in fraud, which allegations are <u>not</u> incorporated in the present claim," were nevertheless unable to disclaim fraud because "plaintiffs make little, if any, effort to differentiate their asserted negligence claims from the fraud claims which permeate the Complaint." <u>In re Ultrafem Inc. Sec. Litig.</u>, 91 F. Supp. 2d 678, 690-91 (S.D.N.Y. 2000).

---

[5]    BPI Global will likely attempt to rebut this argument by referencing <u>In re Number Nine Visual Tech. Corp. Sec. Litig.</u>, 51 F. Supp. 2d 1 (D. Mass. 1999), but to little effect. The plaintiff in <u>Number Nine</u> separately pleaded allegations of fraud and allegations of negligence. <u>Id.</u> at 12-13. Further, the plaintiff's disclaimer specified the applicable allegations that supported his negligence claims, without requiring the court to sift through the complaint in search of those allegations. <u>Id.</u> The Number Nine plaintiff's complaint thus bears no resemblance to the blanket reincorporation of fraud allegations and absence of negligence-based assertions that is evident in the Amended Complaint.

**B.** **BPI Global's Securities Act Claims Do Not Overcome**
**The Heightened Pleading Requirements Of Rule 9(b)**

**1.** **As Applied To Claims Alleging Violations**
**Of The Securities Laws, Rule 9(b) Mandates That Facts**
**Showing *Knowledge* Of A Statement's Material Falsity Be Pled**

Fed. R. Civ. P. 9(b) provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The First Circuit is "especially rigorous" when applying Rule 9(b) in securities fraud actions because strict application of Rule 9(b) "minimize[s] the chance that a plaintiff with a largely groundless claim will bring a suit . . . ." Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998). See also Orton, 344 F. Supp. 2d at 298-99 (citing Gross v. Summa Four, 93 F.3d 987, 991 (1st Cir. 1996)).

To survive a motion to dismiss in this Circuit (and others), a complaint must set forth "specific facts" that make it "reasonable to believe that the defendant knew a statement was materially false or misleading." Orton, 344 F. Supp. 2d at 299 (emphasis added). See also Suprema Specialties, 334 F. Supp. 2d at 648, 652 (In Section 11 claim "sounding in fraud" plaintiff must plead "knowledge of falsity" by the person who made a false representation). "[G]eneral averments" of the defendant's knowledge of the material falsity "will not suffice." Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (affirming dismissal of fraud claims where appellants failed to plead facts supporting allegation that defendant "endorsed the contents of . . . reports, adopted them as its own, and placed its imprimatur on them.") Instead, "[t]he rule requires that the particular times, dates, places, or other details of the alleged fraudulent involvement of the actors be alleged." Orton, 344 F. Supp. 2d at 299 (emphasis added).

> **a.  This Court Has Dismissed Section 11 And Section 12 Claims That Similarly "Sound In Fraud" Where -- As Here -- No Facts Are Pled Showing _Knowledge_ Of A Statement's Material Falsity**

Plaintiffs who allege Section 11 and Section 12(a)(2) claims "sounding in fraud" must plead <u>specific facts</u> that make it reasonable to believe that the defendant <u>knew a statement was materially false or misleading</u>, or face dismissal.  <u>Prospect St.</u>, 769 F. Supp. at 417-18.  In <u>Prospect St.</u>, plaintiffs alleged that defendant directors and underwriters created Prospect Street as a "captive market for Drexel's unmarketable junk bonds and then misled the public [by means of a fraudulent prospectus] in order to raise capital for this endeavor."  However, "the complaint, in 53 pages, <u>does not recite a single fact</u> that suggests that any of the defendants, with the exception of [Michael] Milken, <u>had any basis for knowing that their statements in the prospectus were misleading</u>."  <u>Id.</u> at 417-18 (emphasis added).  Such facts are required by Rule 9(b) and, noting their absence, Judge Mazzone dismissed plaintiffs' Section 11 and Section 12(2) claims.  <u>Id.</u> at 419.

Similarly, in <u>Computervision</u>, plaintiffs claimed to suffer losses as a result of a false and misleading prospectus issued by Computervision Corp.  869 F. Supp. at 59.  Shortly after plaintiffs purchased shares in Computervision, the company announced substantial losses and its stock dropped by 30%.  <u>Id.</u> at 59.  As in <u>Prospect St.</u>, plaintiffs' claims were held to "sound in fraud" yet were not supported with the high degree of particularity required by Rule 9(b).  <u>Id.</u> at 64.  The complaint was "<u>devoid of any supporting facts</u> about any <u>conspiracy to defraud</u> investors [or] any <u>reckless disregard</u> for false or misleading statements in the registration materials . . . ."  <u>Id.</u> at 64 (emphasis added).  In the absence of these required averments, the court

10

could not reach the reasonable conclusion that the defendant corporation and officers knew its

prospectus was materially false or misleading, as required under 9(b).  Accordingly, Judge Young

dismissed the Section 11 and Section 12(2) claims (now, Section 12(a)(2)).  Id. at 64.

