# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10294-DPW, 04-10359-DPW
*******************************************
DEBORAH CHIN, ET AL.

VS.

SONUS NETWORKS, INC., ET AL.
*******************************************

HEARING
BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
Date:  June 1, 2005

APPEARANCES:
Jeff Rudman, Esq., and Daniel Halston, Esq., Daniel H. Gold, Esq., (WILMER, CUTLER, PICKERING, HALE and DORR LLP); on behalf of Sonus Networks, Inc., Edward Anderson, Paul Ferri, Albert Notini, Paul Severino.

Solomon B. Cera, Esq., (GOLD, BENNETT, CERA & SIDENER), 595 Market Street, Suite 2300, San Francisco, CA 94105; on behalf of the Lead Plaintiff in 04-10294, B/I Global Asset Management.
John R. Baraniak, Jr., Esq., (CHOATE HALL & STEWART), 53 State Street, Boston, MA 02109; on behalf of Hassan Ahmed.

TERI CELESTE GIBSON, COURT REPORTER
P.O. BOX 47
DORCHESTER, MASSACHUSETTS 02121
(617)650-6288
Mechanical Stenography; computer aided transcription.

Page 2

APPEARANCES CONT'D:

Willem F. Jonckheer, Esq., (SCHUBERT & REED LLP), Two Embarcadero Center, Suite 1660, San Francisco, CA 94111; on behalf of Daniel Williams, plaintiff in derivative action.

John C. Martland, Esq., (GILMAN AND PASTOR,LLP), 60 State Street, 37th Floor, Boston, MA 02109; on behalf of the plaintiff, derivative action.

John D. Hughes, Esq., (EDWARDS & ANGELL LLP), 101 Federal Street, Boston, MA 02110; on behalf of defendants, Rubin Gruber, Michael O'Hara, Paul Jones, and Edward Harris.

Matthew J. Matule, Esq., and Michael S. Hines, Esq., (SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP) One Beacon Street, Boston, MA 02108-3194; on behalf of defendant, Stephen J. Nill.

*****

Page 3

1    P-R-O-C-E-E-D-I-N-G-S
2        THE CLERK: Calling In Re: Sonus Network
3    Shareholder derivative litigation and In re: Sonus
4    securities litigation, Civil Action Number 04-10359 and
5    04-10294.
6        THE COURT: I did want to take up the derivative
7    action first. I shouldn't ask the broadest question first
8    but I will. Why wouldn't a demand be made?
9        MR. JONCKHEER: Your Honor, William Jonckheer for
10   the plaintiff.
11       Your Honor, demand was not made because based on
12   assessment of the facts in the case, the determination was
13   made that demand would be futile, and that's based on the
14   allegations that are in the complaint which --
15      THE COURT: That's not the answer I want to
16   discuss with you. If it's futile, what's wrong with making
17   demand, except that you get the opportunity to hear the
18   motion to dismiss. I just don't understand why someone
19   wouldn't make a demand under these circumstances.
20      MR. JONCKHEER: I believe, Your Honor, if a demand
21   is made, and typically, a demand would be rejected.
22      THE COURT: Right.
23      MR. JONCKHEER: Then the standard in order to
24   enforce the company's claims by a shareholder, the standard
25   becomes much more difficult to overcome the demand to reject

Page 4

1    it.
2        THE COURT: I guess I need some education
3    regarding this.
4        MR. JONCKHEER: I believe the standard that
5    applies to a demand refused case, is much higher than the
6    standard that applies to a demand execution case.
7        THE COURT: Ask the question for purposes of
8    education.
9        MR. JONCKHEER: I believe under the -- if a demand
10   is made --
11      THE COURT: Two different answers.
12      MR. JONCKHEER: If a demand is made and rejected,
13   I believe that under the operative standards, the rejection
14   is protected, the business judgment rule to a higher extent
15   which is a higher standard to meet or defeat for derivative
16   plaintiff, that believes that the company claims should be
17   enforced. Whereas in a demand, if you are alleging demand
18   of futility, then other standards apply where the plaintiff
19   needs to allege a claim of bad faith in effect. In order to
20   invalidate the application of the business judgment rule by
21   the board to the claims at issue.
22      THE COURT: Strikes me a kind of game of chicken
23   to be playing under these circumstances. In particular,
24   after the state court judges effectively said that it wasn't
25   futile.

Page 5

1        MR. JONCKHEER: The point I would make with
2    respect to the State Court opinion, I think you are looking
3    at complaints that are really very different. It's a night
4    and day difference in fact.
5        THE COURT: What is the night and day difference?
6    Frankly, I assume the difference between 3:40 and 3:43 in
7    the afternoon. What is the night and day difference?
8        MR. JONCKHEER: The difference, Your Honor, is
9    that the state complaint was filed on February 20th, 2004.
10      THE COURT: When was the first filed.
11      MR. JONCKHEER: I believe around the same time,
12   later in February.
13      THE COURT: That is the difference?
14      MR. JONCKHEER: Well, the point is that under the
15   arrangement that we made before Your Honor in terms of
16   filing the amended complaint, we did that, we filed it in
17   October, and in the amended complaint are an enormous amount
18   of details regarding what actually went wrong at this
19   company. So whereas the state complaint --
20      THE COURT: You mean Judge van Gestel didn't know
21   something went wrong with the company.
22      MR. JONCKHEER: He didn't know the extent of the
23   problems with the internal controls of the company.
24      THE COURT: What has to -- to do with the futility
25   of the case.

