# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| DEBORAH CHIN, Individually and on behalf of all others Similarly situated, | ) ) ) | **Civ. Action No. 04-10294 DPW** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. AND STEPHEN NILL, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## DEFENDANT SONUS NETWORKS, INC.'S
## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Daniel W. Halston (BBO #548692)
Peter A. Spaeth (BBO #545202)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: October 24, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................2

I.      Descriptions of Mere Job Titles Or Positions Do Not Support The Probability That Plaintiff's Confidential Sources Would Possess The Information Alleged ........................2

II.     The Lack of Transactional Specificity Precludes a Strong Inference of Scienter and Dooms Plaintiff's Claims Under Rule 9(b)...........................................................................5

III.    Plaintiff Fails In Its Attempt To Avoid The Need To Plead Particularized Facts In Support Of A Strong Inference Of Scienter ....................................................................10

       A.      Knowledge of Accounting Problems Is Not Automatically Imputed ..................10

       B.      Cases Imputing Knowledge of Matters Affecting "Core Business" Are Inapplicable .....................................................................................................12

       C.      Scienter Cannot Be Imputed on the Basis of Plaintiff's Internal Controls Allegations ....................................................................................................................13

       D.      Controller Hemme's Knowledge Cannot Be Imputed to Sonus ...........................14

       E.      Scienter Cannot Be Imputed on the Basis of Internal Policy Violations ..............15

       F.      No Inference Can Be Drawn From The Magnitude of The Restatement ..............16

       G.      Plaintiff's Mere Motive And Opportunity Allegations Are Insufficient To Support A Strong Inference of Scienter ..........................................................18

             1.      Lack Of Insider Trading Undermines An Inference Of Scienter.............18

             2.      Plaintiff's Motive and Opportunity Allegations Are Inadequate .............19

CONCLUSION .................................................................................................................20

US1DOCS 5346661v2

## TABLE OF AUTHORITIES

Federal Cases

Acito v. IMCERA Group, Inc.,
   47 F.3d 47 (2d Cir. 1995) .......................................................................... 20

Albert Fadem Trust v. Am. Elec. Power Co.,
   334 F. Supp. 2d 985 (S.D. Ohio 2004) ...................................................... 14

American Bank Note Holographics, Inc. Sec. Litig.,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000) ........................................................ 17

Blatt v. Muse Techs., Inc.,
   Nos. Civ.A. 01-11010-DPW, Civ.A. 01-12173-DPW, 2002 WL 31107537
   (D. Mass. Aug. 27, 2002) .......................................................................... 16

Chalverus v. Pegasystems, Inc.,
   59 F. Supp. 2d 226 (D. Mass. 1999)........................................... 10, 13, 16, 17

Chill v. General Elec. Co.,
   101 F.3d 263 (2d Cir. 1996) ...................................................................... 20

City of Philadelphia v. Fleming Cos.,
   264 F.3d 1245 (10th Cir. 2001) ................................................................ 11

Collmer v. U.S. Liquids, Inc.,
   268 F. Supp. 2d 718 (S.D. Tex. 2003)...................................................... 12

Cosmas v. Hassett,
   886 F.2d 8 (2d Cir. 1989) .......................................................................... 11

Crowell v. Ionics, Inc.,
   343 F. Supp. 2d 1 (D. Mass. 2004)............................................ 12, 13, 15, 16, 17, 18

Druskin v. Answerthink, Inc.,
   299 F. Supp. 2d 1307 (S.D. Fla. 2004) ..................................................... 15

Epstein v. Itron,
   993 F. Supp. 1314 (E.D. Wash. 1998)...................................................... 13

Fidel v. Farley,
   392 F.3d 220 (6th Cir. 2004)..................................................................... 16

Geffon v. Micrion Corporation,
   249 F.3d 29 (1st Cir. 2001) ................................................................. 18, 19

US1DOCS 5346661v2

Giarraputo v. UNUMProvident Corp.,
   No. Civ. 99-301-PC, 2000 WL 1701294 (D. Me. Nov. 8, 2000) ................................. 20

Greebel v. FTP Software, Inc.,
   194 F.3d 185 (1st Cir. 1999) ....................................................................... 5, 6, 7, 18, 19

GSC Partners CDO Fund v. Washington,
   368 F.3d 228 (3d Cir. 2004) ............................................................................... 19, 20

Guerra v. Teradyne, Inc.,
   No. Civ.A. 01-11789-NG, 2004 WL 1467065 (D. Mass. Jan. 16, 2004).................................... 18

In re Advanta Corp. Sec. Litig.,
   180 F.3d 525 (3d Cir. 1999) ................................................................................... 11

In re Ancor Commc'ns, Inc.,
   22 F. Supp. 2d 999 (D. Minn. 1998) ........................................................................... 17

In re Apple Computer, Inc., Sec. Litig.,
   243 F. Supp. 2d 1012 (N.D. Cal. 2002)...................................................................... 3, 15

In re Ashworth Inc., Sec. Litig.,
   No. 99 CV-0121-L (JAH), 2000 WL 33176041 (S.D. Cal. July 18, 2000) ............................. 6, 8

In re Bio-Tech. Gen. Corp. Sec. Litig.,
   380 F. Supp. 2d 574 (D.N.J. 2005).......................................................................... 9, 14

In re Blockbuster, Inc. Sec. Litig.,
   No. 3:03-CV-0398-M, 2004 WL 884308 (N.D. Tex. April 26, 2004)........................................ 15

In re Bus. Objects S.A. Sec. Litig.,
   No. C 04-2401 MJJ, 2005 WL 1787860 (N.D. Cal. July 27, 2005)........................................... 12

In re Cabletron Systems, Inc.,
   311 F.3d 11 (1st Cir. 2002) ............................................................................... 2, 17

In re Campbell Soup Sec. Litig.,
   145 F. Supp. 2d 574 (D.N.J. 2001)........................................................................... 13

In re Cell Pathways, Inc.,
   No. 99-725, 2000 WL 805221 (E.D. Pa. June 20, 2000) ........................................... 13

In re Cendant Corp. Sec. Litig.,
   76 F. Supp. 2d 539 (D.N.J. 1999)............................................................................... 20

In re Cree, Inc. Sec. Litig.,
   No. 1:03CV00549, 2005 WL 1847004 (M.D.N.C. Aug. 2, 2005)................................................. 4

US1DOCS 5346661v2

In re Exodus Commc'ns, Inc., Sec. Litig.,
    No. C 01-2661 MMC, 160, 163, 2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ........................... 3

In re Exxon Mobil Corp. Sec. Litig.,
    No. Civ. A 04-1257 (FLW), 2005 WL 2248222 (D.N.J. Sept. 14, 2005).................................. 20

In re Fine Host Corp. Sec. Litig.,
    25 F. Supp. 2d 61 (D. Conn. 1998) ....................................................................... 18

In re Focus Enhancements, Inc. Sec. Litig.,
    309 F. Supp. 2d 134 (D. Mass. 2001)....................................................................... 7

In re IKON Office Solutions, Inc. Sec. Litig.,
    66 F. Supp. 2d 622 (E.D. Pa. 1999)........................................................................ 13

In re JP Morgan Sec. Litig.,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ..................................................................... 12

In re Lexar Media, Inc. Sec. Litig.,
    No. C-04-2013 SC, 2005 WL 1566534 (N.D. Cal. July 5, 2005) ............................................ 12

In re Metawave Commc'ns Corp. Sec. Litig.,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003) ................................................... 3, 8, 9, 14, 19

