UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE SONUS NETWORKS, INC. LITIGATION | ) ) ) ) ) ) | Civil Action No. 04-10294-DPW |

**HASSAN AHMED'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Hassan Ahmed ("Mr. Ahmed") argued in his opening motion to dismiss brief that Plaintiff's First Amended Complaint ("Complaint") failed to satisfy this Circuit's pleading standards for stating a claim under the federal securities laws. Plaintiff's Opposition to Mr. Ahmed's and to the other defendants' motions to dismiss only underscores Mr. Ahmed's argument.

With respect to its § 10(b) claim, plaintiff is still unable to point to any facts alleged in the Complaint that Mr. Ahmed knew, or was reckless in not knowing, of the alleged fraudulent practices. Instead, it relies exclusively on a single, inadequately identified "confidential" source who is unclear as to what Mr. Ahmed knew and how and when he knew it, and on Mr. Ahmed's mere status as Sonus's chief executive officer at the time. The law is clear in this Circuit that such allegations simply are not enough to state a claim.

Plaintiff's argument that its § 11 claim does not sound in fraud and therefore need not be stated with the particularity required by Fed. R. Civ. P. 9(b) ignores the Complaint's allegations. And its argument that dismissal of its § 12(a)(2) claim would be premature and/or inadvisable under authority from elsewhere runs directly counter to well-established First Circuit law.

For these reasons, as discussed more fully below, and for the reasons advanced in defendant Sonus Network Inc.'s Reply Memorandum in Support of Its Motion to Dismiss the First Amended Consolidated Class Action Complaint filed this day, the Court should dismiss, with prejudice, the Complaint in its entirety as against Mr. Ahmed.

I.  **PLAINTIFF HAS NOT ALLEGED FACTS GIVING RISE TO A STRONG INFERENCE OF MR. AHMED'S SCIENTER.**

Plaintiff's citation to *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187 (1st Cir. 2005) (a case Mr. Ahmed *did* cite to and quote from in his opening memorandum, *see* Docket Item # 128 at 4) is curious because that case explains perfectly why plaintiff's "conclusory allegations as to the existence of knowledge are insufficient to provide the factual basis, supporting a strong inference of scienter, required by the PSLRA . . . the requirement is not satisfied by a pleading which simply asserts that the defendant knew of the falsity." *Id*. at 205-06. The Complaint contains only conclusory allegations of Mr. Ahmed's knowledge. *See, e.g.*, Plaintiff's Opposition at 8 ("Sonus's senior accounting and finance staff, with the knowledge and approval of defendants, manipulated Sonus's contracts with certain of its large telecom customers"); ("Defendants, however, in direct and knowing violation of GAAP, improperly unbundled certain software delivery elements"); at 12 ("The illegal accounting practices were known to and approved by defendant Ahmed"); and at 27 ("In many cases, the product upon which the revenues were improperly booked was not even ready to ship, a fact that was known to defendants Nill and Ahmed"). Called upon to cite specific factual allegations to support these conclusions, plaintiff is unable to do so. Instead, plaintiff merely cites allegations which conclude that Mr. Ahmed knew, but which do not allege any facts whatsoever for the basis, extent, and timing of that knowledge.

The only allegation plaintiff points to as providing even a modicum of a factual basis, albeit an inadequate one, is paragraph 46, in which plaintiff alleges that according to a "former Sonus vice president who had responsibility for, *inter alia*, preparing and interacting with Hemme on financial statement preparation," Mr. Ahmed was made aware of improper accounting practices in 2001, specifically with respect to the Qwest contract. *See* Opposition at 27, 29, 32. Confronted with the argument that the vague description of this source "is not sufficiently particular to support the probability that a person in the position occupied . . . would possess the information alleged," as required by *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29 (1st Cir. 2002), plaintiff's only response is an entirely conclusory and unilluminating: "such a person was clearly in a position to know." Opposition at 29. Even if plaintiff had adequately described (or even identified) the confidential source, plaintiff still has not answered the basic questions: *How* was Mr. Ahmed made aware of these practices? *By whom*? And *what*, exactly was he told? Without allegations of these facts and facts which indicate the source's reliability, these allegations do not suffice to allege Mr. Ahmed's scienter.

