UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DEBORAH CHIN, Individually and on behalf of all others Similarly situated, | ) ) ) ) | **Civ. Action No. 04-10294 DPW** |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. AND STEPHEN NILL, | ) ) ) |  |
| Defendants. | ) ) |  |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN
SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

In support of their September 12, 2005 Motions to Dismiss the First Amended Consolidated Class Action Complaint, Defendants Sonus Networks, Inc. ("Sonus"), Stephen J. Nill and Hassan M. Ahmed, respectfully bring to the Court's attention the recently issued decisions in Zack v. Allied Waste Indus., Inc., No. CIV04-1640PHXMHM, CIV04-1805PHXMHM, CIV04-2058PHXMHM, slip op., 2005 WL 3501414 (D.Ariz. December 15, 2005); Davis v. SPSS, Inc., No. 04-C-3427, slip. op., 2006 WL 681044 (N.D. Ill. March 14, 2006); and In Re: The Goodyear Tire & Rubber Co. Sec. Litig., No. 5:03-cv-02166-JRA, slip op. (N.D. Ohio March 22, 2006). (Copies of the decisions are attached hereto as Exhibits A through C.)

In Zack, plaintiffs alleged violations of section 10(b) and Rule 10b-5 based on, inter alia, alleged accounting manipulations and statements by nine (9) confidential witnesses. 2005 WL 3501414. The court found that the complaint failed to plead fraud with particularity and that

"the Amended Complaint is devoid of allegations of scienter because confidential witness' statements regarding what Defendants 'knew' are conclusory and desires to obtain favorable financing does not [sic] give rise to a strong inference of scienter." Id. at *14. In particular, the court noted that:

- "Plaintiffs rely on the allegations of CW1, an Internal Reporting Manager and Senior Financial Analyst, whose department compiled field and regional data . . . Other than the original 1.5 billion internal forecast, the Amended Complaint avers no details at all regarding the forecasts CW1 prepared.  Notably, the Amended Complaint does not allege CW1 personally received directives from named Defendants, witnessed conversations or even heard of them second-hand . . . Simply, the basis for CW1's statements regarding [defendants'] . . . knowledge is not averred.  Instead the Amended Complaint seems to allege that Mr. Quinn directed CW1 to 'get rid of' early forecasts.  How does CW1 know senior management wanted the numbers changed?  What process did the other departments undergo when reviewing the Complaint?  How does CW1 know which Defendants viewed these reports?  What information did Defendants rely on when making changes?  The questions could go on." Id. at *7.

- "Plaintiffs maintain statements of nine confidential witnesses support a strong inference of scienter because the Amended Complaint numbers each witness, describes each witnesses' title and responsibilities and each witness corroborates each others statements.  However, merely citing a confidential witness' [sic] title and responsibilities without sufficiently pleading the basis of the witnesses knowledge is insufficient." Id. at *12, citing In re Daou Sys. Inc. Sec. Litig., 397 F.3d 704, 712 (9th Cir. 2005), and In re Commtouch Software Ltd. Sec. Litig., Fed. Sec. L. Rep. (CCH) § 91985, 2002 WL 31417998 (N.D. Cal. 2002)).

- "[T]he Amended Complaint fails to cite a single interaction, directive or conversation between a confidential witness and a Defendant.  Moreover, it fails to explain the basis for which the confidential witnesses attribute statements, beliefs, or knowledge to defendants.  For instance, CW1 indicates Mr. Quinn informed her to 'get rid of documents,' yet the [A]mended [C]omplaint fails to provide a basis for attributing this statement to a named Defendant." Id.

In Davis, plaintiffs alleged that, inter alia, a financial restatement by the defendant company, GAAP violations, and allegations from confidential witnesses in the accounting department demonstrated that the defendants acted with the requisite strong inference of scienter under the PSLRA.  2006 WL 681044.  There, the court reviewed a second amended complaint,

2

in which plaintiffs provided additional details concerning the confidential witness allegations set forth in the previous complaint.  See id. at *2.  The court nevertheless dismissed the complaint with prejudice, and stated that:

- "Although plaintiffs' second amended complaint included some additional details [regarding confidential witness allegations], without more information describing how the confidential witnesses came to these conclusions, we cannot find that they were in a position to give accurate information regarding the ways in which [the head of the sales department Arleen] Garcia's actions were integrated into the financials, such that they were material to plaintiffs' injuries . . . [B]ecause confidential witnesses' allegations cannot act as the factual basis for any specific accounting violation, we find that plaintiffs have failed to adequately plead such GAAP violations." Id. at *4, citing In re Metawave Comm. Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003).

- "[K]nowing the sales department practices does not establish that the witnesses were in a position to know whether Garcia's artificially-inflated sales translated into the misstated financial data complained about in this case.  Vague statements like 'CW-1 is confident that this $5.709 million of improperly recognized revenue that was written off in the Company's restatement is directly attributable to Garcia's accounting measures,'. . . are insufficient to establish how the witnesses knew that Garcia's conduct was material to the revenue overstatement." Id. at *4, citing City of Austin Police Retirement Sys. v. ITT Educ. Servs., 388 F. Supp. 2d 932, 943 (S.D. Ind. 2005).

