SONUS NETWORKS, INC.>

```
            UNITED STATES DISTRICT COURT

              DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * *
                              *
IN RE:                        *
                              *   CA-04-10294-DPW
                              *
   SONUS NETWORKS, INC.       *   CA-04-10359-DPW
                              *
                              *
* * * * * * * * * * * * * * *


       BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

          UNITED STATES DISTRICT COURT JUDGE

                     HEARING

                 DECEMBER 7, 2005
```

APPEARANCES:

   JOHN C. MARTLAND, ESQ., Gilman and Pastor, LLP,
   Stonehill Corporate Center, 999 Broadway, Suite
   500, Saugus, Massachusetts  01906, on behalf of
   Michelle Burk, plaintiff in derivative case

   TRAVIS E. DOWNS, III, ESQ., Lerach, Coughlin,
   Stoia & Robbins, LLP, 401 B. Street, Suite 1700,
   San Diego, California  92101, on behalf of
   Global Undervalued Securities Master Fund

   MICHAEL K. MATTCHEN, ESQ., Dangel & Mattchen, LLP,
   10 Derne Street, Boston, Massachusetts  02114, on
   behalf of Michael Pisnoy, plaintiff in derivative
   action

   WILLEM F. JONCKHEER, ESQ., Schubert & Reed, LLP,
   Two Embarcadero Center, Suite 1650, San Francisco,
   California  94111, on behalf of Michelle Burk,
   plaintiff in derivative case

   SOLOMON B. CERA, ESQ., Gold, Bennett, Cera &
   Sidener, LLP, 595 Market Street, Suite 2300,
   San Francisco, California  94105-2835, on
   behalf of Plaintiff Movant and BPI Global
   Asset Management

DECEMBER 7, 2005>

1  because they don't hit the PSLRA basis.
2           THE COURT:  Well, not just that they don't hit
3  the PSLRA basis.  It is that substantively they aren't
4  matters of fraud and deceit; that even reading them in
5  the fashion that they were read in the light most
6  favorable to the plaintiffs, the First Circuit has some
7  difficulty -- not some difficulty, simply finds that the
8  alleged basis of scienter is inadequate.
9           MR. RUDMAN:  Because it did not support a
10 strong inference of scienter meaning it did not satisfy
11 one of the two critical bases under the PSLRA for
12 pleading 10(b)(5).  Judge LaValle was pretty clear.
13          THE COURT:  Okay.  Now let's take it a step --
14 or I think I understand the position that you're taking
15 about this.  I'm not sure that I embrace it entirely,
16 but I understand it.  Now, let's take it a little bit
17 differently.  They allege a scienter with sufficient
18 particularity to provide a reasonable basis for
19 finding in a reckless disregard or outright fraud.
20 Is that a reasonable inference to be drawn?
21          MR. RUDMAN:  Generally speaking, starting with
22 Greeble, the law in this jurisdiction is you must draw a
23 strong or a very strong inference of scienter.  In the
24 absence of that inference, no case.  In the absence of
25 that inference, there is no Section 10 liability.  And

1  in the absence of Section 10 liability, even assuming
2  notice pleading, which I do for purposes of Section 20,
3  there is no Section 20 liability.  And that is why I
4  think LaValle -- Judge LaValle's decision is so good for
5  us.  If you take the analogous portions of Stone &
6  Webster, look at what this case is about, which is all
7  about scienter as applied to an accounting violation, we
8  win.
9          THE COURT:  I think I understand your
10 position.  Now let me take it one step further.  There
11 has been all this self-congratulation within the First
12 Circuit about how the PSLRA really didn't change things
13 at all, anyway, that we were always this way and now
14 we're just continuing to be this way.  Before the PSLRA
15 and now quite clearly after, Section 20 was never
16 subject to those heightened pleading requirements; --
17         MR. RUDMAN:  True.
18         THE COURT:  -- is that right?  Okay.  All
19 right.
20         MR. RUDMAN:  At least to the best of my
21 knowledge, I would say Section 20(a), just like loss
22 causation, has always been subject to notice pleading.
23 And Dora is the most recent word on loss causation.
24 But certain elements of the PSLRA or of 10(b)(5) are
25 absolutely positively subject to heightened pleading and

