UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SONUS NETWORKS, INC.<br>LITIGATION | ) Civil Action No. 04-10294-DPW<br>) (Lead Case)<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | )<br>)<br>)<br>)<br>)<br>) |

**LEAD PLAINTIFF'S MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION**

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Steven O. Sidener
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: ( 415) 777-2230
Facsimile: (415) 777-5189

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#114696

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Applicable Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   The Proposed Class and Subclass Satisfy the Requirements of Rule 23(a) . . . . . . 5

        1.   The Members of the Class and Subclass Are So Numerous That Joinder Is Impracticable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   Common Questions of Law and Fact Exist . . . . . . . . . . . . . . . . . . . . 7

        3.   Lead Plaintiff's Claims Are Typical of the Class and Subclass Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        4.   Lead Plaintiff Will Fairly and Adequately Represent the Class . . . . . . . 10

    C.   The Proposed Class and Subclass Satisfy the Requirements of Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.   Common Questions of Law or Fact Predominate . . . . . . . . . . . . . . . . 12

            a.   Reliance May Be Presumed Based on the Fraud-on-the-Market Theory and The First Circuit's Standard of Market Efficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            b.   A Presumption of Reliance Based on the "Fraud-on-the-Market" Theory is Appropriate Here . . . . . . . . . . . . . . . . . . . . . . 16

        2.   A Class Action is the Superior Method of Adjudicating the Claims in this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        3.   The Court Should Appoint Lead Counsel As Class and Subclass Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**CASES**

*AAL High Yield Bond Fund v. Ruttenberg*
 229 F.R.D. 676 (N.D. Ala. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Amchem Products, Inc. v. Windsor*
 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Andrews v. Bechtel Power Corp.*
 780 F.2d 124 (1ˢᵗ Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Basic v. Levinson*
 485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blackie v. Barrack*
 524 F.2d 891 (9ᵗʰ Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cammer v. Bloom*
 711 F.Supp. 1264 (D. N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-18

*Deutschman v. Beneficial Corporation*
 132 F.R.D. 359 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Eisen v. Carlisle & Jacquelin*
 417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Eisenberg v. Gagnon*
 766 F.2d 770 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Esplin v. Hirschi*
 402 F.2d 94 (10ᵗʰ Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Civil Procedure
 Rule 23(b)(3)(A)-(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Grace v. Perception Tech. Corp.*
 128 F.R.D. 165 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Herman & MacLean v. Huddleston*
459 U.S. 375 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Am. Med. Sys.*
75 F.3d 1069 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re AremisSoft Corp. Secs. Litig.*
210 F.R.D. 109 (D. N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Carbon Black Antitrust Litigation*
2005 WL 102966 (D. Mass. Jan. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . 5, 9, 11

*In re Kirschner Medical Corp. Secs. Litig.*
139 F.R.D. 74 (D. Md. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Life USA Holding Inc.*
190 F.R.D. 359 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Pharm. Indus. Average Wholesale Price Litig.*
230 F.R.D. 61 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Polymedica Corp. Sec. Litig.*
432 F.3d 1 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Resource America Secs. Litig.*
202 F.R.D. 177 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Tyson Foods, Inc.*
2003 WL 22316548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Xcelera.com Sec. Litig.*
430 F.3d 503 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

*Kahan v. Rosenstiel*
424 F.2d 161 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kirby v. Cullinet Software, Inc.*
116 F.R.D. 303 (D. Mass. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Peoples v. Wendover Funding, Inc.*
  179 F.R.D. 492 (D. Md. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Phillips Petroleum Company v. Shutts*
  472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Priest v. Zayre Corporation*
  118 F.R.D. 552 (D. Mass. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Smilow v. Southwestern Bell Mobile Systems, Inc.*
  323 F.3d 32 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Swack v. Credit Suisse First Boston*
  230 F.R.D. 250 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8, 9, 11, 12

*Teachers' Retirement System of Louisiana v. ACLN Ltd.*
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure

  Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 7, 20

  Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

  Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

  Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 12, 18, 20

  Rule 23(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES
## (Continued)

**Page**

Rule 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

Securities Act of 1933

    Section 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 13

    Section 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Securities Exchange Act of 1934

    Section 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 13, 14

    Section 20(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10

# OTHER AUTHORITIES

7 *Newberg on Class Actions* §22.1 (4th ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

