# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                         )

IN RE SONUS NETWORKS, INC.      )       **Civ. Action No. 04-10294 DPW**
SECURITIES LITIGATION        )

_____)

 

**DEFENDANTS' SONUS NETWORKS, INC.'S AND HASSAN M. AHMED'S OPPOSITION TO BPI GLOBAL ASSET MANAGEMENT LLP'S <u>MOTION FOR CLASS CERTIFICATION</u>**

Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Peter A. Spaeth (BBO #545202)
Sherry Hartel Haus (BBO #663777)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
*Attorneys for Sonus Networks, Inc.*

Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Choate Hall & Stewart
Two International Place
Boston, Massachusetts 02109
(617) 248-5000
*Attorneys for Hassan M. Ahmed*

Dated: January 5, 2007

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.     CERTIFICATION REQUIRES RIGOROUS ANALYSIS UNDER RULE 23. ............... 3

II.    LEAD PLAINTIFF IS ATYPICAL OF THE PUTATIVE CLASS. ............................... 5

       A.     LEAD PLAINTIFF LACKS STANDING TO REPRESENT THE INVESTOR
              CLASS. ........................................................................................................ 5

              1.     Lead Plaintiff Lacks Article III Standing. .................................................. 6

                     a.     Lead Plaintiff Has Not Suffered A Cognizable Injury. ................... 6

                     b.     Lead Plaintiff Admits That It Will Not Benefit From Any
                            Relief That May Be Granted In This Action. .................................. 8

                     c.     Any "Purchaser" Status Lead Plaintiff May Claim Under
                            the Securities Laws Does Not Bestow Article III Standing. ........... 9

              2.     Lead Plaintiff Lacks Statutory "Purchaser" Standing. ............................. 10

                     a.     Lead Plaintiff Is Not A "Purchaser" Of Sonus Securities,
                            Because It Lacked Unfettered Investment Discretion. .................. 10

                     b.     BPI Global's Lack of Incentive To Represent The Interests
                            of The Funds And The Class Further Undermines Its
                            Constructive Status As A "Purchaser." ........................................ 13

III.   Lead Plaintiff Is Not In Control Of This Litigation, Rendering It Inadequate. ................. 14

              1.     Lead Plaintiff's Failure to Negotiate a Fee Agreement or Research
                     Counsel Reflects Counsel's—Not Lead Plaintiff's—Control  Over
                     the Case. .................................................................................................. 15

              2.     Lead Plaintiff's Limited Involvement In And Awareness Of The
                     Suit Thus Far Evidence its Failure To Direct The Action. ...................... 17

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ................................................................................................14

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) .....................................................................................14, 17

*Blue Chip Stamps v. Manor Drug Store*,
  421 U.S. 723 (1975).......................................................................................................9, 10

*Casden v. HPL Techs., Inc.*,
  No. C-02-3510, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) .............................13

*Coopersmith v. Lehman Bros.*,
  344 F. Supp. 2d 783 (D. Mass. 2004) ....................................................................................14

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
  431 U.S. 395 (1977)...............................................................................................................4

*Ezra Charitable Trust v. Rent-Way, Inc.*,
  136 F. Supp. 2d 435 (W.D. Pa. 2001)..............................................................................11, 13

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) .........................................................................................14, 19

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)...............................................................................................................5

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................................................3, 4

*Grace v. Perception Tech. Corp.*,
  128 F.R.D. 165 (D. Mass. 1989).........................................................................................3, 4

*Greebel v. FTP Software*,
  939 F. Supp. 57 (D. Mass. 1996) ..........................................................................................10

*Greenspan v. Brassler*,
  78 F.R.D. 130 (S.D.N.Y. 1978) .............................................................................................19

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) ..............................................................................................5

*Gross v. Summa Four, Inc.*,
  93 F.3d 987 (1st Cir. 1996).....................................................................................................5

*Hawkins ex rel. Hawkins v. Comm'r of the N.H. Dep't. of Health and Human Servs.,*
  No. Civ. 99-143, 2004 WL 166722 (D.N.H. Jan. 23, 2004) ......................................................6

*Howard Gunty Profit Sharing Plan v. Carematrix Corp.,*
  354 F. Supp. 2d 18 (D. Mass. 2000) .....................................................................................14

*In re Able Labs. Sec. Litig.,*
  425 F. Supp. 2d 562 (D.N.J. 2006) .......................................................................................12

*In re Bank of Boston Corp. Sec. Litig.,*
  762 F. Supp. 1525 (D. Mass. 1991) ........................................................................................5

*In re Cendant Corp. Litig.,*
  264 F.3d 201  (3d Cir. 2001) ...............................................................................................16

*In re Eaton Vance Corp. Sec. Litig.,*
  219 F.R.D. 38 (D. Mass. 2003) ..............................................................................................5

*In re Enron Corp. Sec. Litig.,*
  206 F.R.D. 427 (S.D. Tex. 2002) ..........................................................................................14

*In re Goodyear Tire & Rubber Co. Sec. Litig.,*
  No. 5:03 CV 2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004) .........................................12

*In re Initial Public Offering Securities Litigation,*
  __ F.3d __, 2006 WL 3499937 (2d Cir. Dec. 5, 2006)...............................................................4

*In re Life USA Holding, Inc.,*
  190 F.R.D. 359 (E.D. Pa. 2000).............................................................................................4

*In re Nw. Corp. Sec. Litig.,*
  299 F. Supp. 2d 997 (S.D.S.D. 2003) ...................................................................................13

*In re Pharm. Indus. Average Wholesale Price Litig.,*
  230 F.R.D. 61 (D. Mass. 2005).........................................................................................5, 14

*In re Polymedica Corp. Sec. Litig.,*
  432 F.3d 1 (1st Cir. 2005).....................................................................................................4

*In re Rent-Way Sec. Litig.,*
  218 F.R.D. 101 (W.D. Pa. 2003) .....................................................................................11, 12

*In re Sonus Networks, Inc. Sec. Litig.,*
  229 F.R.D. 339 (D. Mass. 2005)...........................................................................................14

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,*
  209 F.R.D. 353 (S.D.N.Y. 2002) ..........................................................................................12

*In re Tyco Int'l, Ltd.*,
  236 F.R.D. (D.N.H. 2006) .......................................................................7, 9, 10

*Indemnified Capital Invs., S.A. v. R.J. O'Brien & Assoc.*,
  12 F.3d 1406 (7th Cir. 1993) .................................................................................7

