# Exhibit B

08:47:27    UNITED STATES DISTRICT COURT

08:47:27    FOR THE DISTRICT OF MASSACHUSETTS

08:47:27    --------------------------------------------------

08:47:27    IN RE:

08:47:27

08:47:27    SONUS NETWORKS, INC.,

08:47:27    LITIGATION

08:47:27                                    Civil Action No.

08:47:27                                    04-10294-DPW

08:47:27                                    Lead Case

08:47:27    --------------------------------------------------

08:47:27                        9:30 a.m.

                               November 3, 2006

08:47:27

                               399 Park Avenue

08:47:27                        New York, New York

08:47:27

08:47:27            DEPOSITION of JOHN FRANCIS MYKLUSCH, a

            Witness in the above entitled matter, taken

08:47:27    pursuant to Notice, before Stephen J. Moore, a

            Registered Professional Reporter, Certified

08:47:27    Realtime Reporter, and Notary Public of the

            State of New York.

CERTIFIED ORIGINAL
LEGALINK BOSTON

Page 7

1                          **JOHN MYKLUSCH**

09:39:48  2        A    We are a registered investment

09:39:50  3   advisor under the '40 Act.

09:39:57  4        Q    **What's the relationship between**

09:39:58  5   **Trilogy Global Advisors and BPI Global Asset**

09:40:00  6   **Management?**

09:40:02  7        A    Trilogy Global Advisors was the

09:40:06  8   entity that was created when Trilogy Advisors

09:40:09  9   and BPI Global Asset Management merged

09:40:12 10   together.

09:40:12 11        Q    **When did that happen?**

09:40:14 12        A    That happened in May of 2005.

09:40:24 13        Q    **So, is BPI Global Asset**

09:40:25 14   **Management still in existence?**

09:40:28 15        A    BPI Global Asset Management has

09:40:30 16   been merged into Trilogy Global Advisors.

09:40:45 17             MS. COFFEY:  Can we mark as

09:40:46 18        Exhibit 1 the amended notice of taking

09:40:49 19        deposition of the amended notice of

09:40:54 20        taking of deposition of BPI Global Asset

09:40:57 21        Management.

09:40:58 22             (The above described document was

09:40:58 23        marked Exhibit 1 for identification as of

09:41:36 24        this date.)

09:41:39 25        Q    **The stenographer has just marked**

Page 9

JOHN MYKLUSCH

09:42:45  2        Q      **What is your position, for**

09:42:47  3   **shorthand is it okay if I refer to it as**

09:42:49  4   **Trilogy?**

09:42:50  5        A      That's fine.

09:42:50  6        Q      **What is your position at**

09:42:51  7   **Trilogy?**

09:42:52  8        A      I am the Chief Financial Officer

09:42:54  9   and I am the Chief Compliance Officer.

09:43:05  10        Q      **What are your duties and**

09:43:06  11   **responsibilities as Chief Financial Officer?**

09:43:11  12        A      It's the financial management of

09:43:13  13   Trilogy Global Advisors as an entity as it

09:43:16  14   relates to our current business plan, or our

09:43:18  15   current goals of the entity, so fiscal

09:43:21  16   management.

09:43:33  17        Q      **On a day-to-day basis what does**

09:43:35  18   **that entail?**

09:43:38  19        A      Interacting with my Comptroller

09:43:40  20   on different financial matters, reviewing

09:43:45  21   client contracts, ensuring appropriate payments

09:43:51  22   have gone in, fiscal matters are done in a

09:43:55  23   correct way, budgeting, it can be any one of a

09:44:00  24   number of fiscally related items.

09:44:03  25        Q      **You mentioned interacting with**

Page 14

1                        JOHN MYKLUSCH

09:49:12  2              Why does it matter?  Where is the

09:49:15  3         relevance of it?

09:49:17  4              MS. COFFEY:  You can go ahead and

09:49:18  5         answer the question.

09:49:22  6         A       On the finance side Rose

09:49:23  7    Blechner who is the Comptroller and Camille

09:49:28  8    Whitsett.

09:49:41  9         **Q       What's Camille Whitsett's**

09:49:43 10    **position?**

09:49:43 11         A       Camille is a Vice President

09:49:47 12    with -- she is either a Vice President or an

09:49:49 13    associate currently, I am not sure as to which

09:49:51 14    title she currently holds.

09:49:59 15         **Q       So you have been employed by**

09:50:00 16    **Trilogy since the merger in 2004, correct?**

09:50:05 17         A       I was employed before that and

09:50:07 18    after that.

