UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


IN RE SONUS NETWORKS, INC.           )    Civil Action No. 04-10294-DPW
LITIGATION                           )    (Lead Case)
                                     )
———————————————————                  )
                                     )
                                     )
                                     )
THIS DOCUMENT RELATES TO:            )
ALL CASES                            )
                                     )
                                     )
                                     )
———————————————————                  )


### LEAD PLAINTIFF'S REPLY MEMORANDUM IN
### SUPPORT OF MOTION FOR CLASS CERTIFICATION


GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: ( 415) 777-2230
Facsimile: (415) 777-5189

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#116339

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND OF BPI GLOBAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  BPI Global Has Standing To Litigate On Behalf Of The Class . . . . . . . . . . . . . . 5

        1.  Principles Of Prudential Standing Confirm That BPI Global Is A Proper Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.  Defendants' Standing Argument Ignores Recent First Circuit Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.  BPI Global Had Full Discretion And Was A Purchaser Of Sonus Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.  The Court Has Previously Considered And Rejected The Standing Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.  BPI Global Suffered Direct Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    C.  BPI Global Has Fulfilled All Discovery Obligations . . . . . . . . . . . . . . . . . . . . 20

    D.  BPI Global Is Fully Engaged In The Litigation . . . . . . . . . . . . . . . . . . . . . . . 23

        1.  Active Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        2.  Initiation Of Case And Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . 28

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adair v. Sorenson*
   134 F.R.D. 13 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Alfaro v. Caprock Communications Corp.*
   2000 U.S. Dist. LEXIS 21743 (N.D. Tex. Dec. 11, 2000) . . . . . . . . . . . . . . . . . . . . 10, 12

*Baena v. KPMG LLP*
   453 F.3d 1 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10, 12

*Benjamin v. Aroostook Medical Center, Inc.*
   57 F.3d 101 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blue Chip Stamps v. Manor Drug Stores*
   421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Casden v. HPL Technologies, Inc.*
   2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) . . . . . . . . . . . . . . . . . . . . . 10

*Elk Grove Unified School Dist. v. Newdow*
   542 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Feder v. Elec. Data Sys. Corp.*
   429 F.3d 125 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Fulco v. Continental Cablevision, Inc.*
   1990 WL 120688 (D. Mass. June 19, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Grace v. Perception Tech. Corp.*
   128 F.R.D. 165 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Herpich v. Wallace*
   430 F.2d 792 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holmes v. Securities Investor Protection Corp.*
   503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*In re Carbon Black Antitrust Litig.*
 2005 WL 102966 (D. Mass. Jan. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Cavanaugh*
 306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Cendant Corp. Litig.*
 264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Goodyear Tire & Rubber Co. Sec. Litig.*
 2004 WL 3314943 (N.D. Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*In re Interneuron Pharm. Litig.*
 188 F.R.D. 3 (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Molson Coors Brewing Co. Sec. Litig.*
 233 F.R.D. 147 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*In re Rent-Way Sec. Litig.*
 218 F.R.D. 101 (W.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 18

*In re Transkaryotic Therapies, Inc. Sec. Litig.*
 2005 WL 3178162 (D. Mass. Nov. 28, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Turkcell Iletism Hizmeler, A.S. Sec. Litig.*
 209 F.R.D. 353 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Tyco Int'l, Ltd.*
 236 F.R.D. 62 (D.N.H. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Indemnified Capital Investments, S.A. v. R.J. O'Brien & Assoc., Inc.*
 12 F.3d 1406 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kaplan v. Gelfond*
 2007 WL 162488 (S.D.N.Y. Jan 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lemanik, S.A. v. McKinley Allsopp, Inc.*
 125 F.R.D. 602 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Monetary Mgmt. Group of St. Louis, Inc. v. Kidder, Peabody, & Co., Inc.*
    604 F.Supp. 764 (E.D. Mo. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Montoya v. Herley Industries, Inc.*
    2006 WL 3337485 (E.D. Pa. Nov. 14, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Morlock v. Shepherd*
    1999 U.S. Dist. LEXIS 19402 (N.D. Ill. Dec. 16, 1999) . . . . . . . . . . . . . . . . . . . . . . . 16

*Newman v. Eagle Building Technologies*
    209 F.R.D. 499 (S.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nisselson v. Lernout*
    469 F.3d 143 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11, 12

*Odette v. Shearson, Hammill & Co.*
    394 F.Supp. 946 (S.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Olsen v. New York Community Bancorp, Inc.*
    233 F.R.D. 101 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Pershing Park Villas Homeowners Assn. v. United Pacific Ins.Co.*
    219 F.3d 895 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Priest v. Zayre Corp.*
    118 F.R.D. 552 (D. Mass. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Raftery v. Mercury Finance Co.*
    1997 WL 529553 (N.D. Ill. Aug. 15, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Surowitz v. Hilton Hotels Corp.*
    383 U.S. 363 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Swack v. Credit Suisse First Boston*
    230 F.R.D. 250 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*The Ezra Charitable Trust v. Rent-Way, Inc.*
    136 F.Supp.2d 435  (W.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*United States v. Taylor*
    166 F.R.D. 356 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996) . . . . . . . . . 20

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*
    216 F.R.D. 248 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13


**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §78u-4(a)(3)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. §78u-4(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

15 U.S.C. §78u-4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Civil Procedure

    Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 26, 29, 30

    Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    Rule 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27

    Rule 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Rule 45(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Securities Exchange Act of 1934

    Section 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12, 18

## I.    __INTRODUCTION__

In substance, Defendants' opposition to class certification is little more than a motion for reconsideration of this Court's August 2004 Lead Plaintiff decision.[1]  The same issues now raised by Defendants -- an investment advisor's standing and the scope of its discretion to purchase the securities at issue -- were at the heart of the Lead Plaintiff dispute and were vigorously argued.  Two hearings were conducted on June 28, 2004 and August 10, 2004. Presaging the current state of affairs, the Court pointedly asked the Defendants at the June hearing, "Is there going to be an issue about this?"  Defendants declined to answer, claiming they were barred from participating, even though the Court questioned Defendants' refusal: "Even if the Judge asks you?"  After considering the same standing arguments that are made in Defendants' opposition to this motion, and reviewing the exact same investment advisory agreement now relied on by Defendants, the Court concluded that BPI Global Asset Management LLP was an appropriate Lead Plaintiff, preliminarily finding that it would be an adequate and typical class representative under Rule 23, Fed.R.Civ.P. and 15 U.S.C. §78u-4(a)(3)(B)(iii). Defendants' extensive discovery has uncovered nothing which suggests that this conclusion should be disturbed.  The Lead Plaintiff should be certified as the Class and Subclass representative, and its counsel appointed as class counsel.

