# Exhibit A

**John Francis Myklusch**                                          11/03/2006

Page 1

08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27
08:47:27

08:47:27

08:47:27
08:47:27

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------

IN RE:


SONUS NETWORKS, INC.,

LITIGATION

                              Civil Action No.

                              04-10294-DPW

                              Lead Case

-----------------------------------------------

                    9:30 a.m.

                    November 3, 2006


                    399 Park Avenue

                    New York, New York


          DEPOSITION of JOHN FRANCIS MYKLUSCH, a

     Witness in the above entitled matter, taken

     pursuant to Notice, before Stephen J. Moore, a

     Registered Professional Reporter, Certified

     Realtime Reporter, and Notary Public of the

     State of New York.

John Francis Myklusch

11/03/2006

Page 9

JOHN MYKLUSCH

09:42:49  1

09:42:50  2    Q        What is your position, for

09:42:50  3  shorthand is it okay if I refer to it as

09:42:51  4  Trilogy?

09:42:52  5    A        That's fine.

09:42:54  6    Q        What is your position at

09:43:05  7  Trilogy?

09:43:06  8    A        I am the Chief Financial Officer

09:43:11  9  and I am the Chief Compliance Officer.

09:43:13  10   Q        What are your duties and

09:43:16  11  responsibilities as Chief Financial Officer?

09:43:18  12   A        It's the financial management of

09:43:21  13  Trilogy Global Advisors as an entity as it

09:43:33  14  relates to our current business plan, or our

09:43:35  15  current goals of the entity, so fiscal

09:43:38  16  management.

09:43:40  17   Q        On a day-to-day basis what does

09:43:45  18  that entail?

09:43:51  19   A        Interacting with my Comptroller

09:43:55  20  on different financial matters, reviewing

09:44:00  21  client contracts, ensuring appropriate payments

09:44:03  22  have gone in, fiscal matters are done in a

23  correct way, budgeting, it can be any one of a

24  number of fiscally related items.

25   Q        You mentioned interacting with

John Francis Myklusch                                    11/03/2006

Page 11

09:45:29  1                    JOHN MYKLUSCH

09:45:37  2   we review -- talk to traders, we review trades,

09:45:38  3   we view guidelines in association with the

09:45:40  4   remainder of the Trilogy compliance staff.

09:45:42  5          Q       What percentage of your time

09:45:45  6   would you estimate you spend on your duties as

09:45:48  7   Chief Compliance Officer?

09:45:59  8          A       It varies.  On a day-to-day

09:46:01  9   basis I would say my role is probably 50

09:46:03 10   percent each, on an average for a year.

09:46:03 11          Q       How long have you been the Chief

09:46:07 12   Financial Officer?

09:46:12 13          A       I have been the Chief Financial

09:46:15 14   Officer of Trilogy Global Advisors since it was

09:46:17 15   created.

09:46:19 16          Q       So, you are currently employed

09:46:24 17   by Trilogy Global Advisors.  Are you employed

09:46:25 18   by any other entities?

09:46:27 19          A       Right now I am not.

09:46:31 20          Q       Were you previously employed by

09:46:34 21   other entities?

09:46:36 22          A       At the time in between when BPI

         23   and Trilogy had merged completely up into

         24   Trilogy Global Advisors, I would say that I had

         25   a dual officer role of my titles within BPI

John Francis Myklusch                                    11/03/2006

Page 12

09:46:50  1                    JOHN MYKLUSCH
09:46:53  2     Global Asset Management, Trilogy Advisors and
09:46:58  3     Trilogy Global Advisors, although I did not
09:47:03  4     carry a Chief Compliance Officer title the
09:47:09  5     entire period of time that BPI Global Asset
09:47:10  6     Management and Trilogy Advisors were still
09:47:11  7     underneath Trilogy Global Advisors.
09:47:13  8          Q     Does Trilogy Advisors still
09:47:15  9     exist?
09:47:17 10          A     Trilogy Advisors has been merged
09:47:20 11     into Trilogy Global Advisors.
09:47:22 12          Q     That was the entity that existed
09:47:30 13     and merged with BPI Global Asset Management?
09:47:32 14          A     That's correct -- I'm sorry,
09:47:34 15     Trilogy Advisors and BPI in the process of
09:47:36 16     merging were deemed 100 percent of their equity
09:47:38 17     up into Trilogy Global Advisors.
09:47:44 18               So these entities didn't merge
09:47:46 19     directly together, they merged up into Trilogy
09:47:49 20     Global Advisors.
09:47:51 21          Q     Who is your supervisor now?
09:47:52 22          A     Right now I report to Carol
         23     Holley, and Ryan Burrow.
         24          Q     Can you spell those names for
         25     the record, please?

John Francis Myklusch

11/03/2006

Page 13

JOHN MYKLUSCH

09:48:06  1

09:48:07  2       A       C-a-r-o-l  H-o-l-l-e-y  and

09:48:10  3    R-y-a-n  B-u-r-r-o-w.

