# Exhibit E

1                UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3       * * * * * * * * * * * * * * *
                                      *
4       IN RE:                        *
                                      *   CA-04-10294-DPW
5                                     *
         SONUS NETWORKS, INC.         *   CA-04-10359-DPW
6                                     *
                                      *
7       * * * * * * * * * * * * * * *

8            BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

9               UNITED STATES DISTRICT COURT JUDGE

10                          HEARING

11                      JUNE 28, 2004

12      APPEARANCES:

13           JUDEN JUSTICE REED, ESQ., Schubert & Reed, LLP,
             Two Embarcadero Center, Suite 1660, San Francisco,
14           California  94111, on behalf of Michelle Burk,
             plaintiff in derivative case
15
             JOHN C. MARTLAND, ESQ., Gilman and Pastor, LLP,
16           Stonehill Corporate Center, 999 Broadway, Suite
             500, Saugus, Massachusetts  01906, on behalf of
17           Michelle Burk, plaintiff in derivative case

18           TRAVIS E. DOWNS, III, ESQ., Lerach, Coughlin,
             Stoia & Robbins, LLP, 401 B. Street, Suite 1700,
19           San Diego, California  92101, on behalf of
             Global Undervalued Securities Master Fund
20
             MICHAEL K. MATTCHEN, ESQ., Dangel & Mattchen, LLP,
21           10 Derne Street, Boston, Massachusetts  02114, on
             behalf of Michael Pisnoy, plaintiff in derivative
22           action

23           PAUL T. WARNER, ESQ., Reich & Binstock, 4265
             San Felipe, Suite 1000, Houston, Texas  77027,
24           on behalf of Michael Pisnoy, plaintiff in
             derivative action

25

```
 1      APPEARANCES (Continued):

 2          ALAN L. KOVACS, ESQ., 2001 Beacon Street, Suite
            106, Boston, Massachusetts  02135, on behalf of
 3          Daniel Williams, plaintiff in derivative action

 4          WILLIAM B. FEDERMAN, ESQ., Federman & Sherwood,
            120 N. Robinson, Suite 2720, Oklahoma City,
 5          Oklahoma  73102, on behalf of Daniel Williams,
            plaintiff in derivative action
 6
            JUSTIN S. KUDLER, ESQ., Schatz & Nobel, P.C.,
 7          330 Main Street, Hartford, Connecticut  06106-1851,
            on behalf of Brad Rollow, plaintiff
 8
            GLEN DeVALERIO, ESQ. and NICOLE R. STARR,
 9          Berman, DeValerio, Pease, Tabacco, Burt &
            Pucillo, One Liberty Square, 8th Floor,
10          Boston, Massachusetts  02109, on behalf of
            James Brower, plaintiff in securities action
11
            SOLOMON B. CERA, ESQ., Gold, Bennett, Cera &
12          Sidener, LLP, 595 Market Street, Suite 2300,
            San Francisco, California  94105-2835, on
13          behalf of Plaintiff Movant and BPI Global
            Asset Management
14
            DARREN J. CHECK, ESQ., Schiffrin & Barroway,
15          LLP, Three Bala Plaza East, Suite 400,
            Bala Cynwyd, Pennsylvania  19004, on behalf
16          of the Farhat Group, plaintiff in the securities
            action
17
            TODD HEYMAN, ESQ., Shapiro, Haber & Urmy, LLP,
18          53 State Street, Boston, Massachusetts  02108,
            on behalf of the Farhat Group, plaintiff in
19          the securities action

20          JEFFREY B. RUDMAN, ESQ. AND DANIEL W. HALSTON,
            ESQ., Wilmer Cutler Pickering Hale and Dorr, LLP,
21          60 State Street, Boston, Massachusetts  02109, on
            behalf of Sonus Networks, Inc.
22
            ROBERT S. FRANK, JR., P.C., Choate, Hall & Stewart,
23          53 State Street, Boston, Massachusetts  02109, on
            behalf of Hassan Ahmed, Defendant
24
        (Appearances continued next page)
25
```

3

```
 1    APPEARANCES (Continued):

 2         MATTHEW J. MATULE, ESQ., Skadden, Arps, Slate,
           Meagher & Flom, LLP, One Beacon Street, Boston,
 3         Massachusetts  02109-3194, on behalf of Stephen J.
           Nill, Defendant
 4
           JOHN D. HUGHES, ESQ., Edwards & Angell, LLP,
 5         101 Federal Street, Boston, Massachusetts  02110,
           on behalf of Defendants Ruben Gruber, Paul R.
 6         Jones, Edward N. Harris and J. Michael O'Hara

 7

 8

 9

10

11                                    Courtroom No.  1 - 3rd Floor
12                                    1 Courthouse Way
                                      Boston, Massachusetts 02210
13                                    2:30 P.M. - 3:15 P.M.

14

15

16

17
                   Pamela R. Owens - Official Court Reporter
18                  John Joseph Moakley District Courthouse
                        1 Courthouse Way - Suite 3200
19                       Boston, Massachusetts  02210

20

21

22

23

24            Method of Reporting:  Computer-Aided Transcription

25
```

1          THE CLERK:  This Honorable Court is now in

2     session.  Please be seated.

3          Calling the case in Re:  Sonus Network

4     Litigation.  Could I have counsel please identify

5     yourself for the record?

6          MR. REED:  Justice Reed, Schubert & Reed,

7     San Francisco, California, for Plaintiff Michelle Burk

8     in the derivative case.

9          MR. MARTLAND:  John Martland, Your Honor,

10      Gilman and Pastor, Saugus, Massachusetts, for

11     Plaintiff Michelle Burk, derivative action.

12          MR. DOWNS:  Good afternoon, Travis Downs,

13     Lerach, Coughlin, San Diego, California, for the Global

14     Undervalued Fund in the securities action.

15          MR. MATTCHEN:  Good afternoon, Your Honor,

16     Michael Mattchen from Dangel & Mattchen for the

17     Plaintiff Michael Pisnoy in the derivative action.

18          MR. WARNER:  Good afternoon, Paul Warner,

19     Houston, Texas firm of Reich & Binstock, also on behalf

20     of the derivative plaintiff Michael Pisnoy.

