UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
IN RE SONUS NETWORKS, INC.          )   **Civ. Action No. 04-10294 DPW**
SECURITIES LITIGATION               )
_____)


**MEMORANDUM IN SUPPORT OF DEFENDANT SONUS NETWORKS, INC.'S
MOTION FOR PROTECTIVE ORDER TO PRECLUDE DISCOVERY ON
DISMISSED AND UNPLEADED CLAIMS AND ALLEGATIONS AND TO
LIMIT DISCOVERY TO A REASONABLE TIME PERIOD**

Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Sherry Hartel Haus (BBO #663777)
Melissa B. Coffey (BBO # 660750)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
*Attorneys for Sonus Networks, Inc.*


Dated: September 5, 2007

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.   BACKGROUND ....................................................................................................................2

    A.   ONLY FOUR ACCOUNTING TRANSACTIONS REMAIN TO BE CONSIDERED. ..................................................................................................................2

    B.   LEAD PLAINTIFF'S OUT-OF-BOUNDS DISCOVERY REQUESTS ................3

    C.   SONUS' RESPONSES AND OBJECTIONS .........................................................4

    D.   LEAD PLAINTIFF'S EFFORT TO SEEK "INTERNAL CONTROLS" AND OTHER IRRELEVANT DOCUMENTS FROM THIRD PARTIES ......................7

III.   ARGUMENT ..........................................................................................................................8

    A.   CONSISTENT WITH THE PSLRA, DISCOVERY IS PROPERLY LIMITED TO ONLY THOSE REMAINING ALLEGATIONS THAT PROVIDE A BASIS FOR A "COLORABLE CLAIM." ........................................................................8

IV.   CONCLUSION ....................................................................................................................12

# **TABLE OF AUTHORITIES**

Federal Cases

*Avianca, Inc. v. Corriea*,
   705 F. Supp. 666 (D.D.C. 1989) .................................................................................... 10

*Bourget v. Gov't Employees Ins. Co.*,
   313 F. Supp. 367 (D. Conn. 1970) ................................................................................ 9-10

*Clinton Hudson & Sons v. Lehigh Valley Coop. Farms, Inc.*,
   73 F.R.D. 420 (E.D. Pa. 1977) ....................................................................................... 10

*Fitzer v. Sec. Dynamic Techs., Inc.*,
   119 F. Supp. 2d 12 (D. Mass. 2000) ............................................................................. 8-9

*In re Clorox Co. Sec. Litig.*,
   238 F. Supp. 2d 1139 (N.D. Cal. 2002) ....................................................................... 9, 10

*In re Galileo Corp. S'holders Litig.*,
   127 F. Supp. 2d 251 (D. Mass. 2001) .............................................................................. 9

*In re Sonus Networks, Inc. Sec. Litig.*,
   Civ. A. 04-10294, 2006 WL 1308165 (D. Mass. May 10, 2006) ................................... 2, 3

*In re Tyco Int'l Inc. Sec. Litig.*,
   No. 00 MD 1335, 2000 WL 33654141 (D.N.H. July 27, 2000) ....................................... 8

*Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02 C 5893, 2006 WL 3445742 (N.D. Ill. Nov. 22, 2006) ........................................ 11

*Lewis v. ACB Bus. Serv., Inc.*,
   135 F.3d 389 (6th Cir. 1988) .......................................................................................... 10

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ......................................................................................................... 9

*SG Cowen Sec. Corp. v. United States Dist. Court*,
   189 F.3d 909 (9th Cir. 1999) .......................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   --U.S.--, 127 S.Ct. 2499 (June 21, 2007) ................................................................ 3, 8, 10

State Cases

*In re Sepracor, Inc. Deriv. Litig.*,
   No. 06-4057 BLS1, slip op. (Mass. Super Ct. Jan. 26, 2007) ........................................ 11

- iii -

Federal Legislative History

H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ....................................... 1, 8

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679................................................ 12

Case 1:04-cv-10294-DPW     Document 204     Filed 09/05/2007     Page 4 of 17

**I.     INTRODUCTION**

This is a federal securities law class action commenced pursuant to the heightened pleading standards imposed by the Private Securities Litigation Reform Act ("PSLRA"), which Congress enacted in significant part to curb abusive discovery.  *See* H.R. Rep. No. 104-369, at 32-33, 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731-32, 736 (intending to limit "abusive discovery to prevent 'fishing expedition' lawsuits").

