# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10294-DPW, 04-10359-DPW
**********************************************
DEBORAH CHIN, ET AL.

VS.

SONUS NETWORKS, INC., ET AL.
**********************************************


HEARING
BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
Date:  June 1, 2005


APPEARANCES:

Jeff Rudman, Esq., and Daniel Halston, Esq., Daniel H.
Gold, Esq., (WILMER, CUTLER, PICKERING, HALE and DORR LLP);
on behalf of Sonus Networks, Inc., Edward Anderson, Paul
Ferri, Albert Notini, Paul Severino.

Solomon B. Cera, Esq., (GOLD, BENNETT, CERA & SIDENER), 595
Market Street, Suite 2300, San Francisco, CA 94105; on
behalf of the Lead Plaintiff in 04-10294, B/I Global Asset
Management.

John R. Baraniak, Jr., Esq., (CHOATE HALL & STEWART),
53 State Street, Boston, MA 02109; on behalf of Hassan
Ahmed.


TERI CELESTE GIBSON, COURT REPORTER
P.O. BOX 47
DORCHESTER, MASSACHUSETTS 02121
(617) 650-6288

Mechanical Stenography; computer aided transcription.

APPEARANCES CONT'D:

Willem F. Jonckheer, Esq., (SCHUBERT & REED LLP), Two
Embarcadero Center, Suite 1660, San Francisco, CA 94111; on
behalf of Daniel Williams, plaintiff in derivative action.


John C. Martland, Esq., (GILMAN AND PASTOR,LLP), 60 State
Street, 37th Floor, Boston, MA 02109; on behalf of the
plaintiff, derivative action.


John D. Hughes, Esq., (EDWARDS & ANGELL LLP), 101 Federal
Street, Boston, MA 02110; on behalf of defendants, Rubin
Gruber, Michael O'Hara, Paul Jones, and Edward Harris.


Matthew J. Matule, Esq., and Michael S. Hines, Esq.,
(SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP) One Beacon
Street, Boston, MA 02108-3194; on behalf of defendant,
Stephen J. Nill.

                         *****

1          P-R-O-C-E-E-D-I-N-G-S

2          THE CLERK:  Calling In Re:  Sonus Network

3     Shareholder derivative litigation and In re:  Sonus

4     securities litigation, Civil Action Number 04-10359 and

5     04-10294.

6          THE COURT:  I did want to take up the derivative

7     action first.  I shouldn't ask the broadest question first

8     but I will.  Why wouldn't a demand be made?

9          MR. JONCKHEER:  Your Honor, William Jonckheer for

10    the plaintiff.

11          Your Honor, demand was not made because based on

12    assessment of the facts in the case, the determination was

13    made that demand would be futile, and that's based on the

14    allegations that are in the complaint which --

15          THE COURT:  That's not the answer I want to

16    discuss with you.  If it's futile, what's wrong with making

17    demand, except that you get the opportunity to hear the

18    motion to dismiss.  I just don't understand why someone

19    wouldn't make a demand under these circumstances.

20          MR. JONCKHEER:  I believe, Your Honor, if a demand

21    is made, and typically, a demand would be rejected.

22          THE COURT:  Right.

23          MR. JONCKHEER:  Then the standard in order to

24    enforce the company's claims by a shareholder, the standard

25    becomes much more difficult to overcome the demand to reject

4

1    it.

2              THE COURT:  I guess I need some education

3    regarding this.

4              MR. JONCKHEER:  I believe the standard that

5    applies to a demand refused case, is much higher than the

6    standard that applies to a demand execution case.

7              THE COURT:  Ask the question for purposes of

8    education.

9              MR. JONCKHEER:  I believe under the -- if a demand

10   is made --

11             THE COURT:  Two different answers.

12             MR. JONCKHEER:  If a demand is made and rejected,

13   I believe that under the operative standards, the rejection

14   is protected, the business judgment rule to a higher extent

15   which is a higher standard to meet or defeat for derivative

16   plaintiff, that believes that the company claims should be

17   enforced.  Whereas in a demand, if you are alleging demand

18   of futility, then other standards apply where the plaintiff

19   needs to allege a claim of bad faith in effect.  In order to

20   invalidate the application of the business judgment rule by

21   the board to the claims at issue.

22             THE COURT:  Strikes me a kind of game of chicken

23   to be playing under these circumstances.  In particular,

24   after the state court judges effectively said that it wasn't

25   futile.

5

```
1              MR. JONCKHEER:  The point I would make with
2    respect to the State Court opinion, I think you are looking
3    at complaints that are really very different.  It's a night
4    and day difference in fact.
5              THE COURT:  What is the night and day difference?
6    Frankly, I assume the difference between 3:40 and 3:43 in
7    the afternoon.  What is the night and day difference?
8              MR. JONCKHEER:  The difference, Your Honor, is
9    that the state complaint was filed on February 20th, 2004.
10             THE COURT:  When was the first filed.
11             MR. JONCKHEER:  I believe around the same time,
12   later in February.
13             THE COURT:  That is the difference?
14             MR. JONCKHEER:  Well, the point is that under the
15   arrangement that we made before Your Honor in terms of
16   filing the amended complaint, we did that, we filed it in
17   October, and in the amended complaint are an enormous amount
18   of details regarding what actually went wrong at this
19   company.  So whereas the state complaint --
20             THE COURT:  You mean Judge van Gestel didn't know
21   something went wrong with the company.
22             MR. JONCKHEER:  He didn't know the extent of the
23   problems with the internal controls of the company.
24             THE COURT:  What has to -- to do with the futility
25   of the case.
```

1    MR. JONCKHEER:  Because the camera case, Your

2  Honor, where a Board of Directors is responsible for

3  operating, instituting a system of internal controls, when

4  the Board utterly fails to do that, that is a showing, that

5  can demonstrate a showing of bad faith, which is sufficient

6  to demonstrate interested for demand of futility.

