# EXHIBIT F – Part 1 of 2

**WILMERHALE**

June 15, 2007

Sherry Hartel Haus

+1 617 526 6540 (t)
+1 617 526 5000 (f)
sherry.haus@wilmerhale.com

Pamela Markert, Esq.
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA  94105

Re:    In Re Sonus Networks Litigation

Dear Pamela:

I write regarding your letter of May 11, 2007 responding to my letter of three months earlier, dated February 1, 2007.  This letter serves both as a response to your letter of May 11 and as yet another attempt to correct the record, as your letter of May 11 misrepresents the statements and positions of Sonus Networks, Inc. ("Sonus") and its counsel in several regards.  Our ongoing exercise of extensive discovery conferences and letter writing would prove less time-consuming and expensive for both parties if Lead Plaintiff would refrain from mischaracterizing statements made and positions taken by defense counsel on any number of matters.  This letter largely follows the format of your May 11 letter.

**A.    Documents Collected For Review**

Though Lead Plaintiff does not "agree[] to limit the search of [electronic data] to the locations identified in Section A of [my] February 1 letter," you provide no alternative list of locations to be included in the search of electronic data.  Sonus will not agree to search electronic data in locations that cannot reasonably be expected to lead to the discovery of admissible evidence, nor is Sonus obligated to do so.  If Lead Plaintiff wishes to propose additional locations, Sonus will consider those suggestions in the spirit of cooperative discovery; otherwise, Sonus will proceed to search the data collected for review as specified in my letter of February 1.

**1.    Litigation Hold**

As Ms. Coffey and I have explained on multiple occasions, Sonus instituted a litigation hold in 2004.  Specifically, a back-up of network file shares and departmental shares was completed, and Sonus ceased recycling its back-up tapes for network file shares and departmental shares on or about January 2004.  In addition, a company-wide hold was placed on electronic mail on or about February 15, 2004, and Sonus ceased recycling its electronic mail on or about March 2004.

**2.    Personal Hard Drives & Portable Devices**

The litigation hold in February 2004 instructed employees to retain *all documents*, hard copy or electronic, related to Company business.  Specifically, employees were instructed to maintain all hard-copy paper files or documents, e-mail files or other computer files, from both

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 2

the servers and hard drives, to include documents at employees' homes and on their home computers. While other types of devices were not mentioned specifically, the instruction to *"maintain all documents (hard copy or electronic) related to Company business"* encompasses all documents, regardless of the storage device.

### 3.  Recoverable Files

Please clarify what you mean, on page 2 of your May 11 letter, by "recoverable files, file fragments, and other data" that may be found on storage devices containing electronic data. We have not discussed this issue during our previous teleconferences.

### 4.  Back-up Tapes

Sonus is in the process of obtaining cost estimates for restoring back-up tapes prior to the litigation hold, and compiling the inventory of back-up tapes created from December 31, 2000 until recycling of back-up tapes ceased in the spring of 2004. We will send you that inventory when it has been completed.

### 5.  PDA Search

We have confirmed that Anthony Anzivino and Charles Gray did not have PDAs during the Relevant Time Period (January 1, 2001 through September 30, 2004). As we informed you during our March 15, 2007 teleconference and in an April 30, 2007 e-mail from Ms. Coffey, "the individuals listed in Sonus' Initial Disclosures either did not have a PDA between January 1, 2001 and September 30, 2004," or "did not have relevant information on their PDA that would not have been on the Sonus server."

### 6.  Shared Drives

The shared drives identified in Paragraph A.2 of my February 1 letter are the only departmental shared drives that Sonus believes may hold documents relevant to the claims or defenses of the parties, or that may lead to the discovery of admissible evidence.

### 7.  Company-Issued Laptops and Custodians' Storage Practices

Sonus issues laptop computers to all of its employees.[1] We are in the process of confirming whether individual custodians saved data locally to their hard drives on their Sonus laptops, and will upload and search any available data that was so saved.

---

[1] Sonus does not issue laptops to or establish e-mail accounts for outside directors. Sonus is therefore collecting directly from Paul Ferri, Paul Severino, and H. Brian Thompson, and will upload and search any relevant documents in their possession.

US1DOCS 6207902v2

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 3

8.    **Data Identified in Paragraph A.3**

It is untrue that defense counsel has not yet informed you "how far the data [identified in Paragraph A.3 of my February 1 letter] goes back." Ms. Coffey responded to your inquiry via an e-mail on April 30, 2007 in which she informed you that "[t]he electronic data collected in January and February 2004...included all data that existed on the data source as of the date of the collection." Thus, the data remaining on the data source at the time of the collection has no set "start date," but rather corresponds to individual habits of saving and deleting data prior to and as of the time of the collection. At least one document from the January and February 2004 collection dates as far back as January 1996, though certainly not all custodians would have kept data from so far back. In any event, we will be searching only those documents within the Relevant Time Period, discussed in Section B.6, below.

9.    **Oracle**

As you note, we have discussed the Oracle database several times, including during our March 15 and April 13, 2007 teleconferences. Ms. Coffey and I explained to you in the course of each of these discussions that the Oracle database used by the Company stores *data*, not *documents*.

a.  **Data Extraction**

For any person (including Lead Plaintiff) to review or use any data from the Oracle database in an easily accessible manner, that data must be extracted and put into a useable, reviewable document format. Lead Plaintiff likely will not find the Oracle database easily reviewable during discovery. We have offered several times to look into the cost of extracting raw data that would be of interest to Lead Plaintiff; however, Lead Plaintiff still has not provided us with any topics or guidelines concerning what type of data it may want. Finally, if and when Lead Plaintiff provides us with any such requests (though it has not suggested that it intends to do so), we understand that locating such data may be difficult and may involve a time-consuming and expensive process of elimination. Sonus therefore reserves its right to object to any such search that may prove unduly burdensome.

b.  **Existing Documents**

We also have explained that, because the Oracle database itself consists of data, not documents, we are unaware of what "Oracle reports" you may want. We have, however, endeavored to provide you with answers to your questions about where reports utilizing such data might be located. Specifically:

- Sonus utilizes both standard and custom reports for Oracle data.

USIDOCS 6207902v2

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 4

- There is no standard format in which Sonus saves "Oracle reports," nor is there a designated format or file prefix or suffix for Oracle reports (such as ".rpt").

- To the extent that data from the Oracle database has been put into a document (Microsoft Word, Microsoft Excel, and the like), storage practices likely will vary by the individuals who created them, but generally would be found on (a) the Finance Department shared drive, (b) on individuals' network file shares, or (c) on individuals' hard drives.

- It is our understanding that relevant individuals in the Finance Department kept most documents on the Finance Department shared drive so that everyone in the department could access the documents.

- The Finance Department shared drive, individuals' network file shares, and, where applicable, data stored on individuals' hard drives has been or will be collected and uploaded to search, review and produce to Lead Plaintiff.

For all of the reasons set forth above, I stated that, in my opinion, it would make sense for Lead Plaintiff to review first the electronic documents from the shared drives, network file shares and hard drives currently slated for searching and review before we continue to labor over minutiae related to the data stored in the Oracle database.[2]  If, after reviewing those documents, Lead Plaintiff still believes it necessary to discuss the extraction of raw data or further details related to the Oracle database, the parties could do so at that time.

