UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE SONUS NETWORKS, INC.<br>SECURITIES LITIGATION | ) <br>) Civil Action No. 04-10294-DPW<br>) (Lead Case)<br>) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | ) <br>) <br>) <br>) <br>) |

**LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT SONUS NETWORKS, INC.'S MOTION FOR PROTECTIVE ORDER**

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#117776

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   The Claim That Only "Four Accounting Transactions Remain To Be
        Considered" Is Patently Wrong . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.   The Order Does Not Support Limiting Discovery As Suggested By
             Sonus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.   Discovery Regarding The Breakdown Of Sonus's  Internal
             Controls Is Clearly Relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.   The PSLRA's Pleading Requirements Do Not Operate To Limit
             Discovery Once A Case Is At Issue . . . . . . . . . . . . . . . . . . . . . . . . 10

        4.   By Waiting More Than A Year To Bring This Motion Sonus Has
             Waived Any Objections To The Scope Of Discovery . . . . . . . . . . . . . . 13

        5.   The Possibility Of Amendment Supports Denial Of The Motion  . . . . . . 15

    C.   The Relevant Time Period Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    D.   The Deloitte Subpoena Is Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    E.   Sonus Grossly Overstates The Burden Of The Electronic Discovery . . . . . . . . 18

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Cryovac, Inc.*
    805 F.2d 1 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Clinton Hudson & Sons v. Lehigh Valley Coop. Farms, Inc.*
    73 F.R.D. 420 (E.D. Pa. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gulf Oil Co. v. Bernard*
    452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hickman v. Taylor*
    329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Campbell Soup Co. Sec. Litig.*
    145 F.Supp.2d 574 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Global Crossing, Ltd. Sec. Litig.*
    322 F.Supp.2d 319 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re IKON Office Solutions, Inc. Sec. Litig.*
    66 F.Supp.2d 622 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Lernout & Hauspie Sec.* Litig.
    214 F.Supp.2d 100 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*In re Lernout & Hauspie Sec. Litig.*
    222 F.R.D. 29 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Lernout & Hauspie Sec. Litig.*
    286 B.R. 33 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Merck & Co., Inc. Sec. Litig.*
    432 F.3d 261 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re MTI Technology Corp. Sec. Litig.*
    2002 WL 32344347 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Scholastic Corp. Sec. Litig.*
    252 F.3d 63 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### TABLE OF AUTHORITIES
### (Continued)

**Page**

*In re Seagate Tech. Sec. Litig.*
    1993 WL 293008 (N.D. Cal. June 10, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re The Clorox Co. Sec. Litig.*
    238 F.Supp.2d 1139 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re The Maxim Group, Inc Sec. Litig.*
    2002 WL 987660 (N.D. Ga. Apr. 23, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re World Access, Inc. Sec. Litig.*
    119 F.Supp.2d 1348 (N.D. Ga. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Meyer v. S. Pac. Lines*
    199 F.R.D. 610 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Inc. Co.*
    183 F.R.D. 627 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Multi-Core, Inc. v. Southern Water Treatment Co.*
    139 F.R.D. 262 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Oppenheimer Fund, Inc. v. Sanders*
    437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*SG Cowen Sec. Corp. v. U.S. Dist. Court*
    189 F.3d 909 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sorenson v. H & R Block, Inc.*
    197 F.R.D. 199 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    127 S.Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Upton v. McKerrow*
    1996 WL 193807 (N.D. Ga. Feb. 20, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §77k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## TABLE OF AUTHORITIES
### (Continued)

**Page**

15 U.S.C. §78u-4(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. §78z . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules of Civil Procedure

      Rule 15(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 18

      Rule 26(b)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      Rule 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      Rule 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Securities Act of 1933

      Section 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 12

Securities Exchange Act of 1934

      Section 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 12

## OTHER AUTHORITIES

5 *Bromberg & Lowenfels on Securities Fraud* §12.46 (2d Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . 3

AU §315, *Communications Between Predecessor and Successor Auditors* . . . . . . . . . . . . . . . 18

## I.    __INTRODUCTION__

In the guise of a motion for a protective order, defendant Sonus Networks, Inc. ("Sonus") seeks to carve out of this case large swaths of key factual allegations which have never been dismissed and which have already formed a critical part of the discovery conducted to date. Indeed, after sitting on its hands for more than a year while Lead Plaintiff has expended significant resources to gather and analyze relevant documentary evidence, Sonus now belatedly seeks to curtail those ongoing efforts on the grounds that the discovery sought is beyond the scope of the pleadings and otherwise unduly burdensome. These contentions are meritless. As demonstrated below, the requested discovery is well within permissible bounds as defined by the Court's May 10, 2006 Memorandum and Order (the "Order"), the First Amended Consolidated Class Action Complaint ("Complaint"), filed August 5, 2005, and applicable Federal Rules. Lead Plaintiff will be severely prejudiced in its ongoing work on the case, including preparation for further merits discovery and trial, if the unreasonable limitations on discovery sought by Sonus -- which in reality are more in the nature of motions in limine to exclude key evidence -- are now imposed. Enormous resources have been devoted on behalf of Lead Plaintiff and the class it seeks to represent in analyzing, culling and organizing Sonus's and the third party document productions in pursuit of the claims that have been upheld. Sonus has had every opportunity, for well over a year, to seek limitations on this discovery, but has failed to do so. It has allowed discovery to proceed in depth on matters it now claims should be out of the case. Such tactics are highly prejudicial.

