UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SONUS NETWORKS, INC. SECURITIES LITIGATION | ) Civil Action No. 04-10294-DPW<br>) (Lead Case)<br>)<br>) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | )<br>)<br>)<br>)<br>) |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF THE CLASS ACTION SETTLEMENT</u>**

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#118410

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND OF THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. THE SETTLEMENT AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Merits Of The Case Are Sharply Disputed . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. The Damages In The Case Are Sharply Disputed . . . . . . . . . . . . . . . . . . . . . . 2

    C. The Terms Of The Proposed $40,000,000 Settlement . . . . . . . . . . . . . . . . . . . 3

    D. The Settlement Was The Product Of Extensive Arms-Length Negotiation . . . . . 3

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. The Motion For Preliminary Approval Of The Proposed Class Action Settlement Should Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1. The Role Of The Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2. Criteria To Be Considered In Deciding Preliminary Approval . . . . . . . . . 5

    B. The Plan Of Allocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C. The Proposed Class Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Becher v. Long Island Lighting Co.*
    64 F.Supp.2d 174 (E.D.N.Y. 1999) .................................................... 9

*City P'ship. Co. v. Atl. Acquisition Ltd. P'shp.*
    100 F.3d 1041 (1st Cir. 1996) ..................................................... 4, 8

*Detroit v. Grinnel Corp.*
    495 F.2d 448 (2d Cir. 1974) ........................................................ 6

*Durrett v. Housing Auth. of the City of Providence*
    896 F.2d 600 (1st Cir. 1990) ....................................................... 4

*Greenspun v. Bogan*
    492 F.2d 375 (1st Cir. 1974) ....................................................... 6

*In re Am. Bank Note Holographs, Inc. Sec. Litig.*
    127 F.Supp.2d 418 (S.D.N.Y. 2001) ................................................ 11

*In re Auto. Refinishing Paint Antitrust Litig.*
    2003 U.S. Dist. LEXIS 4681 (E.D. Pa. Mar. 13, 2003) ............................... 8

*In re Excess Value Ins. Coverage Litig.*
    2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) .............................. 8

*In re Lupron Mktg. and Sales Practices Litig.*
    345 F.Supp.2d 135 (D. Mass. 2004) ................................................. 5

*In re Med. X-Ray Film Antitrust Litig.*
    1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ........................... 5, 8

*In re NASDAQ Market-Makers Antitrust Litig.*
    176 F.R.D. 99 (S.D.N.Y. 1997) .................................................. 4, 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................. 4, 5, 8

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*In re Toys ("R") Us Antitrust Litig.*
    191 F.R.D. 347 (E.D.N.Y. 2000) .................................................. 9

*Lyons v. Marrud, Inc.*
    1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972) ....................... 7

*Maley v. Del Global Techs. Corp.*
    186 F.Supp.2d 358 (S.D.N.Y. 2002) .............................................. 6

*McNamara v. Bre-X Minerals Ltd.*
    214 F.R.D. 424 (E.D. Tex. 2002) .................................................. 8

*Milstein v. Werner*
    57 F.R.D. 515 (S.D.N.Y. 1972) .................................................... 6

*Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*
    323 F.Supp. 364 (E.D. Pa. 1970) .................................................. 6

*Reed v. Gen. Motors Corp.*
    703 F.2d 170 (5th Cir. 1983) .................................................... 7, 8

*Rolland v. Cellucci*
    191 F.R.D. 3 (D. Mass. 2000) ..................................................... 7

*Strube v. Am. Equity Inv. Life Ins. Co.*
    2005 U.S. Dist. LEXIS 8589 (M.D. Fla. Feb. 8, 2005) ......................... 6

### STATUTES, RULES AND REGULATIONS

15 U.S.C. §77k .......................................................................... 1

15 U.S.C. §78j(b) ........................................................................ 1

15 U.S.C. §78u-4(a)(7) ................................................................ 11

# TABLE OF AUTHORITIES
## (Continued)

**Page**

Federal Rules of Civil Procedure

    Rule 23 .................................................................. 11

    Rule 23(e) ................................................................. 4

Securities Act of 1933

    Section 11 ............................................................. 1, 10

Securities Exchange Act of 1934

    Section 10(b) .......................................................... 1, 10

**OTHER AUTHORITIES**

3B James Wm. Moore, et al., *Moore's Federal Practice* ¶23.8102.-1, at 23-479 (2d ed. 1993) . 5

*Manual for Complex Litigation* (Fourth) §13.14 (2004) .................................. 4

*Manual for Complex Litigation* (Fourth) §40.42 ........................................ 5

*Manual for Complex Litigation* (Third) §30.41 (1995) ................................... 8

