UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE SONUS NETWORKS, INC. SECURITIES LITIGATION | ) Civil Action No. 04-10294-DPW<br>) (Lead Case)<br>)<br>) |
| THIS DOCUMENT RELATES TO: ALL CASES | )<br>)<br>)<br>)<br>)<br>) |

**LEAD PLAINTIFF'S COUNSEL'S MEMORANDUM IN
SUPPORT OF APPLICATION FOR AWARD OF ATTORNEY'S
FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera
Gwendolyn R. Giblin
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Attorneys for Lead Plaintiff
BPI Global Asset Management LLP

#118885

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ....................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

III.   THE LEGAL STANDARDS GOVERNING THE AWARD OF ATTORNEYS'
       FEES .................................................................................................................6

       A.     Plaintiff's Counsel Is Entitled To A Fee From The Common Fund It Created.......6

       B.     The Court Should Award Attorney's Fees Using The Percentage Approach .........7

IV.    THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF
       THE FUND CREATED FOR THE BENEFIT OF THE CLASS .......................................9

       A.     The Requested Fee Is Consistent With Recent Fee Awards In Securities Cases ....9

       B.     The Relevant Factors Support The Fee Request.....................................................10

              1.     The Amount Of The Recovery ...................................................................11

              2.     The Amount Of Time Devoted ..................................................................11

              3.     The Absence Of Objections To The Settlement And Requested Attorneys'
                     Fee Award...................................................................................................12

              4.     The Skill And Efficiency Of Plaintiff's Counsel .......................................13

              5.     The Complexity Of The Litigation And The Significant Obstacles To
                     Recovery ....................................................................................................14

              6.     The Lack Of Assistance From Government Or Related Proceedings .......15

              7.     The Risk Of Non-Payment.........................................................................15

V.     PUBLIC POLICY CONSIDERATIONS SUPPORT THE REQUESTED FEE ..............17

VI.    GBCS SHOULD BE REIMBURSED FOR ITS REASONABLY INCURRED
       LITIGATION EXPENSES....................................................................................19

VII.   CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*
  77 F.3d 1215 (10th Cir. 1996) ................................................................. 16

*Backman v. Polaroid Corp.*
  910 F.2d 10 (1st Cir. 1990) ..................................................................... 16

*Basic Inc. v. Levinson*
  485 U.S. 224 (1988) ................................................................................. 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*
  472 U.S. 299 (1985) ............................................................................ 17, 18

*Behrens v. Wometco Enterprises, Inc.*
  118 F.R.D. 534 (S.D. Fla. 1988) ............................................................. 13

*Blum v. Stenson*
  465 U.S. 886 (1984) ......................................................................... 7, 8, 17

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) ................................................................................... 6

*Bussie v. Allmerica Fin. Corp.*
  1999 WL 342042 (D. Mass. May 19, 1999) ............................................... 8

*Cent. R.R. & Banking Co. v. Pettus*
  113 U.S. 116 (1885) ................................................................................... 6

*Duhaime v. John Hancock Mut. Life Ins. Co.*
  989 F. Supp. 375 (D. Mass. 1997) ............................................................. 7

*Eltman v. Grandma Lee's, Inc.*
  1986 WL 53400 (E.D.N.Y. May 29, 1986) .............................................. 18

*Fine v. American Solar King Corp.*
  919 F.2d 290 (5th Cir. 1990) ................................................................... 18

*Furtado v. Bishop*
  635 F.2d 915 (1st Cir. 1980) ..................................................................... 8

*Gunter v. Ridgewood Energy Corp.*
  223 F.3d 190 (3d Cir. 2000) ............................................................... 13, 17

*Herman & MacLean v. Huddleston*
  459 U.S. 375 (1983) ................................................................................. 17

## TABLE OF AUTHORITIES

*In re Aetna Inc. Sec. Litig.*
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ..................................................................... 12

*In re Apple Computer Sec. Litig.*
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ........................................ 16

*In re Bisys Sec. Litig.*
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................................................ 9, 17

*In re Boston & Maine Corp.*
  778 F.2d 890 (1st Cir. 1985) ................................................................................. 9, 17

*In re Cell Pathways, Inc., Sec. Litig.*
  2002 WL 31528573 (E.D. Pa. Sept. 23, 2002) ................................................... 12, 14

*In re Charter Comm. Inc. Sec. Litig.*
  2005 WL 4045741 (E.D. Mo. June 30, 2005) .......................................................... 14

*In re Comshare Inc. Sec. Litig.*
  183 F.3d 542 (6th Cir. 1999) ................................................................................... 18

*In re Continental Ill. Sec. Litig.*
  962 F.2d 566 (7th Cir. 1992) ..................................................................................... 8

*In re Excel Energy, Inc. Sec. Deriv. & "ERISA" Litig.*
  364 F.Supp.2d 980 (D. Minn. 2005) ........................................................................ 17

*In re Fidelity/Micron Sec. Litig.*
  167 F.3d 735 (1st Cir. 1999) .................................................................................... 19