> **b.    Courts In Other Jurisdictions Also Routinely
> Apply Rule 9(b) To Dismiss Section 11 And
> Section 12 Claims That "Sound In Fraud"**

The Third Circuit's expression of the Rule 9(b) requirement as applied to Section

11 and Section 12(a)(2) claims "sounding in fraud" mirrors that of the Prospect St./

Computervision line of cases in this Circuit.  When a Section 11 claim "sounds in fraud," a

plaintiff must plead, among other things: "knowledge by the person who made [a false represen-

tation] of its falsity; ignorance of its falsity by the person to whom it was made; [and] the

intention that it should be acted upon."  Suprema Specialities, 334 F. Supp. 2d at 648 (citation

omitted) (emphasis added).  A Section 12(a)(2) action "sound[ing] in fraud" also requires

pleading of, among other things, that "defendants knew, or on the exercise of reasonable care,

could have known of the untruth or the omission."  Id. at 648 (citation omitted) (emphasis

added).

In Chubb, the Third Circuit affirmed dismissal of Section 11 claims "sounding in

fraud."  394 F.3d at 163.  Plaintiffs filed the Section 11 claim under the theory that they were

defrauded in connection with the purchase of Chubb common stock.  Id. at 134, 141.  Chubb and

its officers purportedly manipulated the market for the stock and caused false statements to be

made in public filings.  Id.  The court found plaintiff's pleadings deficient: "Neither the ade-

quately pled 'true facts' nor Defendants' public statements demonstrate alleged falsity of

11

Defendants' Class Period disclosures." Id. at 158. Plaintiffs failed to plead fraud with the particularity required by Rule 9(b) and the court affirmed dismissal. Id. at 158, 163.

In Suprema Specialities, the District of New Jersey dismissed Section 11 and Section 12(a)(2) claims for failure to comply with Rule 9(b). 334 F. Supp. 2d at 652-53. The plaintiffs in Suprema alleged that several statements contained in a 2001 Registration Statement and Prospectus were fraudulent. Id. at 649-50. However, plaintiffs did not plead facts sufficient to show defendants' "knowledge of the falsity" of these statements, as required under Rule 9(b). Id. at 652-653 (emphasis added).

> **2.    BPI Global Does Not -- Because It Cannot -- Plead Facts That Show Statements Concerning The September 2003 Offering Were *Knowingly False* When Made**

BPI Global's Section 11 and Section 12(a)(2) claims both center on purportedly false and/or misleading statements knowingly contained in a September 23, 2003 Prospectus Supplement filed by Sonus. (Amend. Compl. ¶¶ 196-217). The Prospectus Supplement incorporated a variety of documents that BPI Global alleges were the false and misleading products of Sonus' fraudulent accounting -- and which were allegedly predicated upon a knowing effort to create an "illusion of linearity" to support follow-on offerings such as the September 2003 secondary offering. (Id. ¶¶ 33-51, 164). BPI Global further asserts in its Section 12(a)(2) claim that "at all relevant times, these defendants knew . . . of the misstatements and omissions contained in the Prospectus Supplement [and the documents incorporated therein]." (Id. ¶ 211) (emphasis added).

a.    **BPI Global's Conclusory
And Unsupported Allegations
Continue To Fail To Plead The Facts Necessary
To Overcome Its Burden On This Motion To Dismiss**

In order to overcome the Rule 9(b) pleading hurdle, BPI Global must set forth in

its Amended Complaint <u>specific facts</u> that make it reasonable to believe that Mr. Nill <u>knew</u>

statements in the September 23, 2003 Prospectus Supplement were materially false or misleading

when made. <u>Prospect St.</u>, 769 F. Supp. at 417-18. But, BPI Global's allegations are devoid of

well-pled facts and, thus, "too conclusional to satisfy the particularity requirement, no matter

how many times such accusations are repeated." <u>Hayduk v. Lanna</u>, 775 F.2d 441, 444 (1st Cir.

1985) (affirming dismissal of fraud claims due to absence of "specific supporting facts that

would satisfy the Rule 9(b) pleadings requirements and thus give notice to appellees of the

fraudulent claims against them . . . .").