2 (Pages 2 to 5)

Page 6

1  MR. JONCKHEER: Because the camera case, Your
2  Honor, where a Board of Directors is responsible for
3  operating, instituting a system of internal controls, when
4  the Board utterly fails to do that, that is a showing, that
5  can demonstrate a showing of bad faith, which is sufficient
6  to demonstrate interested for demand of futility.
7  THE COURT: What the information -- wasn't that
8  information available at the time the Judge van Gestel
9  rendered his opinion?
10  MR. JONCKHEER: It was not, Your Honor.
11  THE COURT: It wasn't?
12  MR. JONCKHEER: No. Because the restatement did
13  not occur. It was not revealed until July.
14  THE COURT: And when did Judge van Gestel render
15  his decision?
16  MR. JONCKHEER: I believe he rendered in
17  September.
18  THE COURT: Isn't that the operative date?
19  MR. JONCKHEER: No because in his order, he
20  specifically says that he is ruling on the complaint as
21  written and as filed on February 20th.
22  THE COURT: But he is ruling as to the date.
23  Again, that is what I am looking to for purposes of
24  collateral estoppel evaluation. The judgment that I am
25  observing and obligated to observe is the one -- is as of

Page 7

1  the date the judgment enters.
2  Now, if people didn't take steps to protect
3  themselves, if they didn't bring matters to the attention of
4  Judge van Gestel, if they didn't choose to amend their
5  complaint, that is a different issue.
6  MR. JONCKHEER: He didn't give leave to amend.
7  THE COURT: It was sought?
8  MR. JONCKHEER: I don't know that, Your Honor, but
9  I assume it was.
10  THE COURT: What do you mean you assume it was?
11  Isn't that relevant to evaluation here?
12  MR. JONCKHEER: I think the point is, that some
13  later information was submitted to Judge van Gestel
14  according to the defendant's papers.
15  THE COURT: If you are going to oppose it, didn't
16  you inquire?
17  MR. JONCKHEER: Did I inquire what, Your Honor?
18  THE COURT: Inquire whether or not this
19  information was submitted, not submitted, whether or not
20  leave to amend was permitted, not permitted?
21  MR. JONCKHEER: I know some was, that some
22  additional information was submitted but from the collateral
23  estoppel purposes, Your Honor, I believe that the Court
24  should look at what the order says and what the issues are
25  that the court ruled upon. The Court rejected any amendment

Page 8

1  to the complaint and also rejected --
2  THE COURT: You said "rejected any amendment to
3  the complaint"?
4  MR. JONCKHEER: Yes. The Court denied leave to
5  amend; that is in the order.
6  THE COURT: He denied leave to amend?
7  MR. JONCKHEER: That's right. The complaint was
8  never amended in this state case.
9  THE COURT: That it was never amended is different
10  from denying leave to amend.
11  MR. JONCKHEER: Well, the order says -- I can
12  infer, Your Honor, from what the judge said about leave to
13  amend, that it was requested. The Court accepts Supreme
14  Court reasoning, such dismissal ought to be without leave.
15  THE COURT: Hold on for a second.
16  Okay. What page are you pointing to?
17  MR. JONCKHEER: It's Page 9 of Judge van Gestel's
18  order.
19  (Pause.)
20  THE COURT: Some policies supports the -- is that
21  what you are saying?
22  MR. JONCKHEER: I am sorry, Your Honor.
23  THE COURT: I got Page 9 in front of me.
24  MR. JONCKHEER: Yes.
25  THE COURT: And what is the specific thing that

Page 9

1  you want me to look at?
2  MR. JONCKHEER: Well, I am pointing to the -- I am
3  pointing to that sentence and --
4  THE COURT: Wait. Let me see. Maybe the
5  defendants can answer it. Was there a request for leave to
6  amend?
7  MR. HALSTON: There was not, no motion was ever
8  filed what the plaintiffs in the state court case. In
9  footnote 6 of their brief, was to say we've not sued
10  Thompson, the other Board member, outside the director was
11  not named as a defendant, either in the State Court action
12  or the Federal Court action, and they added a sentence,
13  footnote 6 to say to the extent you want us to add him, we
14  ask leave to add Thompson at some later date. And that's
15  all, what was ever presented with respect to any request for
16  amendment, Your Honor.
17  THE COURT: Do you have any basis to disagree with
18  that?
19  MR. JONCKHEER: Well, from what I understand, Your
20  Honor, reading under --
21  THE COURT: From which you understand. You know,
22  do you have any facts to bring to my attention apart from
23  this argument from exercise of pure reason?
24  MR. MARTLAND: I am sorry, Your Honor.
25  THE COURT: Do you have anything to bring to my

3 (Pages 6 to 9)

Gibson Realtime Reporting
617 650-6288

P.O. BOX 47
Fax: 800 436-2729

DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 10

1  attention that is specific, or you just going to wing it?
2      MR. JONCKHEER: Your Honor, I believe that Judge
3  van Gestel concluded that he would not give leave to --
4      THE COURT: Now --
5      MR. MARTLAND: Under the Delaware Supreme Court.
6      THE COURT: The plaintiffs in the state court, I
7  am told, maybe you know differently but apparently you don't
8  know at all the plaintiffs in the state case apparently did
9  not move to amend.
10     MR. JONCKHEER: They did not move to amend, that's
11 right.
12     THE COURT: How do we know what Judge van Gestel
13 is going to do or would have done had they?
14     MR. JONCKHEER: We don't, Your Honor, except that
15 in typical -- maybe this is the problem that I am having
16 understanding, that the -- typically when the complaint is
17 dismissed on the first motion to dismiss, leave to amend
18 would follow. That apparently is not what Judge van Gestel
19 concluded here.
20     THE COURT: Typically? People have, I think, a
21 rather unusual view, something that maybe I ought to
22 precurse for purposes of the securities action, the class
23 action. The idea that this is some sort of interactive
24 process, that the Court gets to mark up the complaint, and
25 then the plaintiffs get to file another one. First question