In re Microstrategy, Inc. Sec. Litig.,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................ 9, 17, 18

In re MSC Indus. Direct Co., Sec. Litig.,
    283 F. Supp. 2d 838 (E.D.N.Y. 2003) ...................................................................... 3

In re Parmalat Securities Litigation,
    377 F. Supp. 2d 390 (S.D.N.Y. 2005) ..................................................................... 15

In re Portal Software, Inc. Sec. Litig.,
    No. C-03-5138 VRW, 2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ...................................... 3, 4

In re Providian Fin. Corp. Sec. Litig.,
    152 F. Supp. 2d 814 (E.D. Pa. 2001) ..................................................................... 13

In re Raytheon Sec. Litig.,
    157 F. Supp. 2d 131 (D. Mass. 2001) ................................................................ 15, 17

In re Read Rite Corp. Sec. Litig.,
    335 F.3d 843 (9th Cir. 2003)............................................................................. 12

In re Rent-Way Sec. Litig.,
    209 F. Supp. 2d 493 (W.D. Pa. 2002) ................................................................ 13, 16

US1DOCS 5346661v2

In re Segue Software, Inc. Sec. Litig.,
    106 F. Supp. 2d 161 (D. Mass. 2000)....................................................................... 18, 20

In re Smith Gardner Sec. Litig.,
    214 F. Supp. 2d 1291 (S.D. Fla. 2002) ........................................................................... 4

In re Stone & Webster, Inc. Sec. Litig.,
    414 F.3d 187 (1st Cir. 2005) ..................................................................................... 11, 12

In re Tellium, Inc. Sec. Litig.,
    Civ. A. No. 02-CV-5878 (FLW), 2005 U.S. Dist. LEXIS 19467 (D.N.J. 2005) ........................ 12

In re Tel-Save Securities Litigation,
    NO. 98 CV 3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999) ............................................. 11, 13

In re Telxon Corp. Sec. Litig.,
    133 F. Supp. 2d 1010 (N.D. Ohio 2000) ................................................................... 17, 18

In re The Vantive Corp. Sec. Litig.,
    283 F.3d 1079 (9th Cir. 2002)....................................................................................... 8, 9

In re The Wellcare Mgmt. Group, Inc. Sec. Litig.,
    964 F. Supp. 632 (N.D.N.Y. 1997) ................................................................................ 18

In re Tyson Foods, Inc. Sec. Litig.,
    No. Civ.A. 01-425-SLR, 2004 WL 1396269 (D. Del. June 17, 2004)....................................... 15

In re Vertex Pharms., Inc. Sec. Litig.,
    357 F. Supp. 2d 343 (D. Mass. 2005)............................................................................... 4

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) ......................................................................................... 19

Maldonado v. Dominguez,
    137 F.3d 1 (1st Cir. 1998) ..................................................................................... 11, 19

Nordstrom, Inc. v. Chubb & Son, Inc.,
    54 F.3d 1424 (9th Cir. 1995)....................................................................................... 15

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000) ................................................................................... 2, 20

Orton v. Parametric Tech. Corp.,
    344 F. Supp. 2d 290 (D. Mass. 2004)........................................................................... 5, 6

Provenz v. Miller,
    102 F. 3d 1478 (9th Cir. 1996)..................................................................................... 16

US1DOCS 5346661v2

Rombach v. Chang,
    355 F.3d 164, 177 (2d Cir. 2004) ................................................................................. 19

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004) ....................................................................................... 14

United States v. Joselyn,
    206 F.3d 144 (1st Cir. 2000) ....................................................................................... 11

Velde v. Coopers & Lybrand,
    899 F. Supp. 731 (D. Mass. 1995) .............................................................................. 16

US1DOCS 5346661v2

**INTRODUCTION**

Plaintiff's Opposition To Defendants' Motions To Dismiss The First Amended Consolidated Complaint ("Opposition" or "Opp.") fails to address the fundamental failure of the First Amended Consolidated Class Action Complaint ("Complaint" or "AC") to identify specific facts supported by reliable sources that would permit a strong inference that the accounting errors that led to Sonus' restatement were the result of fraud under Rule 10b-5.  Much of the Opposition consists simply of reproducing verbatim paragraphs of the Complaint and decreeing that they show plaintiff's sources are adequate, or that it has pleaded enough transactional detail.  But when the law (as opposed to plaintiff's self-assessment) is applied to the allegations, (1) the sources are still unreliable because there is no basis to conclude they were in a position to understand complex accounting issues or the accounting judgments made at the time, and (2) insufficient facts have been provided to show that the difficult revenue recognition decisions that SOP 97-2 requires in multiple-element contracts were made with the intent to defraud investors.

Similarly deficient is the attempt to circumvent the failure to tie any of the allegations in the Complaint to defendants Nill or Ahmed, which plaintiff must do to plead Sonus' scienter. Plaintiff trots out a host of theories as to why scienter can be "imputed" to Messrs. Nill and Ahmed:  their positions, violations of GAAP and "internal controls," the knowledge of Sonus' controller, generic corporate motives to secure financing, and the "magnitude" of the restatement. But, none of these arguments is viable under the case law or supplants the mandate of the PSLRA that a strong inference of scienter must be supported by particularized facts.  At the end of the day, plaintiff is left with nothing more than ineffective fraud by hindsight:  Sonus restated its revenues, so its original revenue statements must have been the product of fraud.

## **ARGUMENT**

**I.      Descriptions of Mere Job Titles Or Positions Do Not Support The Probability That Plaintiff's Confidential Sources Would Possess The Information Alleged**

Under Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000), cert. denied, 531 U.S. 1012 (2000), the Second Circuit's seminal decision establishing the requirements for confidential sources under the PSLRA, a plaintiff need not name its confidential sources, "provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Id. at 314.   Because the Complaint here fails to provide the requisite "sufficient particularity" (see Memorandum Of Law In Support Of Defendant Sonus' Motion To Dismiss The First Amended Consolidated Class Action Complaint ("MTD") at 9-11), the plaintiff's sources must be named – but are not. Accordingly, with the Complaint's allegations of so-called "accounting shenanigans" and scienter resting exclusively on these confidential sources, plaintiff's claims must be dismissed.

Expanding on Novak, the First Circuit in In re Cabletron Systems, Inc. concluded that "sufficient particularity" depends on an "evaluation, inter alia, of the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." 311 F.3d 11, 29-30 (1st Cir. 2002).   As discussed below in Section II, plaintiff's allegations are wholly lacking in the type of transactional specificity (see also MTD at 13-20) that could corroborate any of plaintiff's confidential sources.

Nor does the Complaint offer any other indicia of reliability.   As an initial matter, rather than specifying how any particular source came by the information alleged, plaintiff offers nothing but speculation that its identified sources – because of their titles or job functions – would be in a position to know the information alleged.  (E.g., Opp. at 29 (sources described as "likely" to know)).   Mere job titles and positions, however, are not, as plaintiff asserts (see Opp. at 30),

corroborating facts.  One cannot assume that a witness is in a position to know simply by dint of his or her title or position within the company, no matter how senior the position.  E.g., In re Portal Software, Inc. Sec. Litig., No. C-03-5138 VRW, 2005 WL 1910923, at *9 (N.D. Cal. Aug. 10, 2005) (job titles or positions insufficient without particularity as to "how or why [sources] come to be familiar with the information they provide"); In re Exodus Commc'ns, Inc., Sec. Litig., No. C 01-2661 MMC, 160, 163, 2005 WL 1869289, at *30-*31 (N.D. Cal. Aug. 5, 2005) (job titles and responsibilities not enough in absence of  "an explanation as to how the confidential witnesses obtained knowledge" of revenue recognition practices); In re MSC Indus. Direct Co., Sec. Litig., 283 F. Supp. 2d 838, 847 (E.D.N.Y. 2003) (confidential sources described by titles and general responsibilities not adequate where no explanation of how work responsibilities would provide them a basis for knowing details of the accounting); In re Apple Computer, Inc., Sec. Litig., 243 F. Supp. 2d 1012, 1027 (N.D. Cal. 2002) (refusing to credit confidential witness allegation of defendant's scienter because witness's status as vice president, without more, was insufficient basis for knowledge).