Otherwise, plaintiff is content to rely solely on Mr. Ahmed's status as Sonus's CEO as the basis from which his knowledge or recklessness can be inferred. *See* Opposition at 7 ("Sonus's senior accounting and finance managers, under the direction of senior management, including defendants Ahmed and Nill, engaged in illegal revenue recognition practices"); and at 10 ("This unlawful practice was known, approved of, and condoned by defendant Nill who, together with controller Hemme, tightly controlled the revenue reporting function at Sonus, under the supervision of defendant Ahmed"). As Mr. Ahmed explained in his opening memorandum, however, allegations of status are no substitute for allegations of specific facts giving rise to a strong inference of scienter. *See* Opening Memorandum at 4-5, *citing*

3

*Maldonado v. Domingues*, 137 F.3d 1, 10 (1st Cir. 1988) and other cases cited there. In the same vein, allegations that sales personnel's conversion of future deliverables into special "extra-contractual" side deals were carried out pursuant to directives from Messrs. Nill and Ahmed, do nothing to help plaintiff meet its pleading burden. Nowhere does plaintiff allege any facts indicating when these directives were made, what they were, to whom they were made, and who issued them. This allegation, too, is nothing more than a thinly-disguised attempt to plead Mr. Ahmed's scienter by virtue of his position as Sonus's CEO. For the reasons discussed above, it, too, does not suffice.[1]

Finally, plaintiff, apparently recognizing that its Complaint lacks particularized factual allegations of Mr. Ahmed's scienter, argues that the knowledge of the alleged wrongdoers should be imputed to Mr. Ahmed by virtue of his role as a senior officer in the Company. *See* Opposition at 38-41. For the reasons given in Sonus's Reply Memorandum, also filed this day, plaintiff's attribution/imputation argument has never been accepted in this Circuit in a federal securities action such as this one and for good reason. Allowing plaintiff to plead a defendant's scienter based on attribution or imputation of the knowledge of others would eliminate the stringent pleading requirements imposed by the PSLRA as interpreted and applied by this Circuit. The First Circuit, in *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 199 (1st Cir.

---

[1] It is more than a little ironic that at page 2 of its Opposition, plaintiff chides Mr. Ahmed for making the "extraneous factual argument" that he is an engineer, not an accountant by profession (an argument based entirely on plaintiff's own allegations, by the way), yet only a few pages later – page 9 n.4 – plaintiff relies on the allegations that Mr. Nill "had extensive experience working with some of the world's most prominent software companies and accounting firms and thereby was fully familiar with the requirements of GAAP and, in particular, SOP 97-2" as somehow giving rise to a strong inference of Mr. Nill's scienter. Plaintiff's reliance on such allegations is dubious at best because it says nothing about what Mr. Nill knew about what was transpiring at Sonus. It is interesting, however, that plaintiff seems to argue that Mr. Ahmed's lack of experience with sophisticated accounting rules and concepts is irrelevant, but Mr. Nill's alleged knowledge of those same concepts not only is relevant, but important in establishing his scienter. Plaintiff cannot have it both ways.

2005), recently rejected just such an attempt to allege a CEO's scienter by imputing the knowledge of company employees.

Plaintiff's suggestion that Mr. Hemme's knowledge can be attributed directly to Mr. Ahmed because Mr. Hemme was Mr. Ahmed's agent is just plain wrong both as a matter of pleaded fact and law. Nowhere does plaintiff cite to any allegation that Mr. Hemme was Mr. Ahmed's agent, or that Mr. Hemme even reported to Mr. Ahmed, nor would it make any sense for plaintiff to have done so. Both Mr. Hemme and Mr. Ahmed are alleged to have worked for the Company. While it might be argued that both may have acted, within the scope of their employment, as agents for Sonus, plaintiff cites no authority for the rather remarkable proposition that an agent-principal relationship exists between a company's controller and its CEO.

In sum, plaintiff has not alleged the particularized facts necessary to give rise to a strong inference of Mr. Ahmed's scienter. Its § 10(b) claim should be dismissed as against him.

## II. PLAINTIFF'S OWN CASES SUPPORT DISMISSAL OF ITS § 11 CLAIM FOR FAILURE TO SATISFY RULE 9(b)'S PARTICULARITY REQUIREMENT.

Plaintiff does not contest that the law in this Circuit is that a § 11 claim sounding in fraud must satisfy Fed. R. Civ. P. 9(b)'s particularity requirement. *See* Opposition at 45-46. Instead, it attempts to hide behind the *general* rule that a § 11 claim need not comport with Rule 9(b) *if* it is not grounded in fraud and then argues that its § 11 claim is not grounded in fraud. Plaintiff cites a host of cases standing for the basic proposition that a § 11 claim that is rooted in negligence need not satisfy Rule 9(b). The fundamental problem with plaintiff's § 11 argument, however, is that its § 11 claim *is* based on fraud and is unlike any of the § 11 claims in the cases cited by plaintiff.