- " [P]laintiffs' confidential witnesses point to a $1.5 million sale and a $280,000-$500,000 sale, both to HCFA, which they allege was prematurely recorded . . . These allegations, however, are unreliable.  First, we cannot rely on the allegations of the $1.5 million sale because witness no. 3 does not state the date of the sale, or even the year, nor does he/she, former vice president of strategic planning, explain how he/she knew about the sale.  Confidential witness no. 2, who reported about the second sale, does state that it was booked around December 2000, but he/she, a federal account manager, does not explain how he/she knew that information . . . Other than those two alleged sales, the complaint does not quantify any specific transactions for us to establish that Garcia's misconduct translated into the $5.709 million overstatement." Id. at *8, citing In re Northpoint Comm. Group, Inc. Sec. Litig., 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001).

- "To state a section 20(a) claim . . . plaintiff must allege a primary security violation, each defendants' exercise of general control over [the company], and each defendants' [sic] 'power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised' . . . As plaintiffs have once again failed to plead a primary security violation, they cannot proceed with a §20(a) claim." Id. at *9, citing Davis v. SPSS, Inc., 385 F. Supp. 2d 697, 717 (N. D. Ill. 2000) ("Davis I") (internal citation omitted), and Zurich Capital Market Inc. v. Coglianese, 332 F. Supp. 2d 1087 (N. D. Ill. 2004).

3

Finally, in <u>Goodyear Tire & Rubber Co.</u>, plaintiffs based their section 10(b), Rule 10b-5 and section 20(a) claims on, among other things, allegations of accounting improprieties, restated earnings, and statements by several confidential witnesses.  No. 5:03-cv-02166-JRA, slip op. (N.D. Ohio March 22, 2006) .  Finding that plaintiffs had failed to plead fraud and scienter with the requisite particularity, the court dismissed the complaint without leave to amend.  Among other things, the court noted the following:

- "First, the allegations from the former Goodyear Tire Plant controller fail to specify any detail regarding the 'reporting errors,' such as when the errors occurred, what type of errors occurred, and who [defendant] Tieken deliberately directed to not correct the errors.  Furthermore, the allegations fail to specify when Tieken became aware of the purported overstatement of accounts in 2000 and fails to specify what 'other' problems Goodyear had with its balance sheet accounts prior to June 2000."  Slip op. at 36.

- "Similarly lacking in specificity are the allegations from the former finance director because they fail to say when the 'weekly meetings' occurred and whether any wrongdoing was discussed . . . And mere allegations that . . . intentional overrides were 'widely known' does not cure this deficiency . . . In other words, Plaintiffs' allegations regarding former Goodyear employees may state the 'who,' but fail to sufficiently allege the 'what/where/when/how' details."  <u>Id.</u> at 36-37.

- "Furthermore, to the extent that Defendants were motivated by a desire to increase the overall worth of Goodyear, such allegations would merely set forth 'motives possessed by virtually all corporate insiders' and are insufficient to demonstrate a particularized motive to commit fraud."  <u>Id.</u> at 42, <u>quoting</u> <u>Novak v. Kasaks</u>, 216 F.3d 300, 307 (2d Cir. 2000).

- "The Court grants Defendants' motion because Plaintiffs have failed to plead scienter as required by both the [PSLRA] and Federal Rule 9(b) . . . Furthermore, without any primary liability, Plaintiffs cannot state a claim under Section 20(a) for control person liability."  <u>Id.</u> at 2.

        Respectfully Submitted,

        <u>/s/ James W. Prendergast</u>
        James W. Prendergast (BBO #553073)
        Jeffrey B. Rudman (BBO #433380)
        Daniel W. Halston (BBO #548692)
        Peter A. Spaeth (BBO #545202)
        WILMER CUTLER PICKERING HALE AND DORR LLP
        60 State Street

|  |  |
|---|---|
| Dated:  April 21, 2006 | Boston, Massachusetts 02109<br>(617) 526-6000<br><br>Counsel for Defendant Sonus Networks, Inc. |
|  | Respectfully Submitted,<br><br>/s/  Matthew J. Matule<br>Thomas J. Dougherty (BBO #132300)<br>Matthew J. Matule (BBO #632075)<br>Michael S. Hines (BBO #653943)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Beacon Street<br>Boston, Massachusetts 02108 |
| Dated:  April 21, 2006 | (617) 573-4800<br><br>Counsel for Defendant Stephen J. Nill |
|  | Respectfully Submitted,<br><br>/s/  John R. Baraniak, Jr.<br>Robert S. Frank, Jr. (BBO #177240)<br>John R. Baraniak, Jr. (BBO #552259)<br>Paul E. Bonnano (BBO #646838)<br>CHOATE, HALL & STEWART<br>Exchange Place<br>53 State Street<br>Boston, Massachusetts 02109 |
| Dated:  April 21, 2006 | (617) 248-5000<br><br>Counsel for Defendant Hassan M. Ahmed |

## CERTIFICATE OF SERVICE

I, James W. Prendergast, hereby certify that on April 21, 2006, I caused a true copy of the foregoing Notice of Supplemental Authority to be served electronically via the Court's Electronic Filing System upon all counsel of record.

| | |
|---|---|
| Dated:  April 21, 2006 | /s/ James W. Prendergast<br>James W. Prendergast |