1  always have been.  And in this circuit, if Your Honor
2  please, yes, we were the first.  I think the --
3         THE COURT:  Hence the name.
4         MR. RUDMAN:  Upon my word.
5         THE COURT:  Right.
6         MR. RUDMAN:  I think if you go back to
7  Serabian, sir, it has always been the case that
8  fraud by hindsight will not support the inference of
9  scienter and that's been true for a very long time and
10 nothing has changed.
11        THE COURT:  Let me take this in a somewhat
12 different direction now that you're standing up because
13 it's a question for the defendants.  If I read this
14 complaint as demonstrating wrongdoing on the part of Mr.
15 Hemme here, isn't that enough to draw Sonus in?
16        MR. RUDMAN:  Yes.
17        THE COURT:  He hasn't been pled for whatever
18 reason.  He hasn't been pled as a defendant here.
19        MR. RUDMAN:  If I may direct your attention to
20 the reply brief, there is no such thing in this circuit
21 or any other circuit as collective scienter.
22        THE COURT:  I'm not talking about collective
23 scienter.  I guess I'm saying let's assume, for whatever
24 reason -- the way the United States Attorney's Office,
25 for instance, prosecutes co-conspirators by offering

1  immunity agreements to the most culpable and then going
2  after the lesser people, the United States Attorney or
3  the plaintiffs here decide for whatever reason, as I
4  said, to leave Mr. Hemme alone, perhaps because he'll
5  make a cameo appearance at some point in this case.  But
6  they go after Mr. Ahmed and Mr. Mills.  And they plead
7  an adequate case of violation by this senior official of
8  the company sufficient to show that by him, through him,
9  the company committed a violation.  Would the control
10 persons then be -- could the control persons then be
11 held under Section 20?
12             MR. RUDMAN:  No.
13             THE COURT:  Why?
14             MR. RUDMAN:  Because you would have to show a
15 link -- an explicit link -- between what Mr. Hemme did
16 and their exercise of control as to Mr. Hemme.
17             THE COURT:  Well, let's talk about -- then
18 let's talk about the Chief Financial Officer because it
19 makes it a little bit easier in this setting.
20             MR. RUDMAN:  Right.
21             THE COURT:  Reports to and at least there is
22 at least one portion of allegation -- I guess it's
23 section or paragraph (44) that has him sitting down with
24 Mr. Hemme to develop this scheme.  So, there you have
25 someone who is controlling in respect of the preparation

Page 21

1   of financial statements and reports, participating with,
2   directing as one would expect in the organization of the
3   company the process that is alleged to be in violation
4   of Section 10(b).
5           MR. RUDMAN:  It's a very conclusionary
6   paragraph, paragraph (44).  Indeed, Your Honor, in this
7   entire complaint, when the plaintiffs get around to
8   talking about specific transactions, they give you four
9   specific transactions, each and every one of which is
10  dead wrong when you look at the facts.  They are 0 for 4
11  on the four specifics they offer you.
12          THE COURT:  Well, they'll be a chance to talk
13  about that.  But I really want to get to whether or not
14  someone who was not charged or made a defendant in a
15  case can provide the basis for the underlying violation.
16  I don't think there's any question about that, is there,
17  they could provide the underlying violation for purposes
18  of Section 20?
19          MR. RUDMAN:  It depends on whether the person
20  who is supervising them, who is sought to be held in is
21  exercising actual control.
22          THE COURT:  Okay.  Fair enough.  And let's
23  close that gap for a moment by saying it is.
24          MR. RUDMAN:  Okay.
25          THE COURT:  Then that's enough, isn't it, for

DECEMBER 7, 2005>

Page 22

1   20(a)?
2              MR. RUDMAN:  If you have a control person
3   actually exercising control over a subordinate who then
4   violates the securities laws or causes the entity to
5   violate the securities laws, but there must be a
6   violation of the security laws, then in theory, you
7   could have such a case.  In fact, Your Honor, you would
8   have to think long and hard of there being such a case
9   and I can't remember such a case off the top of my head.
10  There may be such a case.  I don't want to say to you
11  that I'm sure there isn't one, but it is very, very
12  rare.  And just to jump back to all the analyst cases,
13  the analysis in those analyst cases focus upon who up
14  the corporate food chain in Credit Suisse v. Boston,
15  whether it's Mr. Rogers or Mr. Quattrone, is actually
16  exercising control over the younger analysts.  That's
17  your decision in Razorfish.  That's Magistrate Judge
18  Dein's decision in the AOL case.  That's now before
19  Judge Gertner.  And that's Judge O'Toole's decision in
20  the Adjulant -- and I just can't remember whether
21  Quattrone is let out because there is no underlying
22  violation, because it wasn't found he was exercising
23  control.  I think it's --
24             THE COURT:  So let's go -- all right.  I think
25  we have explored this sufficiently so that I understand

DECEMBER 7, 2005>

c3544d41-51ea-49ac-a0e8-b69846019530