Lead Plaintiff BPI Global Asset Management LLP ("Lead Plaintiff" or "BPI Global") submits this memorandum in support of its motion for class certification pursuant to Rules 23(a) and 23(b)(3), Fed.R.Civ.P.[1]  Lead Plaintiff seeks certification of a plaintiff Class consisting of all those who purchased or otherwise acquired Sonus Networks, Inc. ("Sonus" or the "Company") securities from March 28, 2002 through March 26, 2004 ("Class Period") and a Subclass consisting of all those who purchased or otherwise acquired newly issued Sonus shares pursuant to the Prospectus Supplement dated September 23, 2003.  In addition, Lead Plaintiff further requests that it be appointed as the Class and Subclass representative and that Lead Counsel, Gold Bennett Cera & Sidener LLP ("GBCS"), be appointed as Class and Subclass counsel.

## I.   __INTRODUCTION__

This lawsuit arises from a significant securities fraud.  Defendants Sonus Networks, Inc., Hassan M. Ahmed and Stephen J. Nill (collectively, the "Defendants") are alleged to have misled Sonus's public investors by disseminating a series of materially false and misleading statements concerning Sonus's revenues, earnings, profitability, and financial condition.  This lawsuit seeks to vindicate the claims of investors who purchased Sonus securities at artificially inflated prices, and suffered losses thereby.

On May 10, 2006, the Court issued its order granting in part and denying in part Defendants' motions to dismiss.  Specifically, the Court sustained the claims against Sonus arising under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78j(b), and Section 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §77k, and

---

[1]   All references to "Rule ___" are to the Federal Rules of Civil Procedure.

Sections 20(a) of the 1934 Act and Section 15 of the 1933 Act against Defendants Nill and

Ahmed. Class litigation of these claims is appropriate and necessary. Securities cases are

particularly well suited for litigation on a class-wide basis. *See Amchem Products, Inc. v.

Windsor*, 521 U.S. 591, 614 (1997); *see also* 7 *Newberg on Class Actions* (4th ed. 2005) at §22.1.

All of the Class and Subclass members are similarly situated in that they acquired Sonus

securities during the period that the Company was allegedly disseminating false information

about Sonus to the investing public. This campaign of misinformation resulted in Sonus

securities selling at artificially inflated prices, resulting in damage upon disclosure of the

wrongdoing which caused a precipitous decline in the price of Sonus stock. This litigation

represents the only realistic option for obtaining relief for Class and Subclass members. It is also

by far the most organized and efficient means by which the Court can preside over the claims of

the potentially thousands of Class and Subclass members.

   For the reasons discussed below, certification of the requested plaintiff Class and

Subclass should be ordered.

## II.   STATEMENT OF FACTS

   Sonus is a publicly traded company whose common stock was, and is, registered with the

SEC pursuant to the 1934 Act and, at all relevant times, traded on the NASDAQ. ¶21.[2] Sonus

asserts that it is a leading provider of packet voice infrastructure solutions for wireless and

wireline service providers. ¶15. The Company claims to offer a new generation of carrier-class

switching equipment and software that enable telecommunications service providers to deliver

---

[2]   All references to "¶___" are to the First Amended Consolidated Class Action Complaint for
Violations of the Federal Securities Laws ("FAC"), filed December 1, 2004, Docket No. 103.

voice services over packet-based networks. ¶15. Its target customers have been described as new and established communications service providers, long distance carriers, local exchange carriers, Internet service providers, cable operators, international telephone companies, and carriers that provide services to other carriers. ¶33.

Lead Plaintiff alleges that, throughout the Class Period, Sonus materially misrepresented its financial condition to investors and failed to prepare its financial statements in accordance with Generally Accepted Accounting Principles. ¶¶36-46, 51-71, 93-101. It is alleged that Sonus falsely reported that it had generated substantial revenues when a material portion of those purported revenues and related earnings had not been recorded in the proper accounting period. ¶¶38, 44-52, 58-60, 104-118, 127-132, 142-144, 155-156, 167-168. The Company suffered from a significant breakdown of its internal controls such that the Defendants allegedly knew or recklessly disregarded that Sonus's financial information being reported to the public was materially inaccurate and unreliable. ¶¶87-101.