*Kelley v. Mid-America Racing Stables, Inc.*,
  139 F.R.D. 405 (W.D. Okla. 1990) ......................................................................18

*Lewis v. Casey*,
  518 U.S. 343 (1996) ...............................................................................................5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................5, 6

*Ogden v. Americredit Corp.*,
  225 F.R.D. 529 (N.D. Tex. 2005) ........................................................................18

*Olsen v. N.Y. Comm. Bancorp, Inc.*,
  233 F.R.D. 101 (E.D.N.Y. 2002) .........................................................................12

*Opiela v. Bruck*,
  139 F.R.D. 257 (D. Mass. 1990)...........................................................................13

*Peoples v. Wendover Funding, Inc.*,
  179 F.R.D. 492 (D. Md. 1998) ...............................................................................4

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ...........................................................................5, 6

*Raftery v. Mercury Fin. Co.*,
  No. 97 C 624, 1997 WL 529553 (N.D. Ill. Aug. 15, 1997)..................................16

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.*,
  136 F.R.D. 658(D. Or. 1991) ...............................................................................18

*Roth v. Knight Trading Group, Inc.*,
  228 F. Supp. 2d 524 (D.N.J. 2002) ......................................................................10

*Sierra Club v. Morton*,
  405 U.S. 727 (1972).................................................................................................6

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003)......................................................................................4

*Stirman v. Exxon Corp.*,
  280 F.3d 554 (5th Cir. 2002) ................................................................................15

*Tardiff v. Knox County,*
 365 F.3d 1 (1st Cir. 2004)...................................................................................4

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
 529 U.S. 765 (2000)............................................................................................7

*Warth v. Seldin,*
 422 U.S. 490 (1975)............................................................................................5

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
 208 F.3d 288 (1st Cir. 2000)...............................................................................4

*Weinberg v. Atlas Air Worldwide Holdings,*
 216 F.R.D. 248 (S.D.N.Y. 2003) ......................................................................10

*Wooden v. Bd of Regents of Univ. Sys. of Ga.,*
 247 F.3d 1262 (11th Cir. 2001) ...................................................................13, 15

Federal Rules

Federal Rule of Civil Procedure 23 .............................................................3, 4, 5

Federal Rule of Civil Procedure 26 ...............................................................19

Federal Rule of Civil Procedure 30(b)(6) .............................................3, 15, 19

Federal Legislative History

H.R. Conf. Rep. No. 104-36 (1995), *reprinted in* 1995 U.S.C.C.A.N. 73 ...................................17

## <u>INTRODUCTION</u>

Lead Plaintiff BPI Global Asset Management LLP ("Lead Plaintiff" or "BPI Global") has moved to certify a class and subclass consisting of purchasers of Defendant Sonus Networks, Inc.'s ("Sonus") common stock between March 28, 2002 and March 26, 2004, and seeks appointment as class representative. The motion should be denied, because Lead Plaintiff BPI Global lacks constitutional and statutory standing to pursue its claims, and is, therefore, subject to unique defenses that render it atypical and inadequate under Federal Rule of Civil Procedure 23.

*First*, Lead Plaintiff does not have Article III standing to bring these claims. Lead Plaintiff *admits* that it has suffered no actual injury and that it brings its claims on behalf of investors in the funds for which it served as an investment advisor. Lead Plaintiff, in fact, has no intention of partaking in any relief that this Court may grant. Rather, any recovery in this case would simply pass *through* Lead Plaintiff to the interest-holders in the funds. *Second*, Lead Plaintiff also lacks statutory standing. It was not a "purchaser" of Sonus stock under the narrow exception that bestows standing to sue under Section 10(b) on certain advisors with unfettered investment discretion. To the contrary, BPI Global's operative advisory agreements granted it only conditional and limited authority to manage the investments of the relevant funds. Without the prospect of sharing in a recovery, BPI Global also lacks the incentive to participate actively and monitor Lead Counsel in the action, a factor that courts have found critical when accepting investment advisors as class representatives. In fact, *BPI Global no longer exists*, and thus, no longer has any clients or goodwill to protect. *Third*, as a defunct entity with little to no oversight of this case, nor any incentive to monitor counsel or vigorously pursue these claims on behalf of the putative class, BPI Global is not only atypical, but also inadequate to represent the class.

## BACKGROUND

This action was filed on February 12, 2004. Dkt. No. 1. On April 12, 2004, BPI Global, which had not filed a complaint, moved for appointment as Lead Plaintiff, and the appointment of Gold, Bennett, Cera & Sidener LLP as Lead Counsel. Dkt. No. 33. Until May 2005, BPI Global had been an investment advisor to several mutual funds. *See* Aff. of Sherry Hartel Haus ("Haus Aff."), Ex. A, Transcript of November 21, 2006 Deposition of Charles Sweeney ("Sweeney Tr.") at 10:12-20; Haus Aff., Ex. B, Transcript of November 3, 2006 Deposition of John Francis Myklusch ("Myklusch Tr.") at 7:4-16. An investment advisory agreement ("Advisory Agreement") governed the relationship between BPI Global and BPI Capital Management Corporation ("BPI Capital"), the investment manager for many of the funds that purchased Sonus stock, including the two with the largest losses (BPI Global Equity and BPI American Equity Funds). *See* Dkt. No. 90, Sweeney Aff. ¶ 3 & Ex. A (Advisory Agreement). The Advisory Agreement expressly *limited* BPI Global's authority to providing investment management services on the *instruction or approval* of BPI Capital. *See* Section II(A)(2)(a), *infra*.

Because it made no Sonus stock purchases for its own account, Lead Plaintiff based its Motion for Appointment as Lead Plaintiff not on losses that it sustained, but rather on $5.3 million in purported losses to its client funds. *See, e.g.,* Dkt. No. 59 at 1-2. On August 10, 2004, the Court granted Lead Plaintiff's motion.

In May 2005, BPI Global merged with Trilogy Advisors (the "Merger") to become Trilogy Global Advisors, LLC ("Trilogy"); as a result, BPI Global no longer exists. Myklusch Tr. 7:4-16; 52:19-53:20. The Merger, in fact, resulted in the transfer of at least some of BPI Global's funds to an investment advisor wholly unrelated to BPI Global or to Trilogy. Sweeney

Tr. 71:14-22. As a result, there exists no current business relationship between those transferred funds and BPI Global's successor, Trilogy.