09:50:08 19         **Q       Right, and before the merger you**

09:50:10 20    **were employed by BPI?**

09:50:12 21         A       Trilogy Global, I have worked

09:50:13 22    for Trilogy Global Advisors.

09:50:18 23              MR. CERA:  Go ahead, let him

09:50:19 24         finish.

09:50:23 25         A       In 1999 I began working with

John Francis Myklusch                                  11/03/2006

Page 15

1                        JOHN MYKLUSCH

09:50:25  2    Trilogy Advisors.   When we merged I became a

09:50:30  3    dual officer and dual titles with BPI and

09:50:36  4    Trilogy Advisors and Trilogy Global Advisors

09:50:42  5    and I hold the majority of those titles today.

09:50:48  6         **Q       So in 1999 when you began**

09:50:49  7    **working with Trilogy Advisors what was your**

09:50:51  8    **position?**

09:50:53  9         A       I was the Chief Financial

09:50:54 10    Officer and Compliance Officer, and I did not

09:51:00 11    take on a Chief Compliance Officer role until I

09:51:04 12    believe it was mandated by the rule that the

09:51:08 13    SEC has most recently passed regarding that.

09:51:12 14         **Q       Did those positions change prior**

09:51:14 15    **to the merger?**

09:51:16 16         A       Do you mean did the titles

09:51:17 17    change?

09:51:18 18         **Q       Yes.**

09:51:20 19         A       I believe the rule required

09:51:22 20    was -- I believe the rule for Chief compliance

09:51:27 21    officers predated our merger, so yes.

09:51:30 22         **Q       Otherwise were there any changes**

09:51:31 23    **in your titles prior to the merger?**

09:51:33 24         A       I most likely have received some

09:51:35 25    merit increases, I believe I started as a Vice

Page 44

1                           JOHN MYKLUSCH

10:26:22  2        Q        Why did you speak with

10:26:23  3    Mr. Sweeney about the Sonus case?

10:26:26  4        A        Because I would consider him to

10:26:28  5    be one of the more knowledgeable persons about

10:26:30  6    what had gone on or where the case stood or the

10:26:32  7    positions that BPI had.

10:26:35  8        Q        Have you read the complaint in

10:26:36  9    this case?

10:26:41 10        A        I have read the complaint, I

10:26:44 11    don't know if I read every word, but I read the

10:26:47 12    majority of it.

10:26:48 13        Q        Do you know the basic

10:26:49 14    allegations?

10:26:50 15        A        I do know the basic allegation.

10:26:53 16        Q        Could you describe it?

10:26:54 17        A        My understanding is that Sonus

10:27:00 18    had made what were allegedly misstatements in

10:27:09 19    securities filings and there are instances

10:27:12 20    of -- alleged instances of revenue manipulation

10:27:21 21    inside of these filings which required

10:27:24 22    restatements to these filings.

10:27:31 23        Q        Do you know how BPI Global came

10:27:32 24    to be a Plaintiff in this case?

10:27:36 25        A        I was not affiliated at the

Page 45

                              JOHN MYKLUSCH

10:27:37  2    time, so no.

10:27:41  3         Q       Do you know where the lawsuit is

10:27:42  4    pending?

10:27:43  5         A       In Boston, I believe.

10:27:45  6         Q       Do you know if it's state or

10:27:45  7    federal court?

10:27:48  8         A       I believe the charges are --

10:27:49  9    securities are federal, so it would have to be

10:27:53 10    a federal court.

10:27:55 11         Q       Do you know what the status of

10:27:56 12    this case is?

10:27:57 13         A       I believe it is awaiting class

10:28:00 14    action certification, which is where it stands

10:28:03 15    today.

10:28:04 16         Q       Do you know the name of the

10:28:05 17    judge?

10:28:10 18         A       I know it starts with a W, I

10:28:13 19    don't recall his exact last name.

10:28:16 20         Q       Do you know if there has been a

10:28:17 21    trial set in this case?

10:28:19 22         A       I believe there has been a date

10:28:20 23    set for February next year.

10:28:32 24         Q       Other than Mr. Sweeney, have

10:28:35 25    you -- and Mr. Kileen, have you spoken to

John Francis Myklusch                           11/03/2006

Page 46

1                          JOHN MYKLUSCH

10:28:37  2    anyone else about this litigation?

10:28:42  3          A      I discussed earlier that I

10:28:44  4    discussed this litigation with several

10:28:48  5    colleagues in the industry.