In an attempt to conjure an issue to avoid class certification, Defendants take great liberties with the factual record.  Contrary to Defendants' suggestion, the Lead Plaintiff continues to exist as a viable entity for purposes of litigating the claims herein at issue.  A Lead Plaintiff

---

[1]  "Defendants" refers collectively to Sonus Networks, Inc., Hassan M. Ahmed, and Stephen J. Nill.

appointment does not constitute a straightjacket suppressing that entity's ongoing business activities. Consistent with that reality, in the almost three (3) years since the Court appointed the Lead Plaintiff, it has been party to certain corporate transactions, unrelated to this litigation, whereby it was converted to an LLC, and merged into Trilogy Global Advisors, LLC, a sophisticated investment advisory firm headquartered in New York City. These transactions permit BPI Global[2] to continue to prosecute the claims herein in its own name. Similarly, certain of the underlying mutual funds to which Lead Plaintiff rendered investment advice have undergone name changes, but remain the ultimate beneficiaries of any recovery in this litigation. As was the case at the time of the Lead Plaintiff order, the entity which controls these mutual funds (CI Investments Inc., formerly known as CI Mutual Funds Inc.) has reiterated its involvement in and support for this litigation.

The remaining arguments offered by Defendants are meritless. They claim that BPI Global has exercised "no control" over counsel and lacks adequate knowledge of the litigation. To the contrary, BPI Global has actively participated in all relevant aspects of the litigation, and its representatives are keenly aware of and knowledgeable regarding the issues and proceedings. This is more than is required of a class representative. Indeed, the course of the proceedings to date strongly supports the conclusion that BPI Global is an adequate class representative. Lead Plaintiff has withstood Defendants' motions to dismiss, a high hurdle under the exacting standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b). All Defendants are facing claims for violating the federal securities laws. Representatives

---

[2] Unless otherwise stated, as hereinafter used, "BPI Global" refers to BPI Global Asset Management LLC.

of BPI Global have cooperated fully in class discovery issues, assisting counsel in identifying and

producing more than 15,000 pages of documents, answering detailed interrogatories, and sitting

for three depositions in New York City, Orlando, Florida, and Kansas City, Missouri. BPI

Global has also aggressively pursued merits discovery within the bounds of the parties'

agreement as reflected in the Joint Statement Pursuant to Local Rule 16.1(D), approved by the

Court at the July 13, 2006 Status Conference. This has included propounding detailed Rule 34

document requests to the Defendants, issuing thirty-one (31) document production subpoenas to

relevant third parties pursuant to Rule 45(a), and organizing and analyzing the productions

received to date.

Plainly, the Class and Subclass are being well served by the active and zealous

representation of the Lead Plaintiff. Accordingly, the motion for class certification should be

granted.

## II.    BACKGROUND OF BPI GLOBAL

Defendants base much of their opposition to class certification on numerous inaccurate,

incomplete, and unsupported factual assertions regarding the status of BPI Global. At the time

BPI Global moved for Lead Plaintiff in these actions in 2004, it was a limited liability

partnership operating as an investment advisory firm. Declaration of John F. Myklusch

("Myklusch Decl."), filed herewith, ¶4 and Ex. C. On May 31, 2005, the partners of this entity

combined their interests with holders of interests in Trilogy Advisors, LLC, in exchange for

interests in Trilogy Global Advisors, LLC ("Trilogy Global"). Ex. A to the Declaration of

Pamela A. Markert ("Markert Decl."), filed herewith, at 11-12 and errata letter dated January 18,

2007. That same day, BPI Global Asset Management LLP was converted to a limited liability

company called BPI Global Asset Management LLC. Myklusch Decl., ¶4, Ex. C. Pursuant to

this transaction, Trilogy Global was the sole member of BPI Global Asset Management LLC.

*Id.*, ¶7, Ex. F.

On March 31, 2006, BPI Global and Trilogy Global merged. Myklusch Decl. ¶6 and Ex.

E. The Agreement and Plan of Merger between BPI Global and Trilogy Global of March 31,

2006 specifically provides that "[a]ny claim existing or action or proceeding, whether civil,

criminal or administrative, pending by or against any of the Non-Surviving LLC [BPI Global]

may be prosecuted to judgment or decree as if the Merger had not taken place . . ." Myklusch

Decl. ¶7 and Ex. F; *see also* Ex. A to the Markert Decl. at 52:19-24. Under this agreement, it is

plainly appropriate for BPI Global to continue litigating this matter and for the Court to certify

BPI Global as the class representative.

These merger transactions have not in any way detracted from BPI Global's commitment

to this litigation. Indeed, many of the employees that worked for BPI Global now work for

Trilogy Global, including former BPI Global President Ryan Burrow, who is now a Managing

Director and sits on the board of Trilogy Global. Markert Decl. ¶¶2, 3 and Ex. A at 13:5-7. Mr.

Burrow was involved in the initial decision on behalf of BPI Global to file suit and continues to

be involved in the oversight of this litigation. Ex. C to the Markert Decl. at 35:17-25; Ex. A to

the Markert Decl. at 205:19-206:13.

Five of the funds to which Lead Plaintiff provided investment advisory services at the

time of the Lead Plaintiff motion and that purchased Sonus shares during the Class Period,[3] are

---

[3]/     The Class Period is March 28, 2002 through March 26, 2004.

currently managed by Trilogy Global, albeit under new names. This includes the two funds that sustained the largest losses in Sonus purchases, BPI American Equity Fund and BPI Global Equity Fund. Declaration of Michael J. Killeen ("Killeen Decl."), filed herewith, ¶2.[4] In total, Trilogy Global presently manages approximately $5 billion for CI Investments Inc., the controlling entity of these mutual funds which sustained losses in Sonus. Killeen Decl. ¶3.

In sum, while there have been corporate transactions involving the Lead Plaintiff since its appointment, that entity continues to exist (as an LLC rather than an LLP) for purposes of prosecuting the claims at issue here. Moreover, the mutual funds for which Lead Plaintiff provided investment advisory services and which sustained the largest losses during the Class Period also continue to exist and support the litigation. Significantly, these funds presently receive their investment advisory services from Trilogy Global, whose principals are ultimately responsible for the conduct of this litigation. Killeen Decl. ¶3; Ex. A to the Markert Decl. at 205:19-206:13. Thus, despite much hot air from Defendants, nothing about the transactions involving BPI Global are a legal impediment to its certification as a class representative.

## III.    **ARGUMENT**

### A.    **BPI Global Has Standing To Litigate On Behalf Of The Class**

During the Class Period, twenty-one (21) of the funds for which BPI Global served as an investment advisor or sub-advisor purchased Sonus stock. Ex. G to the Markert Decl. at 2-5.

---

[4]    These funds are now operated under the names CI American Equity Fund and CI Global Fund, respectively. Killeen Decl. ¶2. The BPI American Equity Sector Fund, BPI Global Equity Sector Fund, and Optima Strategy US Diversified Pool are also presently managed by Trilogy Global under the names CI American Equity Corporate Class, CI Global Corporate Class, and US Equity Diversified Pool, respectively. *Id.*

Combined, these funds purchased 2,220,700 Sonus shares during the Class Period, and suffered a

loss of more than $5.3 million. *Id.* Nineteen of these funds purchased a total of 1,750,000

shares, a full ten percent of the 17,000,000 newly issued Sonus shares pursuant to the Prospectus

Supplement for the offering of Sonus shares in September 2003. *Id.*

### 1.    Principles Of Prudential Standing Confirm That BPI Global Is A Proper Plaintiff

The Defendants' arguments focus largely on the issue of standing and, more specifically,

whether BPI Global is the proper party to bring claims based on its purchases of Sonus stock.