09:48:14  4       Q       **What are their positions?**

09:48:19  5       A       Ryan Burrow is a managing

09:48:22  6    director with Trilogy Global Advisors and he

09:48:27  7    sits on the board, Trilogy Global Advisors, and

09:48:31  8    Carol Holley is the Chief Operating Officer for

09:48:34  9    Trilogy Global Advisors and a managing director

09:48:38  10   of Trilogy Global Advisors.

09:48:42  11              As Chief Compliance Officer I

09:48:47  12   also report directly to the Board of Directors

09:48:53  13   of Trilogy Global Advisors on compliance

09:48:54  14   related issues as is required or as is desired

09:48:56  15   under the Compliance Officer rule.

09:48:59  16      Q       **Do you supervise anyone?**

09:49:01  17      A       I supervise two individuals

09:49:02  18   under me on the compliance side and two

09:49:03  19   individuals on the finance side.

09:49:07  20      Q       **Who are those individuals on the**

09:49:08  21   **finance side?**

09:49:11  22              MR. CERA:  I object.  How does

          23              this relate to what we are here about

          24              which is the topics -- certain of the

          25              topics in the notice?

John Francis Myklusch                                11/03/2006

Page 14

09:49:17  1                    JOHN MYKLUSCH

09:49:18  2              Why does it matter?  Where is the

09:49:22  3         relevance of it?

09:49:23  4              MS. COFFEY:  You can go ahead and

09:49:28  5         answer the question.

09:49:41  6         A       On the finance side Rose

09:49:43  7    Blechner who is the Comptroller and Camille

09:49:43  8    Whitsett.

09:49:47  9         **Q       What's Camille Whitsett's**

09:49:49 10    **position?**

09:49:51 11         A       Camille is a Vice President

09:49:59 12    with -- she is either a Vice President or an

09:50:00 13    associate currently, I am not sure as to which

09:50:05 14    title she currently holds.

09:50:07 15         **Q       So you have been employed by**

09:50:08 16    **Trilogy since the merger in 2004, correct?**

09:50:10 17         A       I was employed before that and

09:50:12 18    after that.

09:50:13 19         **Q       Right, and before the merger you**

09:50:18 20    **were employed by BPI?**

09:50:19 21         A       Trilogy Global, I have worked

09:50:23 22    for Trilogy Global Advisors.

          23              MR. CERA:  Go ahead, let him

          24         finish.

          25         A       In 1999 I began working with

**LegaLink Boston, Merrill Legal Solutions**
**(617) 542-0039**

John Francis Myklusch

11/03/2006

Page 15

JOHN MYKLUSCH

09:50:36  1

09:50:42  2    Trilogy Advisors.  When we merged I became a

09:50:48  3    dual officer and dual titles with BPI and

09:50:49  4    Trilogy Advisors and Trilogy Global Advisors

09:50:51  5    and I hold the majority of those titles today.

09:50:53  6         Q      So in 1999 when you began

09:50:54  7    working with Trilogy Advisors what was your

09:51:00  8    position?

09:51:04  9         A      I was the Chief Financial

09:51:08 10    Officer and Compliance Officer, and I did not

09:51:12 11    take on a Chief Compliance Officer role until I

09:51:14 12    believe it was mandated by the rule that the

09:51:16 13    SEC has most recently passed regarding that.

09:51:17 14         Q      Did those positions change prior

09:51:18 15    to the merger?

09:51:20 16         A      Do you mean did the titles

09:51:22 17    change?

09:51:27 18         Q      Yes.

09:51:30 19         A      I believe the rule required

09:51:31 20    was -- I believe the rule for Chief compliance

09:51:33 21    officers predated our merger, so yes.

09:51:35 22         Q      Otherwise were there any changes

      23    in your titles prior to the merger?

      24         A      I most likely have received some

      25    merit increases, I believe I started as a Vice

John Francis Myklusch

11/03/2006

Page 23

JOHN MYKLUSCH

10:00:15  1

10:00:17  2     Q        To your knowledge was that the

10:00:19  3  certification filed with the lead Plaintiff

10:00:20  4  motion?

10:00:29  5     A        I do not know which document it

10:00:30  6  was entirely, but it was a document that was

10:00:32  7  filed with the court.

10:00:38  8     Q        Anything else that you reviewed

10:00:40  9  that refreshed your recollection?

10:00:43 10     A        None that I can recall.

10:00:46 11     Q        Have you spoken with anyone else

10:00:53 12  about this case?

10:00:56 13     A        I have spoken probably to people

10:00:57 14  that I know and I also had a conversation with

10:00:59 15  counsel about --

10:01:00 16           MR. CERA:  Wait, wait, wait, you

10:01:01 17        don't have to reveal the substance of

10:01:05 18        conversations with counsel.

10:01:07 19     Q        And I wouldn't ask you to do

10:01:13 20  that.  When you say people that you know --

10:01:15 21     A        Contacts in the industry, just

10:01:19 22  about this type of legislation and law, just

          23  doing due diligence on my own behalf about what

          24  is involved in the process and what to expect

          25  and what other people have seen.