21          MR. KOVACS:  Alan Kovacs, Boston,

22     Massachusetts, on behalf of Plaintiff Williams in the

23     derivative action.

24          MR. FEDERMAN:  Bill Federman, Federman &

25     Sherwood, on behalf of Plaintiff, Daniel Williams,

1    in the derivative action.

2           MR. KUDLER:  Your Honor, I'm Justin Kudler

3    from Schatz & Nobel and represent the Plaintiff Brad

4    Rollow.

5           MR. DEVALERIO:  Your Honor, Glen DeValerio and

6    Nicole Starr for the Plaintiff Brower in the securities

7    action.

8           MR. CERA:  Good afternoon.  I'm Solomon Cera

9    of Gold, Bennett, Cera & Sidener, representing BPI

10   Global Asset Management.

11          MR. CHECK:  Good afternoon, Your Honor.

12   Darren Check from Schiffrin & Barroway in Bala Cynwyd,

13   Pennsylvania, on behalf of the Farhat Group in the

14   securities action.

15          MR. HEYMAN:  Good afternoon, Todd Heyman

16   from Shapiro, Haber & Urmy in Boston, Massachusetts,

17   local counsel for the Farhat Group.

18          MR. RUDMAN:  Jeff Rudman from Wilmer Cutler

19   Pickering Hale & Dorr for the Sonus employees and

20   directors.

21          MR. HALSTON:  I'm Dan Halston from the same

22   firm and for the same defendants.

23          MR. FRANK:  Robert Frank from Choate, Hall &

24   Stewart for the Defendant Hasan Ahmed.

25          MR. MATULE:  Matthew Matule, Skadden, Arps,

6

1    Slate, Meagher & Flom here in Boston on behalf of

2    Defendant Stephen J. Nill.

3                MR. HUGHES:  Good afternoon, Your Honor,

4    John Hughes from Edwards & Angell for the individual

5    defendants, Gruber, Jones, Harris and O'Hara.

6                THE COURT:  Let me start with the derivative

7    case.  What's the status of the motion to dismiss before

8    Judge Van Gestel?

9                MR. HALSTON:  The hearing was heard on that

10   June 11th, Your Honor, and that matter has been taken

11   under advisement.

12               THE COURT:  What exactly does he have -- two

13   cases, three cases?  What does he have?

14               MR. HALSTON:  Two cases, one brought on behalf

15   of Plaintiff Palma and the other one brought on behalf

16   of Plaintiff Tillman.

17               THE COURT:  Is there anything distinctive

18   about those cases as opposed to the derivative cases

19   here?

20               MR. HALSTON:  I think the only thing

21   distinctive is that I think you may have one more

22   defendant in those cases and you may have one or more

23   additional claims that are brought in those particular

24   cases.  But otherwise, they are the same.  There was

25   also a request for discovery and there was a motion to

1    stay discovery in that case.  That has also been

2    allowed.  Discovery has been stayed until the court

3    rules on the motion to dismiss.  But I think otherwise

4    the claims are very similar to the derivative claim

5    that's been brought here.

6          MR. REED:  Justice Reed for Plaintiff Michelle

7    Burk.  I think it's a little early to draw distinctions

8    because one of the things we would hope to do today

9    would be to have the three derivative cases before Your

10   Honor consolidated and to schedule the filing of a

11   consolidated amended complaint which might include

12   additional parties or additional theories of recovery.

13         THE COURT:  Well, I'm just thinking ahead of

14   why there shouldn't be coordination with Judge Van

15   Gestel's case informally.

16         MR. REED:  Certainly we would work with

17   defendants to coordinate discovery going forward,

18   pretrial proceedings.

19         MR. FEDERMAN:  Your Honor, if I might, Bill

20   Federman.  One of the things the derivative counsel

21   would seek to do here -- I don't know about my

22   co-counsel.  But to end the amended complaint where

23   we consolidate the derivative cases, then file for

24   a surveying obsolete possible violation which

25   is going to be in the federal court.  They can't pursue

1    that claim in the state court.  But we would reach out

2    to the state court action if it's surviving the motion

3    to dismiss and coordinate with counsel there.

4         THE COURT:  Well, I guess, my view is that

5    particularly in the same state, that it's relatively

6    easy to do coordination without formally getting in

7    trouble about different jurisdictions.

8         Now, what's the need for appointment of lead

9    counsel in this as to the derivative cases?

10        MR. REED:  I think it's a matter of judicial

11   efficiency, Your Honor.  You have three competing cases,

12   one of which is currently stayed.  But I think that

13   that's -- you know, we all view that as temporary.  And

14   for the same reason that you appoint a single lead

15   counsel to run 20 consolidated class cases, it's just

16   that you need someone for the defendants to go to.  And

17   I'm happy to work with any or all of the derivative

18   counsel.  And for that matter, we have a good working

19   relationship with the Robbins, Mutter & Fink firm that

20   is plaintiffs' counsel in the state derivative cases.

21        THE COURT:  Well, let me hear you on the

22   question of your appointment.

23        MR. REED:  Excuse me?

24        THE COURT:  Let me hear you on the question of

25   your appointment.

1            MR. REED:  My firm seeks appointment as --

2            THE COURT:  Just talk in terms of pure

3    numbers.  How much do you have?

4            MR. REED:  I'm sorry.  How much what?

5            THE COURT:  How much do you have in this case?

6    How do we evaluate this financially as a derivative case

7    for you?

8            MR. REED:  in terms of damages?

9            THE COURT:  Yes.

10            MR. REED:  Damages in the derivative case are

11    measured by the loss of value to the corporation in

12    terms of its ability to track future financing of

13    insider trading.  The damages, there's two million

14    dollars of damages alleged there.  The market loss is

15    significant.  Roughly a quarter of the company's market

16    price has gone away.  And that's a surrogate for the

17    damage of the loss of the value of the company.  It's

18    not a direct measure, but it's a good indicator.

19            THE COURT:  Well, I guess what I'm asking is

20    -- it seems like a simple question, a simple-minded

21    question -- to evaluate in a way that I will with

22    respect to the securities cases the financial interest,

23    financial investment and the ability of your plaintiff

24    or plaintiffs to function effectively as lead counsel.