After reviewing the allegations of Lead Plaintiff's initial amended complaint against these heightened pleading standards, the Court allowed Lead Plaintiff one last chance to take its "best shot" in a further amended complaint, warning that the Court would not again grant Lead Plaintiff leave to amend.[1]  The Court considered Lead Plaintiff's last "best shot" in a May 10, 2006 Order and found that the First Amended Consolidated Class Action Complaint ("Amended Complaint" or "AC") had failed to meet these pleading standards, except for a handful of limited allegations.  Despite the limited nature of its remaining claims and over the objections of defendants Sonus Networks, Inc. ("Sonus"), Hassan M. Ahmed, and Stephen J. Nill (collectively, "Defendants"), Lead Plaintiff has repeatedly sought discovery – most recently by way of a third-party subpoena to Sonus' new post-Class Period auditor Deloitte & Touche LLP ("Deloitte") – in a host of areas that the Court has dismissed from, or that Lead Plaintiff never pleaded in, the Amended Complaint, and for an overbroad and open-ended time period.  Sonus now seeks the Court's intervention to end Lead Plaintiff's fishing expedition, and requests a protective order precluding discovery on dismissed or unpleaded claims and allegations, and limiting discovery to a reasonable time period.

---

[1] *See* June 1, 2005 Motion to Dismiss Hearing Transcript at 31:5-15, attached as Exhibit ("Ex.") A to the Affidavit of Sherry Hartel Haus, submitted herewith.

## II.     BACKGROUND

### A.     Only Four Accounting Transactions Remain To Be Considered.

On May 10, 2006, the Court entered an Order explicitly dismissing Lead Plaintiff's allegations that "[Sonus'] internal controls were grossly deficient," and found "that the Complaint does not allege any particularized facts to support a finding that the individual Defendants were reckless when they certified that they had examined the Company's internal controls and believed they were adequate." *In re Sonus Networks, Inc. Sec. Litig.*, Civ. A. 04-10294, 2006 WL 1308165, at *13 (D. Mass. May 10, 2006).  Similarly, the Court concluded that Lead Plaintiff had not alleged with particularity any claim based on a variety of revenue adjustments in Sonus' July 28, 2004 Form 10-K/A ("Restatement"), specifically "the improper allocation of expenses, the appraisal of two acquisitions made in 2001, or the mistakes relating to impairment charges, inventory reserves and certain checks." *Id*.  Further, the Court rejected Lead Plaintiff's "revenue linearity" theory as having no bearing on the motives of Sonus' management.[2]  *Id.* at *15.

In the end, the Court concluded that Lead Plaintiff had provided sufficient particularity only with respect to "four specific intentional accounting manipulations that contradict Sonus's self-reported corrections" (hereinafter the "Four Alleged Accounting Issues").  *Id*. at *17.  The Four Alleged Accounting Issues are: (1) improper revenue recognition in connection with a Qwest contract in Q2 2002 (AC  ¶ 45); (2) improper revenue recognition in connection with a Qwest contract in Q4 2003 (*id*. ¶ 45); (3) the purported issuance of an acceptance letter to Qwest, in either Q3 or Q4 2001, to confirm a delivery that allegedly had not been made (*id.* ¶ 46); and

---

[2]  According to Lead Plaintiff's discredited "revenue linearity" theory, Sonus' senior managers purportedly "engaged in a series of financial and accounting irregularities designed to" "smooth out" revenues and therefore "make it appear as though the Company's revenue model was capable of delivering steady, reliable growth."  (AC ¶¶ 36-37.)  The Court rejected this theory "as a reason Sonus's management may have had for orchestrating the revenue scheme," given that "the net result of the improper revenue recognition during the Class Period resulted in Sonus *under-reporting*" its revenues.  *Sonus*, 2006 WL 1308165, at *15 (emphasis in original).