7    THE COURT:  What the information -- wasn't that

8  information available at the time the Judge van Gestel

9  rendered his opinion?

10    MR. JONCKHEER:  It was not, Your Honor.

11    THE COURT:  It wasn't?

12    MR. JONCKHEER:  No.  Because the restatement did

13  not occur.  It was not revealed until July.

14    THE COURT:  And when did Judge van Gestel render

15  his decision?

16    MR. JONCKHEER:  I believe he rendered in

17  September.

18    THE COURT:  Isn't that the operative date?

19    MR. JONCKHEER:  No because in his order, he

20  specifically says that he is ruling on the complaint as

21  written and as filed on February 20th.

22    THE COURT:  But he is ruling as to the date.

23  Again, that is what I am looking to for purposes of

24  collateral estoppel evaluation.  The judgment that I am

25  observing and obligated to observe is the one -- is as of

1    the date the judgment enters.

2              Now, if people didn't take steps to protect

3    themselves, if they didn't bring matters to the attention of

4    Judge van Gestel, if they didn't choose to amend their

5    complaint, that is a different issue.

6              MR. JONCKHEER:  He didn't give leave to amend.

7              THE COURT:  It was sought?

8              MR. JONCKHEER:  I don't know that, Your Honor, but

9    I assume it was.

10             THE COURT:  What do you mean you assume it was?

11   Isn't that relevant to evaluation here?

12             MR. JONCKHEER:  I think the point is, that some

13   later information was submitted to Judge van Gestel

14   according to the defendant's papers.

15             THE COURT:  If you are going to oppose it, didn't

16   you inquire?

17             MR. JONCKHEER:  Did I inquire what, Your Honor?

18             THE COURT:  Inquire whether or not this

19   information was submitted, not submitted, whether or not

20   leave to amend was permitted, not permitted?

21             MR. JONCKHEER:  I know some was, that some

22   additional information was submitted but from the collateral

23   estoppel purposes, Your Honor, I believe that the Court

24   should look at what the order says and what the issues are

25   that the court ruled upon.  The Court rejected any amendment

8

1    to the complaint and also rejected --

2            THE COURT:  You said "rejected any amendment to

3    the complaint"?

4            MR. JONCKHEER:  Yes.  The Court denied leave to

5    amend; that is in the order.

6            THE COURT:  He denied leave to amend?

7            MR. JONCKHEER:  That's right.  The complaint was

8    never amended in this state case.

9            THE COURT:  That it was never amended is different

10   from denying leave to amend.

11           MR. JONCKHEER:  Well, the order says -- I can

12   infer, Your Honor, from what the judge said about leave to

13   amend, that it was requested.  The Court accepts Supreme

14   Court reasoning, such dismissal ought to be without leave.

15           THE COURT:  Hold on for a second.

16           Okay.  What page are you pointing to?

17           MR. JONCKHEER:  It's Page 9 of Judge van Gestel's

18   order.

19       (Pause.)

20           THE COURT:  Some policies supports the -- is that

21   what you are saying?

22           MR. JONCKHEER:  I am sorry, Your Honor.

23           THE COURT:  I got Page 9 in front of me.

24           MR. JONCKHEER:  Yes.

25           THE COURT:  And what is the specific thing that

9

1    you want me to look at?

2            MR. JONCKHEER:  Well, I am pointing to the -- I am

3    pointing to that sentence and --

4            THE COURT:  Wait.  Let me see.  Maybe the

5    defendants can answer it.  Was there a request for leave to

6    amend?

7            MR. HALSTON:  There was not, no motion was ever

8    filed what the plaintiffs in the state court case.  In

9    footnote 6 of their brief, was to say we've not sued

10   Thompson, the other Board member, outside the director was

11   not named as a defendant, either in the State Court action

12   or the Federal Court action, and they added a sentence,

13   footnote 6 to say to the extent you want us to add him, we

14   ask leave to add Thompson at some later date.  And that's

15   all, what was ever presented with respect to any request for

16   amendment, Your Honor.

17           THE COURT:  Do you have any basis to disagree with

18   that?

19           MR. JONCKHEER:  Well, from what I understand, Your

20   Honor, reading under --

21           THE COURT:  From which you understand.  You know,

22   do you have any facts to bring to my attention apart from

23   this argument from exercise of pure reason?

24           MR. MARTLAND:  I am sorry, Your Honor.

25           THE COURT:  Do you have anything to bring to my

1  attention that is specific, or you just going to wing it?

2          MR. JONCKHEER:  Your Honor, I believe that Judge

3  van Gestel concluded that he would not give leave to --

4          THE COURT:  Now --

5          MR. MARTLAND:  Under the Delaware Supreme Court.

6          THE COURT:  The plaintiffs in the state court, I

7  am told, maybe you know differently but apparently you don't

8  know at all the plaintiffs in the state case apparently did

9  not move to amend.

10          MR. JONCKHEER:  They did not move to amend, that's

11  right.

12          THE COURT:  How do we know what Judge van Gestel

13  is going to do or would have done had they?

14          MR. JONCKHEER:  We don't, Your Honor, except that

15  in typical -- maybe this is the problem that I am having

16  understanding, that the -- typically when the complaint is

17  dismissed on the first motion to dismiss, leave to amend

18  would follow.  That apparently is not what Judge van Gestel

19  concluded here.