In addition, your statement that no "definitive response [was] provided regarding the location of the Oracle database within Sonus' computer systems," is misrepresentative of the tone and content of our discussions.  Neither Ms. Coffey nor I have any recollection of you posing such a question.  In any event, we do not anticipate at this time that the entire Oracle database will be uploaded with the rest of the electronic data for all the reasons set forth above.

     c.    **Pointman**

As we also have mentioned several times, Sonus converted its accounting system from Pointman to Oracle in March 2001.  In other words, such conversion took place a *full year prior to the start of* the *Class Period* and a mere *two months* after the start of the three-year, nine-month Relevant Time Period to which Sonus otherwise has agreed to produce documents.

---

[2] For all of the reasons listed above, we also object to the representation in your letter regarding our discussions of Oracle or "Oracle reports" to the extent that they suggest that we agree that any such "Oracle reports" to which you refer are an easily identifiable document type.

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 5

The conversion was not a full conversion, but instead was done on an "as-needed" basis. Sonus' position is that the historic Pointman database will not be searched during discovery for this action. Sonus is not required to go to great and costly lengths to restore data that is not accessible (*see* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost")) and, in light of the fact that *all financial data for one year prior to the class period* is available on the Oracle system, Lead Plaintiff cannot seriously suggest otherwise. Lead Plaintiff has failed to articulate a reason why the Pointman data is relevant to its claim, but even if it had attempted to do so, the fact that inaccessibly stored data is "believed to contain relevant documents does not end the inquiry... At some point, the adversary system needs to say 'enough is enough' and recognize that the costs of seeking *every* relevant piece of discovery is not reasonable." *Cognex Corp. v. Electro Scientific Indus., Inc.*, No. Civ.A. 01CV10287RCL, 2002 WL 32309413, at *3, *5 (D. Mass. July 2, 2002) (emphasis in original).

**B.      Proposed Search Queries**

Sonus objects to the misleading characterizations, on pages 4 to 5 of your letter, of Sonus' responses to Lead Plaintiff's overly broad and unduly burdensome First Set of (152) Document Requests ("Requests," or individually, "Request No. __"). In particular, your categorization of Defendant Sonus Networks, Inc.'s Responses to Lead Plaintiff's First Set of Document Requests ("Sonus' Responses" or individually, "Response No. __") is misleading and fails to provide Request numbers related to each of the categories you have contrived. Please provide the Request numbers related to each of your categorizations of Sonus' Responses. You also assert without basis that Sonus has "narrowly limit[ed]" its Responses to your Requests and has attempted to "create its own document requests." Please state the basis for these statements, including clear information regarding how Lead Plaintiff derived the mysterious numbers it cites for the categories it has contrived, so that Sonus might have a good faith opportunity to respond, particularly if Lead Plaintiff intends to cite similar misinformation to the Court.

**1.      Mischaracterizations of Sonus' Response**

As stated in Sonus' Responses, Sonus objects to Lead Plaintiff's Requests seeking documents that exceeded the scope of the claims that were sustained by the Court in its May 10, 2006 Order on Defendants' motions to dismiss ("Order") (Dkt. No. 149). By way of example:

- 23 Requests asked for "[a]ll documents relating to written or verbal communications with" members of the investment community" (*see* Request Nos. 20-42). Sonus agreed to produce documents relating to communications with Goldman Sachs concerning the April 21, 2003 and September 23, 2003 offerings, but objected to the rest of these Requests because the Court rejected Plaintiff's revenue linearity theory of motive. (Dkt No. 149 at 38).

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 6

- Sonus objected to 42 Requests (Nos. 91, 94, 95, 96, 97, 98, 99, 100, 102, 103, 106, 107, 117, and 119 through 147) because they requested all documents "relating to" accounting issues or "transactions or potential transactions with" 29 customers that are not at issue in this case. The Court was clear in its Order on the motions to dismiss that Lead Plaintiff had stated particularized allegations about only four accounting transactions (Dkt. No. 149 at 43).

Sonus also objected to the unreasonable breadth and ambiguity of other document requests, including, but not limited to:

- Request No. 14: "All documents relating to the price of Sonus stock."

- Request No. 15: "All documents relating to the market for Sonus stock."

- Request No. 45: "All data obtained by Sonus from the computer hard drives of any current or former Sonus employee."

- Request No. 77: "All documents relating to data stored in Sonus's internal accounting system, including, but not limited to, back-up tapes."

2.    Searches

Pursuant to our numerous telephone conferences over the past several months, enclosed with my letter of February 1 for Lead Plaintiff's consideration was a set of 52 search queries proposed by Sonus to be used to identify potentially relevant and responsive documents in the large universe of Sonus electronic data for documents responsive to Plaintiff's Requests ("Sonus Queries"). Over three months later, on May 11, you responded by letter, enclosing a set of 94 search queries ("Plaintiff's Queries") (including a mere fifteen (15) proposed by Sonus) and 52 "additional custodians." Sonus has reviewed Plaintiff's 94 proposed search queries, and its responses ("Query Responses") are enclosed herein. Sonus seeks to resolve discovery disputes in a mutually agreeable way without resorting to the Court. Hence, Sonus has accepted 22 of your proposed queries, and has accepted with edits another 52 such queries. Sonus objects to 20 of the 94 queries on grounds stated in the enclosed responses, but is willing to discuss mutually agreeable edits thereto.

Sonus expects that, in return, Lead Plaintiff will engage in a good faith effort to narrow its overbroad and burdensome search requests. I include herein, with our responses to Lead Plaintiff's proposed search queries, information pertaining to the "hit lists" run by outside vendor Zantaz, Inc. on Lead Plaintiff's proposed search queries. The "hit lists" illustrate the burdensome nature of your requests. The *total number of documents* after the deduplication process was 1,634,677, or 256.84 GB of data, *not including* documents that may be uploaded in

WilmerHale

Pamela Markert, Esq.
June 15, 2007
Page 7

the future should Lead Plaintiff manage to articulate valid reasons for searching the data of more than 40 additional custodians, as you propose (*see* below at section B.5). Your suggested queries yielded 1,306,087 unique documents, or 202.75 GB of data – *a full 79% of the total documents* after the deduplication. This incredible number is *exclusive* of three queries – Nos. 2, 3, and 4 – because they were too difficult to apply.