Furthermore, the fundamental premise of Sonus's argument -- that only four specific transactions remain at issue -- is clearly wrong. Sonus supports this conclusion by quoting the Order out of context or ignoring key portions of it. For example, the Court did not "explicitly

dismiss Lead Plaintiff's allegations that [Sonus's] internal controls were grossly deficient," as Sonus boldly -- and erroneously -- proclaims. Sonus Br. at 2. Indeed, the Court did **exactly the opposite**, affirming the validity of the claim against Sonus pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78j(b), by finding that Sonus "recklessly **failed to have a structure that would insure the dissemination of correct information** in an environment [where the company's controller] allegedly encouraged accounting fraud." Order at 62 (emphasis added). Plainly, the adequacy of Sonus's internal accounting controls is a central issue ripe for exploration through discovery. This is but one example, albeit an important one, illustrating the distortions of the record relied on by Sonus in support of the radical relief sought by its motion. Sonus's efforts should be rejected and the motion for a protective order ought to be denied.

## II.    **PROCEDURAL BACKGROUND**

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(3), following entry of the Order upholding the claims under Section 10(b) of the 1934 Act and Section 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §77k, against Sonus, as well as the control person claims against defendants Hassan Ahmed and Stephen Nill, Lead Plaintiff was permitted to commence discovery. *See* 15 U.S.C. §78u-4(b)(3). In that connection, the parties conducted a Rule 26(f) conference, which resulted in the Joint Statement Pursuant to Local Rule 16.1d), ("Joint Statement"), dated July 6, 2006, attached as Exhibit A to the Affidavit of Pamela A. Markert (the "Markert Aff."), filed herewith.[1] Therein the parties agreed upon the timing and methods for discovery. This proposal, which contemplated considerable document discovery, was approved by the Court at the July 13, 2006 hearing.

---

[1]    All references hereinafter to "Ex. __" are to exhibits to the Markert Aff.

Significantly, the agreed upon discovery has included production by Sonus of "all non-privileged or otherwise protected documents produced to the Securities and Exchange Commission ("SEC") and transcripts of testimony given to the SEC in connection with the SEC's investigation of Sonus." *See* Ex. A to Markert Aff. at ¶IV.A.1.[2] In negotiating and agreeing to this provision of the Joint Statement, Sonus did not argue, as it does now, that there should be severe limitations on the scope of what was to be produced. In fact, the SEC production included significant materials relating to issues and transactions far beyond the four specific transactions Sonus now claims should demarcate discovery. Markert Aff., ¶2.[3]

The Joint Statement also permitted any party to seek documents from **any** third party, excepting Sonus's present or former directors, officers or employees not named as defendants. Ex. A at ¶IV.A.2. In other words, Sonus agreed to allow discovery from customers who were not necessarily involved in the four transactions Sonus now asserts mark the outer boundary of permissible discovery. The Joint Statement further contemplated that the parties would be entitled to serve document requests upon each other "addressed to the merits of this action." *Id.* at ¶IV.A.3. That is precisely what Lead Plaintiff did when, on August 29, 2006, it propounded Lead Plaintiff's First Set of Document Requests to All Defendants. Markert Aff., ¶3. Once again, in response to these requests, no effort was made by Sonus to argue to the Court through a

_____

[2]    That the SEC did not pursue any action against Sonus is of no legal consequence. The SEC's failure to act may not be used as a defense by a company to imply that the SEC has approved its accounting practices. *See* 15 U.S.C. §78z. Termination of an investigation is not absolution and is not a defense to a private suit based on the same facts. 5 *Bromberg & Lowenfels on Securities Fraud* §12.46 (2d Ed. 2007).

[3]    There were, however, large quantities of documents withheld by Sonus from the SEC production on alleged attorney-client privilege and attorney work product grounds. This raises a separate issue not presently before the Court.

motion for protective order that the requests were overbroad or that there should be significant limitations on the scope of discovery. *Id.*

As a result of the efforts made by Lead Plaintiff pursuant to the approved Joint Statement, substantial documentary evidence has been gathered in support of the claims which were upheld in the Order. Apparently concerned about what discovery has and will uncover, Sonus has brought this untimely effort to radically circumscribe Lead Plaintiff's discovery. The timing of the motion is instructive, given that one significant category of Sonus-related materials yet to be produced is the company's electronically-stored information. Such material often proves to contain very significant evidence.[4] However, Sonus's tactical considerations do not provide a valid basis for a protective order.