*Manual for Complex Litigation*, (Fourth) §21.632 ...................................... 5

**I.    PRELIMINARY STATEMENT**

Lead Plaintiff respectfully submits this memorandum of law in support of its motion for preliminary approval of a proposed $40,000,000 class action settlement. By this motion, and pursuant to the terms of the Stipulation and Agreement of Settlement (the "Stipulation") and its attachments, submitted herewith, Lead Plaintiff seeks: (i) preliminary approval of the terms of the settlement; (ii) approval of the form of notice of the proposed settlement to be mailed to the Class members (referred to herein as the "Notice"); (iii) approval of the notice of the proposed settlement to be published (referred to herein as the "Summary Notice"); (iv) approval of the Proof of Claim and Release form; and (v) entry of the Preliminary Order in Connection with Settlement Proceedings in the form attached to the Stipulation as Exhibit A, setting a final approval hearing and directing the giving of notice.

**II.   BACKGROUND OF THE LITIGATION**

The First Amended Consolidated Class Action Complaint (the "Complaint"), filed August 5, 2005, generally alleges, among other things, that the Defendants[1] issued or caused Sonus to issue materially false and misleading SEC filings and press releases concerning Sonus's financial condition during the period from March 28, 2002 through March 26, 2004, inclusive (the "Class Period") causing the value of Sonus's shares to be artificially inflated.

By its May 10, 2006 Order, the Court dismissed all claims against all Defendants except for the claims arising under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Section 11 of the Securities Act of 1933, 15 U.S.C. §77k, against Sonus, and

---

[1]    The Defendants are Sonus Networks, Inc., Hassan M. Ahmed, and Stephen J. Nill.

statutory "control person" claims against defendants Ahmed and Nill.

The Defendants have consistently denied all of the charging allegations in the Complaint. The parties reached the proposed settlement after years of hard fought litigation, in good faith, based on extensive arms length negotiations between experienced and informed counsel and with the aid of a professional mediator.

Lead Plaintiff respectfully submits that the proposed settlement is within the range of possible final approval and that preliminary approval is warranted.

## III.   THE SETTLEMENT AGREEMENT

### A.   The Merits Of The Case Are Sharply Disputed

The claims in this case focus on whether Sonus intentionally, recklessly and/or negligently issued false and misleading statements about Sonus's financial condition during the Class Period. The merits of this claim have been sharply contested, with Defendants asserting that the claims are without basis. Lead Plaintiff believes that numerous facts support their claims. Nevertheless, Lead Plaintiff recognizes that these are hotly contested claims, and ultimately a court or a jury may find that the Defendants did not violate the federal securities laws.

### B.   The Damages In The Case Are Sharply Disputed

The dispute in this case is not limited to the issue of whether Defendants violated the federal securities laws. Defendants also dispute whether the alleged violations of the securities laws resulted in any damages, and even if they did, they contend the amount of the damages are extremely limited. To the extent that there were any damages to the Class members, Defendants assert that the damages would likely be only a small portion of the settlement consideration.

Lead Plaintiff disputes these positions, and believes that very substantial damages could potentially be proven. Nevertheless, Lead Plaintiff recognizes that the damages are sharply disputed, and ultimately a court or a jury may find that the Defendants did not cause damages, or that the damages were much less than those asserted by the Plaintiffs.

### C.     The Terms Of The Proposed $40,000,000 Settlement

The Stipulation provides for a payment in the amount of $40,000,000 in cash in exchange for full releases of the Defendants and related parties from the Settled Claims as defined in the Stipulation. Of this amount, $25,000,000 was deposited in an interest-bearing escrow account for the benefit of the Class on November 19, 2007, with the remainder to be deposited within ten (10) days of entry of the Court's preliminary approval of the proposed settlement. The Settlement Fund will be administered as a Qualified Settlement Fund under the Internal Revenue Code. As described below, this proposed settlement was reached after extensive discovery and with the assistance of a professional mediator. It merits preliminary approval.

### D.     The Settlement Was The Product Of Extensive Arms-Length Negotiation

The settlement, which provides a substantial monetary recovery, was the product of arms-length negotiation. The settling parties began discussing settlement very early on in the litigation, but those efforts, repeated intermittently throughout the litigation, were unsuccessful. After extensive motion practice directed to the sufficiency of the Complaint, the parties moved ahead into fact discovery, which occurred for well over a year when, in October 2007, the parties agreed to mediate. Extensive mediation statements on liability and damages were prepared, as well as extensive compendia of supporting exhibits. On October 26, 2007, the parties participated in an intense mediation where they were able to reach this proposed settlement. As

such, the proposed settlement was the product of extensive arms-length negotiations.