*In re Fleet/Norstar Sec. Litig.*
  935 F.Supp. 99 (D.R.I. 1996) .................................................................................... 7

*In re Heritage Bond Litig.*
  2005 U.S. Dist. LEXIS 13627, at *53 (C.D. Cal. June 10, 2005) ........................... 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 13

*In re Lupron Mktg. and Sales Practices Litig.*
  2005 WL 2006833 (D. Mass. Aug. 17, 2005) ........................................................ 7, 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*
  2007 WL 313474, at *18 (S.D.N.Y. Feb. 1, 2007) .................................................. 10

## TABLE OF AUTHORITIES

*In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*
  982 F.2d 603 (1st Cir. 1992) ................................................................. 19

*In re Priceline.com Inc. Sec. Litig.*
  2007 WL 2115592 (D. Conn. July 20, 2007) ........................................... 10

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*
  1994 WL 202394 (E.D. La. May 18, 1994) ............................................... 15

*In re Relafen Antitrust Litig.*
  231 F.R.D. 52 (D. Mass. 2005) ................................................... 7, 9, 10

*In re Rite Aid Sec. Litig.*
  362 F.Supp.2d 587 (E.D. Pa. 2005) ...................................................... 17

*In re SmithKline Beckman Corp. Sec. Litig.*
  751 F.Supp. 525 (E.D. Pa. 1990) ........................................................ 13

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*
  56 F.3d 295  (1st Cir. 1995) ................................................. 6, 7, 8, 10

*In re Vecco Instruments, Inc. Sec. Litig.*
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .............................................. 7

*In re Visa Check Mastermoney Antitrust Litig.*
  297 F.Supp.2d 503 (E.D.N.Y.2003) ........................................................ 5

*In re Walt Disney Co. Derivative Litig.*
  907 A.2d 693 (Del. Ch. 2005) ............................................................ 16

*In re Warner Comm. Sec. Litig.*
  618 F.Supp. 735 (S.D.N.Y. 1985) .................................................... 13, 18

*J.I. Case Co. v. Borak*
  377 U.S. 426 (1964) ...................................................................... 18

*Lipsett v. Blanco*
  975 F.2d 934 (1st Cir. 1992) ............................................................ 10

*Mills v. Elec. Auto-Lite Co.*
  396 U.S. 375 (1970) ....................................................................... 6

*Missouri v. Jenkins*
  491 U.S. 274 (1989) ................................................................... 8, 17

## TABLE OF AUTHORITIES

*Nichols v. SmithKline Beecham Corp.*
  2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ........................................................... 10

*Ressler v. Jacobson*
  149 F.R.D. 651 (M.D. Fla. 1992) ................................................................... 13, 18

*Robbins v. Koger Props., Inc.*
  116 F.3d 1441 (11th Cir. 1997) .......................................................................... 16

*Shaw v. Toshiba America Information Systems, Inc.*
  91 F.Supp.2d 942 (E.D. Tex. 2000) .................................................................... 13

*Swack v. Credit Suisse First Boston, LLC*
  2006 U.S. Dist. LEXIS 75470 (D. Mass. October 4, 2006 .................................. 9

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*
  511 U.S. ___, 127 S.Ct 2499 (2007) ................................................................... 7

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ........................................................................... 10

*Waters v. Int'l Precious Metals Corp.*
  190 F.3d 1291 (11th Cir. 1999) ......................................................................... 10

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §78u-4(a)(3) ............................................................................................ 3

15 U.S.C. §78u-4(a)(6) ............................................................................................ 8

15 U.S.C. §78u-4(b)(3)(B) ....................................................................................... 3

Federal Rules of Civil Procedure

  Rule 26 ................................................................................................................. 4

  Rule 34 ................................................................................................................. 4

## OTHER AUTHORITIES

*Manual for Complex Litig.* (Fourth) §14.121 (2004) .............................................. 10

I.    **PRELIMINARY STATEMENT**

Counsel for Lead Plaintiff, Gold Bennett Cera & Sidener LLP ("GBCS"), respectfully

submits this memorandum of law in support of its application for an award of attorneys' fees and

reimbursement of litigation expenses.  GBCS undertook the prosecution of this action on a fully

contingent basis, and now seeks an award of attorneys' fees of 25% of the $40,000,000

settlement fund, together with interest earned on the Settlement Fund since deposit, as well as

reimbursement of out-of-pocket litigation expenses.  This application is submitted in conjunction

with the proposed settlement between Lead Plaintiff and defendants Sonus Networks, Inc.

("Sonus"), Hassan M. Ahmed and Stephen J. Nill (hereinafter referred to as the "Proposed

Settlement").[1]

The excellent recovery for the Class and Subclass represented by the Proposed Settlement

was achieved despite difficult and challenging circumstances and is attributable to the tenacity,

skill, and creativity of GBCS.  The firm devoted more than 12,000 hours of attorney and

paraprofessional time to prosecuting this action over a four (4) year period.  ¶¶52, 64.  This case

was in large part based on the accounting treatment of highly complex transactions, was

governed primarily by a statute which demands almost unprecedented exactitude in pleading and

proof, and was aggressively contested and defended from beginning to end.  ¶¶7, 14, 49.