Even a cursory review of BPI Global's allegations of knowledge demonstrates a

lack of factual support. The Amended Complaint repeatedly attempts to allege that Mr. Nill was

"aware of," "had knowledge of" or "directly participat[ed]" in this alleged fraud, yet fails to

include supporting details:

- "Sonus's improper accounting practices were ongoing, pervasive and occurred
with the <u>knowledge, acquiescence and direct participation</u> of . . . Nill." (Amend.
Compl. ¶ 5) (emphasis added);

- Mr. Nill was "<u>aware of</u>, or recklessly disregarded, the misstatements contained [in
public disclosures] and omissions therefrom, and [was] aware of their materially
false and misleading nature." (<u>Id.</u> ¶ 22) (emphasis added);

- Mr. Nill "<u>knew of</u> material problems in the Company's accounting system." (<u>Id.</u> ¶
91) (emphasis added);

- Mr. Nill "<u>knowingly</u> or with recklessness caused Sonus to materially misstate the
Company's revenues . . . ." (<u>Id.</u> ¶ 95) (emphasis added).

13

As detailed in Exhibit B hereto, the foregoing allegations are recycled over and over again throughout the Amended Complaint.  But, in each and every instance, BPI Global fails to provide any specific factual support for its claims.  (See, e.g., Amend. Compl. ¶¶  6, 20, 87).  "Without supporting facts regarding the circumstances surrounding the formation of the conspiracy to defraud plaintiffs or plaintiffs' basis for believing that a conspiracy existed for the purpose of defrauding them, the allegation becomes a conclusional accusation of the sort that is proscribed by Rule 9(b)."  Hayduk, 775 F.2d at 444.

Even where BPI Global attempts to support its allegations of knowledge, it fails to do so with any degree of necessary factual specificity.  Indeed, many of the Amended Complaint's "facts" are merely non-actionable innuendo:

- "That Sonus was manipulating the Qwest contract to 'manage' its reported quarterly revenues was continually discussed among the sales and technical staff members employed in the Company's Denver-based Western regional sales office . . . ."  (Amend. Compl. ¶ 42);

- "Sonus's accounting shenanigans were widespread and commonly known throughout the Company."  (Id. ¶ 48);

- According to former sales employees, "the fact that Sonus's senior management was 'managing' quarterly revenues was well known and openly discussed[.]"  (Id. ¶ 50).

Still other allegations are "supported" by nothing more than conclusory quotes anonymously and unreliably attributed to unnamed former employees:

- According to a "former senior sales manager," "[t]hey (senior management) tried to take a business with non-linear revenues and non-linear orders and perceive it to the Street as linear -- they were always pulling things into the next quarter to make things linear."  (Amend. Compl. ¶ 40);

- "According to one former Sonus vice president . . . 'Sonus was simply gerrymandering results as to the Qwest contract.'"  (Id. ¶ 44);

14

- "The company was pushing-out or spreading revenues across quarters to get revenue as linear as possible." (Id. ¶ 47).

Tellingly, not a single one of these quotes names Mr. Nill or makes mention of Mr. Nill's knowledge of, or much less his role in, the purported fraud.

Further, the "former Sonus vice president" alluded to in paragraph 46 offers <u>no details</u> about the position such person purportedly held at Sonus and, more specifically, whether or when he or she had any direct involvement with Mr. Nill regarding the preparation of Sonus' financial statements during the purported class period (<u>i.e.</u>, March 2002 to March 2004). The balance of the allegations -- whether sourced or not -- lack credibility due to vague uncertainty regarding:

- when the purported delivery confirmation was sent to Qwest: "either Q3 or Q4 2001[.]" (Amend. Compl. ¶ 46);

- which supposed "hardware and software" deliverables were due to Qwest. (<u>Id.</u>);

- whether the confirmation was "issued under Nill or [former Sonus Controller Peter] Hemme's signature[.]" (<u>Id.</u>);

- <u>any details</u> about the purportedly similar confirmation letters sent to Global Crossing and XO Communications. (<u>Id.</u>).

In sum, BPI Global has failed to make <u>any showing</u> that Mr. Nill had knowledge that statements contained in the September 23, 2003 Prospectus Supplement -- or any other statements which purport to be attributed to him -- were false or misleading. (<u>See</u> Sonus Brief at §§ I.C.2-3). In the absence of "supporting facts," BPI Global's Amended Complaint "must be regarded as speculative and fatally defective." <u>Colby v. Hologic, Inc.</u>, 817 F. Supp. 204, 212 (D.