Page 11

1  I am going to ask the class plaintiffs is: Is this your
2  final complaint? Because if it isn't, they better file
3  their final complaint before I act on their motion to
4  dismiss. You apparently are laboring under a similar
5  apprehension. That there is one free shot. That you don't
6  have to amend your complaint, and that they didn't have to
7  amend their complaint in the state court. That simply is
8  not the case. And so I want to disabuse you of that. You
9  told me that Judge van Gestel wouldn't let them amend their
10 complaint. Apparently, they never asked to.
11     MR. JONCKHEER: Well, it appears he did ask with
12 respect to that particular party.
13     THE COURT: That's not dropping something in a
14 footnote, like say foot note 25.
15     MR. JONCKHEER: Motion to amend, correct, that I
16 can see. That -- that appears to be the case.
17     THE COURT: There is no motion to amend, and isn't
18 the issue then for us whether or not there was adequate
19 representation of the shareholders for purposes of the
20 derivative action?
21     MR. JONCKHEER: Well, I would submit, Your Honor,
22 that under the collateral estoppel analysis, okay, in the
23 First Circuit, has said following regarding collateral
24 estoppel. -- issues transferred by significant changes, and
25 that is in the DeCosta case cited by the defendants.

Page 12

1      THE COURT: That is a class case. Really, I guess
2  we have to deal with it in two parts. First is what was the
3  state of the record, state of bidding actually, at the time
4  that the initial judgement was entered in the State Court.
5  And just a moment. And that is because under State Court
6  23.1, just as under federal 23.1 analysis, there is not --
7  there is an obligation for the state to see representation.
8  It's implicit in its determination, and it's part of the
9  judgment.
10     Okay. So now we say what was the state of the
11 bidding at the time that Judge van Gestel entered his order?
12 And the information that you are pointing me to was all
13 available, apparently not for some reason brought to his
14 attention, formally.
15     MR. JONCKHEER: Well, Your Honor, I would submit
16 that that's the reason that the -- both the collateral
17 estoppel issue, the only thing Judge van Gestel held is that
18 the complaint that he read that was filed on February 20th,
19 did not have the facts. That's the only thing he held.
20 There is no res judicata effect.
21     THE COURT: No, he didn't. He held there was in
22 futility in the failure to make that demand.
23     MR. JONCKHEER: He held there was -- are no facts
24 pled to excuse demand. That is the only thing he held.
25 Underlining substantive claims remain in effect.

Page 13

1      THE COURT: They may but you have to perfect them
2  in the proper fashion.
3      MR. JONCKHEER: That's right, and that is what we
4  are doing by the complaint filed in this case.
5      THE COURT: No. Now, you are faced with res
6  judicata effect of a determination with respect to that.
7  There is a judgment.
8      MR. JONCKHEER: But the only issue litigated is
9  the demand futility issue, which resulted in a judgment.
10     THE COURT: So what that means is that every time
11 one shareholder group gets booted out, on failure of the --
12 of stating a claim, that another one can rise from the
13 action somewhere else and bring their own lawsuit.
14     MR. JONCKHEER: No because there was no failure to
15 state a claim. There was failure to allege demand for
16 futility. That is different from the underlining claim,
17 which defendants concede remains in effect. The underlining
18 claims are there to be enforced. The question the Judge van
19 Gestel decided is whether the state plaintiff had showed the
20 facts to take those claims and prosecute them. Judge van
21 Gestel read that complaint. He didn't like it. The most
22 recent fact in that complaint regarding the restatement came
23 from February 11th of 2004, which was simply an announcement
24 that the company was looking at 2003 and might have to
25 restate and was doing an investigation.

4 (Pages 10 to 13)

Page 14

1    THE COURT: There was no collateral estoppel
2  effect in general cases whenever the facts alleged.
3    MR. JONCKHEER: Your Honor, I believe that is
4  correct.
5    THE COURT: Is there case law that says that?
6    MR. JONCKHEER: No. But the collateral estoppel
7  concent, the issue is clear, and as I just read from the
8  First Circuit opinion -- is a change in the facts that are
9  central.
10    THE COURT: Any change of fact -- any change in
11  the facts?
12    MR. JONCKHEER: Material change here, Your Honor,
13  and they are material.
14    THE COURT: All right. And the materiality is
15  what?
16    MR. JONCKHEER: Materiality is the admissions by
17  the defendants regarding the state of company internal
18  controls. Now, that occurred in July. So what Judge van
19  Gestel looked at was the -- looks like '03 might be restated
20  that is the only thing he knew. What we know here is that
21  2001, 2002, and 2003 were restated. We know by how much,
22  what accounts.
23    THE COURT: It wouldn't make any difference in
24  terms of the factual predicate for which he -- on which he
25  was acting.

Page 15

1    MR. JONCKHEER: But it makes --
2    THE COURT: It's two parts. The first part is it
3  was available, and it wasn't pressed, and you are bound by
4  the determination of the state plaintiffs with respect to
5  this group of action. So I have to say they chose not to
6  present it. And if I were to say anything else, I would be
7  saying this was an inadequacy representation in the state
8  case.
9    MR. JONCKHEER: Your Honor, they presented a
10  complaint. The defendants moved to dismiss it. The
11  plaintiffs submitted some additional information, and there
12  is no indication that the judge thought about that, that he
13  even cared if additional information was disclosed because
14  in footnote 5 on Page 7 of his order --
15    THE COURT: What is the exception to the
16  collateral estoppel rule, the judge didn't care?
17    MR. JONCKHEER: I am sorry, Your Honor. I
18  misspoke.
19    THE COURT: Go on. Substantiate it.
20    MR. JONCKHEER: The point is the judge was
21  presented with additional information, and I say that within
22  the context of his legal analysis, Your Honor, that he
23  didn't think it was relevant. He concluded that the
24  complaint as written is what is -- whether it's going to be
25  determinative of what a demand is excused. In footnote 5 on