A basis for knowledge beyond titles or positions is critical, because the Court must be able to conclude "whether a confidential witness is speaking from personal knowledge, or merely regurgitating gossip and innuendo."  In re Metawave Commc'ns Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003) (internal citations omitted) (sources inadequate where personal knowledge not supported by description of discussions at company meetings, or statements by individual defendants).   The Complaint, however, provides no basis on which the Court can reach such a conclusion.  Not one of plaintiff's sources is ever described as having learned any fact directly from Nill or Ahmed, or, for that matter, from former controller Hemme.  None claim to have participated directly in any disputed accounting decision.  And, none claim familiarity with

applicable accounting rules such as SOP 97-2, the specific terms of any contract, or how the accounting rules were applied to the contract terms.[1]

Nor does the account of a confidential witness become any more reliable by offering generic descriptions of the source's responsibilities untethered to the particular act or event alleged. To say merely, as plaintiff does here, that a confidential source "prepar[ed] and interact[ed]" with Sonus' controller on financial statements (see Opp. at 30; AC ¶46) – without any indication that the source participated in any way with securing the allegedly bogus customer acceptance letter or dealing with the customer at issue – provides no corroboration and does nothing to make the allegation more plausible. See, e.g., In re Vertex, 357 F. Supp. 2d at 354 (source that claimed merely to have "worked closely" with relevant employees lacked first-hand knowledge); In re Cree, 2005 WL 1847004, at *7 (indicia of reliability lacking where no indication of source's participation in transaction, familiarity with operations, or financial expertise); In re Smith Gardner Sec. Litig., 214 F. Supp. 2d 1291, 1301 (S.D. Fla. 2002) (bare-bones allegation that source was "involved with" transaction at issue insufficient).

Reliability is likewise undermined by a lack of detail as to dates and vague accounts of events. See In re Vertex, 357 F. Supp. 2d at 354 (confidential source deemed unreliable given lack of dates and vague descriptions of events); In re Portal Software, 2005 WL 1910923, at *11 (alleged "senior" source disregarded where unable to indicate specific dates of alleged accounting irregularity). Here, plaintiff's confidential sources offer dates in only four instances. In two of those instances (AC ¶ 45), the sources have both the dates and direction of the restatement

---

[1]    In fact, what is reported in the Complaint is often, on its face, the source's mere belief, innuendo, or hearsay learned from others – not personal knowledge. See, e.g., AC ¶ 38 (allegation based on assessment of "corporate culture"), ¶42 (allegations of contract "management" based on "discussions among sales and technical staff"), ¶ 47 (alleging that "sales staff openly discussed senior management's attempt to create a perception of linearity," and quoting a sales manager who "believed" that there were informal communications outside Qwest and XO Communications contracts and reported complaints from others about reasons for not receiving commissions), ¶ 48 (topic frequently discussed internally among staffers); see also In re Cree, Inc. Sec. Litig., No. 1:03CV00549, 2005 WL 1847004, at *7 (M.D.N.C. Aug. 2, 2005) (rejecting as unreliable allegation that knowledge of practice "was widespread"); In re Vertex Pharms., Inc. Sec. Litig., 357 F. Supp. 2d 343, 354 (D. Mass. 2005) (rejecting confidential source's observations learned from others as amounting only to "rumors among . . . personnel").

completely wrong; revenue was moved *into*, not *out of*, the quarters at issue, a fact that Sonus has

twice pointed out, but which plaintiff willfully continues to ignore (see MTD at 18-19).  In the

third (AC ¶46), the source, who does not claim first-hand knowledge or any involvement with the

customer, is unable to say if the "non-delivery" of "hardware and software" occurred in Q3 or Q4

of 2001 or whether the defendant Nill or the former controller Hemme sent the customer

acceptance letter at issue.  (See MTD at 18-19).  Nor is the source able to identify the terms of the

contract at issue, the products at issue, or whether or when "delivery" in fact occurred.[2]  Finally, in

the fourth instance (AC ¶48), the source, although unable to identify any of the "various features

under the contract," claims an overstatement of revenues from an AT&T contract for Q4 of 2003,

even though the Complaint itself makes clear that because the reporting for that quarter was

delayed, no defendant ever made a false public statement containing "overstated" AT&T revenues

and none is alleged in the Complaint.  (See MTD at 10 n.14; AC ¶¶ 79-80, 102-177).  The lack of

coherence, let alone accuracy, in these descriptions of  "accounting manipulation" makes the

confidential sources inherently unreliable.

## II.    The Lack of Transactional Specificity Precludes a Strong Inference of Scienter and Dooms Plaintiff's Claims Under Rule 9(b)

Although the Opposition three times cites Greebel v. FTP Software, Inc., 194 F.3d 185 (1st

Cir. 1999) (see Opp. at 13, 19, 37), plaintiff does not once acknowledge the "basic details" that the

First Circuit expects to see before even a reasonable, let alone, strong inference of scienter may be

---

[2]    The missing details for the allegations in paragraph 46 of the Complaint, in fact, run even deeper.  For example, the motivation of the customer's employee who allegedly aided in this scheme is the existence of so-called "reciprocal revenue arrangements."  Yet, plaintiff never provides the terms, substance or dates of these agreements, nor any indication of the value of such arrangements such that they would motivate this third party to participate in an alleged fraud.  Further, the terms of the "acceptance letter" sent to the customer are never explained or put in any context relative to terms of the customer's multiple-element arrangement with Sonus, e.g., delivery terms, obligations regarding future software and hardware updates and future releases.  Nor is there any claim that defendant Nill knew, or if he knew how he knew, that the alleged hardware and software remained to be delivered.  Likewise, the paragraph never explains how defendant Ahmed supposedly came to know about other supposedly similar practices.  This missing detail renders the allegations insufficient to provide a strong inference of scienter.  See Orton v. Parametric Tech. Corp., 344 F. Supp. 2d 290, 308 (D. Mass. 2004) (no fraudulent intent where plaintiff only able to raise vague factual allegations regarding schemes and problems supposedly known to the individual defendants).

drawn from an accounting violation, such as the approximate amount by which revenues and earnings were overstated, the products involved in the transactions, the dates of transactions, and the identities of customers.  See id. at 203-204.  More particularly here, "[t]o adequately plead financial fraud based on improper revenue recognition, Plaintiffs must allege, at a minimum, some particular transactions where revenues were improperly recorded, including the names of the customers, the terms of specific transactions, when the transactions occurred, and the approximate amount of the fraudulent transactions."  Orton, 344 F. Supp. 2d at 304-305.[3]

Plaintiff seems to suggest that its obligation to provide transactional specificity requires that requisite detail be provided only for a few, but not all, alleged accounting violations.  (See Opp. at 17-19).   When it comes to pleading a strong inference of scienter, however, the First Circuit gives securities plaintiffs no such option.  See Greebel, 194 F.3d at 203-204 ("[t]o support even a reasonable inference of scienter, . . . the complaint must describe *the violations* with sufficient particularity) (emphasis supplied); see also In re Ashworth, 2000 WL 33176041, at *6 ("plaintiffs must identify *the particular transactions* underlying the alleged accounting deficiencies") (internal citations omitted) (emphasis supplied).  For example, in Orton, Judge Young reviewed each of the "various allegations of improper revenue" to determine if they met the above-described particularity requirements.  Orton, 344 F. Supp. 2d at 305 n.3.  In fact, the court went even further when assessing whether the alleged failures to follow GAAP provided a strong inference of scienter – demanding that plaintiffs provide "*the elementary 'who, what, where, when, [and] how'*."  Id. at 307-308 (emphasis supplied).