For example, in *Vess v. CIBA-GEIGY Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), the court held that the plaintiffs' allegations did not "rely entirely on a unified course of conduct" and therefore were "not 'grounded in fraud,'" and Rule 9(b)'s particularity requirement therefore did not apply. *Id*. at 1106.[2] *See also, Kensington Capital Management v. Oakley, Inc.*, 1999 WL 816964, *2 (C.D. Cal. January 14, 1999) (same); *Degulis v. LXR Biotech., Inc.*, 928 F.Supp. 1301, 1310 (S.D.N.Y. 1996) (same). The complaint in *In re Chambers Dev. Sec. Litig.*, 848 F. Supp. 602 (W.D. Pa. 1994), including its § 11 claims, was found to satisfy Rule 9(b). *Id*. at 624. The plaintiff in *Giarraputo v. UNUMProvident Corp.*, 2000 WL 1701294 (D. Me. November 8, 2000), filed two separate complaints – one complaint for her § 10(b) claim and an entirely separate complaint alleging her § 11 claim. *Id*. at *1, *10-*11. The court there found no unified course of fraudulent conduct pled in the § 11 complaint. *Id.*

Here, as Mr. Ahmed argued in his opening memorandum, plaintiff's Complaint *does* allege a unified course of fraudulent conduct. Indeed, it is impossible to read the Complaint any other way. For that reason, Rule 9(b) applies, and plaintiff's § 11 claim fails for the same reasons its § 10(b) claim fails.

Even if plaintiff were correct and its disclaimed reliance on any fraud allegations respected, its § 11 claim still would not survive. Aside from fraud, there is nothing else alleged in the Complaint. The Complaint includes only a single passing reference to "negligence" and even then does not include allegations of how Mr. Ahmed was negligent. This Court need not "sift through allegations of fraud in search of some lesser included claim of strict liability," *Lone Star Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (cited by plaintiff at page 46 n.15 of its Opposition). If the Court were to follow the directive of another of the cases plaintiff

---

[2] *Vess* and the other cases cited in this paragraph are relied on by plaintiff at pages 45-46 of the Opposition.

relies on in its Opposition, *In re Nationsmart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997), and "strip away" the allegations of fraud, then it would find absolutely nothing left. For this additional reason, plaintiff's § 11 claim should be dismissed.

### III. PLAINTIFF IS NOT ENTITLED TO DISCOVERY IN SEARCH OF A §12 CLAIM AND THE COMPLAINT DOES NOT PLEAD THAT DEFENDANTS ARE STATUTORY SELLERS.

Plaintiff has no reason to believe that Sonus's secondary offering was anything other than a "firm commitment" offering, and its refusal to concede that fact is no reason to deny the motion to dismiss this claim. Its argument that defendants were "statutory sellers" is foreclosed by this Circuit's decision in *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996). For these reasons, plaintiff's § 12(a)(2) claim should be dismissed.

#### A. Plaintiff Cannot Avoid Dismissal By Refusing To "Concede" That The Offering Was A Firm Underwriting.

Plaintiff does not allege that any defendant passed title to the Sonus stock to it as part of the September 23, 2003 offering. Nor could it. That offering was a "firm commitment" underwriting, meaning that the underwriter, Goldman Sachs, sold the shares to the public. *See* Opening Memorandum at 11-12. The Prospectus Supplement, pursuant to which plaintiff alleges it purchased shares (Complaint ¶ 209), clearly discloses this fact. As the First Circuit made clear in *Shaw*, "the issuer in a firm commitment underwriting does not pass title to the securities." *Shaw*, 82 F.3d at 1215.

Plaintiff cannot overcome this clear authority by claiming that absent discovery it "cannot confirm" that the offering was a firm commitment underwriting. Opposition at 51. Plaintiff identifies no reason to doubt that the offering was a firm commitment underwriting as disclosed in the Prospectus Supplement. Plaintiff does not cite a single case where a plaintiff avoided dismissal and obtained discovery merely by refusing to "concede" that an offering

7

was a firm commitment underwriting. *Compare* Opposition at 51 n.19 with *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir, 1998) (rejecting plaintiffs argument that "the district court dismissed his claim prematurely, depriving him of the opportunity to discover facts sufficient to satisfy the § 12(a)(1) test").