In 2004, subsequent to the discovery of Sonus's accounting misstatements, the Company terminated Controller Peter Hemme and several members of its finance and accounting department. ¶7. In April 2004, Defendant Nill, who, it is alleged, worked closely with Hemme in manipulating Sonus's reported revenues during the Class Period, was reassigned from his position as CFO to a different department, and was subsequently forced by the Company to resign. ¶7. Upon disclosure of the wrongdoing, the price of Sonus stock materially declined. ¶9.

## III.   ARGUMENT

By this motion, Lead Plaintiff seeks certification of a plaintiff Class pursuant to Rule 23(a) and (b)(3), consisting of:

> All persons or entities who purchased or otherwise acquired Sonus Networks, Inc. ("Sonus") securities from March 28, 2002 through March 26, 2004 and who were damaged thereby.  Excluded from the Class are the defendants, officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.  ¶25.

Moreover, Lead Plaintiff moves for certification of a plaintiff Subclass pursuant to Rule

23(a), (b)(3) and (c)(4) consisting of:

> All persons or entities who purchased or otherwise acquired newly issued Sonus securities pursuant to the Prospectus Supplement dated September 23, 2003 and who were damaged thereby. Excluded from the Subclass are the defendants, officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.  ¶¶25.

Lead Plaintiff further requests that it be appointed as the representative for the Class and

Subclass, and that GBCS be appointed as counsel for the Class and Subclass, pursuant to Rule 23(g).

As discussed below, the proposed Class and Subclass meet all of the requirements for

certification, and both Lead Plaintiff and its counsel will competently litigate this action on their

behalves.

A.      **Applicable Standards**

"Courts have expressed a general preference for class certification in securities fraud

cases based on a policy favoring enforcement of the federal securities laws and recognition of the

fact that class actions may be the only practicable means of enforcing investors' rights." *Priest v.*

*Zayre Corporation*, 118 F.R.D. 552, 553-54 (D. Mass. 1988) (internal citations omitted).  The

criteria for class certification is set forth in *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250,

257 (D. Mass. 2005):

> The hurdles that [Plaintiff] must clear in order for the class she proposes to be

certified are familiar ones: the four prerequisites of Fed.R.Civ.P. 23(a) - numerosity, commonality, typicality, and adequacy - as well as certain requirements established by Rule 23(b). *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir.2003) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

For purposes of a certification motion, "a court must assume the truth of the complaint's allegations." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 n.2 (D. Md. 1998); *see also In re Life USA Holding Inc.*, 190 F.R.D. 359, 364 (E.D. Pa. 2000). While a district court must analyze the prerequisites established by Rule 23 before certifying a class, "[c]lass certification is not an appropriate stage at which to address the merits of the lawsuit." *Priest,* 118 F.R.D. at 554 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)).

Because the class action device plays such an important role in securities fraud cases, the requirements of Rule 23 are construed liberally in such cases. *See 7 Newberg* at §22.1 ("Rule 23 has been liberally construed in favor of certification"). Therefore, any doubts should be resolved in favor of certifying a class. *See Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) (in securities cases, "any error, if there is to be one, should be committed in favor of allowing the class action").

### B.     The Proposed Class and Subclass Satisfy the Requirements of Rule 23(a)

#### 1.     The Members of the Class and Subclass Are So Numerous That Joinder Is Impracticable

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "The numerosity requirement of Rule 23(a), moreover, is not a difficult burden to satisfy. . . ." *In re Carbon Black Antitrust Litigation*, 2005 WL 102966 at *9 (D. Mass. Jan. 18, 2005) (internal citations omitted). In securities cases, courts generally assume that the

numerosity requirement is satisfied:

> Class actions maintained under the federal securities laws usually encompass a large number of potential plaintiffs, often numbering in the tens or hundreds of thousands though smaller classes have been certified as well. Defendants normally cannot and rarely do contest joinder impracticability in class actions brought on behalf of shareholders or traders in publicly owned and nationally listed corporations.
>
> In class actions brought on behalf of securities traders, federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity, often looking at the number of shares traded or transactions completed rather than seeking to determine directly the number of potential class members involved. In cases involving securities traded on the national stock exchanges, class members are usually so geographically dispersed and numerous that the joinder impracticability requirement is easily satisfied. . . .

7 *Newberg* at §22.16 (footnotes omitted).