On July 31, 2006, Lead Plaintiff filed a Motion for Class Certification and for appointment as class representative. Dkt. No. 170. During class discovery, Lead Plaintiff produced three witnesses pursuant to Federal Rule of Civil Procedure 30(b)(6). The first, Charles Sweeney ("Sweeney"), formerly BPI Global's Chief Compliance Officer, authorized the filing of this lawsuit and was responsible for overseeing this litigation through October 2005. *See* Sweeney Tr. 8:3-5; 35:14-16; 38:8-11. Five months after the Merger, in October 2005, Sweeney was terminated. *Id*. at 8:3-5; 29:20-30:3. The second, John Myklusch ("Myklusch"), is the current Chief Financial Officer and Chief Compliance Officer for Trilogy, but has no relationship to BPI Global and was, therefore, not involved in the purchases of Sonus stock that are the basis for this lawsuit. *See* Myklusch Tr. 9:6-9; 14:15-22. Finally, the third, John Bichelmeyer ("Bichelmeyer"), was a manager at BPI Global for portfolios that held Sonus stock, but left BPI Global prior to the Merger. *See* Haus Aff., Ex. C, Transcript of November 15, 2006 Deposition of John P. Bichelmeyer ("Bichelmeyer Tr.") at 10:1-8; 14:7-15; 17:10-13.

<u>**ARGUMENT**</u>

## I.    **CERTIFICATION REQUIRES RIGOROUS ANALYSIS UNDER RULE 23.**

Lead Plaintiff asserts that it "meet[s] all the requirements for certification," yet nowhere in its Memorandum in Support of Motion for Class Certification ("Pl. Mem.") does it mention the applicable standard of analysis on a motion for class certification (not even in the section titled, "Applicable Standards"). *See* Pl. Mem. *generally*, and at 4. As set forth by the Supreme Court, the First Circuit and this district, a court may certify a class only "after a rigorous analysis" confirming that the plaintiff has met the requirements of Rule 23. *Gen. Tel. Co. of the*

- 3-

*Sw. v. Falcon*, 457 U.S. 147, 161 (1982), *citing Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989); *accord Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 297 (1st Cir. 2000).[1]

Lead Plaintiff's request that the Court uncritically defer to its allegations, *see* Pl. Mem. at 5, offends First Circuit precedent.[2]  The Court of Appeals has been clear that a district court must rigorously examine the record before it to determine whether the proposed representatives and class counsel have affirmatively demonstrated that Rule 23 is satisfied.  The First Circuit and "the majority of courts of appeals that have addressed this issue" have found that the upshot of this "more demanding inquiry at the class certification stage" is that "a district court is not limited to the allegations raised in the complaint, and should instead make whatever legal and factual inquiries are necessary to an informed determination of the certification issues."  *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 5-6 (1st Cir. 2005), *citing Gen Tel. Co.*, 457 U.S. at 160, *and Waste Mgmt Holdings*, 208 F.3d at 297; *see also In re Initial Pub. Offering*, 2006 WL 3499937, at *1 (accord); *Tardiff v. Knox County*, 365 F.3d 1, 4-5 (1st Cir. 2004) (accord).  Under the requisite scrutiny, Lead Plaintiff BPI Global cannot be certified as the class representative.

---

[1]    The Second Circuit recently spoke on this issue as well.  In *In re Initial Public Offering Securities Litigation*, __ F.3d __, 2006 WL 3499937, at *1 (2d Cir. Dec. 5, 2006), the Second Circuit vacated the district court's class certification order, concluding, "(1) that a district judge may not certify a class without making a ruling that each Rule 23 requirement is met and that a lesser standard such as 'some showing' for satisfying each requirement will not suffice, (2) that all of the evidence must be assessed as with any other threshold issue, [and] (3) that the fact that a Rule 23 requirement might overlap with an issue on the merits does not avoid the court's obligation to make a ruling as to whether the requirement is met."

[2]    Lead Plaintiff's citations to cases from district courts in Maryland and Pennsylvania in the face of well-developed First Circuit law in this area makes plain their avoidance of this jurisprudence.  *See* Pl. Mem. at 5, *citing Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 n.2 (D. Md. 1998), *and In re Life USA Holding, Inc.*, 190 F.R.D. 359, 364 (E.D. Pa. 2000).

## II.     LEAD PLAINTIFF IS ATYPICAL OF THE PUTATIVE CLASS.

To satisfy the typicality requirement of Rule 23(a)(3), a proposed class representative must show that he "possess[es] the same interest and suffered the same injury" as absent class members. *See, e.g., E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  A plaintiff who is vulnerable to unique defenses against his individual claims "cannot be considered typical of the class." *See In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991); *see also In re Pharm. Indus. Average Wholesale Price Litig.* ("*Pharm. Indus. AWP*"), 230 F.R.D. 61, 80 (D. Mass. 2005).

### A.     Lead Plaintiff Lacks Standing To Represent The Investor Class.

A plaintiff "cannot maintain an action on behalf of class members to redress an injury for which he has no standing in his own right." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir. 1996).  Consequently, the Court must make a threshold determination that a putative class representative has standing "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000), *citing Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) (class certification analysis must begin with the issue of standing); *see also In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40 (D. Mass. 2003) (court must address defendants' challenge that plaintiffs lack standing under Article III before reviewing class certification).[3]  The burden on a plaintiff to establish standing is in no way lessened by the fact that it seeks to represent a

---

[3]     *See also Pharm. Indus. AWP*, 230 F.R.D. at 79 (D. Mass. 2005) (denying certification where plaintiffs lacked standing to represent proposed class, and concluding that standing is a "threshold requirement[] for the maintenance of federal class actions and must be considered in addition to the requirements of Rule 23") (internal quotation and citation omitted).  Indeed, in the context of securities litigation, "strict standing requirements are *particularly* important . . . in order to curb the risks of vexatious litigation and abuse of discovery."  *In re Bank of Boston*, 762 F. Supp. at 1531 (emphasis supplied).

class. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).[4]  Moreover, Lead Plaintiff must establish both

statutory and constitutional standing.  *See, e.g., In re Eaton Vance*, 219 F.R.D. at 41-42

("[s]tatutory standing is not the same as Article III standing").