10:28:51  6          Q      Anyone else other than Mr. Cera

10:28:56  7    and Ms. Markert?

10:28:58  8          A      I would say the management of

10:28:59  9    Trilogy has been kept apprised at a generic

10:29:04 10    level of the case.

10:29:06 11          Q      What has your involvement in

10:29:08 12    this case thus far entailed?

10:29:11 13                 MR. CERA:  I object to form.  Go

10:29:12 14          ahead.

10:29:12 15          A      I would say from the point in

10:29:13 16    which I picked it up, the two matters that I

10:29:17 17    was involved most closely with were the

10:29:20 18    interrogatories which are mentioned in this

10:29:23 19    document in front of me, and the document

10:29:29 20    collection.

10:29:34 21          Q      Anything else?

10:29:38 22          A      Probably had a number of

10:29:39 23    conversations with counsel surrounding the

10:29:41 24    Sonus case, in particular when I picked up

10:29:48 25    after Chuck had left the company, I had a

Page 52

1                      JOHN MYKLUSCH

10:43:58 2   the investment person, so not the trader.

10:44:01 3            Q      Who is the trader?

10:44:02 4            A      His name was Kyle, Kyle Anderson

10:44:04 5   was his name.

10:44:09 6            Q      What was Dan Jaworski's

10:44:11 7   position?

10:44:11 8            A      My understanding is CIO.

10:44:17 9            Q      What about John Sorenson?

10:44:19 10           A      I do not know the titles of the

10:44:22 11  remainder of those individuals.

10:44:24 12           Q      Or Paul Holland?

10:44:33 13           A      No.

10:44:41 14           Q      We have been talking about this

10:44:42 15  merger between -- can we go off the record.

10:44:47 16                  (Discussion off the record.)

10:45:48 17                  MS. COFFEY:  We can go back on

10:45:49 18           the record now.

10:45:53 19           Q      Perhaps it's a good time to

10:45:54 20  clarify, does BPI Global currently exist?

10:45:59 21           A      BPI Global Advisors was merged

10:46:03 22  up and into Trilogy Global Advisors, but in the

10:46:07 23  merger agreement we left a stipulation so that

10:46:10 24  lawsuits in its name could proceed in its name.

10:46:15 25           Q      Other than that stipulation does

John Francis Myklusch                          11/03/2006

Page 53

1                          JOHN MYKLUSCH

10:46:17  2    BPI Global still exist?

10:46:20  3                    MR. CERA:  I object to the form,

10:46:21  4            calls for a legal opinion and

10:46:23  5            conclusion.

10:46:24  6            A      My understanding is it's --

10:46:27  7                    MR. CERA:  Do you have anything

10:46:27  8            to add to --

10:46:29  9                    THE WITNESS:  No.

10:46:32 10            A      It's Trilogy Global Advisors

10:46:34 11    now.

10:46:35 12            Q      I am going to ask you the

10:46:36 13    question one more time just so I can make sure

10:46:38 14    you are answering the right question.

10:46:39 15                    Other than the stipulation you

10:46:41 16    mentioned regarding the lawsuits moving forward

10:46:43 17    in the name of BPI Global, is BPI Global still

10:46:46 18    in existence?

10:46:49 19            A      Only as it relates to its merger

10:46:54 20    inside of Trilogy Global Advisors.

10:47:06 21            Q      What was the role -- to your

10:47:08 22    knowledge what was the role of CI Mutual Funds

10:47:12 23    and the preparation of the Complaint?

10:47:16 24                    MR. CERA:  Objection to the form,

10:47:16 25            may call for privileged communication.

John Francis Myklusch                          11/03/2006

Page 80

```
              1              JOHN MYKLUSCH
11:14:42      2        I'm sorry, I'm not going to permit
11:14:44      3   that.  Is that what you are planning on
11:14:45      4   doing?
11:14:47      5        MS. COFFEY:  Unless you are
11:14:47      6   objecting on grounds of privilege he is
11:14:48      7   required to answer the question.
11:14:50      8        MR. CERA:  That is just a
11:14:51      9   complete, abject waste of time and you
11:14:53     10   know that's inappropriate.
11:14:56     11   Q      Mr. Myklusch, you were tasked
11:14:57     12   with responding to these interrogatories,
11:14:59     13   correct?
11:15:00     14        A    Yes.
11:15:00     15   Q      Did you review these definitions
11:15:02     16   and instructions when you were responding to
11:15:05     17   them?
11:15:06     18        A    We relied on counsel to answer
11:15:09     19   or to assist us in answering these questions
11:15:11     20   correctly.
11:15:13     21   Q      So, did you review these
11:15:14     22   definitions and instructions in responding to
11:15:16     23   these interrogatories?
11:15:18     24        A    No, we would have relied or I
11:15:19     25   would have relied on counsel to make sure my
```

John Francis Myklusch                          11/03/2006

Page 81

1                         JOHN MYKLUSCH

11:15:21  2   answers were appropriate given the rules stated

11:15:26  3   in the rules that apply in interrogatories such

11:15:30  4   as this.