The Supreme Court describes the standing inquiry as follows:

> In every federal case, the party bringing the suit must establish
> standing to prosecute the action. "In essence the question of
> standing is whether the litigant is entitled to have the court decide
> the merits of the dispute or of particular issues." *Warth v. Seldin*,
> 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The
> standing requirement is born partly of "'an idea, which is more
> than an intuition but less than a rigorous and explicit theory, about
> the constitutional and prudential limits to the powers of an
> unelected, unrepresentative judiciary in our kind of government.'"
> *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d
> 556 (1984) (quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166,
> 1178-1179 (C.A.D.C.1982) (Bork, J., concurring)).
>
> * * *
>
> **. . . our standing jurisprudence contains two strands: Article
> III standing, which enforces the Constitution's
> case-or-controversy requirement,** *see Lujan v. Defenders of
> Wildlife*, 504 U.S. 555, 559-562, 112 S.Ct. 2130, 119 L.Ed.2d 351
> (1992); **and prudential standing, which embodies "judicially
> self-imposed limits on the exercise of federal jurisdiction,"**
> *Allen*, 468 U.S., at 751, 104 S.Ct. 3315.

*Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (emphasis added).

The distinction between the Constitutional requirements and prudential requirements is

important. The Defendants are essentially arguing that BPI Global's clients (and not BPI Global itself) are the proper parties to litigate the claims because BPI Global sustained no injury-in-fact. However, whether a plaintiff is seeking to litigate claims that belong to a third-party is a question of **prudential** standing, and does not implicate the Constitutional "case or controversy" requirement.

Here, there can be no question that this litigation presents a "case or controversy" which is properly a subject of the Court's jurisdiction. The securities law claims fall exclusively within this Court's jurisdiction. A class of investors has alleged it was damaged based on purchases of securities on a national securities exchange where the stock price was artificially inflated by Defendants' false and misleading statements. These losses unquestionably present a justiciable "case or controversy."

### 2. Defendants' Standing Argument Ignores Recent First Circuit Authority

In arguing that BPI Global lacks standing under Article III of the Constitution, the Defendants wholly disregard the First Circuit's recent decisions in *Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006) and *Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2006). Both *Baena* and *Nisselson* explain that the requirements of Article III relate to whether there was an injury traceable to the defendant's conduct and that the injury can be redressed by the Court. *Baena*, 453 F.3d at 4; *Nisselson*, 469 F.3d at 150. The question of **who** is the appropriate party to seek relief for that injury is a matter of prudential standing, **not** Article III standing. *Baena*, 453 F.3d at 4; *Nisselson*, 469 F.3d at 151.

*Baena*, 453 F.3d 1, emanated from the demise of Lernout & Hauspie Speech Products,

N.V. ("Lernout & Hauspie"). Once the massive accounting fraud at the company came to light,

Lernout & Hauspie filed for bankruptcy protection and a litigation trustee was appointed to

prosecute claims on the company's behalf. The trustee's claims against KPMG LLP and its

affiliates were dismissed by the District Court, and the trustee appealed. Before the First Circuit,

KPMG argued that the trustee lacked standing under Article III. That argument was rejected, as

explained by Chief Judge Boudin:

> A common formulation of Article III standing is that the plaintiff must allege injury, fairly traceable to the defendant's conduct, that a court can redress. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 384-85 (1st Cir. 2000), *cert. denied*, 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001). The statement's simplicity is deceiving; the requirements present endless complexities. *See* Chemerinsky, *Federal Jurisdiction* §2.3, at 56-113 (4th ed. 2003).
>
> In its appellate brief, KPMG argues principally that the trustee in this case is seeking redress for an injury to the creditors, that the creditors must present their own claims directly by suing as plaintiffs themselves, and that therefore this is a classic case of a plaintiff (the trustee) who is wrongly seeking to assert the claims of others (the creditors) who are not parties to this case. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 509-10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
>
> Courts often do use the term "standing" for cases in this category, but -- illustrating one of the complexities -- they normally say that the question of **who may assert an otherwise proper claim is an issue of "prudential," rather than Article III, standing.** *Valley Forge*, 454 U.S. at 474-75, 102 S.Ct. 752; Chemerinsky, *supra* §2.3.4, at 83. After all, courts can be empowered to hear claims of injury to others; trustees, parents and guardians make such claims all the time. . . .

*Baena,* 453 F.3d at 4-5 (emphasis added) (italics in original).

The opinion in *Nisselson*, 469 F.3d 143, issued in November 2006, also relates to the collapse of Lernout & Hauspie.  That case involved the trustee's claims against Lernout & Hauspie officers, directors, and others for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78j(b), and other laws.  On appeal, the First Circuit reiterated the principles set forth in *Baena,* concluding that the requirements of Article III were met:

> The constitutional prerequisites for Article III standing are satisfied so long as a plaintiff colorably alleges an actual injury that is both traceable to the defendant's conduct and redressable by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Ramirez v. Sanchez Ramos,* 438 F.3d 92, 97 (1st Cir. 2006).
>
> In this case, those prerequisites have been fulfilled.  For purposes of their motions to dismiss, the defendants wisely chose not to contest the trustee's assertion that the conduct attributed to them resulted in a redressable injury; instead, they posit that the trustee is seeking to prosecute claims that, although cognizable in a federal court, belong exclusively to [the company's] former shareholders. **The determination of who may maintain an otherwise cognizable claim turns on a question of prudential standing, not one of Article III standing.**  *See Baena*, 453 F.3d at 5; *see also Ramirez*, 438 F.3d at 98.

*Nisselson*, 469 F.3d at 150-51 (emphasis added).[5]

BPI Global can maintain this action because it made the discretionary investments which resulted in losses.  As such, it was the "purchaser" within the meaning of Section 10(b) of the 1934 Act.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975); *see also The Ezra*

---

[5]    Even prior to *Baena* and *Nisselson*, the First Circuit recognized that the requirements of Article III focus on the existence of a claim, while prudential standards govern who may litigate that claim.  *See, e.g., Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104-05 (1st Cir. 1995).

*Charitable Trust v. Rent-Way, Inc.*, 136 F.Supp.2d 435, 442 (W.D. Pa. 2001) (finding that

investment advisor has a "significant" interest in recovering its clients' losses "to maintain their

goodwill and future business," therefore giving it an incentive "to vigorously litigate" the

action).[6]

The Defendants' arguments regarding Article III standing are exceedingly thin as

illustrated by the many cases in which investment advisors have been appointed to litigate

securities claims on behalf of injured investors.  *See, e.g., Alfaro v. Caprock Communications*

*Corp.*, 2000 U.S. Dist. LEXIS 21743, at *7 (N.D. Tex. Dec. 11, 2000); *Rent-Way*, 136 F.Supp.2d

at 442; *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 109 (W.D. Pa. 2003); *Montoya v. Herley*

*Industries, Inc.*, 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006); *Olsen v. New York*

*Community Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005); *In re Molson Coors Brewing*

*Co. Sec. Litig.*, 233 F.R.D. 147, 152 (D. Del. 2005); *In re Goodyear Tire & Rubber Co. Sec.*

*Litig.*, 2004 WL 3314943, at *8 (N.D. Ohio 2004); *Weinberg v. Atlas Air Worldwide Holdings,*

*Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003); *Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist.

LEXIS 19606 (N.D. Cal. Sept. 29, 2003).  In none of these cases did the courts determine that

appointing an investment advisor would run afoul of Article III.