John Francis Myklusch                                11/03/2006

Page 28

JOHN MYKLUSCH

10:06:50  1

10:06:56  2          A        During the period from the

10:06:59  3    merger up until the period in which he departed

10:07:04  4    from the company he was employed, I don't want

10:07:06  5    to say the entire time, but his role was

10:07:08  6    primarily Chief Compliance Officer.

10:07:27  7          Q        **When did he leave Trilogy?**

10:07:28  8          A        I don't know the exact date, but

10:07:31  9    I believe it was the fourth quarter of 2005.

10:07:33 10          Q        **During the period Charles**

10:07:35 11    **Sweeney was Chief Compliance Officer you were**

10:07:37 12    **not holding that position?**

10:07:38 13          A        That's correct.

10:07:45 14          Q        **So when in 2004 did the merger**

10:07:53 15    **happen?**

10:07:54 16          A        It happened on May 31, 2005.

10:07:56 17          Q        **2005.**

10:07:58 18                  **To your knowledge what is**

10:08:01 19    **Charles Sweeney's reputation?**

10:08:02 20                  MR. CERA:  I object to the form,

10:08:05 21          calls for speculation.

10:08:06 22          A        I do not --

        23                  MR. CERA:  Vague, ambiguous.

        24          Q        **What are your impressions of**

        25    **Mr. Sweeney?**

John Francis Myklusch

11/03/2006

Page 42

JOHN MYKLUSCH

10:24:12  1    be.

10:24:15  2

10:24:17  3        Q        When did you become aware of the

10:24:21  4    Sonus lawsuit?

10:24:27  5        A        I am not certain, although it

10:24:29  6    would have -- somewhere between six months

10:24:32  7    before and six months after we merged.

10:24:34  8        Q        Who made you aware of the Sonus

10:24:36  9    case?

10:24:38 10        A        It was either Chuck Sweeney or

10:24:39 11    Michael Kileen.

10:25:00 12        Q        Can you spell that last -

10:25:03 13    Michael's last name?

10:25:03 14        A        K-i-l-e-e-n.

10:25:05 15        Q        What is Michael Kileen's

10:25:07 16    position?

10:25:15 17        A        I believe he's the Chief counsel

10:25:16 18    of CI, although I don't think that's his exact

10:25:19 19    title.

10:25:21 20        Q        Why were you discussing the

10:25:28 21    Sonus case with Michael Kileen?

10:25:30 22        MR. CERA:  You know, let me just

23        think about this for a moment.

24        I'm not sure that his conversations

25        with the Chief counsel of CI is a subject

John Francis Myklusch

11/03/2006

Page 44

JOHN MYKLUSCH

10:26:26  1

10:26:28  2      Q       Why did you speak with

10:26:30  3   Mr. Sweeney about the Sonus case?

10:26:32  4      A       Because I would consider him to

10:26:35  5   be one of the more knowledgeable persons about

10:26:36  6   what had gone on or where the case stood or the

10:26:41  7   positions that BPI had.

10:26:44  8      Q       Have you read the complaint in

10:26:47  9   this case?

10:26:48 10      A       I have read the complaint, I

10:26:49 11   don't know if I read every word, but I read the

10:26:50 12   majority of it.

10:26:53 13      Q       Do you know the basic

10:26:54 14   allegations?

10:27:00 15      A       I do know the basic allegation.

10:27:09 16      Q       Could you describe it?

10:27:12 17      A       My understanding is that Sonus

10:27:21 18   had made what were allegedly misstatements in

10:27:24 19   securities filings and there are instances

10:27:31 20   of -- alleged instances of revenue manipulation

10:27:32 21   inside of these filings which required

10:27:36 22   restatements to these filings.

        23      Q       Do you know how BPI Global came

        24   to be a Plaintiff in this case?

        25      A       I was not affiliated at the

John Francis Myklusch

11/03/2006

Page 45

JOHN MYKLUSCH

10:27:42  1

10:27:43  2  time, so no.

10:27:45  3          Q        Do you know where the lawsuit is

10:27:45  4  pending?

10:27:48  5          A        In Boston, I believe.

10:27:49  6          Q        Do you know if it's state or

10:27:53  7  federal court?

10:27:55  8          A        I believe the charges are --

10:27:56  9  securities are federal, so it would have to be

10:27:57 10  a federal court.

10:28:00 11          Q        Do you know what the status of

10:28:03 12  this case is?

10:28:04 13          A        I believe it is awaiting class

10:28:05 14  action certification, which is where it stands

10:28:10 15  today.

10:28:13 16          Q        Do you know the name of the

10:28:16 17  judge?

10:28:17 18          A        I know it starts with a W, I

10:28:19 19  don't recall his exact last name.

10:28:20 20          Q        Do you know if there has been a

10:28:32 21  trial set in this case?

10:28:35 22          A        I believe there has been a date

      23  set for February next year.

      24          Q        Other than Mr. Sweeney, have

      25  you -- and Mr. Kileen, have you spoken to

John Francis Myklusch

11/03/2006

Page 46

JOHN MYKLUSCH

anyone else about this litigation?

    A        I discussed earlier that I
discussed this litigation with several
colleagues in the industry.

        Q        Anyone else other than Mr. Cera
and Ms. Markert?