25            MR. REED:  My understanding is that each of

```
 1    the derivative plaintiffs own a relatively nominal

 2    amount of stock; that probably the more, I guess, common

 3    inquiry is into the bona fides of counsel.  And I have

 4    as co-counsel the Alderstein (ph.) firm of New York, and

 5    the Gilman and Pastor firm here in Boston.  Together

 6    with the firm, we just recently successfully litigated

 7    to a settlement the Quest Communications International

 8    case in Denver.  That was a 25 million dollar recovery

 9    for the company together with -- we negotiated the

10    corporate governance --

11              THE COURT:  What do you think I'm doing?  I'm

12    somewhat perplexed.  What do you think I'm doing in

13    making this evaluation -- picking out the person I'd

14    like to go to the prom with; is that it?

15              MR. REED:  I think you're picking out the

16    person amongst the group who will most adequately

17    represent the interests of the company.

18              THE COURT:  Right.  And what is the real basis

19    for doing that, looking around and saying, "well,

20    they've done these cases, that case."  Is that what I'm

21    doing?  What do I do?  Did Judge Van Gestel consolidate?

22              MR. HALSTON:  They were stipulated to, to be

23    consolidated.  They were heard on a consolidated basis.

24              THE COURT:  Did he have lead counsel

25    appointed?
```

1          MR. HALSTON:  I don't know that he has entered

2     an order for lead counsel.  No.

3          MR. RUDMAN:  [Shaking head from side to side].

4          MR. REED:  If you choose not to appoint lead

5     counsel in the derivative, we will work as a committee

6     of the whole -- there's no question of that.  I don't

7     think there's so many of us that it's impractical.  The

8     question is:  What makes the most sense for the Court?

9          MR. FEDERMAN:  Your Honor, if I might, just

10    briefly, Bill Federman again.  I guess there are

11    fundamental differences in the approach taken by counsel

12    here.  I have not worked very closely with Mr. Reed.

13    I'm co-counsel with the Wolf, Hagenstein firm, probably

14    a half dozen cases currently now.  The Williams case was

15    filed first, a derivative action.  There's one other

16    criteria.  It's not the sole criteria.  Unfortunately,

17    the courts have not had the ability similar to the PSLRA

18    in having a guideline to appoint lead counsel.

19    Structurally, we don't think this case can really afford

20    -- it's not a big enough case to have committees of

21    counsel appointed.  Mr. Kovacs, my local counsel, and I

22    have worked together closely in other derivative

23    actions.  We're lead against Wave Systems in

24    Massachusetts as well as IBIX which is pending in

25    this court.  We did not name all the defendants that

1    other counsel named.  We distinguish a difference
2    between loss and damages.  We don't think it's necessary
3    at this point to sue each defendant simply because they
4    sold stock where we have information to believe,
5    particularly Edward Harris, Michael O'Hara and Paul
6    Jones, all of whom are vice-presidents of this
7    corporation, were not involved in the wrongful acts.
8    And the wrongful acts are the revenue recognition
9    problem that actually cost the company 46 percent of its
10   market cap from the high to the low of when things fell
11   apart.  This is an accounting problem, Your Honor, and
12   bullet shot will be much more effective than a shotgun.
13   And to bring efficiency to that type of case -- the
14   accounting case -- Your Honor, I think it would be more
15   efficient if we had a lead point law firm rather than
16   rule by committee.
17              THE COURT:  Well, I guess I really don't know
18   enough about this case to make that kind of discreet
19   judgment.  And I guess my inclination is simply to Stay
20   it until I see what Judge Van Gestel does and then sort
21   through it after that, including the question of whether
22   or not to have lead counsel, whether it's appropriate to
23   have lead counsel here.  I just tried to sort through, in
24   some meaningful way, distinctions.  I'm not intimately
25   familiar with any of the counsel who are seeking to be

1    lead counsel in the derivative case, so I can't make a

2    personal judgment in that way and I think it's going to

3    have to be kind of shaken out a bit before I have some

4    meaningful basis for making the kind of judgment that's

5    necessary.  Now, what problem does that pose?

6            MR. FEDERMAN:  Well, Your Honor, I guess that

7    we could work -- and so far, it hasn't been difficult to

8    work with other securities counsel and defense counsel.

9    There is obviously -- there is no automatic stay with

10   derivative counsel the way there is in a securities

11   case.

12           THE COURT:  Right.

13           MR. FEDERMAN:  So we would need to work out

14   some order for preservation of all documents, including

15   personal E-mails, hard drives of laptops.  We want to

16   encrypt or protect the hard drives on these people's

17   laptops and preserve all E-mails.  If we're talking

18   about two to three months, honestly, Your Honor, it

19   would probably not be terribly detrimental.  If we're

20   talking about five, six, seven, or eight months, it

21   becomes a bigger problem although many of these people

22   have been with the company for years.  There's a

23   possibility of them leaving, moving with -- I don't know

24   if all these persons are even U.S. citizens.  I know

25   several are foreign-born.  It's possible they could

1    leave, get beyond the subpoena power of the court.

2              THE COURT:  What's the status of the

3    provisional orders like that in the state court?  Is

4    there anything in the state court?

5              MR. HALSTON:  I don't believe there are any.

6              THE COURT:  Judge Van Gestel simply stayed the

7    case and took the motion to dismiss under advisement; is

8    that it?

9              MR. HALSTON:  Correct.

10             MR. REED:  At a minimum, it would seem

11   efficient to consolidate the derivative cases for

12   pretrial purposes here.  So, assuming Judge Van Gestel

13   is either going to dismiss the case or not, at that

14   point, you would want an efficient way to address the

15   litigation here even if you have stayed the case for

16   temporary purposes.

17             THE COURT:  That's for sure.  The question is

18   having a meaningful basis to make some judgment about

19   how counsel is, apart from saying it sounds like an

20   interesting resume'.

21             MR. REED:  Well, it's entirely possible that

22   if you were to consolidate the cases and direct us to go

23   forth and confer, we could reach some agreement.