(4) improper revenue recognition in connection with an AT&T contract in Q4 2003 (*id.* ¶ 48).[3] *Sonus*, 2006 WL 1308165, at *16, *17.

### B. Lead Plaintiff's Out-Of-Bounds Discovery Requests

On August 29, 2006, Lead Plaintiff propounded its First Set of Document Requests to All Defendants (the "Requests," or individually, "Request").[4] (Haus Aff. Ex. B.) Of its ***152*** Requests, Lead Plaintiff propounded 41 Requests that specifically demanded the production of documents related either to accounting issues or "transactions or potential transactions with" 29 customers that were never or are no longer at issue in this action, in light of the Court's May 6, 2006 Order. (*See* Haus Aff. Ex. B, at Request Nos. 91, 94 through 100, 102-103, 106-107, 117, 119-139 and 141-147.) Despite the Court's rejection of Lead Plaintiff's "revenue linearity" theory, Lead Plaintiff included 22 Requests ordering the production of documents related to communications with any member of the investment community. (*See id.* at Request Nos. 20-21, 23-42.)[5] Various other Requests sought documents that bore no relationship to *any* allegation (sustained or dismissed) in the Amended Complaint. (*See id.* at Request Nos. 18 (all documents relating to Sonus' annual meeting of shareholders), 19 (all documents relating to Sonus' written or verbal communications with shareholders), 43 and 44 (all documents relating to the attendance of any individual defendant or Peter Hemme "at any technology, telephony, finance,

---

[3] Even these allegations are not sustainable under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, --U.S.--, 127 S.Ct. 2499, 2508 (June 21, 2007), as explained in Defendants' pending Renewed Motion for Reconsideration of Order Denying Motion to Dismiss in Light of U.S. Supreme Court Decision in *Tellabs, Inc. v. Makor*, filed on June 29, 2007 (Dkt. No. 196).

[4] Pursuant to the parties' Joint Statement Pursuant to Local Rule 16.1(D) ("Joint Statement"), filed July 6, 2006, the parties are limited to document discovery until the Court rules on Lead Plaintiff's motion for class certification. (Joint Statement, §§ IV.A.3, IV.B (Dkt. No. 164).) The Court heard the class certification motion on February 28, 2007, but has not yet issued a decision.

[5] Sonus agreed to produce documents relating to communications with Goldman Sachs concerning the April 21, 2003 and September 23, 2003 offerings, as Goldman Sachs was the underwriter for those offerings. (*See* Haus Aff. Ex. C, Defendant Sonus Networks, Inc.'s Response to Lead Plaintiff's First Set of Document Requests ("Responses," or, individually, "Response"), Response 22.)

or investor-related conference"). Finally, although the Amended Complaint alleges that the putative Class Period began on March 28, 2002 and ended on March 26, 2004 (AC ¶ 1), Lead Plaintiff also commanded the production of all documents "created or generated" during an open-ended "Relevant Time Period" from "January 1, 2001 to the present." (Haus Aff. Ex. B, at 5.)