20          THE COURT:  Typically?  People have, I think, a

21  rather unusual view, something that maybe I ought to

22  precursor for purposes of the securities action, the class

23  action.  The idea that this is some sort of interactive

24  process, that the Court gets to mark up the complaint, and

25  then the plaintiffs get to file another one.  First question

```
 1    I am going to ask the class plaintiffs is:  Is this your
 2    final complaint?  Because if it isn't, they better file
 3    their final complaint before I act on their motion to
 4    dismiss.  You apparently are laboring under a similar
 5    apprehension.  That there is one free shot.  That you don't
 6    have to amend your complaint, and that they didn't have to
 7    amend their complaint in the state court.  That simply is
 8    not the case.  And so I want to disabuse you of that.  You
 9    told me that Judge van Gestel wouldn't let them amend their
10    complaint.  Apparently, they never asked to.
11              MR. JONCKHEER:  Well, it appears he did ask with
12    respect to that particular party.
13              THE COURT:  That's not dropping something in a
14    footnote, like say foot note 25.
15              MR. JONCKHEER:  Motion to amend, correct, that I
16    can see.  That -- that appears to be the case.
17              THE COURT:  There is no motion to amend, and isn't
18    the issue then for us whether or not there was adequate
19    representation of the shareholders for purposes of the
20    derivative action?
21              MR. JONCKHEER:  Well, I would submit, Your Honor,
22    that under the collateral estoppel analysis, okay, in the
23    First Circuit, has said following regarding collateral
24    estoppel.  -- issues transferred by significant changes, and
25    that is in the DeCosta case cited by the defendants.
```

1    THE COURT:  That is a class case.  Really, I guess

2    we have to deal with it in two parts.  First is what was the

3    state of the record, state of bidding actually, at the time

4    that the initial judgement was entered in the State Court.

5    And just a moment.  And that is because under State Court

6    23.1, just as under federal 23.1 analysis, there is not --

7    there is an obligation for the state to see representation.

8    It's implicit in its determination, and it's part of the

9    judgment.

10    Okay.  So now we say what was the state of the

11    bidding at the time that Judge van Gestel entered his order?

12    And the information that you are pointing me to was all

13    available, apparently not for some reason brought to his

14    attention, formally.

15    MR. JONCKHEER:  Well, Your Honor, I would submit

16    that that's the reason that the -- both the collateral

17    estoppel issue, the only thing Judge van Gestel held is that

18    the complaint that he read that was filed on February 20th,

19    did not have the facts.  That's the only thing he held.

20    There is no res judicata effect.

21    THE COURT:  No, he didn't.  He held there was in

22    futility in the failure to make that demand.

23    MR. JONCKHEER:  He held there was -- are no facts

24    pled to excuse demand.  That is the only thing he held.

25    Underlining substantive claims remain in effect.

13

1          THE COURT:  They may but you have to perfect them
2    in the proper fashion.
3          MR. JONCKHEER:  That's right, and that is what we
4    are doing by the complaint filed in this case.
5          THE COURT:  No.  Now, you are faced with res
6    judicata effect of a determination with respect to that.
7    There is a judgment.
8          MR. JONCKHEER:  But the only issue litigated is
9    the demand futility issue, which resulted in a judgment.
10         THE COURT:  So what that means is that every time
11   one shareholder group gets booted out, on failure of the --
12   of stating a claim, that another one can rise from the
13   action somewhere else and bring their own lawsuit.
14         MR. JONCKHEER:  No because there was no failure to
15   state a claim.  There was failure to allege demand for
16   futility.  That is different from the underlining claim,
17   which defendants concede remains in effect.  The underlining
18   claims are there to be enforced.  The question the Judge van
19   Gestel decided is whether the state plaintiff had showed the
20   facts to take those claims and prosecute them.  Judge van
21   Gestel read that complaint.  He didn't like it.  The most
22   recent fact in that complaint regarding the restatement came
23   from February 11th of 2004, which was simply an announcement
24   that the company was looking at 2003 and might have to
25   restate and was doing an investigation.

14

```
1            THE COURT:  There was no collateral estoppel
2   effect in general cases whenever the facts alleged.
3            MR. JONCKHEER:  Your Honor, I believe that is
4   correct.
5            THE COURT:  Is there case law that says that?
6            MR. JONCKHEER:  No.  But the collateral estoppel
7   concent, the issue is clear, and as I just read from the
8   First Circuit opinion -- is a change in the facts that are
9   central.
10           THE COURT:  Any change of fact -- any change in
11  the facts?
12           MR. JONCKHEER:  Material change here, Your Honor,
13  and they are material.
14           THE COURT:  All right.  And the materiality is
15  what?
16           MR. JONCKHEER:  Materiality is the admissions by
17  the defendants regarding the state of company internal
18  controls.  Now, that occurred in July.  So what Judge van
19  Gestel looked at was the -- looks like '03 might be restated
20  that is the only thing he knew.  What we know here is that
21  2001, 2002, and 2003 were restated.  We know by how much,
22  what accounts.
23           THE COURT:  It wouldn't make any difference in
24  terms of the factual predicate for which he -- on which he
25  was acting.
```

1          MR. JONCKHEER:  But it makes --

2          THE COURT:  It's two parts.  The first part is it

3    was available, and it wasn't pressed, and you are bound by

4    the determination of the state plaintiffs with respect to

5    this group of action.  So I have to say they chose not to

6    present it.  And if I were to say anything else, I would be

7    saying this was an inadequacy representation in the state

8    case.

9          MR. JONCKHEER:  Your Honor, they presented a

10   complaint.  The defendants moved to dismiss it.  The

11   plaintiffs submitted some additional information, and there

12   is no indication that the judge thought about that, that he

13   even cared if additional information was disclosed because

14   in footnote 5 on Page 7 of his order --

15         THE COURT:  What is the exception to the

16   collateral estoppel rule, the judge didn't care?

17         MR. JONCKHEER:  I am sorry, Your Honor.  I

18   misspoke.