The unreasonableness of Lead Plaintiff's requests are further illustrated by a review of its individual queries. Several queries yielded over half a million documents each, including Query Nos. 20 (594,451 hits), 22 (746,755 hits), 25 (742,726 hits), 75 (506,033 hits), and 87 (599,095 hits). In addition to these incredibly burdensome queries, another eight (8) queries also hit massive numbers of documents near or in the hundreds of thousands, including Query Nos. 10 (186,149 hits), 14 (140,505 hits), 21 (297,519 hits), 23 (405,904 hits), 24 (360,940 hits), 28 (455,416 hits), 29 (414,621 hits), 33 (160,269 hits), 38 (146,255 hits), 71 (131,910 hits), 90 (259,326 hits), 91 (431,700 hits), 93 (102,603 hits), and 94 (122,260 hits). Lead Plaintiff cannot seriously maintain that a reasonable search, targeted to identify documents relevant to the claims or defenses of the parties and reasonably expected to lead to the discovery of admissible evidence, should yield almost 80% of a vast universe of Company documents.[3]

As noted above, and in our enclosed responses, Sonus nevertheless accepts several of Plaintiffs' proposed search queries and suggests, in good faith, edits to other queries that could render them more likely to yield a set of documents more tailored to Lead Plaintiff's interests and less burdensome for review by both parties. [4] We expect that Lead Plaintiff will consider our suggestions in a similar spirit, so that we may move forward with the discovery process.

3.    **Good Faith Efforts**

Sonus has engaged in this effort to narrow the scope of reviewed electronic data in good faith, proposing search terms that would allow Lead Plaintiff to identify documents relevant to its case while also decreasing for both parties the massive and already burdensome expenditure of time and money on electronic discovery in this case. Toward that end, and despite its objections to several of Lead Plaintiff's unduly broad and burdensome discovery requests, Sonus offered that it would nevertheless consider (without waiving its objections) any additional search queries Lead Plaintiff wished to propose relating to those requests. This process would allow Sonus to run "hit" lists on those requests to determine how burdensome reviewing and producing the documents would be. Sonus' proposal was intended to allow both parties to engage in an

---

[3] The number of documents discussed herein relate to the time period stated in Lead Plaintiff's Requests (January 2001 to the present), evidencing the unreasonable breadth of the time period requested.

[4] In addition to the Query-specific edits identified in Sonus' enclosed responses, Sonus also generally proposes deletion from all Queries (by either party), any terms identified by Zantaz, Inc. as "noise words" – words so common that they are usually not searched due to the probability of an unreasonable number of hits. Attached as Exhibit A to Sonus' enclosed responses is a list of such words recently provided to Sonus counsel by Zantaz, Inc.

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 8

educated discussion about the scope of discovery and, perhaps, come to an agreement on certain of Plaintiffs' requests, rather than wasting time and money while burdening the court with petty discovery issues.[5] Despite your assertion that Sonus' offer was "not a good faith effort to resolve the discovery issues," our suggestion was proffered as a good faith step toward resolving your concerns about our Responses and proposed search terms. Lead Plaintiff cannot reasonably suggest otherwise when your response to our offer was simply, as you put it during the teleconference, *"That makes a motion to compel tricky."*

4.     **Initial Disclosures**

Your complaint that "the broad categories Sonus identified [in its Initial Disclosures] are insufficient for Lead Plaintiff to provide meaningful suggestions for the search of the [electronic data]" is wholly unreasonable. Sonus has met its obligations under Rule 26(a)(1)(B), which requires only a "description by category and location of, all documents electronically stored information, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses." Lead Plaintiff's disclosures were no more specific than Sonus' disclosures; Lead Plaintiff disclosed, for example, broad categories of documents including Sonus filings, Sonus press releases, analyst reports, *"documents concerning the Lead Plaintiff,"* and "news, articles, interviews, profiles and reports relating to Sonus."  Sonus is under no obligation to be any more specific.

5.     **Additional Custodians**

Further evincing Lead Plaintiff's eagerness to attribute bad faith to Sonus while making no effort to actually resolve discovery issues, your letter lists 52 "additional custodians" from whom electronic data should be retrieved. A review of the list reveals that five (5) of these individuals already have been identified by Sonus; electronic data from these custodians will be

---

[5] Sonus also made such offer as a good faith response to your concern, expressed in your May 11 letter, that "responsive, discoverable documents will be excluded based on Sonus's proposed parameters." Sonus reminds Lead Plaintiff that searching for relevant documents in order to narrow the scope of review, rather than reviewing them one-by-one, is an imperfect process designed to bestow two primary benefits on both parties: (1) a more expedient discovery process, whereby only documents likely to lead to the discovery of admissible evidence are reviewed, thus permitting Plaintiff to receive discovery faster, and allowing both parties to spend less time reviewing largely irrelevant electronic data; and (2) the resulting decrease in litigation costs for both parties. In exchange for receiving relevant data at a much faster pace, the parties face the possibility that some documents that could be relevant may not meet the search criteria and thus will not be reviewed. Indeed, unless every document is reviewed one-by-one, there is no guarantee that any search term list will identify *all* relevant documents. And if the search term list is continually broadened with an eye toward ensuring that *every* conceivable relevant document is included, the benefits discussed above become greatly diluted. Defendants respectfully suggest to Lead Plaintiff that its focus on ensuring that every minute piece of data is produced may hamper its own interests in decreasing the amount of time spent reviewing irrelevant documents and expediting the review and production of documents.

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 9

uploaded for review.[6]  Another three (3) of these individuals are not, and never were, Sonus employees.[7]  It is unclear whether Lead Plaintiff bothered to review Sonus' Initial Disclosures and Sonus' Responses (which stated that Sonus would search documents from custodians listed in Sonus' Initial Disclosures) before providing its list of 52 "additional custodians" and reminding Sonus of its "discovery obligations."  For the remaining 44 "additional custodians" on its list, Lead Plaintiff provides no explanation as to why it believes such individuals might possess documents relevant to the claims or defenses of the parties.  Sonus is willing to consider Lead Plaintiff's suggestions that documents from additional custodians be searched, provided that Lead Plaintiff makes such requests in good faith and provides a reasonable basis for their inclusion.

6.     **Relevant Time Period**

As set forth in Sonus' Responses, Objection No. 9 (definition at p. 6), the Relevant Time Period defined in Plaintiff's Requests (January 1, 2001 to present) is overbroad and unduly burdensome, seeks documents that are irrelevant to the claims or defenses of the parties, and is not reasonably calculated to lead to the discovery of admissible evidence.

While Sonus does not agree that documents created before and after the putative Class Period are, in fact, relevant to the claims or defenses of the parties or reasonably can be expected to lead to the discovery of admissible evidence in this action, Sonus *nevertheless*, in the spirit of cooperative discovery, *has agreed* to provide documents from *one year prior* to the putative Class Period through six (6) months after the putative Class Period.  In addition, as stated in our December 20, 2006 teleconference and Ms. Coffey's April 30, 2007 e-mail, for Requests 1, 5, 6, and 7, Sonus has agreed to produce documents for a period of *over six (6) years*, from January 1, 2001 through the present.  Sonus is not obligated to undergo significantly more burdensome and costly discovery to do more,[8] and Lead Plaintiff's counsel has not cited any authority supporting a broader timeframe than that to which Sonus already has agreed.

---

[6] These individuals are:  Paul Ferri, Paul Severino, H. Brian Thompson, Anthony Anzivino, and Charles Gray. Sonus will not be searching John Cunningham's documents, as he did not become a Sonus director until two weeks prior to the end of the Relevant Time Period, as defined by Sonus in this letter and in Sonus' Responses, Objection No. 9.  Sonus will therefore not be searching his custodial account and will delete his name from proposed queries 49-51.