## III.    ARGUMENT

### A.    Applicable Legal Standards

This case is in the document discovery phase.[5] Courts have long recognized the important role discovery plays in preparation for trial. "The various instruments of discovery now serve (1) as a device . . . to narrow and clarify the basic issues between parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Rule 26(b)(1), Fed.R.Civ.P., provides for a liberal scope of discovery: "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to

---

[4]    The dispute over this category of discovery is addressed in Section III.E., *infra*.

[5]    Pursuant to the Joint Statement, further merits discovery, including depositions, shall commence upon the filing of the decision on Lead Plaintiff's Motion for Class Certification. Ex. A. ¶4.B. That motion is under submission.

lead to the discovery of admissible evidence." "Furthermore, once the PSLRA has been satisfied, the general presumption for liberal discovery provides the backstop." *In re Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100, 107 (D. Mass. 2002).

Despite modern liberal discovery standards, the Federal Rules provide that courts may issue protective orders limiting discovery in certain circumstances. "Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed.R.Civ.P. 26(c). In order to establish "good cause" for the issuance of a protective order under Rule 26(c), "'courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . .'" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure*, §2035, at 265 (1970)); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). Courts generally "look unfavorably upon significant restrictions placed upon the discovery process." *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001). The party opposing the discovery request therefore has the burden "to show why a particular discovery request is improper." *Id.* at 612. *See also Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 203 (D. Mass. 2000); *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 263-64 (D. Mass. 1991).

Sonus has taken a blunderbuss approach to its motion, seeking an extremely broad protective order which would operate to deny Lead Plaintiff access to clearly relevant documents and would excise from this case significant factual matters supporting Lead Plaintiff's claims.

Because Sonus has failed to sustain its burden of showing good cause for a protective order, its

motion should be denied.[6]

## B. The Claim That Only "Four Accounting Transactions Remain To Be Considered" Is Patently Wrong

### 1. The Order Does Not Support Limiting Discovery As Suggested By Sonus

Sonus has admitted that it issued false and misleading financial statements for fiscal years

2001, 2002, and the first three quarters of 2003. Order at 6. As a result, in the Order, the Court

focused on the issue of scienter, and whether Lead Plaintiff adequately alleged scienter as to

defendant Nill (Order at 34-57), defendant Ahmed (*id.* at 58), and defendant Sonus (*id.* at 58-62).

What is of paramount significance here is that the Court held that the Complaint

adequately alleged Sonus's scienter based on "the general indicia suggesting intentionally

fraudulent or reckless accounting practices discussed above in connection with Nill's scienter,"

as well as additional allegations regarding the Company's controller, Peter Hemme. Order at 58-

59. These general indicia include, but are not limited to, the "extent, magnitude, duration and

pervasiveness of the accounting irregularities"[7] and the lack of adequate internal accounting

controls.[8] With respect to the internal control allegations, the Court stated: "I find that the extent

---

[6]     As a threshold matter, Sonus lacks standing to preclude Lead Plaintiff's discovery from third parties. The right to challenge a nonparty subpoena is generally limited to the nonparty to whom the subpoena is directed. *In re Seagate Tech. Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993). Standing exists only when a party claims a personal right or privilege regarding documents sought from a third party. *E.g., Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Inc. Co.*, 183 F.R.D. 627, 629 (N.D. Ill. 1999). Sonus cannot properly make any such claim here, and cannot direct third parties (especially independent auditors), or move on their behalf, to preclude production of documents requested by Lead Plaintiff.

[7]     Order at 39-50.

[8]     Order at 50-51.

of the admitted "material weaknesses" in Sonus's internal controls and procedures strengthen the inference that Nill . . . acted recklessly when he certified the financial statements." Order at 51. The Court expressly "conclude[d] that the Complaint **as a whole** sufficiently pleads a strong inference of fraudulent intent as to Hemme." Order at 59 (emphasis added).[9]

Sonus cites the Order out of context to assert that only "four accounting transactions remain to be considered" in this litigation. The Order clearly shows that, when referring to the "four instances" of improper transactions, the Court was focused on the issue of the sufficiency of the scienter allegations as to defendant Nill. Order at 34-57. This certainly was not the Order's overall holding and does not provide an appropriate limitation on discovery. Indeed, the paragraph immediately following the one Sonus cites completely discredits its argument:

> As to the lack of detail, it is true that in *Greebel* the First Circuit suggested a complaint should "include such basic details as the approximate amount by which revenues and earnings were overstated; the products involved in the contingent transactions; the dates of any of the transactions; [and] the identities of . . . the customers or [the Defendant company's] employees involved in the transactions." *Id.* at 204 (citations omitted). However, in listing these details, the Court was not suggesting "that each of these particulars must appear in a complaint, but [only that] their complete absence . . . is indicative of the excessive generality of these allegations." *Id.* **Here, the Complaint does make reference to some details like customers.** *See, e.g.*, Compl. ¶51.[10] **But an even more fundamental problem with Defendants' argument is that the Restatement essentially amounts to an admission by Sonus** that it overstated and understated its revenues and earnings by quantified amounts in contravention of GAAP and

---

[9]    This conclusion, of course, is consistent with the Supreme Court's recent holding in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) that "**all** of the facts alleged, taken collectively" should be considered, "not whether any individual allegation, scrutinized in isolation, meets the standard." (Emphasis in original.)