IV. **ARGUMENT**

    A. **The Motion For Preliminary Approval Of The Proposed Class Action Settlement Should Be Granted**

        1. **The Role Of The Court**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See City P'ship. Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court [regarding its decision to approve a class action settlement]."). *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). The district court's decision, however, is "restrained by 'the clear policy in favor of encouraging settlements'." *Durrett v. Housing Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Manual for Complex Litigation* (Fourth) §13.14 (2004).

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *NASDAQ*, 176 F.R.D. at 102. Preliminary approval

permits notice to be given to class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval. *Id.*

### 2. Criteria To Be Considered In Deciding Preliminary Approval

The Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation* (Fourth) §21.632. The role of the Court at preliminary approval is to examine the materials submitted and decide whether the settlement appears fair on its face. *In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements"). The primary question raised by a request for preliminary approval is whether a proposed settlement is "within the range of reasonableness." *Manual for Complex Litigation* (Fourth) §40.42; *see also In re Lupron Mktg. and Sales Practices Litig.*, 345 F.Supp.2d 135, 138 (D. Mass. 2004) ("For purposes of conditional certification, I am satisfied that with respect to the absent class members, the proposed settlement amount is sufficiently within the range of reasonableness."); *Prudential*, 163 F.R.D. at 210 ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted). Here, the proposed settlement is of a significant size that is well within the range of reasonableness.

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement. *See* 3B James Wm.

#118410                                                                                                                                  5

Moore, et al., *Moore's Federal Practice* ¶23.8102.-1, at 23-479 (2d ed. 1993). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F.Supp. 364, 372 (E.D. Pa. 1970).

In considering a potential settlement, the trial court need not reach any ultimate conclusions regarding substantive factual or legal issues on plaintiff's claims. *See Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 361 (S.D.N.Y. 2002) ("It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . . Such procedure would emasculate the very purpose for which settlements are made." (Quoting *Detroit v. Grinnel Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial. Nor should the court "make the proponents of the engagement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). *See also Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) ("any settlement is the result of a compromise -- each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion"); *Strube v. Am. Equity Inv. Life Ins. Co.*, No. 6:01-CV-1236, 2005 U.S. Dist. LEXIS 8589, at *33 (M.D. Fla. Feb. 8, 2005).

Moreover, the rigors of the negotiation process, involving an experienced, independent

mediator, and the opinion of experienced counsel support the conclusion that the Settlement is fair and reasonable. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996). *See also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *Rolland v. Cellucci*, 191 F.R.D. 3, 6-7 (D. Mass. 2000) ("The proponents of a class settlement can obtain a 'strong initial presumption that the compromise is fair and reasonable' by establishing . . . that the proponents' attorneys have experience in similar cases") (citation omitted). As the court explained in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."

Here, experienced counsel for Lead Plaintiff and Defendants, after hotly contested litigation and settlement negotiations, have concluded that the proposed cash settlement of $40,000,000 is in the best interests of their respective clients.

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and

>evidence may be presented in support of and in opposition to the settlement.

*Prudential*, 163 F.R.D. at 209 (quoting *Manual for Complex Litigation* (Third) §30.41 (1995)). Under these criteria, the Court should grant preliminary approval of the proposed Settlement and order the dissemination of notice.

The first consideration in the preliminary-approval analysis is whether the proposed settlement appears to be the product of "serious, informed and non-collusive negotiations." *Med. X-Ray*, 1997 U.S. Dist. LEXIS 2193, at *10. *See also NASDAQ*, 176 F.R.D. at 102. In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See Reed*, 703 F.2d at 175; *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430-31 (E.D. Tex. 2002) ("Counsel on all sides have proved to the Court their knowledge of the facts and law relevant to this case. Settlement was reached by knowledgeable counsel, and it was arrived at after much negotiation as is evidenced by the time it took the parities to reach an agreement."); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 426, 2003 U.S. Dist. LEXIS 4681, at *3 (E.D. Pa. Mar. 13, 2003) ("[I]t is appropriate to give deference to the recommendations of experienced attorneys who have engaged in arms-length settlement negotiations.").

Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See City P'ship. Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is

the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.") (citation omitted). Courts may also consider whether settlement was reached with the assistance of a judicial officer. *See In re Toys ("R") Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator," a retired federal judge); *Becher v. Long Island Lighting Co.*, 64 F.Supp.2d 174, 181 (E.D.N.Y. 1999).