Moreover, although the Securities and Exchange Commission ("SEC") commenced a formal

investigation of Sonus based on the same transactions as were challenged in this action, it

---

[1]    Filed concurrently with this memorandum is the Declaration of Solomon B. Cera, which
supports this memorandum and provides a full description of, *inter alia*, the claims brought in
this litigation, the background and procedural history of the litigation, the investigation and
discovery efforts that took place, the motions, settlement negotiations, terms of settlement, and
various factors affecting the Proposed Settlement, the proposed Plan of Allocation of Settlement
Proceeds, and the requested award of attorneys' fees and reimbursement of litigation expenses.
All references to "¶__" are to the Cera Declaration.

eventually dropped the matter, with no enforcement action being brought against Sonus. ¶9. That there are no objections to a 25% fee in a case in which more than 92,000 notices have been mailed to institutional and individual investors is evidence of both the excellent result obtained and the reasonableness of the requested fee. ¶¶6, 51, 71. On these facts, the requested fee is appropriate and justified under applicable fee award jurisprudence and should be awarded.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The requested fee of 25% of the recovery is fair and appropriate and should be approved. GBCS has labored long and hard to bring about this favorable result for the Class and Subclass against the Settling Defendants. ¶¶15-44. The result was obtained without any assistance whatsoever from the SEC or any other regulatory authority.[2] ¶9.

The Proposed Settlement represents the culmination of a very substantial effort by GBCS over the course of almost four (4) years during which it has received no payment for its services. ¶¶52, 78. At each step of the way, there were substantial obstacles which had to be overcome in this difficult, complex and hotly contested litigation. ¶¶14, 16, 19, 22, 23, 29, 31-33, 37-39, 43. GBCS successfully navigated around all the obstacles, at significant risk, to achieve a very favorable result.

No one can dispute that the litigation has been hard fought and presented numerous risks to a successful outcome. Because of material misstatements, Sonus was forced to restate its financial results for fiscal years 2001, 2002, and the first three quarters of 2003. ¶12. The revelation of the need for a restatement caused a sharp decline in the price of Sonus stock. ¶15. Numerous class action securities fraud lawsuits were filed and multiple applications for the position of Lead Plaintiff were submitted. *Id.* GBCS's client, BPI Global Asset Management

---

[2]    The SEC's short-lived and ultimately abandoned investigation of Sonus was at all times confidential. ¶9.

LLP ("BPI Global"), was a somewhat unusual applicant for the Lead Plaintiff position under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3). *Id.* and at ¶16. As the Court is well aware, BPI Global purchased the vast majority of its Sonus shares in its capacity as an investment advisor. These purchases were made in BPI Global's own name pursuant to the discretionary authority given to it by its clients. In the face of very vigorous competition, GBCS argued for and obtained the Lead Plaintiff position for BPI Global, defeating contentions that it lacked standing and would not adequately represent the Class. ¶16.

Following BPI Global's appointment, GBCS was faced with the task of further investigating the complex accounting issues at Sonus without the benefit of any discovery, in order to prepare an omnibus statement of the allegations.[3] ¶¶17, 19. The first complaint filed by GBCS reflected the intensive investigatory effort it undertook. *Id.* In response to this complaint, an onslaught of motions to dismiss were filed by all defendants, raising a host of pleading and related issues. ¶19. GBCS opposed these motions and participated in a lengthy oral argument. *Id.* Based on this argument, the Court permitted Lead Plaintiff an opportunity to amend. *Id.* Additional investigation was undertaken and a detailed First Amended Complaint was filed on August 5, 2005. ¶20. Once again, a slew of motions to dismiss were filed and extensive briefing occurred. ¶21. A lengthy oral argument was conducted on December 7, 2005. *Id.* The result was the sixty-six (66) page May 10, 2006 Memorandum and Order (Docket No. 149). Significantly, even in the face of the extreme challenges of pleading a cause of action consistent with the dictates of the PSLRA, the Court affirmed the sufficiency of the claims under Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933

---

[3]    In cases such as this, which are governed by the PSLRA, no discovery is permitted until all motions to dismiss have been resolved and the Court has ruled that a claim has been adequately alleged. 15 U.S.C. §78u-4(b)(3)(B).

against Sonus, as well as the "control person" claims against defendants Ahmed and Nill. ¶¶22-23.