Mass. 1993) (dismissing securities claim pursuant to Rule 9(b) where plaintiff failed to adequately plead with particularity).[6]

### III.    BPI GLOBAL'S SECTION 12(a)(2) CLAIM OUGHT TO BE DISMISSED FOR THE INDEPENDENT REASON THAT MR. NILL WAS NOT A STATUTORY SELLER OF SONUS SECURITIES

Liability under Section 12 is limited to those persons who "offer[ ] or sell[ ]" a security to a purchaser.  Section 12(a)(2) provides, in relevant part, that:

> "any person who . . . <u>offers or sells</u> a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact . . . shall be liable . . . to the person purchasing the security from him . . . ."

Section 12(a)(2) (emphasis added).  BPI Global's Section 12(a)(2) claim fails for the independent reason that the Amended Complaint does not adequately allege that Mr. Nill was a "seller" of Sonus securities pursuant to Section 12 and the associated case law.  Accordingly, that claim fails as a matter of law as to Mr. Nill.[7]

The United States Supreme Court has narrowly defined  Section 12 "sellers" to include only those persons (i) who actually transfer title of securities or (ii) who "successfully solicit[s] [the] purchase" of securities.  <u>Pinter v. Dahl</u>, 486 U.S. 622, 644-47 (1988).  BPI Global does not -- because it cannot -- allege that Mr. Nill actually transferred title of Sonus securities.

---

[6]    Dismissal of the Section 11 and Section 12(a)(2) claims also requires dismissal of the companion Section 15 claims against Mr. Nill.  <u>See, e.g.</u>, <u>In re SeaChange Int'l, Inc.</u>, Civ. A. No. 02-12116-DPW, 2004 WL 240317, at *16 (D. Mass. Feb. 6, 2004) (dismissing Section 15 claims because Section 11 and Section 12 claims were not actionable).

[7]    Mr. Nill further incorporates as if set forth herein the reasons and authorities in the Memorandum In Support Of Hassan Ahmed's Motion To Dismiss The First Amended Consolidated Complaint concerning dismissal of the Section 12(a)(2) claim.

Rather, BPI Global attempts to proceed under the "solicitation" prong of the statutory seller analysis, alleging that Mr. Nill: (i) "caused to be drafted, revised, and approved the Prospectus Supplement" but for which BPI Global would "not have been issued Sonus shares" and (ii) "solicited institutional investors, fund managers and other investment professionals to acquire Sonus shares pursuant to the Prospectus Supplement." (Amend. Compl. ¶ 210). Those allegations, however, are insufficient as a matter of law to establish Mr. Nill's purported "seller" status pursuant to Section 12(a)(2). See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996) (affirming dismissal of Section 12(a)(2) claim on the grounds that the individual defendants were not statutory sellers), superseded by statute on other grounds, as noted in Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999).

In Shaw, the First Circuit held that a Section 12(a)(2) claim should be dismissed where -- as here -- plaintiffs fail to allege facts sufficient to demonstrate that defendants "actively 'solicited' the plaintiffs' purchase of securities to further [defendants'] own financial motives, in the manner of a broker or vendor's agent." Id. at 1215 (emphasis added). The court further held that mere allegations of prospectus preparation and conclusory assertions of "solicitation" fall far short of demonstrating the level of active solicitation necessary to invoke statutory "seller" status. Id. at 1216.

Under the Shaw framework, BPI Global's allegations fail to state a Section 12(a)(2) claim against Mr. Nill. Simply put -- and dispositive of the instant motion -- the Amended Complaint does not contain even a single allegation that Mr. Nill actively solicited BPI Global's purchase of Sonus securities. Nor could it. Moreover, BPI Global's allegation that Mr. Nill participated in the preparation of the prospectus also misses the mark. (Amend. Compl. ¶

210).  Involvement in the drafting of a prospectus does not "demonstrate[ ] the kind of <u>relation-ship between defendant and plaintiff</u> that could establish statutory seller status."  <u>Shaw</u>, 82 F.3d at 1216 (emphasis in original).  Accordingly, and as in <u>Shaw</u>, BPI Global's Section 12(a)(2) claim fails as a matter of law and should be dismissed.

## <u>Conclusion</u>

For all of the foregoing reasons, Defendant Stephen J. Nill's Motion to Dismiss should be granted in its entirety, and the Amended Complaint should be dismissed with prejudice and without leave to further amend.

Dated:  September 12, 2005
      Boston, Massachusetts

Respectfully submitted,

/s/  Matthew J. Matule
Thomas J. Dougherty (BBO #132300)
Matthew J. Matule (BBO #632075)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant Stephen J. Nill

18