Page 16

1  Page 7 of his order, he says the complaints were live or die
2  as written when the arguments were presented to the Court.
3  Live or die is written. So the point is that under the
4  Delaware cases that he is relying upon, that indeed is the
5  standard that demand futility is gaged at the time the
6  complain is filed. No additional facts are relevant. That
7  is why.
8    THE COURT: We are back to this question of
9  whether or not there is the right to amend the complaint; is
10  that what you are saying? That he effectively denied the
11  right to amend the complaint?
12    MR. MARTLAND: What I am saying, that it's clear
13  from procedural history there, that the plaintiffs tried to
14  offer some additional information to the Court.
15    THE COURT: What does that mean, tried to offer
16  additional information?
17  How do you do that? You do that by a complaint.
18    MR. MARTLAND: That's right.
19    THE COURT: And they didn't move to amend the
20  complaint.
21    MR. JONCKHEER: They didn't move to amend the
22  complaint, that's correct, Your Honor. But I believe the
23  hearing on the motion to dismiss, and I wasn't a party to
24  that. I don't know, but I believe it occurred right around
25  the same time that the restatement finally came out that the

Page 17

1  restatement was issued. So I believe that the timing is
2  such that the motion to amend, the motion to dismiss was
3  fully briefed, I believe as of the spring, and hearing
4  occurred I believe in July, but the defendants would have
5  to -- I don't know that, exactly when. It was June
6  apparently. So at that point, when the hearing was held,
7  the restatement hadn't even come out yet, so those facts
8  could not have obviously been disclosed to Judge van Gestel.
9    THE COURT: I don't know why not.
10    MR. JONCKHEER: You mean after the hearing?
11    THE COURT: No one tried to, apparently.
12    MR. JONCKHEER: Well, apparently the plaintiff
13  does not submit it after the hearing.
14    THE COURT: That entitles you to come in and make
15  a lawsuit.
16    MR. JONCKHEER: Not to bring another lawsuit, but
17  to allege facts that support our derivative complaint.
18    THE COURT: Basic legal environment was alleged
19  before Judge van Gestel is nothing in the nature of the
20  legal theories that you've alluded to that wasn't before
21  him. Now, there were factual problems with it, he
22  identified them, but there is nothing that in terms of
23  charges that were developed here that weren't before Judge
24  van Gestel. Just got worse for the company.
25    MR. JONCKHEER: That's right. And those are facts

5 (Pages 14 to 17)

Gibson Realtime Reporting
617 650-6288

P.O. BOX 47
Fax: 800 436-2729

DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 18

1  that are before Your Honor.
2      THE COURT: See, it seems to me it's outright
3  refusal to pursue the idea of making a demand, that's
4  purely, and some perception telling me that business
5  judgment was harder to deal with than --
6      MR. JONCKHEER: Your Honor, the policy of the law
7  is that demand is excused under certain circumstances. How.
8  Now, we believe those circumstances exist, so that's why the
9  complaint was filed in the form it was filed.
10      THE COURT: Okay. Well, I guess I need to
11 understand with some particularity exactly what it is in
12 terms of theory, there was before Judge van Gestel.
13      MR. JONCKHEER: The theory, Your Honor, is clear.
14 The Caremark case is an important Delaware case, which in
15 context of proving the settlement of the Court, described
16 the standards of liability for what is called failure of
17 oversight case where the Board does not operate an internal
18 control system in such a fashion that the corporation is
19 harmed as a result of the facts alleged in the complaint
20 that we filed in October, three months after the
21 restatement, alleges 9 separate categories of internal
22 controls that were deficient at this company.
23      THE COURT: Let me understand this. Your
24 position, I shouldn't have let you file this amended
25 complaint?

Page 19

1      MR. JONCKHEER: No.
2      THE COURT: Something wrong in the Delaware law
3  about filing an amended complaint?
4      MR. JONCKHEER: Well, under Delaware law, that
5  is -- there are cases that suggest that --
6      THE COURT: Are you telling me that's why Judge
7  van Gestel didn't permit.
8      MR. JONCKHEER: That is what the order says, Your
9  Honor.
10      THE COURT: That is not what it says and you know
11 it.
12      MR. JONCKHEER: I am sorry. I understood that
13 Judge van Gestel said that there would be no leave to amend
14 based on the Delaware case.
15      THE COURT: None was asked for. What he is saying
16 at the end of the case, having rendered a judgment, there is
17 not going to be leave to amend. You had a shot at it, or
18 more accurately, your client had a shot at it, more
19 accurately the representative of your client had a shot at
20 it, and they weren't successful.
21      MR. JONCKHEER: I believe under federal procedure,
22 and I have a case by Judge Keeton also cited by the
23 defendants, which specifically says that in the context of a
24 derivative case under 23.1 --
25      THE COURT: 23.1.

Page 20

1      MR. JONCKHEER: -- which this case is brought
2  under, he is aware of no --
3      THE COURT: 23.1, not 22.
4      MR. JONCKHEER: That's right, 23.1.
5      I am aware of no case law in this circuit that
6  supports on contrary First Circuit dismissal under 23.1 have
7  been without prejudice. So leave to amend is granted, 23.1
8  derivative on the demand futility issue.
9      THE COURT: Let me put the same question to you.
10 Is this your best plan?
11      MR. JONCKHEER: Yes, Your Honor.
12      THE COURT: This is the one you are going to rise
13 and fall on.
14      MR. JONCKHEER: Let me say one thing, since this
15 is an evolving set of disclosures, it took months before the
16 restatement finally came out. Additional information has
17 come out, but I believe the current complaint alleges the
18 Caremark claim sufficiently.
19      THE COURT: I am telling you right now, that I am
20 going to act on the complaint that you tell me that is your
21 best complaint. Is this your best complaint? This is not
22 going to be a game of -- or more accurately, a presentation
23 of shareholders in which a new story is told every evening
24 to foreclose unhappy consequences. There is too much going
25 on in courts to spend time blue pen or highlighting or