Rather than offering an evaluation of whether the Complaint provides the requisite transactional detail, the Opposition instead simply declares: "Lead Plaintiff has done so here.

---

[3]    See also In re Ashworth, Inc. Sec. Litig., No. 99CV0121-L (JAH), 2000 WL 33176041, at *10 (S.D. Cal. July 18, 2000) (scienter undermined by lack of specifics of the "actual transactions where the challenged practices led to misstatements and omissions," including overstated revenue amounts, products involved, dates, and identities of customers) (citing Greebel, 194 F.3d at 205).

¶¶36-52, 103-176." (Opp. at 17). No attempt whatsoever is made to demonstrate that any of these paragraphs set forth the kind of transactional detail called for by <u>Greebel</u>, obviously because such detail is missing. (<u>See</u> MTD at 13-20 & Ex. A thereto). Instead, plaintiff reaches for a supposed alternate method, purportedly established in <u>In re Focus Enhancements, Inc. Securities Litigation</u>, 309 F. Supp. 2d 134 (D. Mass. 2001). Yet, the alternate method in <u>Focus</u> was not to dispense with the particularity requirements of <u>Greebel</u> but to recognize the sufficiency of equally detailed surrogate information. In particular, in support of its allegations of GAAP violations arising from product sales with a right of return, the Ridel plaintiff in <u>Focus</u> was able to *name* confidential sources who directly participated in the sales, shipping, unloading, order taking, and product return process which controlled the relevant determinations to be made under FAS 48. <u>Focus</u>, 309 F. Supp. 2d at 145- 46, 150-52. In some cases, they learned of the corporate defendant's revenue recognition practices directly from the defendant CEO. <u>Id.</u> at 145 n.10. Finally, with respect to the key transaction, these witnesses also were able to detail the specific products involved (<u>e.g.</u> "TView Gold" units), the relevant terms of the contract, the exact number of products shipped and returned, the quarter in which delivery occurred, and the name and nature of the computer system used to track the products shipped and returned and through which the individual defendants knew of product returns. <u>Id.</u> at 145- 46, 150-52. Even at this level of detail, the court went out of its way to comment that the Ridel complaint "*just barely*" set forth sufficient facts of an accounting violation. <u>Id.</u> at 151 (emphasis supplied). In contrast, the Complaint contains no such comparable detail.

As discussed above, the Complaint identifies the customer, general time period for and revenues associated with an alleged accounting practice in only four instances – each of which is described with insufficient particularity, conflicting detail, or is just plain wrong. <u>See</u>

supra § II.A.[4]  In hope of convincing the Court of an ongoing scheme, these, and other alleged

instances of "pushing," "pulling," or "unbundling" revenues and unspecific product deliverables,

are often adorned with nefarious sounding allegations of "side agreements" (see AC ¶¶ 42, 47, 50)

utterly lacking in any description of terms, substance, or dates or when or how the individual

defendants became aware of such agreements.  See In re Metawave, 298 F. Supp. 2d at 1077 &

n.11 (allegations of "side letters" disregarded in the absence of the terms, substance, and dates

when defendants became aware of the agreements); In re The Vantive Corp. Sec. Litig., 283 F.3d

1079, 1089-90 (9th Cir. 2002) (complaint failed to allege when "secret agreement" was entered or

how it made statements misleading).  Or, they come with descriptions of ominous commands from

senior managers, such as "*get a number*" (see AC ¶45) – without any specification of when the

command was given or what number was being sought.  See In re Metawave, 298 F. Supp. 2d at

1083 (alleged instruction directing accounting employee as to "what the numbers needed to be"

insufficient for scienter).

Beyond absence of the requisite transactional detail, plaintiff's accounting claims fail to

detail how any particular accounting standard was violated or the nature of the accounting

judgments made at the time.  For a strong inference of scienter, plaintiff  "must prove . . . that the

accounting judgments which were made were such that no reasonable accountant would have

made the same decisions if confronted with the same facts."  See In re Ashworth, 2000 WL

33176041, at *10.  Here, plaintiff challenges the complex accounting judgments that defendants

needed to make under SOP 97-2 concerning multiple-element contracts (e.g., whether software

---

[4]        Among these alleged accounting practices, plaintiff continues to aver that (1) Sonus "improperly
recognize[d] $27.5 million in Q2 2002 by recording revenues on software updates that had not been delivered to
Qwest" and (2) that Sonus improperly recorded $11 million in Q4 2003.  AC ¶ 45.  However, as Sonus has repeatedly
pointed out to no avail since it first sought to dismiss plaintiff's complaint in January, 2005 (MTD at 18-19; Mem. in
Support of First Mot. to Dismiss at 14-15), the revenue at issue in the first instance was originally recognized
incorrectly in 2001 and reclassified in the restatement *as being properly recognized in Q2 2002*.  And, in the second
instance, the restatement moves the $10.9 million from previous periods to *the correct period, Q4 2003*.  Plaintiff
cannot or does not choose to understand that it has the details of the transactions completely backwards and flatly
wrong.  Nonetheless, the Opposition persists in citing these entirely unreliable accounts as two of plaintiff's principal
examples of allegedly improper accounting.  (See, e.g., Opp. at 8-10, 12, 21, 23-25, 34).

releases and updates were "essential" to the functionality of delivered items, whether sufficient vendor-specific objective evidence existed for the value of separate elements of an agreement, and when delivered elements could be recognized when other elements would be delivered over time). See MTD at 2-3, 14-16 & n.19; see also In re Bio-Tech. Gen. Corp. Sec. Litig., 380 F. Supp. 2d 574, 589 (D.N.J. 2005) (plaintiffs failed to plead particularized facts "why" defendants either did conclude or were reckless in not concluding that costs deserved particular accounting treatment); In re Metawave, 298 F. Supp. 2d at 1079 (plaintiff failed to allege how defendants came to understand accounting rules and what they understood those rules required at time of alleged improper revenue recognition); In re The Vantive Corp., 283 F.3d at 1090-91 (complaint "fail[ed] to allege specific contemporaneous conditions known to the defendants that would strongly suggest that the defendants understood that their recognition of revenues" was excessive). Yet, the Complaint offers none of the facts on which any revenue recognition decision was made.