Furthermore, plaintiff presumably does not need discovery to know from whom it bought *its own* Sonus stock. Nowhere does plaintiff allege in the Complaint (or claim in the Opposition) to have bought its stock from anyone other than Goldman Sachs. Thus, plaintiff has not stated a claim against any defendant under § 12(a)(2), and it is irrelevant whether another investor might have purchased stock from somebody else. *See, e.g., Lewis v. Casey* 518 U.S. 343, 357 (1996) ("That a suit may be a class action ..., adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

### B.   Plaintiffs Allegations Are Insufficient To Plead Solicitation

*Shaw* also disposes plaintiff's argument that dismissal should be denied because it has sufficiently alleged that defendants are statutory sellers through solicitation.

Plaintiff is just plain wrong in its assertion that its allegations "are sufficient to satisfy the broad standards articulated in *Shaw* for seller liability." Opposition at 52. The First Circuit in *Shaw* rejected as insufficient allegations nearly indistinguishable from those in the Complaint: defendants' "involvement in preparing the registration statement [and] prospectus," "activities necessary to effect the sale of the [ ] securities to the investing public," and other conclusory allegations of solicitation. *Compare Shaw*, 82 F.3d at 1216 with Opp. at 52 (relying on conclusory allegations that defendants signed and assisted in preparing the prospectus, and engaged in unspecified selling efforts). *Shaw* and other decisions make clear

that the plaintiff's claim must be dismissed because it does not allege that any defendant solicited its purchase (as opposed to purchases by other investors).

Plaintiff s suggestion that defendants' mere signing of the prospectus is sufficient to state a claim, *see* Opp. at 52, should be rejected as an unpersuasive, minority view[3] that is inconsistent with *Shaw*. As noted above, the *Shaw* court and other Courts of Appeal have held that the proper focus of the solicitation inquiry is on the direct interaction between the purported seller and the purchaser. *See Shaw*, 82 F.3d at 1216. That is why "involvement in preparation of a registration statement" does not establish statutory seller status. *See Shaw*, 82 F.3d at 1216.[4]

Likewise, plaintiff is incorrect that "determining whether a defendant is a seller . . . is a fact-intensive inquiry requiring discovery . . ., [which] should not be made on a motion to dismiss." Opposition at 52. Again, this suggestion is directly contrary to *Shaw*, which affirmed dismissal of § 12 claims against all defendants, other than the underwriter, because the complaint did "not contain sufficient non-conclusory factual allegations which, if true, would establish that [the issuer] or the individual defendants qualify" as statutory sellers. *Shaw*, 82 F.3d at 1216. Moreover, plaintiff obviously knows whether any defendant solicited it, and the

---

[3] Plaintiff relies on older case law from district courts in California, but more recent authority from those courts, and the weight of authority from other courts, hold that signing a prospectus does not make a defendant a seller**.** *Compare* Opp. at 52-53 *with, e.g., Rosenzweig v Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *In re Infonet Servs. Corp. Sec. Litig.,* 310 F. Supp. 2d 1080, 1101 (C.D. Cal. 2003); *In re Musicmaker.com Sec. Litig,* No. CV00-2018, 2001 WL 34062431, at *14 (C.D. Cal. June 4, 2001); *In re Cendant Corp. Sea Litig.,* 190 F.R.D. 331, 339 (D. N.J. 1999); *In re Stratosphere Corp. Sec. Litig.,* 1 F. Supp. 2d 1096, 1120 (D. Nev. 1998).

[4] As the *Infonet Servs.* court observed, the Supreme Court has noted that the difference in the statutory language of § 11 and § 12 strongly suggests that Congress did not intend signatories to be liable as sellers. *See in re Infonet Servs.* 310 F. Supp. 2d at 1101, *citing Pinter v. Dahl,* 486 U.S. 622 (1988). "Section 11(a) explicitly enumerates the various categories of persons involved in the registration process who are subject to suit under that section, including many who are participants in the activities leading up to the sale. There are no similar provisions in § 12, and therefore we may conclude that Congress did not intend such persons to be defendants in § 12 actions." *Pinter v. Dahl*, 486 U.S. at 650 n.26. Section 11, of course, includes among the enumerated categories of potential defendants those who "signed the registration statement."

only inference from the absence of such allegations is that there was no solicitation.  No discovery on this point is needed.

## CONCLUSION

For the reasons set forth above, and the reasons given in Sonus's Reply Memorandum filed this day and in Mr. Ahmed's and Sonus's respective opening memoranda, the Court should dismiss the Complaint as against Mr. Ahmed in its entirety and with prejudice.

HASSAN M. AHMED,

By his attorneys,


/s/ John R. Baraniak, Jr.
Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Paul E. Bonanno (BBO #646838)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  October 24, 2005

3996776_1