The number of shares of stock outstanding and the average daily trading volume during the class period are factors commonly considered by the courts to satisfy the numerosity prong. *See Swack*, 230 F.R.D. at 258. Here, millions of shares of Sonus stock were traded on the open market during the Class Period on the NASDAQ. ¶¶21, 26, 31. As of January 31, 2004, there were 245,730,722 shares of Sonus stock outstanding. ¶26. The average daily trading volume during the Class Period exceeded 5.7 million shares. *See* Declaration of Bjorn I. Steinholt, CFS ("Steinholt Decl."), filed herewith, ¶13. The total number of shares traded during the Class Period was more than 2.9 billion. *Id.* Lead Plaintiff does not yet know the exact number of Class and Subclass members. However, given the millions of shares and average trading volume, it is reasonable to assume that there are hundreds or thousands of Class and Subclass members located throughout the country. *See, e.g., Teachers' Retirement System of Louisiana v.*

*ACLN Ltd.*, 2004 WL 2997957 at *3 (S.D.N.Y. Dec. 27, 2004) (in securities fraud cases, numerosity exists where a large number of shares were outstanding and traded during the class period); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987) (finding where defendant corporation had over 30 million shares of common stock outstanding held by 3,000 shareholders of record and nine million shares allegedly traded during the class period, "an assumption that the class members are not so numerous as to make joinder impracticable would be, in light of the number of shares traded during the class period, ridiculous" (internal citation omitted)). As in other securities lawsuits, it would be impracticable to join all of these claimants in one action.[3] Thus, the numerosity requirement of Rule 23(a) is met for both the Class and Subclass.

### 2.  Common Questions of Law and Fact Exist

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005) (citation omitted). "The Rule 23(a)(2) commonality test has been described as a 'low hurdle,' and 'largely irrelevant,' where, as here, certification of the proposed class depends upon satisfaction of the more stringent requirement under Rule 23(b)(3) that common questions of law or fact

---

[3]     Numerosity exists for the Subclass as well.  Seventeen million (17,000,000) shares of Sonus stock were sold to the underwriter pursuant to the Prospectus Supplement for resale.  *See* Exhibit A hereto.  BPI Global was a purchaser of these shares.  ¶14.

predominate over individual ones." *Swack*, 230 F.R.D. at 259 (internal citations omitted).

Here, questions of law or fact common among the Class and Subclass members include:

       a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

       b.      whether statements made by Sonus to the investing public during the Class Period omitted or misrepresented material facts about the business, operations, financial condition and income of the Company;

       c.      whether Sonus acted with knowledge or with reckless disregard for the truth in omitting to state and/or misrepresenting material facts;

       d.      whether during the Class Period the market price of Sonus's common stock was artificially inflated due to the omissions and/or material misrepresentations complained of herein;

       e.      whether the Prospectus Supplement dated September 23, 2003 was materially misleading (as it pertains to the Subclass);

       f.      whether the individual Defendants were "control persons" of Sonus and one another within the meaning of Section 20(a) of the 1934 Act and Section 15 of the 1933 Act;

       g.      whether Sonus stock traded in an efficient market, thereby allowing for a presumption of reliance by the Class based on the fraud-on-the-market theory; and

       h.      to what extent the members of the Class and Subclass have sustained damages and the proper measure of damages.

In securities cases, there is usually little question regarding the commonality of the class members' claims. "Confronted with a class of purchasers allegedly defrauded over a period of

time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Resource America Secs. Litig.*, 202 F.R.D. 177, 181-82 (E.D. Pa. 2001) ("The commonality requirement is permissively applied in the context of securities fraud litigation."). Here, the commonality requirement is met for both the Class and Subclass.

### 3.  Lead Plaintiff's Claims Are Typical of the Class and Subclass Claims

The typicality requirement in Rule 23(a)(3) is met if "the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory as the other class members." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). "As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members." *Swack,* 230 F.R.D. at 260; *see also Carbon Black*, 2005 WL 102966 at *12 ("The fact that in certain regards their claims may have distinctions does not make them atypical."). Moreover, "the focus of the typicality inquiry is not on plaintiff's behavior, but defendants." *Deutschman v. Beneficial Corporation*, 132 F.R.D. 359, 373 (D. Del. 1990). Here, the claims of both Lead Plaintiff and the other Class and Subclass members arise from the false or misleading statements made by the Defendants which caused Sonus's securities to trade at artificially inflated prices and to drop precipitously once the truth was revealed. The legal theories underlying their claims are also the same.