### 1.    Lead Plaintiff Lacks Article III Standing.

A court may not certify a class without "determin[ing] that at least one named class

representative has Article III standing to raise each class [claim]."  *Prado-Steiman*, 221 F.3d at

1279; *see also Hawkins ex rel. Hawkins v. Comm'r of the N.H. Dep't. of Health and Human

Servs.*, No. Civ. 99-143, 2004 WL 166722, at *1 (D.N.H. Jan. 23, 2004) (accord).  Thus, to sue

in this Court, Lead Plaintiff must demonstrate "the irreducible constitutional minimum" required

by Article III of the United States Constitution, by satisfying a three-part inquiry:  (1) it must

have suffered an injury-in-fact which is "concrete and particularized," and not "conjectural or

hypothetical,"[5]  (2) that injury must have been caused by Defendants' wrongdoing; and  (3) it

must be likely that Lead Plaintiff's injury will be redressed by a grant of the relief sought.  *Lujan*,

504 U.S. at 560-61.  Because Lead Plaintiff BPI Global suffered no injury-in-fact, it fails the test

for Article III standing.

### a.    Lead Plaintiff Has Not Suffered A Cognizable Injury.

Although BPI Global's submissions at the Lead Plaintiff appointment stage claimed that

it suffered losses of over $5.3 million arising from transactions during the Class Period,[6] a closer

read reveals that any loss was incurred by BPI Global's clients, and not BPI Global itself:

---

[4]     *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of proof and must assert and establish standing); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (accord); *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (accord).

[5]     Injury-in-fact, as articulated by the Supreme Court in *Lujan*, is essential to Article III standing; it demands "more than an injury to a cognizable interest . . .  [and] requires that the party seeking review be himself among the injured."  *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972).

[6]     *See, e.g.,* Dkt. No. 59 at 1 ("BPI Global's losses exceed $5.3 million"); Dkt No. 60 at ¶ 3 ("The losses resulting from BPI Global's purchase of Sonus shares during the Class period exceed $5.3 million").

"[C]ertain of the mutual funds for which BPI Global *serves as the investment advisor* and which purchased Sonus shares *themselves have losses far in excess of any other movant*."  Dkt. No. 59 at 2 (emphasis supplied).  Sweeney made clear at his deposition that BPI Global's "*clients became investors*"— not BPI Global — and that those "*clients* lost money."  Sweeney Tr. 30:20-21; 31:4 (emphasis supplied); *see also id.* at 30:11-31:6; 33:16-25.  Lead Plaintiff purchased no Sonus stock for its own account, Bichelmeyer Tr. 101:15-16, and did not itself sustain any actual damages.  It does not have Article III standing and cannot represent the putative class.

The recent decision by the District of New Hampshire in *In re Tyco International, Ltd.* is directly on point.  *See* 236 F.R.D. 62 (D.N.H. 2006).  In *Tyco*, an asset management company in precisely the same role as BPI Global asserted that it had "derivative standing to sue on behalf of its clients because it purchased Tyco stock for them pursuant to an agreement that granted it discretionary authority to 'buy, sell or otherwise effect transactions' for its clients."  *Id.* at 73.  Noting the copious Supreme Court precedent and the requirements of Article III that there must be "an actual injury to the litigant that is before the court," the *Tyco* court held that the asset management company "lack[ed] standing to sue because it did not suffer any losses as a result of the alleged fraud," and that, because it "[did] not allege that it was directly injured by the defendants' alleged misconduct, it lack[ed] standing to sue on its' clients behalf."  *Id.* at 72-73, *citing, inter alia, Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also other cases cited therein*.[7]  The court, therefore, held that the asset management company could not be a lead plaintiff.  *Tyco*, 236 F.R.D. at 73.  BPI Global is indistinguishable

---

[7]        The Seventh Circuit similarly has held that an investment advisor cannot demonstrate constitutional standing when it has suffered no direct injury.  *Indemnified Capital Invs., S.A. v. R.J. O'Brien & Assoc.*, 12 F.3d 1406, 1409 (7th Cir. 1993) ("[L]osses incurred by . . . customer accounts accrued only to [plaintiff's] customers and are too attenuated to create standing for [plaintiff] . . . Accordingly, [plaintiff] has failed to satisfy the injury-in-fact element of standing").

from the asset management company in *Tyco*.  Lead Plaintiff here suffered no actual injury and, therefore, cannot represent a putative class of investors who purport to have suffered substantial losses as a result of an alleged series of fraudulent misstatements.

### b.    Lead Plaintiff Admits That It Will Not Benefit From Any Relief That May Be Granted In This Action.

Consistent with its "derivative" position, Lead Plaintiff does not claim to have suffered an injury that can or will be redressed by a grant of the relief sought in this action.  Lead Plaintiff, in fact, disavows any claim to the recovery that it seeks in this action:  For example, at his deposition, Bichelmeyer conceded that BPI Global would not receive any part of a recovery in this case:

> Q:    Did BPI purchase any Sonus securities for its own account?
>
> A:    We didn't have a prop account.
>
> Q:    . . . Do you know to who[m], if there is a recovery in this case, to whom the monies go?
>
> A:    I would assume it's *the shareholders at the fund*.
>
> Q:    Would BPI Global get any of that recovery to your knowledge if there is a recovery?
>
> A:    I am not aware.

Bichelmeyer Tr. 101:15-24 (emphasis supplied).  Myklusch, Lead Plaintiff's only deposition witness still employed by the surviving entity (Trilogy), confirmed that any recovery would pass through to BPI Global's former clients (and, presumably, other absent class members). Myklusch Tr. 137:5-6 ("Any recoveries in this case would be allocated to the clients themselves").  Indeed, Sweeney, who was tasked with this litigation at the start, noted, "*there would be no reason that [BPI Global] would share in the recovery*."  Sweeney Tr. 37:16-17 (emphasis supplied); *see also id.* at 37:11-12.  That Lead Plaintiff claims no benefit from any

possible recovery in this case confirms that it lacks Article III standing.  *See, e.g., Lujan*, 540

U.S. at 561 (third prong of standing inquiry requires that it be likely that injury will be redressed

by a grant of the relief sought).

### c.    Any "Purchaser" Status Lead Plaintiff May Claim Under the Securities Laws Does Not Bestow Article III Standing.