11:15:35  5         Q      Let me turn then to item H on

11:15:37  6   Page 2 which defines the term short sale.  Can

11:15:45  7   you tell me what the term short sale means to

11:15:48  8   you?

11:15:49  9         A      The term short sale is when an

11:15:52 10   individual borrows a security, usually on

11:15:55 11   margin, creates a loan for that security, and

11:15:59 12   then sells it creating the obligation to repay

11:16:02 13   back that security.

11:16:07 14         Q      Item I on Page 2, the term hedge

11:16:09 15   or hedging transaction, can you tell me what

11:16:12 16   the term hedging transaction means to you?

11:16:14 17               MS. MARKERT:  Are you asking for

11:16:14 18         something different other than what you

11:16:14 19         defined in the interrogatory, Melissa?

11:16:14 20         I'm a little confused.

11:16:20 21               MS. COFFEY:  Is that an

11:16:21 22         objection?

11:16:25 23               MS. MARKERT:  No, I'm just asking

11:16:25 24         for clarification, I don't understand

11:16:25 25         the question.

Page 92

1                    JOHN MYKLUSCH

11:31:55  2  would have been the only persons, but I have to

11:31:57  3  assume that all matters in relation to this

11:32:02  4  case probably went through Chuck.

11:32:06  5        Q      Are you aware of whether any

11:32:08  6  communications have occurred between the lead

11:32:16  7  Plaintiff and any member of the purported class

11:32:18  8  or subclass since these interrogatories were

11:32:20  9  signed?

11:32:20 10        A      I have no knowledge of any.

11:32:24 11        Q      Are you aware there is a

11:32:25 12  continuing obligation to supplement the

11:32:27 13  responses to interrogatories?

11:32:29 14        A      I am aware of a continued

11:32:33 15  requirement to discover additional items under

11:32:38 16  the interrogatories, or as we find other

11:32:41 17  documents that would have been required under

11:32:44 18  the document requests.

11:32:51 19        Q      Page 6, Exhibit 3.

11:32:54 20              Interrogatories number 4,

11:32:56 21  identify each person or former officer,

11:32:58 22  director or employee of Sonus with whom

11:33:02 23  eventually lead Plaintiff has had any

11:33:05 24  communication.

11:33:06 25              Can you tell me the process you

Page 93

1                        JOHN MYKLUSCH

11:33:07  2    understood to respond to this interrogatory?

11:33:09  3         A     I worked with counsel to answer

11:33:11  4    this question.  I believe counsel was able to

11:33:16  5    uncover themselves the fact that there were

11:33:20  6    none.

11:33:25  7         Q     Did you take any steps

11:33:26  8    independent of counsel to determine that?

11:33:29  9         A     I had none.

11:33:33 10         MR. CERA:  You had no

11:33:34 11         communications of this kind?

11:33:35 12         A     I had no communications of this

11:33:36 13    kind.

11:33:41 14         Q     Who would know if these

11:33:42 15    communications occurred?

11:33:48 16         A     Chuck Sweeney would be the only

11:33:49 17    other person, but my understanding is that an

11:33:55 18    interview or counsel had helped answer this

11:33:58 19    question.

11:34:03 20         Q     On Page 7, interrogatory number

11:34:07 21    5, identify all securities analysts with whom

11:34:13 22    lead Plaintiff has had communication concerning

11:34:15 23    the facts set forth in the Complaint.

11:34:18 24              What steps did you take to

11:34:19 25    respond to this interrogatory?

John Francis Myklusch                                    11/03/2006

Page 96

1                    JOHN MYKLUSCH

11:37:58  2   Complaint, provide certain information about

11:38:01  3   the document, person name, time and place where

11:38:04  4   the source gave the information, et cetera.

11:38:06  5              What steps were taken to respond

11:38:08  6   to this interrogatory?

11:38:44  7        A      It's my understanding counsel

11:38:47  8   had conversations with both Chuck Sweeney and

11:38:50  9   John Bichelmeyer to make them comfortable that

11:39:12 10   they were the only individuals who would have

11:39:27 11   had knowledge like this.