The primary authority on which Defendants rely -- *In re Tyco Int'l, Ltd.*, 236 F.R.D. 62

(D.N.H. 2006) -- is a District of New Hampshire decision that predates the First Circuit's *Baena*

---

[6]     In a footnote, the Defendants also cite *Indemnified Capital Investments, S.A. v. R.J. O'Brien*
*& Assoc., Inc.*, 12 F.3d 1406 (7th Cir. 1993), which involved the Commodities Exchange Act, not
the Securities Exchange Act.  There, the relevant statute expressly limited relief to "any person
**who sustains a loss**," which is narrower than Section 10(b)'s "purchaser or seller" requirement.
*Id.* 1409.

and *Nisselson* opinions.  To the extent the *Tyco* court applied some other test to determine standing, it conflicts with controlling First Circuit law and was wrongly decided.  *Tyco* is also distinguishable on its facts.  As the Defendants acknowledge, the asset manager in *Tyco* never purported to have standing in its own right.  The asset manager argued that its standing was merely derivative of its clients' standing.  Sonus Opp. at 7, citing *Tyco*, 236 F.R.D. at 72.  In contrast, BPI Global has always asserted that it has standing in its own right based on its "purchaser" status.[7]

Affirming BPI Global's role as the representative of the Class and Subclass fully comports with the requirements of Article III of the Constitution.  This Court has previously upheld securities law claims against each of the Defendants.  *See* May 10, 2006 Memorandum and Order (addressing the Defendants' motions to dismiss) (Dkt. No. 149).  Thus, BPI Global has "colorably allege[d] an actual injury that is both traceable to the defendant's conduct and redressable by a favorable decision."  *Nisselson*, 469 F.3d at 150.  BPI Global is the "purchaser" within the ambit of Section 10(b).  The Article III standing requirement is satisfied.[8]

//

//

---

[7]    The asset manager in *Tyco* was one of six plaintiffs jointly seeking appointment as class representatives.  The Court's decision to exclude the asset manager had little consequence because the other plaintiffs were able to continue the class litigation.  Here, BPI Global is the sole Lead Plaintiff moving for class certification.

[8]    Assuming *arguendo* that direct harm to BPI Global's own pecuniary interests is required, the Defendants have taken an impermissibly narrow view of the law.  *E.g., Herpich v. Wallace*, 430 F.2d 792, 806 (5th Cir. 1970) (describing the "invasion of their . . . federally protected interest to engage in securities transactions while free from the effects of deceptive or unfair practices in connection therewith" as a harm that Section 10(b) seeks to remedy).

### 3.    BPI Global Had Full Discretion And Was A Purchaser Of Sonus Stock

As the First Circuit confirmed in *Baena* and *Nisselson*, **who** can litigate a claim is a matter of prudential standing. *Baena,* 453 F.3d at 4; *Nisselson,* 469 F.3d at 150. For securities violations such as those here, the issue is well settled: the **purchaser or seller** of the stock (in this case, BPI Global) is the appropriate party.

This lawsuit states claims under Section 10(b) of the 1934 Act, and other federal securities laws. Section 10(b) makes it unlawful to use any manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. 15 U.S.C. §78j(b). Because the wrongdoing must relate to a purchase or sale, the Supreme Court adopted a prudential standing requirement which permits only purchasers or sellers of stock to sue for violation of these statutes. *Blue Chip,* 421 U.S. at 736; *see also Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 285 (1992) (O'Connor, J., concurring in part and concurring in the judgment) (referring to the *Blue Chip Stamps* purchaser/seller requirement as a prudential standard).

Investment advisors such as BPI Global are "purchasers" of securities entitled to the protections of Section 10(b):

> [T]he rule in *Blue Chip Stamps* is not meant to exclude institutional investors and money managers, but rather should be interpreted broadly to include them as they are often the parties who make investment decisions. The very purpose of the Section 10(b) cause of action is to encourage full and fair disclosure by issuers in order to protect **decision-makers** in securities transactions.

*Alfaro,* 2000 U.S. Dist. LEXIS 21743, at *7 (emphasis in original) (appointing money manager

to litigate on behalf of a class).  Where, as here, an investment advisor has decision making authority regarding the transaction, it is the purchaser and it has standing to sue. *Rent-Way*, 136 F.Supp.2d at 442 (appointing investment advisor as Lead Plaintiff, noting that courts "have held that investment advisors with the delegated authority to make investment decisions for clients are purchasers under the securities laws"); *Rent-Way*, 218 F.R.D. at 109 (in granting class certification, district court observed "we continue to hold . . . that [the investment advisor] is a 'purchaser' under the PSLRA with proper standing to pursue this litigation on behalf of its individual clients"); *Montoya*, 2006 WL 3337485, at *2 (investment advisor with "authority to make decisions and act on their behalf" had "standing to sue in its own name"); *Olsen*, 233 F.R.D. at 108 (investment advisor with complete investment authority has standing); *In re Molson Coors*, 233 F.R.D. at 152 (investment advisor with "authority to make decisions and act on [the clients'] behalf" has standing); *In re Goodyear Tire*, 2004 WL 3314943 ("Capital Invest possesses standing to assert securities fraud claims on behalf of the clients for whom it purchases and sells securities"); *Weinberg*, 216 F.R.D. at 255  (investment advisor "with unrestricted decision making authority" is "considered the 'purchaser' under the federal securities laws with standing to sue in its own name").[9]

BPI Global exercised full discretion as to the purchase and sale of Sonus securities.  Ex.

---

[9]    *See also Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 607 (S.D.N.Y. 1989) ("Lemanik is a 'purchaser' within the meaning of §12(2) and Rule 10b-5 and as such is entitled, as a matter of law, to bring this action in its own name, whether it was acting for its own account or that of its clients."); *Monetary Mgmt. Group of St. Louis, Inc. v. Kidder, Peabody, & Co., Inc.*, 604 F.Supp. 764, 767 (E.D. Mo. 1985); *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 959 (S.D.N.Y. 1975) ("a broker who purchases or sells as agent for his customer satisfies the purchaser-seller requirement").

B to the Markert Decl. at 63:1-4, 73:3-14; Ex. C to the Markert Decl. at 51:3-24. This is sufficient to establish "purchaser" status. BPI Global employed portfolio managers who, among other duties, researched securities, determined what securities should be included or excluded in a portfolio, and executed buys and sells of securities. Ex. B to the Markert Decl. at 14:16-17:13. The full discretion to purchase securities was confirmed by portfolio manager John Bichelmeyer:

> Q:  When you reached a conclusion on a purchase of an equity for your portfolio did you have to obtain approval for the purchase from anyone?
>
> A:  No.
>
> Q:  Did you have to report your decision to purchase to anyone?
>
> A:  No.

Ex. B to the Markert Decl. at 17:18-25.