    A        I would say the management of
Trilogy has been kept apprised at a generic
level of the case.

        Q        What has your involvement in
this case thus far entailed?

            MR. CERA:  I object to form.  Go
        ahead.

    A        I would say from the point in
which I picked it up, the two matters that I
was involved most closely with were the
interrogatories which are mentioned in this
document in front of me, and the document
collection.

        Q        Anything else?

    A        Probably had a number of
conversations with counsel surrounding the
Sonus case, in particular when I picked up
after Chuck had left the company, I had a

John Francis Myklusch

11/03/2006

JOHN MYKLUSCH

10:29:59  1

10:30:00  2   number of discussions about the status of the

10:30:04  3   case, where we stood with counsel.

10:30:07  4        Q        Anything else?

10:30:08  5        A        I would say that's a fair

10:30:11  6   assessment.

10:30:14  7        Q        Other than the time you spent

10:30:17  8   preparing for your deposition and any travel,

10:30:20  9   likely not much, you needed to come here, how

10:30:21 10   much time have you spent on this lawsuit?

10:30:23 11        MR. CERA:  I object to form.

10:30:36 12        A        I would say the document

10:30:38 13   collection probably took up a decent amount of

10:30:42 14   my time, it was a pretty comprehensive process.

10:30:44 15             It's difficult to figure out

10:30:47 16   exactly how much time, but it was substantial

10:30:48 17   enough so it took me away from a number of

10:30:56 18   other things.

10:30:57 19        Q        Do you have any estimate as to

10:31:04 20   how much time that was?

10:31:07 21        A        Somewhere between a week and

10:31:08 22   three weeks spread over a period of time of my

23   involvement.

24        Q        Other than in preparing for your

25   deposition, have you reviewed any documents in

John Francis Myklusch

11/03/2006

Page 48

JOHN MYKLUSCH

10:31:17   1

10:31:22   2    this case?

10:31:27   3            MR. CERA:   I object to form.

10:31:29   4        A       Interrogatories.

10:31:31   5            MR. CERA:   I mean he's already

10:31:32   6    previously told you he reviewed the

10:31:34   7    order of May 2006.  He said he reviewed

10:31:37   8    the complaint, are you asking in

10:31:37   9    addition to those matters if he's

10:31:38  10    reviewed the document request?

10:31:38  11            MS. COFFEY:   Is that an

10:31:40  12    objection?

10:31:41  13            MR. CERA:   Yes, because I think

10:31:42  14    it's been asked and answered.  Are you

10:31:44  15    asking in addition to those items?

10:31:45  16        Q       As I said, other than the

10:31:47  17    documents you reviewed in preparation for this

10:31:49  18    deposition, have you reviewed any other

10:31:52  19    documents in your involvement in this case?

10:31:55  20        A       Chuck Sweeney had kept a file

10:31:57  21    with all the documents he had on the Sonus

10:32:00  22    case, I think at the time of my inception of my

          23    involvement I probably reviewed the entire

          24    file.

          25            I could not tell you what is in

John Francis Myklusch

11/03/2006

Page 49

JOHN MYKLUSCH

10:32:06   1    that file today.

10:32:07   2        Q        You've been involved in document

10:32:07   3    collection efforts?

10:32:09   4        A        That's correct.

10:32:10   5        Q        Have you reviewed any of the

10:32:12   6    documents collected?

10:32:15   7        A        I reviewed some of the documents

10:32:17   8    that were collected, but I have not reviewed

10:32:18   9    all of the documents that were collected.

10:32:20  10        Q        Who else reviewed the documents

10:32:22  11    that were collected?

10:32:25  12        A        I would have to assume counsel

10:32:27  13    reviewed the documents that were collected, and

10:32:29  14    then have to assume the individuals who were

10:32:33  15    assigned to assist the document collection

10:32:36  16    process reviewed those documents as they were

10:32:37  17    obtained.

10:32:39  18        Q        Who were the individuals

10:32:49  19    assigned to assist with the document collection

10:32:54  20    process?

10:33:02  21        A        Evelyn Jones, Ellen Miller,

10:33:06  22    Arroyo, I am going to mispronounce her name,

         23    its Guardine, I would need to get the spelling,

         24    I don't have it offhand, and Jason Human.

         25

**LegaLink Boston, Merrill Legal Solutions**
**(617) 542-0039**

John Francis Myklusch

11/03/2006

Page 50

JOHN MYKLUSCH

Q        How do you spell his name?

A        H-u-m-a-n.

In addition, Carol Holley was involved, more from directing the process, and Stephen Steffy was involved in directing the process.

I have to assume that when we gave counsel the ability to interview whoever she felt necessary, Pamela Markert was in that office, that a number of other people in that office were also spoken to and were involved in some form or fashion.

Q        When did you give counsel the ability to interview whoever counsel felt necessary?

MR. CERA:  Objection to the form.

A        Pamela Markert visited the 1900 Summit Tower Office, I was actually there for at least one of the days, although I do not recall which day it was.

My understanding is counsel was there for the entire week.

Q        Approximately when was that?