24             THE COURT:  I think that's what I'm going to

25   do.  That is, I'm consolidating the cases.

```
1              I'm not yet appointing lead counsel.  I'm
2      telling you that I don't have a basis, I think, or
3      structure to make an evaluation.  And we'll set it down
4      for further conference, say, six weeks from now,
5      something like that.
6              MR. REED:  That's fine.  Would Your Honor be
7      willing to entertain a co-lead structure or are you
8      looking for a single firm to step forward as the --
9              THE COURT:  No no.  I'm told that there is not
10     enough money in it for three counsel.  So, is there
11     enough for two?
12             MR. REED:  Well, reasonable attorneys can
13     differ.
14             THE COURT:  Right, no doubt they can.  I'm in
15     favor of whatever is most efficient, the most efficient
16     in the largest possible sense which is causing the least
17     drain on all of the parties, not merely the plaintiffs,
18     but also the defendants, having in mind that this is a
19     derivative case.
20             So, the short of it is I'm willing to permit
21     you to come up with something reasonable on this, but
22     we'll consolidate the three derivative cases.  I still
23     am interested in assuring that there not be a conflict
24     between the state court case and this case.
25             MR. REED:  Now, are you staying them until
```

1    there is some ruling?

2         THE COURT:  Yes.  I'm going to stay for now

3    pending the ruling, but actually have you come back

4    here.  I'm open to the idea of provisional remedies

5    to preserve evidence and that sort of thing.

6         MR. REED:  And then the appropriate thing to

7    do would be to make a motion to lift the stay at such

8    time.

9         THE COURT:  Yes.  And if Judge Van Gestel

10   takes too long, you think, then I'll be open to it.  But

11   it seems to me having a reasonable amount of time to

12   have at least one cut at this issue before we start to

13   frame the issues for this case is a good --

14        MR. REED:  Do you view six weeks as a

15   reasonable time frame to set a date to come back?

16        THE COURT:  Yes.  I was going to ask Ms.

17   Greenberg to do that.

18                    OFF THE RECORD

19        THE COURT:  August 10.  Other people take

20   vacations, but --

21        MR. REED:  That would work for my firm, Your

22   Honor.

23        THE COURT:  All right.  So we'll say August

24   10th.  And what I would like is by August 5th some sort

25   of status report --

1    MR. REED:  Thank you.

2    THE COURT:  -- with respect to both the

3    question of the development of a lead counsel

4    arrangement if you still think it's necessary, and the

5    status of the state court, and suggestions about ways to

6    coordinate with the state court.  I just don't want the

7    cases stumbling over each other.

8    MR. REED:  Thank you.

9    THE COURT:  All right.

10   MR. FEDERMAN:  Will it be at the same time on

11   August 10?

12   THE COURT:  Yes, 2:30 on August 10th.

13   MR. FEDERMAN:  Your Honor, if I cannot work it

14   out or if we can't, I guess, all agree to a structure, I

15   guess we could report.  And would you want us to provide

16   you with alternate ideas that other courts have --

17   THE COURT:  Yes.  At some point, I'm going to

18   have to make a determination, I think.

19   MR. FEDERMAN:  Right.

20   THE COURT:  But I would prefer not to make a

21   determination when I find the standards to be ones in

22   which I would be potentially guessing about who it

23   should be.  It's as simple as that.

24   MR. REED:  Thank you, Your Honor.

25   THE COURT:  That means we're consolidating --

1    let me make sure that I have it right -- as a group

2    No. 04-10359, No. 04-10384, and No. 04-10576.  Is that

3    right?  Those are the derivative cases.  And just so

4    that it's clear, you'll be filing under 04-10359.

5    Everything is going to be done electronically in terms

6    of filing.  So, I guess it's the Williams case that

7    at least has the place for present purposes, but that

8    doesn't necessarily mean that Williams counsel is

9    lead counsel here.

10            MR. REED:  It's the lead docket number?

11            THE COURT:  Yes.  All right.  And you will

12    work out with the defendants some provisional orders.  I

13    assume that the defendants are not opposed to some

14    provisional order to preserve evidence here?

15            MR. FEDERMAN:  Yes, Your Honor.  Normally, we

16    could do that by a letter agreement.  With these law

17    firms involved, I don't even think that would be an

18    issue.

19            THE COURT:  Okay.  Good.  All right.

20            So let's turn then to the question of the

21    securities cases.  And the question for me is after the

22    submission of these materials from the underlying

23    clients of BPI Global Asset Management, why shouldn't I

24    appoint them?

25            MR. DOWNS:  Your Honor, if I may, Travis

1    Downs of Lerach, Coughlin for the Global Undervalued

2    Securities Fund.  Bilateri (ph.) set up a structure

3    encouraging institutional investors to set forth, take

4    charge in private securities litigation.  Comments --

5            THE COURT:  It's a little different for Hedge

6    funds, though, isn't it?

7            MR. DOWNS:  Not exactly.  Hedge funds do

8    qualify as institutional investments.

9            THE COURT:  They can.  They can, but they have

10   conflicting considerations, don't they?

11           MR. DOWNS:  If they're engaging in short

12   selling, day trading, abnormal atypical trading

13   strategies, yes, they do have issues that may --

14           THE COURT:  Do I know enough about your

15   trading strategies to know how your client has been --

16           MR. DOWNS:  Yes, you do.  We've submitted in

17   our declaration at Exhibit B in our moving papers and I

18   believe it's F in our reply briefs, you will see our

19   tradings and you will see our confirmations.  Two things

20   that take us out of the realm of the other cases and

21   cite as qualifying Hedge funds are our clients bought

22   their own account just like you or I would buy an

23   account and not (inaudible) the clients.  They not

24   A-trade.  They did not sell short.  In fact, you've got

25   a total of eight transactions, I believe.

1          THE COURT:  So the question is then you're

2     half the trading of BPI Global Asset, right?

3          MR. DOWNS:  Well, back where I began, when

4     Congress enacted the PSLRA, one, to the point of

5     confusion.  So, to do that, they focused on largest

6     financial interest.  But that's the first part of the

7     test.

8          The second part of the test is you must

9     satisfy Rule 23 absent typicality requirements.  Here,

10    various people have characterized the problem with BPI

11    as an adequacy issue or largest financial interest

12    issue.  It really doesn't matter.  The problem with BPI

13    is that they don't have standing to sue.  And they don't

14    have standing to sue because they are not buying, suing

15    on the purchase that they made for themselves.