### C. Sonus' Responses and Objections

On September 28, 2006, Sonus responded to Lead Plaintiff's Requests and, among other objections, objected to all Requests to the extent they exceeded the scope of the few claims and allegations that the Court sustained in its May 10, 2006 Order[6] and to the overly broad and open-ended "Relevant Time Period" set forth in the Requests.[7] On December 20, 2006, Defendants and Lead Plaintiff conducted a meet and confer, via teleconference, regarding Defendants' responses to Lead Plaintiff's Requests, including Sonus' objections to the scope and time frame of discovery. During that meet and confer, Lead Plaintiff did not agree to limit its Requests to the time frame proposed by Sonus or to only matters related to the Four Alleged Accounting

---

[6] *See* Haus Aff. Ex. C., at 2, General Objection 1 (objecting "to each and every Request to the extent the scope of discovery sought by Lead Plaintiff exceeds the scope of the few claims in this case that were sustained by the Court in its May 10, 2006 ruling on Defendants' motions to dismiss," and citing the Court's ruling dismissing claims other than those relating to the Four Alleged Accounting Issues and rejecting the "revenue linearity" theory).

[7] *See* Haus Aff. Ex. C at 6, Objection 9 (objecting to the Relevant Time Period "on the grounds that it is overbroad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence," and agreeing to "produce responsive, non-privileged documents created during the period January 1, 2001," the beginning of the earliest year for which financial results were restated, and over one year and two months prior to the putative Class Period, "through September 30, 2004," six months after the putative Class Period). In a meet and confer on December 20, 2006, Sonus agreed to produce documents created from January 1, 2001 through the present for a limited number of Lead Plaintiff's Requests (Request Nos. 1, 5, 6, and 7).

The grounds for Sonus' other objections included the fact that various Requests: failed to identify the documents sought with sufficient particularity to enable Sonus to conduct a reasonable search and were therefore vague, overly broad, and unduly burdensome (*see, e.g.*, Haus Aff. Ex. C, Responses to Request Nos. 14 ("All documents relating to the price of Sonus stock"), 15 ("All documents relating to the market for Sonus stock"), 45 ("All data obtained by Sonus from the computer hard drives of any current or former Sonus employee"), 77 ("All documents relating to data stored in Sonus's internal accounting system including, but not limited to, back-up tapes"), 78 ("All reports generated by Sonus's internal accounting system")); or sought documents subject to the attorney-client privilege or work product doctrine, given that they encompassed work performed at the direction of counsel in anticipation of litigation and/or by non-testifying experts (*see, e.g.*, *id.*, Response Nos. 3, 52, 53, 55, 56, 109, 110, 113, 114).

Issues. Thereafter, while completing the production of over 87,000 pages of documents, including documents collected in hard-copy from Sonus and the non-privileged documents that Sonus had provided to the Securities Exchange Commission in connection with the Boston Regional Office's since-terminated enforcement investigation of Sonus[8] (*see* Haus Aff. ¶ 4), Sonus prepared for the review and production of its electronic documents responsive to Lead Plaintiff's Requests.

On February 1, 2007, Sonus sent a letter to Lead Plaintiff proposing over 50 search queries, developed from Lead Plaintiff's Requests, for the review and production of the massive volume of electronic documents collected by Sonus.[9] Lead Plaintiff did not respond until May 11, 2007, and, despite the Court's dismissal of allegations relating to Sonus' internal controls, proposed that Sonus search for and produce documents related to internal controls. (*See* Haus Aff., Ex. E, Proposed Search Queries 13, 17, 18.) Lead Plaintiff also insisted that Sonus produce documents during the overbroad "Relevant Time Period" despite Sonus' pending objection. (Haus Aff. Ex. E, at 6.)

In an attachment to its May 11, 2007 letter, Lead Plaintiff proposed a total of 94 search queries, which identified over *1.3 million* documents, or *202.75 GB* of data – almost *80%* of the electronic documents collected – which Sonus' counsel would then need to review for relevance and privilege. In contrast, Sonus' proposed 52 search queries identified the much smaller but

---

[8] In its production to the SEC, Sonus had already reviewed and produced electronic documents from, among other sources, its relevant finance and other personnel involved in the Four Alleged Accounting Issues. (*See* Haus Aff. ¶ 5.) The SEC terminated its investigation of Sonus on June 7, 2005, with a recommendation of no action. (*See* Haus Aff. Ex. D.)