19         THE COURT:  Go on.  Substantiate it.

20         MR. JONCKHEER:  The point is the judge was

21   presented with additional information, and I say that within

22   the context of his legal analysis, Your Honor, that he

23   didn't think it was relevant.  He concluded that the

24   complaint as written is what is -- whether it's going to be

25   determinative of what a demand is excused.  In footnote 5 on

1  Page 7 of his order, he says the complaints were live or die

2  as written when the arguments were presented to the Court.

3  Live or die is written.  So the point is that under the

4  Delaware cases that he is relying upon, that indeed is the

5  standard that demand futility is gaged at the time the

6  complain is filed.  No additional facts are relevant.  That

7  is why.

8          THE COURT:  We are back to this question of

9  whether or not there is the right to amend the complaint; is

10 that what you are saying?  That he effectively denied the

11 right to amend the complaint?

12         MR. MARTLAND:  What I am saying, that it's clear

13 from procedural history there, that the plaintiffs tried to

14 offer some additional information to the Court.

15         THE COURT:  What does that mean, tried to offer

16 additional information?

17         How do you do that?  You do that by a complaint.

18         MR. MARTLAND:  That's right.

19         THE COURT:  And they didn't move to amend the

20 complaint.

21         MR. JONCKHEER:  They didn't move to amend the

22 complaint, that's correct, Your Honor.  But I believe the

23 hearing on the motion to dismiss, and I wasn't a party to

24 that.  I don't know, but I believe it occurred right around

25 the same time that the restatement finally came out that the

1    restatement was issued.  So I believe that the timing is

2    such that the motion to amend, the motion to dismiss was

3    fully briefed, I believe as of the spring, and hearing

4    occurred I believe in July, but the defendants would have

5    to -- I don't know that, exactly when.  It was June

6    apparently.  So at that point, when the hearing was held,

7    the restatement hadn't even come out yet, so those facts

8    could not have obviously been disclosed to Judge van Gestel.

9         THE COURT:  I don't know why not.

10        MR. JONCKHEER:  You mean after the hearing?

11        THE COURT:  No one tried to, apparently.

12        MR. JONCKHEER:  Well, apparently the plaintiff

13   does not submit it after the hearing.

14        THE COURT:  That entitles you to come in and make

15   a lawsuit.

16        MR. JONCKHEER:  Not to bring another lawsuit, but

17   to allege facts that support our derivative complaint.

18        THE COURT:  Basic legal environment was alleged

19   before Judge van Gestel is nothing in the nature of the

20   legal theories that you've alluded to that wasn't before

21   him.  Now, there were factual problems with it, he

22   identified them, but there is nothing that in terms of

23   charges that were developed here that weren't before Judge

24   van Gestel.  Just got worse for the company.

25        MR. JONCKHEER:  That's right.  And those are facts

1    that are before Your Honor.

2           THE COURT:  See, it seems to me it's outright

3    refusal to pursue the idea of making a demand, that's

4    purely, and some perception telling me that business

5    judgment was harder to deal with than --

6           MR. JONCKHEER:  Your Honor, the policy of the law

7    is that demand is excused under certain circumstances.  How.

8    Now, we believe those circumstances exist, so that's why the

9    complaint was filed in the form it was filed.

10          THE COURT:  Okay.  Well, I guess I need to

11   understand with some particularity exactly what it is in

12   terms of theory, there was before Judge van Gestel.

13          MR. JONCKHEER:  The theory, Your Honor, is clear.

14   The Caremark case is an important Delaware case, which in

15   context of proving the settlement of the Court, described

16   the standards of liability for what is called failure of

17   oversight case where the Board does not operate an internal

18   control system in such a fashion that the corporation is

19   harmed as a result of the facts alleged in the complaint

20   that we filed in October, three months after the

21   restatement, alleges 9 separate categories of internal

22   controls that were deficient at this company.

23          THE COURT:  Let me understand this.  Your

24   position, I shouldn't have let you file this amended

25   complaint?

19

1           MR. JONCKHEER:  No.

2           THE COURT:  Something wrong in the Delaware law

3     about filing an amended complaint?

4           MR. JONCKHEER:  Well, under Delaware law, that

5     is -- there are cases that suggest that --

6           THE COURT:  Are you telling me that's why Judge

7     van Gestel didn't permit.

8           MR. JONCKHEER:  That is what the order says, Your

9     Honor.

10          THE COURT:  That is not what it says and you know

11    it.

12          MR. JONCKHEER:  I am sorry.  I understood that

13    Judge van Gestel said that there would be no leave to amend

14    based on the Delaware case.

15          THE COURT:  None was asked for.  What he is saying

16    at the end of the case, having rendered a judgment, there is

17    not going to be leave to amend.  You had a shot at it, or

18    more accurately, your client had a shot at it, more

19    accurately the representative of your client had a shot at

20    it, and they weren't successful.

21          MR. JONCKHEER:  I believe under federal procedure,

22    and I have a case by Judge Keeton also cited by the

23    defendants, which specifically says that in the context of a

24    derivative case under 23.1 --

25          THE COURT:  23.1.

```
 1              MR. JONCKHEER:  -- which this case is brought
 2   under, he is aware of no --
 3              THE COURT:  23.1, not 22.
 4              MR. JONCKHEER:  That's right, 23.1.
 5         I am aware of no case law in this circuit that
 6   supports on contrary First Circuit dismissal under 23.1 have
 7   been without prejudice.  So leave to amend is granted, 23.1
 8   derivative on the demand futility issue.
 9              THE COURT:  Let me put the same question to you.
10   Is this your best plan?
11              MR. JONCKHEER:  Yes, Your Honor.
12              THE COURT:  This is the one you are going to rise
13   and fall on.
14              MR. JONCKHEER:  Let me say one thing, since this
15   is an evolving set of disclosures, it took months before the
16   restatement finally came out.  Additional information has
17   come out, but I believe the current complaint alleges the
18   Caremark claim sufficiently.
19              THE COURT:  I am telling you right now, that I am
20   going to act on the complaint that you tell me that is your
21   best complaint.  Is this your best complaint?  This is not
22   going to be a game of -- or more accurately, a presentation
23   of shareholders in which a new story is told every evening
24   to foreclose unhappy consequences.  There is too much going
25   on in courts to spend time blue pen or highlighting or
```

1    anything the complaints of those who aren't prepared to

2    stand or fall by their complaint.