[7] These individuals are:  Jon Klerowski, Duayne Morrison, and Bernie Rifkin.

[8] *See, e.g., Jaffee Pension Plan v. Household Intern'l, Inc.*, 2006 WL 3445742, at *4 (N.D. Ill. Nov. 22, 2006) (defendant not obligated to produce documents outside the class period beyond what it had already produced because, in part, "the mere fact that further discovery might be relevant does not mean Plaintiffs are entitled to that discovery"); In re *Seagate Tech II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993) (approving extension of time period to produce documents to five months before the class period to four months after its close).

WILMERHALE

Pamela Markert, Esq.
June 15, 2007
Page 10


   If you have any questions regarding this letter or our enclosed responses and exhibit
thereto, please contact me at the above number. Otherwise, I look forward to finalizing the
search terms so that our production can proceed without further expense or delay.

Sincerely,

Sherry Hartel Haus

SHH/alc
Enclosures
cc: James W. Prendergast, Esq.
   Peter A. Spaeth, Esq.
   Melissa B. Coffey, Esq.
   Carrie H. Seares, Esq.
   Solomon B. Cera, Esq.
   Kenneth A. Frost, III, Esq.
   Matthew J. Matule, Esq.
   John R. Baraniak, Jr., Esq.

*IN RE SONUS NETWORKS, INC. SECURITIES LITIGATION*

PROPOSED SEARCH QUERIES

| *PROPOSED QUERY & HIT COUNTS* | *ACCEPT/NOT ACCEPT* |
|---|---|
| 1. All files with Powerpoint file extensions (*.pps and *.ppt)<br><br>[19,407 hits] | NOT ACCEPT<br><br>• This is not a search query.<br><br>• Does not relate to any of Lead Plaintiff's First Set of Document Requests ("Plaintiff's Requests," or, individually, "Request No.").<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All Powerpoint documents authored by, edited by, viewed by, or sent to or from any custodian, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion. |
| 2. All relevant documents and tangible things Sonus identified on its Initial Disclosures<br><br>[NOT SEARCHABLE] | ACCEPT<br><br>• This is not a search query.<br><br>• Per Defendant Sonus Networks, Inc.'s Responses ("Sonus Responses," or individually, "Sonus Response No.") to Plaintiff's Requests, Sonus objects to Request No. 2 to the extent it is duplicative of other Requests. Subject to and without waiving its objections as set forth in Sonus' Response, Sonus has produced, and will continue to produce, documents responsive to Request No. 2. |

| _PROPOSED QUERY & HIT COUNTS_ | _ACCEPT/NOT ACCEPT_ |
|---|---|
| 3. All Oracle Reports using the file prefix or suffix designations used by Sonus and/or imposed by Oracle.<br><br>[NOT SEARCHABLE] | NOT ACCEPT<br><br>• There is no standard format in which Sonus saves "Oracle Reports" nor is there a designated format or file prefix or suffix for "Oracle Reports."<br><br>• "Oracle Reports" are not a readily identifiable document type.<br><br>• _See_ pp. 3-4 of accompanying letter.<br><br>• _See also_ Sonus Response No. 78. |
| 4. All documents contained in any electronic personnel files for the individual defendants and Peter Hemme.<br><br>[NOT SEARCHABLE] | NOT ACCEPT<br><br>• This is not a search query.<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• Per Sonus' Response No. 81, Sonus objects to Request No. 81 on the grounds that it is overly broad and seeks documents neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• Per Sonus' Response No. 81, Sonus further objects to Request No. 81 on the grounds that it seeks documents protected by the right of privacy afforded personnel files.<br><br>• _Relevant_ electronic personnel files for the individual defendants and Peter Hemme would be identified through other queries (for example, Query Nos. 77-82). |

- 2 -

US1DOCS 6203891v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 5. ("Sonus" AND "Org*") <br><br> [68,653 hits] | ACCEPT WITH EDITS VIA NO. 34 (DELETE AS DUPLICATIVE) <br><br> • Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. <br><br> • All documents authored by, edited by, viewed by, or sent to or from any custodian, in which the word "Sonus" and the root "org" appear, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion. <br><br> • If Lead Plaintiff intends to identify, generally, Sonus organizational charts, this Query is far too broad; it produced 68,653 hits. Vast numbers of irrelevant documents qualify, and may include, but are not limited to: (a) any document on which the word Sonus appears (in letterhead, text, email addresses or otherwise) and that mentions "organizing," discusses the need to "organize," or memorializes the way in which one should "organize" anything at or related to Sonus (including, but not limited to meetings, lunches, thoughts, desks, hard copy files, electronic files, personal calendars, offices, groups of individuals, travel arrangements, etc.); (b) any document on which the word Sonus appears (in letterhead, text, email addresses or otherwise) and that mentions any kind of "organization" (including, but not limited to, the organization of Company files, charitable organizations, industry organizations, any health maintenance organization utilized by or working with Sonus); (c) any document on which the word Sonus appears (in letterhead, text, email addresses or otherwise) and that mentions or cites any website with the suffix ".org." <br><br> • The 68,653 "hits" generated by this Query underscore its overly broad and burdensome nature. <br><br> • This Query, with proposed edits, is rendered duplicative by Query No. 34, which Sonus has accepted. Sonus therefore requests deletion of this Query. |

- 3 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 6. ("press" AND "release*") <br><br> [39,005 hits] | ACCEPT WITH EDITS VIA NO. 45 (DELETE AS DUPLICATIVE) <br><br> • Per Sonus' Response No. 7, Sonus objects to Request No. 7 on the grounds that is vague, overly broad, and unduly burdensome, and because it seeks documents neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Sonus will search for and produce press releases relating to quarterly or annual financial results, accounting practices, and the potential or actual restatement or revision of financial statements, non-privileged drafts thereof, and any non-privileged documents relating to the preparation of the responsive press releases, as set forth in our acceptance of Query No. 45. <br><br> • This Query, with proposed edits, is rendered duplicative by No. 45, which Sonus has accepted. Sonus therefore requests deletion of this Query. |

- 4 -

US1DOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 7. ("investig*" AND "account*")<br><br>[25,469 hits] | ACCEPT WITH EDITS VIA NO. 12 AND OTHERS (DELETE AS DUPLICATIVE)<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• To the extent Lead Plaintiff intends to identify documents related to the internal investigation, this Query is duplicative of No. 12, and Sonus requests deletion of this Query.<br><br>• To the extent Lead Plaintiff intends to identify documents related to an investigation of accounts relevant to the claims and defenses of the parties in this action (namely the Quest and AT&T accounts), Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query, Query No. 32 and/or Query No. 33 that would render them more likely to yield a more tailored and less burdensome set of documents.<br><br>• *See also* Sonus Responses, General Objection No. 1. |
| 8. ("Audit Committee")<br><br>[14,938 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All documents mentioning the Audit Committee in any context whatsoever, regardless of date, context, or whether they are relevant to the claims or defenses of the parties, would meet this criterion.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 5 -