[10]    Paragraph 51 of the Complaint specifically refers to Qwest, XO Communications, Epana, IDT, and Verizon. These entities have all voluntarily produced documents. Two other customers have been subpoenaed, ATT and Global Crossing.

> SOP 97-2. In *Greebel*, the defendant company had not restated its
> finances or admitted its GAAP violations. Here, **Sonus admitted**
> **that certain of its employees "were engaged in behavior that**
> **violated our code of conduct and may have compromised the**
> **integrity of our financial reporting" to a degree that required**
> **Sonus to restate its consolidated financial results by millions of**
> **dollars** for fiscal years 2001 and 2002 and the first three quarters
> of fiscal year 2003. (Compl. ¶80.)

Order at 41. Thus, the Complaint is not limited to the four transactions, as claimed by Sonus. As

the Court stated, "[a]t a minimum, more senior management than Hemme recklessly failed to

have a structure that would insure the dissemination of correct information in an environment

where Hemme allegedly encouraged accounting fraud." Order at 61-62. The Court's reference

to a "structure that would insure the dissemination of correct information" clearly encompasses

the existence of material control weaknesses and the efficacy of Sonus's systems of internal

accounting controls. To claim that these critical problems are no longer issues in the case is

nonsensical.

Sonus's grandiose assertion that "only four accounting transactions remain to be

considered" misstates the Court's ruling. No such limitation was suggested. Accordingly,

Sonus's motion to limit discovery should be denied.

### 2.    Discovery Regarding The Breakdown Of Sonus's  Internal Controls Is Clearly Relevant

Sonus's claim that its internal controls are "irrelevant" (Sonus Br. at 7) is astonishing.

One of the fundamental reasons for the Restatement in the first instance was the breakdown in

Sonus's internal controls. Order at 55 n. 6. Obviously, this is an appropriate issue for discovery.

In the Order, the Court specifically found that "the extent of the admitted 'materials weaknesses'

in Sonus's internal controls and procedures strengthens the inference that Nill . . . acted

recklessly when he certified the financial statements." Order at 51. Though the Court ultimately

deemed the scienter allegations insufficient as to Nill, the Court never characterized the internal

control allegations as "irrelevant."  To the contrary, the Court found that Sonus had **already**

**admitted** that its internal controls were seriously deficient (Order at 6), adding that:

> Plainly, "[a]ccurate earnings figures are vital aspects of the 'total
> mix information' which investors would consult when evaluating
> [the Company's] stock." *Cabletron*, 311 F.3d at 35.  According to
> the Restatement, **Sonus's revenues were misstated by tens of**
> **millions of dollars** for the fiscal years 2001, 2002 and the first
> three quarter of 2003.  Given that Sonus's restated revenues ranged
> from approximately $47 million to $129 million for those years,
> **Sonus's improper accounting likely had a significant effect on**
> **the Company's overall results."**

Order at 45 (emphasis added).  Therefore, the Court concluded that:

> [Sonus] **failed to have a structure that would insure the**
> **dissemination of correct information** in an environment where
> Hemme allegedly encouraged accounting fraud. [¶] In sum, since
> the Complaint sufficiently pleads a strong inference of scienter as
> to Hemme that is attributable to Sonus, I deny Defendants motion
> to dismiss the Section 10(b) and Section 11 claims against Sonus.

Order at 61-62 (emphasis added).  The absence of effective internal accounting controls impacted

the Company's accounting **in its entirety**, not in only a few isolated instances.  The Restatement

confirms this conclusion.[11]

Sonus claims that its internal controls are "irrelevant" because the Order states that "the

Complaint does not allege any particularized facts to support a finding that **the individual**

**defendants** were reckless when they certified that they had examined the Company's internal

---

[11]    It is well settled that allegations of deficient internal accounting controls can lend support to
a Section 10(b) claim. *See, e.g.*, *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 37-38 (D.
Mass. 2002); *In re IKON Office Solutions, Inc. Sec. Litig.*, 66 F.Supp.2d 622, 632 (E.D. Pa.
1999).  The Complaint contains an entire section entitled "Sonus's Failure to Implement and
Maintain Adequate Internal Accounting Controls." *See* Complaint ¶¶87-92.  There are a
multitude of additional paragraphs of the Complaint that address this issue: 55-56, 94, 102, 121-
124, 133, 135, 147-149, 159-161, 172-174, 177.  The subject of deficient internal accounting
controls in this restatement case is obviously an appropriate area for discovery.