The proposed Settlement here is the product of extensive, arm's-length negotiations, including mediation. The negotiations were informed by the knowledge Lead Plaintiff's counsel gained by reviewing hundreds of thousands of documents obtained from Defendants and third parties through discovery, and in consultation with their accounting and damage experts. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The Lead Plaintiff was also informed of each step of the negotiation process. The negotiations were at all times hard-fought and at arm's length, and have produced a result that the settling parties believe to be in their respective best interests.

Lead Plaintiff's counsel, which has a great deal of experience in the prosecution and resolution of complex class action securities litigation, have carefully evaluated the merits of the case and the proposed settlement. Based on the discovery conducted by Lead Plaintiff's counsel and their consultations with experts, there were substantial issues concerning both liability for the alleged misrepresentations and the damages sustained by the Class. Lead Plaintiff's counsel

believe that there was sufficient evidence to proceed to the jury on their claims but recognize that proving the elements of the causes of action and *scienter* with respect to complex accounting issues, and the magnitude of the sustained damages caused by the alleged misrepresentations, were significant risks. Lead Plaintiff's counsel knows from experience that even where a plaintiff's case appears strong, there is no guarantee against a defense verdict.

In light of the above considerations, the proposed settlement as a whole is reasonable and within the range of possible approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Class.

**B.     The Plan Of Allocation**

Under the proposed Plan of Allocation of the settlement proceeds, an independent claims administrator, Gilardi & Co., LLC will calculate each claimants "recognized loss" based on the Class members' proofs of claim. The proposed Plan of Allocation is fully set forth in the class notice.[2]

The Plan of Allocation recognizes that this action involves both a Class and a Subclass, and that their interests must be properly protected. Lead Plaintiff's counsel, in consultation with an expert, determined an appropriate allocation of settlement funds between the two. With the assistance of the damages expert, the Plan of Allocation takes into consideration that the Subclass has a claim under Section 11 of the Securities Act of 1933, which involves a more lenient standard of proof than does Section 10(b) of the Securities Exchange Act of 1934, which

---

[2]   Lead Plaintiff's counsel will provide a detailed explanation of its proposed Plan of Allocation, and respond to any Class member comments thereon, in their submissions in advance of the final fairness hearing.

has a difficult *scienter* standard. Accordingly, the Plan of Allocation provides that damaged Section 11 claimants be allotted a multiplier of 1.5 on their claims.

The Plan of Allocation reflects economic reality and fairly and adequately allocates the proceeds of the settlement among the Class and Subclass members. Lead Plaintiff's counsel submit that the Plan of allocation is fair and equitable and deserves to be disseminated to Class and Subclass members for their consideration. *See, e.g., In re Am. Bank Note Holographs, Inc. Sec. Litig.*, 127 F.Supp.2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel.").

C. **The Proposed Class Notice**

In accordance with Rule 23 of the Federal Rules of Civil Procedures, Lead Plaintiff's counsel has prepared and submitted as an attachment to the Stipulation, the Notice (Exhibit 1 to Exhibit A to the Stipulation) which fully complies with the requirements of Rule 23 and the Private Securities Litigation Reform Act of 1995. 15 U.S.C. §78u-4(a)(7). The Notice fully describes the proposed settlement, the fees and expenses sought, the Plan of Allocation, and Class members' rights to seek exclusion or to participate and/or object to any aspect of the proposed settlement. The Notice will be mailed to all Class and Subclass members who are identified on Sonus's stock transfer records as having purchased Sonus securities during the Class Period. In addition, a Summary Notice (Exhibit 3 to Exhibit A to the Stipulation) will be published in the national edition of *The Wall Street Journal* describing in general terms the proposed settlement and the rights of Class and Subclass members with regard thereto.

Attached as Exhibit A to the Stipulation is a proposed Preliminary Order in Connection

#118410                                                                                                                                  11

with Settlement Proceedings, lodged separately herewith, in which the Court is requested to schedule a final settlement hearing to determine whether the proposed settlement should be approved as fair, reasonable and adequate; whether an order approving the settlement should be entered and this action dismissed; whether the Plan of Allocation of the settlement proceeds should be approved; and to consider an application of Lead Plaintiff's counsel for an award of attorneys' fees and reimbursement of expenses.

V.  **CONCLUSION**

Accordingly, based on the Stipulation, the attachments to the Stipulation, this memorandum of law, and the prior proceedings in this matter, Lead Plaintiff, with the consent of Defendants, respectfully requests that the Court grant preliminary approval of the proposed settlement and enter the Preliminary Order in Connection with Settlement Proceedings.

Dated: December 21, 2007                     GOLD BENNETT CERA & SIDENER LLP


                                             By _____/s/Solomon B. Cera_____
                                                    Solomon B. Cera

                                             Attorneys for Lead Plaintiff
                                             BPI Global Asset Management LLP