The parties thereafter negotiated a plan for further proceedings in the case, which the Court approved on July 27, 2006. ¶25. Initial Disclosures were made pursuant to Rule 26, Fed.R.Civ.P. and document production subpoenas were issued to third parties. ¶¶25, 30. Further, Sonus began to produce documents it had provided to the SEC, and Lead Plaintiff was permitted to propound document requests pursuant to Rule 34, Fed.R.Civ.P. ¶26. As a result, a huge volume of discovery materials was produced, and GBCS undertook the enormous task of organizing and reviewing these materials in further prosecution of the claims asserted. ¶¶26, 27, 30. At the same time, class certification proceedings began in earnest in the fall of 2006 and carried on through argument on class certification on February 28, 2007. This process entailed BPI Global responding to multiple written discovery requests, producing documents, and making three (3) witnesses available for deposition. ¶¶34-36. Substantial briefing was completed on the class certification motion addressing difficult and novel issues concerning an investment advisor's ability to serve as a class representative. ¶37. A hearing was conducted on the class certification motion on February 28, 2007. *Id.* On September 25, 2007, the Court issued its order granting BPI Global's motion for class certification. ¶39.

In addition to these tasks, GBCS was engaged in many negotiations with the Defendants which ultimately led to the Stipulation and Agreement of Settlement, filed December 21, 2007. ¶¶40-44. These negotiations were not easy, and were often protracted and hard fought. *Id.* Settlement meetings occurred on several occasions in various locations. ¶41. Substantial settlement-related documentation was exchanged. *Id.* Experts were consulted. ¶¶41, 52. At all times, GBCS was faced with the risk of successfully litigating highly complex accounting claims

through summary judgment and trial. To further complicate matters, the director and officer insurance covering the claims made in this case was limited in amount, and had been substantially depleted through payment of defense costs. ¶60. In addition, there was a significant risk that, in the absence of a settlement with the Defendants, they would be unable to pay a greater judgment if the case went to trial and Lead Plaintiff prevailed. ¶60. Simply put, there was always a risk that the Class and Subclass would recover little or nothing.

In light of the significant difficulties confronting GBCS, the result achieved fully warrants the requested 25% fee under applicable legal standards. Indeed, as discussed below, a 25% award is well within the normal range of awards made in contingent fee matters of this type, and is particularly appropriate here in view of the fine result obtained in the face of considerable risk in a complex case. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 524 (E.D.N.Y.2003) ("The quality of representation is best measured by results") (citation omitted), *aff'd*, 396 F.3d 96 (2d Cir. 2005).

The Class appears to agree that the Proposed Settlement is a commendable result. In accordance with this Court's [Revised] Preliminary Order In Connection With Settlement Proceedings, dated January 18, 2008 (the "Order"), copies of the Notice of Pendency of Class Action, Hearing on Proposed Settlement and Attorneys' Fee Petition and Right to Share in Settlement Fund (the "Notice") were mailed to more than 92,000 potential Class Members, and a Summary Notice was published in the February 5, 2008 national edition of *The Wall Street Journal*. *See* Declaration of Carole K. Sylvester re Mailing of Notice of Pendency of Class Action and Proof of Claim and Publication of Summary Notice (the "Sylvester Decl."), filed herewith. The Notice described the litigation and the proposed settlement, as well as counsel's intent to request an award of fees of 25% of the gross settlement fund and reimbursement of

#118885                                                                                              5

expenses of up to $600,000, plus interest. *Id.* The Notice also informed Class members of their

right to object to this application. *Id.* As noted, no objections to a 25% fee have been made.

¶¶9, 45, 51, 71. That no objections have been received from Class and Subclass members, which

include sophisticated institutional investors, is strong evidence that the requested fee award is

both fair and reasonable.

Accordingly, for the reasons herein set forth, the requested fees and expenses should be

awarded.

## III. THE LEGAL STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES

### A. Plaintiff's Counsel Is Entitled To A Fee From The Common Fund It Created

Courts have long recognized that when, as in this case, a party maintains a suit that

results in the creation of a fund for the benefit of a class, the costs of the litigation, including an

award of reasonable attorneys' fees, should be recovered from the fund created by the litigation.

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who

recovers a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

478 (1980) ("Attorneys who represent a class, and achieve a benefit for the class members, are

entitled to be reasonably compensated for their services."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S.

375, 393 (1970); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885); *see also In re*

*Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305

n. 6 (1st Cir. 1995). Courts have also recognized that in addition to providing just compensation,

awards of attorneys' fees from a common fund also serve to encourage skilled counsel to

represent those who seek redress for damages inflicted on entire classes of persons, and to

discourage future misconduct of a similar nature. *See, e.g., In re Vecco Instruments, Inc. Sec.*

*Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808 at *2 (S.D.N.Y. Nov. 7, 2007).  Indeed, the Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 511 U.S. ___, 127 S.Ct 2499, 2504 (2007).

    **B.**    **The Court Should Award Attorney's Fees Using The Percentage Approach**

    Since *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), when the Supreme Court observed that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class," courts in the First Circuit have followed the trend in favor of awarding attorneys' fees from a common fund on a percentage of the fund basis. *See Thirteen Appeals*, 56 F.3d at 307; *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997).