Page 21

1  anything the complaints of those who aren't prepared to
2  stand or fall by their complaint.
3      Are you prepared to stand or fall by your
4  complaint?
5      Because there will be no leave to amend once a
6  judgment is entered here. Do you understand that?
7      MR. JONCKHEER: I understand.
8      THE COURT: Okay. So is this your complaint?
9      MR. JONCKHEER: Your Honor --
10      THE COURT: Is this your complaint?
11      MR. JONCKHEER: Yes. But I believe that there are
12 additional facts that developed since it was filed.
13      THE COURT: You are being afforded the opportunity
14 to make whatever modifications you want in the complaint now
15 before I go through the final process of determining whether
16 or not this complaint is adequate. That is what it means to
17 have freely offered, an opportunity to amend the complaint.
18 It doesn't mean that we spin through this over and over and
19 over again.
20      MR. JONCKHEER: I understand, Your Honor.
21      THE COURT: Is this your complaint?
22      MR. JONCKHEER: If Your Honor's permitting leave
23 to amend, then I would accept that.
24      THE COURT: If I am permitting what?
25      MR. JONCKHEER: Leave to amend the complaint.

6 (Pages 18 to 21)

Gibson Realtime Reporting
617 650-6288

P.O. BOX 47
Fax: 800 436-2729

DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 22

1  THE COURT: I am before I act on it. You know
2  what the objections are. You've heard what I have had to
3  say about it. Is this the complaint that you are prepared
4  to rise or fall on?
5  MR. JONCKHEER: Your Honor, I would like leave to
6  amend the complaint. No.
7  THE COURT: When?
8  MR. JONCKHEER: Within a time period that we
9  can -- that the court can establish.
10  THE COURT: What does that mean?
11  MR. JONCKHEER: 30 days.
12  THE COURT: And that will be your final complaint?
13  MR. JONCKHEER: Your Honor, yes.
14  THE COURT: Any objection on the part of the
15  defendants?
16  MR. HALSTON: Certainly prefer to have it
17  dismissed with prejudice at this time, Your Honor.
18  THE COURT: Do doubt.
19  MR. HALSTON: The Coughlin case, on the issue of
20  permissible to dismiss this case with prejudice in the First
21  Circuit, actually at the end of that opinion, the Court in
22  rendering its decision said in noting what the District
23  Court had said about demand futility and whether it would be
24  dismissed with or without prejudice, said the dismissal
25  with -- with prejudice, with the issue, obligation to make

Page 23

1  demand on the directors with respect to the substantive
2  complaint. And I think in the context of where we are now,
3  Your Honor, they filed an already amended complaint. Recall
4  they filed an original complaint back in February or March
5  last year. Consolidated amended complaint on October 12.
6  It went in having the benefit of Judge van Gestel's decision
7  on December 27th, and in that context, I think the Court
8  should further legitimate policy from the Delaware courts,
9  have said time and time again that directors shouldn't have
10  to be put through the expense of having to continue --
11  THE COURT: Those were procedure issues, aren't
12  they?
13  MR. HALSTON: Actually, the Supreme Court has made
14  clear that in considering demand futile, the demand futile
15  is an issue of substantive law.
16  THE COURT: But the question of whether or not to
17  amend the complaint or the pleading constraints that
18  Delaware may put on that, is a matter of Delaware law and
19  procedural law that I am not obligated to imply.
20  MR. HALSTON: I think Your Honor has his own
21  discretion with granting leave to amend, Your Honor. I
22  think that is right.
23  THE COURT: So my view is that I will permit them
24  30 days for their final complaint, but it will come to a
25  conclusion at that point.

Page 24

1  MR. HALSTON: May I -- would Your Honor like to
2  hear anything on collateral estoppel and why that might
3  short-circuit any leave to amend here?
4  THE COURT: This is their opportunity to have
5  their best shot. They actually had -- this will be their
6  third.
7  MR. HALSTON: This will be their third.
8  THE COURT: So there won't be any question whether
9  or not there is any adequate opportunity.
10  MR. JONCKHEER: Thank you, Your Honor.
11  THE COURT: Okay. So we will give you 30 days. I
12  will deny the motion to dismiss as moot in light of that
13  there is going to be a further complaint filed.
14  MR. HALSTON: Would Your Honor like to schedule a
15  briefing schedule on that?
16  THE COURT: I think I want to hear about the view
17  of the plaintiff's securities case first.
18  MR. JONCKHEER: Thank you, Your Honor.
19  THE COURT: Are you ready to go forward on
20  plaintiffs' claim.
21  MR. CERA: Your Honor, Solomon Cera for the lead
22  plaintiff.
23  Your Honor, of course the complaint -- a complaint
24  can always be improved upon. We are dealing with a very --
25  THE COURT: I am telling you, I don't know how

Page 25

1  clear I have to be about this. The question is:
2  Is this the one that you want to rise or fall on?
3  You have seen the objections that have been raised
4  by the defendants here, and they are really questions of
5  specificity.
6  Now, are you prepared to go forward on this
7  complaint or not?
8  MR. CERA: Your Honor, if the Court deems it
9  insufficient --
10  THE COURT: This is not my -- the question is are
11  you prepared to go forward or not?
12  MR. CERA: We have more to add, Your Honor.
13  THE COURT: Well, no doubt you do. Is that what
14  you want to do, because that will be the last time you got
15  to do it.
16  MR. CERA: Well, how -- I'm interpreting the
17  Court's comments this way, Your Honor. You are saying if I
18  chose to go forward today and make an argument and attempt
19  to convince the Court that this complaint is sufficient
20  under the applicable law and Your Honor disagreed, the case
21  would be terminated.
22  THE COURT: Yes.
23  MR. CERA: Well, then we want to file another
24  complaint, Your Honor.
25  THE COURT: All right. 30 days?