As noted by Sonus' independent auditors Ernst & Young LLP: "Many of Sonus's sales are generated from complex contractual arrangements, which require significant revenue recognition judgments, particularly in the case of multiple-element arrangements." (Form 10-K/A, filed July 28, 2004 (MTD, Ex. E to Aff.) at F-10). Such complexity demands a greater demonstration of the defendants' alleged awareness of the purported accounting violations. Cf. In re Microstrategy, Inc. Sec. Litig., 115 F. Supp. 2d 620, 638 (E.D. Va. 2000) ("relatively simple" accounting rules factor into determination of defendant's awareness). Although plaintiff scoffs at this complexity (see Opp. at 24-25), it is never able to set out what specific requirements of SOP 97-2 were violated or apply any of those specific requirements to any of the defendants' alleged accounting practices. (See MTD at 15-17).

For example, although the Opposition unilaterally asserts that the non-delivery of product alleged in paragraphs 43 and 46 of the Complaint presents a straightforward accounting judgment,

the Complaint presents no facts on which this conclusion can be drawn.  Under SOP 97-2, it is
entirely permissible to recognize revenues on one part of a multiple-element agreement where
undelivered products or services are not "essential" to earlier fulfilled obligations.  Similarly,
whether revenue can be recognized at different times on different parts of the contract can depend
on whether a party believes that it has sufficient vendor-specific objective evidence ("VSOE") of
value for the different parts of the contract, such that that these values can be appropriately
allocated over the different parts of the contract being performed at different times.  (See MTD at
15 n.19).  Although the "acceptance letter" discussed in paragraph 46 of the Complaint is
described as confirming delivery of undelivered product, we have no idea of the terms of the
contract, what revenue allocations were being made based on VSOE, or the "essential" or "non-
essential" relationship of the performed elements of the contract and the yet-to-be-performed
elements.  We are not even told whether Sonus recognized the revenues associated with the
purported acceptance letter.

In short, the absence of transactional detail in the descriptions of the challenged accounting
practices, particularly when no basis is given at all to assess defendants' knowledge of the
accounting judgments made at the time, requires dismissal of plaintiff's claims.

**III.    Plaintiff Fails In Its Attempt To Avoid The Need To Plead Particularized Facts In
Support Of A Strong Inference Of Scienter**

**A.    Knowledge of Accounting Problems Is Not Automatically Imputed**

Recognizing that it cannot identify with particularity any documents, meetings, or
conversations showing that Messrs. Ahmed or Nill had any knowledge of the matters alleged in
the Complaint,[5] plaintiff claims "[t]he courts of this district have consistently held that knowledge
of accounting problems may be imputed to the Company and its directors and officers."  (Opp. at

---

[5]        To impute scienter to Sonus itself, plaintiff must allege facts sufficient to raise a strong inference of scienter
as to Ahmed or Nill, or at the very least someone within Sonus' core group of officers who can be deemed to have
"made" the statements at issue.  See infra § III.D.

38). The cases cited by plaintiff, however, do not remotely support that position. See Chalverus v. Pegasystems, Inc., 59 F. Supp. 2d 226, 235 (D. Mass. 1999) (straightforward omission from public statements of a $12.9 million debt); United States v. Joselyn, 206 F.3d 144, 159 (1st Cir. 2000) (criminal prosecution for fraud and kickback scheme, again not involving accounting issues); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (again not involving accounting issues, but rather question whether, in light of importance to company's business of sales to China, it was fair inference that defendants were aware of export restrictions).[6]

It is not surprising plaintiff's assertion fails, because it is directly contrary to the principle long-established in this Circuit (and elsewhere) that a strong inference of scienter (whether on accounting issues or otherwise) cannot be imputed on the basis of an individual's position. See, e.g., Maldonado v. Dominguez, 137 F.3d 1, 9-10 (1st Cir. 1998) (rejecting allegations that defendants must have known facts by virtue of their executive positions).[7]

Indeed, the First Circuit recently rejected an effort to impute to a company's chief executive officer and chief financial officer knowledge of accounting improprieties. In In re Stone & Webster, Inc. Securities Litigation, 414 F.3d 187 (1st Cir. 2005), a case involving (inter alia) allegations that the company fraudulently reported expected profits from ten contracts by improperly employing the percentage-of-completion method of accounting, the court held that knowledge of these practices could not be imputed to the CEO and CFO:

> [T]he Complaint provides nothing supporting the inference that
> either [CEO] Smith or [CFO] Langord was directly involved in the
> detailed accounting for these ten particular contracts, or had
> knowledge of the alleged falsity. One could draw the inference that

---

[6]    In re Tel-Save Securities Litigation, NO. 98 CV 3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999), another case outside this district, comes closest to supporting plaintiff's proposition, but is clearly contrary to the First Circuit's decision in Stone & Webster discussed immediately infra, and distinguishable on other grounds. See infra n.10.

[7]    See also City of Philadelphia v. Fleming Cos., 264 F.3d 1245, 1264 (10th Cir. 2001) (rejecting "allegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading") (internal citation omitted); In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.").

> Langford, as the Chief Financial Officer, had some supervisory involvement with the accounting. *But no strong inference necessarily follows that the Chief Financial Officer, much less the Chief Executive Officer, was aware of the improper proration of future profits on any particular underbid contract.*

Id. at 199 (emphasis supplied).  This clear, recent affirmation of the "no scienter by status" principle clearly trumps any contrary rule suggested in lower court decisions within this district or decisions from other jurisdictions.[8]

### B.    Cases Imputing Knowledge of Matters Affecting "Core Business" Are Inapplicable

Even if this Circuit were to recognize an exception to the "no scienter by status" rule – and it should not[9] – the cases cited by plaintiff are inapplicable.  At best, they reflect a narrow exception recognizing that where matters are so important that they go to the very "core" of a company's business, it is reasonable to infer that the company's top officials were aware of them.  Here, plaintiff's rhetoric notwithstanding, Sonus' core business is making networking products, not making complex accounting judgments about the applicability of GAAP to multiple-element arrangements, so the "core business" exception – if recognized at all – is inapplicable here.  See In re JP Morgan Sec. Litig., 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) (declining to impute scienter to CEO because plaintiff alleged no facts suggesting that *accounting treatment* of transactions was at core of *investment bank's* business).  Moreover, most of plaintiff's cases are further distinguishable on the basis that scienter was inferred not only on the basis of "core business" but

---

[8]    Sonus respectfully submits that Crowell v. Ionics, Inc., 343 F. Supp. 2d 1 (D. Mass. 2004), discussed infra, is inconsistent with Stone & Webster, to the extent it appears to impute knowledge based on status.  In any event, it is one thing to impute knowledge of a pervasive scheme to inflate revenues by shipping huge quantities of unwanted products to customers, Crowell, 343 F. Supp. 2d at 6, and quite another to impute knowledge of complex accounting decisions concerning multiple-element arrangements.

[9]    Many courts have flatly rejected the "core business" doctrine.  In re Read Rite Corp. Sec. Litig., 335 F.3d 843, 848-49 (9th Cir. 2003) (imputing scienter on basis that "facts critical to a business' core operations or an important transaction generally are . . . apparent . . . to a company and its key officers" would violate PSLRA ) (internal citation omitted); In re Tellium, Inc. Sec. Litig., Civ. A. No. 02-CV-5878 (FLW), 2005 U.S. Dist. LEXIS 19467, at *79 (D.N.J. 2005) ("thoroughly" rejecting doctrine); In re Bus. Objects S.A. Sec. Litig., No. C 04-2401 MJJ, 2005 WL 1787860, at *8 n.3 (N.D. Cal. July 27, 2005) (rejecting doctrine); In re Lexar Media, Inc. Sec. Litig., No. C-04-2013 SC, 2005 WL 1566534, at *6 (N.D. Cal. July 5, 2005) (same); Collmer v. U.S. Liquids, Inc., 268 F. Supp. 2d 718, 754 (S.D. Tex. 2003) (same).