Lead Plaintiff's claims are typical of, if not identical to, the claims of the other members

of the Class. The FAC alleges that the Defendants violated Sections 10(b) and 20(a) of the 1934 Act and related SEC regulations by publicly disseminating false and misleading statements during the Class Period. As detailed above, there are numerous questions of law and fact that apply equally to Lead Plaintiff as to all members of the Class. Lead Plaintiff satisfies the typicality requirement because, like all other members of the Class: (i) it acquired Sonus common stock during the Class Period; (ii) the stock was acquired at prices artificially inflated by defendants' false and misleading statements or by defendants' failure to disclose material information; and (iii) it suffered damages.

Similarly, Lead Plaintiff's claims are typical of, if not identical to, the claims of the members of the Subclass who purchased newly issued Sonus shares pursuant to the September 23, 2003 Prospectus Supplement. The FAC alleges that the Defendants violated Section 11 of the 1933 Act because the Prospectus Supplement contained untrue statements of material fact or omitted material facts which were necessary to make the statements therein not misleading. Again, there are numerous questions of fact that apply equally to Lead Plaintiff as to all members of the Subclass. Lead Plaintiff satisfies the typicality requirement for the Subclass because, like all other members of the Subclass it acquired Sonus common shares pursuant to the materially misstated Prospectus Supplement dated September 23, 2003 and suffered damages thereby.

Based on the foregoing, Lead Plaintiff satisfies the typicality requirement of Rule 23(a)(3) for both the Class and the Subclass.

### 4. Lead Plaintiff Will Fairly and Adequately Represent the Class and Subclass

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." The First Circuit has interpreted the adequacy prerequisite as involving a two part test: (1) "the moving party must show first that the interests of the representative party will not conflict with the interests of the class members;" and (2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Swack,* 230 F.R.D. at 260 (citing *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985). Here, both prongs of the adequacy test are satisfied.

There are no conflicts of interest between Lead Plaintiff and the Class, nor between Lead Plaintiff and the Subclass. Lead Plaintiff is a member of both the Class and Subclass it seeks to represent.[4] It shares with all Class and Subclass members a common interest in proving the defendants' misconduct and obtaining the maximum recovery possible. *See Carbon Black,* 2005 WL 102966 at *14 ("The overarching question here is the conduct of the defendants, not the specific damage calculation. . . . Therefore, the named plaintiffs and their counsel have the same core objectives as would absent class members."). Lead Plaintiff suffered a large loss due to the defendants' misconduct, so it has and will continue to vigorously pursue this litigation to its completion.

Furthermore, Lead Plaintiff's counsel is qualified to represent the Class and Subclass. GBCS is a nationally recognized law firm specializing in complex business litigation and, more specifically, securities, antitrust, and corporate governance cases. *See* GBCS Firm Resume, attached as Exhibit C to the Declaration of Joseph M. Barton in Support of Motion of BPI Global

---

[4] On or about March 31, 2006, BPI Global merged with Trilogy Global Advisors, LLC under the name Trilogy Global Advisors, LLC. BPI Global's claims against the Defendants nonetheless have survived and are unaffected by the merger.

Capital Management Fund LP to be Appointed as Lead Plaintiff and for its Counsel to be

Appointed Lead Counsel, filed April 12, 2004, Docket No. 35. The firm has the experience and

resources necessary to competently litigate the Class and Subclass members' claims. The Court's

August 10, 2004 Order approved GBCS as Lead Counsel.

As both Lead Plaintiff and its counsel will competently represent the Class and Subclass

members' interests, the adequacy requirement of Rule 23(a)(4) is satisfied.

### C.      The Proposed Class and Subclass Satisfy the Requirements of Rule 23(b)(3)

"To obtain class certification, the plaintiff must establish the four elements of Rule 23(a)

and one of several elements of Rule 23(b)." *Smilow v. Southwestern Bell Mobile Systems, Inc.*,

323 F.3d 32 (1st Cir. 2003)." Lead Plaintiff seeks certification of the Class and Subclass pursuant

to Rule 23(b)(3), which provides that "questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for the fair and efficient adjudication of the controversy."