Lead Plaintiff here, like the dismissed proposed class representative in *Tyco*, may argue

that it has standing on the ground that, under the securities laws, it was a "purchaser" of the

securities at issue.  *See* 236 F.R.D. at 73.  Article III standing, however, is a question distinct

from a plaintiff's claimed "purchaser" status under the 1934 Act.  *See id*.  Therefore, even if

Lead Plaintiff could show that it is a "purchaser" of Sonus securities under *Blue Chip Stamps v.*

*Manor Drug Store*, 421 U.S. 723 (1975), which it cannot (*see* Section II(A)(2)), such status is

not enough:

> *Blue Chip Stamps* . . . does not address injury in fact.  Instead, it
> merely holds that only purchasers or sellers of securities can sue to
> recover for their losses under § 10(b).  It does not grant standing to
> purchasers to recover for damages that were suffered by third
> parties.

*Tyco*, 236 F.R.D. at 73 (citation omitted).  Though the issue of BPI Global's standing to bring

claims on behalf of the putative class arose when it sought appointment as Lead Plaintiff, none of

BPI Global's multiple briefings at the Lead Plaintiff appointment stage, nor its Memorandum in

Support of Class Certification, attempted to demonstrate that BPI Global suffered the

individualized loss required by Article III, let alone that it satisfies the three-prong standing

inquiry delineated by *Lujan*.  *See, e.g.,* Dkt. Nos. 34, 59, 74, 90, 172.  The other plaintiffs

opposing BPI Global's appointment as Lead Plaintiff did not specifically raise, and thus the

Court did not reach, the issue of BPI Global's Article III standing, *see* Dkt. Nos. 48, 51, 52, 53,

and *Tyco* had not yet been decided at the time. Beyond tallying the alleged losses of its client

funds, *see* Dkt No. 59 at 2, Lead Plaintiff "does not even attempt to satisfy the Constitution's

injury in fact requirement," and thus cannot meet its burden under Article III. *Tyco*, 236 F.R.D.

at 73. Its status as a clearinghouse for its clients' trades neither garners it standing nor renders it

an appropriate class representative. *See id*.

### 2.    Lead Plaintiff Lacks Statutory "Purchaser" Standing.

To recover under Section 10(b), a plaintiff not only must demonstrate that it satisfies the

*constitutional* requirements for standing, but also must show that it has *statutory* standing as a

"purchaser" or "seller" of securities who has suffered injury in connection with that purchase or

sale. *See Blue Chip*, 421 U.S. at 730-31, 733, 749 (only purchasers and sellers may bring suit

under Section 10(b), "which is directed toward *injury suffered* in connection with the purchase or

sale of securities") (internal quotation omitted) (emphasis supplied); *see also Tyco*, 236 F.R.D. at

72-73 (statutory standing under Section 10(b) is distinct from constitutional standing).

### a.    Lead Plaintiff Is Not A "Purchaser" Of Sonus Securities, Because It Lacked Unfettered Investment Discretion.[8]

Lead Plaintiff BPI Global does not qualify as a "purchaser" of securities under the rubric

set forth in *Blue Chip*. It is true that courts have found that investment advisors with unfettered

discretion under operative advisory agreements have "purchaser" standing in securities class

actions. *See, e.g., Weinberg v. Atlas Air Worldwide Holdings*, 216 F.R.D. 248, 255 (S.D.N.Y.

---

[8]    At a hearing on June 28, 2004, the Court inquired if it might hear from the Defendants on the issue of whether BPI Global lacked standing because it was not a purchaser of securities. Haus Aff., Ex. D, Transcript from June 28, 2004 Hearing on BPI Global's Standing as a Purchaser at 27:12-13 ("June 28, 2004 Hearing Tr."), Dkt. No. 87. As defense counsel noted at that time, Defendants are precluded from participating in the appointment of Lead Plaintiff and Lead Counsel under *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996) ("the text of the [PSLRA] clearly indicates that [the issue of lead plaintiff appointment] is one over which only plaintiffs may be heard"). *See* June 28, 2004 Hearing Tr. 27:12-28:2 (discussing *Greebel*). Defense counsel specifically noted that "[i]t could very much be an issue on class certification." *Id*. at 28:1-2. Defendants thus take this opportunity to express their views on BPI Global's assertion that it has standing to sue here as a "purchaser" of securities, and in doing so, raise issues not brought forth at the Lead Plaintiff appointment stage.

2003) (investment advisor with complete decision-making authority has standing to sue as a "purchaser"); *Roth v. Knight Trading Group, Inc.*, 228 F. Supp. 2d 524, 530 (D.N.J. 2002) ("purchaser" standing existed where investment advisor had "unrestricted decision-making authority").[9] Here, however, the Advisory Agreement that governs the relationship between BPI Global and the fund manager, BPI Capital, with regards to the funds that purchased Sonus stock, including the two with the largest purported losses (BPI Global Equity and BPI American Equity Funds), expressly *limits* BPI Global's authority in several critical ways.

The Advisory Agreement limits BPI Global's authority to providing investment management services "on the *instructions or approval* of the Manager in respect to each of the Funds." Dkt. No. 90, ¶ 6 at 6. And, as both Bichelmeyer and Sweeney testified in their depositions, the Advisory Agreement established investment objectives, restrictions and practices that *BPI Capital* (not BPI Global) had the sole authority to amend, *without the approval* of BPI Global. Bichelmeyer Tr. 58:15-60:5; Sweeney Tr. 49:22-54:8; 56:2-6, 60:14-61:13. Sweeney also acknowledged that, as set out in Paragraph 8 of the Advisory Agreement, "[t]he Investment Advisor *agrees to comply with the directions of the Manager* relating to the disposal of any of the Investment Assets of a Fund." Sweeney Tr. 58:19-23; 59:2 (emphasis supplied); *see also id.* at 56:20-60:12.[10] Indeed, when asked whether there was any *limit* on the other

---

[9]    *See also Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 442 (W.D. Pa. 2001) ("*Rent-Way I*") and *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 107-08 (W.D. Pa. 2003) ("*Rent-Way II*") (investment advisor had standing on the basis of its undisputed discretion under the operative investment advisory agreement).

[10]    *See also* Advisory Agreement ¶ 6 at 6, Dkt. No. 90 (BPI Global's advice must be "in accordance with the Investment Policy of each of the Funds"); *see also id.* ¶ 6(a) at 6 (BPI Global's advice must be "in accordance with the Investment Objective and in a manner consistent and in compliance with the Investment Restrictions and Practices"); *id.* ¶ 6(e) at 6 (BPI Global may vote securities, but not if "otherwise directed by the Manager"); *id.* ¶ 7 at 7 (BPI Global must "comply with the Investment Objective, as amended from time to time, and the Investment Restrictions and Practices of each of the Funds"); *id.* (BPI Capital may change the Investment Objective and/or Investment Restrictions and Practices of the Funds merely upon written notice to BPI Global, and BPI Global must comply with those changes).

matters on which the manager had the right to direct BPI Global pursuant to Paragraph 8,

Sweeney conceded, "[There is] [n]one that I can see specified in the agreement."  *Id*. at 59:13-19.