11:39:30 12        Q      Were you involved in

11:39:31 13   interviewing -- were you involved in

11:39:34 14   interviewing individuals who may have had

11:39:36 15   information regarding these interrogatories?

11:39:39 16        A      Not every single interrogatory.

11:39:45 17        Q      Were you involved in those

11:39:45 18   interviews for any of the interrogatories we

11:39:47 19   have reviewed so far?

11:39:49 20        A      Yes.

11:39:51 21        Q      Which ones?

11:40:12 22        A      1 and 2.

11:40:28 23        Q      So, with regards to 3, 4, 5 and

11:40:30 24   6, did you have any -- did you participate at

11:40:35 25   all in coming up with a response to those

John Francis Myklusch                                    11/03/2006

Page 97

1                          JOHN MYKLUSCH

11:40:38  2    interrogatories?

11:40:41  3            A       Would have worked with counsel

11:40:42  4    to ensure that the answers that we were putting

11:40:46  5    are correct and their steps were taken were

11:40:50  6    correct to answering the questions.

11:40:52  7            Q       **Were you involved before the**

11:40:53  8    **responses were drafted?**

11:40:54  9            A       Was I involved before the --

11:40:56  10                   MR. CERA:  I object to form.

11:40:59  11           A       I definitely saw the

11:41:00  12   interrogatories before responses were drafted.

11:41:05  13           Q       **Were you involved in responding**

11:41:06  14   **to interrogatories 3, 4, 5 and 6 before the**

11:41:09  15   **responses were drafted?**

11:41:11  16           A       In the process of answering the

11:41:13  17   interrogatories I would have had a conversation

11:41:15  18   with counsel about all of the interrogatories

11:41:17  19   and what steps that we felt were the best

11:41:19  20   methods of answering the interrogatories.

11:41:26  21           Q       **Okay.**

11:41:32  22                   **Let's move to Page 9, to**

11:41:34  23   **interrogatory number 7.**

11:41:50  24                   **Actually let's move on to the**

11:41:51  25   **response to number 6 on Page 9 also.**

John Francis Myklusch                          11/03/2006

Page 108

JOHN MYKLUSCH

11:53:59  2    Plaintiff's response to interrogatory number 8.

11:54:04  3              What was the process for

11:54:05  4    responding to this interrogatory?

11:54:06  5         A      This is the document discovery

11:54:08  6    process which we feel was a pretty

11:54:11  7    comprehensive process.

11:54:17  8         Q      Interrogatory number 10,

11:54:18  9    identify any fee arrangement or agreement

11:54:20 10    between you and any person regarding the

11:54:21 11    payment of attorneys' fees or costs in this

11:54:23 12    action.

11:54:25 13              The response references a

11:54:27 14    responsive document which I believe is the fee

11:54:29 15    arrangement, the engagement letter between BPI

11:54:31 16    and Mr. Cera's law firm.

11:54:34 17              Are you aware of any other fee

11:54:36 18    arrangement or fee agreement?

11:54:37 19         A      No.

11:54:38 20         Q      What was done to respond to this

11:54:40 21    request?

11:54:42 22         A      I had seen that letter and my

11:54:43 23    understanding is a copy -- I believe a redacted

11:54:46 24    copy of that letter was provided.

11:54:50 25         Q      Was there any investigation into

John Francis Myklusch                                    11/03/2006

Page 109

1                        JOHN MYKLUSCH

11:54:51  2    whether any other arrangements existed?

11:54:54  3           A       I had discussion with counsel at

11:54:55  4    the time these interrogatories were produced,

11:54:59  5    we discussed whether there were any others and

11:55:01  6    they said no.

11:55:07  7           Q       Interrogatory number 11,

11:55:08  8    identify every legal, court, administrative,

11:55:10  9    regulatory or quasi- judicial proceeding in

11:55:13 10    which you in any way have been involved within

11:55:14 11    the last 10 years, including but not limited to

11:55:17 12    as a party litigant, indemnitor or witness.

11:55:20 13               And their response lists in re:

11:55:22 14    Turkcell, I can't pronounce that securities

11:55:26 15    litigation.

11:55:28 16               What was done to respond to this

11:55:29 17    request, this is this interrogatory, excuse me?

11:55:32 18           A       I believe counsel spoke to Chuck

11:55:37 19    Sweeney and probably did a search on the name,

11:55:40 20    but I'm not aware of the full extent of the

11:55:42 21    process that went into responding to number 11.