BPI Global's investment authority and discretion to purchase investments for seven of the of the twenty-one funds that lost money on Sonus shares, including the BPI American Equity Fund and BPI Global Equity Fund, where the largest losses were incurred, were governed by the Amended and Restated Investment Advisory Agreement dated May 31, 1999 between BPI Capital Management Corporation and BPI Global Asset Management LLP ("Agreement"). Ex. I to the Markert Decl. at Ex. A.[10] Schedule 1 of the Agreement sets forth a handful of restrictions that prohibited certain types of investments, such as the purchase of gold, real estate, and commodities. *Id.* at 17, 18. When asked whether these restrictions affected the nature of the investments for the portfolios, BPI Global portfolio manager John Bichelmeyer stated, "These

---

[10]  Defendants' entire argument is based on the theory that BPI Capital, not BPI Global, had the investment discretion. This is simply wrong, as the face of the Agreement confirms.

were very broad so it didn't impact my strategy much, and didn't give a lot of leeway as to what was allowed and what was not allowed, so my strategy was simple and straightforward, and never really to my knowledge cut across, or these impacted my ability to execute." Ex. B to the Markert Decl. at 66:10-15. According to Mr. Sweeney, BPI Global's Controller and Chief Compliance Officer, "during the entire history of this account [the funds governed by the Agreement], they [BPI Capital] have not come and said you should invest in this stock or you shouldn't invest in a particular name." Ex. C to the Markert Decl. at 54:5-8.

Mr. Bichelmeyer testified that the Agreement and other agreements for the funds that purchased Sonus shares were **"broad investment agreements"** and **"didn't really restrict from a portfolio manager's point of view anything that I could or could not do."** Ex. B to the Markert Decl. at 61:22-62:3 (emphasis added). When asked whether the language "instructions or approval of the Manager" found in paragraph 6 of the Agreement meant the manager [BPI Capital] had the right to issue instructions, Mr. Sweeney responded that the manager, as a two-thirds owner of BPI Global at the time, could instruct on a variety of topics, including the language contained in the agreement, but "as a practical matter BPI Global ran autonomously" and "they did not attempt or even unduly influence any decisions that were made by BPI Global." Ex. C to the Markert Decl. at 54:9-55:2.

There is no merit to Defendants' contention that investing objectives or guidelines stated in the Agreement preclude a finding of full discretion and "purchaser" status. This same argument was soundly rejected in *Rent-Way*:

> . . . the relevant agreements all require that Cramer's investment decisions comport with any written instructions and/or investment objectives issued by the client. . . . **we find them to be typical of**

> the broad parameters normally established by institutional
> clients operating within the bounds of their respective charters and
> bylaws. Generally speaking, these "restrictions" fall into one of
> several categories, *i.e.*, (a) those that broadly define the client's
> investment objectives or strategies; (b) those that establish basic
> parameters for asset allocation and diversification; (c) those that
> prohibit certain categories of investment vehicles deemed unduly
> risky by the client or which may violate fiduciary duties or
> applicable law; and (d) those prohibiting certain investment
> practices that the client deems socially irresponsible. These sort of
> general investment goals, guidelines and limitations do not
> undermine Cramer's "purchaser" status because, once again, **the
> key to our inquiry is the level of discretion exercised by
> Cramer in the day-to-day purchase of securities for its clients,
> particularly (for present purposes) insofar as it relates to
> Cramer's purchase of Rent-Way stock.**

*Rent-Way*, 218 F.R.D. at 108-09 (emphasis added); *see also Morlock v. Shepherd*, 1999 U.S. Dist. LEXIS 19402, at *14 (N.D. Ill. Dec. 16, 1999) ("[The client] says that she did have control because she had given the [investment advisor] her investment objectives, but we do not believe that this is enough to establish that [the client] had veto power or control over the individual investment decisions.").

### 4.    The Court Has Previously Considered And Rejected The Standing Arguments

The argument raised by Defendants at this time is not a new one. Their current challenges to BPI Global's investment discretion and "purchaser" status under the Agreement **are the exact same arguments raised in connection with the competing Lead Plaintiff applications** that have already been considered by this Court in connection with its appointment of BPI Global. Sonus Opp. at 8, 11-12. *See* Dkt. No. 76 at 10 (authority to commence suit on behalf of clients), Dkt. No. 80 at 7-10 (financial interest in the outcome of the litigation, authority to commence suit), Dkt. No. 93 at 2-4, 6-7 (financial discretion based on May 31, 1999

Agreement, authority to commence suit on behalf of clients, standing to sue).

The standing of BPI Global to bring this action based on its discretionary authority to purchase, in its own determination, whatever stocks it thought were appropriate for the funds, has already been considered and resolved by this Court during the proceedings to appoint a Lead Plaintiff. Ex. F to the Markert Decl. at 11:18-12:17.[11] Moreover, at that time, the controlling entity of several of the mutual funds that sustained losses in Sonus, including the two with the largest losses, affirmed its knowledge, support and approval of BPI Global as Lead Plaintiff. Ex. H to the Markert Decl. at 1, ¶2. This is especially significant because CI Mutual Funds acquired BPI Capital, the very entity which Defendants claim controlled BPI Global's daily investment strategy. *Id.* at 1-2, ¶3. In other words, the entity which purchased BPI Capital before BPI Global even made the Sonus purchases, has confirmed that Defendants are wrong, and that BPI Global had full discretion, uninhibited by anything coming from BPI Capital. *Id.* Furthermore, BPI Capital's successor supports BPI Global's ongoing litigation efforts and has affirmed that it will be bound by the result of the litigation. *Id.* and Killeen Decl.

BPI Global was authorized in the Agreement to take any and all actions deemed appropriate relating to securities bought for the account, including whatever was necessary to increase the value of their investment accounts. Other than investment objectives and general

---

[11]    Pursuant to that appointment, more than two (2) years of litigation have ensued and significant resources expended. If Defendants truly believed that they had a colorable constitutional standing argument to make, the Court should have heard about it much sooner, in Defendants' motions to dismiss, or at least as an affirmative defense in their Answers. That no such effort was made speaks volumes as to the weakness of their arguments. Indeed, as to prudential, or statutory standing, their delay is a waiver. *Pershing Park Villas Homeowners Assn. v. United Pacific Ins.*Co., 219 F.3d 895, 899-901 (9th Cir. 2000).

guidelines, the Agreement does not place any limitations on BPI Global regarding the

investments. This logically permits BPI Global to litigate to recover money that was overpaid

due to the artificially inflated price of a stock. Indeed, BPI Global's client has confirmed this by

affirmatively assenting to and supporting this litigation. *See* Ex. H to the Markert Decl.; Killeen

Decl.[12]

Because BPI Global had complete investment discretion when purchasing Sonus stock, it

was the "purchaser" for purposes of Section 10(b) and has standing to sue. Class certification

should accordingly be granted.[13]

## B.    BPI Global Suffered Direct Injury

Even were the Court to conclude that BPI Global, as investment advisor, cannot be

certified as a class representative based on standing concerns, it can still be properly certified

---

[12]    The Agreement sets forth a very broad standard of care to which BPI Global had to adhere. *See* Ex. I to the Markert Decl. at Ex. A ¶13 at 9. This includes requiring BPI Global to act "in good faith and with a view to fulfilling each Fund's Investment Objective," as well as exercising "that degree of care, diligence and skill that a reasonably prudent investment manager would exercise in comparable circumstances." The Agreement also provides that BPI Global is a fiduciary of BPI Capital and assumes "the duties, responsibilities and obligations of such a fiduciary." *Id.* at ¶5(d) at 5. As Mr. Sweeney testified, in pursuing this litigation, BPI Global was fulfilling this fiduciary obligation. Ex. C to the Markert Decl. at 68:5-23.