A        I do not remember.  Beginning of

John Francis Myklusch

11/03/2006

Page 52

JOHN MYKLUSCH

10:44:02 1    the investment person, so not the trader.

10:44:04 2    

10:44:09 3         Q      Who is the trader?

10:44:11 4         A      His name was Kyle, Kyle Anderson

10:44:11 5    was his name.

10:44:17 6         Q      What was Dan Jaworski's

10:44:19 7    position?

10:44:22 8         A      My understanding is CIO.

10:44:24 9         Q      What about John Sorenson?

10:44:33 10        A      I do not know the titles of the

10:44:41 11   remainder of those individuals.

10:44:42 12        Q      Or Paul Holland?

10:44:47 13        A      No.

10:45:48 14        Q      We have been talking about this

10:45:49 15   merger between -- can we go off the record.

10:45:53 16        (Discussion off the record.)

10:45:54 17        MS. COFFEY:  We can go back on

10:45:59 18   the record now.

10:46:03 19        Q      Perhaps it's a good time to

10:46:07 20   clarify, does BPI Global currently exist?

10:46:10 21        A      BPI Global Advisors was merged

10:46:15 22   up and into Trilogy Global Advisors, but in the

23    merger agreement we left a stipulation so that

24    lawsuits in its name could proceed in its name.

25         Q      Other than that stipulation does

John Francis Myklusch

11/03/2006

Page 108

JOHN MYKLUSCH

Plaintiff's response to interrogatory number 8.

What was the process for responding to this interrogatory?

A       This is the document discovery process which we feel was a pretty comprehensive process.

Q       Interrogatory number 10, identify any fee arrangement or agreement between you and any person regarding the payment of attorneys' fees or costs in this action.

The response references a responsive document which I believe is the fee arrangement, the engagement letter between BPI and Mr. Cera's law firm.

Are you aware of any other fee arrangement or fee agreement?

A       No.

Q       What was done to respond to this request?

A       I had seen that letter and my understanding is a copy -- I believe a redacted copy of that letter was provided.

Q       Was there any investigation into

John Francis Myklusch

11/03/2006

Page 111

JOHN MYKLUSCH

11:57:12  1

11:57:12  2    record.

12:35:19  3         (At this point in the proceedings

12:35:19  4    there was a luncheon recess, after which

12:35:20  5    the deposition continued as follows:)

12:35:22  6         MR. CERA:  Before we begin, I

12:35:23  7    wanted to say that we have considered

12:35:27  8    your request that you be allowed to

12:35:28  9    inquire into the communications with

12:35:30  10   Mr. Kileen and you may go ahead and do

12:35:32  11   so.

12:35:35  12        MS. COFFEY:  Okay, thank you.

12:35:38  13   Q    Mr. Myklusch, welcome back, I

12:35:40  14   hope you had a good break.

12:35:43  15        Let's return to that now, the

12:35:46  16   issue of your conversations with Michael Kileen

12:35:48  17   who was counsel for CI Mutual Funds regarding

12:35:50  18   this litigation.

12:35:51  19        What was the substance of your

12:35:53  20   conversations with Mr. Kileen?

12:36:01  21   A    We had discussions regarding the

12:36:02  22   broad strokes of the Sonus suit.

23   Q    How many discussions occurred?

24   A    I think we had two discussions

25   regarding Sonus.

John Francis Myklusch

11/03/2006

Page 112

JOHN MYKLUSCH

12:36:07 1

12:36:09 2    Q    **Who initiated those discussions?**

12:36:09 3    A    I did in both instances.

12:36:12 4    Q    **Why did you initiate those**

12:36:17 5    **discussions.**

12:36:21 6    A    In the first instance it was

12:36:23 7    when I had, I would say, picked up where Chuck

12:36:28 8    left off with regard to Sonus, just his general

12:36:31 9    knowledge of the case and just broad strokes

12:36:35 10    about the Sonus case, and the second was in the

12:36:41 11    case of when we were required to provide

12:36:43 12    documents, I solicited Mike Kileen's help with

12:36:45 13    the delivery of documents that were requested.

12:36:47 14    Q    **Why did you, regarding you**

12:36:50 15    **picking up where Mr. Sweeney left off, why did**

12:36:53 16    **you speak to Mr. Kileen instead of Mr. Sweeney**

12:36:55 17    **at that time?**

12:36:58 18    MR. CERA:  I object to the form.

12:37:02 19    A    CI had owned a very large stake

12:37:05 20    in BPI, would have been involved in the matter

12:37:11 21    in some form or fashion, and I wanted to

12:37:16 22    understand that he did know about the case and

23    what he knew about the case, just very general

24    what's out there.

25    Q    **Do you remember specifically**

John Francis Myklusch

11/03/2006

JOHN MYKLUSCH

12:37:19  1

12:37:20  2   what was said during either of your

12:37:22  3   discussions?

12:37:27  4        A      I really have no knowledge.  I

12:37:29  5   know we talked about Sonus in generalities, I

12:37:35  6   don't think there was anything specific, but as

12:37:37  7   to the context of what we actually talked

12:37:40  8   about, I really don't know.  I don't remember.