16         THE COURT:  Then I have to disregard

17    Ezra Charitable Trust v. Rent-Way?

18         MR. DOWNS:  I'm sorry?

19         THE COURT:  I have to disregard Ezra

20    Charitable Trust v. Rent-Way?

21         MR. DOWNS:  Yes.  I think those cases are

22    distinguishable, particularly --

23         THE COURT:  Distinguishable or I have to

24    disregard them?

25         MR. DOWNS:  No.  I think they're just

1    distinguishable, different cases altogether.  And the

2    answer to <u>Rent-Way</u> -- and were an investment manager

3    to sue, it has to have absolute authority and the

4    authorization of his clients to bring the suit.  in

5    <u>Rent-Way</u>, you have the situation where it was a

6    declaration of evidence.  I guess it was the documents.

7              THE COURT:  Well, what do I do with Mr. Cera's

8    affidavit and Mr. Sweeney's affidavit?

9              MR. DOWNS:  Well, I don't think that affidavit

10   solved the problem, Your Honor.  It does not -- one,

11   it's not the actual document that sets up whether

12   or not BPI, in fact, has actual authority as the

13   attorney-of-fact who can sue.  It doesn't determine --

14   it talks about the funds, but there are several other

15   applications.  It's an open question as to whether or

16   not those clients even know they're here.  That has

17   happened.

18             THE COURT:  They don't know they're here?

19             MR. DOWNS:  It's happened in other cases, Your

20   Honor --

21             THE COURT:  No doubt it has.

22             MR. DOWNS:  -- where lead plaintiff --

23             THE COURT:  But they don't know they're here?

24             MR. DOWNS:  It's happened before.  Lead

25   plaintiff will go through a case.  It's on appeal.  They

1    find out they've been represented and they withdraw.

2    It was their duty.  They had three opportunities -- in

3    their opening papers, their opposition, their reply --

4    to put forth evidence.

5            THE COURT:  Even with just BPI Global Equity

6    and BPI American Equity, they have the largest financial

7    interest even if these other people don't know that

8    they're involved.

9            MR. DOWNS:  That creates another problem.  If

10   you are going to move the group, you need to be a

11   cohesive group, show some ability to work together.

12   Once you put that application in as a total, it is

13   improper to start pulling out segments to reformulate a

14   group that somehow allows you to capture relief.

15           THE COURT:  They didn't pull out segments to

16   capture relief.  Those are the ones that together have

17   losses of three million five hundred.

18           MR. DOWNS:  I believe that's correct.

19           THE COURT:  What do you have?

20           MR. DOWNS:  Yet they did not --

21           THE COURT:  What do you have?

22           MR. DOWNS:  We have 900 thousand, 900,020.

23   However, you still have the issue with BPI, whether or

24   not BPI sold those shares or purchased the shares, and

25   whether or not BPI has authority to sue on behalf of its

 1    clients.  The position that we have taken and what other

 2    people argue, I think persuasively, looking at the

 3    Treadway case --

 4              THE COURT:  What would you have them do?  How

 5    did they establish this?  If you're not satisfied with

 6    the Cera and the Sweeney --

 7              MR. DOWNS:  It would have been completely --

 8              THE COURT:  Well, we're not talking "would

 9    have been."  We're talking about what's going to happen

10    here.  Because I'm going to get it right.

11              MR. DOWNS:  Well --

12              THE COURT:  If there is a problem --

13              MR. DOWNS:  Well --

14              THE COURT:  No.  Let me tell you:  The

15    gamesmanship is not something I'm very interested in.

16    The nit-picking about certificates doesn't thrill me in

17    the slightest.  What I'm interested in is who it is that

18    Congress really meant to do this.  Who it is that

19    Congress really meant to do it looks to me to be the

20    investment advisor with the money, the largest amount of

21    money who had the discretionary support and control over

22    the sales.  That's what it looks like to me.  Now you

23    say there's some problems here or they haven't done it

24    right.  What do you want them to do right so that I can

25    make the determination and tell me, "you do that and

```
 1    you've got it?"

 2              MR. DOWNS:  I want them to present evidence,

 3    the document that says we authorize BPI to act as

 4    attorney in fact for the movants that they have set

 5    forth and that they have also given the authority to

 6    sue on their behalf.  As I say, they've had three

 7    chances to do that and they have not.

 8              THE COURT:  If that happens, that does it,

 9    doesn't it?

10              MR. DOWNS:  If they were able to do that

11    within the statutory period, that would solve their

12    problem.  However, as I say, they've had three

13    opportunities and yet they have still not done it.  If

14    you go back to Rite-Way (sic), I think that's

15    instructive.

16              THE COURT:  Do you mean Rent-Way?

17              MR. DOWNS:  Rent-Way.  You have a lead

18    plaintiff who saw the issue, presented in documentation

19    that established that they were the attorney in fact,

20    that they had the authorization and full, complete

21    investment discretion over the investment, and had the

22    authority to invest the money, bring a lawsuit if it was

23    appropriate, and then also advise the client that they

24    were in the case.  You don't have those three indicias

25    satisfied here.  And in order to be the most adequate
```

1    plaintiff, you have to satisfy both requirements, the

2    number of components, largest financial interests, and a

3    Rule 23, just like the lead plaintiff who comes into

4    court like in the Nace (ph.) case and says --

5            THE COURT:  Right.  I think I understand.

6    Mr. Cera, why couldn't you do it right?

7            MR. CERA:  Well, Your Honor, we think we did

8    in the sense that we have submitted a declaration of the

9    senior vice-president and general counsel, the ultimate

10   controlling parent of these mutual funds.  That is Mr.

11   Galeen's letter in which he clearly and unequivocally

12   states that --

13           THE COURT:  It's in a letter?

14           MR. CERA:  It's a letter attaching Exhibit 8

15   to my declaration.

16           THE COURT:  Where is his declaration?

17           MR. CERA:  He hasn't submitted one, Your

18   Honor, but we can submit one.

19           THE COURT:  Why not?

20           MR. CERA:  Well, we believe the letter would

21   be sufficient, but we can submit one.