[9] Sonus collected over 250 GB of electronic data from relevant custodians. (*See* Haus Aff. ¶ 6) To cull this vast amount of data down to a size that could be manageably reviewed for relevance and privilege, Sonus crafted 52 search queries designed to capture documents responsive to Lead Plaintiff's Requests, as limited by Sonus' Responses. Sonus intended to apply these search queries to the data, and then review for relevance and privilege the documents that were responsive to the search terms. Sonus has been attempting since its February 1, 2007 letter to obtain Lead Plaintiff's assent to the proposed search queries so that Sonus may proceed with the searching, review and production of the responsive, non-privileged electronic documents.

still substantial number of approximately 236,000 documents, or 102.19 GB of data.  (*See* Haus Aff. ¶ 7.)   Based on Sonus' counsel's experience, an attorney reviewing documents full-time for relevance and privilege can review approximately 450 documents in an eight-hour day.  (*See* Haus Aff. ¶ 8.)  Therefore, to review for relevance and privilege *only* the documents identified by *Sonus'* search queries alone (let alone Lead Plaintiff's much broader queries) would occupy **524** days of attorney review time.  Indeed, it would occupy over **94** days of attorney review time to review for relevance and privilege only the 42,613 documents identified by Lead Plaintiff's proposed search query designed to capture documents containing the term "internal controls."[10] (*See* Haus Aff. ¶ 9(f) & Ex. F (June 15, 2007 letter from Sherry Hartel Haus), attachment ("att't") at 9 (Query 17).)   Also in its May 11, 2007 letter, in a discussion of Sonus' objections to the scope and time frame of discovery, Lead Plaintiff also indicated that it "anticipates moving to compel Sonus to produce documents that it is withholding."

On June 15, 2007, Sonus responded to Lead Plaintiff's proposed search queries and, among other objections, objected to the proposed search queries related to Sonus' internal controls on the grounds that the Court had explicitly dismissed Plaintiff's allegations relating to Sonus' internal controls.[11]  Sonus further objected that none of Lead Plaintiff's previous 152 requests had sought documents concerning Sonus' internal controls.  If Lead Plaintiff intended to

---

[10] Other queries relating to internal controls identified 10,693 documents (Query 13), and 18,160 documents (Query 18).  There may be some duplication among the documents identified by these queries and Query 17 (*e.g.*, if a document contains the terms from both Query 13 and Query 17).

[11] The grounds for Sonus' other objections included: the unduly burdensome nature of many of Lead Plaintiff's search queries, some of which identified hundreds of thousands of documents (*see, e.g.,* Haus Aff. ¶ 9(f) & Ex. F, att't at 11-13, 16, 20 (Queries 20 (594,451 documents), 22 (746,755 documents), 25 (742,726 documents), 29 (414,621 documents)); the lack of relationship between the query and Lead Plaintiff's Requests (*see, e.g.*, *id.*, att't at 1 (Queries 1 ("All files with Powerpoint file extensions"), 2 (all reports generated by Sonus' accounting software, Oracle)); and the overbreadth of many of the queries, which were not narrowly tailored to identify documents relevant to the parties' claims or defenses or reasonably calculated to lead to the discovery of admissible evidence (*see, e.g., id.* at 17-18, 20, 21, 22, 45 (Queries 26, 27, 29, 30, 31, 87 (which would identify any document that includes any of the words "memo," "letter" or "e-mail," among others, and the first or last name of various consultants, auditors, non-testifying experts, or attorneys for Sonus, the first or last name of Sonus' President and Chief Operating Officer, or the root word "al*")).

request such documents, Sonus advised that Lead Plaintiff should submit a Second Set of Requests and permit Sonus the proper opportunity to object on the grounds that the Request was related to allegations that the Court had dismissed. (*See* Haus Aff., Ex. F, att't at 9.) Sonus also reiterated its objection to Lead Plaintiff's overbroad and open-ended "Relevant Time Period." (Haus Aff. Ex. F, at 9.) Lead Plaintiff has yet to respond to Sonus' counsel's June 15, 2007 letter.