3           Are you prepared to stand or fall by your

4    complaint?

5           Because there will be no leave to amend once a

6    judgment is entered here.  Do you understand that?

7           MR. JONCKHEER:  I understand.

8           THE COURT:  Okay.  So is this your complaint?

9           MR. JONCKHEER:  Your Honor --

10          THE COURT:  Is this your complaint?

11          MR. JONCKHEER:  Yes.  But I believe that there are

12   additional facts that developed since it was filed.

13          THE COURT:  You are being afforded the opportunity

14   to make whatever modifications you want in the complaint now

15   before I go through the final process of determining whether

16   or not this complaint is adequate.  That is what it means to

17   have freely offered, an opportunity to amend the complaint.

18   It doesn't mean that we spin through this over and over and

19   over again.

20          MR. JONCKHEER:  I understand, Your Honor.

21          THE COURT:  Is this your complaint?

22          MR. JONCKHEER:  If Your Honor's permitting leave

23   to amend, then I would accept that.

24          THE COURT:  If I am permitting what?

25          MR. JONCKHEER:  Leave to amend the complaint.

1          THE COURT:  I am before I act on it.  You know

2     what the objections are.  You've heard what I have had to

3     say about it.  Is this the complaint that you are prepared

4     to rise or fall on?

5          MR. JONCKHEER:  Your Honor, I would like leave to

6     amend the complaint.  No.

7          THE COURT:  When?

8          MR. JONCKHEER:  Within a time period that we

9     can -- that the court can establish.

10          THE COURT:  What does that mean?

11          MR. JONCKHEER:  30 days.

12          THE COURT:  And that will be your final complaint?

13          MR. JONCKHEER:  Your Honor, yes.

14          THE COURT:  Any objection on the part of the

15     defendants?

16          MR. HALSTON:  Certainly prefer to have it

17     dismissed with prejudice at this time, Your Honor.

18          THE COURT:  Do doubt.

19          MR. HALSTON:  The Coughlin case, on the issue of

20     permissible to dismiss this case with prejudice in the First

21     Circuit, actually at the end of that opinion, the Court in

22     rendering its decision said in noting what the District

23     Court had said about demand futility and whether it would be

24     dismissed with or without prejudice, said the dismissal

25     with -- with prejudice, with the issue, obligation to make

1   demand on the directors with respect to the substantive

2   complaint.  And I think in the context of where we are now,

3   Your Honor, they filed an already amended complaint.  Recall

4   they filed an original complaint back in February or March

5   last year.  Consolidated amended complaint on October 12.

6   It went in having the benefit of Judge van Gestel's decision

7   on December 27th, and in that context, I think the Court

8   should further legitimate policy from the Delaware courts,

9   have said time and time again that directors shouldn't have

10  to be put through the expense of having to continue --

11           THE COURT:  Those were procedure issues, aren't

12  they?

13           MR. HALSTON:  Actually, the Supreme Court has made

14  clear that in considering demand futile, the demand futile

15  is an issue of substantive law.

16           THE COURT:  But the question of whether or not to

17  amend the complaint or the pleading constraints that

18  Delaware may put on that, is a matter of Delaware law and

19  procedural law that I am not obligated to imply.

20           MR. HALSTON:  I think Your Honor has his own

21  discretion with granting leave to amend, Your Honor.  I

22  think that is right.

23           THE COURT:  So my view is that I will permit them

24  30 days for their final complaint, but it will come to a

25  conclusion at that point.

1        MR. HALSTON:  May I -- would Your Honor like to
2    hear anything on collateral estoppel and why that might
3    short-circuit any leave to amend here?
4        THE COURT:  This is their opportunity to have
5    their best shot.  They actually had -- this will be their
6    third.
7        MR. HALSTON:  This will be their third.
8        THE COURT:  So there won't be any question whether
9    or not there is any adequate opportunity.
10        MR. JONCKHEER:  Thank you, Your Honor.
11        THE COURT:  Okay.  So we will give you 30 days.  I
12    will deny the motion to dismiss as moot in light of that
13    there is going to be a further complaint filed.
14        MR. HALSTON:  Would Your Honor like to schedule a
15    briefing schedule on that?
16        THE COURT:  I think I want to hear about the view
17    of the plaintiff's securities case first.
18        MR. JONCKHEER:  Thank you, Your Honor.
19        THE COURT:  Are you ready to go forward on
20    plaintiff's claim.
21        MR. CERA:  Your Honor, Solomon Cera for the lead
22    plaintiff.
23        Your Honor, of course the complaint -- a complaint
24    can always be improved upon.  We are dealing with a very --
25        THE COURT:  I am telling you, I don't know how

25

1    clear I have to be about this.  The question is:

2              Is this the one that you want to rise or fall on?

3              You have seen the objections that have been raised

4    by the defendants here, and they are really questions of

5    specificity.

6              Now, are you prepared to go forward on this

7    complaint or not?

8              MR. CERA:  Your Honor, if the Court deems it

9    insufficient --

10             THE COURT:  This is not my -- the question is are

11   you prepared to go forward or not?