USIDOCS 6203801v4

| _PROPOSED QUERY & HIT COUNTS_ | _ACCEPT/NOT ACCEPT_ |
|---|---|
| 9.  ("Board*" AND "Meet*")<br><br>[46,186 hits] | ACCEPT WITH EDITS VIA NO. 10 (DELETE AS DUPLICATIVE)<br><br>• This Query is duplicative of No. 10, which Sonus has accepted with edits. Sonus therefore requests deletion of this Query. |
| 10.  (("Board*" OR "bd" OR "Dir*" OR "committee*" OR "cmt*") AND ("Meet*" OR "Mtg*" OR "confer*"))<br><br>[186,149 hits] | ACCEPT WITH EDITS<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All documents authored by, edited by, viewed by, or sent to or from any custodian, and discussing any meeting or conference of any committee whatsoever, regardless of the committee's (or the meeting's) relevance to the claims or defenses of the parties, would meet this criterion.<br><br>• The 186,149 "hits" generated by this Query underscore its overly broad and burdensome nature.<br><br>• Sonus proposes deletion of "committee*" or "cmt*" and a numeric limiter designed to more accurately identify relevant documents, such as (("Board*" OR "bd*" OR "Dir*") /50 ("Meet*" OR "Mtg*" OR "confer*")). With such limitations, Sonus will accept this Query; if Plaintiff does not agree to such limitations, Sonus will not accept this Query. |

- 6 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 11. ("investiga*") <br><br> [45,863 hits] | ACCEPT WITH EDITS VIA NO. 12 (DELETE AS DUPLICATIVE) <br><br> • Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. <br><br> • All documents authored, edited or viewed by, or sent to or from, any custodian, in which the root "investiga*" appear, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion, including but not limited to, any document discussing the need to "investigate" the answer to any question whatsoever. <br><br> • The 45,863 "hits" generated by this Query underscore its overly broad and burdensome nature. Sonus suggests an additional limiting term, and thus accepts Query No. 12, *infra*. This Query, with proposed edits, is therefore rendered duplicative by No. 12, which Sonus accepts. Sonus therefore requests deletion of this query. |
| 12. ("intern*" AND "investiga*") <br><br> [25,733 hits] | ACCEPT |

- 7 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 13. ("control*" AND "fraud*")<br><br>[10,693 hits] | ACCEPT VIA NO. 15 (DELETE AS DUPLICATIVE)<br><br>• The court, in its Order entered May 10, 2006, explicitly dismissed Plaintiff's allegations that "[Sonus'] internal controls were grossly deficient," and "[found] that the Complaint does not allege any particularized facts to support a finding that the individual Defendants were reckless when they certified that they had examined the Company's internal controls and believed they were adequate." Dkt. No. 149 at 32.<br><br>• This Query is rendered duplicative by No. 15, which Sonus has accepted. Sonus therefore requests deletion of this Query.<br><br>• This Query also does not relate to any of Lead Plaintiff's Requests. If Lead Plaintiff means to request documents pertaining to Sonus' internal controls it should submit a second set of Requests and permit Sonus the proper opportunity to object. |
| 14. (("scrub*" OR "delet*" OR "clean*" OR "clear*" OR "eras*" OR "swipe") AND ("driv*" OR "comput*" OR "hard" OR "floppy" OR "disk*" OR "CD" OR "DVD*" OR "backup*" OR "back-up*" OR "tap*" OR "server*" OR "Peter" OR "Hemme" OR "control*")))<br><br>[140,505 hits] | NOT ACCEPT<br><br>• This proposed Query does not relate to any of Lead Plaintiff's Requests.<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• In addition, the 140,505 "hits" generated by this Query underscore its overly broad and burdensome nature.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 8 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 15. ("fraud*")<br><br>[14,786 hits] | ACCEPT<br><br>• Although this Query does not relate to any of Lead Plaintiff's Requests, Sonus accepts this Query in the spirit of cooperative discovery, recognizing that it will likely identify relevant documents and does not generate an unreasonably large number of "hits."<br><br>• This Query renders duplicative Query Nos. 13, 16, and 19. Sonus therefore requests deletion of Query Nos. 13, 16 and 19. |
| 16. ("fraud" AND "consid*")<br><br>[7,314 hits] | ACCEPT VIA N0. 15 (DELETE AS DUPLICATIVE)<br><br>• This Query is rendered duplicative by No. 15, which Sonus has accepted. Sonus therefore requests deletion of this Query. |
| 17. ("interna**" w/50 "control**")<br><br>[42,613 hits] | NOT ACCEPT<br><br>• The court, in its Order entered May 10, 2006, explicitly dismissed Plaintiff's allegations that "[Sonus'] internal controls were grossly deficient," and "[found] that the Complaint does not allege any particularized facts to support a finding that the individual Defendants were reckless when they certified that they had examined the Company's internal controls and believed they were adequate." Dkt. No. 149 at 32.<br><br>• This Query also does not relate to any of Plaintiff's Requests. If Lead Plaintiff means to request documents pertaining to Sonus' internal controls, it should submit a second set of Requests and permit Sonus the proper opportunity to object.<br><br>• The 42,613 "hits" generated by this Query underscores its overly broad and burdensome nature. |

- 9 -

US1DOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 18. ("interm*" w/50 "proced*")<br><br>[18,160 hits] | NOT ACCEPT<br><br>• The court, in its Order entered May 10, 2006, explicitly dismissed Plaintiff's allegations that "[Sonus'] internal controls were grossly deficient," and "[found] that the Complaint does not allege any particularized facts to support a finding that the individual Defendants were reckless when they certified that they had examined the Company's internal controls and believed they were adequate." Dkt. No. 149 at 32.<br><br>• This Query also does not relate to any of Plaintiff's Requests. If Lead Plaintiff means to request documents pertaining to Sonus' internal controls, it should submit a second set of Requests and permit Sonus the proper opportunity to object. |
| 19. ("interm*" w/50 "fraud*")<br><br>[5,093 hits] | ACCEPT VIA NO. 15 (DUPLICATIVE)<br><br>• This Query is rendered duplicative by No. 15, which Sonus has accepted. Sonus therefore requests deletion of this Query. |

- 10 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 20. ("manip*" OR "modif*" OR "timi*" OR "time*" OR "shift*")<br><br>[594,451 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All documents authored, edited, or viewed by, or sent to or from, any custodian, and containing any of these roots, would meet this criterion, including, but not limited to: any document discussing the "time" of any meeting or event (including everything from break times, to the time someone might be leaving the office), or "timeframe" in which a something is to be done; any usage of common phrases such as "at the time," "time and place," "bad timing," "in time," "daylight savings time," or "time change;" any discussions of modifying anything, from an edited document, to the time or place of a meeting; any discussions of "shifting gears," shifting a date or time of any event or meeting, or shifting focus; and any and all software instruction manuals (including instructions such as "ctrl + shift" or references to the "shift key").<br><br>• The 594,451 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 11 -

USIDOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 21. ("accept*" OR "confirm*")<br><br>[297,519 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All documents authored, edited or viewed by, or sent to or from, any custodian and containing the root "accept*" or "confirm*" would meet this criterion, including, but not limited to, any document "confirming" the date or time of any event or meeting, any correspondence asking any person to confirm the answer to any question or any subject, any discussion of whether any subject is "acceptable" or unacceptable, and any correspondence requesting that someone accept a meeting appointment.<br><br>• The 297,519 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• *See also* Sonus' Responses, General Objection No. 1.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 12 -

| *PROPOSED QUERY & HIT COUNTS* | *ACCEPT/NOT ACCEPT* |
|---|---|
| 22. (("prepar*" OR "file*" OR "filed" OR "filing" OR "creat*" OR "manip*" OR "revis*" OR "review*" OR "analy*" OR "destr*" OR "complet*" OR "organi*" OR "send*" OR "sent*" OR "email*" OR "e-mail*" OR "distr*" OR "announc*" OR "submit*" OR "resubmit*" OR "re-submit*" OR "delet*" OR "adjust*" OR "modif*" OR "manip*") AND ("financ*" OR "state*" OR "stmt*" OR "number*" OR "book*" OR "revent*" OR "sale*" OR "sold" OR "selling" OR "earn*" OR "unearn*" OR "defer*" OR "incom*" OR "result*"))<br><br>[746,755 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• *Any document authored, edited or viewed by, or sent to or from, any custodian, and discussing virtually any "financial," "sales," "revenue," or similar document or "statement," including virtually any document discussing any "number" whatsoever, would meet this criterion. The preparation of any financials, sales or revenue numbers, the review or revision of such documents as they relate to any customer or any other aspect of the Company's business, and any and all analyses of any such documents, are a mere subset of the vast universe of documents that would satisfy this query. Such Query is clearly outside the scope of documents that Sonus is obligated to produce under any review of applicable discovery rules.*<br><br>• The 746,755 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• *See also* Sonus' Responses, General Objection No. 1.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 13 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
| --- | --- |
| 23. (("restat*"" OR "re-stat*"" OR "restmt*"" OR "re-stmt*"" OR "revis*"" OR "review*"" OR "!modif*"" OR "adjust*"" OR "!manip*"" OR "refil*"" OR "re-fil*"" OR "usurp*"" OR "superced*"" OR "supersed*"") AND ("financ*"" OR "stat* OR "stmt*"" OR "number*"" OR "book*"" OR "reven*"" OR "sale*"" OR "sold" OR "selling" OR "earn*"" OR "unearn*"" OR "defer*"" OR "incom*"" OR "result*""))<br><br>[405,904 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• This Query is largely duplicative of Query No. 22. Like No. 22, this Query is unacceptable because virtually any document authored, edited or viewed by, or sent to or from, any custodian, and discussing "financial," "sales," or "revenue," or similar document or "statement," including virtually any document discussing any "number" whatsoever, with respect to any customer or aspect of the Company's business whatsoever, would meet this criterion.<br><br>• The 405,904 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents |

- 14 -

USIDOCS 6203801v4

| *PROPOSED QUERY & HIT COUNTS* | *ACCEPT/NOT ACCEPT* |
|---|---|
| 24. (("intern*" OR "audit*" OR "staff*" OR "finance*" OR "account*" OR "acct*" OR "committee*" OR "cmt*" OR "draft*" OR "fraud*" OR "control*" OR "restatem*" OR "re-statem*" OR "adjust*") AND ("memo*" OR "analy*" OR "report*" OR "review*" OR "survey*" OR "outlin*" OR "out-lin*" OR "strateg*" OR "tactic*" OR "talking point*" OR "tlkg p*" OR "tkg p*" OR "talking-p*" OR "talkingp*")) <br><br> [360,940 hits] | NOT ACCEPT <br><br> • Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. <br><br> • Any document authored, edited or viewed by or sent to or from, any custodian, and discussing virtually any memo, outline, analysis, report, or need to "review" anything would meet this criterion, including, but not limited to: (1) any such documents in "draft" form or attaching or mentioning a "draft" of any document whatsoever, (2) why documents that discuss or mention *any* "account" and the "adjusting" of anything whatsoever, and (3) any "review," "report," "memo," or "analysis" by any "committee" or "staff." <br><br> • The 360,940 "hits" generated by this Query underscore its egregiously broad and burdensome nature. <br><br> • *See also* Sonus' Responses, General Objection No. 1 <br><br> • Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 25. (("comm*" OR "email*" OR "e-mail*" OR "send*" OR "sent*" OR "repl*" OR "forward*" OR "distrib*" OR "review*" OR "analy*" OR "get back*" OR "get-back*" OR "approv*" OR "deny*" OR "denies" OR "denied" OR "denial" OR "provi*" OR "exchang*" OR "adjust*" OR "modif*" OR "shift*" OR "chang*" OR "switch*" OR "manip*" OR "former*" OR "ex*" OR "prev*" OR "prior*" OR "then*" OR "outgo*" OR "out-go*" OR "retir*" OR "terminat*" OR "fire*" OR "fires" OR "firing" OR "can*" OR "resig*" OR "curren*" OR "present*" OR "now*" OR "exist*") AND ("account*" OR "acct*" OR "pract*" OR "number*" OR "reven*" OR "earn*" OR "incom*" OR "sale*" OR "sold" OR "selling" OR "fraud*" OR "side" OR "bundl*")) [742,726 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• All documents authored, edited or viewed by or sent to or from, any custodian, and discussing, "emailing," "analyzing," "sending," "forwarding," "analyzing," or "providing" virtually anything related to any "account," any "number," or any "sales," "revenue," "earnings," among other things, would meet this criterion. The preparation of any account documents, financials, sales or revenue numbers, the review or revision of such documents as they relate to any customer or other aspect of the Company's business, and any and all analyses of any such documents are a mere subset of the vast universe of documents that would satisfy this query. Such Query is clearly outside the scope of documents Sonus is obligated to produce under any review of applicable discovery rules.<br><br>• Sonus proposes the exclusion of "noise words" (so identified by Zantaz, Inc. because they are so prevalent in everyday vernacular that they are usually not searched), including then*, can*, and now*, and of the root ex*. As evidence of the vast overbreadth of this term, Sonus refers Lead Plaintiff to the words in Webster's Dictionary that begin with the root ex*. These words comprise 17 legal-size dictionary pages in fine print. Lead Plaintiff cannot seriously maintain that ex* is an appropriate search term.<br><br>• The 742,726 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• *See also* Sonus' Responses, General Objection No. 1.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 16 -