controls and believed they were adequate." Sonus Br. at 2  (emphasis added), citing Order at 32.
The key phrase here is "the individual defendants."  Although the Section 10(b) and 11 claims
were dismissed against the individual defendants, they were **upheld as to Sonus**.  Order at 62.
Once again, Sonus has selectively and misleadingly quoted the Order.[12]

As the Order states, and as Sonus admitted in its Restatement, the problems with Sonus's
internal controls were pervasive and affected Sonus's entire accounting system.  This absence of
adequate internal controls caused Sonus to misstate revenues by tens of millions of dollars and
make false statements in almost three years of financial statements.  Sonus's claim that its
internal controls are "irrelevant" completely lacks credibility, and its motion for a protective
order to preclude discovery as to this issue should be denied.

### 3.    The PSLRA's Pleading Requirements Do Not Operate To Limit Discovery Once A Case Is At Issue

The motion for a protective order should be denied for an additional reason.  Sonus's
argument that the PSLRA somehow impacts the scope of discovery is wrong as a matter of law.
The heightened pleading requirements are just that -- **pleading** requirements -- and nothing more:

> Congress may have sought to reduce discovery costs, but the tool it
> selected was a heightened pleading standard - limiting the number
> of complaints alleging securities fraud that make it to the discovery
> stage - and not a revision of the discovery rules themselves. . . . .
> After all, **discovery is only stayed until plaintiffs have met the
> pleading requirements and then the parties proceed as in any
> other case**. *See id.*; 15 U.S.C. §78u-4(b)(3)(B).

---

[12]    Sonus also contends that certain document requests bear "no relationship to **any** allegation
(sustained or dismissed) in the Amended Complaint."  Sonus Br. at 3 (emphasis in original).
Sonus specifically points to Request No. 18, which seeks all documents relating to Sonus's
annual meeting of shareholders, and Request No. 19, which seeks all documents relating to
Sonus's written or verbal communications with shareholders.  *Id.*  However, this lawsuit was
brought because Sonus allegedly made false and misleading statements to its shareholders during
the Class Period.  It defies logic for Sonus to claim that shareholder communications bear "no
relationship to **any** allegation" in the Complaint.

*In re MTI Technology Corp. Sec. Litig.*, 2002 WL 32344347, *4 (C.D. Cal. 2002) (citations

omitted; emphasis added). In *In re The Maxim Group, Inc Sec. Litig.*, 2002 WL 987660 (N.D.

Ga. Apr. 23, 2002), the court denied a motion for a protective order based on arguments almost

identical to those made by Sonus herein. Addressing "the issue of relevancy and the

misconceptions of the defendants and Arthur Andersen regarding the PSLRA and the scope of

discovery under Rule 26(b)," the court explained:

> First, [defendants] argue that the PSLRA prohibits fishing
> expeditions and, as a result, the plaintiffs may only discover
> information related to the factual bases for their claims that
> survived the defendants' motion to dismiss. The court is not
> convinced that the PSLRA has any affect on discovery, except for
> staying discovery and requiring that the plaintiffs meet certain
> requirements prior to the commencement of discovery. The
> PSLRA requires a securities fraud plaintiff to plead with
> particularity its allegations of fraud before it may conduct
> discovery. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th
> Cir. 1999). This requirement prevents a plaintiff from making
> broad allegations of fraud and then conducting discovery with the
> hope of finding some wrongdoing. **Some of the plaintiffs' claims
> in this matter have already satisfied the PSLRA requirements
> and the plaintiffs now seek to conduct discovery. The court
> does not find that the PSLRA itself limits discovery subsequent
> to a successful allegation of securities fraud.**

*Id.* at *1 (emphasis added); *see also Lernout & Hauspie*, 214 F.Supp.2d at 106 ("Neither of the

perceived abuses addressed by Congress is present in this situation. Since the plaintiffs'

complaint has easily survived four defendants' motion to dismiss, discovery against those

defendants cannot be deemed merely a 'fishing expedition' to find a sustainable claim."); *In re*

*Global Crossing, Ltd. Sec. Litig.*, 322 F.Supp.2d 319, 352 (S.D.N.Y. 2004).

Sonus contends that "[g]iven the commands of the PSLRA, courts steadfastly have

circumscribed plaintiffs' efforts to engage in discovery outside the realm of their complaints in

an effort **to supplement or revive their claim**." Sonus Br. at 10 (emphasis added).[13]  However,

Sonus misses the point.  The discovery Lead Plaintiff seeks is **not** an attempt to revive dismissed

claims or make an end-run around the pleading requirements.  Defendants have answered, this

case is at issue and is now in the discovery phase.  Lead Plaintiff is entitled to engage in

discovery, as in any other case, in order to marshall evidence to support its existing claims,

including the ones against Sonus for violating Section 10(b) of the 1934 Act and Section 11 of

the 1933 Act.[14]

    Sonus's reliance on the PSLRA misses the mark.  The Court has previously denied

Sonus's motion to dismiss this lawsuit and the case has proceeded beyond the pleading stage.