    In *Thirteen Appeals*, 56 F.3d at 307, perhaps the First Circuit's most definitive pronouncement on the subject, the Court affirmed the District Court's attorney's fee award of 31% of a $220 million common fund, holding that "use of the [percentage of fund] method in common fund cases is the prevailing praxis" based upon the "distinct advantages that the [percentage of fund] method can bring to bear in such cases." *Id.*[4]  The *Thirteen Appeals* court stressed that the percentage method is far less burdensome to administer than the lodestar method and that, unlike the lodestar method, it does not create "a monetary incentive to spend as many hours as possible" on the case, or, conversely, a "disincentive to early settlement," thereby more

---

[4]   *Thirteen Appeals* has been relied upon by courts in this Circuit in awarding percentage based fees.  *See Relafen*, 231 F.R.D. at 77-78; *In re Lupron Mktg. and Sales Practices Litig.*, No. 01-10861-RGS, 2005 WL 2006833, at *2, 3 (D. Mass. Aug. 17, 2005); *In re Fleet/Norstar Sec. Litig.*, 935 F.Supp. 99, 105 (D.R.I. 1996).

closely aligning plaintiffs' counsel's interests with the interests of the class. *Id*. Finally, because the percentage method is "result-oriented rather than process-oriented," the *Thirteen Appeals* court noted that the percentage method "better approximates the workings of the marketplace." *See also Bussie v. Allmerica Fin. Corp.*, No. 97-40204-NMG, 1999 WL 342042 at *3-4 (D. Mass. May 19, 1999).

Use of the percentage method is also consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

The percentage method of awarding fees is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307; *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (explaining that the goal of the fee setting process "is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). The ordinary contingency fee arrangement is for one-third of the recovery. *See Furtado v. Bishop*, 635 F.2d 915, 917 (1st Cir. 1980). *Accord Blum*, 465 U.S. at 903 (Brennan, J., concurring in part and dissenting in part: ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers"). For the foregoing reasons, the award of fees in this case can properly be based on a percentage of the fund which has been created through counsel's efforts for the benefit of the Class.

## IV.   THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF THE FUND CREATED FOR THE BENEFIT OF THE CLASS

### A.   The Requested Fee Is Consistent With Recent Fee Awards In Securities Cases

The requested fees of 25% of the Settlement Fund is consistent with, indeed lower than, attorneys' fee awards in other complex class action cases in this District. *See, e.g., Swack v. Credit Suisse First Boston, LLC*, No. 02-11943-DPW, 2006 U.S. Dist. LEXIS 75470 (D. Mass. October 4, 2006 (33% of $3 million) (Woodlock, J.); *Ahearn v. Credit Suisse First Boston LLC*, No. 03-10956-JLT (D. Mass. June 7, 2006) (33% of $8 million); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (33.3% of $75 million); *In re Lupron Marketing and Sales Practices Litig.*, No. 02-10861-RGS, 2005 U.S. Dist. LEXIS 17456 (D. Mass. August 17, 2005 (23% of $150 million); *In re Sepracor Inc. Sec. Litig.*, No. 02-12235-MEL, Final Judgment and Order of Dismissal (D. Mass. Sept. 6, 2007) (awards of 30% and 27.5% for two class recoveries totaling $52 million); *In re Nx Networks Sec. Litig.*, CA No. 00-11850-JLT, Order and Final Judgment (D. Mass. Nov. 22, 2004) (33% award); *Wilensky v. Digital Equip. Corp.*, CA No. 94-10752-JLT, Order and Final Judgment (D. Mass. Oct. 18, 2005) (33% award); *In re No. Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207, Order and Final Judgment (D. Mass. Feb. 6, 2001 (33 1/3% award); *In re Peritus Software Serv., Inc. Sec. Litig.*, CA No. 98-CV-10578, Order and Final Judgment (D. Mass. Feb. 28, 2000) (33% award); *In re Segue Software, Inc.*, CA No. 99-10891-RGS, Order and Final Judgment (D. Mass. July 31, 2001) (33% award); *Chalverus v. Pegasystems, Inc.*, CA No. 97-12570-WGY, Final Judgment (D. Mass. Dec. 19, 2003) (33% award).

The requested fees are also consistent with fee awards in complex class actions in other districts. *See In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007), at *1 (30% award of $65 million fund); *In re Priceline.com Inc. Sec. Litig.*, 3:00-CV-

1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) (30% award of $80 million fund);

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (affirming 28% award on $97 million

settlement); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming 33

1/3% award on $40 million settlement); *In re Merrill Lynch & Co., Inc. Research Reports Sec.*

*Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *18 (S.D.N.Y. Feb. 1, 2007) (28% award

of $40.3 million fund); *In re Heritage Bond Litig.*, 02-ML-1475 (DT), 2005 U.S. Dist. LEXIS

13627, at *53 (C.D. Cal. June 10, 2005) (33 1/3% award of $28 million fund); *Nichols v.*

*SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616, at *20 (E.D. Pa. Apr. 22, 2005)

(30% award of $65 million fund).

In view of the foregoing authorities, the request for a 25% fee award in a case that was

prosecuted for four (4) years is eminently fair and reasonable.