7 (Pages 22 to 25)

Gibson Realtime Reporting
617 650-6288

P.O. BOX 47
Fax: 800 436-2729

DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 26

1  MR. CERA: No, Your Honor. I would like longer
2  than that. I would like to point out, Your Honor, this is
3  the first complaint that my client has filed in this matter.
4  We are dealing with the PSLRA, a very demanding statute as
5  Your Honor knows and as apparent from Your Honor's opinions.
6  Many of these opinions have talked about how it's very
7  demanding on a plaintiff to do this.
8  We have no discovery. Cabletron talked about
9  standards to be applied in evaluating the complaint are
10 different before and after discovery. We have had
11 absolutely no discovery. We have no cooperation from the
12 issuer, no cooperation from any of the defendants. There
13 are confidential agreements that they have with respect to
14 former employees that they tried to enforce. We are doing
15 our best, Your Honor, to investigate with the tools that we
16 have at our disposal. I would like a longer period.
17 THE COURT: Wouldn't be any better if I dismissed
18 the complain and gave you leave to file again.
19 MR. CERA: Well, Your Honor, it might be in the
20 sense that we would know what the Court found to be
21 deficient.
22 THE COURT: True. What you get is a preliminary
23 read from the Court on that, and then I have to tell you is
24 what I find most objectionable about this, that there is
25 this extraordinarily demand for time and resources and

Page 27

1  effort on the part of the Court to function more less like
2  the fellow behind the elephant.
3  MR. CERA: Your Honor, I appreciate that, and I
4  know it's demanding. It's a difficult area of the law, and
5  there are tons of cases to analyze and a lot of authority
6  but, Your Honor, the Federal Supplement and the Federal
7  Reporter are full of decisions by courts considering
8  complaints, analyzing them, and then pointing out in what
9  ways they are deficient and allowing leave to amendment. In
10 fact, some of your prior opinions have done that, and I
11 appreciate that it is burdensome on the Court.
12 Your Honor, I would certainly like to know how the
13 Court feels our complaint is deficient.
14 THE COURT: Is there any litigant anywhere who
15 wouldn't want a preview of what the Court is going to do in
16 ruling on a particular motion?
17 MR. CERA: Of course, Your Honor. Of course we
18 would like that.
19 THE COURT: So now we are talking about trying to
20 find some way, fairly but expeditiously, to resolve this
21 with a minimal amount of demand resource of all parties.
22 What happens is that there are fully briefed motions like
23 this in which you see what it is that defendants say is
24 deficient. And then you say, what we would like is a
25 preliminary view from the Judge. And frankly, I am not

Page 28

1  going to do it.
2  MR. CERA: I appreciate that. I know Your Honor
3  knows that no matter what we allege in the amended
4  complaint, if we got, you know, 500 pages of specific
5  allegations from confidential witnesses, they are going to
6  say the same thing, Your Honor, no matter what we allege.
7  And ultimately we are going to --
8  THE COURT: Then you get to say the same thing
9  twice; is that right?
10 MR. CERA: No, Your Honor, because we believe we
11 are going to be able to convince you with our allegations
12 and our arguments that the complaint is sufficient under --
13 THE COURT: And I will give you the opportunity to
14 do so.
15 MR. CERA: Very well.
16 THE COURT: But not the opportunity to do so once
17 and then do so again and do so again. You've got to come to
18 rest on this --
19 MR. CERA: Your Honor, as pointed out --
20 THE COURT: -- in light of the options that have
21 been raised, which are the ones that I am going to rule on.
22 MR. CERA: Your Honor, as I pointed out, this is
23 our first complaint in this litigation. We would like a
24 minimum of 60 days.
25 THE COURT: A minimum of 60 days?

Page 29

1  MR. CERA: Your Honor, because since this
2  complaint was tendered to the court in December 2004, we are
3  continuing to investigate this case on behalf of our client
4  and the class. There are new efforts being made to find
5  sources of information, to fill in whole, so the court may
6  find exist to satisfy the pleaing standard, that is the
7  defendants are going to say violated no matter what we
8  allege, that takes time. There is no cooperation. There is
9  no discovery. There are confidentiality agreements.
10 THE COURT: You told me that, and that frankly is
11 not very much different from any other case in this posture.
12 MR. CERA: Well, Your Honor, I am aware of cases
13 in this posture that routinely get 60 days leave to amend.
14 THE COURT: It's not a matter of 60 days to amend.
15 The situation is you are at the motion to dismiss stage.
16 That is what the PR -- it's a critical stage in this
17 litigation, and it is within entitlement to enforce
18 discovery. Nothing new there.
19 MR. CERA: Right.
20 THE COURT: That has been the case all along. So
21 you say 60 days is going to be better?
22 MR. CERA: I am sorry, Your Honor.
23 THE COURT: 60 days is going to be better?
24 MR. CERA: Your Honor, we will have --
25 THE COURT: One that you have to rise and fall on;

8 (Pages 26 to 29)

Gibson Realtime Reporting
617 650-6288
P.O. BOX 47
Fax: 800 436-2729
DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 30

1  you understand that?
2      MR. CERA: I hear what Your Honor is saying, Your
3  Honor, and I think we will have greater detail in that
4  complaint to the extent that we can do it, of course we
5  will. That is our job as lawyers, and we fully intend to do
6  it. I was prepared to argue today, Your Honor, why this
7  complaint should satisfy the Cabletron standards. I am
8  prepared to do that, but if Your Honor preliminary
9  indication is you don't want to go into that exercise
10 because of the burden, we will take the 60 days and improve
11 it.
12     THE COURT: I tell you what my principal concern
13 was and is, I find it an affront, frankly, to read through a
14 lengthy brief, some 45 pages long, only to be told if for
15 any reason the Court finds the allegations insufficient, we
16 respectfully request leave to amend, not because we have
17 found something new, but simply because we want a chance to
18 engage in an interim process with the Court. And that, it
19 seems to me, is a very substantial presumption upon
20 resources of the Court. There are other cases. I assure
21 you there are other cases on the docket, and they require
22 attention, too.
23     MR. CERA: Of course.
24     THE COURT: And the idea that we get to have rough
25 drafts of resolutions isn't particularly appealing to me.