- 12 -

also on the basis of well-pleaded allegations showing knowledge or recklessness with respect to the fraud at issue.[10]

### C. Scienter Cannot Be Imputed on the Basis of Plaintiff's Internal Controls Allegations

Next, plaintiff maintains that scienter can be imputed to Messrs. Ahmed and Nill from Sonus' "failure to maintain adequate internal controls." (Opp. at 40). But those allegations consist of a mere recitation of various statutes and rules governing internal controls (AC ¶¶ 87-90) followed by the conclusory statement that Sonus failed to comply with them (AC ¶ 91) and that defendants ignored unidentified "red flags" (AC ¶ 92). Plaintiff fails to identify a single specific deficiency (much less the time at which it existed), or to set forth a single specific fact showing Messrs. Nill or Ahmed knew of any deficiency, or to explain a causal link between any deficiency and any of the matters alleged to have been misrepresented. These allegations obviously neither support a strong inference of scienter by themselves nor add anything to the scienter analysis.[11]

---

[10]    In re Campbell Soup Sec. Litig., 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (even though alleged misrepresentations concerned "U.S. soup sales" which were "indisputably the bread and butter of Campbell's business," court found "more important" identification of "specific circumstances" that the defendants "had access to and received information about the sales efforts and the related accounting practices"); In re Providian Fin. Corp. Sec. Litig., 152 F. Supp. 2d 814, 825 (E.D. Pa. 2001) (even though alleged deficiencies in billing and accounting practices were "core to Providian's existence as a credit provider," court inferred scienter from additional allegations concerning various specified reports that defendants received); In re Cell Pathways, Inc., No. 99-725, 2000 WL 805221, at *7 (E.D. Pa. June 20, 2000) (even though misrepresentations concerned status of clinical trials of company's most important drug, court relied on additional allegations sufficient to overcome what it acknowledged was the "*prohibition* against allegations of knowledge of defendants simply because of their positions in the company") (emphasis supplied). The two cases not specifically relying on additional allegations, in addition to being inconsistent with the law of this Circuit, are inapplicable because the matters there clearly were fundamental to the businesses. Tel-Save, 1999 WL 999427, at *5 ("Tel-Save's method of financing its marketing expenses was central to the business"); Epstein v. Itron, 993 F. Supp. 1314, 1325 (E.D. Wash. 1998) (plaintiff alleged that "Itron's core product is technologically incapable of meeting requirements that are central to Itron's continued survival as a business entity").

[11]    The cases plaintiff cites either expressly reject the notion that scienter can be inferred from vague internal controls allegations, or involve far more substantive and particularized allegations. Crowell, 343 F. Supp. 2d at 20 (stating that while it was "difficult to imagine" a "better formula for systematic revenue misstatement" than the missing controls specifically alleged by plaintiff, "standing alone, even this level of mismanagement does not constitute scienter"); Chalverus, 59 F. Supp. 2d 226 (internal controls violations not alleged); In re Rent-Way Sec. Litig., 209 F. Supp. 2d 493, 508-09 (W.D. Pa. 2002) (plaintiff alleged host of specific facts including particular deficiencies in the company's Point-of-Sale system, inadequately documented manual changes to general ledger, and confrontation between defendant executive and auditor concerning accounting irregularities and lack of documentation which resulted in that auditor's being relieved of her duties); In re IKON Office Solutions, Inc. Sec. Litig., 66 F. Supp. 2d 622, 630-31 (E.D. Pa. 1999) (plaintiff alleged specific facts showing that defendant auditor knew that particular internal controls problems it had identified in a prior audit persisted at time the financials in question were issued with its approval).

- 13 -

See, e.g., Albert Fadem Trust v. Am. Elec. Power Co., 334 F. Supp. 2d 985, 1010 (S.D. Ohio 2004) (rejecting conclusory, factually-unsupported allegation that defendants knew or should have known of inaccurate reporting because of "complete lack of internal controls").

### D.    Controller Hemme's Knowledge Cannot Be Imputed to Sonus

Plaintiff asserts that Sonus' controller Hemme was the agent of defendants Nill, Ahmed and Sonus and that his knowledge therefore can be imputed to each of them.  But under ordinary agency principles, even accepting plaintiff's assertion at face value that Hemme worked under Mr. Nill's and Mr. Ahmed's direction and supervision (and plaintiff conspicuously references no allegations in the Complaint), that would not make Hemme an agent of *Nill* or *Ahmed*.  At best, it would make him an agent of Sonus.  Not surprisingly, plaintiff cites no authority for the novel proposition that a subordinate's knowledge can be imputed to a superior, and the law is to the contrary.  In re Metawave, 298 F. Supp. 2d at 1083 (fact that company's controller told confidential source to reverse a reserve did not establish that defendant CFO knew the reserve was necessary); In re Bio-Tech., 380 F. Supp. 2d at 596 ("Mere allegations of knowledge on the part of subordinates do not provide a sufficient basis for imputing knowledge to executives.").

Neither can Hemme's knowledge be imputed to Sonus.  As Sonus showed previously, courts have refused to automatically impute to the corporation even the scienter officers' – and Hemme was not an officer, a point made in Sonus' prior brief that plaintiff tellingly ignores.  Rejecting the concept of "collective scienter," those courts hold that only the knowledge of the officer *making* the statement at issue matters.  As the Fifth Circuit explained in Southland Securities Corp. v. INSpire Insurance Solutions, Inc., 365 F.3d 353 (5th Cir. 2004):

> For purposes of determining whether a statement made by the
> corporation was made by it with the requisite Rule 10(b) scienter we
> believe it appropriate to look to the state of mind of the individual
> corporate official or officials who make or issue the statement (or
> order or approve it or its making or issuance, or who furnish

- 14 -

information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.

Id. at 366.[12]  Critically, plaintiff makes no allegations that Hemme made[13] or approved any statement, or that he furnished specific information for inclusion in any statement.[14]

### E.    Scienter Cannot Be Imputed on the Basis of Internal Policy Violations

Given that Sonus' internal policy was to recognize revenue in accordance with GAAP (Opp. at 42), plaintiff's claim that Sonus violated that policy adds nothing to the scienter analysis beyond its allegations of GAAP violations which lack the necessary transactional specificity and reliable sources.  (MTD at 9-20; supra §§ I, II).  Indeed, Crowell, on which plaintiff principally relies, affirms that "violations of GAAP and of a corporation's own corporate revenue recognition policies," while "probative" of scienter, are "by no means conclusive."  343 F. Supp. 2d at 17. The additional allegations the Crowell court relied on to find an inference of scienter are different in two critical respects.  First, unlike here where no allegations link Messrs. Ahmed or Nill to the alleged fraud, in Crowell the court found important to the scienter analysis that plaintiff also had sufficiently alleged that Ionics' CEO had "ordered the accounting manipulations."  Id. (emphasis supplied).  Second, unlike here where complex accounting judgments under SOP 97-2 were

---

[12]    See also, e.g., Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1435 (9th Cir. 1995) ("there is no case law supporting an independent 'collective scienter' theory"); In re Apple Computer, 243 F. Supp. 2d at 1023 ("A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter . . . at the time that he or she makes the statement."); In re Tyson Foods, Inc. Sec. Litig., No. Civ.A. 01-425-SLR, 2004 WL 1396269, at *12  (D. Del. June 17, 2004) (to same effect); In re Blockbuster, Inc. Sec. Litig., No. 3:03-CV-0398-M, 2004 WL 884308, at *18 (N.D. Tex. April 26, 2004) (to same effect).