*Swack*, 230 F.R.D. at 267 (quoting Rule 23(b)(3)). These requirements are met in the instant

matter.

### 1.      Common Questions of Law or Fact Predominate

"In determining whether the predominance standard is met, courts focus on the issue of

liability, and if the liability issue is common to the class, common questions are held to

predominate over individual ones." *In re Kirschner Medical Corp. Secs. Litig.*, 139 F.R.D. 74,

80 (D. Md. 1991). Thus, the Supreme Court has recognized that "[p]redominance is a test

readily met in certain cases alleging . . . securities fraud . . . ." *Amchem Products,* 521 U.S. at

625. As one court explained:

> Any case brought by the Plaintiffs or Class Members would necessarily address the Defendants' alleged misrepresentations and omissions, and whether the Defendants acted with the requisite intent, and the effect of the Defendants' alleged conduct on the price of AremisSoft's stock. Furthermore, these claims would be brought under federal securities laws. Because this case turns upon allegations of a common course of conduct on the part of AremisSoft and the other Defendants that injured the Class, common issues of law and fact predominate.

*In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. 109, 122 (D. N.J. 2002); *see also Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 171 (D. Mass. 1989) ("In fraud on the market cases, common questions of law and fact predominate over individual questions."); *In re Tyson Foods, Inc.*, 2003 WL 22316548 at *5 (D. Del. Oct. 6, 2003) (predominance existed where "there are common questions of law and fact that are paradigmatic of a securities fraud class action").

That is precisely the case here. Litigation by any of the Class members would require showing that the Defendants made misrepresentations about Sonus's financial status, that such misrepresentations were made with the requisite state of mind, and that the misrepresentations impacted the price of Sonus's securities. For the Subclass, the claim is based on strict liability against Sonus for material misstatements or omissions in its Prospectus Supplement dated September 23, 2003.

In addition to common questions regarding liability of a defendant, the Class asserting claims under Section 10(b) of the 1934 Act must establish reliance upon a defendant's misrepresentation.[5] However, "[r]equiring proof of individualized reliance, of course, would effectively preclude securities fraud class actions under Rule 23(b)(3)." *In re Xcelera.com Sec.*

---

[5] There is no reliance element for the claim under Section 11 of the 1933 Act. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 383-84 (1983).

#114696

*Litig.*, 430 F.3d 503, 507 (1st Cir. 2005). In response to this problem, the Supreme Court in

*Basic, Inc. v. Levinson*, 485 U.S. 224, 250 (1988) adopted a presumption of reliance supported by

the fraud-on-the-market theory in Section 10(b) cases. This theory "eliminates the need to prove

individualized reliance by allowing a rebuttable presumption that the plaintiff relied on the

'integrity of the market price' which reflected the misrepresentation." *Xcelera.com*, 430 F.3d at

507. For the reasons set forth below, Sonus's stock traded in an efficient market and reliance is

properly presumed for the Class based on a fraud-on-the-market theory.

> **a.  Reliance May Be Presumed Based on the Fraud-on-the-Market Theory and The First Circuit's Standard of Market Efficiency**

A prerequisite to application of the fraud-on-the-market theory is that the Company's

stock must have been traded in an efficient market. The First Circuit recently set forth its

definition of "market efficiency," holding that "an efficient market is one in which the market

price of the stock fully reflects all publicly available information." *Xcelera.com*, 430 F.3d at 508

(quoting *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 10 (1st Cir. 2005)). The market must

react rapidly, with the price absorbing and reflecting all new publicly available information.

*Xcelera.com*, 430 F.3d at 508. However, the First Circuit made clear that the market does not

need to respond to the information accurately, as this would require an evaluation of the

fundamental value of a stock, and "would necessarily be a retrospective analysis which, in the

words of [plaintiff's expert], 'amounts to second-guessing the market, concluding that the

market, in retrospect . . . [was] overvalued.'" *Xcelera.com*, 430 F.3d at 510-11.

Furthermore, the plaintiff "need only establish 'basic facts' in order to invoke the

presumption of reliance," while the defendant "has the burden of establishing the nonexistence of

the presumed fact." *Polymedica*, 432 F.3d. at 17. While a court is encouraged to "make whatever legal and factual inquiries are necessary to an informed determination of the certification issues," *Polymedica*, 432 F.3d. at 5, the First Circuit strongly cautioned that this evaluation should not become a mini-trial on the merits. *Polymedica*, 432 F.3d. at 19.