On the investment side, Bichelmeyer (a fund manager) confirmed that Schedule 1 to the

Advisory Agreement delineated several restrictions on the nature of the investments that he

could make in his portfolios, and that such restrictions formed "a framework . . . stating things

that I could and could not do."  Bichelmeyer Tr. 66:6-68:4.[11]

This circumscribed authority stands in contrast to the complete discretion found sufficient

to confer "purchaser" standing in *Rent-Way*, the principal case relied upon by BPI Global at the

June 28, 2004 lead plaintiff hearing, where the operative agreement broadly bestowed on the

investment advisor "**_all_ _rights_ _in_ _respect_ _[of the_ _client's_ _securities]_**."  *See Rent-Way II*, 218

F.R.D. at 108 (alteration in original); c*f. In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03

CV 2166, 2004 WL 3314943, at *5 (N.D. Ohio May 12, 2004) (in finding "purchaser" standing,

relying on fact that investment advisor had "full and complete authority to purchase and sell

securities").[12]  The BPI Global Advisory Agreement does not contain a comparably broad grant

of authority.

---

[11]     Those restrictions included, *inter alia*, prohibitions on purchasing real estate fees and portfolios.  *Id*.

[12]     An investment advisor with the unfettered investment discretion that BPI Global lacks is akin to attorney-in-fact for its clients.  *See Rent-Way II*, 218 F.R.D. at 108 (finding "purchaser" standing because "[a]lthough the relevant agreements do not include any formal execution of power of attorney, they broadly convey to [the investment advisor] the power to exercise 'all rights in respect [of the client's securities]").  For many courts, an investment advisor's status as an attorney-in-fact for its clients has been an absolute precondition to standing.  *See, e.g., Olsen v. N.Y. Comm. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2002) (must be attorney-in fact with unrestricted decision-making authority, and finding "purchaser" standing where agreement specifically provided that advisor was "authorized to take all legal actions that arise from the management of the assets"); *see also, e.g., In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 572 (D.N.J. 2006); *Goodyear*, 2004 WL 3314943, at *5; *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002).  Here, while it subsequently obtained a letter of support for the litigation from General Counsel of the manager, BPI Global has not demonstrated that it ever possessed the authority to bring this litigation on behalf of or consulted with the Funds or the manager in the first instance.  *See* Sweeney Tr. 69:8-14 (testifying that he is "not aware of any provisions [in the Advisory Agreement] that would indicate that the investment advisor, BPI Global, would be responsible for filing lawsuits on behalf of its clients"); *see also id*. at 38:14-39:17, 78:12-79:9.

      **b.**      **BPI Global's Lack of Incentive To Represent The Interests of The Funds And The Class Further Undermines Its Constructive Status As A "Purchaser."**

Also significant to a finding that an investment advisor has derivative standing as a purchaser to sue on behalf of its clients under Section 10(b) is the assumption that the advisor has the incentive to vigorously monitor and prosecute the case to recover the losses sustained by its clients (and, presumably, other absent class members). *See*, *e.g.*, *Rent-Way I*, 136 F. Supp. 2d at 443 (investment advisor who suffered no out-of-pocket loss had "significant financial interest in attempting to recover the $10.1 million allegedly lost by its clients in order to maintain their goodwill and future business," negating the argument that it lacked standing as a "purchaser").[13]

Here, Lead Plaintiff lacks any such incentive because it has suffered no injury and, as the result of the Merger, no longer exists. *See* Background, *supra*, *and citations therein*. It thus has no interest in maintaining its goodwill or the future business of its clients, and no monetary interest in the outcome of this litigation, rendering it atypical and unfit to represent a class of investors who claim very real interests in this case.[14] *See In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006-07 (S.D.S.D. 2003) (investment advisor had "purchaser" standing due to its complete discretion to select securities for its clients *and* its "significant financial and business interest in attempting to recover money allegedly lost by its clients"); *see also Wooden v. Bd of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("one of the core purposes of conducting typicality review is to ensure that the named plaintiffs have incentives that align with

---

[13]    *Cf. Casden v. HPL Techs., Inc.*, No. C-02-3510, 2003 U.S. Dist. LEXIS 19606, at \*21-\*22 (N.D. Cal. Sept. 29, 2003) (expressing concern that investment advisor may not have incentive to vigorously prosecute because it lacked ownership interest in securities).

[14]    BPI Global's lack of incentive to prosecute this case also indicates that it would not "fairly and adequately represent the interests of the class," as required by Fed. R. Civ. P. 23(a)(4). *See, e.g., Opiela v. Bruck*, 139 F.R.D. 257, 260-61 (D. Mass. 1990) (finding inadequate a proposed class representative who suffered no losses, because "[a] plaintiff who has not sustained damages does not possess the same interest in a case, or the same incentive to prosecute a case, that one who has been harmed would possess").

those of absent class members so as to assure that the absentees' interests will be fairly represented") (internal quotations and citation omitted).  As discussed in further detail *infra* at Section III, Lead Plaintiff's total lack of incentive to monitor or oversee this action already has manifested itself in the conduct of this litigation.