11:55:45 22           Q       Are you aware of any other

11:55:46 23    proceedings in which BPI or any of its

11:55:48 24    representatives was involved?

11:55:49 25           A       I am not aware of any others.

Page 110

1                        JOHN MYKLUSCH

11:55:53  2        Q       So, no proceedings in which BPI

11:55:54  3    was involved as a litigant?

11:55:56  4        A       I am aware of no other

11:55:57  5    proceedings in which BPI was a litigant.

11:56:00  6        Q       Or an indemnitor?

11:56:04  7                MR. CERA:  Objection to the form.

11:56:04  8        A       None to my knowledge.

11:56:05  9        Q       Or a witness?

11:56:08 10        A       Not to my knowledge.

11:56:12 11        Q       Are there any ongoing efforts to

11:56:14 12    continue to respond to these interrogatories or

11:56:16 13    supplement the responses?

11:56:21 14                MR. CERA:  I object to form.

11:56:24 15        A       I am relatively certain that to

11:56:26 16    the extent any other information was required

11:56:29 17    to be provided under these interrogatories,

11:56:31 18    counsel would bring that matter to my

11:56:33 19    attention.

11:56:36 20        Q       Are there any ongoing efforts to

11:56:37 21    respond to these interrogatories?

11:56:41 22                MR. CERA:  Objection to the form.

11:56:41 23        A       Other than our discussions with

11:56:42 24    counsel, I would say no.

11:56:57 25                MS. COFFEY:  Can we go off the

Page 111

1                          JOHN MYKLUSCH

11:56:59  2        record.

11:57:12  3                  (At this point in the proceedings

11:57:12  4        there was a luncheon recess, after which

11:57:12  5        the deposition continued as follows:)

12:35:18  6                  MR. CERA:  Before we begin, I

12:35:19  7        wanted to say that we have considered

12:35:20  8        your request that you be allowed to

12:35:22  9        inquire into the communications with

12:35:23 10        Mr. Kileen and you may go ahead and do

12:35:27 11        so.

12:35:28 12                  MS. COFFEY:  Okay, thank you.

12:35:30 13            Q       Mr. Myklusch, welcome back, I

12:35:32 14        hope you had a good break.

12:35:35 15                  Let's return to that now, the

12:35:38 16        issue of your conversations with Michael Kileen

12:35:40 17        who was counsel for CI Mutual Funds regarding

12:35:43 18        this litigation.

12:35:46 19                  What was the substance of your

12:35:48 20        conversations with Mr. Kileen?

12:35:50 21            A       We had discussions regarding the

12:35:51 22        broad strokes of the Sonus suit.

12:35:59 23            Q       How many discussions occurred?

12:36:01 24            A       I think we had two discussions

12:36:02 25        regarding Sonus.

John Francis Myklusch                    11/03/2006

Page 112

1                    JOHN MYKLUSCH

12:36:04  2        Q        Who initiated those discussions?

12:36:05  3        A        I did in both instances.

12:36:07  4        Q        Why did you initiate those

12:36:09  5   discussions.

12:36:09  6        A        In the first instance it was

12:36:12  7   when I had, I would say, picked up where Chuck

12:36:17  8   left off with regard to Sonus, just his general

12:36:21  9   knowledge of the case and just broad strokes

12:36:23 10   about the Sonus case, and the second was in the

12:36:28 11   case of when we were required to provide

12:36:31 12   documents, I solicited Mike Kileen's help with

12:36:35 13   the delivery of documents that were requested.

12:36:41 14        Q        Why did you, regarding you

12:36:43 15   picking up where Mr. Sweeney left off, why did

12:36:45 16   you speak to Mr. Kileen instead of Mr. Sweeney

12:36:47 17   at that time?

12:36:50 18                 MR. CERA:  I object to the form.

12:36:53 19        A        CI had owned a very large stake

12:36:55 20   in BPI, would have been involved in the matter

12:36:58 21   in some form or fashion, and I wanted to

12:37:02 22   understand that he did know about the case and

12:37:05 23   what he knew about the case, just very general

12:37:11 24   what's out there.

12:37:16 25        Q        Do you remember specifically

John Francis Myklusch                          11/03/2006

Page 137

1                          JOHN MYKLUSCH

13:08:04  2          Q      Do any agreements exist between

13:08:07  3    any of the BPI entities and CI Mutual Funds to

13:08:10  4    the extent there is a recovery in this case?