[13]    Defendants emphasize the purported requirement for standing that an investment advisory agreement designate the advisor as "attorney-in-fact," citing *Kaplan v. Gelfond*, 2007 WL 162488, at *5 n.8 (S.D.N.Y. Jan 18, 2007). This opinion in turn cites *In re Turkcell Iletism Hizmeler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002), where BPI Global was denied Lead Plaintiff status. Of course, no such requirement exists, as the *Rent-Way* court astutely explained in distinguishing *Turkcell*. *Rent-Way*, 218 F.R.D. at 107-08. Here, there is overwhelming evidence of BPI Global's authority to act with full discretion, to take all necessary actions to protect its clients' positions, as well as the full support of the owner of the largest mutual funds for which BPI Global provided investment advice. *See* Ex. H to the Markert Decl. ¶3; Killeen Decl. The absence of specific "attorney-in-fact" language is insignificant.

because it suffered direct injury as a result of the alleged wrongdoing.  BPI Global was an

investor in and served as general partner of four limited partnerships that sustained losses on

Sonus shares purchased during the Class Period that were identified in the Certificate of Plaintiff

filed in support of BPI Global's motion to be appointed Lead Plaintiff.  These funds are: BPI

American Opportunities Fund LP; BPI Select Opportunities Fund LP; BPI Global Opportunities

Fund VII LP; and BPI Global Opportunities Fund LP.[14]  Ex. G to the Markert Decl. at  2-5; Ex. C

to the Markert Decl. at 20:10-12, 21:3-4, 22:2-5, 25:15-22.

 BPI Global's former Controller testified as follows regarding this matter:

> Q: Did BPI Global invest in Dougherty Strategic Equity Fund?
>
> A: It was an investor, yes.
>
> Q: For those funds in which you identified BPI Global as a general partner, did BPI Global invest in those funds?
>
> A: They had invested a sum of money, yes.
> [Objection omitted.]
> **Where the firm was a general partner in the limited partnerships, they were also an investor and invested a sum of money**.

*Id.* at 25:12-22.  (Emphasis added).

 In other words, BPI Global sustained individual damage as a result of its own investment

in Sonus during the Class Period.  Because BPI Global itself sustained a compensable loss, there

are no standing concerns.  For this additional reason, BPI Global should be certified as a class

representative.

---

[14] BPI was also an investing member of the Dougherty Strategic Equity Fund, LLC and the investment advisor for the fund.  Ex. C to the Markert Decl. at 22:23-23:2 and 25:12-14.

#116339

19

### C.     BPI Global Has Fulfilled All Discovery Obligations

Defendants assert that BPI Global has "done little to direct this litigation and to monitor and control its counsel." Sonus Opp. at 17.  They further castigate BPI Global based on the fact that two of the witnesses offered by BPI Global in response to Defendants' Rule 30(b)(6) deposition are no longer employed at BPI Global or its successor Trilogy Global, and that Mr. Myklusch was allegedly never employed by BPI Global.  Sonus Opp. at 15.  None of these contentions have merit.  BPI Global had a legal obligation to produce competent Rule 30(b)(6) witnesses, whether former employees or otherwise, and it fulfilled this obligation. *United States v. Taylor*, 166 F.R.D. 356, 361-62 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996).

The witnesses BPI Global produced for deposition were identified in response to topics in the Defendants' Rule 30(b)(6) deposition notice. Ex. D to the Markert Decl. at 4-5.  The first witness was John Myklusch, CPA, the Chief Financial Officer and Chief Compliance Officer of Trilogy Global. Ex. A to the Markert Decl. at 9:6-9.  In addition, Mr. Myklusch served as BPI Global's Chief Financial Officer from May 2005 through March 2006 and Chief Compliance Officer from October 2005 through March 2006. *Id.* at 9:6-9, 14:25-15:5, 28:2-13.  He was produced to respond to Defendants' deposition topics regarding discovery responses and document collection efforts by BPI Global.  The second witness was John Bichelmeyer. Mr. Bichelmeyer, a Chartered Financial Analyst, managed or co-managed eleven of the funds that purchased and sold Sonus shares during the Class Period, including purchasing 1,500,000 shares of newly-issued Sonus shares on September 23, 2003. Ex. B to the Markert Decl. at 13:11-13, 37:19-21, 38:9-39:9, 108:10-11.  He was also involved in the decision to pursue litigation against Sonus. *Id.* at 18:19-23.  The third witness was BPI Global's former Controller and Chief

#116339

20

Compliance Officer, Charles Sweeney. Ex. C to the Markert Decl. at 8:1-5. Mr. Sweeney was

the point-person in the decision making process and oversight of the litigation in 2004 and most

of 2005, and was knowledgeable about the contractual agreements between BPI Global and the

twenty-one funds that purchased Sonus shares during the Class Period. *Id.* at 11:21-12:9, 8:1-5,

29:22-25, 35:14-36:4.

These three witnesses were the most qualified to respond to the twenty-one (21)

deposition topics set forth by the Defendants in their deposition notice. Ex. D to the Markert

Decl. at 4-5. Most of the topics involved transactions in Sonus that occurred several years ago.

The agreements and other documents between BPI Global and its clients were even older. That

BPI Global should be challenged and criticized because it obtained the cooperation of two former

employees who were the most knowledgeable about the deposition topics prepared by the

Defendants is ludicrous.

The decision to produce Mr. Myklusch for deposition was equally obvious. Mr.

Myklusch was designated as the person most qualified to discuss BPI Global's interrogatory

responses and the documents collected in response to Defendants' requests, because the

responses and documents produced were as a result of his personal efforts or were performed

under his direction and supervision. Each of these witnesses willingly came forward to be

deposed, and each spent several days preparing for and providing testimony. Markert Decl. ¶¶5-

7.[15] The record shows that in connection with the class certification proceedings, BPI Global has

produced more than 15,000 pages of documents to the Defendants and worked extensively with

---

[15]    The discovery provided by BPI Global representatives supports granting class certification.
*Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 506 (S.D. Fla. 2002).

Lead Counsel to prepare written discovery responses. Markert Decl. ¶¶2-4. In addition, three representatives of BPI Global -- John Myklusch, John Bichelmeyer, and Charles Sweeney -- appeared for deposition and responded fully to all questions. This strongly supports certifying BPI Global as class representative.

In addition to deposition testimony, Mr. Myklusch has been actively involved in responding to written discovery and the document collection process. Ex. A to the Markert Decl. at 46:11-47:3. He characterized his involvement as "comprehensive" and "was substantial enough so it took me away from a number of other things." *Id.* at 47:7-18. His efforts in the document collection process alone took between one and three weeks, and included contacting Michael Killeen to obtain documents from CI Funds "to ensure we had all the documents or as many of the documents as we could bring to the table." *Id.* at 47:19-23 and 113:9-23.

Several additional employees, nearly all of whom worked for BPI Global prior to the merger, assisted in locating and producing documents. *Id.* at 49:19-50:7; Markert Decl. ¶3. Electronic back up tapes were also made available to locate responsive documents. Ex. A to the Markert Decl. at 117:3-118:5. Mr. Myklusch provided counsel open access to BPI Global/Trilogy Global's offices to help identify and locate documents, and "gave counsel the ability to interview whoever she felt necessary," including present and former BPI Global employees. *Id.* at 50:8-13, Markert Decl. ¶¶2, 3. Prior to the start of depositions of Lead Plaintiff, 15,836 pages of responsive documents were produced to Defendants. Markert Decl. ¶4.