12:37:41  9        Q      Why did you solicit Mike

12:37:43 10   Kileen's help regarding the document

12:37:46 11   collection?

12:37:52 12        A      Because a number of the funds

12:37:54 13   are CI funds, and it seemed to be an excellent

12:37:56 14   way for us to ensure we had all the documents

12:38:00 15   or as many of the documents as we could bring

12:38:00 16   to the table.

12:38:02 17        Q      What assistance did he provide

12:38:06 18   you?

12:38:07 19        A      They searched, I'm not certain

12:38:09 20   to the extent of the procedures that he or

12:38:13 21   people that worked for him went through.

12:38:14 22             I do know, however, that they

        23   did deliver to us a number of documents.

        24        Q      What were the documents that

        25   they delivered to you?

John Francis Myklusch                    11/03/2006

Page 117

JOHN MYKLUSCH

12:42:54  1

12:42:57  2    documents, I don't think so.

12:42:59  3        Q       Can you walk me through your

12:43:02  4    process in collecting documents?

12:43:04  5            MR. CERA:  Asked and answered

12:43:04  6        previously at length.

12:43:09  7            You can go ahead and answer it

12:43:10  8        again.

12:43:11  9        A     We identify a group of

12:43:13 10    individuals that would be best suited for

12:43:13 11    looking for documents in here.

12:43:15 12        Q       That's the document collection

12:43:17 13    team?

12:43:19 14        A     The document collection team,

12:43:21 15    some of the individuals were people that would

12:43:26 16    actually be doing the looking, some of the

12:43:30 17    people were people we would talk to about

12:43:34 18    either we or I talked to about how, where we

12:43:37 19    should be looking for these documents.

12:43:42 20            We provided counsel with every

12:43:45 21    single backup tape, computer backup tape we

12:43:49 22    could find on our premises -- I'm sorry, in the

23    Florida office those are tapes that would have

24    backed up BPI's systems.

25            I believe counsel has gone

John Francis Myklusch                                11/03/2006

Page 118

JOHN MYKLUSCH

12:43:56  1

12:44:01  2    through a pretty arduous process of recovery

12:44:03  3    and examining those, and I believe those were

12:44:04  4    provided in -- were provided in there to

12:44:07  5    counsel already, provided to you already.

12:44:08  6           Q      When did you provide counsel

12:44:10  7    with those backup tapes?

12:44:14  8           A      I don't know the exact date,

12:44:15  9    although I believe it was at the same time

12:44:17 10    which counsel visited the Florida office.

12:44:18 11           Q      When do you think that was?

12:44:21 12           A      I do not recall the date.

12:44:22 13           Q      Was it after you had begun the

12:44:26 14    document collection process?

12:44:27 15           A      I believe I had received this

12:44:29 16    document prior to counsel's appearance in our

12:44:30 17    Florida office.

12:44:32 18           Q      Do you have any sense of how

12:44:33 19    much time passed between when you received this

12:44:40 20    document and when counsel arrived at your

12:44:41 21    Florida office?

12:44:43 22           A      No, I don't.

         23           Q      Now, you mentioned on the

         24    document collection team some of those people

         25    were the ones who, I think in your words,

John Francis Myklusch

11/03/2006

Page 200

JOHN MYKLUSCH

14:40:55  1

14:40:55  2       MS. COFFEY:  I think those are

14:40:56  3       all my questions, do you have additional

14:40:59  4       questions?

14:40:59  5       MR. MATULE:  I just have a

14:40:59  6       handful of questions.

14:41:03  7

14:41:05  8  EXAMINATION BY MR. MATULE:

14:41:07  9

14:41:07 10       MR. CERA:  This is counsel for

14:41:12 11       Mr. Nill.

14:41:17 12   Q     Matt Matule of Skadden, Arps,

14:41:19 13  Slate, Meagher & Flom, Boston on behalf of

14:41:21 14  Stephen Nill.

14:41:23 15       Mr. Myklusch, do you know who

14:41:29 16  Stephen Nill is?

14:41:32 17   A     I know that Stephen Nill was a

14:41:33 18  control person within Sonus, I believe he was

14:41:36 19  the CFO.

14:41:40 20   Q     What do you mean by he was a

14:41:42 21  control person?

14:41:58 22   A     CFO would be a listed officer,

23  he had the ability to control operations of the

24  company.

25   Q     Is that how you view your role

LegaLink Boston, Merrill Legal Solutions
(617) 542-0039

**John Francis Myklusch**                                    11/03/2006

Page 203

JOHN MYKLUSCH

14:44:28  1

14:44:33  2          case.

14:44:50  3              **Q      Mr. Myklusch, is it your**

14:44:52  4      **contention in this case that the restatement at**

14:44:58  5      **Sonus in July of 2004 was as a result of fraud?**

14:45:00  6              A      Revenue manipulation would be a

14:45:02  7      fraud, so yes, I think the primary driver is a

14:45:05  8      fraud at issue.