22           THE COURT:  You submitted a letter under an

23   affidavit from a lawyer.  Why did you even submit an

24   affidavit from a lawyer if you think letters are okay?

25           MR. CERA:  Well, Your Honor --

1          THE COURT:  And is that what I'm going to be

2     facing from lead counsel in this case, that kind of

3     sloppiness?

4          MR. CERA:  No, Your Honor.  We're going to do

5     it right and I think we're going to do it right the way

6     we did it in the case that you identified -- Rent-Way --

7     in which I was the counsel.

8          THE COURT:  I understand.  And I wonder why it

9     wasn't done here.

10          MR. CERA:  Your Honor, I can't answer the

11     question other than we felt that the submission of a

12     letter from general counsel under his authorization

13     under his signature attached to my declaration would be

14     sufficient.  But I can get and submit to the Court, if

15     it deems it necessary, such declaration.  I think the

16     fundamental point, however, is that this record

17     demonstrates very clearly that BPI Global had full

18     investment discretion.  And that is what the court in

19     Rent-Way ultimately found the most compelling fact,

20     the determinative fact.  It didn't have anything to do

21     with the attorney in fact or authority to sue issue

22     which I think was made clear in the Rent-Way class

23     certification decision which is reported at 218 F.R.D.[sic]

24     So we went through every step in Rent-Way.  We went

25     throught the lead plaintiff battle where similar

1    arguments were raised by other contenders and the court

2    addressed that.  And then we proceeded to litigate the

3    case.  And we got to the class certification stage and

4    the accounting defendant resurrected these issues again.

5    And we got into this issue very deeply with Judge

6    McLaughlin and he did a very thorough analysis of all

7    the facts.  And he concluded and made very clear that

8    the fundamental issue as to purchaser status is the

9    level of discretion.  Here, we had full and complete

10   discretion, Your Honor, and there should be no issue

11   about the purchaser status.

12           THE COURT:  Let me hear from the defendants.

13   Is there going to be an issue about this?

14           MR. RUDMAN:  I don't believe we're permitted,

15   under Greeble to put in our two cents at the time of

16   selection of lead counsel.

17           THE COURT:  You mean I can't hear you on this?

18           MR. RUDMAN:  I don't think we're allowed.

19   According to Greeble, I believe we are precluded

20   from participating in this process.

21           THE COURT:  Even if the Judge asks you?

22           MR. RUDMAN:  Well, I don't know the answer to

23   that, Your Honor, and I don't know enough about the

24   underlying facts and circumstance as to who traded when

25   and who has what damages in what quarter to give you an

1  answer now.  It could very much be an issue on class

2  certification.

3          THE COURT:  All right.  Now, with the

4  exception of that question of them submitting an adequate

5  affidavit that supports the position that they say they

6  have, is there anything else that would disqualify them?

7  They can bring -- I'm told, anyway -- a Section 11

8  claim that other counsel cannot.

9          MR. DOWNS:  And I understood what the Court

10  said about the certification requirement.  It is a

11  technical requirement, yet an important one.

12          THE COURT:  I agree.  It's very important and

13  it's quite disturbing that it wasn't done in an orderly

14  fashion.  That having been said, there's such a

15  disparity in the financial interest in this case, that

16  it makes no sense not to permit them at least the

17  opportunity to meet the challenge that you've directed

18  them to.

19          MR. DOWNS:  Your Honor, I guess I have two

20  observations, two comments.  One, I heard a lot about

21  counsel's involvement in the Rent-Way case; the

22  other, BP Turkcell, and the experience.  And the

23  Court asked Mr. Cera, "why did you do it here?"

24  Everyone knows that you have 60 days after the notice to

25  make the motion.  It's not like you're walking through

1    virgin snow here.  There were footprints that followed.

2    The fact that they did not comply, I'm not sure is

3    entirely fair to the rest of the class members who

4    complied with the statute fully for the Court to give

5    them additional time.  If the Court is inclined to allow

6    them to put in a declaration to satisfy the requirement

7    certification that the attorney in fact had complete

8    control, I guess I would not object to that.  But I

9    think it does prejudice the class.

10         The lead plaintiff analysis is equally

11    weighted, numbers, adequacy, under typicality under Rule

12    23.  I would ask the Court to take a look at the Rule 23

13    issue because it's very dangerous to the rest of us in

14    the class.

15         THE COURT:  Why is it?  I mean, apart from

16    just, as I said, this kind of sloppiness that somebody

17    would get straightened away after a while, why is that

18    so prejudicial --

19         MR. DOWNS:  It's very prejudicial.

20         THE COURT:  -- that you got all cranked up

21    for this case and then to find out that the Judge thinks

22    that the premises are adequate, that they going to

23    appoint someone else?

24         MR. DOWNS:  The prejudice to the class is that

25    defendants don't have an opportunity at this juncture to

1    really participate.  However, if you appoint someone

2    who is inadequate, we get down the road to class

3    certification, they make all of their arguments as to

4    adequacy and typicality.  And let's say they have to

5    make the argument that BPI has no standing and they can

6    demonstrate that.  Has it been done in the cases that

7    have been cited in the briefs, including Turkcell?

8    That exposes the rest of the class to potentially being

9    tossed out.  That's why I think Congress put Rule 23 up

10   front.

11            THE COURT:  All right.  So now I'm presented

12   with what I think I should be presented.  But let's go

13   back to this question of certification.  Does

14   certification have to be done by affidavit?

15            MR. DOWNS:  Well, the certification --

16            THE COURT:  Does certification of their

17   qualifications have to be done by affidavit?

18            MR. DOWNS:  I think absolutely.  Well, most

19   certainly the certification disclosing the prior

20   litigation has to be done under penalty of perjury.

21            THE COURT:  Right.  But as to the --

22            MR. DOWNS:  You put that in an affidavit.

23            THE COURT:  -- as to these questions of

24   standing?

25            MR. DOWNS:  As to the other, the proper way to

1    do it, the way it's been done --

2              THE COURT:  No.  Does it have to be done that

3    way?