### D. Lead Plaintiff's Effort To Seek "Internal Controls" And Other Irrelevant Documents From Third Parties

On August 7, 2007, apparently hoping to circumvent Sonus' objections to Lead Plaintiff's over-reaching discovery related to dismissed allegations and the overbroad time frame, Lead Plaintiff served a subpoena on Deloitte (the "Deloitte Subpoena") seeking the same or similar information, again in disregard of the Court's May 10, 2006 Order. (*See* Haus Aff., Ex. G.) Of the nine document requests in the Deloitte Subpoena, five requests command the production of documents related to Sonus' internal controls. (*See* Haus Aff. Ex. G, Deloitte Subpoena Request Nos. 1 through 5.) As with the Requests served on Defendants, the Deloitte Subpoena also called for the production of documents generated during the objected-to "Relevant Time Period." (Haus Aff. Ex. G, at 4.) Sonus, however, had engaged Deloitte as its auditor for the first time in August 2005, well after the March 26, 2004 end of the putative Class

Period and the July 28, 2004 Restatement.[12] (Haus Aff. Ex. H (Sonus Networks, Inc. Form 8-K, filed with the Securities & Exchange Commission on August 16, 2005).)[13]

### III. ARGUMENT

#### A. Consistent With The PSLRA, Discovery Is Properly Limited To Only Those Remaining Allegations That Provide A Basis For A "Colorable Claim."

Congress enacted the PSLRA, in critical part, to curb abusive discovery. *See* H.R. Rep. No. 104-369, at 32-33, 37 (intending to limit "abusive discovery to prevent 'fishing expedition' lawsuits"); *Tellabs*, 127 S.Ct. at 2508 (purposes of PSLRA were to curtail "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers") (quotation omitted). In order to prevent plaintiffs from using the threat of pointless and expensive discovery to force settlements on meritless claims, Congress crafted a heightened pleading standard, observing that "[t]he cost of discovery often forces innocent parties to settle frivolous securities class actions." *See* H.R. Rep. No. 104-369, at 37; *see also In re Tyco Int'l Ltd. Sec. Litig.*, No. 00 MD 1335, 2000 WL 33654141, at *1 (D.N.H. July 27, 2000) (PSLRA enacted to prevent "the abuse of the discovery process to coerce settlement") (quotation and citation omitted). Recognizing that traditional discovery limitations are inadequate for securities litigation, "the PSLRA seeks to 'do away with the kind of lawsuit that happens because

---

[12] On August 20, 2007, Deloitte objected to the subpoena on the grounds, among others, that it was overbroad and unduly burdensome, in particular with regards to the open-ended time frame, and called for the production of irrelevant documents. (*See* Haus Aff. Ex. I.)

[13] On August 28, 29, and 30, 2007, via e-mail and voicemail, Sonus' counsel contacted Lead Plaintiff's counsel regarding a meet and confer on the instant motion. Counsel for Sonus and Lead Plaintiff conferred by teleconference at 4 p.m. E.D.T., for approximately thirty minutes, on September 4, 2007. Participating in the teleconference were James Prendergast, Sherry Hartel Haus, and Melissa Coffey, counsel for Sonus, and Solomon Cera, Pamela Markert, and Kenneth Frost, counsel for Lead Plaintiff. Lead Plaintiff's counsel stated on the teleconference that they did not realize prior to the teleconference that Sonus was objecting, not only to the Deloitte Subpoena, but also more generally to the scope of Lead Plaintiff's requested discovery thus far. Nevertheless, Sonus and Lead Plaintiff discussed at the September 4, 2007 teleconference Sonus' broader objections to Lead Plaintiff's pursuit of discovery from Defendants or any third party on dismissed or unpleaded claims or allegations, or after the time frame proposed by Sonus. Sonus' counsel also explained that the Deloitte Subpoena is merely the most recent iteration of the overbroad discovery requests served by Lead Plaintiff on Defendants and third parties. Lead Plaintiff's counsel responded that it was not amenable to the limits on discovery sought by Sonus. Sonus indicated its intent to file this motion.