12             MR. CERA:  We have more to add, Your Honor.

13             THE COURT:  Well, no doubt you do.  Is that what

14   you want to do, because that will be the last time you got

15   to do it.

16             MR. CERA:  Well, how -- I'm interpreting the

17   Court's comments this way, Your Honor.  You are saying if I

18   chose to go forward today and make an argument and attempt

19   to convince the Court that this complaint is sufficient

20   under the applicable law and Your Honor disagreed, the case

21   would be terminated.

22             THE COURT:  Yes.

23             MR. CERA:  Well, then we want to file another

24   complaint, Your Honor.

25             THE COURT:  All right.  30 days?

**EXHIBIT A-1**

1          MR. CERA:  No, Your Honor.  I would like longer

2     than that.  I would like to point out, Your Honor, this is

3     the first complaint that my client has filed in this matter.

4     We are dealing with the PSLRA, a very demanding statute as

5     Your Honor knows and as apparent from Your Honor's opinions.

6     Many of these opinions have talked about how it's very

7     demanding on a plaintiff to do this.

8          We have no discovery.  Cabletron talked about

9     standards to be applied in evaluating the complaint are

10    different before and after discovery.  We have had

11    absolutely no discovery.  We have no cooperation from the

12    issuer, no cooperation from any of the defendants.  There

13    are confidential agreements that they have with respect to

14    former employees that they tried to enforce.  We are doing

15    our best, Your Honor, to investigate with the tools that we

16    have at our disposal.  I would like a longer period.

17         THE COURT:  Wouldn't be any better if I dismissed

18    the complain and gave you leave to file again.

19         MR. CERA:  Well, Your Honor, it might be in the

20    sense that we would know what the Court found to be

21    deficient.

22         THE COURT:  True.  What you get is a preliminary

23    read from the Court on that, and then I have to tell you is

24    what I find most objectionable about this, that there is

25    this extraordinarily demand for time and resources and

1    effort on the part of the Court to function more less like

2    the fellow behind the elephant.

3              MR. CERA:  Your Honor, I appreciate that, and I

4    know it's demanding.  It's a difficult area of the law, and

5    there are tons of cases to analyze and a lot of authority

6    but, Your Honor, the Federal Supplement and the Federal

7    Reporter are full of decisions by courts considering

8    complaints, analyzing them, and then pointing out in what

9    ways they are deficient and allowing leave to amendment.  In

10   fact, some of your prior opinions have done that, and I

11   appreciate that it is burdensome on the Court.

12             Your Honor, I would certainly like to know how the

13   Court feels our complaint is deficient.

14             THE COURT:  Is there any litigant anywhere who

15   wouldn't want a preview of what the Court is going to do in

16   ruling on a particular motion?

17             MR. CERA:  Of course, Your Honor.  Of course we

18   would like that.

19             THE COURT:  So now we are talking about trying to

20   find some way, fairly but expeditiously, to resolve this

21   with a minimal amount of demand resource of all parties.

22   What happens is that there are fully briefed motions like

23   this in which you see what it is that defendants say is

24   deficient.  And then you say, what we would like is a

25   preliminary view from the Judge.  And frankly, I am not

28

1   going to do it.

2           MR. CERA:  I appreciate that.  I know Your Honor

3   knows that no matter what we allege in the amended

4   complaint, if we got, you know, 500 pages of specific

5   allegations from confidential witnesses, they are going to

6   say the same thing, Your Honor, no matter what we allege.

7   And ultimately we are going to --

8           THE COURT:  Then you get to say the same thing

9   twice; is that right?

10          MR. CERA:  No, Your Honor, because we believe we

11  are going to be able to convince you with our allegations

12  and our arguments that the complaint is sufficient under --

13          THE COURT:  And I will give you the opportunity to

14  do so.

15          MR. CERA:  Very well.

16          THE COURT:  But not the opportunity to do so once

17  and then do so again and do so again.  You've got to come to

18  rest on this --

19          MR. CERA:  Your Honor, as pointed out --

20          THE COURT:  -- in light of the options that have

21  been raised, which are the ones that I am going to rule on.

22          MR. CERA:  Your Honor, as I pointed out, this is

23  our first complaint in this litigation.  We would like a

24  minimum of 60 days.

25          THE COURT:  A minimum of 60 days?

29

1          MR. CERA:  Your Honor, because since this

2    complaint was tendered to the court in December 2004, we are

3    continuing to investigate this case on behalf of our client

4    and the class.  There are new efforts being made to find

5    sources of information, to fill in whole, so the court may

6    find exist to satisfy the pleaing standard, that is the

7    defendants are going to say violated no matter what we

8    allege, that takes time.  There is no cooperation.  There is

9    no discovery.  There are confidentiality agreements.

10          THE COURT:  You told me that, and that frankly is

11   not very much different from any other case in this posture.

12          MR. CERA:  Well, Your Honor, I am aware of cases

13   in this posture that routinely get 60 days leave to amend.

14          THE COURT:  It's not a matter of 60 days to amend.

15   The situation is you are at the motion to dismiss stage.

16   That is what the PR -- it's a critical stage in this

17   litigation, and it is within entitlement to enforce

18   discovery.  Nothing new there.

19          MR. CERA:  Right.

20          THE COURT:  That has been the case all along.  So

21   you say 60 days is going to be better?

22          MR. CERA:  I am sorry, Your Honor.

23          THE COURT:  60 days is going to be better?

24          MR. CERA:  Your Honor, we will have --

25          THE COURT:  One that you have to rise and fall on;

1    you understand that?

2          MR. CERA:  I hear what Your Honor is saying, Your

3    Honor, and I think we will have greater detail in that

4    complaint to the extent that we can do it, of course we

5    will.  That is our job as lawyers, and we fully intend to do

6    it.  I was prepared to argue today, Your Honor, why this

7    complaint should satisfy the Cabletron standards.  I am

8    prepared to do that, but if Your Honor preliminary

9    indication is you don't want to go into that exercise

10    because of the burden, we will take the 60 days and improve

11    it.