US1DOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 26. (("Ernst & Young*" OR "Ernst*" OR "EandY*" OR "E and Y*" OR "E+Y*" OR "E + Y*" OR "EY*" OR "E / Y*" OR "EY*" OR "E&Y*" OR "E & Y*" OR "*ey.com" OR [names of each E&Y engagement team member and partner(s) during the Relevant Time Period – to be completed by Sonus]) AND ("memo*" OR "letter*" OR "correspond*" OR "e-mail*" OR "email*" OR "checklist*" OR "attach*" OR "analy*" OR "scop*" OR "engag*" OR "bill*" OR "invoic*" OR "payment*" OR "check*" OR "audit*" OR "compil*" OR "meet*" OR "mtg*" OR "confer*" OR "tele*" OR "disagr*" OR "delin*" OR "refus*" OR "termin*" OR "ceas*" OR "irreg*" OR "fraud*" OR "de-fraud*" OR "defraud*" OR "misconduct*" OR "illeg*" OR "improp*" OR "CFC" OR "control*" OR "misstat*" OR "mis-stat*" OR "mistat*" OR "miss-stat*" OR "classif*" OR "mis-classif*" OR "mistak*" OR "misrep*" OR "mis-rep*" OR "mislead*" OR "mis-lead*" OR "hid*" OR "deceiv*" OR "disguis*" OR "spread*")) [47,480 hits] | ACCEPT WITH EDITS VIA NO. 62 (DELETE AS DUPLICATIVE) <br><br> • Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. <br><br> • Virtually all documents authored, edited or viewed by or sent to or from, any custodian to or from anyone at Ernst & Young, or anyone else if regarding, mentioning, or copying anyone at Ernst & Young, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion. <br><br> • Portions of this Query are duplicative of Query No. 62, which Sonus has accepted, with proposed edits. To the extent that this Query is duplicative of No. 62 with the edits Sonus proposes, Sonus therefore requests deletion of this Query or portions thereof. To the extent this Query is not duplicative of No. 62 with edits as proposed, Sonus does not accept this Query. <br><br> • The 47,480 "hits" generated by this Query underscore its overly broad and burdensome nature. <br><br> • Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 17 -

USIDOCS 6203801v4

| _PROPOSED QUERY & HIT COUNTS_ | _ACCEPT/NOT ACCEPT_ |
|---|---|
| 27. (("Huron" OR "*huronconsulingroup.com" OR "Joe*" OR "Floyd" OR [names of each Huron owner, member, consultant, employee, and/or contractor during the Relevant Time Period – to be completed by Sonus]) AND ("memo*" OR "letter" OR "correspond*" OR "e-mail*" OR "email*" OR "checklist*" OR "attach*" OR "analy*" OR "scop*" OR "engag*" OR "bill*" OR "invoic*" OR "payment*" OR "check*" OR "audit*" OR "compil*" OR "meet*" OR "mtg*" OR "confer*" OR "tele*" OR "disagr*" OR "delin*" OR "refus*" OR "termin*" OR "ceas*" OR "irreg*" OR "fraud*" OR "de-fraud*" OR "defraud*" OR "misconduct*" OR "illeg*" OR "improp*" OR "ICFC" OR "control*" OR "misstat*" OR "mis-stat*" OR "mistat*" OR "miss-stat*" OR "classif*" OR "mis-classif*" OR "mistak*" OR "misrep*" OR "mis-rep*" OR "mislead*" OR "mis-lead*" OR "hid*" OR "deceiv*" OR "disguis*" OR "spread*")) <br><br> [70,871 hits] | NOT ACCEPT <br><br> • Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. <br><br> • Virtually all documents authored, edited or viewed by or sent to or from, any named custodian to or from anyone at Huron, or anyone else if regarding, mentioning, or copying anyone at Huron, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion. <br><br> • Portions of this Query are duplicative of Query No. 64, which Sonus has accepted. To the extent that this Query is duplicative of No. 64, Sonus therefore requests deletion of this Query. To the extent this Query is not duplicative of No. 64, Sonus does not accept this Query. <br><br> • The 70,871 "hits" generated by this Query underscore its overly broad and burdensome nature. <br><br> • Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 18 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 28. (("supp*" OR "sid*" OR "paral*" OR "parral*" OR "follow*" OR "fellow*" OR "extra*" OR "add*" OR "hid*" OR "secret*" OR "clandest*" OR "unknow*" OR "un-know*" OR "invisib*" OR "ghos*" OR "blind*" OR "post*" OR "pre*" OR "superced*" OR "supersed*" OR "bonus*" OR "bogus*" OR "trump*" OR "aband*") AND ("agree*" OR "agmt*" OR "agrmt*" OR "contrac*" OR "compac*" OR "term*" OR "condit*" OR "letter*" OR "lettr*" OR "ltr*" OR "settl*" OR "comprom*" OR "reach*"))<br><br>[455,416 hits] | NOT ACCEPT<br><br>• Any document authored, edited or viewed by or sent to or from, any custodian, mentioning or discussing any "account," "agreement," "contract," "letter" regardless of whether it is relevant to the claims or defenses of the parties, would meet this criterion<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• Sonus specifically objects to the inclusion of the roots "pre*," "add*," and "post*," given their prevalence in the common vernacular. For example, Sonus refers Lead Plaintiff to the words in Webster's Dictionary that begin with the root "pre*." These words comprise 15 legal-size dictionary pages in fine print. Lead Plaintiff cannot seriously maintain that "pre*" is an appropriate search term.<br><br>• The 455,416 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• See also Sonus Responses, General Objection No. 1.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 19 -

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 29. (("*haledorr.com" OR "*.wilmerhale.com" OR "Hale and Do*"" OR "Hale & Do*"" OR "Hale + Do*"" OR "Wilmer Hale*"" OR "WH*"" OR "Prendergast*"" OR "Rudman*"" OR "Haus*"" OR "Coffey*"" OR "Gray*"" OR "Grey*"" OR "attorney*"" OR "counsel*"" OR "council*"" OR "councel*"" OR "lawyer*"" OR "legal"" OR (names of each attorney involved with the investigation working or consulting with Hale and Dorr and/or Wilmer Hale)) AND ("send*"" OR "sent*"" OR "distrib*"" OR "e-mail*"" OR "email"" OR "mail"" OR "recei*"" OR "recip*"" OR "generat*"" OR "creat*"" OR "build"" OR "develop*"" OR "propos*"" OR "FedEx*"" OR "fed-ex*"" OR "fed ex*"" OR "UPS"" OR "DHL"" OR "courier*"" OR "fil*"" OR "stat*"" OR "re-stat*"" OR "restat*"" OR "re-stat*"" OR "restmt*"" OR "re-stmt*"" OR "account*"" OR "acct*"" OR "irreg*"" OR "improp*"" OR "investiga*"" OR "fraud*"" OR "control*"" OR "ctrl*"" OR "misstat*"" OR "mis-stat*"" OR "misstmt*"" OR "mis-stmt*"" OR "mislead*"" OR "mis-lead*"" OR "decept*"")) [414,621 hits] | NOT ACCEPT<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• Calls for the production of documents subject to the attorney-client privilege and/or work product doctrine.<br><br>• See also Defendants Sonus Networks, Inc.'s Response to Lead Plaintiffs' First Set of Document Requests, Response Nos. 64, 111, AND 112.<br><br>• The 414,621 "hits" generated by this Query underscore its egregiously broad and burdensome nature.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |

- 20 -

US1DOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 30. (("Andersen*" OR "Arthur Andersen" OR "arthurandersen.com" OR [names of each Arthur Andersen engagement team member and partner(s) during the Relevant Time Period – to be completed by Sonus]) AND ("memo*" OR "letter*" OR "correspond*" OR "e-mail*" OR "email" OR "checklist*" OR "attach*" OR "analy*" OR "scop*" OR "engag*" OR "bill*" OR "invoic*" OR "paymen*" OR "check*" OR "audit*" OR "compil*" OR "meet*" OR "mtg*" OR "confer*" OR "tele*" OR "disagr*" OR "delin*" OR "refus*" OR "termin*" OR "ceas*" OR "irreg*" OR "fraud*" OR "de-fraud*" OR "defraud*" OR "misconduct*" OR "illeg*" OR "improp*" OR "ICFC" OR "control*" OR "misstat*" OR "mis-stat*" OR "mistat*" OR "miss-stat*" OR "classif*" OR "mis-classif*" OR "mistak*" OR "misrep*" OR "mis-rep*" OR "mislead*" OR "mis-lead*" OR "hid*" OR "deceiv*" OR "disguis*" OR "spread*")) | ACCEPT WITH EDITS VIA NO. 63 (DELETE AS DUPLICATIVE)<br><br>• Not tailored to identify documents relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.<br><br>• Virtually all documents authored, edited or viewed by or sent to or from, any named custodian to or from anyone at Arthur Andersen, or anyone else if regarding, mentioning, or copying anyone at Arthur Andersen, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion.<br><br>• Portions of this Query are duplicative of Query No. 63, which Sonus has accepted, with proposed edits.  To the extent that this Query is duplicative of No. 63 with the edits Sonus proposes, Sonus therefore requests deletion of this Query or portions thereof.  To the extent this Query is not duplicative of No. 63 with edits as proposed, Sonus does not accept this Query.<br><br>• Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |
| [8,566 hits] | |

- 21 -

US1DOCS 6203801v4

| PROPOSED QUERY & HIT COUNTS | ACCEPT/NOT ACCEPT |
|---|---|
| 31. (("PricewaterhouseCoop*" OR "PwC" OR "pwc.com" OR [names of each PricewaterhouseCoopers engagement team member and partner(s) during the Relevant Time Period – to be completed by Sonus]) AND ("memo*" OR "letter*" OR "correspond*" OR "e-mail*" OR "email*" OR "checklist*" OR "attach*" OR "analy*" OR "scop*" OR "engag*" OR "bill*" OR "invoic*" OR "payment*" OR "check*" OR "audit*" OR "compil*" OR "meet*" OR "mtg*" OR "confer*" OR "tele*" OR "disag*" OR "delin*" OR "refus*" OR "termin*" OR "ceas*" OR "irreg*" OR "fraud*" OR "de-fraud*" OR "defraud*" OR "misconduct*" OR "illeg*" OR "improp*" OR "ICFC" OR "control*" OR "misstat*" OR "mis-stat*" OR "mistat*" OR "miss-stat*" OR "classif*" OR "mis-classif*" OR "misrep*" OR "mis-rep" OR "mislead" OR "mis-lead" OR "hid*" OR "deceiv*" OR "disguis*" OR "spread*")) <br><br> [4,561 hits] | NOT ACCEPT <br><br> • Virtually all documents authored, edited or viewed by or sent to or from, any named custodian to or from anyone at Arthur Anderson, or anyone else if regarding, mentioning, or copying anyone at PriceWaterhouseCoopers, regardless of whether they are relevant to the claims or defenses of the parties, would meet this criterion. <br><br> See also Sonus Response Nos. 109, 110. <br><br> • Sonus is willing to discuss with Lead Plaintiff mutually acceptable edits to this Query that would render it more likely to yield a more tailored and less burdensome set of documents. |
| 32. (("Qwest" OR "Quest" OR "Qwests" OR "Quests") w/50 AND ("revenue*" OR "recogni*" OR "accept*" OR "defer*" OR "upgrade*" OR "ship*" OR "maintenance" OR "rev*" OR "purchas*" OR "buy*" OR "agree*" OR "contract*" OR "compl*" OR "fraud*" OR "fail*" OR "intern*" OR "settle*" OR "breach*" OR "settlement agree*" OR "audit*" OR "early" OR "prematur*" OR "improper*" OR "improper*" OR "wrong*" OR "mistak*" OR "error*" OR "illeg*" OR "ICFC" OR "conflict*" OR "partial*" OR "book*" OR "accounted" OR "purchase order" OR "invoic*" OR "PO" OR "P.O." OR "software" OR "updat*" OR "letter agree*" OR "transact*" OR "erroneous*" OR "incorrect*" OR "access site*" OR "misstat*" OR "mis-stat*" OR "mistat*" OR "inten*" OR "circumven*" OR "account*" OR "acct*" OR "finance*" OR "maint*" OR "carv*" OR "sell*" OR "specif*" OR "upgrad*" OR "right*" OR "accept*" OR "confirm" OR "recog*" OR "instal*" OR "SOP 97-2" OR "SOP 98-9" OR "S.O.P. 97-2" OR "S.O.P. 98-9" OR "97-2" OR "97-2" OR "97(2)" OR "972" OR "98-9" OR "98.9" OR "98(9)" OR "989" OR "procur*" OR "agree*" OR "agmt*" OR "agrm't*" OR "compact*" OR "condit*" OR "sid*" OR "persuad*" OR "suggest*" OR "languag*" OR "letterhead" OR "letter-head*" OR "letter head*" OR "classif*" OR "misclassif*" OR "mis-classif*" OR "treat*" OR "adjust*" OR "alter*" OR "modif*" OR "manip*" OR "mislead*" OR "mis-lead*" OR "deceiv*" OR "decept*" OR "hid*" OR "disguis*" OR "ghos*" OR "invisib*" OR "irreg*" OR "de-fraud*" OR "defraud*" OR "misconduct*" OR "improp*" OR "control*" OR | ACCEPT WITH EDITS VIA NOS. 44 and 71 (DELETE AS DUPLICATIVE) <br><br> • The terms included in this Query are well beyond the scope of Plaintiff's Requests, including, but not limited to: "pull*," "nudg*," "stick*," "plac*," "drawer*," "gopher*," "Foreign Motors West," "dealership*," "car*," "auto*," "sedan*," "coup*," "roadster*," "Mercedes*," "BMW*" "B.M.W.*," "beemer*," "SUV*," "S.U.V.*," "roadmap*," "road map*," "road-map*" "in-the-money," "in the money," "Broadband Util*" "BBU" B.B.U." "BU" "B.U." and "Ansari." <br><br> • The terms "SOP 97-2" OR "SOP 98-9" OR "S.O.P. 97-2" OR "S.O.P. 98-9" OR "97-2" OR "97(2)" OR "972" OR "98.9" OR "98(9)" OR "989" are duplicative of Query No. 44, which Sonus has accepted with edits. <br><br> • The terms "commission*" OR "agenc*" OR "Department of Just*" OR "Dep't. of Just*" OR "Dept. of Just*" OR "Dept of Just*" OR "D.O.J." OR "DOJ*" OR "NASD" OR "N.A.S.D." are duplicative of Query No. 71, which Sonus has accepted with edits. To the extent that this Query is duplicative of nos. 44 and 71, with the edits |

US1DOCS 6203801v4