The PSLRA does not limit discovery following denial of a motion to dismiss.[15]

---

[13]    Sonus relies on cases involving plaintiffs who, unlike Lead Plaintiff herein, were attempting to revive a previously dismissed claim.  *E.g., SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 912-13 (9th Cir. 1999); *Clinton Hudson & Sons v. Lehigh Valley Coop. Farms, Inc.*, 73 F.R.D. 420, 424 (E.D. Pa. 1977).  Moreover, in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978), the Court expressly recognized that the discovery limitation at issue would not apply if "the information sought is otherwise relevant to the case," which as shown herein is the case in the instant matter.

[14]    Sonus's reliance on *In re The Clorox Co. Sec. Litig.*, 238 F.Supp.2d 1139, 1143 (N.D. Cal. 2002) is misplaced.  In its order granting summary judgment, the court noted that it had "unequivocally held that only two allegations provided any basis for a colorable claim."  As discussed above, Sonus's contention that only four accounting transactions remain in this case is a distortion of the Order.  *Clorox* is therefore inapposite.

[15]    It is instructive to note that even in cases subject to the PSLRA's strict pleading requirements, a complaint need not outline all facts that will be presented at trial.  This clearly implies that there will be legitimate areas of discovery as to facts not detailed in a complaint.  *See In re Campbell Soup Co. Sec. Litig.*, 145 F.Supp.2d 574, 584 (D.N.J. 2001) (requiring plaintiffs to allege evidentiary detail "prior to discovery . . . may permit sophisticated defrauders to successfully conceal the details of their fraud," particularly information that is within defendant's control) (internal citations and quotation marks omitted); *In re World Access, Inc. Sec. Litig.*, 119 F.Supp.2d 1348, 1355 (N.D. Ga. 2000) (complaint need not "describe in detail each single specific transaction in which Defendant transgressed, by customer, amount, and precise method").

**4.    By Waiting More Than A Year To Bring This Motion Sonus
Has Waived Any Objections To The Scope Of Discovery**

For more than a year, the parties have proceeded in the absence of the discovery

limitations Sonus suddenly seeks to impose by its motion.  Sonus itself has produced numerous

documents it now claims are irrelevant in the context of its SEC production on August 15, 2006.

Markert Aff., ¶2.  To Lead Plaintiff's knowledge, none of the third parties have withheld

documents pursuant to similar objections.  *Id.* ¶7.  Sonus's abrupt effort to redefine the scope of

discovery which has governed this case for more than a year should be rejected.

Lead Plaintiff propounded its first document requests on Sonus in August 2006 and

Sonus served written responses in September 2006.  Markert Aff., ¶3.  Sonus argues that certain

document requests were improper because they sought "the production of documents related

either to accounting issues or 'transactions or potential transactions with' 29 customers that were

never or are no longer at issue, in light of the Court's May 10, 2006 Order."  Sonus Br. at 3.[16]

However, Sonus has already voluntarily produced documents relating to all of the customers

identified in the requests, which Lead Plaintiff has and continues to review and analyze.  *See*

Markert Aff., ¶¶3, 4 and 5.  These documents came from file folders or binder tabs clearly

labeled with customer names.  Markert Aff., ¶4.  They included purchase orders, contracts and

addenda, e-mail messages, and internal memoranda prepared by Sonus.  *Id.*  For several

customers, Sonus's production also included checklists that analyzed the contract terms and

quarters in which revenue would be recognized.  *Id.*  In other words, at a different time in this

litigation, including with regard to electronic discovery, Sonus recognized the legitimacy of these

---

[16]    As noted, Sonus's assertion is a distortion of the Order.  Instead of limiting the litigation to
a handful of transactions, the Order recognizes that the accounting problems and the complete
breakdown of internal controls were pervasive and permeated the company.  Order at 41.

discovery requests. Markert Aff. ¶10. Its change of heart more than a year later does not justify a protective order.

It is disingenuous for Sonus to claim that further discovery of customer-related documents which it previously volunteered is now somehow "out-of-bounds." In the face of the Restatement, how Sonus accounted for its customer transactions during the Class Period is plainly relevant and reasonably calculated to lead to the discovery of admissible evidence. *See*, *e.g.*, Order at 6-7. Sonus's voluntary production of materials outside the scope of what it now claims is permissible is tantamount to a waiver. The customer-related documents do not constitute privilege or work product material, so the potential harm to Sonus of such production is minimal. Moreover, many of the documents came from clearly labeled file folders, showing that they **were intended** to be included in Sonus's production. As analogized in the privilege context,

> The consequences of the **knowing disclosure** of material protected by the attorney-client privilege such as the Richards e-mail are quite clear. The First Circuit has held that with respect to the attorney-client privilege, "[i]n general, a waiver premised on inadvertent disclosure will be deemed to encompass all other such communications on the same subject." [Citing *Texaco*.] **If this is the law with respect to inadvertent disclosure, it is surely the rule for knowing disclosures**.