### B.   The Relevant Factors Support The Fee Request

In addition to examining comparable fee awards, courts within this Circuit and elsewhere

typically examine a variety of factors to determine whether a percentage request is fair and

reasonable, including, *inter alia*: the amount of the recovery; the skill and efficiency of counsel;

the complexity of the litigation and the risk of nonpayment; and the amount of time devoted to

the litigation. *Manual for Complex Litig.* (Fourth) §14.121 at 192-93 (2004)[5]

Each of these factors, and additional factors considered by the courts, weigh heavily in

support of approval of the fee requested in this litigation.

//

---

[5]   The First Circuit has not provided a definitive list of factors for evaluating a fee application.
Rather, it has stated that "in respect to fee awards, the trial court's latitude is 'extremely broad.'"
*Thirteen Appeals*, 56 F.3d at 309, *quoting, Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).
However, other courts in this District have looked to the factors enumerated above in guiding
their analysis. *Relafen*, 231 F.R.D. at 79.

### 1.    The Amount Of The Recovery

The actual benefit conferred by the settlement on the Class -- the immediate recovery of

$40,000,000 in cash, plus interest -- is an excellent result.  This is especially true where, as here,

the case was fraught with substantial risks and uncertainties, and the Defendants have

consistently denied any wrongdoing.  As described in detail in the Cera Declaration and the

accompanying Lead Plaintiff's Memorandum in Support of Final Approval of Proposed Class

Action Settlement and Plan of Allocation ("Final Approval Brief"), Lead Plaintiff faced

significant hurdles in demonstrating *scienter* and damages, as well as dealing with problems

inherent in presenting a multitude of factually complex transactions raising difficult accounting

issues to a lay jury.

Given the size of the settlement in this case and considering the nature of the issues at the

heart of the litigation, the $40,000,000 Settlement Fund is an excellent recovery for the Class.

### 2.    The Amount Of Time Devoted

The time and effort expended by GBCS also supports the requested fee award in this

case.  GBCS has a lodestar of $5,068,951, which represents over 12,920.75 hours expended in

litigating this case, which settled after four (4) years of intense litigation.  ¶64.

Since inception of this case, GBCS vigorously prosecuted the litigation, including (1)

seeking Lead Plaintiff status for an investment advisor; (2) investigating the factual basis for

claims against the Defendants, (3) preparing two detailed complaints; (4) successfully

overcoming critical aspects of Defendants' motions to dismiss after extensive legal research,

briefing and oral argument; (5) obtaining class certification after extensive briefing, depositions

of the Lead Plaintiff, and oral argument; (6) reviewed and analyzed hundreds of thousands of

documents, including complex accounting documents produced by Defendants and various third-

parties including auditors; (7) retained and worked with accounting and damages experts; (8) engaged in substantial motion practice regarding discovery; (9) engaged in settlement efforts and mediation with Defendants which required written and oral presentations; and (10) negotiated and drafted the Stipulation of Settlement and related papers.  ¶¶16, 17, 19-44.

This substantial and diligent effort, which yielded the $40,000,000 settlement, was reasonable and necessary in light of the complexity of this case and the vigorous defense mounted by Defendants.  The enormous time and effort expended by GBCS, without any guarantee of payment, strongly supports the requested fee.

### 3.  The Absence Of Objections To The Settlement And Requested Attorneys' Fee Award

The Notice, which was mailed to more than 92,000 Class members, advised that plaintiff's counsel would apply for a fee award of 25% of the Settlement Fund, plus expenses. *See* Exhibits A and B to the Sylvester Decl.  The Notice also expressly advised Class members that they could object to the fee application.  *Id.*  No objections have been submitted.  ¶45.  The absence of objections is especially noteworthy here since the Class includes institutional investors who purchased Sonus common stock during the Class Period.  Declaration of Bjorn I. Steinholt, CFA (Docket No. 171), filed July 31, 2006, ¶21.  These facts are significant evidence that the requested 25% fee is fair.  *See, e.g., In re Cell Pathways, Inc., Sec. Litig.*, 01-Civ-1189, 2002 WL 31528573 at *9 (E.D. Pa. Sept. 23, 2002) ("Despite the large number of class members notified, only one objection was received and it related only to the fee petition.  This reaction shows that the class views the settlement as a success, and  . . . indicates that the class does not object to the thirty percent requested by the attorneys.  This positive reaction supports approval of the fee petition."); *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928 at *15 (E.D. Pa. Jan. 4, 2001) ("the Class member's view of the attorneys' performance, inferred from the lack of objections to

the fee petition, supports the fee award"); *In re SmithKline Beckman Corp. Sec. Litig.*, 751

F.Supp. 525, 533 (E.D. Pa. 1990); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)

(lack of objections is "strong evidence of the propriety and acceptability" of fee request).

### 4.    <u>The Skill And Efficiency Of Plaintiff's Counsel</u>

"A stated goal in percentage fee-award cases is 'ensuring that competent counsel continue

to be willing to undertake risky, complex and novel litigation.'" *Gunter v. Ridgewood Energy*

*Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

GBCS's success in efficiently bringing this litigation to a successful conclusion is the

best indicator of the experience and ability of the attorneys involved. *See, e.g., Behrens v.*

*Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("[t]he quality of work

performed in a case that settles before trial is best measured by the benefit obtained"). Here,

counsel's efforts have resulted in a highly beneficial settlement for the Class.