Page 31

1      MR. CERA: I appreciate that, Your Honor, and I
2  understand the Court's feelings about that. It certainly
3  wasn't meant in any way as an affront. It was a -- we cited
4  Your Honor's own opinion.
5      THE COURT: Prior to which I cited the Supreme
6  Court's instruction necessary in the absence of the undue
7  delay, bad faith, dilatory motive, repeated failure to cure
8  deficiencies, undue prejudice, those are the standards. But
9  now I am going to permit that, so that we are all going to
10 be focused on what you think your best shot is.
11     MR. CERA: Okay. Your Honor, I accept that. As I
12 say, I was prepared to defend this complaint, but we will
13 give you our best shot the next time. If we can --
14     THE COURT: One that you are prepared to live or
15 die with; is that right?
16     I am asking this question in this way because I
17 don't want to be faced again with someone saying -- well,
18 you can always improve a complaint, which is no doubt true,
19 and at some point, it has to come to an end.
20     MR. CERA: Your Honor, I understand. I have been
21 practicing in this area 25 years, and this is frankly an
22 extraordinary situation, I think, for plaintiff in this
23 position because, frankly, the normal experience, the common
24 experience if you will that have I had in security
25 litigation where it has become increasingly difficult to

Page 32

1  state a claim for relief under the PSLRA is that courts --
2      THE COURT: Not in the First Circuit. The
3  standards of appeals are frankly what the First Circuit have
4  been talking about for some time.
5      MR. CERA: I understand that, but I understand
6  your court -- Court basically telling us today that this
7  complaint is insufficient.
8      THE COURT: I haven't told you any such thing. I
9  asked you whether or not you are ready to go with it,
10 understanding that there will not be leave to amend if you
11 rise and fall on this complaint, and I have dismissed it.
12     MR. CERA: Your Honor, I am not going to forego
13 the opportunity to add to this complaint.
14     THE COURT: All right. So that's where we are.
15     MR. CERA: Very well.
16     THE COURT: And I want you to understand that you
17 give me a date, and that will be the date on which you rise
18 or fall.
19     MR. CERA: We would like 60 days, Your Honor, from
20 today.
21     THE COURT: All right. Now, while we are at it,
22 so you got some idea of what is on my mind, why do you need
23 to have undisclosed witnesses? Undisclosed -- first thing
24 that is going to happen in the discovery in any case is they
25 are going to ask who introduced this unnamed vice president,

Page 33

1  so why don't you name them?
2      MR. CERA: Your Honor, the answer to that is
3  essentially honoring a request from the witness at this
4  point in time.
5      THE COURT: Okay. You honor it at the time of
6  discovery?
7      MR. CERA: I think not, Your Honor. There is
8  disclosure obligations.
9      THE COURT: Now we are talking about when it is
10 you are going to disclose, not when.
11     MR. CERA: Your Honor, I don't feel right, if you
12 will, in being told by a witness that we prefer at this time
13 to remain anonymous for reasons that I may not be aware of.
14     THE COURT: You've got to articulate them in some
15 fashion. I mean, you know, if I am doing a search warrant,
16 I have to have some justification for unnamed informants and
17 some basis to rely upon the statement of unnamed informants.
18 So you talked to people who don't want to have their names
19 used at this time. So they are waiting to see whether or
20 not I let the complaint be amended; is that it?
21     MR. CERA: Your Honor, I don't think they are
22 thinking of it in those terms. It's very common for
23 securities complaints to have unnamed confidential sources.
24     THE COURT: I see that, and I have seen the case
25 law on it and, frankly, it's become something of an

Gibson Realtime Reporting
617 650-6288

P.O. BOX 47
Fax: 800 436-2729

DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 34

1  epidemic, and I want to step back from that and ask a
2  question that I have actually asked of a couple other cases
3  already, which is sooner or later these people's names are
4  going to be known, unless you are unsuccessful.
5       And so exactly what I suggested earlier, this is
6  something of a game of chicken. See whether or not you can
7  make it past the initial huddle, that's various kinds of
8  procedural requirements imposed with a minimal amount of
9  effort. So --
10      MR. CERA: No.
11      THE COURT: Short of it is you are not telling,
12 not identifying who these unnamed informants are because
13 they asked you not to without having some reason for doing
14 that.
15      MR. CERA: Your Honor, first of all, I want to
16 assure the Court we are not trying to escape here with
17 minimal amount of effort, and there is no connection between
18 that and not naming the source. We made a significant
19 effort under very difficult circumstances.
20      Your Honor, the law doesn't require it at this
21 point. The First Circuit law does not require disclosure of
22 the names as long as there is other information presented in
23 the complaint that corroborates or tends to corroborate the
24 veracity of the information.
25      THE COURT: I am not saying it's required. I am