[13]    Hemme cannot be deemed to have "made" any of the corporate statements at issue because there are no allegations – and there could be none – that he was within the core group of corporate officers involved in the day-to-day management of the corporation.  See In re Raytheon Sec. Litig., 157 F. Supp. 2d 131, 152 (D. Mass. 2001) (noting that under group pleading doctrine, corporate statements can be attributed to core officers).  Indeed, he is not even listed as an officer in Sonus' SEC filings.  (See MTD at 12-13).

[14]    In re Parmalat Securities Litigation, 377 F. Supp. 2d 390 (S.D.N.Y. 2005), is inapposite because the case involved common law claims, id. at 395, and the issue was whether a firm's knowledge could be imputed to its umbrella organization, id. at 409.  Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307 (S.D. Fla. 2004), does contain the general statement that the scienter of a corporation's officer may be imputed to the corporation itself.  Id. at 1322. But even if that statement accurately reflected the law, and Sonus submits the "no collective scienter" cases represent the better-reasoned rule, it would not help plaintiff because Hemme was not an officer and is not listed as such in Sonus' SEC filings.  (See MTD at 12-13).

involved, in <u>Crowell</u> it was clear that "something sinister was going on" because the defendant was placing losses on a subsidiary's books that clearly belonged to itself or another entity.  <u>Id.</u>[15]

**F.    No Inference Can Be Drawn From The Magnitude of The Restatement**

The well-settled rule in this Circuit is that accounting violations are insufficient, "without more," to state a securities fraud claim, and plaintiff cites no authority from this jurisdiction to the contrary.  (<u>See</u> MTD at 5-6; Opp. at 36).  Here, recognizing it has not pled anything "more" than factually unsupported conclusions drawn from unreliable sources, plaintiff tries yet another version of what amounts merely to insufficient fraud-by-hindsight – the restatement was large, so there must have been fraud.  (<u>See</u> Opp. at 36).   But, like the accounting errors themselves, neither the size nor the duration of a particular accounting error alone compels a strong inference of scienter.  <u>See</u> <u>Fidel v. Farley</u>, 392 F.3d 220, 231 (6th Cir. 2004), <u>reh'g en banc denied</u> (April 6, 2005) ("[a]llowing an inference of scienter based on the magnitude of fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter'") (internal citations omitted); <u>In re Rent-Way</u>, 209 F. Supp. 2d at 506 ("In and of itself, the magnitude of an erroneous financial statement is insufficient to raise a strong inference . . . [of] scienter.").

Indeed, in many of plaintiff's authorities, the courts considered magnitude only after concluding that the plaintiff had pled sufficiently particularized allegations of the accounting violation and the basis for the defendant's knowledge.  <u>See</u> <u>Blatt v. Muse Techs., Inc.</u>, Nos. Civ.A. 01-11010-DPW, Civ.A. 01-12173-DPW, 2002 WL 31107537, at *9, *11 (D. Mass. Aug. 27, 2002) (noting size of restatements, but relying primarily on particularity of allegations of GAAP

---

[15]    Plaintiff's other citations are equally unavailing.  In <u>Chalverus</u>, the court made only the bland observation that violation of a company's own policy "supports" an inference of scienter, 59 F. Supp. 2d at 235, and listed it as one of five factors that cumulatively gave rise to the requisite inference, <u>id.</u> at 236.  In <u>Van de Velde v. Coopers & Lybrand</u>, 899 F. Supp. 731 (D. Mass. 1995), the court found that plaintiffs had "specif[ied] the flawed deals, the accounting norms violated, and the manner of violation," and additionally had identified "a number of red flags" that should have alerted the auditor that things were amiss.  <u>Id.</u> at 737.  And in <u>Provenz v. Miller</u>, 102 F. 3d 1478 (9th Cir. 1996), the court relied on evidence suggesting defendants failed to disclose material information to their accountant, as well as suspicious insider trading, neither of which are present here.  <u>Id.</u> at 1491.

- 16 -

violations and specific allegations of defendant's knowledge ); Chalverus, 59 F. Supp. 2d at 236

(plaintiff adequately detailed circumstances other than GAAP violation that indicated fraudulent

intent, and pleaded specifics of particular violation, such as name of the customer, and terms, date,

and amount of the transaction).

Also, unlike the Sonus restatements, which corrected only for the timing of revenue

recognition, plaintiff's cited authorities involved allegations implicating the very *bona fides* of the

sales from which revenue was recognized.[16]  In these cases, the egregious nature of the accounting

errors made it more probable that the defendant acted with scienter.  Cabletron, for example,

involved allegations such as inventory parking and channel-stuffing.  311 F.3d at 24-26.  The First

Circuit noted that this "systematic fraud," which "extend[ed] to completely fictitious sales,"

distinguished that case "from cases where the alleged GAAP violation consisted merely of

questionable bookkeeping practices."  Id. at 35.[17]

Finally, in other of plaintiff's cases, the accounting errors were either too simple or blatant

to be unintentional misjudgments, unlike the complex accounting judgments (see supra § II)

involved here.  For example, in Crowell, the court observed that the alleged violations, such as

placing losses on a subsidiary's books that clearly belonged to a parent or other entity, and not

---

[16]  Notably, the Sonus restatement did not involve fictitious sales or revenues that otherwise were never to be recognized.  Rather, the Sonus restatement resulted in a cumulative net reduction of revenues of less than 11% and a 1.5% change in the total net loss for the restated periods, with the expectation that the revenues reduced would be recognized in quarters subsequent to the restatement.  See AC ¶¶ 53, 54, 86; see also Form 10-K/A filed July 28, 2004 (MTD, Ex. E to Aff.) at 5 (recognition of product revenues simply deferred until the second quarter of 2002, when all features under the arrangement were delivered), 6 (summarizing restated revenues), 13 (summarizing restated net income loss), F-16 ("Adjustments to revenue result in revenue being deferred and recognized in subsequent periods."), F-18 (revenue deferred until all elements of a transaction are delivered).  The restatements cited by plaintiff were considerably more substantial.  Compare Chalverus, 59 F. Supp. 2d  at 234 (158% reduction in actual revenues); In re Telxon Corp. Sec. Litig., 133 F. Supp. 2d 1010, 1014-15 (N.D. Ohio 2000) (three restatements in 18 months, effectively eliminating all profits and growth defendant had claimed over the last three year period); In re Microstrategy, 115 F. Supp. 2d at 636 (290% swing from profitability to loss in net income); Crowell, 343 F. Supp. 2d at 18 (32.5% revision in income); American Bank Note Holographics, Inc. Sec. Litig., 93 F. Supp. 2d 424, 433 (S.D.N.Y. 2000) (more than 50% downward revision in net income).