The criteria for evaluating an efficient market set forth in *Cammer v. Bloom*, 711 F.Supp. 1264 (D. N.J. 1989), while not bright line tests, are helpful in evaluating whether a stock traded in an efficient market in accordance with the First Circuit's definition of market efficiency. *See Xcelera.com*, 430 F.3d at 508 ("[T]he district court's reliance upon *Cammer* to determine whether the Xcelera market was efficient means that it necessarily applied the standard of efficiency used in *Cammer*, which tracks the definition we adopted in *Polymedica*.") The factors set forth in *Cammer* are: (1) an actively traded market evidenced by average weekly trading volume in excess of a certain number of shares implying significant investor interest in the company; (2) a significant number of securities analysts following and reporting on the company's stock during the class period; (3) numerous market makers and arbitrageurs who react swiftly to company news and reported financial results thereby ensuring the market is responding rapidly; (4) whether the company is entitled to file an S-3 Registration Statement in connection with public offerings; and (5) "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *See Cammer*, 711 F.Supp. at 1286-87. Applying this framework, Lead Plaintiff demonstrates below that the market in which Sonus shares traded during the Class Period was efficient.

//

//

#114696

15

### b.    A Presumption of Reliance Based on the "Fraud-on-the-Market" Theory is Appropriate Here

Lead Plaintiff's expert has analyzed Sonus's stock trading and determined that it traded in an open, well developed and efficient market during the Class Period. Steinholt Decl. ¶¶5, 34. During the Class Period, Sonus's stock was actively traded on the NASDAQ. ¶¶21, 26, 31. NASDAQ is generally considered to be an efficient market.[6] As of January 31, 2004, there were 245,730,722 shares of Sonus stock outstanding. ¶26. The average daily trading volume of Sonus's shares exceeded 5.7 million shares per day. Steinholt Decl. ¶13. The average weekly trading volume was almost 13% of the total number of shares available to trade. *Id.* "[A] large weekly volume of stock trades suggests there is an efficient market . . . because it implies significant investor interest in the company." *Cammer*, 711 F. Supp. 1286. Further, turnover of 2% or more of the outstanding shares supports a presumption that the market for the security is efficient. *Id.* at 1293.

"[F]acts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price . . . is the essence of an efficient market and the foundation for the fraud on the market theory." *Cammer*, 711 F.Supp. at 1287; *see also Xcelera.com*, 430 F.3d at 512 (the cause-and-effect relationship between company disclosures and the immediate response in stock price is "in many ways, the most important, *Cammer* factor"). Here, the trading volume and price of Sonus shares changed substantially in response to announcements by the Company. For example, on January 20, 2004 after the market

---

[6]    *See Cammer*, 711 F.Supp. at 1292 ("[A]t minimum, there should be a presumption – probably conditional for class certification — that certain markets are developed and efficient for virtually all securities traded there: [including] the NASDAQ National Market System.")

closed, Sonus announced that it was going to delay release of its fourth-quarter results pending completion of an audit. Steinholt Decl. ¶¶24, 26. The response was fairly immediate and occurred in after-market trading on the same day, with the stock price falling 16%. Steinholt Decl. ¶26. The following day, Sonus's stock dropped 10% from the previous day on heavy trading of roughly 28 million shares. Steinholt Decl. ¶27. This was seven (7) times the median trading volume during the Class Period. *Id.* Analysts reporting on Sonus stock on January 21, 2004 attributed the price decline to the new information disclosed by Sonus, characterized as a "weakness created in the shares as a result of earnings postponement." *Id.* The negative impact on Sonus's stock was even worse after the February 11, 2004 announcement, whereby Sonus announced that it would be restating earnings for 2003 and possibly earlier periods, causing a 20% drop in price on trading of roughly 96 million shares, more than 25 times the average trading volume. Steinholt Decl. ¶¶24, 28, 29.