Lead Plaintiff's compounded failure to demonstrate both constitutional and statutory "purchaser" standing is fatal to the claims it purports to bring and renders it an atypical plaintiff. Even if Lead Plaintiff *could* demonstrate *either* constitutional *or* statutory "purchaser" standing (which it cannot), the record before the Court at a minimum demonstrates a *bona fide* and substantial question as to Lead Plaintiff's standing that renders it an atypical class representative "subject to unique defenses."  *Pharm. Indus. AWP*, 230 F.R.D. at 80 (finding proposed representative atypical due in part to unique defenses), *citing Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).[15]

## III.    LEAD PLAINTIFF IS NOT IN CONTROL OF THIS LITIGATION, RENDERING IT INADEQUATE.

The PSLRA mandates that "securities class actions be managed by active, able class representatives who are well informed and can demonstrate they are directing the litigation." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) *citing Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001); *see also Howard Gunty Profit Sharing Plan v. Carematrix Corp.*, 354 F. Supp. 2d 18, 23 (D. Mass. 2000) ("[T]he whole point of the [PSLRA

---

[15]    Of course, the defense does not have to be proven for a proposed class representative to be disqualified from representing a class of investors.  Rather, "[t]he unique defense inquiry goes to the existence of a defense, not to its validity."  5 MOORE'S FEDERAL PRACTICE § 23.24(5) (3d ed. 2006); *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (proposed representative atypical due to unique defenses; noting that the critical inquiry is whether plaintiff's energies will be spent defending unique or atypical issues, not whether defenses will be successful).

provisions] was to install a lead plaintiff with substantive decision making ability and authority, instead of permitting attorneys to direct the litigation process.") (internal quotations omitted).[16]

Because BPI Global no longer exists, it has, on balance, no interests aligned with those of the absent class members; it necessarily cannot be tasked with vigorously monitoring counsel and protecting those interests. It is telling that, of the three deponents it proffered pursuant to Rule 30(b)(6), two (Bichelmeyer and Sweeney) are not employed by the post-Merger entity, Trilogy, having left before or shortly after the Merger (Bichelmeyer Tr. 13:23-14:15; Sweeney Tr. 8:1-5, 29:20-30:3), and the third (Myklusch) was never employed by BPI Global, (Myklusch Tr. 14:15-15:5). It, therefore, comes as no surprise that, as set out below, Lead Plaintiff thus far has done little to direct this litigation and to monitor and control its counsel.[17]

### 1.    Lead Plaintiff's Failure to Negotiate a Fee Agreement or Research Counsel Reflects Counsel's—Not Lead Plaintiff's—Control Over the Case.

It is unclear who, if anyone, is monitoring counsel and directing the prosecution of this case. A plaintiff does not satisfy those duties by agreeing to file a lawsuit only when propositioned by counsel whom plaintiff "research[ed]" only by asking whether the law firm was "real." Sweeney Tr. 33:1-3; 33:16-25; 34:4-10. In light of such indifference to the quality of

---

[16]    *See also In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 347 (D. Mass. 2005) (concluding that it was "in the interest of the administration of justice to give integrity to the PSLRA's mandate that litigants not lawyers direct and control class action litigation"); *Coopersmith v. Lehman Bros.*, 344 F. Supp. 2d 783, 788 (D. Mass. 2004) (one objective of PSLRA "was to ensure more effective representation of investors in securities fraud class actions by transferring control of the litigation from the attorneys to the investors") (internal quotation omitted).

[17]    Lead Plaintiff's lack of direction and incentive to prosecute this case also renders it atypical. *See Wooden*, 247 F.3d at 1288 (to satisfy typicality, named plaintiff's incentives must correspond to those of absentee class members); *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) ("the adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members") (internal quotation omitted).

Lead Counsel, it is unsurprising that Sweeney also made no efforts whatsoever to negotiate a favorable fee arrangement for the class:

> Q:    In retaining Mr. Cera's firm, did you have discussions regarding the amount of fees that Mr. Cera's firm would request as counsel in this case should there be a recovery?
>
> A:    It's a contingent fee arrangement.  BPI wouldn't have to pay any [fees] if they were handed out an award.
>
> Q:    Did you discuss the percentage of the recovery that Mr. Cera's firm would request from the court?
>
> A:    I don't recall any such discussions.
>
> Q:    So your only discussion was – with regard to fees was that BPI Global would not have to pay any?
>
> A:    That it would be borne out of the recovery, and if there were no recovery, there would be no fees, a contingent basis.

*Id.* at 69:21-70:12.  Such indifference is not adequate under the PSLRA.  *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) ("one of the best ways for a court to ensure that [lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement") *citing Raftery v. Mercury Fin. Co.*, No. 97 C 624, 1997 WL 529553, at *2 (N.D. Ill. Aug. 15, 1997) (finding inadequate lead plaintiff whose retainer agreement with counsel providing for 33 1/3 percent of recovery was likely "not the result of hard bargaining").[18]

---

[18]    Lead Plaintiff's failure to negotiate with counsel on behalf of the class also vitiates the PSLRA's preference for institutional investors as lead plaintiff on the basis that, among other things, they are more likely to select qualified counsel and negotiate a reasonable fee agreement.  *See* H.R. Conf. Rep. No. 104-369, at 34-35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733-34; Elliot J. Weiss and John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053, 2105 (1995) ("[A] court might well feel confident in assuming that a fee arrangement an institutional investor had negotiated with its lawyers before initiating a class action maximized those lawyers' incentives to represent diligently the class' interests, reflected the deal a fully informed client would negotiate, and thus presumptively was reasonable"), cited in H.R. Conf. Rep. No. 104-369 at n.3 & n.6.

      2.      **Lead Plaintiff's Limited Involvement In And Awareness Of The Suit Thus Far Evidence its Failure To Direct The Action.**

In addition to its failure to put any effort into protecting the Funds or the class during the hiring of Lead Counsel, Lead Plaintiff's lackluster oversight of the litigation thus far further demonstrates its inadequacy to represent the class.  Indeed, no one seems to know who is driving this litigation.  Sweeney testified that he believes Myklusch is now overseeing this litigation. *See* Sweeney Tr. 40:13-25.  But, Myklusch expressed uncertainty as to whether he has such responsibility, and passed it back to his supervisors Ryan Burrows ("Burrows") and Carol Holley (neither of whom Lead Plaintiff offered for deposition).  *See* Myklusch Tr. 205:19-206:13.  But, if Burrows is in charge, it surely is news to him; before this litigation commenced, he agreed to participate only after receiving assurance from Sweeney that he (Burrows) would have *no responsibility for overseeing the litigation*.  Sweeney Tr. 35:17-36:4.  For his part, Sweeney *never bothered to speak with anyone at the Funds*, on whose behalf BPI Global purports to bring this litigation, either *before* the Complaint was filed *or after* the commencement of this action. *Id*. at 39:9-39:17 ("There was no communication with any of the clients regarding this litigation").  And finally, Bichelmeyer, also proffered by Lead Plaintiff for deposition, is unwilling to state that he would voluntarily testify at a trial in this case.[19]  The appointment of a class representative with such underwhelming enthusiasm for directing this action would contravene the purposes of the PSLRA and well-settled law holding that a court evaluating a

---

[19]

| | Q: | . . . [O]n a voluntary basis, will you come to trial in Boston, to the extent that there is a trial in this case? |
|---|---|---|
| | A: | If it comes to that point, I'll have to make a decision at that time. |
| | Q: | Okay.  But sitting here today you can't say one way or another whether you would come to trial? |
| | A: | Correct. |

*See* Bichelmeyer Tr. 129:3-6.

potential class representative must inquire into "the willingness and ability of the representative[] to take an active role in and control the litigation, to protect the interests of absentees." *Berger*, 257 F.3d at 482 (internal quotation omitted).