13:08:14  5          A      Any recoveries in this case

13:08:17  6    would be allocated to the clients themselves,

13:08:18  7    not to CI as an entity.

13:08:22  8                 So there are no formal

13:08:24  9    agreements, but I think it would be against our

13:08:29 10    fiduciary duty to pay any kind of recoveries in

13:08:32 11    any other fashion than would benefit the

13:08:35 12    clients that were injured during the class

13:08:36 13    period.

13:08:38 14          Q      So, there are no formal

13:08:39 15    agreements regarding the payment of the

13:08:40 16    recovery?

13:08:41 17          A      There are no formal agreements.

13:08:50 18          Q      Moving to request number 5 on

13:08:51 19    Page 5, documents concerning Plaintiff's prior

13:08:54 20    involvement with legal or regulatory proceeding

13:08:56 21    involving the federal securities laws.

13:08:58 22                 What steps were taken to respond

13:08:59 23    to this request?

13:09:03 24          A      Counsel was the individuals

13:09:07 25    involved with fulfilling this request.

Page 205

```
              1              JOHN MYKLUSCH
14:46:31      2         Q      (Continuing) --  whether you
14:46:32      3    have any personal knowledge of any of the
14:46:34      4    allegations in the Complaint?
14:46:38      5         A      If your question is asking me
14:46:40      6    whether I am aware of the specific allegations
14:46:43      7    or any of the specific specifics of the case in
14:46:50      8    that layer of detail, then the answer is no.
14:46:56      9         Q      Do you know who Peter Hemming
14:46:58     10    is?
14:46:59     11         A      I believe Peter Hemming is the
14:47:00     12    Comptroller of Sonus.
14:47:06     13                Or was the Comptroller, I'm
14:47:08     14    relatively sure he's not today.
14:47:13     15         Q      Do you have any personal
14:47:14     16    knowledge of any of the allegations that are
14:47:16     17    made against Mr. Hemming?
14:47:19     18         A      I do not.
14:47:57     19         Q      Who is the individual at BPI or
14:48:06     20    Trilogy who has primary oversight
14:48:09     21    responsibility for this litigation?
14:48:17     22         A      How would you define oversight?
14:48:21     23         Q      What do you understand by that
14:48:22     24    term?
14:48:24     25         A      If you mean the ability to make
```

John Francis Myklusch                                    11/03/2006

Page 206

1                        JOHN MYKLUSCH

14:48:26  2    decisions on a going forward basis, would that

14:48:30  3    be a fair -- so if something were to come about

14:48:33  4    that required a decision by BPI or Trilogy that

14:48:38  5    this person would have that ability, is that --

14:48:41  6         Q     I will take that.

14:48:42  7         A     I would say the two individuals

14:48:44  8    that I report to, both Carol Holley and Ryan

14:48:47  9    Burrow, would be the people that I would look

14:48:50 10    to inform, in conjunction with counsel, what

14:48:56 11    our potential decisions are and then depending

14:48:59 12    on what they felt, they could then make that

14:49:04 13    decision.

14:49:05 14         Q     Do you have any understanding as

14:49:06 15    to how much time either of those individuals

14:49:08 16    have spent providing such oversight for this

14:49:10 17    litigation?

14:49:12 18              MR. CERA:  I object to form.

14:49:19 19         A     No, I don't know offhand.

14:49:33 20         Q     Do you understand that either

14:49:34 21    you or those individuals have such

14:49:40 22    responsibility to oversee the conduct of lead

14:49:43 23    Plaintiff counsel?

14:49:44 24         A     Yes, we understand that we need

14:49:48 25    to watch over the case to make sure the case is

John Francis Myklusch                                    11/03/2006

Page 207

1                        JOHN MYKLUSCH

14:49:50  2   progressing in a reasonable manner, to stay

14:49:54  3   involved.

14:49:56  4        Q      You mentioned the May 2006 order

14:49:58  5   of the court previously, do you remember that?

14:50:01  6        A      Yes.

14:50:07  7        Q      Are you aware that the Section

14:50:12  8   10(a) and 10(b)(5) claims against my client

14:50:17  9   were dismissed?

14:50:18 10        A      I do -- I was made aware by

14:50:21 11   counsel that several claims for both Mr. Amed

14:50:27 12   and Mr. Nill were not upheld by the judge, but

14:50:33 13   that it's my recollection that several of the

14:50:37 14   issues were allowed to proceed.

14:50:39 15             MR. CERA:  Can I hear the answer

14:50:41 16        back, I just didn't hear.

14:50:42 17             (The answer requested was read back

14:50:42 18        by the reporter.)