This record of full and complete participation in discovery lends further support to the conclusion that BPI Global is a proper class representative.

//

### D.    BPI Global Is Fully Engaged In The Litigation

#### 1.    Active Participation

BPI Global has not shown "indifference" to this litigation, as the Defendants incorrectly claim. Sonus Opp. at 16. BPI Global has been intimately involved from the outset.

This action has progressed far beyond the Lead Plaintiff stage. The Court now has the benefit of BPI Global's actual litigation track record on which it can base its determination as to the adequacy of its representation. As shown, BPI Global has vigorously prosecuted this case, including obtaining an order upholding claims, providing significant discovery relating to the class certification issue, and working diligently with Lead Counsel to fulfill its duties.[16]

Even though class discovery has been completed, BPI Global understands its ongoing role in the litigation. When asked whether he understood that BPI Global has a responsibility to oversee the conduct of counsel, Mr. Myklusch responded, "Yes, we understand that we need to watch over the case to make sure the case is progressing in a reasonable manner, to stay involved." Ex. A to the Markert Decl. at 206:20-207:3. Mr. Sweeney, even though he is no longer an employee, is still prepared to testify at trial, and opined that his successor, Mr. Myklusch, would as well. Ex. C to the Markert Decl. at 44:13-23. When former employee Mr. Bichelmeyer, now a resident of Kansas, was asked if he would voluntarily come to trial in Boston to the extent there is a trial in this case, he stated, "If it comes to that point, I'll have to make a

---

[16]    In addition, pursuant to the agreement reached among the parties as reflected in the Joint Statement Pursuant to Local Rule 16.1(D), filed July 6, 2006, BPI Global has been aggressively seeking document discovery from the Defendants and has issued thirty-one (31) third party document production subpoenas. Markert Decl. ¶8. A large quantity of records has been obtained relating to the merits of this case, and BPI Global's counsel and retained experts have been organizing and analyzing the documentation for use in the next stage of this litigation.

decision at that time." Ex. B to the Markert Decl. at 128:23-129:2.

The Defendants' oppositions merely re-hash and mischaracterize the same facts, to no avail. BPI Global has clearly established its diligence and involvement in this litigation. That CFO John Myklusch would confer with COO Carol Holley and Managing Partner Ryan Burrow, in conjunction with counsel, for high level decisions regarding this litigation does not amount to lackluster oversight, as Defendants falsely assert. Ex. A to the Markert Decl. at 205:19-207:3. Defendants' contention that Mr. Burrow "agreed to participate in the litigation only after receiving assurance from Sweeney that he (Burrows) would have no responsibility for overseeing the litigation" is untrue. Sonus Opp. at 17. Here is the testimony:

Q:     Did you speak with any of the folks to whom you reported before filing this lawsuit about commencing this lawsuit?

A:     I spoke, I think, briefly with Ryan Burrow.

        * * *

        THE WITNESS: Ryan Burrow, the president, and just had a short general conversation. And because we had been through this before and understand our fiduciary obligation to our clients, you know, he realized it would be – the onus would be on me, not him.

BY MR. PRENDERGAST:
Q:     Approval is easy when you don't have to do anything. I apologize, I should know this off the top of my head, what was the name of the litigation?

A:     Turkcell.

Ex. C to the Markert Decl. at 35:17-36:11. The testimony is clear. The flippant remark by defense counsel cannot be stretched to support the Defendants' bald assertion that Mr. Burrow conditioned BPI Global's role in this action only if he personally had no involvement.

Defendants also take great liberties with Mr. Sweeney's testimony regarding the

Certificate of Plaintiff filed on April 12, 2004. Sonus Opp. at 18. Mr. Sweeney spoke in detail about the certificate and the attached spreadsheets evidencing the losses incurred by each fund, including affirming each of the representations made on the certificate. Ex. C to the Markert Decl. at 14:18-15:1, 43:6-44:23. He affirmed that the reports attached to the Certificate of Plaintiff provided the necessary information about BPI Global for inclusion in the Complaint. *Id.* at 34:17-25. Mr. Sweeney also testified that he read a draft complaint, the amended consolidated complaint, and the first amended consolidated complaint, prior to their filing. *Id.* at 34:17-21, 40:6-10, 43:23-24.

As to his knowledge about the case, Mr. Myklusch, who currently oversees the litigation, testified that he had read the Complaint, reviewed the entire file of documents kept by Mr. Sweeney about the case, has had "a number of conversations with counsel" about the status of the case, and has been actively involved in written discovery responses and document production on behalf of BPI Global. Ex. A to the Markert Decl. at 44:8-12, 48:16-24, 46:11-47:3, 47:19-23. Mr. Myklusch has demonstrated more than adequate knowledge of the case, reciting the basic allegations ("My understanding is that Sonus had made what were allegedly misstatements in securities filings and there are instances of -- alleged instances of revenue manipulation inside of these filings which required restatements to these filings."), that claims against defendants Ahmed and Nill were dismissed while others remain, the current status of the case and where it is pending, the roles of defendant Nill and former controller Peter Hemme, and how revenue manipulation can amount to a fraud. *Id.* at 44:15-22, 45:3-15, 200:15-24, 205:9-14, 207:7-14; 203:3-8. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 267 (D. Mass. 2005) (Woodlock, J.) (active involvement in litigation and understanding of claims sufficient for

certification). That Mr. Myklusch, a non-lawyer, could not recite the U.S. code sections of the surviving claims does not render BPI Global an inadequate class representative. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 132 n.4 (5th Cir. 2005) ("'[C]lass representatives need not be legal scholars and are entitled to rely on [class] counsel.'" (citation omitted).)

Defendant Nill makes the bizarre claim that BPI Global cannot be certified as a class representative because none of its witnesses had knowledge of specific facts showing that Sonus committed a fraud. Nill Opp. at 3. There has never been any such requirement in the law. Plaintiffs in securities fraud cases, including BPI Global, are typically open market purchasers who rely on the integrity of the market. They have no personal knowledge of the underlying facts which are alleged to support the imposition of liability. Rather, they rely on counsel to develop such facts. Absence of specific knowledge of facts supporting a fraud allegation is not a fatal flaw for a proposed class representative. Indeed, the Supreme Court refused to dismiss a derivative complaint where a plaintiff had virtually no knowledge of her case. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370, 373-74 (1966). One court has stated that "**[e]specially in securities cases**, plaintiffs' lack of knowledge usually does not make them inadequate . . . ." *Fulco v. Continental Cablevision, Inc.*, 1990 WL 120688, at *1 (D. Mass. June 19, 1990) (emphasis added). Here, the deposition testimony shows that BPI Global has extensive knowledge of the case.