14:45:08  9              **Q      Are you aware of any facts**

14:45:09 10      **supporting such contention that there was**

14:45:11 11      **fraud?**

14:45:14 12              A      I know the broad strokes of the

14:45:17 13      case, but I do not know the exact details

14:45:18 14      behind the exact specific instances or frauds

14:45:20 15      that are alleged.

14:45:22 16              **Q      It's fair to say, is it not,**

14:45:23 17      **that you don't have any personal knowledge**

14:45:24 18      **about any of the allegations in the Complaint?**

14:45:28 19                  MR. CERA:  Well, hold on a

14:45:29 20          second.

14:45:32 21                  That's overbroad.  Any of the

14:45:34 22          allegations like the Plaintiff purchased

         23          Sonus securities?

         24                  I mean are you talking about the

         25          underlying charging allegations of

John Francis Myklusch

11/03/2006

Page 205

JOHN MYKLUSCH

Q       (Continuing) --  whether you
have any personal knowledge of any of the
allegations in the Complaint?

A       If your question is asking me
whether I am aware of the specific allegations
or any of the specific specifics of the case in
that layer of detail, then the answer is no.

Q       Do you know who Peter Hemme
is?

A       I believe Peter Hemme is the
Comptroller of Sonus.

        Or was the Comptroller, I'm
relatively sure he's not today.

Q       Do you have any personal
knowledge of any of the allegations that are
made against Mr. Hemme?

A       I do not.

Q       Who is the individual at BPI or
Trilogy who has primary oversight
responsibility for this litigation?

A       How would you define oversight?

Q       What do you understand by that
term?

A       If you mean the ability to make

John Francis Myklusch

11/03/2006

Page 206

14:48:33  1              JOHN MYKLUSCH

14:48:38  2    decisions on a going forward basis, would that

14:48:41  3    be a fair -- so if something were to come about

14:48:42  4    that required a decision by BPI or Trilogy that

14:48:44  5    this person would have that ability, is that --

14:48:47  6         Q     I will take that.

14:48:50  7         A       I would say the two individuals

14:48:56  8    that I report to, both Carol Holley and Ryan

14:48:59  9    Burrow, would be the people that I would look

14:49:04 10    to inform, in conjunction with counsel, what

14:49:05 11    our potential decisions are and then depending

14:49:06 12    on what they felt, they could then make that

14:49:08 13    decision.

14:49:10 14         Q     Do you have any understanding as

14:49:12 15    to how much time either of those individuals

14:49:19 16    have spent providing such oversight for this

14:49:33 17    litigation?

14:49:34 18              MR. CERA:  I object to form.

14:49:40 19         A       No, I don't know offhand.

14:49:43 20         Q     Do you understand that either

14:49:44 21    you or those individuals have such

14:49:48 22    responsibility to oversee the conduct of lead

         23    Plaintiff counsel?

         24         A       Yes, we understand that we need

         25    to watch over the case to make sure the case is

LegaLink Boston, Merrill Legal Solutions
(617) 542-0039

John Francis Myklusch

11/03/2006

Page 207

JOHN MYKLUSCH

14:49:56  1

14:49:58  2    progressing in a reasonable manner, to stay

14:50:01  3    involved.

14:50:07  4         Q        You mentioned the May 2006 order

14:50:12  5    of the court previously, do you remember that?

14:50:17  6         A      Yes.

14:50:18  7         Q        Are you aware that the Section

14:50:21  8    10(a) and 10(b)(5) claims against my client

14:50:27  9    were dismissed?

14:50:33 10         A      I do -- I was made aware by

14:50:37 11    counsel that several claims for both Mr. Amed

14:50:39 12    and Mr. Nill were not upheld by the judge, but

14:50:41 13    that it's my recollection that several of the

14:50:42 14    issues were allowed to proceed.

14:50:42 15         .  MR. CERA:  Can I hear the answer

14:51:07 16         back, I just didn't hear.

14:51:10 17              (The answer requested was read back

14:51:12 18         by the reporter.)

14:51:17 19         Q        Which claims are you aware that

14:51:20 20    survived the motion to dismiss?

14:51:23 21         A      I am not aware of which claims

14:51:27 22    were allowed to survive.

         23         Q        Is there anyone within either

         24    Trilogy or BPI that would be aware of the

         25    status of the case vis-a-vis what claims have

John Francis Myklusch                                    11/03/2006

Page 208

### JOHN MYKLUSCH

14:51:32  1
14:51:34  2    been upheld and what claims have been
14:51:40  3    dismissed?
14:51:43  4            A       We rely on counsel to keep us
14:51:55  5    apprised and to tell us what we need to know in
14:52:25  6    relation to the case, to provide us with an
14:52:37  7    appropriate QA, both, we can ask counsel where
14:52:42  8    the case is proceeding.
14:52:43  9            Q       Are you aware of how BPI Global
14:52:44 10    came to engage the Gold Bennett firm?
14:52:45 11            MR. CERA:  That was asked and
14:52:46 12            answered previously.  You can go ahead
14:52:48 13            and answer.
14:52:50 14            MR. MATULE:  It was some time
14:52:52 15            ago.  I ask your indulgence.
14:52:57 16            A       I was not affiliated with BPI at
14:53:00 17    the time, so I do not know the exact procedures
14:53:05 18    that we went through to engage counsel.
14:53:09 19            Q       Have you since come to know?
14:53:12 20            A       I, upon taking over my portion
14:53:16 21    of the case, taking over the responsibility to
14:53:20 22    keep the members of Trilogy informed and
         23    follow-up on the case, did have a discussion
         24    with counsel about themselves, their
         25    qualifications and the case as it stood so far.