4              MR. DOWNS:  Yes.  I would submit that it needs

5    to be done as the --

6              THE COURT:  Under the statute?

7              MR. DOWNS:  Competent evidence that they have

8    complied.  And insofar as they've submitted it under --

9    by letter, it doesn't satisfy competent evidence.  They

10   have not complied within the statutory period.  Lead

11   plaintiff has a big responsibility to the class and

12   cannot be sloppy and to discharge all of their

13   obligations timely and effectively and efficiently is a

14   fact that really goes to the adequacy.  Here, I do think

15   a major problem is that you have the risk that you are

16   going to install as a lead plaintiff a client or a

17   plaintiff who does not have standing.  And that puts --

18   AMGEN says that the class must have adequate

19   representation at all times.

20             THE COURT:  If they're able to submit an

21   affidavit that supports the letter of submission, they

22   will have it, won't they, under the Rent-way

23   certification decision?

24             MR. DOWNS:  No.  I don't believe that this

25   letter satisfies the requirements.  I think if they

1    haven't, if he had the documents, your client came in,

2    I'm sure they signed an agreement that gave BPI complete

3    and absolute discretion to make the investment decisions

4    to give BPI the complete and absolute authority to take

5    action to sue if required, and that they informed BPI or

6    the fund that BPI would be seeking lead plaintiff, if

7    all that existed, I think we have seen it.  Now, if they

8    want to try to generate that after the fact and the

9    Court wants to allow them to do that, then I guess we do

10   that.  But I think it's untimely.  The fact that they've

11   had three chances to do it and they haven't done it, I

12   think, should raise the concern that they don't have it.

13   This letter -- and they haven't done it the right way in

14   Rent-Way.  And then coming back with this letter, I

15   mean, that raises concerns whether or not the clients

16   are actually authorizing that they're representing.

17   That letter doesn't get it done in affidavit form.

18            THE COURT:  Do you have authorization --

19   separate authorization?

20            MR. DOWNS:  No, Your Honor.  We have

21   authorization, not separate authorizations.  We have

22   authorization from BPI Global Asset Management and its

23   controlling entity which controls the individual mutual

24   funds.

25            THE COURT:  What's the form of the

```
 1    authorization?

 2              MR. DOWNS:  The form of the authorization,

 3    Your Honor, is the affidavit of Mr. -- the declaration

 4    rather of Mr. Sweeney, verbal communications between

 5    myself and my clients, and the letter submission of

 6    Mr. Galeen as well as the fact that the underlying

 7    documents authorize them to do so.  And, Your Honor,

 8    this is not really materially different, why we have

 9    presented from what was presented in Rent-Way.

10    Because in Rent-Way, we had a declaration initially

11    from Mr. Maroney, I believe his name was, which is

12    analogous to the Sweeney declaration.  So, we really

13    followed, I think, the program that led the Rentway

14    court to conclude that the client there was a proper

15    lead plaintiff.  Let me just refer back to the statute

16    that we're dealing with here, Your Honor.  Because once

17    the numbers work in a particular lead plaintiff's favor,

18    there's a rebuttable presumption.

19              Now the way that this should proceed is not

20    for counsel to stand up and make arguments.  The

21    stutute requires them to rebut the presumption upon

22    proof that we will be an inadequate representative of

23    the class.

24              THE COURT:  Do you want discovery then?

25              MR. DOWNS:  Well, Your Honor, in certain
```

1    circumstances, discovery is permitted.

2              THE COURT:  Is that what you're saying?

3              MR. DeVALERIO:  No.  I'm saying -- no, Your

4    Honor.  I'm saying what we've submitted should be

5    enough.  And if the Court feels that there is any hole,

6    if you will, in what we submitted, we can undoubtedly

7    correct it and do so promptly.  But on these numbers --

8              THE COURT:  What does promptly mean?

9              MR. DeVALERIO:  One week.

10             THE COURT:  All right.

11             MR. DOWNS:  Perhaps we should do the

12    discovery.  We can meet at their offices, ask these

13    questions, get it under oath, and we can find out

14    whether or not --

15             THE COURT:  No.  What's going to happen is

16    they will file what they consider to be -- or what I've

17    indicated is necessary, which is affidavits from the

18    people who make the decisions on all of the issues that

19    have been raised here and in the papers with respect to

20    your standing.  You can respond to that if you want.

21             MR. DOWNS:  Yes, we would like to.

22             THE COURT:  And I'll let you have a week to

23    respond --

24             MR. DOWNS:  Thank you.

25             THE COURT:  -- to that.  But I have to tell

1    you, just so you're not spinning wheels, if they do it,

2    I'm likely to make them the lead counsel.  And I will

3    make them now provisionally lead counsel in the case.

4         MR. DOWNS:  That is fine.  Had they could

5    have done it before, they would have done it by now.

6    They haven't.  So we'll look forward to seeing their

7    submission.

8         Just for the record so that we're clear, we

9    are not arguing that they are entitled to presumption

10   based on the numbers.  Our position is that they got a

11   big zero because they don't have standing.  So it's not

12   our job --

13        THE COURT:  Well, but that's certainly not the

14   Rent-Way, is it?

15        MR. DOWNS:  Well, the Rent-Way resolution

16   says that the investment advisor has standing to sue,

17   hence can claim all of the damages.  In this case, I

18   think it is so open to find out whether or not they have

19   any standing.  If their clients don't have the

20   authority, they don't have the authority to sue on

21   behalf of the clients --

22        THE COURT:  But what if they do?  If they have

23   the authority to do the trading, Rent-Way has made

24   clear that they're the purchaser.

25        MR. DOWNS:  Well, this looks a lot like

1    Turkcell where a court concluded that they did not

2    have authority to sue.

3              THE COURT:  Yes, a court did.

4              MR. DOWNS:  On similar evidence.  And it looks

5    like Smith v. --

6              THE COURT:  Not quite the same evidence.

7              MR. DOWNS:  We'd be happy to take the

8    opportunity to respond to whatever they care to respond

9    to.

10             THE COURT:  All right.  Well, the short of it

11   is I will permit you to file a set of competent evidence

12   -- that is, along the lines of a Rule 56 affidavit, that

13   presumably a person with authority is indicated through

14   affidavit as having the authority and addresses of these

15   issues with a short response -- a short narrative

16   submission.  That will be done July 2nd.  I'm sorry.

17   We're talking a week from now.  I guess it would be the

18   6th.