a compan[y's] stock drops, a suit is filed, [the plaintiffs] press discovery and they move and collect a large settlement from the company, when the suit may be baseless.'" *See Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 18 (D. Mass. 2000) (quotation and citation omitted).[14] In the hope that an extensive fishing expedition beyond the limited allegations that it could sustain under the PSLRA *might* reveal something to revitalize its previously-dismissed claims or to resurrect new theories or allegations, Lead Plaintiff is guilty of the very abuses that the PSLRA sought to curb.

To fulfill the purpose of the PSLRA, courts repeatedly have reined in plaintiffs who, like Lead Plaintiff here, seek discovery related to previously-dismissed claims. For example, in *In re Clorox Co. Securities Litigation*, the court, although acknowledging that it had not dismissed any portion of the plaintiffs' operative amended complaint, nonetheless "unequivocally held that only two allegations provided any basis for a colorable claim."[15] 238 F. Supp. 2d 1139, 1143 (N.D. Cal. 2002), *aff'd sub nom. Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004). Accordingly, the plaintiffs "earned the right to proceed with discovery on those statements, but did not earn the right to proceed on all the other twice-dismissed allegations contained in the [operative amended complaint]." *Id.*; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken … unless the information sought is otherwise relevant to issues in the case."), *citing Bourget v. Gov't*

---

[14] *See also In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 260 (D. Mass. 2001) (First Circuit pre-PSLRA pleading standard was consistent with PSLRA, and intended "to minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence") (quotation and citation omitted).

[15] In arguing for discovery beyond the two sustained allegations, the plaintiffs contended that because the court did not grant a partial dismissal of the operative complaint, all allegations therein were the proper subject of discovery. The court responded that the "[p]laintiffs' contention defies the purpose of the [PSLRA]," and therefore "only those two [surviving] statements were the proper subject of discovery." *Id.*

*Employees Ins. Co.*, 313 F. Supp. 367, 372-73 (D. Conn. 1970) (refusing to allow discovery relating to stricken defenses), *rev'd on other grounds*, 456 F.2d 282 (2d Cir. 1972).[16]

Given the commands of the PSLRA, courts steadfastly have circumscribed plaintiffs' efforts to engage in discovery outside the realm of their complaints in an effort to supplement or revive their claims. *See SG Cowen Sec. Corp. v. United States Dist. Court*, 189 F.3d 909, 912-13 (9th Cir. 1999) (holding that it was inappropriate for district court to permit discovery, in response to attempt by plaintiffs to meet the heightened pleading requirements of the PSLRA, when plaintiffs' claims had been dismissed); *see also Clinton Hudson & Sons v. Lehigh Valley Coop. Farms, Inc.*, 73 F.R.D. 420, 424 (E.D. Pa. 1977), *aff'd*, 586 F.2d 834 (3d Cir. 1978) (denying plaintiffs' request to engage in discovery, after their claims were dismissed, in attempt to learn information necessary to satisfy Rule 9(b)'s particularity requirement).

The Supreme Court recently reaffirmed the importance of the PSLRA's heightened standards, stating that "[e]xacting pleading requirements are among the control measures Congress included in the PSLRA" given its concern that "[p]rivate securities fraud actions … if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs*, 127 S.Ct. at 2504. Indeed, the traditional rules allowing plaintiffs latitude in seeking broad discovery beyond their surviving claims and allegations do not apply to securities cases, as the PSLRA's purpose of curbing abusive discovery "would be entirely thwarted if a plaintiff could obtain discovery on a litany of meritless assertions simply by attaching them to one narrow colorable allegation." *Clorox*, 238 F. Supp. 2d at 1143.