12          THE COURT:  I tell you what my principal concern

13    was and is, I find it an affront, frankly, to read through a

14    lengthy brief, some 45 pages long, only to be told if for

15    any reason the Court finds the allegations insufficient, we

16    respectfully request leave to amend, not because we have

17    found something new, but simply because we want a chance to

18    engage in an interim process with the Court.  And that, it

19    seems to me, is a very substantial presumption upon

20    resources of the Court.  There are other cases.  I assure

21    you there are other cases on the docket, and they require

22    attention, too.

23          MR. CERA:  Of course.

24          THE COURT:  And the idea that we get to have rough

25    drafts of resolutions isn't particularly appealing to me.

1      MR. CERA:  I appreciate that, Your Honor, and I

2   understand the Court's feelings about that.  It certainly

3   wasn't meant in any way as an affront.  It was a -- we cited

4   Your Honor's own opinion.

5      THE COURT:  Prior to which I cited the Supreme

6   Court's instruction necessary in the absence of the undue

7   delay, bad faith, dilatory motive, repeated failure to cure

8   deficiencies, undue prejudice, those are the standards.  But

9   now I am going to permit that, so that we are all going to

10   be focused on what you think your best shot is.

11      MR. CERA:  Okay.  Your Honor, I accept that.  As I

12   say, I was prepared to defend this complaint, but we will

13   give you our best shot the next time.  If we can --

14      THE COURT:  One that you are prepared to live or

15   die with; is that right?

16      I am asking this question in this way because I

17   don't want to be faced again with someone saying -- well,

18   you can always improve a complaint, which is no doubt true,

19   and at some point, it has to come to an end.

20      MR. CERA:  Your Honor, I understand.  I have been

21   practicing in this area 25 years, and this is frankly an

22   extraordinary situation, I think, for plaintiff in this

23   position because, frankly, the normal experience, the common

24   experience if you will that have I had in security

25   litigation where it has become increasingly difficult to

1   state a claim for relief under the PSLRA is that courts --

2   THE COURT:  Not in the First Circuit.  The

3   standards of appeals are frankly what the First Circuit have

4   been talking about for some time.

5   MR. CERA:  I understand that, but I understand

6   your court -- Court basically telling us today that this

7   complaint is insufficient.

8   THE COURT:  I haven't told you any such thing.  I

9   asked you whether or not you are ready to go with it,

10  understanding that there will not be leave to amend if you

11  rise and fall on this complaint, and I have dismissed it.

12  MR. CERA:  Your Honor, I am not going to forego

13  the opportunity to add to this complaint.

14  THE COURT:  All right.  So that's where we are.

15  MR. CERA:  Very well.

16  THE COURT:  And I want you to understand that you

17  give me a date, and that will be the date on which you rise

18  or fall.

19  MR. CERA:  We would like 60 days, Your Honor, from

20  today.

21  THE COURT:  All right.  Now, while we are at it,

22  so you got some idea of what is on my mind, why do you need

23  to have undisclosed witnesses?  Undisclosed -- first thing

24  that is going to happen in the discovery in any case is they

25  are going to ask who introduced this unnamed vice president,

33

1   so why don't you name them?

2            MR. CERA:  Your Honor, the answer to that is

3   essentially honoring a request from the witness at this

4   point in time.

5            THE COURT:  Okay.  You honor it at the time of

6   discovery?

7            MR. CERA:  I think not, Your Honor.  There is

8   disclosure obligations.

9            THE COURT:  Now we are talking about when it is

10  you are going to disclose, not when.

11           MR. CERA:  Your Honor, I don't feel right, if you

12  will, in being told by a witness that we prefer at this time

13  to remain anonymous for reasons that I may not be aware of.

14           THE COURT:  You've got to articulate them in some

15  fashion.  I mean, you know, if I am doing a search warrant,

16  I have to have some justification for unnamed informants and

17  some basis to rely upon the statement of unnamed informants.

18  So you talked to people who don't want to have their names

19  used at this time.  So they are waiting to see whether or

20  not I let the complaint be amended; is that it?

21           MR. CERA:  Your Honor, I don't think they are

22  thinking of it in those terms.  It's very common for

23  securities complaints to have unnamed confidential sources.

24           THE COURT:  I see that, and I have seen the case

25  law on it and, frankly, it's become something of an

1    epidemic, and I want to step back from that and ask a

2    question that I have actually asked of a couple other cases

3    already, which is sooner or later these people's names are

4    going to be known, unless you are unsuccessful.

5            And so exactly what I suggested earlier, this is

6    something of a game of chicken.  See whether or not you can

7    make it past the initial huddle, that's various kinds of

8    procedural requirements imposed with a minimal amount of

9    effort.  So --

10           MR. CERA:  No.

11           THE COURT:  Short of it is you are not telling,

12   not identifying who these unnamed informants are because

13   they asked you not to without having some reason for doing

14   that.

15           MR. CERA:  Your Honor, first of all, I want to

16   assure the Court we are not trying to escape here with

17   minimal amount of effort, and there is no connection between

18   that and not naming the source.  We made a significant

19   effort under very difficult circumstances.

20           Your Honor, the law doesn't require it at this

21   point.  The First Circuit law does not require disclosure of

22   the names as long as there is other information presented in

23   the complaint that corroborates or tends to corroborate the

24   veracity of the information.

25           THE COURT:  I am not saying it's required.  I am

1    asking why you aren't doing it.

2            MR. CERA:  Your Honor, because it's fear of

3    retribution of some of the witnesses by the company.