*In re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. 29, 34-35 (D. Mass. 2004) (emphasis added). Here, Sonus voluntarily produced the objected to records. It cannot now claim they are irrelevant and try to remove them as evidence in the case, or preclude discovery on such matters.

Sonus's own actions belie its claim that no factual matters beyond "four accounting transactions" are relevant. Sonus has previously proceeded, up to the point of the instant motion, as if all transactions subject to its Restatement were at issue. It should not now be permitted to

unilaterally narrow the appropriate subjects for discovery. Its motion for a protective order should be denied.

### 5.     The Possibility Of Amendment Supports Denial Of The Motion

The parties' Joint Statement specifically contemplates that amended pleadings may be filed in this action:

> The parties agree that all motions to amend pleadings and/or to join parties shall be filed no later than four (4) months after the commencement of merits discovery as set forth . . . above.

Ex. A. ¶VII. This agreement is consistent with the intent of Rule 15(b), Fed.R.Civ.P., which permits a plaintiff to amend a complaint during or after trial:

> (b)     If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, **the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved** thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Rule 15(b) (emphasis added). Plainly, the fact that pleadings may be amended according to proof as late as trial confirms that the face of the complaint does not necessarily define the appropriate parameters of discovery. Rule 15(b) anticipates the development of theories and factual support for a case between the motion to dismiss stage and trial. For this additional reason, a protective order is not warranted. The discovery obtained and sought by Lead Plaintiff is reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1), Fed.R.Civ.P.

### C.     The Relevant Time Period Is Appropriate

The relevant time period for Lead Plaintiff's document requests and subpoenas -- most of which were served in 2006 -- is appropriate. The parties agree that January 1, 2001 is an appropriate beginning date. *See* Sonus Br. at 11. However, there is disagreement regarding: (a)

the ending date; and (b) whether Sonus should be required to produce documents "created or generated outside this period but which contain information RELATING TO the relevant time period."

Lead Plaintiff seeks **relevant** documents generated through the present. Sonus suggests a cut-off date of September 30, 2004. The suggestion that there are no relevant documents in existence which were created after September 30, 2004 flies in the face of common sense. The massive Restatement was issued in July 2004. Order at 41. The SEC served a document subpoena in connection with its formal investigation in October 2004. Markert Aff., ¶2. The Company did not file amended Form 10-Qs for the first three quarters of fiscal year 2003 until June 10, 2005. *See* Exs. B, C and D to the Markert Aff. Sonus subsequently announced that it had found additional errors in its financial statements for fiscal years 2001, 2002, and 2003, as well as other years. *See* Ex. E to the Markert Aff. By stating a Relevant Time Period that continues "to the present," Lead Plaintiff is **not** seeking documents having no relevance to the issues in this litigation. Rather, given the breadth of the Restatement and the delay in amendment of the erroneous 10-Qs issued during the Class Period, it is entirely plausible that there are relevant documents which were created long after September 2004 that comment on, refer to, discuss or analyze issues raised by the Restatement. Indeed, Lead Plaintiff has already obtained some such documents. Markert Aff., ¶¶5 and 8. Plainly, there is legitimately discoverable material dated after September 1, 2004.[17]

There is simply no basis for Sonus to claim that September 30, 2004 is an appropriate end

---

[17]    It is well settled that the scope of the Class Period does not define the appropriate temporal contours of discovery. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *Upton v. McKerrow*, 1996 WL 193807 at *4 (N.D. Ga. Feb. 20, 1996); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005).

date for discovery. Requiring Sonus to produce documents **relating to** the Relevant Time Period

is also warranted. Documents generated outside the period covered by the Restatement may

nonetheless relate to and discuss accounting issues that occurred within that period. *See* Markert

Aff., ¶¶5 and 8.

### D.    The Deloitte Subpoena Is Proper

Sonus also argues that Lead Plaintiff's subpoena of its current auditor, Deloitte & Touche

LLP ("Deloitte") seeks "irrelevant' documents because Deloitte was retained "well after" the

Class Period. Sonus Br. at 7-8. However, Deloitte was engaged only two months after Sonus

filed its amended quarterly reports for fiscal year 2003 in June 10, 2005. As successor auditor,

Deloitte was required to communicate with Ernst & Young, Sonus's auditor during the periods

that were restated, about Sonus's accounting problems, as well as the current state of Sonus's

internal controls. As the auditing literature provides:

> Inquiry of the predecessor auditor is a necessary procedure . . .
> Matters subject to inquiry should include –
>
> •     Information that might bear on the integrity of
>     management.
>
> •     Disagreements with management as to accounting
>     principles, auditing procedures, or other similarly
>     significant matters.
>
> •     Communications to audit committees or others with
>     equivalent authority and responsibility regarding fraud,
>     illegal acts by clients, and internal control-related matters.
>
> •     The predecessor' auditor's understanding as to the reasons
>     for the change of auditors.
>
> The successor auditor may wish to consider other reasonable
> inquiries.