The experience of GBCS was considered by the Court at the time of the Lead Plaintiff

proceedings, including review of the firm's resume and results achieved. *See* Ex. B to the Cera

Declaration. GBCS practices extensively and successfully in the complex field of securities

litigation and applied this experience to obtain the settlement. *Id.*

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the

services rendered by plaintiff's counsel. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D.

166, 194 (E.D. Pa. 2000); *In re Warner Comm. Sec. Litig.*, 618 F.Supp. 735, 749 (S.D.N.Y.

1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs'

counsel's work"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 970

(E.D. Tex. 2000). The Settling Defendants were represented by prominent firms of undeniable

experience and skill.[6] The ability of GBCS to obtain a favorable settlement for the Class in the face of such formidable legal opposition further confirms the quality of the representation.

### 5.    The Complexity Of The Litigation And The Significant Obstacles To Recovery

The complexity and risk of the litigation also supports the requested fee award in this case. As recognized by courts throughout the country, securities class actions are inherently complex. *See, e.g., In re Charter Comm. Inc. Sec. Litig.*, 4:02-CV-1186, 2005 WL 4045741 at *15 (E.D. Mo. June 30, 2005) ("Securities fraud class actions are by their nature, complex and difficult to prove"); *Cell Pathways*, 2002 WL 31528573, at *10 (recognizing that complexity and difficulty of securities litigation supported approval of attorneys' fee petition).

This litigation involved highly-disputed and complex accounting issues and issues pertaining to *scienter* and damages, each of which would be difficult to explain and prove to a jury. As described in the Final Approval Brief and the Cera Declaration, filed herewith, there were significant risks in proceeding to summary judgment and trial. ¶¶53-55. Throughout the litigation, Defendants vigorously contested the validity of Lead Plaintiff's claims, and advanced arguments that might have prevailed on summary judgment or persuaded a jury to find in their favor.

In order for Lead Plaintiff to prove the critical Section 10(b) claim at trial, it would have to prove that Defendants knowingly or recklessly misrepresented the financial results of Sonus. ¶7. Throughout the litigation, Defendants argued that the required element of *scienter* could not be proven. Working in their favor was the factual complexity of the transactions at issue and the difficult questions concerning proper accounting treatment for those transactions. ¶14. The

---

[6]    The very able defendants' counsel includes Wilmer Cutler Pickering Hale and Dorr LLP, Choate, Hall & Stewart LLP, and Skadden, Arps, Slate, Meagher & Flom LLP. ¶76.

Defendants also had the ability to point to the work of Sonus's independent auditor as justification for all of the accounting treatments that were challenged in the case. At trial, nearly all of the witnesses testifying about Defendants' conduct would have been current or former Sonus employees who would likely be hostile witnesses. In addition, the trial could easily have devolved into a battle of expert witnesses. Consequently, this litigation was unquestionably complex and raised significant obstacles to recovery, factors weighing in favor of the requested fee award.

### 6. The Lack Of Assistance From Government Or Related Proceedings

GBCS obtained the proposed Settlement through its own skill and effort. ¶9. Unlike in other cases, GBCS was alone in representing the interests of the Class. *Id.* It fulfilled its obligations to the Class and delivered an excellent result.

### 7. The Risk Of Non-Payment

GBCS undertook this action in 2004 on an entirely contingent fee basis, assuming a risk that the litigation would yield no recovery and leave it uncompensated. ¶78. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys fees. For example, as one court has noted:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394 at *6 (E.D. La. May 18, 1994).

#118885                                                                                                    15

The risk of no recovery in complex cases of this type is real. There are numerous class actions in which plaintiff's counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for j.n.o.v. was denied, on appeal the First Circuit reversed the judgment and dismissed the case - after 11 years of litigation); *In re JDS Uniphase Sec. Litig.*, No. 02-1486 (N.D. Cal.) (March 21, 2008 judgment for defendants following jury trial in securities fraud class action after six years of litigation); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 779 (Del. Ch. 2005) (defense verdict on all counts after nine years of litigation and a three month bench trial); *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (although plaintiff class had obtained a substantial jury verdict against two individual defendants, district court vacated judgment on motion for judgment n.o.v.).

The enormous contingency risk in this case cannot be understated.  Accordingly, the risk

of non-payment also supports the requested fee award.[7]

## V.     PUBLIC POLICY CONSIDERATIONS SUPPORT THE REQUESTED FEE

The federal securities laws are remedial in nature and, in order to effectuate their purpose

of protecting investors, private lawsuits are to be encouraged.  *See Basic Inc. v. Levinson*,

485 U.S. 224, 230-231 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310

(1985); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 (1983).  As one court has noted:

> Private lawsuits serve to further the objective of the federal
> securities laws which is to protect investors and consumers against
> fraudulent and other deceptive practices.  As a practical matter,
> those lawsuits can be maintained only if competent counsel can be
> obtained to prosecute them.  Competent counsel can be obtained if
> reasonable and adequate compensation for the services were
> awarded if a successful result is achieved.  "To make certain that
> the public is represented by talented and experienced trial counsel,
> the remuneration should be both fair and rewarding.  The concept
> of a private attorney acting as a 'private attorney general' is vital to
> the continued enforcement and effectiveness of the Securities
> Acts."