Page 35

1  asking why you aren't doing it.
2       MR. CERA: Your Honor, because it's fear of
3  retribution of some of the witnesses by the company.
4       THE COURT: Won't there be retribution when their
5  names are discovered?
6       MR. CERA: It may or may not be. It's unknown. I
7  don't know what is going to happen in the future. No one
8  knows what is going to happen to this company or to these
9  people. It's all speculation. If the time comes that it's
10 required to make disclosures, the disclosures will be made.
11 But at this point in time, when we are talking about
12 investigating a complaint and gathering information, and you
13 are dealing with former employees or former officers who may
14 be on bad terms with the company and expressly request at
15 this point in time --
16      THE COURT: If they are former employees on bad
17 terms with the company, is that something that should be
18 disclosed in the complaint for purposes of evaluating the
19 credibility of statements that they have made and whether or
20 not it fits together?
21      MR. CERA: That is a good question, Your Honor,
22 but I don't think it needs to be disclosed, no, and I didn't
23 mean to suggest by the way in any way, shape, or form that
24 was the situation here.
25      THE COURT: Just something that came to mind as

Page 36

1  you were discussing it.
2       MR. CERA: I understand. Your Honor, no, I don't
3  think it needs to be disclosed. There is all kinds of
4  permutation of factual scenarios that can arise in this
5  world.
6       THE COURT: I am fully aware of that. I raise the
7  question. You are required to do it, but it's certainly
8  something that will be taken into consideration in trying to
9  piece together the degree of which this complaint meets the
10 obligation to show a strong likelihood of or make strong
11 demonstration of --
12      MR. CERA: Fair in mind -- Your Honor, we will
13 keep that in mind.
14      THE COURT: I go back to the earlier question.
15 This is simply to provide cover for the people who -- there
16 is no other justification, no one made a justification for
17 it?
18      MR. CERA: Your Honor, I think at the end of the
19 day, that's the reason. That's -- I have given you the
20 reason. I don't know what it may be in these witnesses'
21 heads. They have requested confidentiality, and I am not a
22 mind reader. I am a lawyer, operating and trying to
23 investigate, and I have agreed to honor that request.
24      THE COURT: Okay. You have in mind a perspective
25 that I have, and it's this, that from assistant attorney

Page 37

1  dime me with an unnamed informant, I would ask some
2  questions to determine whether or not there was probable
3  cause, and I am not sure why I shouldn't do that here.
4       There is of course case law out there where
5  principally from the Second Circuit, dealing with this kind
6  of issue. It is, I think, a work in progress on these
7  issues, and so I raise it so that you are not surprised if
8  in evaluating a claim in which there is simply hung out some
9  description of a job and unnamed holder of that job, that
10 not much weight is attached to assertions.
11      MR. CERA: Very well, Your Honor. We will keep
12 that in mind. I want to assure the Court, however, that
13 these are real people, and this is real information, and if
14 the difference is going to be just providing a name and
15 that's going to tip the balance --
16      THE COURT: Let me tell you what I have done in
17 certain cases. When I have had some question about whether
18 or not there are real people with real positions, I have
19 required that the investigative basis for it be provided to
20 me in camera.
21      MR. CERA: Uh-huh.
22      THE COURT: So just telling you how carefully I
23 intend to read this and have here. There are important
24 principles involved in all of this, and the use, increasing
25 use of unnamed informants seems to me to be a trend not

Gibson Realtime Reporting
617 650-6288
P.O. BOX 47
Fax: 800 436-2729
DORCHESTER, MA 02121
www.gibsonrealtimereporting.com

Page 38

1  necessarily to be encouraged.
2     MR. CERA: Okay. We will definitely keep that in
3  mind, Your Honor, in formulating the next complaint.
4     THE COURT: Okay. All right. So 30 days for the
5  derivative plaintiffs to file their complaint. Their final
6  complaint, which is July 1. 60 days for the securities
7  plaintiffs to file their final complaint, which is
8  August 5th. The responses, responsive pleading for the
9  derivative defendants, August 5th, and the opposition by
10 August -- I know I am getting on people's vacations.
11    MR. HALSTON: I was wondering if we could have
12 until August 15th. I know I have two weeks of vacation
13 there, and I asked Mr. Gold and I understand he does as
14 well.
15    THE COURT: Okay. So August 15 for response of
16 pleadings and then September 12 for opposition reply by
17 September 23rd, we undoubtedly set it up for hearing in the
18 early part of October, but I don't see a date yet for sure
19 on the case. With respect to the -- sorry -- review of the
20 case. With respect to the securities case, the complaint as
21 said on August 5th, responsive pleadings. We will make it
22 September 12. The opposition October 10 and reply
23 October 21. Schedule them all on the --
24    MR. HALSTON: October.
25    THE COURT: October 21 and I won't schedule them

Page 39

1  on the same day for a hearing, we will have separate dates
2  for.
3     So the motions to dismiss are denied as moved
4  having given leave to the plaintiffs to file amended
5  complaints. Here to address any potential deficiencies that
6  they may have identified with the understanding that that
7  will be also a complaint in both cases, and that is the
8  ruling in both cases, all right.
9     Anything else we need to deal with?
10    MR. CERA: No.
11    THE COURT: All right. We will be in recess.
12    THE CLERK: All rise.
13 (Recessed at 4:30 p.m.)
14    \*\*\*\*\*
15    COURT REPORTER'S CERTIFICATE
16 I, TERI CELESTE GIBSON, CSR, RPR, CRR, do hereby
certify that the foregoing pages 1 through 39, are a true
17 and accurate transcription of my stenographic notes taken in
the above-entitled proceedings, prepared to the best of my
18 knowledge, skill, and ability at the time and place
aforementioned.
19
20
21 _____
TERI CELESTE GIBSON, CSR    DATE: 7/30/05
22 This certificate only applies to transcripts produced,
copied, and signed by Teri Celeste Gibson, Court Reporter.
23
24
25

11 (Pages 38 to 39)