[17]  See also In re Raytheon, 157 F. Supp. 2d at 139 (describing allegations that the defendant should have removed from the books revenues and profits from contracts that were not signed or inactive); In re Ancor Commc'ns, Inc., 22 F. Supp. 2d 999, 1001-02 (D. Minn. 1998) (noting that the defendant allegedly recorded as revenue sales from which it derived no profit, such as goods that were warehoused but had not been pre-sold).

reporting cost overruns at all (rather than reporting them in the wrong place), could not be characterized as "good-faith dispute[s]" or accounting misjudgments.[18]  343 F. Supp. 2d at 6. Here, the accounting errors arose from judgments made about complex multiple-element arrangements that were far from simple. See supra § II.[19]

> **G.    Plaintiff's Mere Motive And Opportunity Allegations Are Insufficient To Support A Strong Inference of Scienter**
>
>> 1.    *Lack Of Insider Trading Undermines An Inference Of Scienter*

Plaintiff is simply wrong that the lack of insider trading here is irrelevant. (Opp. at 42-44). Although insider stock sales are not *required* to show scienter, lack of insider trading undermines an inference of scienter, particularly where, as here, plaintiff has pled *no other* personal benefit to the defendants.  See Guerra v. Teradyne, Inc., No. Civ.A. 01-11789-NG, 2004 WL 1467065, at *28 (D. Mass. Jan. 16, 2004) ("lack of sales by these high-level insiders during the Class Period, while not determinative, certainly weighs against an inference of scienter"); In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161, 171 & n.23 (D. Mass. 2000) (to same effect).  Even Crowell, on which plaintiff principally relies, states that "[t]he absence of insider trading does weaken a case for scienter." 343 F. Supp. 2d at 15.

---

[18]    See also In re Telxon, 133 F. Supp. 2d at 1031 (although some of  alleged GAAP violations appeared discretionary, others, such as recognizing revenue for goods that were shipped to another company location, were outside the range of "reasonable treatments"); In re Microstrategy, 115 F. Supp. 2d at 638 (imputing significance to the magnitude of the accounting violation because the violated GAAP rules and company accounting policies were relatively simple).

[19]    Other cases cited by plaintiff are inapposite.  In re The Wellcare Management Group, Inc. Securities Litigation, 964 F. Supp. 632, 639-40 (N.D.N.Y. 1997), and In re Fine Host Corp. Securities Litigation, 25 F. Supp. 2d 61, 70 (D. Conn. 1998), do not rely on the magnitude or duration of accounting errors in finding scienter.  The court in the cited portion of Fine Host relies only on the defendant's alleged admission of fraudulent intent in finding scienter.  25 F. Supp. 2d at 70. In Wellcare, the plaintiffs allege a variety of specific facts permitting an inference of scienter, including understatement of expenses and the fact that some of the funds received by the defendant company were actually from bank loans personally guaranteed by one of the defendants.  964 F. Supp. at 639-40.  The portion of Geffon v. Micrion Corp., 249 F.3d 29 (1st Cir. 2001), cited by the plaintiff refers to "accounting shenanigans" as one of several factors the First Circuit found relevant to the scienter issue in *other* cases.  Id. at 36.  Greebel affirmed summary judgment for the defendant, based in part on the lack of detail regarding the alleged accounting violations.  194 F.3d at 201-04.  Greebel involved allegations of more serious accounting violations, such as the deliberate alteration of company records to hide material information from auditors, the recording of phony sales of goods that were actually shipped to a warehouse and then sent back to the company as returned, and channel stuffing.  Id. at 201-03.

2.    *Plaintiff's Motive and Opportunity Allegations Are Inadequate*

The gist of plaintiff's "motive" case is that defendants had the motive to "perpetuate the image of revenue linearity" in order to "raise capital by issuing shares of Sonus' common stock in follow-on stock offerings during the Class Period . . . [which] [d]efendants knew . . . would not be well received by Wall Street . . . if Sonus's revenues were perceived to be sporadic, irregular or unpredictable." (Opp. at 7).   These mere allegations are simply not enough to plead even "motive and opportunity," much less a "strong inference" of scienter under the PSLRA. [20]

To be probative of scienter, allegations of motive must identify a "concrete and personal benefit flowing to the defendant from the purported fraud."  See, e.g. GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir. 2004) (plaintiff must allege a "concrete and personal benefit to the individual defendants resulting from th[e] fraud"); Rombach v. Chang, 355 F.3d 164, 177 (2d Cir. 2004) (complaint that "identifies no personal interest sufficient to establish motive . . . must be dismissed for failure to plead scienter"); Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (same); In re Metawave, 298 F. Supp. 2d at 1076 (plaintiffs' alleged motives "do not involve the personal receipt of benefits based on [the Company's] financial performance or stock price").

Plaintiff identifies no such concrete personal benefit to Nill or Ahmed.  It argues that "defendants had a clear motive to misrepresent the state of Sonus's finances because they wanted to enable *the Company* to engage in follow-on stock offerings" (Opp. at 43) (emphasis added). [21]

---

[20]       As case after case has held, even if plaintiff could establish motive and opportunity, that would still be insufficient to raise a strong inference of scienter.  Geffon, 249 F.3d at 36; Greebel, 194 F.3d at 197 (citing Maldonado v. Dominguez, 137 F.3d at 10 n.6).

[21]       Even if such a motive *were* sufficient to support a strong inference of scienter, that motive would not have been served by the transactions alleged in the Complaint.  As discussed above at Section II, there are just four accounting decisions that are even identified in the Complaint by date, customer, and amount. Two of the decisions are alleged to have occurred in Q4 2003—*after* the April and September 2003 offerings.  One is alleged to have occurred in Q2 2002 and one in Q3/Q4 200, both at least a year before the April offering. There are *no facts* suggesting that the April offering was even *contemplated* at that time of these alleged accounting decisions.

However, "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits . . . . Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent."  GSC Partners CDO Fund, 368 F.3d at 237-38 (Note offering was insufficient motive).[22]  After all, if scienter could be pleaded on that basis alone "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995).

## CONCLUSION

For all the foregoing reasons, and those set forth in the memoranda of Messrs. Nill and Ahmed, the defendants request that the Court dismiss the Complaint with prejudice.

SONUS NETWORKS, INC.
By its attorneys,
/s/  James W. Prendergast
/s/  Gregory F. Noonan
Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Daniel W. Halston (BBO #548692)
Peter A. Spaeth (BBO #545202)
Gregory F. Noonan (BBO #651035)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: October 24, 2005

---

[22]    See also, e.g., Novak, 216 F.3d at 307 ("plaintiffs [cannot] proceed based on motives possessed by virtually all corporate insiders, including . . . the appearance of corporate profitability"); In re Segue Software, 106 F. Supp. 2d at 171 (accord); In re Exxon Mobil Corp. Sec. Litig., __ F. Supp. 2d __, No. Civ. A 04-1257 (FLW), 2005 WL 2248222, at *17 (D.N.J. Sept. 14, 2005) ("stock-for-stock transaction" insufficient motive for inference of scienter); Giarraputo v. UNUMProvident Corp., No. Civ. 99-301-PC, 2000 WL 1701294, at *18-*19 (D. Me. Nov. 8, 2000) (granting dismissal and noting that "[p]leadings of generalized motives to support the stock price 'which could be imputed to any publicly-owned, for-profit endeavor, [are] not sufficiently concrete for purposes of inferring scienter") (quoting In re Cendant Corp. Sec. Litig., 76 F. Supp. 2d 539, 548 (D.N.J. 1999) and Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)); cases cited in Reply to Opposition to First Motion to Dismiss at 13 n.14.

## <u>CERTIFICATE OF SERVICE</u>

On October 24, 2005, I caused a copy of this Document to be served by electronic mail via the electronic filing system upon all counsel of record.

<u>/s/ James W. Prendergast____ __</u>
James W. Prendergast

US1DOCS 5346661v2