Additional factors to consider when evaluating market efficiency are the number of market makers and arbitrageurs of a stock and the availability to sell short. Again, Sonus's stock satisfies this criteria. Sonus stock was followed throughout the Class Period by at least 24 analyst firms who provided investment research to investors. Steinholt Decl. ¶14. A significant number of securities analysts following and reporting on a company's stock implies that changes in the stock price will occur based on reviews of those reports by investment professionals who, in turn, recommend purchasing or selling the stock to their clients, thereby bidding the price up or down. *See Cammer*, 711 F.Supp. at 1286. Further, there were approximately 350 firms acting as market makers for Sonus stock. Steinholt Decl. ¶18. More than 85 of these firms handled orders of more than one million shares. *Id.* Millions of shares were available to be sold short.

Steinholt Decl. ¶19. During the Class Period, short interest in Sonus stock ranged from about 2.1 million shares to more than 16 million shares. *Id.* "The existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F.Supp. at 1286-87.

Further, the number of institutional investors is also a factor in evaluating market efficiency. Here, Sonus stock was held by at least 245 institutional investors, owning more than 80 million shares on average during the Class Period. Steinholt Decl. ¶21. This represented more than 35 percent of Sonus's total shares outstanding. *Id.* Finally, Sonus met the SEC eligibility requirements to file a Form S-3 during the Class Period. Steinholt Decl. ¶22. The ability to file a Form S-3 requires minimum stock requirements that, by implication, provide support that the market is efficient. *See Cammer*, 711 F.Supp. at 1287.

The foregoing facts set forth a sufficient basis on which to find that Lead Plaintiff has met its burden at the class certification stage entitling it to a presumption of reliance based on the fraud-on-the-market theory for the Class. Accordingly, the predominance requirement of Rule 23(b)(3) is met.

### 2. A Class Action is the Superior Method of Adjudicating the Claims in this Action

"To satisfy the superiority requirement of Rule 23(b)(3), the named plaintiff must show that a class action is the fairest and best method of adjudicating the dispute." *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 682 (N.D. Ala. 2005). Rule 23(b)(3) identifies four factors to be considered: (a) the interest of members of the class in individually controlling the

#114696

prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.  Rule 23(b)(3)(A)-(D).

Here, the Class members' interest in litigating claims on an individual basis are minimal, at best.  The cost of such litigation is prohibitive when weighed against the potential individual recoveries.  While some Class members have sustained substantial individual damages, individual litigation of even those claims would be uneconomical, given the complexity of the factual and legal issues involved.  *See Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809 (1985) (finding that with claims averaging about $100 per plaintiff, "most of the plaintiffs would have no realistic day in court if a class action were not available").

Lead Plaintiff is not aware of relevant litigation pending elsewhere and believes this is the most appropriate forum for the litigation.  Sonus's executive offices are located in this judicial district.  The evidence and witnesses will, in large part, be located here.  Plainly, this Court is the appropriate forum in which to prosecute this action.

In addition, Lead Plaintiff anticipates no significant or unusual difficulties in managing this class action litigation.  Because this is a securities case, the Class and Subclass members can be identified from the records of Sonus's transfer agent.

"Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'"  *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985), quoting *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970); *see also Phillips*

#114696

19

*Petroleum,* 472 U.S. at 809 ("Class actions may also permit the plaintiffs to pool claims which would not be economical to litigate individually."); *Grace v. Perception Technology Corporation,* 128 F.R.D. 165, 171 (D. Mass. 1989) ("The class action device is superior to other methods of adjudication in securities fraud cases."). Here, proceeding as a class would be the most expedient, efficient, and fair method to resolve the Class and Subclass members' claims and, accordingly, the Class and Subclass should be certified.

**3.     The Court Should Appoint Lead Counsel As Class and Subclass Counsel**

Rule 23(g) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." For the reasons previously stated, Lead Plaintiff respectfully requests that GBCS be appointed counsel for the Class and Subclass.

## IV.     CONCLUSION

For the foregoing reasons, Lead Plaintiff requests that the Court enter an Order: (1) certifying the requested Class and Subclass in this action pursuant to Rules 23(a) and (b)(3); (2) appointing Lead Plaintiff as the Class and Subclass representative; and (3) appointing GBCS as Class and Subclass counsel.

Dated: July 31, 2006                          GOLD BENNETT CERA & SIDENER LLP

                                              By   /s/     Solomon B. Cera
                                                         Solomon B. Cera

                                              Attorneys for Lead Plaintiff
                                              BPI Global Global Asset Management LLP

#114696                                                                          20