Moreover, although this litigation was filed almost three years ago, Lead Plaintiff is unable to proffer witnesses who have basic knowledge about the case that it has brought and documents it has filed in this case. For example, Sweeney could not testify to basic facts concerning the Lead Plaintiff Certification *that he signed in this matter*. Sweeney Tr. 16:17-17:8; *see also* Dkt. No. 35, Ex. A. He did not know why the trading report attached to his sworn Certification appeared to be for dates other than the dates of the putative Class Period, despite attesting to its contents and accuracy when filing it with the Court; his involvement in creating the schedule apparently was limited to communicating counsel's request for the report to "someone else," whose identity he does not remember, who created the report. *See* Sweeney Tr. 16:17-17:8, 63:5-13. Indeed, even though he authorized this lawsuit, Sweeney cannot even express an opinion as to the truth of the allegations set forth in the operative Complaint, and admitted that Lead Plaintiff provided little, "if any," information for the Complaint. *Id*. at 34:22-35:11. All of this inattention underscores why BPI Global is an inadequate proposed class representative. *See Ogden v. Americredit Corp.*, 225 F.R.D. 529, 533 (N.D. Tex. 2005) (rejecting as inadequate plaintiff who had little or no knowledge outside that provided by counsel, despite plaintiff's involvement in preparation of the case and understanding of some of the underlying facts); *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658,

666 (D. Or. 1991) (finding inadequate putative class representative who did not contribute to drafting of complaint and had only limited knowledge about the case).[20]

The lack of interest and oversight by BPI Global in this litigation *before* the Merger is gravely compounded by the Merger that eliminated BPI Global. Myklusch, of post-Merger Trilogy, who may or may not be responsible for overseeing this litigation (*see supra* at 17), has done no more to control this litigation than his predecessor. In fact, he does not even know how BPI Global came to be a plaintiff in this case and, like Sweeney, has failed even to discuss this case with anyone at the Funds. *See* Myklusch Tr. 44:23-45:2; 45:24-46:5.[21] Perhaps more startling, Myklusch *has not even read all of the operative Complaint*, *id.* at 44:8-12, and admitted that he is unaware of which claims even still exist in this case, explaining only that, "[W]e rely on counsel to keep us apprised and tell us what we need to know in relation to the case," *id.* 207:23-208:8. Even if Lead Plaintiff were relying on counsel for much of its information, its failure to even read the operative Complaint in this action, its ignorance of what claims remain, and its failure to at least inquire of its counsel what those claims are demonstrate that it is wholly inadequate to manage or control this litigation.[22] *See Feder*, 429 F.3d at 129-30 (PSLRA

---

[20]    *See also Kelley v. Mid-America Racing Stables, Inc.*, 139 F.R.D. 405, 409-10 (W.D. Okla. 1990) (plaintiffs inadequate who had no personal knowledge of allegations other than that given by counsel); *Greenspan v. Brassler*, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978) (plaintiff inadequate who had limited personal knowledge of underlying facts of litigation, and played "apparently superfluous role in the litigation to date").

[21]    The only communications Sweeney or Myklusch had regarding this litigation with anyone at the Funds' manager, BPI Capital, or its successor, CI Mutual Funds, were limited conversations with Michael Killeen, General Counsel for CI Mutual Funds. Sweeney spoke with Killeen, who also apparently lacks any responsibility for this litigation, only once, after the litigation began, to obtain an affidavit. Sweeney Tr. 38:14-39:8. Myklusch had only two conversations with Killeen; one general conversation initiated by Myklusch because he erroneously believed that CI Mutual would have been involved in this litigation given CI Mutual's ownership interest in BPI Global, and another conversation regarding document collection. Myklusch Tr. 111:15-112:24.

[22]    Myklusch's failure to supervise lead counsel is further demonstrated by his deposition testimony that he had had little familiarity with Lead Plaintiff's interrogatory responses, which he *signed* and for which he was proffered as a Rule 30(b)(6) designee; he repeatedly stated that he "relied on counsel" to ensure that the responses were complete and accurate. *See*, *e.g.*, Myklusch Tr. 80:15-81:4; 92:20-93:9; 96:17-97:20; 108:8-109:6; 110:20-24.

requires class representatives to "possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation") (internal quotation omitted); *Greenspan*, 78 F.R.D. at 133-34 (plaintiffs inadequate who were unaware of certain elements of the complaint and "appear[ed] to place undue emphasis on their counsel's ability to conduct the litigation").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Sonus Networks, Inc. and Hassan M. Ahmed respectfully request that the Court deny Lead Plaintiff's Motion for Class Certification.

Respectfully submitted,

/s/ James W. Prendergast
/s/ Sherry Hartel Haus
Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Peter A. Spaeth (BBO #545202)
Sherry Hartel Haus (BBO #663777)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
*Attorneys for Sonus Networks, Inc.*

/s/ John R. Baraniak
Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Choate Hall & Stewart
Two International Place
Boston, Massachusetts 02109
(617) 248-5000

Dated: January 5, 2007          *Attorneys for Hassan M. Ahmed*

---

It also appears that no one at BPI Global or Trilogy has ever seen Lead Plaintiff's initial disclosures, despite the fact that these disclosures are intended to reveal sources of discoverable information such as individuals, presumably including individuals at BPI Global, with knowledge of this action. *See* Myklusch Tr. 209:24-210:23; *see also* Fed. R. Civ. P. 26(a)(1). The fact that counsel apparently cobbled together the initial disclosures without the assistance of their client plainly demonstrates that counsel, in the absence of supervision from its client, is managing this litigation.

- 20-

**CERTIFICATE OF SERVICE**

On January 5, 2007, I caused a copy of this Document to be served by electronic mail via the electronic filing system upon all counsel of record.

/s/ James W. Prendergast_____

James W. Prendergast

US1DOCS 5985037v9