.4:51:07 19        Q      Which claims are you aware that

.4:51:10 20   survived the motion to dismiss?

.4:51:12 21        A      I am not aware of which claims

.4:51:17 22   were allowed to survive.

.4:51:20 23        Q      Is there anyone within either

.4:51:23 24   Trilogy or BPI that would be aware of the

.4:51:27 25   status of the case vis-a-vis what claims have

John Francis Myklusch                                      11/03/2006

Page 208

1                          JOHN MYKLUSCH

14:51:30  2    been upheld and what claims have been

14:51:31  3    dismissed?

14:51:32  4         A      We rely on counsel to keep us

14:51:34  5    apprised and to tell us what we need to know in

14:51:40  6    relation to the case, to provide us with an

14:51:43  7    appropriate QA, both, we can ask counsel where

14:51:55  8    the case is proceeding.

14:52:25  9         Q      Are you aware of how BPI Global

14:52:37 10    came to engage the Gold Bennett firm?

14:52:42 11         MR. CERA:  That was asked and

14:52:43 12         answered previously.  You can go ahead

14:52:44 13         and answer.

14:52:45 14         MR. MATULE:  It was some time

14:52:46 15         ago.  I ask your indulgence.

14:52:48 16         A      I was not affiliated with BPI at

14:52:50 17    the time, so I do not know the exact procedures

14:52:52 18    that we went through to engage counsel.

14:52:57 19         Q      Have you since come to know?

14:53:00 20         A      I, upon taking over my portion

14:53:05 21    of the case, taking over the responsibility to

14:53:09 22    keep the members of Trilogy informed and

14:53:12 23    follow-up on the case, did have a discussion

14:53:16 24    with counsel about themselves, their

14:53:20 25    qualifications and the case as it stood so far.

John Francis Myklusch                           11/03/2006

Page 209

1                    JOHN MYKLUSCH

14:53:30  2          MR. MATULE:  Can you read that

14:53:31  3      answer back.

14:53:32  4               (The answer requested was read back

14:53:32  5      by the reporter.)

14:53:54  6      **Q      Not wanting to get into the**

14:53:56  7   **conversations that you had with counsel, have**

14:54:03  8   **you since you became or have taken on the**

14:54:07  9   **duties that you have taken on in connection**

14:54:08 10   **with this case, either in conversations with**

14:54:13 11   **Mr. Sweeney or Mr. Kileen, come to any**

14:54:16 12   **understanding as to how the Gold Bennett firm**

14:54:21 13   **became counsel for BPI?**

14:54:24 14      A      I have not discussed the matter

14:54:25 15   with either of them.

14:54:34 16               I'm sorry, I have not discussed

14:54:36 17   that question with either of them.

14:54:50 18      **Q      To your knowledge, is BPI**

14:54:53 19   **responsible for the payment of any costs in**

14:54:55 20   **connection with the litigation?**

14:54:59 21      A      Per -- it's my understanding

14:55:01 22   that per our letter agreement with counsel BPI

14:55:04 23   is not responsible for those costs.

14:55:30 24      **Q      I will ask you to dig out from**

14:55:32 25   **in front of you Exhibit 5 which is the initial**

John Francis Myklusch                          11/03/2006

Page 210

1                          JOHN MYKLUSCH

14:55:36  2    disclosures.   I direct your attention to

14:55:54  3    subpart B.

14:56:02  4                     In (v) there is a reference to

14:56:05  5    SEC interview transcript.  Have you ever seen

14:56:10  6    such a document?

14:56:11  7          A      No, I have not.

14:56:31  8          Q      Did you review this document

14:56:32  9    prior to it being signed and submitted by

14:56:34 10    counsel for lead Plaintiff?

14:56:36 11          A      I had not seen this document.

14:56:41 12          Q      Do you know if anyone from lead

14:56:43 13    Plaintiff reviewed this document prior to it

14:56:45 14    being submitted by lead Plaintiff's counsel?

14:56:47 15          A      I don't know.

14:56:51 16          Q      If not yourself, would either of

14:56:55 17    the two other individuals that you mentioned --

14:56:58 18          A      Carol Holley or Ryan Burrow.

14:57:04 19          Q      (Continuing) --  have reviewed

14:57:05 20    the document?

14:57:05 21          A      No, they would not have, they

14:57:06 22    would not have reviewed it first.  By first, I

14:57:23 23    mean before me.

14:57:44 24          Q      Do you know who Michael Peruse

14:57:46 25    is?