To the extent that the PSLRA "mandates" (Sonus Opp. at 14) a certain amount of knowledge and understanding of the case, that level is not greater than what has traditionally been required by Rule 23. As recently discussed by the Fifth Circuit:

Although we noted that the PSLRA raises the adequacy threshold,

> we have "not, however, created an additional requirement under
> rule 23(a)(4) that . . . the putative class representative possess[] a
> certain level of experience, expertise, wealth or intellect, **or a level
> of knowledge and understanding of the issues,** beyond that
> required by our long-established standards for rule 23 adequacy of
> class representatives." *Berger v. Compaq Computer Corp.*, 279
> F.3d 313, 313-14 (5th Cir. 2002) [*Berger II*].

*Feder*, 429 F.3d at 130 (emphasis added).

Likewise, the Ninth Circuit has stated: "The Reform Act did not change this standard;

rather, it adopted the typicality and adequacy requirements of Rule 23 in haec verba." *In re*

*Cavanaugh*, 306 F.3d 726, 736 (9th Cir. 2002). "[N]amed plaintiffs are not required to have

expert knowledge of all details of the case and a great deal of reliance on the expertise of counsel

is to be expected." *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *4 (D.

Mass. Nov. 28, 2005) (internal quotation marks and citation omitted)); *see also In re Relafen*

*Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005)).

This Court has previously held that, "[w]ith respect to the representative plaintiffs'

knowledge of the case, all that is required is '[g]eneral knowledge and a participation in

discovery.'" *In re Carbon Black Antitrust Litig.*, 2005 WL 102966, at *14 (D. Mass. Jan. 18,

2005) (Woodlock, J.) (citations omitted); *see also Grace v. Perception Tech. Corp.*, 128 F.R.D.

165, 171 (D. Mass. 1989); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 556 (D. Mass. 1988); *Adair v.*

*Sorenson*, 134 F.R.D. 13, 18-19 (D. Mass. 1991).

Defendant Nill makes another far-fetched argument in asserting that the decision in *In re*

*Interneuron Pharm. Litig.*, 188 F.R.D. 3 (D. Mass. 1999) requires a Rule 30(b)(6) deponent to

"establish" the existence of fraud. Nill Opp. at 1-3. He alleges BPI Global's witnesses could not

do so. No such holding is found in the decision. The case turned on the adequacy of a **pleading**

of fraud:

> The plaintiffs must **plead** the factual elements of a fraud with
> particularity, and **plead** that a particular person among the
> proposed class representatives can prove that she or he suffered a
> loss from that particularized fraud.  If plaintiffs fail to satisfy these
> **pleading** requirements, it is inappropriate to certify a class at this
> time.  Plaintiffs' failure to meet the specificity of **pleading**
> requirement is so complete that no identifiable person has been
> alleged to be capable of meeting the requirement.  This posture of
> the record leaves in grave doubt whether any such person exists.

*Id.* at 5-6 (emphasis added).  The case did not require the deponents to "establish" anything.

Rather, the Court emphasized the need to satisfy pleading requirements associated with fraud.

The May 10, 2006 Order has addressed that point in the instant matter.

## 2.    Initiation Of Case And Attorneys' Fees

Mr. Sweeney, on behalf of BPI Global, conducted due diligence before authorizing the

application for Lead Plaintiff on behalf of BPI Global.  He conferred with Mr. Bichelmeyer, the

portfolio manager who purchased the majority of the Sonus shares during the Class Period, as

well as with the President of BPI Global, Ryan Burrow.  Ex. C to the Markert Decl. at 31:17-

32:8, 35:17-36:4.  Mr. Bichelmeyer testified that he "gave a 'yes' to our controller to pursue legal

action" against Sonus based on its failure to file a 10-K and 10-Q, the appearance of accounting

irregularities, and the loss in the security.  Ex. B to the Markert Decl. at 18:19-23, 22:7-11 and

Errata Sheet.  When pressed as to why he thought a suit should be brought against Sonus, Mr.

Bichelmeyer stated, "It's one thing to make an investment and lose money on it because you just

got it wrong, and it's another thing to make an investment based on information that was false,

and had the deck stacked against you." *Id.* at 130:7-11.  To complete his due diligence, Mr.

Sweeney contacted BPI Global's corporate counsel, Holland & Knight, to inquire about the law

firm of Gold Bennett Cera & Sidener LLP ("GBCS").  Ex. C to the Markert Decl. at 34:4-12, 87:9-12.

Due diligence was conducted a second time upon the assumption of responsibility by Mr. Myklusch, when Mr. Sweeney left the company in late 2005.  Ex. A to the Markert Decl. at 112:4-8; Ex. C to the Markert Decl. at 40:11-16.  Mr. Myklusch had a discussion with counsel from GBCS to learn about the firm and its qualifications, and the status of the case.  Ex. A to the Markert Decl. at 208:19-25.  To understand the history of the case from BPI Global's perspective, Mr. Myklusch spoke to Mr. Sweeney and the chief counsel for CI Funds, Michael Killeen.  *Id.* at 42:3-19, 44:2-7, 111:19-25.  Mr. Killeen was contacted because CI Funds owned a very large stake in BPI Global, in addition to its funds having sustained significant losses.  *Id.* at 112:4-24.  Mr. Myklusch also contacted his colleagues in the industry to better understand what is involved in the process of being a Lead Plaintiff in a securities class action.  *Id.* at 23:19-24.

In terms of attorneys' fees, both Mr. Myklusch and Mr. Sweeney testified that the fees, if any, were solely on a contingent basis, with no specified percentage.  Ex. A to the Markert Decl. at 108:8-19; Ex. C to the Markert Decl. at 69:21-70:12.  They understood that in a common fund case such as this, the Court ultimately awards a fee and determines an appropriate award of fees based on the totality of relevant considerations.  Rule 23(h), Fed.R.Civ.P.  Therefore, the absence of an agreed upon fee percentage between Lead Plaintiff and its counsel is irrelevant.  Neither Rule 23 nor the PSLRA even suggest that a particular fee percentage must be agreed upon.  The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and

prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

In this regard, Defendants' reliance on *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), is misplaced. One criterion courts sometimes look to in evaluating a potential Lead Plaintiff is whether it "negotiated a clearly unreasonable fee agreement with its chosen counsel." *Id.* at 265-66. At that early stage in the proceedings, the *Cendant* court had little information beyond such a consideration to determine whether the presumptive "most adequate plaintiff" would satisfy the requirements of Rule 23. *Id.* at 265. No such concerns are implicated here. BPI Global can hardly be faulted for agreeing with counsel that an appropriate fee in this case, if any, shall conform to what the Federal Rules and PSLRA call for.[17]

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff requests that the Court enter an Order: (1) certifying the requested Class and Subclass in this action pursuant to Rules 23(a) and (b)(3); (2) appointing Lead Plaintiff as the Class and Subclass representative; and (3) appointing GBCS as Class and Subclass counsel.

Dated: February 7, 2007                    GOLD BENNETT CERA & SIDENER LLP

                                           By   /s/    Solomon B. Cera
                                                       Solomon B. Cera

                                           Attorneys for Lead Plaintiff
                                           BPI Global Asset Management LLP

---

[17]    The Defendants' reference to *Raftery v. Mercury Finance Co.*, 1997 WL 529553 (N.D. Ill. Aug. 15, 1997) is also unavailing. The Court asked for additional briefing as to whether the 33-1/3 percent fee specified in the retainer agreement was appropriate because "early indications suggested that the case will settle early." *Id.* at *1. Of course, there has been no early settlement here.

#116339                                                                                30