# GOLD BENNETT CERA & SIDENER LLP
## ATTORNEYS AT LAW

595 MARKET STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94105-2835

TELEPHONE (415) 777-2230
TELECOPIER (415) 777-5189

PAMELA A. MARKERT
pmarkert@gbcslaw.com

DAVID B. GOLD
(1926-1994)

January 18, 2007

**VIA E-MAIL PDF**

Justin Kemler
Court Reporting Video Production
LegaLink, A Merrill Communications Company
101 Arch Street 3rd Floor
Boston, MA 02110

Re:    *In re Sonus Networks Litigation*
       <u>November 3, 2006 Deposition Transcript of John Francis Myklusch</u>

Dear Mr. Kemler:

On November 29, 2006, we sent you a letter regarding our concerns about the above-referenced transcript originally e-mailed to us on November 22, 2006. While some corrections were made in the revised transcript received by this office on December 20, 2006, several errors remain. According to an email from Donna Barretto of your office, no audiotape was made by the court reporter. Testimony and statements by counsel are effectively lost, and we are left to rely on the recollections of the counsel and deponent who were present. While it is impossible to identify every statement missing from the record, below are objections to the transcript by counsel for Lead Plaintiff.

| <u>Page/Line</u> | <u>Error/Omission</u> |
|---|---|
| | **Missing Text** |
| 84:22 (originally at 84:14) | Mr. Cera made an objection, but was interrupted by Mr. Matule, who then stated, "I'm sorry, go ahead." Mr. Cera's initial objection is missing. |

January 18, 2007
Page 2

| Page/Line | Error/Omission |
|---|---|
| 141:22 (originally at 141:12) | The transcript refers to a discussion off the record. This is incorrect. I do not recall making a request to go off the record, and the original transcript sent to our office on November 22, 2006 did not state such a request had been made. I made a detailed objection to Ms. Coffey's questioning of the witness about defendants' request for documents that is missing from the transcript. Counsel for the parties had previously engaged in a lengthy meet and confer about requests for documents and agreed to limit the scope of the documents that would be provided in response to several requests. My statement on the record that the deponent be questioned on the scope of documents to be produced, which were agreed upon subsequent to the initial document requests, and Ms. Coffey's response, are missing in their entirety. The missing dialogue between counsel is critical. We object to the subsequent change to the revised transcript and restate our objection that the dialogue between counsel was improperly omitted by the court reporter. |
| 185:5-6 (Originally at 184:17-18) | While the objection has been added to the record, a portion of the statement attributed to me is unintelligible. There appears to be a transcription error, "I want to again remember we had a meet and confer on this. . ." should say, "I want to again remind everyone we had a meet and confer on this. . . ." |

In addition to the objections above, Mr. Myklusch has noted the following errata.

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 9 | 19 | change "Comptroller" to "Controller" | Transcription error. |
| 10 | 4 | " " | |
| 14 | 7 | " " | " |
| 205 | 12 | " " | " |
| 205 | 13 | " " | " |
| 10 | 17 | "and the compliance related" should be "and other compliance related" | Clarification |
| 12 | 11 | "into Trilogy" should be "with and into Trilogy" | Clarification |

January 18, 2007
Page 3

| 12 | 16-17 | "deemed 100 percent of their equity up into Trilogy" should be "contributed their interests in exchange for membership interests in Trilogy" | Clarification |
|----|-------|----|----|
| 18 | 7-8 | "I believe a number of my training I received when" should be "I believe I received my training when" | Transcription error |
| 37 | 11 | "under the law" should be "under U.S. law. | Clarification |
| 93 | 17-18 | "an interview" should be "interviews" | Transcription error |
| 49 | 23 | "Arroyo" should be "Orea" | Spelling error |
| 87 | 22 | "          " | "          " |
| 120 | 13-14 | "          " | "          " |
| 121 | 17 | "          " | "          " |
| 49 | 23 | "Guardine" should be "Guyadeen" | Spelling error |
| 87 | 22 | "          " | "          " |
| 120 | 13 | "          " | "          " |
| 42 | 14 | "K-i-l-e-e-n" should be "K-i-l-l-e-e-n" | Spelling error |

Please ensure that my November 29 letter, Ms. Barretto's email (copy attached) and this letter are included with the certified copy of Mr. Myklusch's deposition transcript.

Very truly yours,

Pamela A. Markert

Encls: November 29, 2006 Letter
December 14, 2006 e-mail

cc:    Solomon B. Cera, Esq.
Matthew J. Matule, Esq.
James Prendergast, Esq.
John Baraniak, Esq.
Melissa Coffey, Esq.

PAM:keg
#116163