19             MR. DeVALERIO:  Very well, Your Honor.

20             MR. DOWNS:  Your Honor, just a question.  Are

21   they required also to submit the underlying documents

22   that reflect the authorization?

23             THE COURT:  Yes.

24             MR. DeVALERIO:  Your Honor, can I comment?

25             THE COURT:  Sure.

```
1              MR. DeVALERIO:  Your Honor, I represent Mr.
2      Brower who is obviously substantially smaller in terms
3      of losses.  My question to the Court is:  We had
4      comments with regard to the BPI application -- excuse me
5      -- to the Global application as well.
6              THE COURT:  Right.
7              MR. DeVALERIO:  And I wanted to find out what
8      Your Honor's plans were if you were to deny BPI.
9              THE COURT:  Then we're back to square one.
10              MR. DeVALERIO:  And we would then discuss the
11      next in line?
12              THE COURT:  Yes.  I mean, it seems to me I do
13      it by --
14              MR. DeVALERIO:  Seriatim?
15              THE COURT:  Yes, to determine if --
16              MR. DeVALERIO:  That's fine.
17              THE COURT:  -- they can make it.
18              MR. DeVALERIO:  The only additional comment
19      that I would make -- and I don't want to take up too
20      much additional time -- is that I think that while
21      Rent-Way suggests one result, not only does
22      Turkcell suggest another result, but I think also
23      the question is under the PSLRA.  They have never
24      responded to why they didn't disclose Turkcell.
25      The application requires under the PSLRA to list all
```

1    the cases.

2              THE COURT:  Right.  No, they responded.  They

3    said "whoops."  But the --

4              MR. DeVALERIO:  Whoops?

5              THE COURT:  Yes.  You know, it's not -- I

6    can't say that I'm impressed by the response, but they

7    responded.  And it's not disqualifying in any way that

8    this disclosure of one occasion on which they had sought

9    had not been successful.

10             MR. DeVALERIO:  Well, the best we could figure

11   out, it applied twice, once in Rent-Way, once in

12   Turkcell, granted once, denied once, told the Court

13   about the one they were granted, never told the Court

14   about the one they were denied.  If the statute has to

15   have any meaning in terms of the disclosure obligations

16   -- and all of us in this room on the plaintiff's side

17   are expert to the nth degree and every jot and tittle of

18   the PSLRA, we know it inside out and backwards.

19   These clients know it and their counsel know it to a

20   fare-thee-well.  They know how to ask the questions.

21   They know how to do the research to find out everything

22   about their client.  To stand up in front of the Court

23   and say "we forgot," to inform the Court about one of

24   the two applications we made and to say that is not

25   disqualifying under the PSLRA, I think, turns the PSLRA

39

```
 1    on its head.
 2              THE COURT:  Well, would it --
 3              MR. DeVALERIO:  I think that given the --
 4              THE COURT:  If they disclosed it, would it
 5    have made any difference on this issue?
 6              MR. DeVALERIO:  Yes.  It's candor.  It's
 7    coming from forward and telling the truth to the Court.
 8              THE COURT:  Would it have made any difference
 9    in this case?
10              MR. DeVALERIO:  Well, it could have if no one
11    else had discovered it.  Obviously, there were
12    competing --
13              THE COURT:  Did someone discover it or did it
14    appear in the context of opposition?  Who was the first
15    person who notified me that they made a mistake in the
16    certification?
17              MR. DeVALERIO:  I think we all probably found
18    out.
19              MR. DOWNS:  I think it's fair to say in their
20    opposition papers, we all --
21              THE COURT:  Mr. Cera?
22              MR. CERA:  It was myself, Your Honor, in our
23    submission.  We identified the fact that we had
24    inadvertently omitted Turkcell in the certificate.
25    And I'm glad Mr. DeValerio feels so confident that he
```

1    can stand up here and claim that he's never made an

2    error of that sort in his entire career.  Obviously, it

3    was an error.

4              THE COURT:  I didn't hear that, but perhaps --

5              MR. CERA:  But he did make an error, Your

6    Honor, in telling the Court about BPI was the movant

7    in Rent-Way.  They were not.  He has misspoken on

8    that issue.  The movant was Kramer --

9              THE COURT:  Well, I think I've had enough of

10   that.  The short of it is that kind of thing is not going

11   to disqualify here.

12             MR. CHECK:  Your Honor, will all parties with

13   any motions be allowed to respond to the submission?

14             THE COURT:  Yes, you will.  But I'm telling

15   you.  Maybe you want to.  Maybe you have things -- you

16   know, July is slow.  But I have to tell you the way in

17   which this is likely to play out is if they submit

18   competent evidence with respect to this issue and square

19   their corners, they are likely to be the lead counsel in

20   this case.  All right.

21             Now, is there something else that we need to

22   do?  We're going to consolidate all of these cases in

23   one case, in any event.

24             I've said provisionally that lead counsel --

25   that's without portfolio because I don't think there's

1    anything that needs to be done at this stage yet, except

2    to ensure consolidation.  Is there anything that needs

3    to be done in these cases in the next month or so?  Can

4    anybody think of anything?

5            MR. DOWNS:  Your Honor, the joint stipulation

6    contemplates that the lead plaintiff would prepare a

7    consolidated complaint.  Defendants would have a period

8    of time to respond if it raises a motion to dismiss.

9            THE COURT:  Sure.

10           MR. DOWNS:  In light of supplemental

11   submissions, perhaps that schedule should be deferred

12   until the Court issues a final order on the appointment

13   of lead plaintiff.

14           THE COURT:  Right.  My only question is

15   whether or not that poses problems for the parties here.

16           MR. DOWNS:  None that I can see.

17           THE COURT:  Okay.  Is there anything else?

18   (No response from counsel)

19           THE COURT:  Okay.  Thank you very much.

20                   RECESSED AT 3:15 P.M.

21

22

23

24

25

42

```
 1
 2                    C E R T I F I C A T E
 3
 4        I, PAMELA R. OWENS, Official Court Reporter,
 5   U. S. District Court, do hereby certify that the
 6   foregoing is a true and correct transcription of the
 7   proceedings taken down by me in machine shorthand and
 8   transcribed by same.
 9
10                    Pamela R Owens 6/28/04
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```