---

[16] *See also Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1988) (affirming decision to preclude discovery of agreement relating to dismissed claim); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 677 (D.D.C. 1989), *aff'd* 70 F.3d 637 (D.C. Cir. 1995) (refusing to permit discovery relevant only to dismissed counterclaim).

In addition to improperly pursuing discovery on dismissed claims or allegations or matters not pleaded in the Amended Complaint, Lead Plaintiff also seeks discovery for an impermissibly broad time period of almost seven years.  The documents relevant to this action, which is focused on a July 2004 restatement of financial results dating back to 2001, would exist within the reasonable time frame proposed by Sonus of January 1, 2001 through September 30, 2004.  This time period encompasses all years for which financial results were restated in July 2004, pre-dates the putative Class Period by over one year and two months, and extends six months after the putative Class Period.[17]  *See Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2006 WL 3445742, at *4, *6 (N.D. Ill. Nov. 22, 2006) (denying motion to compel post-class period discovery because plaintiffs did not show "how further production will meaningfully advance their case").  To allow Lead Plaintiff to continue to seek discovery up to the present would impose an unnecessary burden on Defendants and subpoenaed third parties, given that the documents would be of marginal, if any, relevance to Lead Plaintiff.  *See id.* at *4 (limiting time frame for discovery in part because parties should not be "burdened with producing insufficiently probative information"); s*ee also In re Sepracor, Inc. Deriv. Litig.*, No. 06-4057 BLS1, slip op. at 2 (Mass. Super Ct. Jan. 26, 2007) (van Gestel, J.) (Haus Aff. Ex. J) (noting the substantial expense of discovery, given that "[c]ompliance with [the discovery rules] requires more than just copying things gathered for an internal investigation or sent to a [ ] regulatory agency.  Someone, or some team of people, must examine all the documents already gathered to determine whether they are otherwise producible.  This is costly and time consuming.").

---

[17] As indicated by Sonus' agreement to produce documents up to the present for certain of Lead Plaintiff's Requests, *see supra* note 7, Sonus is amenable to a broader time period for particular Requests, if Lead Plaintiff provides a convincing reason why documents outside the time period proposed by Sonus would be relevant to this litigation.

Lead Plaintiff therefore should not be permitted to pursue a quixotic effort to revive the insufficient allegations of its Amended Complaint by seeking discovery on its moribund claims relating to internal controls, matters beyond the remaining Four Alleged Accounting Issues, or matters beyond any relevant time frame. *See* S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693 (referencing concern that "plaintiffs sometimes file frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint").

## IV.    CONCLUSION

For the foregoing reasons, defendant Sonus Networks, Inc. respectfully requests that the Court:

- A. Enter a protective order:

    1. Precluding Lead Plaintiff from pursuing further discovery from Defendants or any third party relating to the allegations dismissed by the Court, or otherwise outside the limited claims and allegations affirmed by the Court in its May 10, 2006 Order, and

    2. Limiting the time period for discovery to January 1, 2001 through September 30, 2004;

- B. Award attorney's fees and costs to defendant Sonus; and

- C. Grant such further relief that the Court deems fair and just.

|  | Respectfully submitted, |
|---|---|
| Dated: September 5, 2007 | /s/Sherry Hartel Haus<br>Jeffrey B. Rudman (BBO #433380)<br>James W. Prendergast (BBO #553073)<br>Sherry Hartel Haus (BBO #663777)<br>Melissa B. Coffey (BBO #660750)<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000<br>*Attorneys for Sonus Networks, Inc.* |

## CERTIFICATE OF SERVICE

I, Sherry Hartel Haus, hereby certify that on September 5, 2007, I caused a true copy of the foregoing document to be served electronically via the Court's Electronic Filing System upon all counsel of record.

/s/Sherry Hartel Haus
Sherry Hartel Haus

- 13 -