4            THE COURT:  Won't there be retribution when their

5    names are discovered?

6            MR. CERA:  It may or may not be.  It's unknown.  I

7    don't know what is going to happen in the future.  No one

8    knows what is going to happen to this company or to these

9    people.  It's all speculation.  If the time comes that it's

10   required to make disclosures, the disclosures will be made.

11   But at this point in time, when we are talking about

12   investigating a complaint and gathering information, and you

13   are dealing with former employees or former officers who may

14   be on bad terms with the company and expressly request at

15   this point in time --

16           THE COURT:  If they are former employees on bad

17   terms with the company, is that something that should be

18   disclosed in the complaint for purposes of evaluating the

19   credibility of statements that they have made and whether or

20   not it fits together?

21           MR. CERA:  That is a good question, Your Honor,

22   but I don't think it needs to be disclosed, no, and I didn't

23   mean to suggest by the way in any way, shape, or form that

24   was the situation here.

25           THE COURT:  Just something that came to mind as

36

1    you were discussing it.

2              MR. CERA:  I understand.  Your Honor, no, I don't

3    think it needs to be disclosed.  There is all kinds of

4    permutation of factual scenarios that can arise in this

5    world.

6              THE COURT:  I am fully aware of that.  I raise the

7    question.  You are required to do it, but it's certainly

8    something that will be taken into consideration in trying to

9    piece together the degree of which this complaint meets the

10   obligation to show a strong likelihood of or make strong

11   demonstration of --

12             MR. CERA:  Fair in mind -- Your Honor, we will

13   keep that in mind.

14             THE COURT:  I go back to the earlier question.

15   This is simply to provide cover for the people who -- there

16   is no other justification, no one made a justification for

17   it?

18             MR. CERA:  Your Honor, I think at the end of the

19   day, that's the reason.  That's -- I have given you the

20   reason.  I don't know what it may be in these witnesses'

21   heads.  They have requested confidentiality, and I am not a

22   mind reader.  I am a lawyer, operating and trying to

23   investigate, and I have agreed to honor that request.

24             THE COURT:  Okay.  You have in mind a perspective

25   that I have, and it's this, that from assistant attorney

1  dime me with an unnamed informant, I would ask some

2  questions to determine whether or not there was probable

3  cause, and I am not sure why I shouldn't do that here.

4        There is of course case law out there where

5  principally from the Second Circuit, dealing with this kind

6  of issue.  It is, I think, a work in progress on these

7  issues, and so I raise it so that you are not surprised if

8  in evaluating a claim in which there is simply hung out some

9  description of a job and unnamed holder of that job, that

10  not much weight is attached to assertions.

11        MR. CERA:  Very well, Your Honor.  We will keep

12  that in mind.  I want to assure the Court, however, that

13  these are real people, and this is real information, and if

14  the difference is going to be just providing a name and

15  that's going to tip the balance --

16        THE COURT:  Let me tell you what I have done in

17  certain cases.  When I have had some question about whether

18  or not there are real people with real positions, I have

19  required that the investigative basis for it be provided to

20  me in camera.

21        MR. CERA:  Uh-huh.

22        THE COURT:  So just telling you how carefully I

23  intend to read this and have here.  There are important

24  principles involved in all of this, and the use, increasing

25  use of unnamed informants seems to me to be a trend not

1   necessarily to be encouraged.

2              MR. CERA:  Okay.  We will definitely keep that in

3   mind, Your Honor, in formulating the next complaint.

4              THE COURT:  Okay.  All right.  So 30 days for the

5   derivative plaintiffs to file their complaint.  Their final

6   complaint, which is July 1.  60 days for the securities

7   plaintiffs to file their final complaint, which is

8   August 5th.  The responses, responsive pleading for the

9   derivative defendants, August 5th, and the opposition by

10  August -- I know I am getting on people's vacations.

11             MR. HALSTON:  I was wondering if we could have

12  until August 15th.  I know I have two weeks of vacation

13  there, and I asked Mr. Gold and I understand he does as

14  well.

15             THE COURT:  Okay.  So August 15 for response of

16  pleadings and then September 12 for opposition reply by

17  September 23rd, we undoubtedly set it up for hearing in the

18  early part of October, but I don't see a date yet for sure

19  on the case.  With respect to the -- sorry -- review of the

20  case.  With respect to the securities case, the complaint as

21  said on August 5th, responsive pleadings.  We will make it

22  September 12.  The opposition October 10 and reply

23  October 21.  Schedule them all on the --

24             MR. HALSTON:  October.

25             THE COURT:  October 21 and I won't schedule them

```
 1   on the same day for a hearing, we will have separate dates

 2   for.

 3           So the motions to dismiss are denied as moved

 4   having given leave to the plaintiffs to file amended

 5   complaints.  Here to address any potential deficiencies that

 6   they may have identified with the understanding that that

 7   will be also a complaint in both cases, and that is the

 8   ruling in both cases, all right.

 9           Anything else we need to deal with?

10           MR. CERA:  No.

11           THE COURT:  All right.  We will be in recess.

12           THE CLERK:  All rise.

13       (Recessed at 4:30 p.m.)

14                      * * * * *

15              COURT REPORTER'S CERTIFICATE

16       I, TERI CELESTE GIBSON, CSR, RPR, CRR, do hereby
     certify that the foregoing pages 1 through 39, are a true
17   and accurate transcription of my stenographic notes taken in
     the above-entitled proceedings, prepared to the best of my
18   knowledge, skill, and ability at the time and place
     aforementioned.

19

20

21
     TERI CELESTE GIBSON, CSR              DATE:  7/30/05
22   This certificate only applies to transcripts produced,
     copied, and signed by Teri Celeste Gibson, Court Reporter.
23

24

25
```