AU §315, *Communications Between Predecessor and Successor Auditors*, ¶¶.07, .09. Ex. K to the Markert Aff.

Based on the foregoing duties of the successor auditor, it is entirely plausible that Deloitte will have documents that discuss, analyze, refer to, or comment upon events surrounding the need for the Restatement, including the status of internal controls and any changes made to address internal control deficiencies. That is the nature of what Lead Plaintiff is seeking from the Deloitte subpoena and it is clearly discoverable under Rule 26(b)(1).[18]

**E.    <u>Sonus Grossly Overstates The Burden Of The Electronic Discovery</u>**

Sonus has grossly overstated the purported burden of the electronic discovery, and accordingly Sonus should produce relevant electronic discovery to Lead Plaintiff. As Sonus acknowledges, much of its data is stored electronically. Lead Plaintiff served its initial document requests to Sonus on August 29, 2006. Sonus did not provide its initial proposed search protocol for its electronically stored information ("ESI") responsive to these requests until more than five months later, on February 1, 2007. The parties had agreed that Lead Plaintiff would provide input as to the search criteria and sources of ESI to be searched. *See* Ex. E to the Affidavit of Sherry Haus at 1. Since the scope of the responsive material is unknown until the search criteria are applied to the ESI sources, both parties understood that development of the search protocol would be an iterative process. Markert Aff., ¶12. At the time Sonus filed the instant motion, this process was still ongoing. *Id.* at ¶11. Therefore, Sonus's contentions regarding the time

---

[18]    Sonus wrongfully interfered in the "meet and confer" process between Lead Plaintiff and its independent auditor Deloitte by filing the instant motion. Markert Aff., ¶16. It is possible that Lead Plaintiff and Deloitte could have worked out a compromise with regard to the documents to be produced pursuant to the Deloitte subpoena, but Sonus did not allow that to occur.

supposedly needed to review data for privilege are rank speculation, likely vastly exaggerated and, more importantly, are prematurely before this Court.

While some of Lead Plaintiff's initial proposed queries generated a large number of hits -- likely caused by the use of a commonly used word that is mistakenly "hitting" a larger number of documents -- Sonus's proposed queries were also problematic and blatantly deficient. For example, Sonus characterizes its original 52 proposed search queries as reasonable, but two of the search terms identified only a **single** document, which is obviously insufficient. Ex. G to the Markert Aff., ¶¶13, 14. In another instance, a search term proposed by Sonus was so restrictive it failed to identify any documents. *Id.* The parties were working on developing an acceptable search protocol, which is an ongoing process. Seeking a protective order is not the answer. It simply inflames the situation, delays its resolution, and increases cost.

In addition, Sonus's contention that it would take 94 days to review documents for a single search query is nothing more than hypothetical musing as Sonus failed to allow Lead Plaintiff the opportunity to revise the query before seeking the Court's intervention. Any estimates of the amount of time it would require to review the culled ESI is purely speculative. Certainly, Sonus has exaggerated the burden of reviewing the ESI for responsiveness and privilege. Sonus is uploading a narrow selection of its ESI into a third party software system. Markert Aff., ¶11. The ESI will then be further culled electronically to identify responsive data using search queries and terms. *Id.* Any potential burden of doing a page-by-page review of the responsive data for privileged material may be resolved by entering a non-waiver stipulation that includes a "claw back provision" for the return of allegedly privileged documents. It could also include a provision to allow Sonus to conduct a limited privilege review by applying search criteria electronically to identify and remove potentially privileged data, thereby greatly reducing

the amount of data to be reviewed. Rule 26(b)(5)(B), Fed.R.Civ.P., expressly protects Sonus if privileged docs are inadvertently produced through this process. The parties recently entered into a stipulation regarding Sonus's review of third-party Ernst & Young LLP's 3.5 gigabytes of ESI responsive to Lead Plaintiff's subpoena. Ex. J to the Markert Aff., ¶15. A similar agreement can be applied for Sonus's ESI.

In sum, there is no issue for the Court's resolution at this time regarding ESI. Sonus is seeking an advisory opinion on a matter the parties were still negotiating when Sonus filed its motion. At bottom, this motion is about Sonus trying to protect something in its ESI by changing the previously agreed upon parameters of discovery that governed the parties through more than a year of discovery. This effort should be rejected.

## IV.  **CONCLUSION**

For the foregoing reasons, Sonus's Motion for Protective Order should be denied in its entirety.

Dated: September 19, 2007                     GOLD BENNETT CERA & SIDENER LLP

                                              By: _____/s/Solomon B. Cera_____
                                                        Solomon B. Cera

                                              Attorneys for Lead Plaintiff
                                              BPI Global Asset Management LLP