---

[7]     An alternative method of calculating fees is the lodestar/multiplier method to "cross-check"
whether the fee determined under the percentage approach is reasonable.  *Gunter*, 223 F.3d at
195.  To arrive at the lodestar, the hours reasonably expended are multiplied by each attorney's
respective hourly rate, typically the rate normally charged in the community where the attorney
practices.  *See Blum*, 465 U.S. at 895.  In addition, current rates are properly used to compensate
for inflation, delay in payment, and loss of use of funds.  *See Missouri v. Jenkins*, 491 U.S. 274,
283-84 (1989).  The hours expended by GBCS in the case were 12,920.25, representing a current
lodestar of $5,068,951.  ¶64.  The requested fee represents a multiple of approximately 2.  *Id.*
This multiplier is well within the range of those routinely approved in contingent fee litigation.
*See, e.g., Ahearn*, Order and Final Judgment (2.85 multiplier in a securities class action); *In re
Bisys*, 2007 WL 2049726, at *3 (awarding a multiplier of 2.99); *In re Aspen Tech., Inc. Sec.
Litig.*, CA No. 04-12375-JLT, Order and Final Judgment (D. Mass. Mar. 6, 2006) (awarding a
multiplier of 6); *In re Boston & Maine Corp.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a
multiplier of 6); *In re Excel Energy, Inc. Sec. Deriv. & "ERISA" Litig.*, 364 F.Supp.2d 980, 998-
99 (D. Minn. 2005) (awarding 4.7 multiplier); *In re Rite Aid Sec. Litig.*, 362 F.Supp.2d 587, 589
(E.D. Pa. 2005) (6.96 multiplier).

*Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400 at \*9 (E.D.N.Y. May 29, 1986) (citations omitted); *see also Ressler*, 149 F.R.D. at 657 ("attorneys who bring class actions . . . are vital to the enforcement of the securities laws"); *Warner*, 618 F.Supp. at 750-51 ("Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). The Supreme Court has also emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler*, 472 U.S. at 310 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from securities fraud. Accordingly, an award of the fees requested herein would be fully consistent with important public policy considerations.

It is important to recall in this regard that in the case at bar, GBCS was completely left to its own devices in pursuing the case and obtaining a settlement. There was no assistance whatsoever from governmental investigations. ¶9. Proving that an accounting restatement was necessitated because of intentional fraud or reckless conduct is not an easy matter. Failure to follow accounting rules does not automatically translate into liability under the federal securities laws. *See, e.g., In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) ("The failure to follow GAAP is, by itself, insufficient to state a securities fraud claim."); *Fine v. American Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990) ("the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter"). Further, collectibility on a large judgment -- assuming one was obtained -- was always a major concern. These factors are additional considerations which fully support the requested fee.

## VI.  GBCS SHOULD BE REIMBURSED FOR ITS REASONABLY INCURRED LITIGATION EXPENSES

GBCS has incurred litigation expenses in the amount of $383,790.94 in prosecuting this litigation and request that the Court grant its application for reimbursement of these expenses, which were incidental and necessary to the representation of the Class.  ¶¶9, 66, 67.  It is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable attorney fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."  *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *see also In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992) (common fund doctrine permits person recovering fund for benefit of others to recover costs from the fund).  A breakdown of the aggregate expenses incurred by category is set forth in the Cera Declaration ¶¶66, 67.  These expenses were essential to the successful prosecution and resolution of this litigation and, it is submitted, are very reasonable for a case of this size and complexity.

The Notice sent to Class members stated that Lead Plaintiff's Counsel would seek reimbursement of litigation expenses not to exceed $600,000.  ¶68.  Here, GBCS is seeking $383,790.94 in expenses, which is significantly less than the amount detailed in the Notice.  *Id.* No member of the Class has raised an objection to the request for reimbursement of expenses. ¶71.  Accordingly, GBCS respectfully submits that the Court should award the expenses requested.

//

//

VII.    **CONCLUSION**

For all the reasons set forth herein, in the Final Approval Brief and the Cera Declaration, it is respectfully requested that the Court grant the application for an attorney's fee award of 25% of the Settlement Fund, together with reimbursement of expenses incurred, plus accrued interest thereon to the date of payment to the same extent as has been earned by the Settlement Fund.

Dated:  March 24, 2008                          GOLD BENNETT CERA & SIDENER LLP


                                                By: _____/s/Solomon B. Cera_____
                                                             Solomon B. Cera

                                                Attorneys for Lead Plaintiff
                                                BPI Global Asset Management LLP

#118885                                                                                           20